UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GOLDEN WEST REFINING CORPORATION LIMITED | : | CIVIL ACTION NO. |
| | : | |
| | : | 3:02CV1379 (MRK) |
| Plaintiff, | : | |
| VS. | : | |
| | : | |
| PRICEWATERHOUSECOOPERS LLP, | : | |
| | : | |
| Defendant. | : | |
| ALEC SHARP, et al., | : | CIVIL ACTION NO. |
| | : | |
| Plaintiffs, | : | 3:02CV1572 (MRK) |
| | : | |
| VS. | : | |
| | : | |
| PRICEWATERHOUSECOOPERS LLP, | : | |
| | : | |
| Defendant. | : | |
| HANDY & HARMAN REFINING GROUP, INC., | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | 3:02CV1803 (MRK) |
| | : | |
| VS. | : | |
| | : | |
| PRICEWATERHOUSECOOPERS LLP, | : | |
| | : | |
| Defendant. | : | JULY 29, 2004 |
| | : | |

**PRICEWATERHOUSECOOPERS LLP'S MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS OF UNDERWRITERS AND HHRG TO DISMISS COUNTERCLAIMS**

David J. Elliott
Thomas D. Goldberg
DAY, BERRY & HOWARD LLP
CityPlace I
Hartford, CT 06103
(860) 275-0100

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ............................................................................................... 2

STATEMENT OF FACTS .................................................................................................... 3

ARGUMENT ..................................................................................................................... 6

I.    APPLICABLE STANDARD OF REVIEW ..................................................................... 6

II.   THE CONTRACTUAL LANGUAGE IS SUFFICIENT TO SUPPORT THE
      ALLEGATIONS IN PWC'S DEFENSES AND COUNTERCLAIMS ............................ 6

III.  PLAINTIFFS' ASSERTION OF CLAIMS AGAINST PWC FOR BREACH OF
      CONTRACT DOES NOT "EXCUSE" PLAINTIFFS FROM ENFORCEMENT OF
      THE INDEMNITY AND RELEASE PROVISIONS ...................................................... 10

IV.   PWC PROPERLY HAS ASSERTED THE RECOUPMENT AND SETOFF DEFENSES
      AND COUNTERCLAIMS AGAINST UNDERWRITERS ........................................... 13

      A.    The Recoupment and Setoff Doctrines ............................................... 14

      B.    Underwriters' Claims Are Subject to These Defenses ........................ 15

      C.    Alternatively, The Court May Denominate The Recoupment And Setoff
            Theories As Defenses Only .................................................................. 16

CONCLUSION .................................................................................................................. 17

# TABLE OF AUTHORITIES

## CASES

*669 Atlantic Street Assocs. v. Atlantic-Rockland Stamford Assocs.*, 43 Conn. App. 113, 682 A.2d 572 (1996) .......................................................................................................... 13

*B & D Assocs. v. Russell*, 73 Conn. App. 66, 807 A.2d 1001 (2002) ....................................... 7, 8

*Bernstein v. Nemeyer*, 213 Conn.  665, 570 A.2d 164 (1990) ........................................ 10, 11, 13

*Bouchard v. Bouchard, No. FA910502794S*, 2001 Conn. Super. LEXIS 803 (Conn. Super. Ct. Mar. 16, 2001) ........................................................................................................ 11

*Brodeur v. McNamee*, 253 F. Supp. 2d 349 (N.D.N.Y. 2003) ...................................................... 9

*Brown v. Sol, No. CV020087487S*, 2004 Conn. Super. LEXIS 1517 (Conn. Super Ct. June 8, 2004) ...................................................................................................................... 8

*Burkle v. Car & Truck Leasing Co.*, 1 Conn. App. 54, 467 A.2d 1255 (1983) ................. 9, 10, 11

*Capitol Coal Co. v. Greenberg*, 114 Conn. 422, 158 A.2d 883 (1932) ....................................... 14

*Dimaggio v. Labreque, No. CV000438800S*, 2003 Conn. Super. LEXIS 2823 (Conn. Super. Ct. Oct. 9, 2003) ........................................................................................................ 8

*Ehrenreich v. Mohawk Mountain Ski Area, Inc., No. CV 030090988S*, 2004 Conn. Super. LEXIS 208 (Conn. Super. Ct. Jan. 30, 2004) ................................................................ 8

*Frederick Corp. v. Scheckter, No. CV010084350S*, 2001 Conn. Super. LEXIS 1141 (Conn. Super. Ct. Apr. 26, 2001) ............................................................................................ 14

*Genovese v. J. N. Clapp Co.*, 4 Conn. App. 443, 495 A.2d 1079 (1985) ..................................... 12

*Hyson v. White Water Mountain Resorts of Connecticut, Inc.*, 265 Conn. 636, 829 A.2d 827 (2003) ............................................................................................................................ 7, 8

*In re Joan and David Halpern, Inc.*, 248 B.R. 43 (Bankr. S.D.N.Y.), *aff'd, No. 00 Civ. 3601, 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000)* ...................................................... 10

*Laudano v. Gen. Motors Corp.*, 34 Conn. Supp. 684, 388 A.2d 842 (1977) ............................... 9

*Liberty Mutual Insurance Company v. Luna*, 40 Conn. Supp. 89 (Conn. Super. Ct. June 21, 1984) ........................................................................................................................ 16

*Lodge v. Arett Sales Corp., No. CV 90-00981226*, 1996 Conn. Super. LEXIS 2667 (Conn. Super. Ct. Oct. 8, 1996) ...................................................................................... 11

*Loricco v. Pantani*, 67 Conn. App. 681, 789 A.2d 514 (2002) ....................................... 14

*McNamara v. Citicorp Diners Club, No. CV 980163770*, 1998 Conn. Super. LEXIS 2242 (Conn. Super. Ct. Aug. 11, 1998) .............................................................................. 14, 15

*Orselet v. DeMatteo*, 206 Conn. 542, 539 A.2d 95 (1988) ............................................ 15

*Royal Insurance Co. v. Prudential Residential Services, L.P., No. CV010185458*, 2003 Conn. Super. LEXIS 372 (Conn. Super. Ct. Feb. 13, 2003) ............................................ 15

*SCP Corp. v. BankBoston*, No. X01CV980150598, 2001 Conn. Super. LEXIS 29 (Conn. Super. Ct. Jan. 3, 2001) .................................................................................................... 8

*Salcer v. Envicon Equities Corp.*, 744 F.2d 935 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986) ....................................................................................................... 6

*Sims v. Artuz*, 230 F.3d 14 (2d Cir. 2000) ...................................................................... 6

*Strouth v. Pools by Murphy & Sons, Inc.*, 79 Conn. App. 55, 829 A.2d 102 (2003) ............. 12, 13

*United Artists Theatre Co. v. Walton*, 315 F.3d 217 (3d Cir. 2003) ................................. 10

*Uptown Fed. Sav. and Loan Ass'n. v. Define*, No 30 13 28, 1993 Conn. Super. LEXIS 411 (Conn. Super. Ct. Feb. 10, 1993) .............................................................................. 14

## STATUTES

Fed. R. Civ. P. 8(c) ........................................................................................................ 16

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 6, 13

Fed. R. Civ. P. 12(f) ........................................................................................................ 6

## MISCELLANEOUS

Black's Law Dictionary (5th ed. 1979) ........................................................................... 14

Restatement (Second) of Contracts § 237 ..................................................................... 10

Restatement (Second) of Contracts § 241 ..................................................................... 13

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GOLDEN WEST REFINING CORPORATION LIMITED | : | CIVIL ACTION NO. |
| | : | |
| | : | 3:02CV1379 (MRK) |
| Plaintiff, | : | |
| VS. | : | |
| | : | |
| PRICEWATERHOUSECOOPERS LLP, | : | |
| | : | |
| Defendant. | : | |
| ALEC SHARP, et al., | : | CIVIL ACTION NO. |
| | : | |
| Plaintiffs, | : | 3:02CV1572 (MRK) |
| | : | |
| VS. | : | |
| | : | |
| PRICEWATERHOUSECOOPERS LLP, | : | |
| | : | |
| Defendant. | : | |
| HANDY & HARMAN REFINING GROUP, INC., | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | 3:02CV1803 (MRK) |
| | : | |
| VS. | : | |
| | : | |
| PRICEWATERHOUSECOOPERS LLP, | : | |
| | : | |
| Defendant. | : | JULY 29, 2004 |
| | : | |

**PRICEWATERHOUSECOOPERS LLP'S MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS OF UNDERWRITERS AND HHRG TO DISMISS COUNTERCLAIMS**

Defendant, PricewaterhouseCoopers LLP ("PwC"), by its undersigned counsel, respectfully submits this memorandum of law in opposition to (i) the motion of plaintiffs Alec Sharp et al. ("Underwriters") to dismiss PwC's counterclaims dated June 21, 2004, and (ii) the motion of Handy & Harman Refining Group, Inc. ("HHRG") to dismiss PwC's counterclaims dated July 8, 2004.

## SUMMARY OF ARGUMENT

Underwriters and HHRG have moved to dismiss PwC's counterclaims of setoff and recoupment. Those "counterclaims" – which in fact are denominated as affirmative defenses and counterclaims – are based on provisions in the engagement agreements between HHRG and PwC requiring HHRG to indemnify, hold harmless and release PwC from any claims and liabilities arising in circumstances where there has been a knowing misrepresentation by HHRG management. PwC alleges that HHRG management made intentionally false representations to PwC that undermined its ability to conduct a proper audit, and asserts that the contractual provisions afford a defense to plaintiffs' claims in these circumstances.

Plaintiffs argue that the counterclaims fail to state a claim for two reasons, neither of which has merit. First, citing a rule that the Connecticut Supreme Court has adopted in certain consumer cases, plaintiffs argue that the contractual provisions are unenforceable because they do not explicitly state that they apply even when PwC has acted negligently. This rule, however, does not apply to commercial transactions such as the ones at issue here, where ordinary rules of contract interpretation apply. The language of the engagement letters makes clear that PwC is relieved of liability if PwC can show, as it has alleged, that the claims are attributable to knowing misrepresentations of HHRG management. The provisions are fully enforceable under Connecticut law. *See* Point II *infra*.

Second, plaintiffs argue that PwC cannot enforce the indemnification provisions because, plaintiffs allege, PwC acted negligently in performing the audits. Not only would this result render the provisions meaningless and frustrate the intent of the parties, it assumes facts as to which there is a genuine dispute, including that PwC's alleged breach of the engagement letters

was a material breach excusing performance by HHRG, and that the alleged breach occurred
<u>before</u> HHRG management made misrepresentations to PwC.  *See* Point III *infra.*

Underwriters make the additional argument that, regardless whether the defenses and
counterclaims may be asserted against HHRG, PwC may not assert them against Underwriters as
subrogee of the claims.  This argument depends upon a fundamental misunderstanding of PwC's
recoupment and setoff defenses.  Although PwC denominated each setoff and recoupment
defense as an "affirmative defense and counterclaim," the Answers make clear that the
indemnification provisions are asserted <u>defensively</u>, and that PwC does not seek affirmative
relief against either Underwriters or HHRG.  Under Connecticut law, a subrogee stands in the
shoes of the insured and thus all of PwC's defenses against HHRG are also good against
Underwriters.  *See* Point IV *infra.*

## STATEMENT OF FACTS

HHRG filed for bankruptcy in March 2000, about one month after discovery of an
alleged fraud committed by senior members of HHRG management and principals of a Peruvian
company called Panexim.  At that time, it was revealed that boxes held in a warehouse in Lima,
Peru for HHRG's benefit – which were believed to contain over $14 million worth of gold –
instead contained silver worth a small fraction of that amount.  HHRG filed a claim with its
insurers, Underwriters, on account of that loss.  Underwriters ultimately paid the claim, and
thereby became partially subrogated to certain potential causes of action against certain third
parties.  PwC, which audited HHRG's financial statements for 1997, 1998 and 1999, was one of
the targets of those claims.

Underwriters and HHRG have asserted claims against PwC for breach of contract,
malpractice and negligent misrepresentation.  In sum, they allege that PwC was negligent in

failing to prevent and detect the purported fraudulent scheme and report it to HHRG's board of directors. Underwriters claim that HHRG suffered losses of at least $18 million, of which over $14.5 million was incurred for money wrongfully advanced to Panexim. (Underwriters Compl. ¶ 4.) HHRG alleges that PwC's failure to prevent advances to Panexim further caused the destruction of HHRG's business, and seeks consequential damages of at least $65 million. (HHRG Compl. ¶¶ 152, 156.)

PwC's answers deny the material allegations of the Complaint, and assert numerous affirmative defenses. The defenses at issue here are based on provisions in the engagement letters for each of the audits that PwC performed for HHRG, pursuant to which HHRG agreed to indemnify and hold harmless PwC from claims and liabilities attributable to knowing misrepresentations by management.[1] The 1997 and 1998 engagement letters (attached hereto as Exhibits A and B, respectively) each included the following provision:

> "The Company hereby indemnifies Coopers & Lybrand L.L.P. [the predecessor of PwC] and its partners, principals and employees, and holds them harmless from all claims, liabilities, losses, and costs arising in circumstances where there has been a knowing misrepresentation by a member of the Company's management, regardless of whether such person was acting in the Company's interest. This indemnification will survive termination of this letter of arrangement."

(Ex. A at 4; Ex. B at 4.)

The engagement letter for the 1999 audit engagement (attached hereto as Exhibit C) contains this provision:

> "<u>Release and indemnification</u>
>
> "Because of the importance of oral and written management representations to an effective audit, the Company [HHRG] releases and indemnifies

---

[1] Although the motions suggest that HHRG never executed the engagement letters (HHRG Mem. at 3 n.1; Underwriters Mem. at 2 n.1), authorized representatives of HHRG executed each such letter. Copies of the executed 1997, 1998 and 1999 engagement letters are attached hereto as Exhibits A, B and C.

> PricewaterhouseCoopers LLP and its personnel from any and all claims, liabilities, costs and expenses attributable to any knowing misrepresentation by management."

(Ex. C, at 3.)

Before the conclusion of each audit, PwC obtained from HHRG management a representation letter that, among other things, confirmed the completeness and truthfulness of representations made to PwC during the audit, including representations regarding the absence of fraud involving management of other employees who had significant roles within HHRG's internal control or those involving others that could have a material effect on the financial statements. (Answer to Underwriters Compl., Seventeenth Affm. Dfs. and First Countercl., ¶ 2; Answer to HHRG Compl., Eighteenth Affm. Dfs. and First Countercl., ¶ 2.)  Upon information and belief, contrary to these representations, HHRG management engaged in fraud, and the claims asserted here arise out of circumstances where there were knowing misrepresentations by HHRG management to PwC.  (*Id.* ¶¶ 4, 5.)  PwC asserts that, to the extent it otherwise could be found liable to Underwriters, it is entitled to set off against any judgment all amounts to which it is entitled as indemnification under the terms of the engagement agreements.  (*Id.* ¶ 8.)  PwC asserts, alternatively, that under the doctrine of recoupment any judgment must be reduced on account of all amounts to which PwC is entitled as indemnification.  (Answer to Underwriters Compl., Eighteenth Affm. Dfs. and Second Countercl. ¶ 9; Answer to HHRG Compl., Nineteenth Affm. Dfs. and Second Countercl. ¶ 9.)

Consistent with the fact that the setoff and recoupment doctrines are pleaded defensively only, the prayers for relief request that the Court enter judgment for PwC on all counts, award PwC its costs, and "award PwC judgment on its counterclaim allowing PwC to setoff against any judgment rendered in favor of plaintiffs all amounts due PwC under its rights of

indemnification." (Answer to Underwriters Compl., Prayer for Relief; Answer to HHRG

Compl., Prayer for Relief.)

## ARGUMENT

## I.     APPLICABLE STANDARD OF REVIEW

To the extent plaintiffs properly seek to dismiss counterclaims, the standard of review

under Fed. R. Civ. P. 12(b)(6) is familiar and well settled. As plaintiffs acknowledge, the

counterclaims may not be dismissed unless it appears beyond doubt that PwC can prove no set of

facts that would entitle it to relief. *See, e.g., Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir. 2000).

Because the setoff and recoupment theories are also denominated as affirmative defenses,

plaintiffs' motions more appropriately should have been denominated motions to strike pursuant

to Fed. R. Civ. P. 12(f). Such motions are not favored in this Circuit: "A motion to strike an

affirmative defense under Rule 12(f), Fed. R. Civ. P. for legal insufficiency is not favored and

will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state

of the facts which could be proved in support of the defense." *Salcer v. Envicon Equities Corp.*,

744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986) (internal

quotation marks and citation omitted). "Even when the defense presents a purely legal question,

the courts are very reluctant to determine disputed or substantial issues of law on a motion to

strike; these questions quite properly are viewed as determinable only after discovery and a

hearing on the merits." *Id.*, quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice*

*& Procedure* § 1381, at 800-01 (footnotes omitted).

## II.    THE CONTRACTUAL LANGUAGE IS SUFFICIENT TO SUPPORT THE
       ALLEGATIONS IN PWC'S DEFENSES AND COUNTERCLAIMS.

Although the indemnification provisions at issue here apply by their terms to <u>all</u> liabilities

and claims whether or not based on PwC's alleged negligence, plaintiffs argue that the

provisions in the engagement letters are unenforceable because they do not include specific language stating, in precisely these words, that they apply even if PwC is found to have acted negligently. This argument misstates Connecticut law, which imposes no requirement to include such language in agreements entered into between sophisticated commercial parties.

Plaintiffs rely on *Hyson v. White Water Mountain Resorts of Connecticut, Inc.*, 265 Conn. 636, 829 A.2d 827 (2003), which was a personal injury action filed by a woman who was injured while snowtubing at the Powder Ridge ski resort. The issue presented was "whether an agreement purporting to release or indemnify the proprietor of a recreational facility or service prospectively may be applied to damages arising from that party's negligence in the absence of express language so indicating." *Id.* at 640-41. The Court noted a split of authority in other jurisdictions, some of which require that the release specifically refer to negligence of the indemnitee and others of which impose no such requirement. *Id.* at 642-43. A majority of the Court concluded that "the better rule is that a party cannot be released from liability for injuries resulting from its future negligence in the absence of language that expressly so provides." *Id.* at 643. This rule protects unsophisticated consumers "from inadvertently relinquishing valuable legal rights." *Id.*

The Court specifically limited its holding to consumer transactions and made clear that it was not deciding whether the same rule applies to an agreement that is part of a <u>commercial</u> transaction. *Id.* at 641-42 n.6. Indeed, the Court cited the recent appellate court decision in *B & D Assocs. v. Russell*, 73 Conn. App. 66, 807 2d. 1001 (2002), where the court enforced an indemnification provision in a commercial lease that did not specifically refer to negligence. In holding that the indemnification provision barred a negligence claim by the tenant for damage caused by a fire, the appellate court explained: "[T]he plaintiff was a business entity and the

defendant was a business person at the time the lease was executed, and . . . there is no evidence that the defendant had significantly more bargaining power than the plaintiff." *B&D Assocs. v. Russell*, 73 Conn. App. at 73, n.1, quoted in *Hyson*, 265 Conn. at 642 n.6.   The appellate court also relied on parol evidence supporting the parties' intent to relieve the landlord from liability, including that the plaintiff tenant had paid for fire insurance. *Id.*

Plaintiffs fail to cite any authority applying the *Hyson* rule in a commercial case, and instead rely entirely on decisions arising in personal injury cases filed against operators of recreational services.[2]   This failure is understandable, because when general principles of contract law are applied to this case, it is evident that PwC has adequately pleaded defenses to plaintiffs' claims.

In an agreement between sophisticated parties, definitiveness in the contractual language should be presumed, and "the language must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." *SCP Corp. v. BankBoston*, No. X01CV980150598, 2001 Conn. Super. LEXIS 29, at * 5-6 (Conn. Super. Ct. Jan. 3, 2001) (attached hereto as Exhibit D), citing *Tallmadge Bros., Inc. v. Iroquois Gas Transmission Sys., L.P.,* 252 Conn. 479, 498, 746 A.2d 1277 (2000).  Here, the indemnification provisions require HHRG to indemnify and hold harmless PwC "from <u>all</u> claims, liabilities, losses, and costs arising in circumstances where there has been a knowing misrepresentation by a member of the Company's management," (Exs. A and B at 4 (emphasis added)), and "from <u>any and all</u> claims, liabilities, costs and expenses attributable to any knowing

---

[2] *See Brown v. Sol*, No. CV020087487S, 2004 Conn. Super. LEXIS 1517 (Conn. Super Ct. June 8, 2004) (suit against auto racing instructor and his employer); *Ehrenreich v. Mohawk Mountain Ski Area, Inc.*, No. CV 030090988S, 2004 Conn. Super. LEXIS 208 (Conn. Super. Ct. Jan. 30, 2004) (suit against ski resort operator); *Dimaggio v. Labreque*, No. CV000438800S,

misrepresentation by management" (Ex. C at 3 (emphasis added)).  As the appellate court

explained in a case involving similar indemnification language:

> There cannot be any broader classification than the word 'all.'  In its ordinary and
> natural meaning, the word 'all' leaves no room for exceptions.  The plain meaning
> of the words employed in the contract fairly includes a promise to indemnify even
> the negligent indemnitee.  There is no reason why more should be required to
> establish the unmistakable intent of the parties.

*Burkle v. Car & Truck Leasing Co.*, 1 Conn. App. 54, 56-57, 467 A.2d 1255 (1983), quoting

*Laudano v. Gen. Motors Corp.*, 34 Conn. Supp. 684, 688, 388 A.2d 842 (1977) (other citations

and internal quotations omitted).

The "any and all" language is not the only part of the provision that makes clear the

parties' intent that PwC may not be held responsible for negligence in circumstances involving

knowing misrepresentations by management.  Other language makes clear that the parties

intended not only that HHRG indemnify PwC but that it not assert claims against PwC in

circumstances covered by the provision.  Thus, the provision in the 1999 engagement letter is

specifically denominated a "release"; and the 1997 and 1998 engagement letters include "hold

harmless" language also consistent with a release of claims against PwC.  *See Brodeur v.*

*McNamee*, 253 F. Supp. 2d 349, 354 (N.D.N.Y. 2003) ("The term 'hold harmless' is defined as

'[t]o absolve (another party) from any responsibility for damage or other liability arising from the

transaction; indemnify' … [t]hus, to hold harmless may mean either to release or to indemnify.").

Plaintiffs' resort to the bromide that "the law does not favor contract provisions which

relieve a person from his own negligence" turns the matter on its head.  Commercial parties are

free to allocate the risk of loss – including from one party's negligence – however they choose.

Under Connecticut law, the parties could have agreed to hold PwC harmless from its own

---

2003 Conn. Super. LEXIS 2823 (Conn. Super. Ct. Oct. 9, 2003) (suit on behalf of person who

negligence in <u>all</u> circumstances.  The provisions here are much narrower, however, and allocate to HHRG responsibility only for claims against and liabilities incurred by PwC arising in circumstances where HHRG management has made <u>knowing misrepresentations</u> to PwC in the course of the engagement.  Certainly, the law does not disfavor a provision which discourages knowing misrepresentations by a company's management to its auditors.

## III.   PLAINTIFFS' ASSERTION OF CLAIMS AGAINST PWC FOR BREACH OF CONTRACT DOES NOT "EXCUSE" PLAINTIFFS FROM ENFORCEMENT OF THE INDEMNITY AND RELEASE PROVISIONS.

Plaintiffs next argue that the indemnity and release provisions cannot apply here because, under the theory of their cases, PwC breached the engagement agreements by failing to detect the fraud of management.  Their argument is based on language from the Restatement (Second) of Contracts § 237, which gives a party the option not to perform future duties under a contract where the other party has committed a "material breach."  *See Bernstein v. Nemeyer*, 213 Conn. 665, 672, 570 A.2d 164 (1990) (adopting applicable part of Restatement (Second) of Contracts). Plaintiffs' argument fails for several reasons.

First, plaintiffs' position effectively would render meaningless indemnification provisions whenever applied to protect the indemnitee against claims for its own negligence, which would fly in the face of overwhelming judicial authority upholding the enforceability of such provisions.  *See, e.g., United Artists Theatre Co. v. Walton*, 315 F.3d 217, 229 (3d Cir. 2003) ("Indemnification of financial advisors against their own negligent conduct is becoming a common market occurrence."); *In re Joan and David Halpern, Inc.*, 248 B.R. 43, 47 (Bankr. S.D.N.Y.), *aff'd*, No. 00 Civ. 36012000 WL 1800690 (S.D.N.Y. Dec. 6, 2000) (such indemnification provisions are "customary and usual"); *Burkle v. Car & Truck Leasing Co.*, 1

---

died in a powered parachute accident).

Conn. App. at 60 (provisions permitting indemnification for one's own negligence are enforceable under Connecticut law).

Not surprisingly, plaintiffs have failed to cite a single case applying this language from the Restatement (Second) of Contracts to preclude enforcement of an indemnification provision.[3] In the only Connecticut case that we have located addressing this issue, *Lodge v. Arett Sales Corp.*, No. CV 90-00981226, 1996 Conn. Super. LEXIS 2667 (Conn. Super. Ct. Oct. 8, 1996) (attached hereto as Exhibit E), the court in dicta properly rejected the same argument that plaintiffs make here. There, a defendant alarm company (Wells Fargo) brought a cross-claim for indemnity against a co-defendant (Arett) in an action brought by plaintiff firefighters who were injured when their fire engine crashed while responding to a false alarm. The applicable contract required Arett to indemnify Wells Fargo for any claims resulting from failure of its equipment or services, regardless whether caused by negligence of Wells Fargo. Citing *Bernstein v. Nemeyer*, Arett argued that Wells Fargo's breach of the contract discharged Arett's duty to perform under the indemnification provision. *Id*. at *19. Wells Fargo responded that "it is precisely such a set of circumstances that the indemnity and liquidated damages provisions were designed to cover." *Id*. The court found this response "persuasive," but determined that it need not decide the issue because it found the indemnity provision inapplicable on other grounds. *Id*.

Second, plaintiffs' argument wrongly assumes that PwC is seeking to compel some sort of performance by HHRG and Underwriters. To the contrary, PwC's affirmative defenses and

---

[3] Plaintiff's cases are far off point. In *Bernstein v. Nemeyer*, 213 Conn. 665, 570 A.2d 164 (1990), the court held that general partners materially breached a partnership agreement by discontinuing payments on the partnership's mortgage loan, but held that the breach gave rise only to a claim for damages, not rescission of the plaintiffs' investments. 213 Conn. at 672-73. In *Bouchard v. Bouchard*, No. FA910502794S, 2001 Conn. Super. LEXIS 803 (Conn. Super. Ct. Mar. 16, 2001), the court held that a wife's alleged failure to undergo therapy as required by a

counterclaims assert the contractual provisions defensively, in order to reduce any amounts that

otherwise would be due on plaintiffs' claims.  In this case, PwC is relying on the "hold harmless"

language (1997 and 1998 engagement letters) and "release" language (1999 engagement letter),

which do not require affirmative performance by plaintiff.  Indeed, HHRG fully performed this

part of the agreements upon their execution.  Thus, the 1997 and 1998 engagement letters

provide:  "[HHRG] <u>hereby indemnifies</u> Coopers & Lybrand L.L.P. and its partners, principals,

and employees, and <u>hold them harmless</u> from all claims . . . ."  (Ex. A (emphasis added); Ex. B

(emphasis added).)  The 1999 engagement letter similarly provides:  "[HHRG] <u>releases and

indemnifies</u> PricewaterhouseCoopers LLP and its personnel from any and all claims . . . ." (Ex.

C, p. 4 (emphasis added).)  This point is further bolstered by the fact that the provisions

expressly survive termination of the agreements.

     Third, even if one were to accept plaintiffs' legal theory, plaintiffs assume that PwC's

alleged negligence in conducting its audits was a material breach of contract, and was the <u>first</u>

material breach – *i.e.*, it preceded HHRG's own breach in making knowing misrepresentations to

PwC.[4]  Both assumptions present issues of fact that cannot be resolved on a motion to dismiss.  It

is well settled that determination of whether a breach of contract is material is an issue of fact.

*See, e.g., Strouth v. Pools by Murphy & Sons, Inc.*, 79 Conn. App. 55, 59, 829 A.2d 102 (2003);

---

stipulated divorce judgment did not excuse the husband from providing educational support to
his children as required by the judgment.

    [4] Employing the same analysis proffered by plaintiffs, the misrepresentations by HHRG
management were a material breach of HHRG's duties under the engagement agreements which
precluded PwC from conducting a proper audit and excused <u>PwC's</u> obligation to perform under
the engagement agreements.  HHRG's material breach thus would defeat the argument that
plaintiffs raise here.

*669 Atlantic Street Assocs. v. Atlantic-Rockland Stamford Assocs.*, 43 Conn. App. 113, 126, 682 A.2d 572 (1996). The circumstances applicable to determining whether a breach is material are set forth in the Restatement (Second) of Contracts § 241 and include "the extent to which the injured party will be deprived of the benefit which he reasonably expected."[5] The rules are "necessarily imprecise and flexible," and should be "applied in the light of the facts of each case in such a way as to further the purpose of securing for each party his expectation of an exchange of performances." Restatement (Second) of Contracts § 241, cmt. a , *cited, e.g.*, in *Strouth*, 79 Conn. at 60. In this case, because one point of the provisions was to protect PwC in precisely the circumstances presented here, plaintiffs' position that PwC committed a material breach would defeat the parties' expectations. This presents, at a minimum, an issue of fact that cannot be resolved by a Rule 12(b)(6) motion.

## IV.    PWC PROPERLY HAS ASSERTED THE RECOUPMENT AND SETOFF DEFENSES AND COUNTERCLAIMS AGAINST UNDERWRITERS.

Underwriters also argue that PwC cannot assert its counterclaims against Underwriters because they did not "assume" any obligations of HHRG. This argument misconstrues PwC's recoupment and setoff theories. Although PwC has conformed to customary pleading practice by denominating recoupment and setoff as both defenses and counterclaims, PwC's "claims" are asserted solely for defensive purposes, and do not seek affirmative relief against Underwriters. Underwriters, as subrogee and assignee of HHRG, stand squarely in HHRG's shoes and take its claims subject to all defenses – including recoupment and setoff – to which HHRG would be subject.

---

[5] These standards are applicable under Connecticut law. *See, e.g.*, *Bernstein*, 213 Conn. at 672; *Strouth*, 79 Conn. App. at 60.

-13-

A.    **The Recoupment and Setoff Doctrines**

Recoupment and setoff are distinct though related doctrines, and both are defensive in nature.  Recoupment is defined as "keeping back something which is due, because there is an equitable reason to withhold it."  Black's Law Dictionary (5th Ed. 1979).  It has two characteristics: "(1) [it] arises out of the transaction constituting the plaintiff's cause of action; and (2) it is purely defensive, used to diminish or defeat the plaintiff's cause, but not as the basis for an affirmative recovery."  *Loricco v. Pantani*, 67 Conn. App. 681, 686, 789 A.2d 514 (2002) (internal citations and quotation marks omitted); *see also Genovese v. J N. Clapp Co.*, 4 Conn. App. 443, 445-46, 495 A.2d 1079 (1985).  A setoff is a "counter demand which a defendant holds against a plaintiff, arising out of a transaction extrinsic of plaintiff's cause of action."  *Id.* Thus, the principal distinction is that recoupment must arise from the same transaction, while set off need not.

Despite the defensive nature of the doctrines, it is common to plead them as both defenses and counterclaims.  Indeed, there is authority that Connecticut state court practice requires recoupment to be pleaded as a counterclaim.  *See Capitol Coal Co. v. Greenberg*, 114 Conn. 422, 424, 158 A.2d 883 (1932) ("under our present practice, recoupment is to be pleaded as a counterclaim").  Recent Superior Court decisions have muddled the pleading requirements for recoupment.  Some have held that recoupment is most properly pleaded as a defense which captions the allegations "by way of recoupment only."  *See, e.g., Frederick Corp. v. Scheckter*, No. CV010084350S, 2001 Conn. Super. LEXIS 1141 (Conn. Super. Ct. Apr. 26, 2001)(attached hereto as Exhibit F); *Uptown Fed. Sav. and Loan Ass'n. v. Define*, No 30 13 28, 1993 Conn. Super. LEXIS 411 (Conn. Super. Ct. Feb. 10, 1993) (attached hereto as Exhibit G).  Another has reconciled these holdings with *Capitol Coal* by noting that a proper claim for recoupment is best

pleaded as a defense *and* counterclaim.  *See McNamara v. Citicorp Diners Club*, No. CV

980163770, 1998 Conn. Super. LEXIS 2242, *7 (Conn. Super. Ct. Aug. 11, 1998) (attached

hereto as Exhibit H).  Because the pleading requirements under the Federal Rule of Civil

Procedures are not clear on this issue, PwC conservatively pleaded both doctrines as affirmative

defenses <u>and</u> counterclaims.[6]

### B.    Underwriters' Claims Are Subject to These Defenses.

Because Underwriters' claims against PwC are wholly derivative of claims acquired from

HHRG, PwC may plead recoupment and setoff as defenses to Underwriters' claims to the same

extent it could have pleaded them if the claims had been asserted by HHRG.  As the Connecticut

Supreme Court has explained:  "The insurer's right of subrogation against third persons causing

the loss paid by the insurer to the insured . . . is derived from the insured alone.  Consequently,

the insurer can take nothing by subrogation but the rights of the insured, and is subrogated to

only such rights as the insured possesses. . . .  Therefore, any defense which a wrongdoer has

against the insured is good against the insurer subrogated to the rights of the insured." *Orselet v.*

*DeMatteo*, 206 Conn. 542, 546-47, 539 A.2d 95 (1988).

The two lower court cases on which Underwriters rely do not preclude counterclaims

against subrogees that are asserted as defenses, but rather stand only for the proposition that a

counterclaim may not seek <u>affirmative recovery</u> against a subrogee.  In *Royal Insurance Co. v.*

*Prudential Residential Services, L.P.*, No. CV010185458, 2003 Conn. Super. LEXIS 372 (Conn.

Super. Ct. Feb. 13, 2003), the defendant pleaded three counterclaims against the subrogee insurer

alleging breach of contract, indemnification, and vexatious litigation.  The defendant did not

---

[6] Under Connecticut state court practice, setoff often is pleaded as a separate category apart from a defense or counterclaim.  The Federal Rules of Civil Procedure have no analogue to this form of pleading.

raise these claims in an attempt to offset damages, but rather in an attempt to seek affirmative relief for the alleged wrongs, which the court found impermissible. In *Liberty Mutual Insurance Company v. Luna*, 40 Conn. Supp. 89 (Conn. Super. Ct. June 21, 1984), the court recognized that the negligence of the insured may constitute a valid defense in the matter, but did not permit a counterclaim for damages against the subrogee insurer. These cases do not preclude the use of recoupment and/or setoff as a counterclaim when the purpose of that counterclaim is to offset the damage amounts between the parties.

  **C. Alternatively, The Court May Denominate The Recoupment And Setoff Theories As Defenses Only.**

  Even if the Court should deem that recoupment and setoff theories should be pleaded as defenses only, the proper remedy is not to dismiss PwC's counterclaims, but rather to recharacterize them solely as affirmative defenses. Federal Rule of Civil Procedure 8(c) specifically contemplates this result: "When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."

## **CONCLUSION**

Underwriters' and HHRG's motions to dismiss PwC's counterclaims should be denied in their entirety.  Alternatively, the Court should deny the motion and treat PwC's recoupment and setoff theories as affirmative defenses only pursuant to Fed. R. Civ. P. 8(c).


DEFENDANT,
PRICEWATERHOUSECOOPERS LLP


By_____
        David J. Elliott (ct 04301)
        E-mail:  *djelliott@dbh.com*
        Thomas D. Goldberg (ct 04386)
        E-mail:  *tdgoldberg@dbh.com*
        Day, Berry & Howard LLP
        CityPlace I
        Hartford, Connecticut 06103
        Tel:  (860) 275-0100
        Fax:  (860) 275-0343
        Its Attorneys

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing was mailed this date, via first-class mail, to each of the following counsel of record in each of the consolidated cases:

Edward J. Boyle, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker
LLP
150 East 42nd Street
New York, NY 10017-5639

Steven R. Humphrey, Esq.
Dina S. Fisher, Esq.
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597

Daniel McMahon, Esq.
Stefan Dandelles, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker
120 N. LaSalle Street
Chicago, IL 60602

Fred N. Knopf, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker
3 Gannett Drive
White Plains, NY 10604-3407

William H. Champlin III, Esq.
William S. Fish, Jr., Esq.
Tyler, Cooper & Alcorn
CityPlace – 35th Floor
Hartford, CT 06103

_____
David J. Elliott

-18-