# EXHIBIT F

LEXSEE 2001 CONN. SUPER. LEXIS 1141

**The Frederick Corporation v. James K. Scheckter**

**CV010084350S**

**SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF
LITCHFIELD, AT LITCHFIELD**

**2001 Conn. Super. LEXIS 1141**

**April 26, 2001, Decided
April 26, 2001, Filed**

**NOTICE:** [*1]   THIS DECISION IS UNREPORTED
AND MAY BE SUBJECT TO FURTHER APPELLATE
REVIEW. COUNSEL IS CAUTIONED TO MAKE AN
INDEPENDENT DETERMINATION OF THE
STATUS OF THIS CASE.

**DISPOSITION:** Based on the above decision the
plaintiff's motion to sever is moot.

**LexisNexis(R) Headnotes**

**JUDGES:** Cremins, J.

**OPINIONBY:** Cremins

**OPINION:** MEMORANDUM OF DECISION ON
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ( # 110); MOTION TO STRIKE ( # 112);
MOTION TO SEVER ( # 107)

FACTS AND PROCEDURAL HISTORY

This is an action to foreclose a mortgage given by the
defendant to the plaintiff in the original amount of $
450,000.00. The complaint alleges and the defendant
admits that the note and mortgage were executed on
September 2, 1999. The note requires the defendant to
make payments of interest only from October 1, 1999,
through September 1, 2009, when the principal balance
together with any unpaid interest is due. The mortgage
also requires the defendant to pay all real estate taxes
assessed against the mortgaged property. In its complaint
the plaintiff alleges that the defendant has defaulted in
his obligations under the mortgage by failing to pay the

installment of interest due on March 1, 2000, and
subsequent months, and by failing to pay the installment
[*2] of real estate taxes due January 1, 2000. The
defendant has filed an answer and in addition six
counterclaims which allege: (1) breach of contract; (2)
setoff; (3) recoupment; (4) violation of federal truth in
lending laws; (5) violation of Connecticut truth in
lending laws; and (6) violation of Connecticut's Unfair
Trade Practices Act. Before the court at this time are the
following motions of the plaintiff: (1) motion for
summary judgment as to liability only; (2) motion to
strike the defendant's counterclaims; and (3) motion to
sever any counterclaims not stricken by the court.

SUMMARY JUDGMENT--STANDARD OF REVIEW

"Summary judgment shall be rendered forthwith if the
pleadings, affidavits and other proof submitted show that
there is no genuine issue as to any material fact and that
the moving party is entitled to judgment as a matter of
law." (Internal quotation marks omitted.) *Doucette v.
Pomes*, 247 Conn. 442, 452, 724 A.2d 481 (1999); see
also Practice Book § 17-49. "The party seeking
summary judgment has the burden of showing the
absence of any genuine issue [of] material facts which,
under applicable principles of substantive law, entitle
him to [*3]  a judgment as a matter of law . . . and the
party opposing such a motion must provide an
evidentiary foundation to demonstrate the existence of a
genuine issue of material fact." (Citation omitted.)
*Rivera v. Double A Transportation, Inc.*, 248 Conn. 21,
24, 727 A.2d 204 (1999). "In deciding a motion for
summary judgment, the trial court must view the
evidence in the light most favorable to the nonmoving
party . . . The test is whether a party would be entitled to

a directed verdict on the same facts." (Internal quotation marks omitted.) *Serrano v. Burns*, 248 Conn. 419, 424, 727 A.2d 1276 (1999).

"Although the party seeking summary judgment has the burden of showing the non-existence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." *Home Ins. Co. v. Aetna Life & Casualty Co.*, 235 Conn. 185, 202, 663 A.2d 1001 (1995). "The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence." (Internal quotations [*4] marks omitted.) *Pion v. Southern New England Telephone Co.*, 44 Conn. App. 657, 663, 691 A.2d 1107 (1997).

DISCUSSION

To make out a prima facie case in a foreclosure action, a plaintiff must "prove by a preponderance of the evidence that it [is] the owner of the note and mortgage and that [the defendant has] defaulted on the note." *Webster Bank v. Flanagan*, 51 Conn. App. 733, 750-51, 725 A.2d 975 (1999). The plaintiff has provided a copy of the promissory note given by the defendant to the plaintiff on September 2, 1999. Also submitted by the plaintiff is a copy of the mortgage deed, dated September 2, 1999, and an affidavit from the tax collector of the town of Roxbury, Conn., where the property is located, indicating that taxes have not been paid for the 1998 and 1999 grand lists. The president of the plaintiff corporation states in his attached affidavit that the note and mortgage are now in default by virtue of nonpayment of the installments due on March 1, 2000, and each month thereafter and the failure of the defendant to pay property taxes due. The defendant has submitted no evidence in opposition to the plaintiff's allegations of [*5] non payment of property taxes or interest payments. The plaintiff's evidence as to default is therefore undisputed, and the plaintiff has made out a prima facie case.

"In a foreclosure action, defenses are generally limited to payment, discharge, release, satisfaction or invalidity of a lien." *First Federal v. Kakaletris*, 1994 Conn. Super. LEXIS 436, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 130826 (February 23, 1994) (Karazin, J.) (11 Conn. L. Rptr. 113). "A foreclosure is an equitable proceeding where the trial court may consider all relevant circumstances to ensure complete justice has been done." *Id.*, citing *Reynolds v. Ramos*, 188 Conn. 316, 320, 449 A.2d 182 (1982). "Equity has permitted allegations of mistake, accident, fraud, equitable estoppel, CUTPA, and breach of an implied covenant of good faith and fair dealing to

become valid defenses." *Bank of Boston Connecticut v. Calabrese*, 1994 Conn. Super. LEXIS 1769, Superior Court, judicial district of Waterbury, Docket No. 118377 (July 11, 1994, Sylvester, J.). However, the court in *First Federal v. Kakaletris, supra*, adopted the rationale that "only those equitable defenses which attack the making, validity [*6] or enforcement of a note or mortgage should be recognized in a foreclosure action." *First Federal v. Kakaletris, supra*, 1994 Conn. Super. LEXIS 436, 11 Conn. L. Rptr. 113.

As noted previously, a party opposing a motion for summary judgment must produce some evidence demonstrating the existence of a genuine issue of material fact. *Home Ins. Co. v. Aetna Life & Casualty Co., supra*, 235 Conn. 202.

CONCLUSION AS TO SUMMARY JUDGMENT

The plaintiff has produced sufficient evidence to prove the basic elements of a foreclosure action, and the defendant has offered no evidence in opposition to the allegations that the defendant has defaulted under the terms of the note. Consequently, the plaintiff's motion for summary judgment as to liability is granted.

MOTION TO STRIKE COUNTERCLAIM-- STANDARD OF REVIEW

"[A] counterclaim is a cause of action existing in favor of the defendant against the plaintiff and on which the defendant might have secured affirmative relief had he sued the plaintiff in a separate action . . . A motion to strike tests the legal sufficiency of a cause of action and may properly be used to challenge the sufficiency of a counterclaim." (Citations omitted. [*7] ) *Fairfield Lease Corp. v. Romano's Auto Service*, 4 Conn. App. 495, 496, 495 A.2d 286 (1985).

The motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis omitted.) *Mingachos v. CBS, Inc.*, 196 Conn. 91, 108, 491 A.2d 368 (1985). "In deciding upon a motion to strike . . . a trial court must take the facts to be those alleged in the [pleadings] and cannot be aided by the assumption of any facts not therein alleged." (Citations omitted; internal quotation marks omitted.) *Liljedahl Brothers, Inc. v. Grigsby*, 215 Conn. 345, 348, 576 A.2d 149 (1990). However, the court must construe the special defense or counterclaim "in [a] manner most favorable to sustaining its legal sufficiency." *Bouchard v. People's Bank*, 219 Conn. 465, 471, 594 A.2d 1 (1991). Therefore, the court must view the facts "in a broad fashion, not strictly limited to the allegations, but also including the facts

necessarily implied by and fairly probable under them." (Internal quotation marks omitted.) *Zeller v. Mark*, 14 Conn. App. 651, 654, 542 A.2d 752 (1988). **[*8]** Where the facts provable under the allegations would not support a special defense or counterclaim, then the motion to strike must be granted. *Alarm Applications Co. v. Simsbury Volunteer Fire Co.*, 179 Conn. 541, 545, 427 A.2d 822 (1980).

The court will consider each of the counterclaims separately.

FIRST COUNTERCLAIM--BREACH OF CONTRACT

The plaintiff challenges the defendants' first counterclaim, arguing that it is insufficient because it, the breach of contract as to the terms of the alleged purchase agreement and addendum, does not arise out of the same transaction that is the subject of the complaint, i.e. the making, validity or enforcement of the note.

Practice Book § 10-10 provides, in pertinent part: "Any defendant may file counterclaims against any plaintiff . . . provided that each such counterclaim . . . arises out of the transaction or one of the transactions which is the subject of the plaintiff's complaint." Practice Book § 10-10. The test is whether "judicial economy, avoidance of multiplicity of litigation, and avoidance of piecemeal disposition of what is essentially one action, are thwarted rather than served by the filing of **[*9]** a counterclaim." *Wallingford v. Glen Valley Associates, Inc.*, 190 Conn. 158, 161, 459 A.2d 525 (1983).

"Although some foreclosure proceedings rely on the equitable nature of the proceedings as grounds for allowing counterclaims . . . not recognized at common law . . . this trend must have its limitation. An analysis of those cases recognizing counterclaims suggests that they are proper only when they, like their common law counterparts, attack the note itself, rather than some act or procedure by the mortgagor . . . Courts have not been receptive to foreclosure defendants who have asserted . . . counterclaims based on factors outside of the note or mortgage . . . The making of the note and the . . . subsequent default is the 'transaction' at issue." (Citations omitted; internal quotation marks omitted.) *Norwest Mortgage v. Edwards*, 1998 Conn. Super. LEXIS 1265, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 057496 (May 4, 1998) (Curran, J.TR.) (22 Conn. L. Rptr. 123).

Because the first counterclaim does not arise out of the same transaction as the complaint, the motion to strike the first counterclaim is granted. This counterclaim does not arise out of **[*10]** the same transaction as the plaintiff's complaint because it does not properly attack the making, validity or enforcement of the note.

SECOND COUNTERCLAIM--SETOFF

The defendant alleges that he is entitled to a setoff as to any amounts the plaintiff claims owing by virtue of "services, improvements and repairs not done by the plaintiff."

"The law of setoff is governed by General Statutes § 52-139. The relevant portion of that statute provides: (a) In any action brought for the recovery of a debt, if there are mutual debts between the plaintiff or plaintiffs, or any of them, and the defendant or defendants, or any of them, one debt may be set off against the other . . . A condition precedent to the application of § 52-139 is that the defendant's claim arise from a debt due by the plaintiff." (Internal quotation marks omitted.) *Petti v. Balance Rock Associates*, 12 Conn. App. 353, 362, 530 A.2d 1083 (1987). "A proper setoff alleges a debt that is presently due and arising from a contract or liquidated claim." *Armatino v. Romano*, Superior Court, judicial district of New Haven, Docket No. 283687 Conn. L. Rptr. 60, 61 (November 28, 1989) **[*11]** (Cretella, J), citing *Finley v. Summus Corp.*, Superior Court, judicial district of New London at Norwich, Docket No. 082046 (January 6, 1986) (Nash, J.).

The defendant has not alleged a liquidated debt but an unliquidated claim. Consequently, he has not alleged a setoff. The motion to strike the second counterclaim is granted.

THIRD COUNTERCLAIM--RECOUPMENT

"Recoupment is the defendant's right to cut back, reduce or overcome the plaintiff's demand. It may be for liquidated or unliquidated damages. In recoupment a defendant may cut down to the full amount of the plaintiff's claim, but may not recover for any balance due him . . . out of the same transaction." (Citations omitted.) *Jewett City Trust Co. v. Gray*, 35 Conn. Supp. 508, 510, 390 A.2d 948 (1977). "The defense of recoupment has two characteristics: (1) the defense *arises out of the transaction constituting the plaintiff's cause of action*; and (2) it is purely defensive, used to diminish or defeat the plaintiff's cause, but not as the basis for an affirmative recovery . . . It rests on the principle that both sides of a transaction should be settled at one time in order to prevent circuitry **[*12]** of actions." (Emphasis added.) *Genovese v. J.N. Clapp Co, Inc.*, 4 Conn. App. 443, 445-46, 495 A.2d 1079 (1985).

"Recoupment is more properly filed as a special defense and not an independent action; it is essentially a defense . . . In recoupment, a defendant may cut down to the full amount of plaintiff's claim, but may not recover for any balance due him . . . The test in each case must therefore be whether the pleading of the defendant is purely defensive or whether affirmative relief is demanded . . . Although a defendant should clearly claim recoupment by special defense, and caption its allegations by way of recoupment only, . . . a counterclaim is sufficient as long as the counterclaim *is within the recoupment exception, and arises out of the plaintiff's main cause of action.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Vile v. Chamberlain*, 1999 Conn. Super. LEXIS 1715, Superior Court, judicial district of New London at New London, Docket No. 542830 (July 1, 1999) (Martin, J.).

The plaintiff claims that because the defendants have failed to allege that the counterclaim arises from the same transaction as the plaintiff's foreclosure claim, an essential [*13] element of a claim for recoupment has not been established.

The defendants have failed to allege any debts that are presently due and arise from a contract or liquidated claim.

Practice Book § 10-10 requires that a counterclaim arise out of the transaction which is the subject of the plaintiff's complaint. The claim for recoupment does not arise out of the making validity or enforcement of the note and mortgage. The recoupment claim may constitute the basis for a separate action but is not adjudicable within this foreclosure action. The motion to strike the third counterclaim is granted.

FOURTH, FIFTH AND SIXTH COUNTERCLAIM

The defendant has admitted that it has not pleaded facts showing that the plaintiff is a "creditor" within the meanings of the Federal Truth in Lending Act, 15 U.S.C. 1602(f) (fourth counterclaim), the Connecticut Truth In Lending Act General Statutes 36a-676(a)(5) (fifth counterclaim). The defendant has based his CUTPA claim (sixth counterclaim) on violations of the Truth in Lending Acts. Therefore the motion to strike the fourth, fifth and sixth counterclaims is granted.

Based on the above [*14] decision the plaintiff's motion to sever is moot.

So ordered.

Cremins, J.

# EXHIBIT
# G

LEXSEE 1993 CONN. SUPER. LEXIS 411

**UPTOWN FEDERAL SAVINGS AND LOAN ASSOCIATION v. ESTHER A. DEFINE, ET AL.**

**NO. 30 13 28**

**SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF DANBURY**

**1993 Conn. Super. LEXIS 411**

**February 10, 1993, Decided**
**February 10, 1993, Filed**

**NOTICE:** **[*1]**    THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**LexisNexis(R) Headnotes**

**JUDGES:** Moraghan

**OPINIONBY:** MORAGHAN

**OPINION:**

MEMORANDUM OF DECISION

On March 30, 1990 the plaintiff, Uptown Federal Savings and Loan Association (hereafter "Uptown"), instituted this procedure to foreclose a mortgage executed by defendant, Esther A. Define (hereafter "Define"), securing a promissory note in the principal amount of $ 90,000.00.  The note and mortgage were originally executed on August 18, 1986, in favor of The Dime Real Estate Services - Connecticut, Inc., and simultaneously assigned to The Dime Savings Bank of New York, F.S.B.

On August 22, 1986, the defendant "quitclaimed to Mutual Realty Investment Corp. all of her right, title and interest in said premises," in accordance with two separate rider provisions accompanying the mortgage and promissory note, which provide, in relevant part:

> the Lender will not require immediate payment in full if all or any part of the Property, or if any right in the Property is sold or transferred without Lender's prior written permission.

I will continue to **[*2]** be responsible for all of my promises and agreements under the Note and the Mortgage even if I sell or transfer the Property to someone else, unless the Lender releases me in writing from the promises and agreements.

On December 19, 1986, The Dime Savings Bank of New York assigned its interest in the property to the plaintiff by an assignment executed in New York.  As a result of the assignment, Uptown commenced the instant foreclosure because "the installment of principal and interest due December 1, 1988, and each and every month thereafter have not been paid, and the plaintiff has exercised the option to declare the entire balance due on the note due and payable." The return day of that proceeding was April 17, 1990.

On December 4, 1990, the defendant filed an answer, special defense, and a counterclaim. According to the special defense, the "Defendant rescinded said transaction and the plaintiff, its counsel, and/or its agents, The Dime Savings Bank of New York, FSB, did not respond, therefore, the alleged mortgage is not enforceable." In the counterclaim, Define seeks monetary damages based upon various disclosure violations of the state and federal Truth In Lending Acts **[*3]** (TILA), General Statutes, Sec.  36-393 et seq. and 15 U.S.C., Sec. 1601 et seq. In addition, she claims rescission because:

7. Defendant on or about August 7, 1989 rescinded the said mortgage transaction by mailing the notice of rescission to The Dime Savings Bank of New York, F.S.B., and to plaintiff's counsel.

8. Neither the Plaintiff, its agents, or its counsel took action in response to said rescission notice.

9. As a result of the failure to take action pursuant to the defendant's notice of rescission, Defendant is no longer obligated to repay said note and mortgage. In accordance with the rescission statute C.G.S., Sec. 36-407(j)(1), said transaction is unenforceable.

On October 23, 1992, Uptown filed a motion for summary judgment, which was accompanied by a memorandum of law. The memorandum contains the argument that the applicable state and federal statute of limitations entitle the plaintiff to judgment as a matter of law.

Uptown contends that the statute of limitations contained in the federal and state Truth In Lending Acts bar the special defense, thereby entitling it to judgment as a matter of law. However, prior to addressing this argument, the court must [*4] determine whether Uptown is entitled to foreclosure as a matter of law, notwithstanding the defendant's special defense. This determination, of course, requires an examination of the mortgage assignments for technical defects.

The August 18, 1986 assignment was executed in Connecticut. Here an assignment must be executed, attested and acknowledged in the manner prescribed by law for the execution, attestation and acknowledgment of deeds of land before title vests in the assignee. (Emphasis added.) General Statutes, Sec. 49-10. According to section 47-5, all conveyances of land shall be (1) in writing; (2) signed by the grantor; (3) acknowledged by the grantor; and (4) attested to by two witnesses with their own hands. As a result, the assignment must be acknowledged by the grantor before title vests in the assignee. In the present case, the notary reads that Esther A. Define personally appeared before the notary, and not the authorized signatory, Raymond Durand, who is the president of The Dime Real Estate Services - Connecticut. The first assignment simply does not comply with Sec. 49-10 because the assignment does not show that the authorized signatory acknowledged the [*5] execution of the instrument. Title did not vest in The Dime Savings Bank of New York, F.S.B.

Next, on December 19, 1986, The Dime Savings Bank of New York, F.S.B. assigned its interest to Uptown. According to the notary, the assignment was executed in New York. In New York, "the rule is that the validity of a conveyance of a property interest is governed by the law of the place where the property is located." (Citation omitted.) James v. Powell, 279 N.Y.2d 10, 15, 225 N.E.2d 735 (1967). This court, therefore, must apply Connecticut law, which, as set forth above, requires the assignment to be attested to by two witnesses with their own hands. Upon review, it

becomes apparent that the second assignment does not comply with Sec. 49-10 because it was not attested to by two witnesses with their own hands; therefore, title has not vested in Uptown. Uptown is not entitled to judgment as a matter of law.

Since the assignments are flawed, the motion for summary judgment permits the court to avoid addressing Uptown's argument that 15 U.S.C., Sec. 1635(f) and General Statutes, Sec. 36-407(j) of the General Statutes bar the defendant's special defense. "Judgments are rendered on [*6] complaints or counterclaims, or on specific counts of complaints or counterclaims, but there is no provision in Connecticut practice for a 'judgment' to be entered on a special defense." (Emphasis added.) Rigers v. Daly Development Co., Inc., 3 Conn. L. Rptr. 76, 77 (December 19, 1990, Pickett, J.). Despite the foregoing, this court chooses to address those arguments.

Initially, as recited infra, Uptown argues that the defendant's special defense is barred by 15 U.S.C., Sec. 1635(f), 12 CFR, Sec. 226.23 (Regulation Z), and General Statutes, Sec. 36-407(j)(1). U.S.C., title 15, Sec. 1635(f) provides, in relevant part, that "an obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first . . . ." However, according to 12 CRF, Sec. 226.23, the defendant's right to rescind automatically lapses on the occurrence of the earliest of the following three events: (1) the expiration of the three years after consummation of the transaction; (2) the transfer of all of the consumer's interest in the property; and (3) the sale of the consumer's interest in the property. (Emphasis [*7] added.) In addition, the Board of Governors, in an official staff opinion, reiterated that the right to rescind automatically lapses upon the transfer of all of the consumer's interest in the property. Board of Governors of Federal Reserve System Official Staff Interpretation TIL-1, 48 Fed. Reg. 14887. "The Federal Reserve Board staff opinions expressed in Public Information Letters, as well as in Official Staff Interpretations, should be given great deference by courts since the United States Supreme Court has held that 'unless demonstrably irrational, Federal Reserve Board staff opinions construing the [TILA or regulations) should be dispositive . . . .'" (Citation omitted.) Household Finance Corporation v. Nival, 37 Conn. Sup. 606, 609 n.3. On August 22, 1986, the defendant conveyed all the right, title, interest, claim and demand whatsoever as she may have had in the mortgaged property to Mutual Realty Investment Corp. Define, by conveying her entire interest in the mortgaged property, lost the right to rescind the transaction under federal law.

Although her right to rescind under federal law lapsed, the defendant, in the special defense, did not specify whether the [*8] federal or state statute is relied

upon as basis for the right to rescission. General Statutes, Sec. 36-407(j)(1) is identical to its federal counterpart; however, unlike 15 U.S.C., Sec. 1635(f), which is supplemented by Regulation Z, Sec. 36-407(j)(1) is not supplemented by a state regulation. "Under federal truth-in-lending laws, Connecticut enjoys a partial exemption from federal jurisdiction as long as Connecticut's disclosure requirement are the same as the federal requirements." Stone & Stone Pension Plan v. Alston, 12 Conn. App. 670, 673. See also Household Finance Corporation v. Nival, supra, 607 n.1: ("Pursuant to regulation Z, 12 CFR, Sec. 226.12, Connecticut has been granted an exemption from the federal Truth-in-Lending Act; 15 U.S.C., Sec. 1601 et seq.; and the regulations promulgated thereunder.") As a result, the right to rescind, created by Sec. 36-407, lapses only after the expiration of three years from the consummation of the transaction or after the sale of the property.

In the present case, the transaction was consummated on August 18, 1986, the date the defendant executed the mortgage; and the defendant exercised the right of rescission on [*9] August 7, 1989, the date the defendant sent a letter invoking the right to rescission. General Statutes, Sec. 36-407(j)(1) incorporates the right of rescission created by 15 U.S.C., Sec. 1635. According to 15 U.S.C., Sec. 1635(a), "the obligor shall have the right to rescind the transaction . . . by notifying the creditor, in accordance with the regulations of the Board, of his intention to do so." (Emphasis added.) As a result, the obligor exercises the right of rescission by notifying the creditor; therefore, since the defendant sent a letter invoking the right of rescission on August 7, 1989, the defendant exercised the right to rescission within three years from the consummation of the transaction, August 18, 1986.

Although the right to rescind was exercised within three years from the consummation of the transaction, the right to rescind under Sec. 36-407 also lapses upon the sale of the property. On August 22, 1986, the defendant conveyed the property to Mutual Realty. A sale is the "transfer of property for consideration in money or its equivalent." Black's Law Dictionary 1200 (5th ed. 1979). According to the quitclaim deed, the property was conveyed "for the [*10] consideration of less than One Hundred Dollars ($ 100.00)." This raises a genuine issue of material fact as to whether Define transferred the property for consideration in money or its equivalent. However, it should be noted that, although credit transactions within the State of Connecticut have been exempted from the requirements imposed by the federal act; Hartford Federal Savings & Loan Assn. v. Green, 36 Conn. Sup. 506, 511-512, 412 A.2d 709 (App. Sess. 1979); transactions in which a federally chartered institution is a creditor are not exempted from the

requirements of the federal act. 35 Fed. Reg. 11992 (1970).

In Connecticut, where a federally chartered institution is the creditor, it has been held that only the Federal Act should be applied to the case. Hartford Federal Savings & Loan Assn. v. Green, supra, 511-12; see also Robinson v. Olin Credit Union, 48 B.R. 732, 738 (D. Conn. 1984) (District Court mentions Hartford Federal in its ruling that the State Act does not apply to cases involving federally chartered institutions). In the present case, the plaintiff, who acquired the mortgage via a series of assignments involving The Dime Real [*11] Estate Services - Connecticut, Inc. and The Dime Savings Bank of New York, F.S.B., is Uptown Federal Savings & Loan Association. The court elects to follow Hartford Federal which applies the federal statute; therefore, Define's right to rescission lapsed when the defendant transferred her entire interest in the property.

Next, Uptown requests a summary judgment on Define's counterclaim which seeks money damages and rescission based upon various TILA violations. Her right to rescission was addressed above, and the analysis applies equally to the counterclaim. However, she also seeks money damages. In response to Define's counterclaim seeking damages, Uptown, in its special defense and memorandum of law, asserts that the counterclaim is barred by 15 U.S.C., Sec. 1640(e) and General Statutes, Sec. 36-407(e), which are substantially identical and provide that "any action under this section may be brought . . . within one year from the date of the occurrence of the violation." In the present case, the mortgage and promissory note were executed on August 18, 1986, and the action was commenced on March 16, 1990. The violations alleged in the defendant's counterclaim did [*12] not occur within one year of the date of this action.

Nevertheless, the federal and state statutes "[do] not bar a person from asserting a violation of this title in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action." Initially, the plaintiff argues that the recoupment exception is inapplicable because a mortgage foreclosure is not an action to collect a debt because it does not seek a money judgment. However, in the present case, and in virtually all foreclosure actions, the mortgagee seeks a deficiency judgment; therefore, as in First State Bank v. Phillips, 13 Ark. App. 157, 681 S.W.2d 408, 410 (1984), where the court did not specifically state that a foreclosure action was an action to collect a debt, but allowed the recoupment defense, this court will allow the recoupment defense in foreclosure actions. Uptown has instituted an action, at least in part, to collect a debt.

1993 Conn. Super. LEXIS 411, *

It next argues that Define's counterclaim is not a recoupment defense. "Recoupment means 'keeping back something which is due, because there is an equitable [*13] reason to withhold it.' [Citation omitted.] The defense of recoupment has two characteristics: (1) the defense arises out of the transaction constituting the plaintiff's cause of action; and (2) it is purely defensive, used to diminish or defeat the plaintiff's cause, but not as the basis for an affirmative recovery." Genovese v. J. N. Clapp Co., 4 Conn. App. 443, 445. "It may be asserted even though defendant's claim, as an independent suit, is barred by the statute of limitations." (Citations omitted.) Id., 446. In the present case, Uptown alleges disclosure violations in connection with the mortgage transaction; therefore, the counterclaim arises out of the transaction constituting Uptown's cause of action, a foreclosure of the mortgage. In addition, although the defendant has brought a counterclaim and not a special defense, the counterclaim is within the recoupment exception. See Jewitt City Trust Co. v. Grey, 35 Conn. Sup. 508, 390 A.2d 948 (1977). However, the defendant may only "cut down to the full amount of the plaintiff's claim, but may not recover for any balance due him." Id., 510. Accordingly, the court denies Uptown's motion for summary judgment on the [*14] defendant's counterclaim.

In conclusion, the court denies Uptown's motion for summary judgment for the following reasons:

(1) the mortgage assignments do not comply with General Statutes, Secs. 49-10 and 49-5; and

(2) the defendant's counterclaim is not barred by the one-year statute of limitations contained in General Statutes, Sec. 36-407(e) or 15 U.S.C., Sec. 1640(e) because, pursuant to both statutes, a person may assert a violation of TILA in an action to collect a debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or setoff.

Moraghan, J.

# EXHIBIT H

Document6

LEXSEE 1998 CONN. SUPER. LEXIS 2242

### Kevin T. McNamara v. Citicorp Diners Club, Inc.

### CV 980163770

### SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF STAMFORD - NORWALK, AT STAMFORD

### 1998 Conn. Super. LEXIS 2242

### August 11, 1998, Decided

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**DISPOSITION:** Plaintiff's motion to strike the defendant's first defense/counterclaim denied.

**LexisNexis(R) Headnotes**

**JUDGES:** William B. Lewis, Judge.

**OPINIONBY:** WILLIAM B. LEWIS

**OPINION:** Memorandum of Decision

Kevin McNamara, the plaintiff, filed a four-count complaint against Citicorp Diners Club, Inc., the defendant. The complaint alleges violations of General Statutes 36a-645, the Connecticut Creditor's Collection Practices Act (CCPA) and 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA), a breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and negligent infliction of emotional distress under counts one through four, respectively.

The plaintiff held a credit card account with Citicorp Diners Club. The account was related to the plaintiff's employment with Price Waterhouse, LLC. However, the plaintiff was personally and individually liable to the defendant for any balance owed. The plaintiff alleges that the defendant contacted him on or about September 16, 1997, to collect an unpaid [*2] balance on the

account, and the defendant told the plaintiff that although Price Waterhouse guaranteed repayment of any balance on the account, the plaintiff had improperly used the account for personal purposes, and he would be fired if the unpaid balance was not paid in full by September 23, 1997. The plaintiff claims that the defendant's statements were untrue and the defendant knew they were untrue.

Under count one, the plaintiff alleges that the defendant's actions were abusive and misleading, and violated the CCPA. Also, the plaintiff alleges that the actions in violation of CCPA constitute a violation of CUTPA. Under count two, the plaintiff claims that a contractual relationship existed between him and the defendant, and the defendant's actions constituted a breach of the implied covenant of good faith. Under count three, the plaintiff alleges that the defendant intentionally inflicted emotional distress upon the plaintiff, that the defendant's acts were extreme and outrageous, and the defendant knew or should have known that its acts would cause the plaintiff emotional distress. Under count four, the plaintiff alleges that the defendant negligently inflicted emotional [*3] distress.

In response to the complaint, the defendant submitted an answer and asserted two defenses with a counterclaim alleged under the first defense. The defendant alleges that the plaintiff owes a debt of $ 2,682.43, which has been discharged through a bankruptcy proceeding which the plaintiff filed on September 15, 1997. The defendant claims damages in the counterclaim in the amount of the discharged debt. The defendant, under the second defense, asserts that the plaintiff has unclean hands. The plaintiff now moves to strike the first defense and counterclaim on the grounds that the defense fails to state a legally sufficient defense to the plaintiff's action and

that the defendant's counterclaim fails to state a cause of action.

"Whenever any party wishes to contest, . . . the legal sufficiency of any answer to any complaint, counterclaim or cross complaint, or any part of that answer including any special defense contained therein, that party may do so by filing a motion to strike the contested pleading or part thereof." (Internal quotations marks omitted.) *Bouchard v. People's Bank,* 219 Conn. 465, 468 n. 3, 594 A.2d 1 (1991).

"The purpose of a motion to strike **[\*4]** is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotations marks omitted.) *Waters v. Autuori*, 236 Conn. 820, 825-26, 676 A.2d 357 (1996).

The plaintiff argues that the defendant's first defense/counterclaim is legally insufficient because the plaintiff's debt to the defendant under the Diner's Club account has been discharged in bankruptcy. The plaintiff asserts that 524 of the Bankruptcy code protects a debtor from any personal liability. Therefore, any collection efforts by the defendant are illegal. In opposition, the defendant asserts that it is not seeking to collect a debt and merely seeks to reduce any claim that the plaintiff may receive. The defendant argues that although the bankruptcy discharge extinguishes personal liability, the discharge does not actually extinguish **[\*5]** the debt. The defendant asserts that it only seeks recoupment or set-off pursuant to state law, and that the plaintiff's bankruptcy does not affect its right to claim such as a counterclaim. The defendant argues that it may allege a set-off or recoupment as part of a counterclaim. While the defendant has not specifically pleaded the counterclaim as a set-off or recoupment, the counterclaim essentially sets forth the doctrine of recoupment.

"The discharge in bankruptcy does not extinguish the underlying debt. It only prevents the debtor from being personally liable for the discharged debt and forecloses collection of any deficiency judgment . . ." (Citation omitted; internal quotations omitted.) *Shawmut Bank v. Brooks Development Corp.*, 46 Conn. App. 399, 411, 699 A.2d 283 (1997).

"Most cases hold that a valid set-off claim cannot be defeated by a discharge in bankruptcy. These cases rely on [a statement in 553 of the Bankruptcy Code] that,

with certain exceptions not applicable here, this title does not affect any right of a creditor to offset . . ." *In re Buckenmaier,* 127 B.R. 233 (9th Cir. BAP 1991).

The dissent in *Sloan v. Kubitsky,* 48 Conn. App. 835, 712 A.2d 966 (1998), **[\*6]** noted that, "the defenses of recoupment and set-off are generally discussed together and used interchangeably throughout case law and treatises. 'Recoupment is the act of rebating or recouping a part of a claim on which one is sued by means of a legal or equitable right resulting from a counterclaim arising from the same transaction . . . In the absence of a statute providing otherwise, recoupment is purely defensive and not offensive, at least when employed in a court of law. It goes to the justice or existence of plaintiff's claim, and only to the abatement, reduction or mitigation of the damages claimed by plaintiff.' 80 C.J.S. 5-6, Set-off and Counterclaim 2 (1953). 'A set-off is a counter demand which a defendant holds against a plaintiff, arising out of a transaction extrinsic of plaintiff's cause of action.' 80 C.J.S. 7, Set-off and Counterclaim 3 (1953). 'Recoupment and set-off are distinguishable from each other as to origin, subject matter, pleading, and the judgment recoverable . . . However, recoupment and set-off are closely related, and a recoupment is, in a sense, a set-off. In some jurisdictions, by virtue of code or statutory provisions, there is no longer any substantial **[\*7]** difference between the two terms; and sometimes the terms are used interchangeably, or one is erroneously employed when the other is obviously intended.' 80 C.J.S. 19, Set-off and Counterclaim 10 (1953)." *Sloan v. Kubitsky, supra,* 48 Conn. App. 845 n.2.

As the defendant argues in opposition, it is not seeking an affirmative recovery of the debt owed by the plaintiff. It merely requests that the court offset any judgment it may find for the plaintiff by the amount of the plaintiff's discharged debt. Such an action is recognized under Connecticut law: "Connecticut has no statute concerning recoupment, but the state courts have long recognized the ancient equitable defense . . . Recoupment's distinguishing feature is that the defense arises out of the same transaction on which the plaintiff's claim is based." (Citation omitted.) *St. Mary's Hospital v. Torres,* 33 Conn. Supp. 201, 203, 370 A.2d 620 (1976). Furthermore, the defendant has properly asserted the recoupment claim as a defense and counterclaim, for it has been held that "under our present practice, recoupment is to be pleaded as a counterclaim and requires a prayer for affirmative relief . . ." *Capitol Coal Co. v.* **[\*8]** *Greenberg,* 114 Conn. 422, 424, 158 A. 883 (1932). "The defense of recoupment has two characteristics: (1) the defense arises out of the transaction constituting the plaintiff's cause of action;

1998 Conn. Super. LEXIS 2242, *

and (2) it is purely defensive, used to diminish or defeat the plaintiff's cause, but not as the basis for an affirmative recovery." *Genovese v. J.N. Clapp Co.*, 4 Conn. App. 443, 445, 495 A.2d 1079 (1985).

The debt that the defendant raises under the first defense/counterclaim arose out of the same transaction and set of events that the plaintiff alleges in his complaint. As the defendant maintains in its opposing memorandum, it only seeks to use the debt to offset any judgment that the plaintiff may obtain in the current action. The defendant's first defense is recognized under Connecticut law. Furthermore, the applicable bankruptcy law does not bar the defendant's defense.

The plaintiff's motion to strike the defendant's first defense/counterclaim is denied, because the defendant has alleged a legally sufficient defense of recoupment.

So Ordered.

Dated at Stamford, **[*9]** Connecticut, this 11th day of August, 1998.

William B. Lewis, Judge