UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
Aug 24  10 51 AM '04

| | |
|---|---|
| GOLDEN WEST REFINING CORP., LTD., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> PRICEWATERHOUSECOOPERS, LLP and ) <br> COOPERS & LYBRAND LLP, ) <br> ) <br> Defendants. ) | Civil Action No.:3:02 CV 1379(MRK) |
| ALEC SHARP, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> PRICEWATERHOUSECOOPERS LLP d/b/a, ) <br> PRICE WATERHOUSE LLP ) <br> Defendants. ) | Civil Action No.: 3:02 CV 1572(MRK) |
| HANDY & HARMAN REFINING GROUP, ) <br> INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> PRICEWATERHOUSECOOPERS LLP, ) <br> ) <br> Defendant. ) | Civil Action No.: 3:02 CV 1803 (MRK) <br><br> August 23, 2004 |

**REPLY BRIEF IN SUPPORT OF UNDERWRITERS' MOTION TO DISMISS THE COUNTERCLAIMS OF PRICEWATERHOUSECOOPERS**

Plaintiffs Alec Sharp, individually and as representative of Certain Underwriters at Lloyd's, London, et al. ("Underwriters"), by and through their attorneys Wilson, Elser, Moskowitz, Edelman & Dicker LLP, pursuant to Local Rule 7(d), file this, their Reply Brief in

225933.2

Support of their Motion to Dismiss the Counterclaims of PricewaterhouseCoopers ("PWC"), stating as follows:

## I.    THE CONTRACTUAL LANGUAGE IS NOT SUFFICIENT TO SUPPORT PWC'S COUNTERCLAIMS

There is no dispute among the parties as to how Connecticut Courts view exculpatory clauses like the one contained in the contract at issue. Even *B and D Associates, Inc. v. Russell*, 73 Conn.App. 66, 807 A.2d 1001 (2002), cited by PWC, notes that, "it has been repeatedly emphasized that unless the intention of the parties is expressed in unmistakable language, an exculpatory clause will not be deemed to insulate a party from liability for his own negligent acts."[1]  Thus, the key issue to be decided by this Court is whether the language in the engagement letters "unmistakably" demonstrates that Handy & Harman Refining Group, Inc. ("HHRG") intended to indemnify PWC for its negligence.

PWC contends that the use of the word "all" to describe losses, liabilities, etc. demonstrates that the parties intended to include PWC's own negligence in the indemnity clause. It relies upon a 20-year-old Connecticut appellate decision in *Burkle v. Car and Truck Leasing.*, 1 Conn.App. 54, 467 A.2d 1255 (1983), which cites to an even older superior court case. Those cases held that language such as "any and all liabilities" was sufficient to include the idea of negligence. Nevertheless, in the wake of the Connecticut Supreme Court's ruling in *Hyson v. White Water Mountain Resorts of Connecticut, Inc.*, 265 Conn. 636, 829 A.2d 827 (2003), it is clear that much more is needed to evince an intention by one party to indemnify another for his own negligence.

---

[1] In *Russell*, the court found that the language "any damage or loss to any of the foregoing for any cause for any reason whatsoever" demonstrated unmistakably the parties' intent that the landlord would be held harmless for any claim including negligence. As the court noted, the language evidences an intent to release the defendant from liability *no matter how incurred*. *Russell*, 807 A.2d at 1006.

2

In *Hyson*, the Connecticut Supreme Court held that a broad indemnity agreement, including indemnity for "loss or damage, including *any loss or injuries* that result from damages related to the use of a snowtube or lift" (emphasis supplied), did not evidence an agreement to indemnify the ski resort for its own negligence. It found that "in keeping with the well-established principle that 'the law does not favor contract provisions which release a person from his own negligence'"[2] that the "better rule" requires that "a party cannot be released from liability for injuries resulting from future negligence in the absence of language that expressly so provides." Since one must infer the inclusion of negligent conduct from the phrase "any and all liabilities," it is clear that Connecticut law has changed since 1983, particularly since the Connecticut Supreme Court has held that substantially similar language, "any loss or injuries" does not explicitly include negligent conduct.[3]

PWC's attempt to limit the holding of *Hyson* to contracts that do not involve two sophisticated parties is equally unavailing. While PWC correctly notes that the *Hyson* court did not use the opportunity to overrule *Russell*, it only limited its holding in relation to commercial leases with explicit language such as that contained in the release in *Russell*. See *Hyson*, at note 6. Thus, PWC goes too far in asserting that the *Hyson* court "specifically limited its holding to consumer transactions." It clearly did not. Yet even if PWC's analysis was correct, which it is not, the manner in which the *Hyson* court reached its decision is really no different that the *Russell* court's determination. It is the language within the agreements in the two cases that

---

[2] PWC's reflection that this rule is merely a "bromide" is belied by the Connecticut Supreme Court's usage of it. While there is no doubt that commercial parties are free to allocate risks in contractual situations, this "bromide" still applies. It is clear, even by the case law cited by PWC, that one commercial party must explicitly and unmistakably agree to indemnify another for its future negligence, before a Connecticut court will enforce such a contract provision.

[3] In a case that follows *Hyson*, *Ehrenreich v. Mohawk Mountain Ski Area, Inc.*, 2004 Conn.Super. LEXIS 208 (attached as Ex. 1), the court found that indemnification language as to "any loss or damage, including any that result from... personal injury [or] death... related to the use of this equipment" did not explicitly include indemnification for negligence.

3

marks the difference in the outcomes, not the sophistication of the parties. Accordingly, PWC's attempt to distinguish *Hyson* on this basis is unfounded.

For example, prior to *Hyson* and *Russell*, Connecticut state courts have held that indemnity provisions, contracted for by sophisticated parties, must be broad enough to evince the unmistakable intent of the parties to relieve the proposed indemnitee of liability resulting from its own negligence. In *Colombo v. City of Bristol*, 2001 Conn.Super. LEXIS 575 (Conn. Sup. Ct. March 2, 2001) (attached as Exhibit 2), the court held that the relevant indemnity language[4] was not broad enough to indemnify the proposed indemnitee for its own negligence. Similarly, in *Employment Store, Inc. v. Metropolitan District Commission*, 1999 Conn.Super. LEXIS 364 (Conn. Sup. Ct. Feb. 10, 1999) (attached as Exhibit 3), the court held that, "[a]lthough broad, the language[5] of [the contract] is devoid of any intent that the plaintiff must indemnify and hold the defendant harmless from the defendant's *own* negligence. Indeed 'the general rule of law is that an intention to indemnify one against his own negligence must be expressed in clear and unequivocal language."

Finally, in this Court's own decision in *United Aircraft Corp. v. Mackenzie, Inc.*, 196 F.Supp. 933 (D. Conn. 1961), a broadly worded indemnity agreement was held not to indemnify one for his own future negligence. There, the plaintiff, a corporation, brought an action for

---

[4] The language required the indemnitor to hold indemnitee harmless "against any and all claims, damages, losses, litigation expenses, counsel fees and compensation arising out of any injuries . . . caused in whole or in party by the acts or omission of the [indemnitor] . . . or anyone directly or indirectly employed or working for the [indemnitor]."

[5] "The [plaintiff] shall at all times indemnify and save harmless the [defendant] . . . on account of any and all claims, damages, losses, litigation, expenses, counsel fees, and compensation: (a) arising out of injuries (including death) sustained by or alleged to have been sustained by the servants, employees or agents of the [defendant] . . . and (b) arising out of injuries (including death) sustained by or alleged to have been sustained by the public, any or all persons on or near the Work, or by any other person or property, real or personal . . . caused in whole or in party by the acts or omissions of the [plaintiff] . . . ."

4

indemnification under a contract with the defendant, also a corporation, for all amounts plaintiff expended in defending the underlying lawsuit. The indemnity agreement provided:

> The Contractor shall secure and protect itself, and shall secure and protect [plaintiff] from any liability, loss or damage whatsoever for any injury, including death, to any person or property whatsoever in the performance of work under this Agreement or Purchase Orders issued pursuant hereto.

*United Aircraft*, 196 F.Supp. at 934. The Court held that the relevant language was "not so clear and unequivocal that it can be construed to provide for indemnification to plaintiff against losses resulting from plaintiff's own negligence." *United Aircraft*, 196 F.Supp. at 935. Rather, the language related only to "indemnification of plaintiff for acts arising out of defendant's performance." *Id.* Accordingly, the Court held that the defendant did not breach its contract when it refused to indemnify the plaintiff. *Id.*

The indemnity language at issue does not evince the "unmistakable intent" of the parties to relieve PWC of liability arising out of its own negligence. Instead, the language in the 1997, 1998 and 1999 engagement letters provided that PWC and its predecessor, Coopers and Lybrand, be indemnified from "any and all claims, liabilities, costs and expenses attributable to or **arising out of any knowing misrepresentation by a member of the HHRG's management**." Although PWC contends that this language provides it with blanket indemnification, the authority cited herein, including Connecticut Supreme Court's ruling in *Hyson*, demonstrate otherwise.

The PWC language is not unequivocally broad regarding the causes or reasons for the liability as was the case in *Russell*. Instead, the indemnity language contained in the engagement letters simply relieves PWC from liability arising out of misrepresentations made by HHRG personnel. Thus, a reasonable reading of this passage is that HHRG will indemnify PWC of any liabilities to third parties arising out of HHRG's management's misconduct – not PWC's

5

225933.2

negligence. In other words, the purpose of this clause really has nothing to do with PWC's negligence as it wasn't designed to protect PWC from a suit from HHRG, but rather, a suit by a third party who might be injured as a result of misconduct by HHRG's management. This reading is particularly apt since PWC's job as an auditor must preclude it from simply relying upon the statements of HHRG's management when conducting its audit. Of course, if PWC is not negligent, but HHRG's management does cause a loss to others through its misconduct, PWC is entitled to indemnification from HHRG. As pleaded by Underwriters, that is not the case here.

Since Underwriters' allegations against PWC are for PWC's negligence, the indemnification clause cannot be a basis for recoupment or setoff against HHRG. As such, this Court should dismiss PWC's counterclaims against Underwriters as they fail to state a claim upon which relief can be granted.

## II.   PWC'S INITIAL BREACH PRECLUDES ITS INDEMNIFICATION

Underwriters argued in their brief that PWC cannot utilize the indemnity provision for their claims of setoff and recoupment with respect to Underwriters' breach of contract claim, as well. PWC's response to this portion of Underwriters' argument fails to offer any substantial reason to deny Underwriters' motion.

PWC first complains that Underwriters offers no authority for its position that PWC's material breach of the engagement renders the indemnification clause ineffective. While *Bernstein v. Nemeyer*, the Connecticut Supreme Court case cited by Underwriters, does not specifically mention indemnification clauses, its holding is certainly broad enough to include them. The *Bernstein* Court held that "it follows from an uncured material failure of performance that the other party to the contract is discharged from *any* further duty to render performances yet

to be exchanged." 213 Conn. at 672-3 (emphasis supplied). There can be no question that through PWC's recoupment and setoff claims, it is seeking to enforce Underwriters' performance with regard to the indemnification provision in the engagement. PWC's response, that indemnification agreements are generally enforceable, does not speak to situations existing in the present case where the party seeking to enforce the agreement has materially breached the contract that it is attempting to enforce.

PWC next offers a superior court case which found PWC's position "persuasive" but did not rule on it. This is hardly a ringing rejection of Underwriters position, nor is it persuasive authority for PWC's position. In fact, had this superior court been required to rule on this issue, it likely would have been confronted with the logic of Underwriters' position. It would be patently unfair for PWC to fail to perform on its contractual obligations, HHRG to suffer a loss as a result of PWC's failure, and yet, allow PWC to seek and obtain the fruits of a contract it breached through the enforcement of an indemnification clause. This is particularly true under the circumstances of the present case where PWC as an auditor was supposed to be independent from HHRG's management in auditing HHRG's financial statements. Moreover, as noted above, the parties did not agree to such an arrangement in the first instance, as PWC is not explicitly indemnified for its own negligence.

PWC's next response is perplexing. It claims that it is not seeking any performance on behalf of HHRG or Underwriters. This statement is belied by PWC's claim for indemnification. Indemnification is what supposedly entitles PWC to a setoff or recoupment of any damages received from it. There can be no doubt that, any indemnification would have to be "performed" by Underwriters, for PWC to obtain this recovery.

Finally, PWC argues that Underwriters (HHRG) breached the contract first, or at the very least, that there is a fact dispute over who breached the contract first. This argument is a red herring. For PWC to be entitled to indemnification, such that its counterclaims for recoupment or setoff are permitted to stand, PWC must suffer a loss to be setoff against or recouped. The only circumstance under which it could suffer such a loss is if Underwriters wins its case against PWC and forces PWC to pay for its negligence or breach of contract. If this occurs, PWC will have raised and lost all of these issues, including, presumably a claim that the contract is not enforceable. Since the fact issue PWC is raising will have already been decided against it before the issue of setoff or recoupment could ever possibly arise, there cannot be a fact dispute. Thus, as a matter of law, PWC's counterclaims for setoff and recoupment must be dismissed.

### III.     PWC'S COUNTERCLAIMS CANNOT BE BROUGHT AGAINST UNDERWRITERS

As set forth in the Memorandum of Law in Support of their Motion to Dismiss PWC's counterclaims, Underwriters did not assume any obligations of HHRG -- including any obligation to indemnify PWC. A thorough review of Connecticut case law and of PWC's Memorandum of Law in Opposition failed to yield any legal authority which states that a subrogating insurer takes both the rights and the liabilities of its insured. Rather, it is undisputed that an insurer can take no liabilities by subrogation, but only the **rights** of the insured.

PWC apparently agrees, but qualifies its response by stating that the law does not preclude counterclaims against subrogees that are asserted as defenses. PWC offers no support for this contention. Indeed, all of the relevant case law demonstrates that one cannot bring a counterclaim against a subrogating insurer, offensive or otherwise.

The notion of a "defensive" counterclaim in this instance is certainly creative. PWC offers no legal authority for such an idea. In fact, a counterclaim by its very nature is offensive,

8

not defensive. According to Rule 13(a) of the F.R.Civ.P. a counterclaim is "any claim which at the time of serving the pleading, the pleader has against any opposing party." In this case it is *a claim being asserted* by PWC, back against Underwriters. Further, in this case, it is clear that either setoff and recoupment, when included as a counterclaim, do seek affirmative relief for either dependant or independent claims to the transaction at issue. Since any recovery via these counterclaims would theoretically be taken from Underwriters' recovery, it remains a "claim" against Underwriters.

Nevertheless, notwithstanding the semantic debate regarding whether a counterclaim for recoupment is offensive or defensive, it is undisputed that Underwriters did not participate in the contract with PWC, which is the source of PWC's counterclaim. *Royal Insurance*, cited in, and attached to, Underwriters' initial brief, held that an insurer cannot be subject to a counterclaim based on an indemnity agreement to which it is not a party. Its holding was not limited to "offensive" counterclaims. As such, whether or not setoff and recoupment are offensive or defensive counterclaims, the result is the same; they cannot be brought against Underwriters. PWC's counterclaims for setoff and recoupment against Underwriters must therefore be dismissed.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in their Memorandum of Law in Support of their Motion to Dismiss PWC's Counterclaims, this Court should grant Underwriters' motion, dismiss the counterclaims asserted by PWC against Underwriters, and grant Underwriters such further and other relief that this Court deems just and equitable.

9

225933.2

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN
& DICKER LLP

By: _____
Counsel for Underwriters

Edward J. Boyle, Esq. (Pro Hac Vice)
WILSON, ELSER, MOSKOWITZ, EDELMAN
& DICKER LLP
150 E. 42nd Street
New York, NY 10017
Phone (212) 490-3000
Facsimile (212) 490-3038
Boylee@wemed.com

Fred N. Knopf (Ct-09427)
WILSON, ELSER, MOSKOWITZ, EDELMAN
& DICKER LLP
3 Gannett Drive
White Plains, New York 10604-3407
Phone (914) 323-7000, Ext. 4217
Facsimile (914) 323-7001
Knopff@wemed.com

Daniel J. McMahon, Esq. (Pro Hac Vice)
Stefan R. Dandelles, Esq. (Pro Hac Vice)
WILSON, ELSER, MOSKOWITZ, EDELMAN
& DICKER LLP
120 N. LaSalle Street, 26th Floor
Chicago, IL 60602
Phone (312) 704-0550
Facsimile (312) 704-1522

225933.2

LEXSEE

Ellen J. Ehrenreich, as personal representative of the Estate of Emily Ehrenreich et al. v. Mohawk Mountain Ski Area, Inc.

CV030090988S

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF LITCHFIELD, AT LITCHFIELD

*2004 Conn. Super. LEXIS 208*

January 30, 2004, Decided
January 30, 2004, Filed

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**LexisNexis(R) Headnotes**

**JUDGES:** Vanessa L. Bryant.

**OPINIONBY:** Vanessa L. Bryant

**OPINION:** *MEMORANDUM OF DECISION ON MOTION TO IMPLEAD AND OBJECTION TO MOTION TO IMPLEAD*

The defendant, Mohawk Mountain Ski Area, Inc. ("Mohawk"), seeks to implead Stanley Jaworoski ("Jaworoski") as a defendant in this action pursuant to Practice Book § 10-11. The Motion to Implead was filed on September 17, 2003, 5 weeks after the return date. The plaintiff has filed an Objection to Motion to Implead. Section 10-11 provides that:

(a) A defendant in any civil action may move the court for permission as a third-party plaintiff to serve a writ, summons and complaint upon a person not a party to the action who is or *may* be liable to such defendant for all or part of the plaintiff's claim against him or her. Such a motion may be filed at any time before trial and such permission may be granted by the judicial authority if, in its discretion, it deems that the granting of the motion will not unduly delay the trial of the action or work an injustice upon the plaintiff or the party [*2] sought to be impleaded. (Emphasis added.)

Practice Book § 10-11 (2003). The defendant's motion to implead is accompanied by a third-party complaint in two counts, the first of which asserts a claim of contractual indemnification and the second of which asserts a claim of common-law indemnification. The underlying complaint alleges negligence and wanton or reckless misconduct in the operation of a ski area resulting in the death of the plaintiffs' decedent Emily Ehrenreich ("Emily").

The undisputed facts are that on December 27, 2001, Emily, an 11-year-old child, was taken by Jaworoski to a ski area owned and operated by the defendant Mohawk. Jaworoski rented skis for Emily to use from Mohawk. As an express condition of the rental, Jaworoski signed a rental agreement which said, "I agree to hold harmless and indemnify the . . . ski area and their owners . . . for any loss or damage, *including* any that result from . . . personal injury [or] death . . . related to the use of this equipment." (Emphasis added.)

The plaintiffs object to the motion to implead Jaworoski for four reasons. First, the plaintiff claims the defendant's claim against the third-party defendant is barred [*3] as a matter of law because indemnification does not apply to the accident because the consideration for the agreement was the use of the ski equipment not the use of the ski area. Second, the third-party defendant is entitled to a judgment as a matter of law because the indemnity is unenforceable in that it is not sufficiently clear, unambiguous and understandable. Third, relying on *Hyson v. White Water Mountain Resorts of*


EXHIBIT 1

*Connecticut, Inc, 265 Conn. 636, 829 A.2d 827 (2003)*, the indemnification cannot absolve Mohawk of its own negligence. Fourth, the third-party complaint is insufficient in that it fails to set forth well-pleaded facts. For their fourth proposition, the plaintiffs rely on *Commissioner of Environmental Protection v. Lake Phipps Land Owners Corp., 3 Conn.App. 100, 485 A.2d 580 (1985)*, in which the party impleaded filed a Motion to Dismiss.

A defendant may file a motion to implead any party who may be liable for all or part of the plaintiff's claims. *DeJesus v Craftsman Machinery Co. 16 Conn.App. 558, 566, 548 A.2d 736 (1988)*. The defendant need not prove the third-party defendant's liability before it is entitled to [*4] implead him. The third-party defendant need not be liable for all the plaintiff's damages. The third-party complaint must allege that the third-party defendant is or may be liable to the third-party plaintiff for all or some of the plaintiff's claims. *Commissioner v. Lake Phipps Land Owners Corp., 3 Conn.App. 100, 102, 485 A.2d 580 (1985)*. The plaintiff does not assert that the defendant has failed to allege in its third-party complaint that the third-party defendant may be liable for all or a part of the plaintiff's claims.

An objection to a motion to implead is not the appropriate procedural tool to challenge a complaint for the reasons asserted by the plaintiffs. With respect to the first and second bases for the plaintiffs' objection to the Motion to Implead, a motion to strike is the procedural tool to challenge the legal sufficiency of a complaint. Practice Book § 10-39(a). Alternatively a Motion for Summary Judgment would be appropriate if there are no questions of fact and the party cited-in is entitled to a judgment as a matter of law. Practice Book § 17-44 et seq.

With respect to the fourth basis for the plaintiffs' objection, a "request to revise is [*5] a motion for an order directing the opposing party to revise his pleading in the manner specified." *Royce v. Westport, 183 Conn. 177, 180, 439 A.2d 298 (1981)*. "The purpose of a request to revise is to secure a statement of the material facts upon which the adverse party bases his complaint or defense . . . The test is not whether the pleading discloses all that the adversary desires to know in aid of his own cause, but whether it discloses the material facts which constitute the cause of action or ground of defense." (Citation omitted; internal quotation marks omitted.) *Knight v. Southeastern Council on Alcoholism & Drug Dependency*, Superior Court, judicial district of New London, Docket No. CV 01 0557182 (September 21, 2001, Hurley, J.T.R.). citing *Kileen v. General Motors Corp., 36 Conn.Sup. 347, 348, 421 A.2d 874 (1980)*.

The plaintiffs' reliance on *Commissioner of Environmental Protection v. Lake Phipps, supra* is misplaced. In that case the Appellate Court held that a defendant could not implead a third-party defendant claiming that the party sought to be impleaded was liable to the plaintiff. Both counts of the third-party [*6] claim that the third-party defendant is liable, not to the plaintiff, but to the defendant and third-party plaintiff based upon indemnification.

In *Hyson, supra*, our Supreme Court expressly rejected the notion that one party could implicitly agree to indemnify another person against his or her own negligence and concluded that "the better rule is that a party cannot be released from liability for injuries resulting from its future negligence in the absence of language that expressly so provides . . . A requirement of express language releasing the defendant for its negligence prevents individuals from inadvertently relinquishing valuable rights. Furthermore, the requirement that parties seeking to be released from liability for negligence expressly so indicate does not impose on them any significant cost." *Hyson, supra, at 645*. Because the indemnification in this case does not expressly release Mohawk from its own liability, it cannot operate as an indemnification if and to the extent Mohawk was negligent. The amended complaint alleges that Mohawk's acts and omissions were either negligent or wanton and reckless. Mohawk could only be found liable, thus [*7] triggering indemnification if the trier of fact found it to have been negligent or worse, reckless and wanton. Due to the absence of express language in the indemnification releasing Mohawk from its own negligent or wanton and reckless conduct, the plaintiff correctly asserts that there is no right of indemnification for the acts alleged in the complaint and therefore the motion to implead Jaworski predicated on express indemnity should be denied.

Under Practice Book § 10-11 and *General Statutes § 102a*, a defendant may move to serve a third-party complaint by writ summons and complaint against a party who he claims may be liable for some or all of the damages sought from him if the court "deems that the granting of the motion will not unduly delay the trial of the action nor work an injustice upon the plaintiff or the party sought to be impleaded." The holding in *Hyson* clearly presages a Supreme Court ruling that there is no common-law right to indemnification against one's own negligence. Since the sole bases for liability asserted against Mohawk sound in negligence and Jaworski cannot be liable to indemnify Mohawk for its own negligence, granting the [*8] motion to implead would unduly delay the trial and work an injustice on the plaintiff and Jaworski. The motion to implead is denied and the objection is sustained.

BY THE COURT,

Vanessa L. Bryant

LEXSEE 2001 CONN.SUPER LEXIS 575

Alphonse Colombo et al. v. City of Bristol et al.

CV980411649S

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF NEW HAVEN AT NEW HAVEN

*2001 Conn. Super. LEXIS 575*

March 2, 2001, Decided
March 2, 2001, Filed

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**DISPOSITION:** Motions for summary judgment of H. Krevit & Company, Inc. against the City of Bristol, and of the City against Krevit are both denied.

**LexisNexis(R) Headnotes**

**JUDGES:** Thompson, J.

**OPINIONBY:** Thompson

**OPINION:** *MEMORANDUM OF DECISION RE: MOTIONS FOR SUMMARY JUDGMENT # 125 AND # 126*

The plaintiffs in this action have sued the City of Bristol and Alferio Patrizi, its employee essentially alleging that the negligence of Patrizi, acting on behalf of the City caused damage to the plaintiffs. The employer of the plaintiff Alphonse Colombo that being H. Krevit & Company has filed an intervening complaint seeking reimbursement from the defendants for sums paid to Colombo for workers' compensation.

The City of Bristol has filed a counterclaim against Krevit seeking indemnification for any sums which it may be required to pay to the plaintiffs including the cost of defending this action. The counterclaim is based upon indemnification language which is included in a contract between the City and Krevit, the performance of which was the basis of Colombo's [*2] activity when he allegedly sustained the injuries complained of.

Both the City of Bristol and Krevit have moved for summary judgment based upon the indemnification clause in the contract between them which forms the basis of the counterclaim.

The language in question is as follows:

The Bidder, in contracting for goods, services, materials, labor and the like with the City of Bristol and its respective officers, agents and servants, does hereby agree that the bidder will indemnify and save harmless the City of Bristol, its respective officers, agents and servants from and against any and all claims, damages, losses, litigation expenses, counsel fees and compensation arising out of any injuries (including death) sustained by, or alleged to have been sustained by, the servants, employees or agents of the City of Bristol, or of the bidder or of any participant or spectator and from injuries (including death) sustained by, or alleged to have been sustained by, the public or any persons on or near the site, or on any other person or damage to property, real or personal, including property of the City of Bristol and their respective officers, agents and servants, caused in [*3] whole or in part by the acts or omission of the bidder or any participant or spectator or anyone directly or indirectly employed or working for the bidder while engaged in the activity in the City of Bristol.

It is the claim of Krevit, that since the above language provides that Krevit must indemnify the City only for the

EXHIBIT 2

negligence of Krevit or its employees, there is no scenario in which indemnification would come into play since the allegations of the complaint allege negligence only against the City through its employee, Patrizi. The City on the other hand, claims that the indemnification language in question does provide that Krevit must indemnify the City for the City's own negligence under the circumstances of this case.

The City relies in large part on *Laudano v. General Motors Corporation, 34 Conn. Supp. 684, 388 A.2d 842 (1977),* in which the court held that an agreement that required the indemnitor to hold the indemnitee harmless "against all liabilities, claims or demands . . . growing out of the performance of this contract . . ." was broad enough to require that the indemnitor hold the indemnitee harmless for the latter's own negligence.

It [*4] is axiomatic that contract language to the extent that it may be subject to interpretation, must be construed against the party who drew the contract. In this case that party is the City. "An intention to indemnify one against his own negligence must be expressed in clear and unequivocal language." *Burkle v. Car & Truck Leasing. Co., 1 Conn. App. 54, 56, 467 A.2d 1255 (1983).*

The language in this case requires Krevit to hold the City harmless "against any and all claims, damages, losses, litigation expenses, counsel fees and compensation arising out of any injuries . . . caused in whole or in part by the acts or omission of the bidder . . . or anyone directly or indirectly employed or working for the bidder."

Thus, the language in this case is not like that in *Laudano* as it requires some act or omission on that part of Krevit in order to trigger the indemnification requirement. Nor does the language of the hold harmless require that Krevit hold the City harmless for the City's own negligence.

Thus, since the indemnity language in question does not require that Krevit indemnify the City for its own negligence, and the only claims in the complaint relate [*5] to negligence on the part of the City, there cannot be a scenario where the hold harmless would come into play. Therefore, the court agrees with Krevit that it cannot be required to indemnify the City with respect to any sums which the City may be required to pay to the plaintiffs for bodily injury or loss of consortium.

The City argues however, that the indemnification language also includes reimbursement for costs of defense. Specifically the language in question requires Krevit to "indemnify and save harmless the City of Bristol . . . against any and all . . . litigation expenses, counsel fees . . . arising out of any injuries . . . sustained by, or alleged to have been sustained by, the servants, employers or agents . . . of the bidder . . . caused in whole or in part by the acts or omission of the bidder . . . or anyone . . . working for the bidder while engaged in the activity in the City of Bristol."

Thus, there could be a situation where the plaintiffs in this case do not recover damages or their damages are reduced, due to comparative negligence on the part of the plaintiff, Alphonse Colombo. Thus, the City claims that such negligence on the part of Colombo would [*6] trigger that part of the hold harmless that requires Krevit to indemnify the City for costs of defense arising "in whole or in part" from an act or omission of an employee of the bidder.

It could of course be argued that the intent of the parties was that the indemnification for costs of defense would logically come into play only if Krevit were called upon to indemnify the City for any damages which might be required to pay to the plaintiffs, which for the reasons stated above, the court believes cannot occur in this case.

What the intent of the parties was in this regard is not appropriately determined on a motion for summary judgment. Therefore, although the court agrees with Krevit that the hold harmless does not provide the City with indemnification for its own negligence and thus cannot apply to any recovery by the plaintiffs against the City, there does appear to be a question of fact as to whether the City may be entitled to claim indemnity for costs of defense depending upon the outcome of the initial action brought by the plaintiffs, thus precluding summary judgment.

As to the City's motions for summary judgment against Krevit, there clearly exists a question [*7] of fact.

Therefore, the motions for summary judgment of H. Krevit & Company, Inc. against the City of Bristol, and of the City against Krevit are both denied.

Thompson, J

LEXSEE 1999 CONN. SUPER. LEXIS 364

**Employment Store, Inc. v. Metropolitan District Commission**

**CV 98576928S**

**SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF HARTFORD - NEW BRITAIN, AT HARTFORD**

*1999 Conn. Super. LEXIS 364*

**February 10, 1999, Decided
February 11, 1999, Filed**

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**DISPOSITION:** Motion for summary judgment denied.

**LexisNexis(R) Headnotes**

**JUDGES:** Teller, J.

**OPINIONBY:** TELLER

**OPINION:** MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (# 108)

The plaintiff, Employment Store, Inc., filed a complaint against the defendant, Metropolitan District Commission, under *General Statutes 31-293*, to recover compensation the plaintiff has paid or will be obligated to pay in the future under the Workers' Compensation Act to one of its employees, Max Hines, who was injured while working at the defendant's facilities. According to the allegations in the complaint, the injuries to Hines were caused by the negligence of the defendant.

The defendant has filed a motion for summary judgment, arguing that there exists no genuine issue of material fact, and it is entitled to judgment as a matter of law, because the plaintiff was contractually obligated to indemnify the defendant for such loss which it pleaded as a special defense. The defendant provides an affidavit of its purchasing agent, a copy of the contract between it and [*2] the plaintiff and a certificate of insurance, together with a memorandum of law, in support of its motion.

The plaintiff filed an objection to the motion for summary judgment and a memorandum in opposition. The plaintiff argues that the indemnity provision in the contract does not require the plaintiff to indemnify the defendant for its own negligence. n1

> n1 In the alternative, the plaintiff argues that if the contract provision can be construed as requiring indemnity even for the defendant's own negligence, such a provision is void under *General Statues 52-572k*. This basis for the plaintiff's opposition to the motion for summary judgment need not be addressed, however, since I conclude that the plaintiff's first argument precludes summary judgment. In any event, it is doubtful whether 52-572k is applicable to the present case.

"Practice Book [17-49, formerly 384] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is [*3] no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Thompson & Peck, Inc. v. Division Drywall, Inc., 241 Conn. 370, 374, 696 A.2d 326 (1997).*

"Where there is definitive contract language, the determination of what the parties intended by their

**EXHIBIT 3**

contractual commitments is a question of law." (Internal quotation marks omitted.) *Gateway Co. v. DiNoia, 232 Conn. 223, 229, 654 A.2d 342 (1995).* "The unambiguous language of an indemnity clause should be given effect as expressing the parties' intention." *Laudano v. General Motors Corp., 34 Conn. Supp. 684, 687, 388 A.2d 842 (1977)* (Appellate Session). "The intention of the parties is to be ascertained from the language used in the contract and that language must be given its common meaning and usage where it can be sensibly applied to the subject matter of the contract." *Scribner v. O'Brien, Inc., 169 Conn. 389, 398-99, 363 A.2d 160 (1975).*

Paragraph 00510.15 of the contract at issue, entitled Liability-Indemnity, provides in pertinent part that "The Contractor [plaintiff] shall at all times indemnify and save harmless [*4] the District, any municipality included therein, the State of Connecticut, and their respective officers, agents and servants on account of any and all claims, damages, losses, litigation, expenses, counsel fees and compensation: (a) arising out of injuries (including death) sustained by or alleged to have been sustained by the servants, employees or agents of the District, any municipality included therein, the State of Connecticut or the Contractor, its subcontractors or material suppliers; and (b) arising out of injuries (including death) sustained by or alleged to have been sustained by the public, any or all persons on or near the Work, or by any other person or property, real or personal (including property of the District) caused in whole or in part by the acts or omissions of the Contractor, any subcontractor, material suppliers or anyone directly or indirectly employed by them or any of them while engaged in the performance of this Contract and including any maintenance period . . ." Defendant's Memorandum in Support of Motion for Summary Judgment, Exhibit B, 00510.15.

The plaintiff's complaint alleges that it seeks recovery under *General Statutes 31-293* based on the [*5] defendant's negligence. Although broad, the language of 00510.15 is devoid of any intent that the plaintiff must indemnify and hold the defendant harmless from the defendant's *own* negligence. Indeed, "the general rule of law is that an intention to indemnify one against his own negligence must be expressed in clear and unequivocal language." *Laudano v. General Motors Corp., supra, 34 Conn. Supp. 687.*

As the agreement the defendant relies upon does not contain such clear and unequivocal language, it has not demonstrated the nonexistence of a genuine issue of material fact, and hence is not entitled to judgment as a matter of law.

Therefore, its motion for summary judgment must be, and is, denied.

    Teller, J.

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of August 2004, I served a copy of the foregoing brief via facsimile and regular mail to the following legal counsel of record:

William H. Champlin, Esq.
William S. Fish, Esq.
CityPlace - 35th Floor
Hartford, CT 06103
Facsimile (860) 278-3802

David J. Elliott, Esq.
Thomas D. Goldberg, Esq.
William H. Erickson, Esq.
Day, Berry & Howard LLP
CityPlace I
Hartford, CT 06103
Facsimile (860) 275-0343

Steven Humphrey, Esq.
Dina Fisher, Esq.
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103

_____
Fred N. Knopf

225933.2