UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GOLDEN WEST REFINING CORP. LTD., Plaintiff, | : : : |
| VS. | : CIVIL ACTION NO. : 3:02 CV 1379(MRK) |
| PRICEWATERHOUSECOOPERS, LLP and COOPERS & LYBRAND, LLP, Defendants. | : : : : |
| ALEC SHARP, et al. Plaintiffs, | : : : |
| VS. | : CIVIL ACTION NO. : 3:02 CV 1572 (MRK) |
| PRICEWATERHOUSECOOPERS, LLP d/b/a, PRICE WATERHOUSE, LLP Defendants. | : : : : |
| HANDY & HARMAN REFINING GROUP, INC. Plaintiff, | : : : |
| VS. | : CIVIL ACTION NO. : 3:02 CV 1803(MRK) |
| PRICEWATERHOUSECOOPERS, LLP, Defendant. | : : : : AUGUST 24, 2004 |

**HANDY & HARMAN REFINING GROUP, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE COUNTERCLAIMS OF PRICEWATERHOUSECOOPERS**

Plaintiff, Handy & Harman Refining Group ("HHRG"), submits this reply brief in further support of its Motion to Dismiss the Counterclaims of PricewaterhouseCoopers ("PWC") dated July 8, 2004 and in response to PWC's Memorandum of Law in Opposition to HHRG's motion dated July 29, 2004.  PWC's claim that the hold harmless and indemnity provisions in the engagement letters PWC issued to HHRG relieve PWC

1

of liability for its own negligent misconduct when the provisions do not explicitly state that they apply to PWC's own misconduct is without merit. PWC also erroneously asserts that indemnity provisions between commercial parties do not have to explicitly state that the indemnitee is relieved from the indemnitee's own misconduct in order to be enforceable. Finally, PWC's claim that there is a genuine factual dispute as to whether PWC can pursue an indemnification claim against HHRG if PWC has breached the terms of its contract with HHRG is also misplaced. As a matter of law, PWC's material breach of its contractual obligations to HHRG relieves HHRG from any contractual obligation to indemnify PWC for its own misconduct, assuming such a contractual obligation exists in the first instance. Accordingly, the Court should grant HHRG's Motion to Dismiss PWC's Counterclaims.

### I.  HHRG DID NOT AGREE TO INDEMNIFY PWC FOR ITS OWN MISCONDUCT

It is undisputed that Connecticut courts disfavor indemnity and hold harmless clauses in contracts that relieve the indemnitee from liability for its own misconduct. Such clauses are enforceable only if the indemnity language in the contract plainly, precisely, and unmistakably states that it relieves a party from its own misconduct. *Hyson v. White Water Mountain Resorts of Connecticut, Inc.*, 265 Conn. 636 (2003).

Although PWC contends that this rule does not apply to contracts between commercial parties like the one at issue here, no Connecticut appellate court has adopted this argument. In *B and D Associates, Inc. v. Russell, 73* Conn.App. 66 (2002), a case cited by PWC that involved a commercial contract, the Connecticut Appellate Court stated that, "it has been repeatedly emphasized that unless the intention of the parties is

expressed in unmistakable language, an exculpatory clause will not be deemed to insulate a party from liability for his own negligent acts."

In *B and D Associates*, the court ruled that a provision in a lease agreement stating that the landlord was relieved of liability to the tenant "for any damage or loss to any of the foregoing from any cause or for any reason whatsoever" unmistakably evidenced an intent of the parties to release the landlord from liability to the tenant, no matter how incurred, for the types of losses listed in the release provision. *Id*. at 73. The court ruled, however, that the language in the contract did not insulate the landlord from a claim for lost profits based on the landlord's negligence because lost business profits was not a type of loss included in the language of the release. *Id*. Thus, the *B and D Associates* case, upon which PWC relies, shows that an exculpatory clause in a commercial contract must clearly and unambiguously state that an indemnitee is relieved of a particular loss caused by the indemnitee's own misconduct in order for such a clause to be enforced. *See also Colombo v. City of Bristol*, 2001 WL 254276 (Conn. Super. 2001)(holding, as a matter of law, that language of indemnity provision in contract between commercial parties did not specifically state that intervening plaintiff agreed to indemnify defendant or hold defendant harmless for defendant's own negligence)(copy attached as Exhibit A); *Employment Store, Inc. v. Metropolitan District Commission*, 1999 WL 94903 (Conn. Super. 1999)(indemnity provision in contract between commercial parties did not contain clear and unequivocal language by which plaintiff agreed to indemnify defendant for defendant's own negligence)(copy attached as Exhibit B). Similarly, in this Court's own decision in *United Aircraft Corp. v. Mackenzie, Inc.*, 196 F.Supp. 933 (D. Conn. 1961), a broadly worded indemnity agreement was held not to indemnify one for his own future

3

negligence pursuant to a contractual provision between commercial parties. There, the plaintiff corporation brought an action for indemnification under a contract with the defendant corporation for all amounts plaintiff expended in defending the underlying lawsuit. The indemnity agreement provided:

> The Contractor shall secure and protect itself, and shall secure and protect [plaintiff] from any liability, loss or damage whatsoever for any injury, including death, to any person or property whatsoever in the performance of work under this Agreement or Purchase Orders issued pursuant hereto.

*United Aircraft*, 196 F.Supp. at 934. The Court held that the relevant language was "not so clear and unequivocal that it can be construed to provide for indemnification to plaintiff against losses resulting from plaintiff's own negligence." *United Aircraft*, 196 F.Supp. at 935. Rather, the language related only to "indemnification of plaintiff for acts arising out of defendant's performance." *Id*. Accordingly, the Court held that the defendant did not breach its contract when it refused to indemnify the plaintiff. *Id*.

PWC's attempt to limit the holding of *Hyson* to contracts that do not involve two sophisticated parties is unavailing. While PWC correctly notes that the *Hyson* court did not use the opportunity to overrule *B and D Associates*, it only limited its holding in relation to commercial leases with explicit language such as that contained in the release in *B and D Associates*. *See Hyson*, at note 6. Thus, PWC goes too far in asserting that the *Hyson* court "specifically limited its holding to consumer transactions." It clearly did not. The manner in which the *Hyson* court reached its decision is really no different than the *B and D Associates* court's determination. It is the <u>language</u> within the agreements in the two cases that marks the difference in the outcomes, not the sophistication of the parties. Thus, the key issue to be decided by this Court is whether the language in the engagement letters that PWC drafted "unmistakably" demonstrates that HHRG agreed to

4

indemnify PWC for PWC's own misconduct, breach of contract or negligence.[1] It does not.

The indemnity language at issue in this case does not evince the "unmistakable intent" of the parties to relieve PWC of liability arising out of its own misconduct, including negligence. Instead, the language in the 1997, 1998 and 1999 engagement letters provided that PWC and its predecessor, Coopers and Lybrand, be indemnified from "any and all claims, liabilities, costs and expenses **attributable to or arising out of any knowing misrepresentation by a member of the HHRG's management.**" Although PWC focuses on the phrase "any and all claims" to support its claim for blanket indemnification, the authority cited herein, including the Connecticut Supreme Court's ruling in *Hyson*, demonstrate otherwise.[2] The restrictive language in the engagement letters "attributable to or arising out of any knowing misrepresentation by a member of HHRG's management" is a limitation on the types of claims and damages for which PWC may be indemnified. HHRG does not assert a claim for misrepresentation by a member HHRG's mismanagement against PWC. The claims against PWC arise from PWC's own misrepresentations, its failure to meet professional standards, and its failure to meet its contractual obligations.

---

[1] "Where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." *Gateway Co. v. DiNoia*, 232 Conn. 223, 229 (1995).
[2] PWC relies upon the Supreme Court's decision in *Burkle v. Car & Truck Leasing Co.*, 1 Conn. App. 54 (1983) for its position regarding the "any and all claims" language. In *Burkle*, however, the indemnity provision applied to any and all claims "arising from ownership, use, operation" of a leased automobile, and it was undisputed that the underlying claim for which the defendant sought indemnity arose from the ownership, use, or operation of a leased vehicle. *Burkle*, 1 Conn. App. At 57. Here, HHRG's claim against PWC does not involve a knowing misrepresentation by a member of HHRG's mismanagement. Thus, the *Burkle* case is distinguishable from this case.

5

The PWC language is not unequivocally broad as to require HHRG to indemnify PWC for PWC's own misconduct or negligence. As a matter of law, therefore, it is not enforceable and PWC's counterclaim must be dismissed.

## II.   PWC'S INITIAL BREACH PRECLUDES ITS INDEMNIFICATION

PWC also fails to offer any substantial reason to deny HHRG's motion with respect to the claim that PWC's breach of its contractual obligations precludes PWC from asserting a contractual claim for indemnification.

PWC first complains that HHRG offers no authority for its position that PWC's material breach of the engagement renders the indemnification clause ineffective. HHRG cited two cases in addition to the Restatement (Second) Contracts in support of its Motion to Dismiss. *See* HHRG's Memorandum of Law in Support of Motion to Dismiss of p. 7. While *Bernstein v. Nemeyer*, the Connecticut Supreme Court case cited by HHRG, does not specifically mention indemnification clauses, its holding is certainly broad enough to include them. The *Bernstein* Court held that "it follows from an uncured material failure of performance [by one party to a contract] that the other party to the contract is discharged from *any* further duty to render performances yet to be exchanged." *Bernstein v. Demeyer*, 213 Conn. at 665, 672-3 (emphasis supplied). Through its recoupment and setoff claims, PWC is seeking to enforce HHRG's performance with regard to the indemnification provision in the engagement letters. PWC's response, that indemnification agreements are generally enforceable, does not speak to situations existing in the present case where the party seeking to enforce the agreement has materially breached the contract that it is attempting to enforce.

PWC next offers a superior court case which found PWC's position "persuasive" but did not rule on it. In addition to the fact that this case does not constitute authority for PWC's position, it would be patently unfair for PWC to fail to perform on its contractual obligations, HHRG to suffer a loss as a result of PWC's failure, and yet, allow PWC to seek and obtain the fruits of a contract it breached through the enforcement of an indemnification clause. This is particularly true under the circumstances of the present case where PWC as an auditor was supposed to be independent from HHRG's management in auditing HHRG's financial statements. Moreover, as noted above, the parties did not agree to such an arrangement in the first instance, as PWC is not explicitly indemnified for is own negligence.

PWC's claim that it is not seeking any performance on behalf of HHRG is also perplexing. *See* PWC's Memorandum of Law in Opposition to Motion to Dismiss at pp. 11-12. This statement is belied by PWC's claim for indemnification. Indemnification allegedly entitles PWC to a setoff or recoupment of any damages it must pay. There can be no doubt that any indemnification would have to be "performed" by HHRG for PWC to obtain this recovery.

Finally, PWC argues that HHRG breached the contract first, or at the very least, that there is a fact dispute over who breached the contract first. This argument is a red herring. For PWC to be entitled to indemnification, such that its counterclaims for recoupment or setoff are permitted to stand, PWC must suffer a loss to be setoff against or recouped. The only circumstance under which it could suffer such a loss is if HHRG wins its case against PWC and forces PWC to pay for its misrepresentations, negligence, breach of contract, or professional malpractice. If this occurs, PWC will have raised and

lost all of these issues, including presumably a claim that the contract is not enforceable. Since the fact issue PWC is raising will have already been decided against it before the issue of setoff or recoupment could ever possible arise, there cannot be a fact dispute. Thus, as a matter of law, PWC's counterclaims for setoff and recoupment must be dismissed.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in HHRG's Memorandum of Law in Support of its Motion to Dismiss PWC's Counterclaims, this Court should grant HHRG's motion and dismiss the counterclaims PWC asserted against HHRG.

Respectfully submitted,

TYLER COOPER & ALCORN, LLP

By: _____
William H. Champlin III, (ct04202)
William S. Fish, Jr., (ct05349)
Michael T. McCormack, (ct13799)
Tyler Cooper & Alcorn, LLP
CityPlace, 35th Floor
185 Asylum Street
Hartford, CT  06103
Tel:  (860) 725-6200
Fax:  (860) 278-3802

## CERTIFICATION

     I hereby certify that a copy of the foregoing was mailed on August 24, 2004 postage prepaid to all counsel of record as follows:

David Elliott, Esq.
William H. Erickson, Esq.
Day, Berry & Howard
CityPlace I
Hartford, CT 06103

Steven Humphrey, Esq.
Dina Fisher, Esq.
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103

Fred N. Knopf, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd St.
New York, NY 10017-5639

_____
William H. Champlin III