## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| GOLDEN WEST REFINING CORP., LTD., | |
| Plaintiff, | |
| vs. | No. 3:02CV1379 (MRK) |
| PRICEWATERHOUSECOOPERS, LLP, And COOPERS & LYBRAND, LLP, | |
| Defendants. | |
| ALEC SHARP, et al., | |
| Plaintiffs, | |
| vs. | No. 3:02CV1572 (MRK) |
| PRICEWATERHOUSECOOPERS, LLP, d/b/a PRICE WATERHOUSE, LLP, | |
| Defendant. | |
| HANDY & HARMAN REFINING GROUP, INC., | |
| Plaintiff, | |
| vs. | No. 3:02CV1803 (MRK) |
| PRICEWATERHOUSECOOPERS, LLP, | |
| Defendant. | NOVEMBER 8, 2004 |

## **JOINT STATUS REPORT**

Pursuant to this Court's order, plaintiffs Handy & Harman Refining Group, Inc. ("HHRG"), Golden West Refining Corporation Limited ("GWRC"), and Alec Sharp,

235805.1

individually and as representative of certain underwriters ("Underwriters") and the defendant PricewaterhouseCoopers LLP ("PwC") file this Joint Status Report.

A.     Status of the Case.

These three separate actions were filed by HHRG, GWRC (HHRG's Australian parent corporation), and Underwriters, HHRG's insurer. These cases were previously consolidated for all purposes, including for trial. To date, the parties have conducted the following written, fact discovery:

Discovery from HHRG:

On November 26, 2003, PwC served its first set of document requests on HHRG. On April 26, 2004, attorneys for PwC were given access to and began their review of over 700 boxes of original HHRG documents consisting of more than 1 million pages of documents. PwC's attorneys completed their initial review of these documents on June 7, 2004. On or about June 9, 2004, PwC's attorneys were given access to over 60 boxes of HHRG documents which previously had not been available for production because they had been the subject of a U.S. Customs Department subpoena. PwC's attorneys completed their initial review of these documents on August 4, 2004. After reviewing approximately 800 boxes of HHRG documents, counsel for PwC copied approximately 380,000 pages of documents (approximately 170 boxes) for bates labeling and further analysis. Counsel for PwC continue to review and analyze these documents and anticipate that such review will be completed by November 15, 2004.

In its November 26, 2003 requests, PwC also sought production from HHRG of electronic data and documents. PwC and HHRG agreed upon procedures for production of this

electronic data. On or about August 27, 2004, counsel for HHRG sent HHRG's electronic data to PwC's outside vendor. This electronic data comprises approximately 206,600 pages of documents. PwC's counsel will review this electronic data beginning on or about November 15, 2004 when it has completed its review of the paper documents produced by HHRG.

Counsel for HHRG has provided to PwC's counsel a privilege log listing documents HHRG has withheld from production on the basis of attorney-client privilege, the work-product doctrine, or some other basis. Counsel for PwC is in the process of analyzing such claims of privilege to determine if there are any documents withheld from production that ought to have been produced. Counsel for PwC will attempt to resolve such claims with counsel for HHRG and attempt to avoid intervention by the Court on such claims.

Discovery from GWRC:

On October 30, 2003, PwC served its first set of document requests on GWRC. On or about June 9, 2004, attorneys for PwC were given access to and began their review of 400 boxes of original GWRC documents consisting of more than 800,000 pages of documents. On or about July 6, 2004, PwC's attorneys were given access to and began their review of an additional 80 boxes of GWRC documents. PwC's attorneys completed their initial review of all of the paper documents made available by GWRC on or about July 22, 2004. After reviewing the approximately 500 boxes of GWRC documents, counsel for PwC copied approximately 90,000 pages of documents (approximately 39 boxes) for bates labeling and further analysis. Counsel for PwC continue to review and analyze these documents and anticipate that such review will be completed by November 15, 2004.

235805.1

In its October 30, 2003 requests, PwC also sought production from GWRC of electronic data and documents. This electronic data comprises thousands of pages of documents. GWRC's attorneys are in the process of performing a privilege review of such electronic documents and anticipate that such documents will be made available to PwC by November 15, 2004.

Counsel for GWRC has provided two privilege logs listing documents GWRC has withheld from production on the basis of attorney-client privilege, the work-product doctrine, or some other basis. PwC's attorneys are in the process of analyzing such claims of privilege to determine if there are any documents withheld from production that ought to have been produced. Counsel for GWRC anticipate providing a similar log regarding electronic documents withheld from production together with the production of the GWRC electronic data. PwC will review the three privilege logs and address such claims of privilege with counsel for GWRC.

Discovery from Underwriters:

On April 13, 2004, PwC served its first set of document requests on Underwriters. On September 7, 2004, attorneys for PwC received 2 boxes of documents from Underwriters. On September 14, 2004, Underwriters' counsel provided to PwC's counsel a privilege log listing documents Underwriters have withheld from production on the basis of attorney-client privilege, the work-product doctrine, or some other basis. PwC's attorneys are in the process of analyzing such claims of privilege to determine if there are any documents withheld from production that ought to have been produced.

Disputes remain between PwC and Underwriters regarding Underwriters' production of certain documents withheld by Underwriters on the basis of various privileges. Counsel for PwC

and Underwriters have exchanged correspondence on this issue, and counsel for PwC, in letters dated July 13, 2004 and August 2, 2004, set forth PwC's view that such documents are not categorically protected from discovery by virtue of the attorney-client privilege and/or the work product doctrine. Underwriters disagree. The parties have attempted and continue to attempt to resolve this issue without the Court's intervention.

<u>Discovery from PwC</u>:

On July 6, 2001, before plaintiffs commenced these actions and pursuant to a tolling agreement, PwC voluntarily produced to counsel for HHRG PwC's audit working papers associated with the audit work and other agreed upon procedures it had performed for HHRG. This voluntary production consisted of approximately 10 boxes of documents. These documents were made available to counsel for Underwriters in March 2002.

On July 8, 2003, Underwriters served their first set of interrogatories and document requests on PwC. On October 8, 2003, PwC provided its objections and responses to such discovery to Underwriters and made available to Underwriters' counsel a complete set of bates-labeled PwC documents responsive to such discovery requests. Such documents included the documents that PwC had voluntarily made available on July 6, 2001. In October 2003, counsel for Underwriters inspected PwC's document production. In the beginning of September 2004, after finalizing a protective order acceptable to all counsel concerning confidential materials produced in these lawsuits, PwC made its production available for copying to counsel for each of the plaintiffs. Underwriters have also served second interrogatories, a second request to produce, and first requests for admissions on PwC on July 12, 2004. PwC responded to the production requests and interrogatories on August 23, 2004, and the requests to admit on August 24, 2004.

Disputes remain between PwC and Underwriters regarding the adequacy of PwC's responses to Underwriters' discovery requests, including certain interrogatories, document requests, and requests to admit.

On August 6, 2004, PwC's counsel provided to counsel for plaintiffs a privilege log listing documents PwC has withheld from production on the basis of attorney-client privilege, the work-product doctrine, or some other basis. Underwriters have raised concerns with certain documents listed on the privilege log and PwC's attorneys have provided their response to those concerns. This is an issue which has not been resolved from Underwriters' perspective, and likely will have to be tested after oral fact discovery has begun.

With respect to deposition testimony, Underwriters have submitted notices for the depositions of several of PwC's employees and have been requesting mutually available dates for these depositions for months. To date, no PwC deponents have been deposed. PwC and Underwriters dispute whether fact depositions should commence before written discovery is completed.

<u>Third-Party Discovery</u>

PwC has sought discovery from the following third parties:

- Dempsey, Myers & Company LLP ("DMC"), the forensic accounting firm engaged on behalf of HHRG in connection with determining the extend of loss arising out of the events alleged in the complaints and the extent to which such

loss was covered under various insurance policies. DMC produced 26 boxes of documents consisting of approximately 61,000 pages of documents.

- Hagan, Streiff, Newton & Oshiro Accountants, P.C. ("HSNO"), the forensic accounting firm engaged on behalf of the Underwriters to determine the extent of HHRG's loss arising out of the events alleged in the complaints and whether any such loss was covered under the Underwriters' insurance policy. HSNO has produced 20 boxes of documents consisting of approximately 46,000 pages of documents.

- Fleet Precious Metals, Inc.("FPM"), an entity that provided financing for HHRG. FPM made available to PwC 6 boxes of documents, and PwC copied approximately 15,000 pages of documents from that production.

- Credit Suisse First Boston ("CSFB"), another entity that provided financing to HHRG. CSFB made available to PwC approximately 30 boxes of documents, and PwC copied approximately 10,000 pages of documents from that production.

- Federal Insurance Company ("Federal"), another insurer of HHRG that was involved in previous litigation with HHRG and Underwriters regarding whether any of HHRG's alleged losses arising out of the events alleged in the complaints were covered under HHRG's insurance policies with Federal. PwC's counsel is in discussions with Federal's counsel to determine what documents Federal will be prepared to produce.

235805.1

- Alex Stewart (Assayers), Inc. ("ASA") whose South American affiliate performed certain assaying services for HHRG in Peru which are at issue in this case. ASA produced a minimal number of documents in response to PwC's subpoena. It is likely that PwC will have to pursue discovery from the ASA South American entity on this issue.

Pending Motions

The following motions are pending in these cases: (i) Motion to Dismiss PwC's counterclaims filed by Underwriters on June 21, 2004 (Docket # 69.); and (ii) Motion to Dismiss PwC's counterclaims filed by HHRG on July 8, 2004 (Docket #72). PwC filed its memorandum in opposition to both of these motions on July 29, 2004 (Docket # 75). Both Underwriters and HHRG filed reply briefs regarding their respective motions (Docket #82 and 83 respectively).

Circumstances Potentially Interfering With The Parties' Compliance With The Scheduling Order

HHRG and GWRC are in liquidation and/or receivership and have no full time employees. As outlined above, this case entails a massive amount of document discovery. The parties have made efforts to complete this first phase of discovery as efficiently as possible, and, the parties believe that if the remaining document discovery issues noted above are resolved shortly, the parties will be prepared to commence fact witness depositions by the end of December, 2004. Nevertheless, due to the volume of the documents transmitted between the parties, and several disputes that have arisen, the parties have not fully completed written fact discovery to date.

Moreover, the parties have also disagreed as to whether depositions of fact witnesses should commence before the end of December 2004. Underwriters believe that fact witness depositions should begin by November 29, 2004. and that any disputes over written discovery are not an impediment. PwC disagrees

Plaintiffs's reports from their liability experts are now due on January 17, 2005 under the Modified Scheduling Order. These reports may not be finalized until after the relevant depositions of PwC and its employees are completed. The holiday period in late December and early January may cause a delay in the completion of expert reports if deposition discovery is delayed. the parties intend to work to resolve these scheduling issues.

> B.  Referral To Magistrate Judge Or The Special Master Program For Settlement Purposes

PwC does not have any interest at this time in referral of these cases for purposes of settlement to a United States Magistrate Judge or this district's Special Masters Program.

HHRG and GWRC are interested in referral of these cases for purposes of settlement to a United States Magistrate Judge or this district's Special Masters Program after fact discovery is completed.

Underwriters are interested in referral of these cases for purposes of settlement to a United States Magistrate Judge or this district's Special Masters Program.

> C.  Trial Before A Magistrate Judge

The parties do not consent to a trial of these cases before a Magistrate Judge.

> D.  Estimated Length of Trial

PwC estimate that the length of the trial of these cases, including jury selection, will be in excess of 30 days.

HHRG and GWRC estimate that the length of the trial of these cases, including jury selection, will be 7 days.

Underwriters estimate that the length of the trial of these cases, including jury selection, will be 14 days.

DEFENDANT,
PRICEWATERHOUSECOOPERS LLP

By _____
    Thomas D. Goldberg  (ct 04386)
    E-mail: tdgoldberg@dbh.com
    David J. Elliott (ct04301)
    E-mail: djelliott@dbh.com
    William H. Erickson (ct18117)
    E-mail: wherickson@dbh.com
    Day, Berry & Howard LLP
    CityPlace I
    Hartford, Connecticut 06103
    Telephone:  (860) 275-0100
    Fax:  (860) 275-0343
    Its Attorneys

        PLAINTIFF, GOLDEN WEST REFINING
        CORPORATION, LIMITED


By_____
        Dina S. Fisher, Esq.
        Robinson & Cole LLP
        280 Trumbull Street
        Hartford, CT  06103-3597
        Tel:  (860) 275-8237
        Fax:  (860) 275-8299
        Email: dfisher@rc.com

235805.1

PLAINTIFF, ALEC SHARP, BOTH
INDIVIDUALLY AND AS REPRESENTATIVE
OF THE UNDERWRITERS


By_____

    Edward J. Boyle, Esq.
    BoyleE@wemed.com
    Daniel J. McMahon, Esq.
    Mcmahond@wemed.com
    Stefan R. Dandelles, Esq.
    Dandelless@wemed.com
    Daniel E. Tranen, Esq.
    Tranend@wemed.com
    Wilson, Elser, Moskowitz, Edelman &
    Dicker LLP
    150 East 42nd Street
    New York, NY  10017-5639
    Business:  (212) 490-3000
    Fax:  (212) 490-3038

                              PLAINTIFF, HANDY & HARMAN REFINING GROUP, INC.

By_____
       William H. Champlin, Esq.
       Tyler, Cooper & Alcorn LLP
       CityPlace - 35th Floor
       185 Asylum Street
       Hartford, CT  06103
       Tel:  (860) 725-6206
       Fax: (860) 278-3802
       Email:  champlin@tylercooper.com

235805.1

## **CERTIFICATION**

      THIS IS TO CERTIFY that a copy of the foregoing was mailed this day via first-class mail, to each of the following counsel of record in each of the consolidated cases:

Edward J. Boyle, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd Street
New York, NY 10017-5639

Daniel McMahon, Esq.
Stefan Dandelles, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker
120 N. LaSalle Street
Chicago, IL  60602

William H. Champlin III, Esq.
William S. Fish, Jr., Esq.
Tyler, Cooper & Alcorn
CityPlace – 35th Floor
Hartford, CT 06103

Steven R. Humphrey, Esq.
Dina S. Fisher, Esq.
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597

Fred N. Knopf, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker
3 Gannett Drive
White Plains, NY  10604-3407

 

_____
William H. Erickson

235805.1