## SETTLEMENT AGREEMENT

This is a Settlement Agreement ("the Agreement") between, on the one hand, Each of Those Certain Underwriters subscribing to Policy No. 834/FB9700166 issued for the policy period 24 June 1997 to 24 June 2000, a true and correct copy of which is attached hereto as Exhibit 1, in their capacity as such, (collectively, "the Underwriters" or "Underwriters"), and, on the other hand, Handy & Harman Refining Group, Inc. as an assured pursuant to the terms of that policy attached hereto as Exhibit 1 ("HHRG" or "the Assured"). Policy No. 834/FB9700166, a true and correct copy of which is attached hereto as Exhibit 1, is incorporated herein, and is referenced herein, as "the Policy." Underwriters and the Assured are referenced collectively herein as "the Parties."

WHEREAS, Underwriters issued the Policy to the Assured and other assureds for the policy period 24 June 1997 to 24 June 2000. The Assured on 22 February 2000 submitted a written claim under the Policy for losses arising from acts, errors, or omissions on the part of former employees/consultants of HHRG Barry Wayne, Richard L. Searle, Luis Posada, Michael Verleyson, Manuel Seaone, Carlos Augspach, Frank Phillips, Jorge Washington, Erick Claudet, Linneo Klocker, Fernando Limo, Mario Seaone and Jorge Passaro ("the Former Employees") and others as more fully explained in a memorandum submitted on 9 March 2000 and more fully documented in a proof of loss dated 9 October 2000, both of which are incorporated herein by reference ("the Claim");

WHEREAS, Underwriters has acknowledged that a covered loss exists for the Claim under the Policy but has denied that (1) the Assured has submitted satisfactory proof that the total amount claimed by the Assured in the proof of loss submitted 9 October 2000 ("Proof of Loss") is covered under the Policy; (2) the Policy is the only policy of insurance that provides

UL -00302

coverage for the Claim; and (3) the Policy provides primary, as opposed to excess, coverage for the claim; and

WHEREAS, the Parties are desirous of compromising their differences as specified herein;

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual promises set forth below, the Parties agree as follows:

1. <u>Payment</u>. Subject to all of the terms and conditions of the Policy, and without waiving any of those terms and conditions, and conditioned upon entry of an order by the United States Bankruptcy Court for the District of Connecticut in the case of *In Re: Handy & Harman Refining Group, Inc.*, currently pending under Case Nos. 00-20845 (ROK) and 00-20846 (ROK) (the "Bankruptcy Case") approving this Agreement, each of the Underwriters shall pay its respective share as allocated in the Policy of the total sum of $12,500,000 (twelve million five hundred thousand dollars) to the Assured, which net sum is inclusive of the applicable retention under the Policy,[1] and of the limit under the Policy for reimbursement of fees and expenses incurred by the Assured in investigating and submitting the Claim, and represents the sum which the Assured has agreed to accept to resolve the Claim ("the Settlement Payment"). Underwriters shall pay the Settlement Payment to HHRG as soon as practicable, but in no event later than thirty days after receipt by Underwriters' counsel of the Order of the Bankruptcy Court approving this Agreement unless otherwise agreed to by the Parties, by sending the Settlement

---

[1] For the avoidance of doubt, the Parties agree that the policy deductible of GBP 500,000 has been included in determining the sum.

2

UL -00303

Payment via wire transfer to account number 05-08-0005944 at Savings Bank of Rockville, routing number 211 170 318.

2.  **Several Liability of Underwriters.** The liability of each of the Underwriters for the Settlement Payment shall be several, not joint, and limited to the pro rata share of each of the Underwriters as set forth in the Policy. The failure of any one of the Underwriters to pay such share of the Settlement Payment due to insolvency or otherwise shall be deemed a failure to pay consideration only as to that Underwriter and shall not void this Agreement as to any Underwriter who has made such payment; provided however, that should Underwriters collectively fail to pay 90% of the Settlement Payment by the date certain specified in Paragraph 1, this Agreement is voidable in its entirety at the sole option of the Assured. The Assured agrees that a failure of consideration by any particular Underwriter shall constitute a claim against that Underwriter only for that Underwriter's proportionate share of the Settlement Payment, and suspends the release contained herein only as to that Underwriter, and that, before such claim may proceed, the Underwriter shall be allowed to cure the default by any recovery made by the Assured as set forth in Paragraph 11, below.

3.  **No Recoupment.** The Settlement Payment is final and not subject to recoupment from the Assured.

4.  **Cooperation and Compliance with the Policy.** The Assured agrees to cooperate with Underwriters in its continued investigation of the Claim and any subsequent related actions brought by Underwriters, including but not limited to any claims by Underwriters against any other insurers for equitable contribution or under any other theory, or any subrogation actions or claims as assignee of the Assured. The Assured agrees to execute any pleading or other document reasonably necessary to effectuate any of the provisions of this Agreement.

3

UL -00304

Notwithstanding this provision, if HHRG incurs after the Effective date of this Agreement, $250,000 in costs in compliance with its duty to cooperate exclusive of costs incurred in pursuing the Assured's claims set forth in Paragraphs 11 and 12 below, Underwriters agree to indemnify HHRG for all additional reasonable costs resulting therefrom, legal or otherwise, subject to reimbursement to Underwriters pursuant to Paragraph 11, below.

5.  Release By HHRG. HHRG, and each of its administrators, assigns, successors representatives, agents, subsidiaries, partners, directors, officers, employees, franchisees, licensees, brokers, insurers, and attorneys, releases and forever discharges Underwriters, and any of their dependents, executors, administrators, assigns, heirs, relatives, successors, predecessors, representatives, agents, subsidiaries, partners, directors, officers, employees, franchisees, licensees, brokers, insurers, and attorneys (the "Underwriters Released Parties") from any and all claims, actions, demands, damages, expenses, and compensation whatsoever, which HHRG had, has, or may ever have arising from any act, error, or omission which occurred prior to the date of this Agreement, including but not limited to claims which have been or could be or could have been asserted or brought against Underwriters Released Parties based on any or all of

> (i) the Policy;
>
> (ii) the Claim;
>
> (iii) the Former Employees; and/or
>
> (iv) those matters raised in the August 3, 2001 letter of John Dempsey to Charles Lee ("the August 3, 2001 Dempsey Letter"), which is incorporated herein by reference.

6.  Scope of HHRG Release. HHRG acknowledges that the release in Paragraph 5, above, covers claims and causes of action for any form of damages, whether compensatory,

punitive, statutory, or otherwise, and includes claims and causes of action for all forms of costs, fees, or expenses, which accrued or arose as of the date of this Agreement. HHRG further acknowledges that it may discover facts and legal theories in addition to or different from those of which they are now aware. Claims, causes of action, and suits arising out of any or all matters specifically released herein that are based upon facts or legal theories unknown as of the date of this Agreement are barred by this Agreement. HHRG further waives the right to rely upon any statute, rule, or common-law doctrine which precludes the release of claims, causes of action, or suits arising from facts which are not known or are different from those known when a release is executed.

7. <u>No Assignment Warranty</u>. The Assured warrants that it is the sole owner of the rights arising from the Claim, and that it has made no assignment of any of these rights. The Assured agrees to indemnify and hold harmless the Underwriters identified in Paragraphs 2 and 5, above, as to any claims brought by any assignee or lienholder seeking recovery of any damages arising from any claims which could have been brought by the Assured against any of the Underwriters, or in any way relating to the consideration paid for this Agreement.

8. <u>No Admission</u>. Neither this Agreement nor any of its provisions, terms or conditions constitute an admission of liability or wrongdoing on the part of Underwriters. Neither this Agreement nor any of its provisions, terms or conditions shall be construed as an admission of liability or wrongdoing or may be offered or received into evidence in any action or proceeding as evidence of an admission of liability or wrongdoing, except in any action to enforce the terms and provisions of this Agreement.

9. <u>Release by Rothschild and Golden West</u>. Underwriters shall not be obligated to pay the Settlement Payment until it receives a release of the Claim from Rothschilds

5

UL-00306

Continuation Investment Holdings AG ("Rothschild") and from Golden West Refining Corporation Ltd., ("GWRC") substantially in the form as attached hereto as Exhibits 2 and 3.

    10.    <u>Subrogation and Assignment</u>. The Assured acknowledges Underwriters as subrogee pursuant to the Policy as to all losses asserted by the Assured in the Claim. In addition, the Assured assigns to Underwriters all rights, title and interest in any and all claims which the Assured has, had, or may ever have as to all losses asserted by the Assured in the Claim, plus interest, costs, and punitive damages arising from such losses, including but not limited to, any and all such claims against (a) the Former Employees, their relatives, corporations, affiliates and assigns; (b) Panexim, any and all employees or agents of Panexim or related entities; (c) SUNAT; (d) the Peruvian Government; (e) Price WaterhouseCoopers and its predecessors, successors, agents and assigns; (f) Hermes; (g) Alex Stewart Assayers; (h) The Chubb Corporation or Federal Insurance Company (collectively "Chubb") and Hiscox (as provided in Paragraphs 11 and 12 below). With the exception of any claims asserted against Chubb or Hiscox which are subject to Paragraphs 11 and 12 below, the Assured acknowledges that this assignment is full and complete, and without reservation, for Underwriters to pursue recovery of all losses asserted by the Assured in the Claim. The Assured warrants that it has taken all reasonable steps to preserve the assigned claims, and that it has not engaged in any act or omission to (a) compromise the assigned claims or (b) in any way prejudice Underwriters as to the assigned claims. The Assured further agrees to execute with this Agreement, the acknowledgement of assignment and subrogation attached as Exhibit 4.

    11.    <u>Recovery from Chubb</u>. Underwriters and the Assured agree to cooperate in litigation or arbitration or adversary proceeding to be commenced against Chubb in the United States Bankruptcy Court for the District of Connecticut, or elsewhere, for, inter alia, the

declaration of coverage under the Assured's policy with Chubb or its affiliated entities, more specifically, Policy 8146-89-55, and the recovery of amounts thereunder. The Assured shall participate as a party in any such action unless such participation is waived in writing by the Underwriters. Underwriters shall direct, control and prosecute such effort. Should Underwriters determine not to pursue the claim against Chubb, the Assured may do so. Any recovery from Chubb shall be apportioned as follows:

    i. The Assured shall first receive any amount of the Settlement Payment it did not receive by reason of the insolvency or other incapacity of any of the Underwriters who failed to make their proportionate share of the Settlement Payment;

    ii. Underwriters shall next receive an amount equal to any payments it made pursuant to Paragraph 4, above;

    iii. The Assured shall receive the next $2 million in recovery plus any sums expended by the Assured in cooperation with Underwriters pursuant to Paragraph 4, above;

    iv. Underwriters shall receive the next $2 million of any remaining recovery;

    v. Underwriters, or if Underwriters abandon or refuse to pursue the claim against Chubb and the Assured pursues the claim against Chubb, the Assured, shall next receive an amount equivalent to its costs and expenses, including attorneys' fees, disbursements, and court costs incurred pursuing recovery from Chubb;

    vi. The next $3 million in compensatory damages shall be split on a 50/50 basis, so that the Assured shall have received in the aggregate, but not

7

UL -00308

more than, the sum of $16 million, (comprised of actual amounts received in the Settlement Payment plus the amounts received under the provisions of subparagraphs (i), (iii) and (vi) of this Paragraph 11), exclusive of the costs and expenses as defined in subparagraph (v) of this Paragraph 11, if any; provided further that there shall be no limitation on the amount of recovery to the Assured in the event that Underwriters abandon or refuse to pursue the claim against Chubb and the Assured pursues the claim against Chubb;

vii. The Underwriters shall receive all remaining compensatory damages subject to the provisions of subparagraph (vi), above; and

viii. The Parties shall apportion any recovery of punitive damages on a 50/50 basis without regard to amount;

provided, however, that the Underwriters may not enter into a settlement with Chubb without the prior written consent of the Assured if the amount of such settlement is less than that provided for in subparagraphs (i) and (iii) above, provided further that this restriction in settling shall not affect Underwriters' absolute right to abandon or refuse to pursue any claim or action against Chubb.

12. <u>Litigation against Hiscox</u>. Notwithstanding the provisions of Paragraph 11 above, the Assured may pursue coverage litigation or arbitration against the Hiscox Syndicate for coverage under a bullion policy, number 823/MD 9700250, and retain any proceeds therefrom, provided, however, that it afford Underwriters the opportunity to participate in the litigation or arbitration prior to filing. Should Underwriters elect to do so, any recovery shall be apportioned

in the same manner as set forth in Paragraph 11, above, but in no event shall HHRG's recovery against Hiscox be subject to the aggregate limit on compensatory damages set forth therein.

13. <u>Rothschild, GWRC, Liquidating Custodian, and Bankruptcy Court Approval</u>. This entire Agreement is contingent upon the approval of the Agreement by Rothschild, GWRC, the Liquidating Custodian and the court in the Bankruptcy Case. The approval by Rothschild and GWRC shall be effective by execution and delivery to Underwriters of Exhibits 2 and 3, attached. Approval by the Liquidating Custodian shall be effective by execution below. Approval by the court in the Bankruptcy Case shall be by entry of an order by that court and the exhaustion of all appeals and/or the expiration of all appeal periods, i.e., a final order. In the event that approval by the court in the Bankruptcy Case is not granted, the Parties shall make good faith efforts to execute a revised agreement in conformance with any guidance that the bankruptcy court might provide.

14. <u>No Representations</u>. The Parties agree that each has conducted its own investigation of the Claim and has inspected the books and records of the Assured and of Panexim, to the extent available. The Parties agree that they in no way rely on any statements or representations of the other with respect to the Claim or the amount thereof and that they have decided to enter into this Settlement Agreement on the basis of their individual determinations.

15. <u>Merger</u>. All the agreements, covenants, representations, and warranties between the Parties, expressed or implied, oral or written, concerning the subject matter of this Agreement are contained in this Agreement. All prior and contemporaneous conversations, negotiations, agreements, representations, covenants, and warranties, concerning the subject matter of this Agreement, are merged into this Agreement.

9

UL -00310

16. <u>No Modification Except in Writing</u>. This Agreement may not be modified except by written agreement of all the Parties duly executed by the Parties.

17. <u>Facsimile</u>. Transmission of a signed Agreement by facsimile shall constitute receipt of an original signed agreement by mail.

18. <u>Joint Drafting and Representation by Counsel</u>. Each of the Parties is being represented or has had the opportunity to be represented by his/its own attorney, and this Agreement represents the collaborative drafting of the Parties such that no rule of <u>contra proferendum</u> shall be applied in interpreting the terms of this Agreement.

19. <u>Authorization</u>. Each of the Parties warrant that the person executing the Agreement below on behalf of that particular party is authorized to do so and is authorized to bind that particular party to this Agreement.

20. <u>Incorporation</u>. All of the sections of this Agreement, attached exhibits, and documents incorporated by reference are all an integral part of this Agreement and are hereby incorporated herein and made a part hereof as though fully set forth herein.

21. <u>Choice of Law</u>. The construction, interpretation and meaning of the terms and conditions of this Agreement shall be determined in accordance with the law of Connecticut.

22. <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute but one and the same instrument.

23. <u>Headings</u>. All headings herein are for convenience only. This Agreement shall be interpreted and applied without regard to such headings.

24. <u>Binding</u>. All of the terms and provisions of this Agreement shall be binding upon and inure, jointly and severally, to the benefit of the Parties and their respective successors and assigns.

25. <u>Attorney Review</u>. Each of the Parties hereto hereby expressly acknowledges that it has reviewed this Agreement with its attorneys, who have advised it of the legal consequences of the execution of the Agreement and that the person signing on behalf of each party has the authority to do so.

26. <u>Notice</u>. All notices pursuant to this Agreement shall be made by facsimile transmission or hand delivery, <u>and</u> by regular United States mail, to the following:

    (a)    to the Assured care of :

        Charles T. Lee, Esq.
        Paul, Hastings, Janofsky & Walker, LLP
        1055 Washington Blvd.
        Stamford, CT 06901-2217

    (b)    to Underwriters, concerning all matters relating to any claims against Chubb or Hiscox, care of :

        Philip H. Kalban, Esq.
        Fischbein, Badillo, Wagner & Harding, LLP
        909 Third Avenue
        New York, NY 10022

    (c)    to Underwriters, concerning all matters other than any claims against Chubb or Hiscox, to:

        Daniel J. McMahon, Esq.
        Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
        120 N. LaSalle St., 26th Fl.
        Chicago, IL 60602
        and

UL-00312

(d)    to the Liquidating Custodian, care of:

Jed Horwitt, Esq.
Zeisler & Zeisler, P.C.
558 Clinton Avenue
Bridgeport, CT  06605

27.    <u>Date Hereof</u>. The date hereof as used herein shall mean the year and the date of the last entity to execute this Agreement.

THOSE CERTAIN UNDERWRITERS
SUBSCRIBING TO POLICY NO.:834/FB9700166

By: _____
Name Daniel J. McMahon
Title: Attorney
Date: 12/31/01

HANDY & HARMAN REFINING GROUP, INC.

By: _____
Name Jed Horwitt Liquidating Custodian, LLC
Title: Liquidating Custodian
Date: 12/28/01

APPROVAL BY LIQUIDATING CUSTODIAN
IN THE BANKRUPTCY CASE

By: _____
[Printed Name]
Date: 12/28/01

STM/210177.1
12/22/01

12                                                                UL-00313