LEXSEE 1994 US DIST LEXIS 17768

**ARKWRIGHT MUTUAL INSURANCE COMPANY, Plaintiff, - against - NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Defendant. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Defendant/Counter-Plaintiff, - against - ARKWRIGHT MUTUAL INSURANCE COMPANY, Plaintiff/Counter-Defendant.**

90 Civ. 7811 (AGS)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*1994 U.S. Dist. LEXIS 17768*

December 13, 1994, Decided
December 13, 1994, FILED

**LexisNexis(R) Headnotes**

**JUDGES:** [*1] JAMES C. FRANCIS IV, UNITED STATES MAGISTRATE JUDGE

**OPINIONBY:** JAMES C. FRANCIS IV

**OPINION:**

MEMORANDUM AND ORDER

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

The plaintiff in this action, Arkwright Mutual Insurance Company ("Arkwright"), has moved to compel production of four documents by non-party deponents Zurich Insurance Company ("Zurich") and its employee, Mary Ann O'Brien. Zurich has withheld these documents on grounds of the attorney-client privilege and the work product doctrine. Arkwright has also applied for an order compelling non-party Clausen Miller Gorman Caffrey & Witous, P.C. ("Clausen Miller") to certify that it does not possess any additional documents responsive to a subpoena served on it by Arkwright. Each issue will be addressed in turn.

Attorney-Client Privilege

Zurich has withheld three documents on grounds of attorney-client privilege. n1 Each consists of handwritten notes prepared by Ms. O'Brien concerning conversations that she had with attorneys at the Clausen Miller firm. According to Ms. O'Brien,

> Each of these conversations involved and included discussion of the respective rights and obligations of Zurich as a reinsurer of Arkwright with respect to the [*2] casualty loss in this case. Each of those conversations all of which occurred after 1990, were undertaken with a view to trying to determine whether Zurich might decide to withhold coverage, assert reservations of rights or in some other sense take a position adverse to that of Arkwright, and thus likely become the subject of litigation.

Affidavit of Mary Ann O'Brien dated Oct. 21, 1994, at P 10.

> n1 These are designated [000301-000303], [000377-000378], and [000380]. The latter two were also withheld on grounds of the work product doctrine as will be discussed below.

Because this is a diversity action, New York law governs privilege issues. See *Bowne of New York City, Inc. v. Ambase Corp., 150 F.R.D. 465, 470 (S.D.N.Y. 1993); Fine v. Facet Aerospace Products Co., 133 F.R.D. 439, 443 (S.D.N.Y. 1990).* The attorney-client

1994 U.S. Dist. LEXIS 17768, *

privilege "protects both client communications to their attorneys and communications from the attorney to the client which include legal [*3] advice or reflect information provided by the client in confidence." *Id. at 444.* The burden of demonstrating that the privilege applies rests with the party invoking it. See *Bowne, 150 F.R.D. at 470; Priest v. Hennessy, 51 N.Y.2d 62, 69, 431 N.Y.S.2d 511, 514, 409 N.E.2d 983 (1980).*

Here, Zurich has met that burden in all respects save one. It is undisputed that Zurich retained the Clausen Miller firm in 1990 to offer advice concerning the interpretation of certain language in its reinsurance agreement with Arkwright. However, by 1992 when the documents at issue were created, Clausen Miller was representing National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), another reinsurer and the defendant in the instant action. Ms. O'Brien's affidavit is ambiguous with respect to whether Zurich continued to retain Clausen Miller at this time. If it did not, then no attorney-client relationship existed and no privilege may be asserted. Until Zurich provides unequivocal evidence in this regard, its claim of privilege must be rejected.

Work Product Doctrine [*4]

In addition to two of the documents withheld on the basis of attorney-client privilege, Zurich has asserted the work product doctrine with respect to one further document. It is a report of a meeting between a claims manager of Zurich and an officer of Starr Tech, an agent of National Union. n2

n2 This document is designated [000299-000300].

The work product doctrine protects from discovery documents prepared principally to assist in anticipated or ongoing litigation. See *Martin v. Valley National Bank, 140 F.R.D. 291, 304 (S.D.N.Y. 1991);* 8 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 2024, at 198 (1970). "It follows then, that if a party prepares a document in the ordinary course of its business, it will not be protected even if the party is aware that the document may also be useful in the event of litigation." *Martin, 140 F.R.D. at 304* (citations omitted).

Application of these principles becomes complicated where, as [*5] here, the very business of the producing party is to evaluate claims that may ultimately ripen into litigation. Consequently, in evaluating a claim of work product by an insurer, courts have developed a useful presumption: if a declination decision has been made,

documents subsequently drafted were created "in anticipation of litigation;" if the claim has not yet been rejected, the documents are part of the claim investigation process and are not work product. See *Bank Hapoalim, B.M. v. American Home Assurance Co., No. 92 Civ. 3561 (KMW), 1994 U.S. Dist. Lexis 4091 (S.D.N.Y. April 6, 1994), at \*24-\*25; Stout v. Illinois Farmers Insurance Co., 150 F.R.D. 594, 600 (S.D. Ind. 1993),* order aff'd, *852 F. Supp. 704 (S.D. Ind. 1994); Harper v. Auto-Owners Insurance Co., 138 F.R.D. 655, 663 (S.D. Ind. 1991); Fine v. Bellefonte Underwriters Insurance Co., 91 F.R.D. 420, 422-23 (S.D.N.Y. 1981).*

Here, not only has Zurich never rejected Arkwright's claim, but it has actually made payment on the claim, albeit with a reservation of rights. Thus, [*6] there is a strong presumption that the documents withheld were not created in anticipation of litigation. Such a presumption can be rebutted, see *Harper, 138 F.R.D. at 664 n.4,* but in this case Zurich has offered no specific evidence of a resolve to litigate. Its assertion of the work product doctrine must therefore be rejected. n3

n3 Arkwright also argues that the work product doctrine cannot apply because even if the documents were created in anticipation of litigation, it was not in preparation for the instant suit between Arkwright and National Union. However, documents created in anticipation of one case may be protected from discovery in another, at least if the cases are closely related. See *SCM Corp. v. Xerox Corp., 70 F.R.D. 508, 516 (D.Conn. 1976); Midland Investment Co. v. Van Alstyne, Noel & Co., 59 F.R.D. 134, 138 (S.D.N.Y. 1973).* At any rate, this issue need not be decided here in light of the failure of Zurich to establish the applicability of the work product doctrine in the first place.

[*7]

Certification of Production

Finally, Arkwright asks that Clausen Miller be required to certify that it has no additional documents responsive to a subpoena that sought documents concerning its relation to Zurich. While Clausen Miller has represented that it has produced all non-privileged documents from its Zurich file, Arkwright argues that there may be additional documents relating to the communications between Starr Tech and Zurich in 1992.

As long as Clausen Miller's original document search was adequate, the requirement of certifying the completeness of its production creates no additional burden. If, on the other hand, Clausen Miller considers it

Case 3:02-cv-01379-MRK    Document 107-5    Filed 01/19/2005    Page 4 of 17

Page 3
1994 U.S. Dist. LEXIS 17768, *

necessary to review its files in order to provide a certification, the universe of documents now identified by Arkwright is narrow enough that a focused search could be conducted efficiently. Therefore, Clausen Miller shall provide a representation that it has produced all documents in its possession relating to contacts between Starr Tech and Zurich in 1992.

Conclusion

For the reasons set forth above, Arkwright's motion to compel production of four documents withheld by Zurich on grounds of attorney-client privilege and [*8] work product doctrine is granted. No costs shall be

awarded in connection with that motion. Arkwright's application for an order requiring Clausen Miller to certify the completeness of its production is granted to the extent set forth above.

SO ORDERED.

JAMES C. FRANCIS IV

UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
December 13, 1994

2 of 2 DOCUMENTS

**AMOCO OIL COMPANY, Plaintiff, - against - HARTFORD ACCIDENT & INDEMNITY CO., HARTFORD CASUALTY INS. CO., HARTFORD FIRE INS. CO., HARTFORD INS. CO. of the MIDWEST, THE HARTFORD STEAM BOILER INSPECTION and INS CO., and ITT HARTFORD GROUP, INC., Defendants.**

93 Civ. 7295 (SS)

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1995 U.S. Dist. LEXIS 13532*

September 18, 1995, Decided
September 18, 1995, FILED

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1]

For AMOCO OIL COMPANY, plaintiff: Richard P. Marin, Goldberg & Marin, New York, NY.

**JUDGES:** JAMES C. FRANCIS IV, UNITED STATES MAGISTRATE JUDGE

**OPINIONBY:** JAMES C. FRANCIS IV

**OPINION:**

MEMORANDUM AND ORDER

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

This case concerns the claim of the Amoco Oil Company ("Amoco") for payment under a general liability insurance policy issued by the Hartford Insurance Company ("Hartford"). Paul Brosnan initiated a personal injury action against Amoco which was ultimately settled. Amoco seeks reimbursement from Hartford for its defense of the Brosnan case and for the amount of the settlement. Hartford has disclaimed coverage.

The current dispute concerns Hartford's assertion of the work product doctrine with respect to portions of five internal memoranda contained in its files. I have reviewed unredacted versions of the contested documents in camera. The documents are:

#1 - A memorandum dated July 12, 1991 from William Lutz, a Home Office Supervisor for Hartford, to Gerald Ragusa, an Assistant Claims Manager in the New York City office, discussing Amoco's claim under the policy in relation to the Brosnan litigation;

#2 - A memorandum dated February 10, 1992 from Melissa Rivera, a Claims Adjuster in the New York City office, [*2] to Timothy F.X. Jones, an in-house attorney for Hartford, concerning the Brosnan litigation;

#3 - A memorandum dated November 17, 1992 from Gerald Ragusa to Mike Alvord, Hartford's Home Office Supervisor, concerning Amoco's demand that Hartford assume the defense of the Brosnan case;

#4 - A memorandum dated December 18, 1990 from William Lutz to Gerald Ragusa regarding Hartford's liability under the same policy but in connection with a personal injury action brought by Shawn Collins; and

#5 - A memorandum dated December 19, 1990 from William Lutz to Gerald Ragusa concerning Hartford's ultimate responsibility regarding a personal injury action brought by Michael Patruno.

While the work product doctrine protects from discovery documents prepared to assist in anticipated or ongoing litigation, it does not insulate documents created in the ordinary course of business. Because insurance companies are in the business of evaluating claims that

may lead to litigation, courts have developed a presumption for analyzing their work product arguments: if a declination decision has been made, documents subsequently drafted are presumed to have been created in anticipation of litigation; [*3] if the claim has not yet been rejected the documents are part of the claim investigation process and are not work product. See *Arkwright Mutual Insurance Co. v. National Union Fire Insurance Co. of Pittsburgh, Pa., 1994 U.S. Dist. LEXIS 17768, No. 90 Civ. 7811 (AGS), 1994 WL 698298*, at *2 (S.D.N.Y. Dec. 13, 1994); *Bank Hapoalim, B.M. v. American Home Assurance Co., 1994 U.S. Dist. LEXIS 4091, No. 92 Civ. 3561 (KMW), 1994 WL 119575*, at *8-9 (S.D.N.Y. April 6, 1994).

In the Brosnan case, Hartford denied coverage in a letter to Amoco dated August 27, 1991 and mailed on September 9. Letter of Richard P. Marin dated September 6, 1995, Exh. S. Thus, it is presumed that Document #1, dated July 12, 1991, was not created in anticipation of litigation. That presumption, however, is a rebuttable one. Here, the July 12 memo itself provides instructions for issuing a disclaimer, and it served as the basis for the letter sent to Amoco shortly thereafter. Marin Letter, Exh. R. The fact that a reservation of rights letter rather than a disclaimer was sent to Amoco in the interim is of no moment. Marin Letter, Exh. Q. Moreover, it is clear from the text of the July 12 memo that litigation was expected. Document #1 therefore qualifies as work [*4] product.

Nevertheless, it must be disclosed. Hartford has already produced a redacted version of the memo that reveals most of the substance of the interoffice communication. A party may not use a privilege as both a sword and a shield by picking and choosing among the protected documents (or portions of documents) that it wishes to produce. See *Coleco Industries, Inc. v. Universal City Studios, Inc., 110 F.R.D. 688, 691 (S.D.N.Y. 1986)*. Since the redacted section of Document #1 is no more privileged than that which has been disclosed, the entire memorandum must be produced.

Documents #2 and #3 postdate Hartford's declination and are clearly work product. As with Document #1, Hartford has already revealed portions of these memos. However, the sections disclosed do not include substantive, confidential information. Thus, there has not been the same selective assertion of the privilege

as with Document #1. Hartford therefore need not produce unredacted copies of Documents #2 and #3.

Document #4, relating to the Collins case, indicates on its face that it was created after coverage was disclaimed. Again, the portion of the memo disclosed does not include substantive information, [*5] so the work production protection applicable to the redacted portion has not been waived.

Hartford has provided no indication of when any disclaimer was made in the Patruno case, but Document #5 appears to have been created prior to any denial of coverage since it refers only to a reservation of rights. Moreover, as with Document #1, Hartford has already disclosed significant portions of the memo which, if they qualify as work product, would constitute a waiver of the privilege as to the balance of the document.

Finally, with respect to all of the documents, Amoco argues that Hartford has waived any privilege by failing to respond to the discovery request in a timely fashion. The document demand was propounded on June 28, 1994. Marin Letter, Exh. A. On July 27, 1994, even before thirty days had elapsed, Amoco's counsel complained to the Court that Hartford had not responded. Marin Letter, Exh. B. At a subsequent pretrial conference, the Court permitted Hartford to move for a protective order, and Amoco did not respond until September of this year. Under these circumstances, Amoco has hardly been prejudiced and no general waiver of the right to object to discovery has been effected.

**[*6] Conclusion**

For the reasons set forth above, Hartford shall produce unredacted versions of Documents #1 and #5 but it need not disclose the redacted portions of Documents #2, #3, and #4.

SO ORDERED.

JAMES C. FRANCIS IV

UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
September 18, 1995

LEXSEE 1998 U.S. DIST. LEXIS 16183

**MOUNT VERNON FIRE INSURANCE COMPANY, Plaintiff, v. TRY 3 BUILDING SERVICES, INC., et al., Defendants.**

**96 Civ. 5590 (MJL) (HBP)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1998 U.S. Dist. LEXIS 16183*

**October 14, 1998, Decided
October 16, 1998, Filed**

**DISPOSITION:** [*1] Plaintiff's application to withhold or redact certain documents on basis of attorney-client privilege and work-product doctrine granted in part and denied in part.

**LexisNexis(R) Headnotes**

**COUNSEL:** For MOUNT VERNON FIRE INSURANCE COMPANY, plaintiff: Louis G. Corsi, Landman Corsi Ballaine & Ford P.C., New York, NY.

For MARTIN FINE, 402 WEST 38TH STREET CORP., defendants: Brian A. Andrews, Weg & Myers, P.C., New York, NY.

For THE CITY OF NEW YORK, defendant: Norman Kapp, Paul Crotty, Corporation Counsel, NewYork, NY.

For GURMIT SINGH, defendant: Michael D Napolitano, Dinkes & Morelli, Esqs., New York, NY.

For GOLDHAMMER WITTENSTEIN GOOD, defendant: Douglas L. Douglas L. Pintauro, L'ABBATE & BALKAN, Garden City, NY.

For 402 WEST 38TH STREET CORP., counter-claimant: Brian A. Andrews, Weg & Myers, P.C., New York, NY.

For MOUNT VERNON FIRE INSURANCE COMPANY, counter-defendant: Louis G. Corsi, LandmanCorsi Ballaine & Ford P.C., New York, NY.

For 402 WEST 38TH STREET CORP., third-party plaintiff: Brian A. Andrews, Weg & Myers, P.C., NewYork, NY.

For MARS BROKERAGE INC., third-party defendant: Irwin Staple, Esq., Irwin Staple, Esq., NewRochelle, NY.

**JUDGES:** HENRY PITMAN, United States Magistrate Judge.

**OPINIONBY:** HENRY PITMAN

**OPINION:**

OPINION AND ORDER

PITMAN, United States Magistrate Judge:

I. Introduction

This matter has been referred to me for the resolution of the parties' dispute concerning privileged documents. Presently before me is plaintiff's application to withhold or redact certain documents on the basis of the attorney-client privilege and work-product doctrine. Defendants Goldhammer, Wittenstein & Good ("Goldhammer") and the City of New York ("the City") challenge plaintiff's withholding of these documents on the grounds that they are not within the scope of the privileges asserted. For the reasons set forth below, plaintiff's application is granted in part and denied in part.

II. Facts

A. Basis of Underlying Claims

This is a diversity action in which Mount Vernon Fire Insurance Company ("Mt. Vernon") seeks a declaration that it has no duty under a commercial liability policy to defend or indemnify two of its insureds, defendants Try 3 Building [*2] Services, Inc. ("Try 3") and 402 West 38th Street Corp. ("402"). This action arises out of the April 6, 1995 partial collapse of a building at 402 West 38th Street, New York, which resulted in the death of one worker and injuries to three others.

After receiving a notice of claim in late April, 1995, Mt. Vernon retained J & N Investigation & Claim Service ("J & N") on May 1, 1995, to investigate the incident and to obtain both a statement from the insured and any other relevant documents. J & N was also directed to investigate facts relevant to potential liability and coverage issues (Declaration of Bernard T. Quinn, dated May 28, 1998 ("Quinn Decl.") PP 3-4). According to Mt. Vernon, its initial concern over coverage issues was prompted by its understanding that the collapse occurred during the course of demolition work performed by a general contractor. Mt. Vernon believed that this fact would give rise to coverage issues because it interprets the policy as being limited to "interior carpentry" and excluding injuries and damages "arising out of operations performed for any insured by independent contractors or acts or omissions of any insured in connection with his general supervision [*3] of such operations" (Quinn Decl. PP 2, 5).

On May 25, 1995, J & N issued its preliminary report to Mt. Vernon (Quinn Decl. P 7). Shortly thereafter, Mt. Vernon forwarded its claim file to its former attorneys, Thurm & Heller, for advice (Quinn Decl. P 8). After receiving Thurm & Heller's recommendations, on June 20, 1995, Mt. Vernon notified Try 3 by letter that it was reserving its rights with respect to coverage and indemnification issues (Letter from Mt. Vernon to Try 3, Doc. 00747).

The three individuals injured in the accident commenced an action against Try 3 and 402 in the Supreme Court of the State of New York in April, 1996. n1 In June, 1996, Mt. Vernon retained counsel to defend its insureds in that action, subject to its reservation of rights. Approximately one month thereafter, Mt. Vernon commenced this declaratory judgment action. In addition to 402 and Try 3, the complaint named as defendants all the parties in the state court personal injury actions.

n1 The estate of the decedent killed in the accident subsequently commenced a separate action in the same court against Try 3 and 402; the two actions were consolidated in October, 1996.

[*4]

B. The Pending Discovery Dispute

On April 16, 1997, counsel for defendant Goldhammer, the architect involved in the demolition project, wrote to the Court seeking production of certain documents in Mt. Vernon's claim file which had been withheld or produced in redacted form. Mt. Vernon subsequently submitted the documents in dispute to the Court for in camera review, and served a privilege log describing the documents withheld or redacted and the privileges asserted for each. The matter was then referred to me. By Order dated May 20, 1998, n2 I directed Mt. Vernon to submit affidavits and legal argument in support of its assertions of privilege by May 29, 1998, defendants to submit responsive papers by June 12, 1998, and Mt. Vernon to submit reply papers by June 19, 1998. Following an extension of the Scheduling Order, the matter was fully submitted on July 8, 1997.

n2 In August 1997, counsel for Mt. Vernon advised the Court that 402 had filed a petition in bankruptcy before this action was commenced (Letter from Stephen Jacobs to the Court of August 1, 1997). Accordingly, resolution of the current discovery dispute was delayed until the Bankruptcy Court granted relief from the automatic stay.

[*5]

The documents withheld or redacted fall into four categories: (1) investigative reports, including photographs and witness statements obtained by Mt. Vernon's investigators (Docs. 00050-51, 00278-81, 00290-91, 00655-59, 00712-32, 00768-70, 00775-82, 00805-810); (2) correspondence between Mt. Vernon and the law firms it retained to defend its insureds in the underlying state court litigation (Docs. 00058-61, 00113-14, 00271-73, 00309-11, 00325-26, 00383-386, 00416-18, 00464-65, 00553-58, 00605-06); (3) correspondence between Mt. Vernon and its attorneys regarding coverage issues and the instant declaratory judgment action (Docs. 00042-49, 00276, 00710-11, 00751-56, 0074 & 50) and (4) documents which, on their face, are not privileged, such as pleadings and documents filed in this and the state court litigation, transmittal letters, medical records of the injured parties, newspaper articles, and reports obtained from the U.S. Department of Labor, New York Police Department; Fire Department, and the Department of Motor Vehicles (Docs. 00038-41, 00052-57, 00062-112, 00115-269, 00274-75, 00277, 00282-89, 00292-302, 304-08, 00312-23, 00327-382, 00386-415, 00419-

Case 3:02-cv-01379-MRK    Document 107-5    Filed 01/19/2005    Page 9 of 17

Page 3
1998 U.S. Dist. LEXIS 16183, *

63, 00466-79, 549, 00604, [*6] 00660-703, 00733-44, 00757-773).

Mt. Vernon asserts no claim of privilege with respect to the documents in group (4), and it is hereby ordered to produce them. n3

> n3 Mt. Vernon's request for an order that production of these documents does not constitute a waiver of any later assertion of privilege is denied because it is not ripe. No party has yet asserted that production of these documents will result in a waiver.

Mt. Vernon's claims of attorney-client privilege and work-product protection with respect to the documents in group (3) are not challenged by any party. Therefore, I shall limit my inquiry to the documents in groups (1) and (2).

III. Analysis

A. Standards for Assertion of Privilege

The standards for assessing claims of attorney-client privilege and work-product protection are well settled:

> 'the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship.'" *von Bulow v. von Bulow, 811* [*7] *F.2d 136, 144* (2d Cir.), cert. denied, *481 U.S. 1015, 107 S. Ct. 1891, 95 L. Ed. 2d 498 (1987)*(quoting In re Grand Jury Subpoena dated *Jan. 4, 1984, 750 F.2d 223, 224 (2d Cir. 1984)). . . . More broadly, the party seeking to invoke the privilege must establish all elements of the privilege. See, e.g., In re Horowitz, 482 F.2d 72, 82* (2d Cir.), cert. denied, *414 U.S. 867, 94 S. Ct. 64, 38 L. Ed. 2d 86 (1973); United States v. Kovel, 296 F.2d 918, 923 (2d Cir. 1961)* . . . This burden can be met only by an evidentiary showing based on competent evidence, see, e.g., *von Bulow v. von Bulow, 811 F.2d at 144,* . . . and cannot be "discharged by mere conclusory or ipse dixit assertions." *von Bulow v. von Bulow, 811 F.2d at 146* (quoting *In re Bonanno, 344 F.2d 830, 833 (2d Cir. 1965));* In re Grand Jury Subpoena dated *Jan. 4, 1984, 750 F.2d at 224-25.*

*Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 470 (S.D.N.Y. 1993)* (citations omitted).

In an action where state law supplies the rules of decision, state law also controls privilege issues. *Rule 501, Fed. R. Evid.;* Dixon v. 80 Pine Street Corp., *516 F.2d 1278, 1280 (2d Cir. 1975);* [*8] *Bowne of New York City, Inc. v. AmBase Corp., supra, 150 F.R.D. at 470.* Since jurisdiction here is based solely on diversity, I shall apply the law of New York State concerning the privilege. See *Golden Trade S.r.L v. Lee Apparel Co., 143 F.R.D. 512, 514 (S.D.N.Y. 1992).*

In New York, the attorney-client privilege protects confidential communications between attorney and client relating to legal advice. *N.Y. C.P.L.R. § 4503(a); Rossi v. Blue Cross & Blue Shield, 73 N.Y.2d 588, 592, 540 N.E.2d 703, 705, 542 N.Y.S.2d 508, 510 (1989).*

> Although typically arising in the context of a client's communication to an attorney, the privilege extends as well to communications from attorney to client. . . . In order for the privilege to apply, the communication from attorney to client must be made 'for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship.' The communication itself must be primarily or predominantly of a legal character.

*Spectrum Systems Int'l Corp. v. Chemical Bank, 78 N.Y.2d 371, 377-78, 581 N.E.2d 1055, 1060, 575 N.Y.S.2d 809, 814 (1991),* quoting *Rossi v. Blue Cross & Blue Shield,* [*9] *supra, 73 N.Y.2d at 593, 540 N.E.2d at 706, 542 N.Y.S.2d at 511.*

While the attorney-client privilege "is intended to encourage clients to be forthcoming and candid with their attorneys so that the attorney is sufficiently well-informed to provide sound legal advice," *United States v. Adlman, 68 F.3d 1495, 1499 (2d Cir. 1995),* the work-product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998).* "'At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *In re Leslie Fay Cos. Inc. Sec. Litig., 161 F.R.D. 274, 279 (S.D.N.Y. 1995),* quoting *United States v. Nobles, 422 U.S. 225, 238, 45 L. Ed. 2d 141, 95 S. Ct. 2160 (1975).*

The scope of the work-product doctrine is defined in *Fed. R. Civ. P. 26(b)(3)*, which provides, in pertinent part, that:

> a party may obtain discovery of documents and tangible things . . . prepared in anticipation of [*10] litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of its case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Because the protection afforded by Rule 26(b)(3) is not absolute, it is not technically a privilege within the meaning of *Fed. R. Evid. 501*. See *Fine v. Facet Aerospace Prods. Co., 133 F.R.D. 439, 444 (S.D.N.Y. 1990); Railroad Salvage of Conn., Inc. v. Japan Freight Consolidators (U.S.A.) Inc., 97 F.R.D. 37, 40 (E.D.N.Y. 1983)* (McLaughlin, J.). Federal law rather than state law governs the applicability of the work-product doctrine in all actions in federal court. Bowne of New [*11] *York City, Inc. v. AmBase Corp., supra, 150 F.R.D. at 471; Railroad Salvage of Conn., Inc. v. Japan Freight Consolidators (U.S.A.) Inc., supra, 97 F.R.D. at 40*.

A party asserting work-product protection must prove three elements: "the material must (1) be a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." In Re Grand Jury Subpoenas dated *December 18, 1981 & January 4, 1982, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982)* (McLaughlin, J.). Accord *Weinhold v. Witte Heavy Lift, Inc., 1994 U.S. Dist. LEXIS 4559, *5, 90 Civ. 2096 (PKL), 1994 WL 132392* at *2 (S.D.N.Y. April 11, 1994); 2 Michael C. Silberberg, Civil Practice in the Southern District of New York, § 15.04 at 15-11 (2d ed. 1998).

If the proponent succeeds in establishing these elements, the burden then shifts to the parties seeking discovery of work-product material to show substantial need for the material and an inability to obtain its substantial equivalent from another source without undue

hardship. *Weinhold v. Witte Heavy Lift, Inc., supra, 1994 U.S. Dist. LEXIS 4559, *8, 1994 WL 132392* at *3; accord *Kent Corp. v. NLRB, 530 F.2d 612, 623-24 (5th Cir. 1976)*. [*12] However, "while factual materials falling within the scope of the doctrine may generally be discovered upon this showing of 'substantial need', attorney mental impressions are more rigorously protected from discovery." *In re Leslie Fay Cos. Inc. Sec. Litig., supra, 161 F.R.D. at 279*.

Although it is clear that the proponent of the attorney-client or work-product privilege ultimately bears the burden of proving all essential facts necessary to sustain a claim of privilege, the law is not entirely clear as to how this burden may be discharged where, as here, the proponent has served a detailed index of documents withheld, and the challenger has submitted specific challenges. Apart from their specific challenges, Goldhammer and the City do not generally challenge the adequacy of plaintiff's index.

Under these circumstances, it appears that the party asserting either the attorney-client privilege or work-product protection may satisfy its burden by submitting evidentiary material as to the challenged elements only. Requiring the proponent to prove all elements of the privilege in response to a specific challenge unduly burdens and wastes the time of both [*13] the Court and the parties. A party asserting a claim of privilege is obligated to prepare an index of withheld documents, which must provide sufficient information "to assess the applicability of the privilege or protection." *Fed. R. Civ. P. 26(b)(5)*. Thus, a party challenging an assertion of privilege is given the information necessary to state the grounds of its challenge and is not left to guess at the nature of what's being withheld and why. Since the challenger is given this information, there is no logic or efficiency in requiring the proponent of a privilege or the Court to address matters which are not contested by the challenger. See generally *In re Grand Jury Investigation, 974 F.2d 1068, 1071 (9th Cir. 1992); Bowne of New York City, Inc. v. AmBase Corp., supra, 150 F.R.D. at 474; Golden Trade S.r.L. v. Lee Apparel Co., 1992 U.S. Dist. LEXIS 17739, 90 Civ. 6291 (JMC), 1992 WL 367070* at *5 (S.D.N.Y. Nov. 20, 1992). Accordingly, I limit my analysis here to the specific challenges made by Goldhammer and the City, and the specific responses made by plaintiff.

B. Investigative Reports, Photographs and Witness Statements

The first group of documents in issue consists of certain investigative [*14] reports, photographs and witness statements prepared by J & N. Mt. Vernon has either withheld these documents or produced redacted

Case 3:02-cv-01379-MRK    Document 107-5    Filed 01/19/2005    Page 11 of 17

Page 5
1998 U.S. Dist. LEXIS 16183, *

versions, asserting that they are protected by the work-product doctrine either in whole or in part.

Goldhammer and the City argue that these documents are not entitled to work-product protection because they were prepared in the ordinary course of business rather than "in anticipation of litigation" as required by Rule 26(b)(3).

In response, Mt. Vernon has submitted the Declaration of Bernard T. Quinn, Senior Vice-President, Secretary-General Counsel of Mt. Vernon, who asserts that litigation was anticipated "from the first notification of the accident," due to the nature and circumstances of the incident (Quinn Decl. P 5). Specifically, Mt. Vernon maintains that it immediately anticipated litigation with respect to coverage issues because the accident occurred during demolition performed by independent contractors, and the policy applied only to "interior carpentry" work and contained an independent contractor exclusion (Quinn Decl. P 5). In addition, Mt. Vernon asserts that it immediately anticipated third-party litigation because of the serious nature [*15] of the accident and the injuries it caused (Quinn Decl. P 5). Therefore, Mt. Vernon contends that even the preliminary reports and other documents prepared prior to June 20, 1995 should be accorded work-product protection because their creation was motivated, at least in part, by the prospect of litigation.

A document need not be prepared primarily or exclusively to assist at trial in order to be prepared "in anticipation of litigation." *United States v. Adlman, supra, 134 F.3d 1194, 1203 (2d Cir. 1998)*. Rather, the test is whether "'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Id. at 1202,* quoting 8 Charles Alan Wright, et al., Federal Practice & Procedure § 2024 at 343 (2d ed. 1994) (emphasis in original). While documents prepared for both litigation and business purposes generally enjoy work-product protection, "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation" are not protected. *United States v. Adlman,* [*16] *supra, 134 F.3d at 1202.*

Application of the work-product doctrine to documents prepared by insurance companies has been particularly troublesome because it is the routine business of insurance companies to investigate and evaluate claims and to defend their insureds against third-party claims. *Insurance Co. of N. Am. v. M/V Savannah, 1995 U.S. Dist. LEXIS 15247, *3, 94 Civ. 8846 (CSH), 1995 WL 608295,* at *1 (S.D.N.Y. Oct. 17, 1995); see also *Harper v. Auto-Owners Ins. Co., 138*

*F.R.D. 655, 662 (S.D. Ind. 1991); Fine v. Bellefonte Underwriters Ins. Co., 91 F.R.D. 420, 422 (S.D.N.Y. 1981)*. As a result, many courts have refused to grant work-product protection to investigative reports prepared as part of the routine process of adjusting a claim made by the insured. See *Harper v. Auto-Owners Ins. Co., supra, 138 F.R.D. at 662* (citing cases); 6 Edward J. Brunet et al., *Moore's Federal Practice § 26.70*[3][c] at 26-213 (3d ed. 1998) ("Moore's Federal Pratice").

Thus, an independent marine surveyor's report prepared for an insurance company has been held to be discoverable, the Court noting that an insurer is "simply doing business as usual," where it retains a surveyor to "assist [it] in [*17] doing these or related functions, . . . and the documents generated thereby are not protected from discovery." *Insurance Co. of N. Am. v. M/V Savannah, supra, 1995 U.S. Dist. LEXIS 15247, *3, 1995 WL 608295* at *1. "Were the rule otherwise, . . . documents prepared by or at the request of an insurance company during the insurance company's ordinary business of claim handling would shield from discovery all documents falling within that category by a ritualistic incantation of 'anticipation of litigation.'" *1995 U.S. Dist. LEXIS 15247, *3.* See also *Janicker v. George Washington Univ., 94 F.R.D. 648, 650 (D.D.C. 1982)* ("The fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an 'in house' report as work product . . . . A more or less routine investigation of a possibly resistible claim is not sufficient to immunize an investigative report developed in the ordinary course of business"); *Westhemeco, Ltd. v. New Hampshire Ins. Co., 82 F.R.D. 702, 708-09 (S.D.N.Y. 1979)* (report prepared by an investigator and surveyor retained by insurer's attorneys was prepared in the ordinary course of business, not in anticipation of litigation, and consequently [*18] was not entitled to work-product protection.)

However, "at a certain point an insurance company's activity shifts from the ordinary course of business to anticipation of litigation." *Fine v. Bellefonte Underwriters Ins. Co., supra, 91 F.R.D. at 422,* quoting *Westhemeco, Ltd. v. New Hampshire Ins. Co., supra, 82 F.R.D. at 708-09.*

Because it is difficult to determine precisely when the possibility of litigation becomes sufficiently definite to be considered "anticipated," courts frequently presume that investigative reports prepared by or for an insurer prior to a coverage decision are prepared in the ordinary course of the insurer's business and are not afforded work-product protection. See *Amoco Oil Co. v. Hartford Accident & Indem. Co., 1995 U.S. Dist. LEXIS 13532, *2, 93 Civ. 7295 (SS), 1995 WL 555696* at *1 (S.D.N.Y. Sept. 18, 1995); SEC v. Thrasher, 1995 U.S. Dist. LEXIS*

*1355*, *12-13, 92 *Civ. 6987 (JFK), 1995 WL 46681* at
*16 n.3 (S.D.N.Y. Feb. 7, 1995); *Arkwright Mut. Ins. Co.
v. National Union Fire Ins. Co., 1994 U.S. Dist. LEXIS
17768*, *4, 90 *Civ. 7811 (AGS), 1994 WL 698298* at *2
(S.D.N.Y. Dec. 13, 1994); *Bank Hapoalim, B.M. v.
American Home Assurance Co., 1994 U.S. Dist. LEXIS
4091, 92 Civ. 3561 (KMW), 1994 WL 119575* at *8-9
(S.D.N.Y. April 6, 1994); *Fine v. Bellefonte
Underwriters* [**19**] *Ins. Co., supra*, 91 F.R.D. *at 422-
23; see also Stout v. Illinois Farmers Ins. Co.*, 150
F.R.D. 594, 600 (S.D. Ind. 1993), aff'd, 852 F. Supp. 704
(S.D. Ind. 1994); *Harper v. Auto-Owners Ins. Co.*, 138
F.R.D. 655 (S.D. Ind. 1991); *Pete Rinaldi's Fast Foods,
Inc. v. Great American Ins. Cos.*, 123 F.R.D. 198, 202
(M.D.N.C. 1988); Comment, The Work Product
Doctrine: Functional Considerations and the Question of
the Insurer's Claim File, 64 *U. Chi. L. Rev. 1425, 1431-
32 (1997)*.

Others have adopted a more flexible case-by-case
approach. E.g., *American Ins. Co. v. Elgot Sales Corp.,
1998 U.S. Dist. LEXIS 14822*, *5, 97 *Civ. 1327 (RLC),
1998 WL 647206* at *1 (S.D.N.Y. Sept. 21, 1998); *Weiss
v. Muccillo, 1997 U.S. Dist. LEXIS 17871*, *6, 95 *Civ.
5686 (PKL), 1997 WL 706444* at *2 (S.D.N.Y. Nov. 13,
1997); *Bogan v. Northwestern Mut. Life Ins. Co.*, 163
F.R.D. 460, 463 (S.D.N.Y. 1995); *Binks Mfg. Co. v.
National Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th
Cir. 1983); *see also* 8 Wright et al., Federal Practice &
Procedure, supra, § 2024 at 343 (2d ed. 1994) ("the test
should be whether, in light of the nature of the document
and the factual situation in the particular case, the
document can fairly be said to have been [**20**] prepared
or obtained because of the prospect of litigation"); 6
*Moore's Federal Practice, supra,* § 26.70[3][c] at 26-
214 to 26-215 (observing that investigative "reports
made in connection with accident claims by third parties
have generated a good deal of disagreement in the
courts," and concluding that a "case-by-case approach to
third party claim situations appears to be the soundest
compromise.").

In this case, the initial notification sent to Mt.
Vernon in late April, 1995 consisted of a standard notice
of claim form containing a brief description of the
accident, and a copy of a letter from 402 advising that
the accident had occurred during demolition (Quinn
Decl. P 4). The letter contained no threat of litigation,
and Mt. Vernon did not immediately deny coverage on
the policy or retain counsel. Mt. Vernon did not refer the
matter to counsel until it had received the results of the
preliminary investigation, and it did not issue the
reservation of rights letter to Try 3 and 402 until after its
counsel had rendered advice concerning coverage. While
not determinative, an insurer's referral of a claim to its
attorney is a significant factor in determining when the

insurer [**21**] anticipates litigation. See, e.g., 525 *Fulton
Street Holding Corp. v. Mission Nat'l Ins. Co., 1984 U.S.
Dist. LEXIS 15402, 83 Civ. 8229 (KTD), 1984 WL 591*
(S.D.N.Y. June 29, 1984) (investigator's report prepared
before insurer denied claim was made in the ordinary
course of business where there was no evidence that an
attorney requested the preparation of the report);
*Westhemeco, Ltd. v. New Hampshire Ins. Co., supra*, 82
F.R.D. at 708 (citations omitted); *Thomas Organ Co. v.
Jadranska Slobodna Plovidba*, 54 F.R.D. 367, 372-73
(N.D. Ill. 1972).

Mt. Vernon's conclusory claim that it anticipated
litigation prior to its June 20, 1995 reservation of rights
letter is not convincing. Mt. Vernon cannot identify any
objective evidence confirming that it anticipated
litigation prior to that date. To the contrary, there is
nothing in Mt. Vernon's conduct prior to that date to
suggest that its handling of this matter was any different
from its handling of any other potentially covered
incident. See *American Ins. Co. v. Elgot Sales Corp.,
supra, 1998 U.S. Dist. LEXIS 14822*, *7-8, 1998 WL
647206* at *2 (adjusters' reports made before decision to
pursue subrogation and without attorney involvement
found to have been prepared in the ordinary course [**22**]
of business); *SEC v. Thrasher, supra, 1995 U.S. Dist.
LEXIS 1355*, *12, 1994 WL 46681* at *2 (work-product
protection refused where "no specific evidence of a
resolve to litigate" offered); *Arkwright Mut. Ins. Co. v.
National Union Fire Ins. Co., supra, 1994 U.S. Dist.
LEXIS 17768*, *6, 1995 WL 698298* at *3 (same); *Stout v.
Illinois Farmers Ins. Co., supra, 852 F. Supp. at 707*
(work product protection refused where insurer could not
identify "any critical factor that made it anticipate
litigation"); *Henderson v. Zurn Indus., Inc.*, 131 F.R.D.
560, 571 (S.D. Ind. 1990) (insurer's posture did not
change from routine claims investigation to anticipation
of litigation until after it received letter from plaintiff's
counsel threatening suit).

In this case, the existing objective evidence
establishes that Mt. Vernon did not anticipate litigation
until its June 20, 1995 reservation of rights letter. By that
time, Mt. Vernon had received notice from 402 of the
claim asserted by one of the injured third parties, had
consulted with counsel, and, by its reservation of rights
letter, had clearly taken a position regarding coverage.
This establishes "a sufficiently identifiable resolve to
litigate" by that date. *Fine v. Bellefonte Underwriters*
[**23**] *Ins., 91 F.R.D. 420, 423 (S.D.N.Y. 1981).*
Accordingly, I conclude that the investigative reports
prepared prior to June 20, 1995 were prepared in the
ordinary course of Mt. Vernon's business and are not
entitled to the protection of the work-product doctrine.
The May 25, 1995 and June 6, 1995 investigative reports
(Docs. 00775-82, 00768-70, and 00805-10) should

Case 3:02-cv-01379-MRK    Document 107-5    Filed 01/19/2005    Page 13 of 17

Page 7
1998 U.S. Dist. LEXIS 16183, *

therefore be produced in their entirety. n4 Investigative reports and other documents prepared after that date (Docs. 00050-51, 00278-81, 00655-59, 00712-32) are protected by the work-product doctrine. Since defendants have made no showing of need sufficient to warrant production of these documents, no further production n5 of these documents is required.

n4 Mt. Vernon also attempts to assert an "insurer-insured" privilege with respect to the witness statements of the insured taken by J & N which comprise part of the investigative reports. No such privilege exists. *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp., 303 U.S. App. D.C. 316, 5 F.3d 1508 (D.C. Cir. 1993); Petersen v. Douglas County Bank & Trust Co., 967 F.2d 1186, 1188 (8th Cir. 1992); Gottlieb v. Bresler, 24 F.R.D. 371, 372 (D.D.C. 1959)* ("[A] communication received by a liability insurance company from one of its insured concerning a matter covered by the insurance policy is not a privileged communication. It is not in the same class as a communication to an attorney."); 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence, § 503.12*[6] at 503-12 (Joseph M. McLaughlin, ed., 2d ed. 1998). [*24]

n5 Some of these documents have already been produced with redactions.

C. Correspondence between Mt. Vernon and Attorneys Retained to Represent Insureds

Mt. Vernon's assertion of the attorney-client privilege with respect to correspondence between itself and the attorneys it retained to defend Try 3 and 402 is challenged only by the City. First, the City argues that there is no attorney-client relationship between Mt. Vernon and the insureds' law firms because "the insured, not the carrier, is the client" (the City's Memorandum of Law in Opposition, dated June 12, 1998 ("Memorandum of the City") at 2). Second, the City contends that because the interests of Mt. Vernon and its insureds are in conflict, n6 Mt. Vernon has somehow failed to fulfill its obligation to provide independent counsel to Try 3 and 402. From this premise, the City concludes that Mt. Vernon "should not now be permitted to profit from that violation by shielding itself from disclosure" (Memorandum of the City at 3).

n6 I presume this is a reference to the instant declaratory judgment action.

[*25]

In response, Mt. Vernon argues that although there is technically no attorney-client relationship between itself and the insureds' attorneys, it nonetheless has standing to assert the attorney-client privilege against adverse parties under the "common interest" rule, citing *North River Ins. Co. v. Columbia Cas. Co., 1995 U.S. Dist. LEXIS 53, *6, 90 Civ. 2518 (MJL), 1995 WL 5792* at *4 (S.D.N.Y. Jan. 5, 1995).

With one exception, Mt. Vernon has asserted both the attorney-client privilege and the work-product doctrine as to correspondence between itself and the attorneys it retained to represent the insureds. Unless the assertion of both is invalid, the documents are protected. Since the City has made no objection whatsoever to Mt. Vernon's assertion of the work-product doctrine, I need not address its challenge to the attorney-client privilege; even if I assume that the attorney-client privilege is inapplicable, the work-product doctrine continues to protect the documents. n7

n7 I note that the privilege log does not reflect that J & N received copies of some of these status reports (Docs. 00309-11, 00325-26, 004167-18 and 00464-65). Therefore, the finding that these documents are protectable work product is without prejudice to a renewed challenge if this information changes any party's analysis of the privilege issues.

[*26]

The one document in this category that has been withheld solely on the basis of the attorney-client privilege, Document 00605-06, is a transmittal letter referring Mt. Vernon's file to the law firm of Marshall, Conway & Wright in connection with the defense of Try 3 in the state court actions. Even if I assume that the attorney-client privilege may be properly asserted by Mt. Vernon, this document is not within the scope of the privilege because it is not based on confidential client communications and contains no confidential information. See *United States v. Davis, 132 F.R.D. 12, 15 (S.D.N.Y. 1990)* (protection is not necessary if disclosure of the attorney's statements will not reveal the confidences of the client).

IV. Conclusion

For all the foregoing reasons, Mt. Vernon is directed to produce complete copies of Documents 00290-91,

00605-06, 00768-70, 00775-82, 00805-10, 00038-41, 00052-57, 00062-112, 00115-126, 00127-201, 00202-58, 00259-69, 00274-75, 00277, 00282-89, 00292-308, 00312-24, 00327-382, 00386-415, 00419-63, 00466-549, 00604, 00660-703, 00733-44, 00757-773 within ten (10) business days of the date of this opinion and order.

Dated: New York, New York [*27]

October 14, 1998

SO ORDERED

HENRY PITMAN

United States Magistrate Judge

LEXSEE 1998 U.S. DIST. LEXIS 14822

**THE AMERICAN INSURANCE COMPANY, et al, Plaintiffs, - against - ELGOT SALES CORP., et al., Defendants.**

97 Civ. 1327 (RLC)

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1998 U.S. Dist. LEXIS 14822*

**September 18, 1998, Decided
September 21, 1998, Filed**

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For THE AMERICAN INSURANCE COMPANY, WINDSOR INSURANCE BROKERS, LTD., plaintiffs: Michael J. Sommi, Cozen and O'Connor, New York, NY.

For ELGOT SALES CORP., defendant: Joseph S. Malara, Hartsdale, NY.

For R.J.K. CONTRACTING CORP., defendant: Leonard A. Robusto, Langan & Levy, New York, NY.

For 795 FIFTH AVENUE CORPORATION, defendant: James M. Woolsey, III, Landman Corsi Ballaine & Ford P.C., New York, NY.

For ELGOT SALES CORP., cross-claimant: Joseph S. Malara, Hartsdale, NY.

For 795 FIFTH AVENUE CORPORATION, cross-claimant: James M. Woolsey, III, Landman Corsi Ballaine & Ford P.C., New York, NY.

For R.J.K. CONTRACTING CORP., ROBERT J. KISSLINGER, cross-claimants: James M. Woolsey, III, Landman Corsi Ballaine & Ford P.C., New York, NY.

For R.J.K. CONTRACTING CORP., cross-claimant: Leonard A. Robusto, Langan & Levy, New York, NY.

For AIM PLUMBING & HEATING CO., INC., cross-claimant: Francis J. Dixon, Paganini & Herling, Esqs., New York, NY.

For ELGOT SALES CORP., cross-defendant: Joseph S. Malara, Hartsdale, NY.

For ELGOT SALES CORP., 795 FIFTH AVENUE CORPORATION, cross-defendants: James M. Woolsey, III, Landman Corsi Ballaine & Ford P.C., [*2] New York, NY.

For R.J.K. CONTRACTING CORP., cross-defendant: Leonard A. Robusto, Langan & Levy, New York, NY.

For ELGOT SALES CORP., third-party plaintiff: Joseph S. Malara, Hartsdale, NY.

For 795 FIFTH AVENUE CORPORATION, third-party plaintiff: James M. Woolsey, III, Landman Corsi Ballaine & Ford P.C., New York, NY.

For AIM PLUMBING & HEATING CO., INC., third-party defendant: Francis J. Dixon, Paganini & Herling, Esqs., New York, NY.

For RETROAIRE DIVISION OF EMI CORP, third-party defendant: Brian Powers, Caulfield, Heller & Harris, New York, NY.

For AIM PLUMBING & HEATING CO., INC., counter-claimant: Francis J. Dixon, Paganini & Herling, Esqs., New York, NY.

For ELGOT SALES CORP., counter-defendant: Joseph S. Malara, Hartsdale, NY.

For THE AMERICAN INSURANCE COMPANY, WINDSOR INSURANCE BROKERS, LTD., counter-defendants: Michael J. Sommi, Cozen and O'Connor, New York, NY.

For R.J.K. CONTRACTING CORP., counter-defendant: Leonard A. Robusto, Langan & Levy, New York, NY.

For 795 FIFTH AVENUE CORPORATION, counter-defendant: James M. Woolsey, III, Landman Corsi Ballaine & Ford P.C., New York, NY.

JUDGES: NAOMI REICE BUCHWALD, UNITED STATES MAGISTRATE [*3] JUDGE.

OPINIONBY: NAOMI REICE BUCHWALD

OPINION:

MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD
UNITED STATES MAGISTRATE JUDGE

This is a subrogation action by two insurance companies, The American Insurance Company (a subsidiary of Fireman's Fund Insurance Companies) and Windsor Insurance Brokers, Ltd. on behalf of Interested Lloyd's Underwriters, to recover monies paid to an insured for property damage to a private apartment in the Pierre Hotel. The property damage occurred on February 28, 1994; this action was commenced on February 28, 1997. Shortly after the incident, Fireman's Fund engaged Edward R. Reilly & Co., Inc., insurance adjusters, to investigate the incident and apparently at some later time the Lloyd's Underwriters engaged Maxson Young Associates, Inc. as adjusters. n1 In response to a discovery request, plaintiffs have redacted portions of reports prepared by their insurance adjusters addressing possible subrogation claims on the grounds of work product privilege. Plaintiffs have submitted the documents at issue with the redacted portions highlighted. Plaintiffs maintain that the redacted portions of the documents (the "documents") are entitled to work product protection [*4] because the possibility of a subrogation claim was apparent from the outset of the investigation and therefore the documents were prepared in anticipation of litigation.

n1 The deposition testimony of Thomas Tesoriero, the regional general adjuster of Fireman's established that the use of an adjuster

in contrast to an in house investigation of the claim was of no particular significance. (Dep. at 18).

n2 Plaintiffs' invocation on its privilege list of the attorney-client privilege as a basis for withholding the redacted portions appears to have been abandoned.

Moore's Federal Practice treatise has observed: "claims adjusters' reports made in connection with accident claims by third parties have generated a good deal of disagreement in the courts." Edward J. Brunet, et al., 6 Moore's Federal Practice, § 26.70[3][c] (3d ed. 1997) ("Moore's"). One focus of that discussion has concerned the applicability of an ordinary course of business "exception" to the work product doctrine. That "exception," [*5] which has been the subject of scholarly debate, see Jeff A. Anderson, et al., The Work Product Doctrine, 68 Cornell L. Rev. 760, 848-55 (1983), has received particular attention in the insurance context because it is the routine activity of insurance companies to investigate claims. Thus, given the ever present potential for (or anticipation of) litigation, without some limiting principle virtually the entirety of an insurance company's files would be exempt from discovery.

Moore's concludes that a "case-by-case approach to third party claim situations appears to be the soundest compromise." Id. Commentators have similarly, but more pointedly, concluded that:

> In sum, because of the problems the ordinary course of business exception creates, courts should abandon it and instead follow the rule 26(b)(3) framework. When faced with a work product problem, a court should decide first, on the basis of the facts of the case, whether the material was prepared in anticipation of litigation, and second, whether the party seeking discovery of the material has substantial need for it.

Anderson, supra, at 855. Further, the authors suggest that "a court should [*6] treat the ordinary course of business criterion as merely one factor among many when applying the anticipation of litigation test." Id. at 852. Nonetheless, in the context of insurance company cases it has been recognized that "at a certain point an insurance company's activity shifts from the ordinary course of business to anticipation of litigation. There is no hard and fast rule as to when this occurs." Westhemeco Ltd. v. New Hampshire Ins. Co., 82 F.R.D. 702, 708-09 (S.D.N.Y. 1979). To put it another way, "it must be determined when the insurance company shifted

its focus from collecting information and evaluating a claim to preparation for a lawsuit." *Taroli v. General Electric Co., 114 F.R.D. 97, 99 (N.D. Ind. 1987)* aff'd, *840 F.2d 920 (7th Cir. 1988)*. It must also be remembered that "the party asserting work product protection has the burden of establishing that the doctrine applies," i.e., that it was prepared in anticipation of litigation. *Moore's at § 26.70[5][a]*.

With this discussion in mind, I have reviewed all the documents submitted. Having done so, I have concluded that the plaintiff carriers have failed to meet their burden to establish [*7] that reports were "prepared principally or exclusively to assist in anticipated...litigation." *United States v. Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996)*. The documents clearly establish that no decision about whether to pursue a subrogation claim had been made until sometime in 1996. Rather, the reports of the adjusters were clearly part of the usual process of evaluating and negotiating the claim presented by the insured for the principle purpose of resolving the claim. "Even though litigation is already a prospect, there is no work-product immunity for documents prepared in the regular course of business rather than for purposes of the litigation." *Bogan v. Northwestern Mutual Life Ins. Co., 163 F.R.D. 460, 463 (S.D.N.Y. 1995)*. See also, *Harper v. Auto-Owners Ins. Co., 138 F.R.D. 655, 661 (S.D. Ind. 1991)* (citations omitted) ("Even after litigation is justifiably anticipated, routine or ordinary investigations or reports are not work product and may be obtained as normal discovery without a special showing of need.") In addition to the fact that the reports on their face establish that they were prepared as part of the carriers' routine course of [*8] business and well before any decision to pursue subrogation was made, it is significant that there is no evidence in the record to support a conclusion that any of the reports were prepared at the request of an attorney or with any attorney involvement. In fact, rather than testifying that the referral of the claim to counsel was related to a potential subrogation action, it was Mr. Tesoriero's testimony that the referral of the claim to counsel was a routine practice for all claims in excess of $ 100,000. (Dep. at 73). See *Tejada Fashions Corp. v. Yasuda Fire and Marine Ins. Co. (U.K.), Ltd., 1984 U.S. Dist. LEXIS 15815, 1984 WL 500, *3 (S.D.N.Y. June 18, 1984)*. Cf. *Arkwright Mutual Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh Pa., 1994 U.S. Dist. LEXIS 13216, 1994 WL 510043 (S.D.N.Y. Sept. 16, 1994)* (attorney hired specifically to conduct subrogation investigation).

On the basis of the foregoing discussion, it is clear that the withheld portions of the documents are discoverable. n3

> n3 We note that there are two documents that make reference to the views of the Cozen and O'Connor law firm who had been engaged by Fireman's because of the size of the reserve for the claim. However, those references appear in documents authored by Maxson Young who had not been engaged by Fireman's. Those two documents fit within the analytical framework just discussed, but it should also be noted that the communication by the law firm to the adjuster of another carrier might well raise issues of waiver as well.

> Additionally, plaintiffs sought to withhold certain documents on the alternative ground that they embodied the opinion of a non-testifying expert. However, to withhold documents on that ground, the same "anticipation of litigation" threshold as applies to the work product privilege must be met. See *Fed. R. Civ. P. 26(b)(4)(B)*. Therefore, it follows that this alternative argument must fail as well.

[*9]

**IT IS SO ORDERED.**

DATED: New York, New York

September 18, 1998

NAOMI REICE BUCHWALD

UNITED STATES MAGISTRATE JUDGE