UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2005 FEB 15 P 12: 02
U.S. DISTRICT COURT
NEW HAVEN, CT

| | |
|---|---|
| GOLDEN WEST REFINING CORPORATION<br>Plaintiff<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS, LLP and<br>COOPERS & LYBRAND, LLP<br>Defendants | CIVIL ACTION NO.<br>3:02 CV 1379 (MRK) |
| ALEC SHARP, et al.<br>Plaintiffs<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS, LLP d/b/a<br>PRICE WATERHOUSE, LLP<br>Defendant. | CIVIL ACTION NO.<br>3:02 CV 1572 (MRK) |
| HANDY & HARMAN REFINING GROUP, INC.,<br>Plaintiff<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS, LLP,<br>Defendant | CIVIL ACTION NO.<br>3:02 CV 1803 (MRK)<br><br>FEBRUARY 11, 2005 |

## UNDERWRITERS' MOTION TO COMPEL

Plaintiffs, Certain Underwriters at Lloyd's and Insurance Companies Subscribing to Policy No. 834/FB9700166 ("Underwriters"), as assignees and subrogees of Handy & Harman Refining Group, Inc. ("HHRG"), by their attorneys, and for their motion to compel against Defendant PricewaterhouseCoopers, LLP ("PwC"), state as follows:

### INTRODUCTION

In August 2002, Underwriters filed a Complaint against PwC as assignees and subrogees of their insured, HHRG, for PwC's professional malpractice and breach of contract occurring during the course of PwC's engagement as outside auditor of HHRG between 1996 and 2000.

247378.1

Underwriters allege that PwC was negligent and in breach of expressed contractual obligations in failing to uncover several unauthorized business transactions between certain HHRG employees and consultants and Panexim, S.A., a Peruvian entity.

On July 8, 2003, Underwriters served PwC with their First Set of Interrogatories and First Request for Production of Documents. On October 8, 2003, PwC served Underwriters with its Answers to First Set of Interrogatories, attached hereto as Exhibit 1, and Response to First Request for Production of Documents, attached hereto as Exhibit 2.  On July 12, 2004, Underwriters served PwC with its First Request for Admissions and Second Request for Production of Documents. On August 23, 2004, PwC served Underwriters with its Response to Second Request for Production of Documents, attached hereto as Exhibit 3, and on August 24, 2004, PwC served Underwriters with its Response to First Request for Admissions, attached hereto as Exhibit 4.  On August 6, 2004, PwC submitted to Underwriters its privilege log, attached hereto as Exhibit 5.

Before bringing this motion to compel, counsel for Underwriters consulted by correspondence and in multiple teleconferences with counsel for PwC regarding the discovery disputes at issue, and made good faith attempts to resolve the disputes, but was unable to reach an accord on the issues set forth herein.  Correspondence between counsel for Underwriters and counsel for PwC, dated 7/14/04, 7/20/04, 9/13/04, 10/20/04, 1/24/05 and 1/26/05, is attached hereto as Group Exhibit 6.

## ARGUMENT

I. **Discovery Disputes**

   A. **Interrogatories**

      1. **First Set, Nos. 2-7, Description of Work**

Underwriters request that PwC describe: (a) all efforts of PwC to ensure HHRG did not extend credit to a South American company; (b) all efforts to verify financial statements provided by HHRG; (c) the method of investigation used by PwC to ascertain credit worthiness of Panexim; (d) all efforts taken by PwC to verify purported security; (e) all efforts taken by PwC to confirm inventory in vault in Peru; and (f) all efforts taken by PwC to ensure that HHRG did not make unsecured advances of funds to Panexim. In response, PwC directs Underwriters to 19 boxes of documents previously produced. This is not responsive. PwC must provide direct answers or identify the specific records from which answers can be ascertained. *See, New Colt Holding Corp. v. RJG Holdings of Fla., Inc.*, 2003 U.S. Dist. LEXIS 18039 (D. Conn., Aug. 11, 2003).[1]

In *New Colt Holding Corp.*, plaintiff moved to compel a response to an interrogatory requesting gross and net revenues from the sale of defendant's revolvers. *Id.* at *5. Defendants responded that they provided the information in documents produced, and the documents produced constituted a satisfactory response under Fed. R. Civ. P. 33(d). *Id.* The Court held that Rule 33(d) did not support defendant's argument, and ordered defendants to respond. *Id.* at *8. The Court reasoned that Rule 33(d) requires that a party seeking to use alternative means of responding to an interrogatory *specify* the records from which a response can be ascertained. *Id.* at *5. The Court reasoned further that when asked a direct question, a party is obliged to provide

---

[1] All cases cited herein are attached hereto as Group Exhibit 7.

a *direct answer* and may not refuse to do so on an opinion the information can be derived through other requests. Id. at *7.

In this case, similar to the defendant in *New Colt Holding Corp.*, PwC must provide direct answers to the interrogatories or identify the specific records from which answers can be ascertained. To date, PwC has failed to do so.

### B.  Requests for Production

#### 1.  First Request, No. 5, Personnel Files

Underwriters request that PwC produce the personnel files for all individuals named in response to Interrogatory No. 1 who worked on HHRG matters. Underwriters are only seeking employee reviews and reprimands pertaining to said individuals, or any other information that reflects such individuals' performance or capabilities. As this is an action based on professional negligence, the information sought is relevant to Underwriters' claims and is discoverable. *See, O'Bar v. Borough of Naugatuck*, 2002 U.S. Dist. LEXIS 26800 (D. Conn. Nov. 27, 2002). In *O'Bar*, plaintiff moved to compel the production of personnel files of the individual police officer defendants. *Id.* at *4. Plaintiff argued that the personnel files were relevant for purposes of establishing her claims for negligent training and supervision by defendant municipality. *Id.* at *4. The Court ordered defendant to provide the following information:

> Details as to any grievances/complaints filed against the individual defendants... and the disposition of such complaint/grievance, including the date of complaint, date of disposition and any written product of the proceeding, including notices of proceeding, letters or reprimand/caution and administrative opinions documenting such proceedings, if such exist.

*Id.* at *5. The Court reasoned that the above information was relevant to plaintiff's claims and sufficiently narrow in scope so as to avoid unnecessary disclosure of confidential information. *Id.*

Based on *O'Bar*, the personnel files for all individuals named in response to Interrogatory No. 1, specifically, all employee reviews and/or reprimands are relevant to Underwriters' claims and should be produced.[2] *See also, Slovak v. Fusco*, 1994 Conn. Super. LEXIS 3108 (Conn. Super. Ct. Dec. 5, 1994)(ordering production of defendant's personnel file, as documents would assist plaintiff in the prosecution of his case). PwC has failed to give any adequate basis for withholding the requested materials, and has stated it will only produce the materials by order of this Court.

### 2.     First Request, Nos. 6 and 9, Audit and Accounting Manuals

Underwriters request that PwC produce any auditing and accounting manuals or guidelines used in work performed pursuant to the HHRG engagement. In response, PwC directs Underwriters to "working papers" that PwC previously made available for inspection and copying. A party may not simply point to prior production and refuse to answer a discovery request absent some showing that the prior production identifies the responsive information. *New Colt Holding Corp. v. RJG Holdings of Fla., Inc.*, 2003 U.S. Dist. LEXIS 18039, *6 (D. Conn., Aug. 11, 2003). As this is an action based on professional malpractice, the information sought is clearly relevant to Underwriters' claims, and PwC must identify the documents within the "working papers" that are responsive to the requests. Further, during the course of Underwriters' detailed review of PwC's working papers, no documents were found that would be responsive to Underwriters' requests. Finally, during depositions of PwC witnesses taken to date, our understanding is that during the relevant period, such manuals would have been maintained either electronically or in hard-copy, but that such manuals indeed exist.

---

[2] PwC employee, Elizabeth Christensen, testified during her 2/4/05 deposition that a performance review was prepared and executed for her regarding her work on the HHRG audit in 1999. In addition, on February 8, 2005, Barrett Brown testified that a review was prepared relating to his work on the HHRG audit in 1998. There are the only depositions to date.

### 3. First Request, No. 16, Detailed Time Records

Underwriters request that PwC produce detailed time records for each person identified in PwC's response to Interrogatory No. 1. Despite Underwriters' request for "detailed" time records, PwC produced documents that merely provide the employee name, the date of the employee's timesheet, and the number of hours that the employee billed to the HHRG engagement. (A sample of such production is attached hereto as Exhibit 8.) Underwriters are entitled to a description of the services provided by each employee for each time entry. As this case involves causes of action against PwC for professional malpractice and breach of contract occurring during the course of PwC's engagement as outside auditor of HHRG, a detailed description of the services purportedly provided by PwC is clearly relevant.

### 4. First Request, No. 36, Internal Investigation Materials

Underwriters request that PwC produce documents relating to any internal investigation of the facts and circumstances giving rise to this litigation. To the extent that an internal investigation was performed by PwC management, there is no attorney-client privilege and no work product protection. *See, In Re Grand Jury Subpoena*, 599 F.2d 504, 510 (2d Cir. 1979). In *In Re Grand Jury Subpoena*, a corporation was notified by its independent auditors of possible illegal payments to foreign officials by employees. *Id.* at 506. Corporate management conducted an internal investigation, and employees of the corporation were instructed to disclose whatever knowledge they had of questionable payments. *Id.* at 506-507. The investigators, purportedly acting under the instructions of the general counsel, prepared memoranda and notes which were submitted to him. *Id.* The results of the investigation were reported to the Board of Directors. *Id.* After refusing to comply with a grand jury subpoena demanding the documents prepared during the investigation, the corporation was held in civil contempt. *Id.* at 505.

The Court held that the investigation by management did not come within the protection of the attorney-client privilege or the work product rule, and the documents generated pursuant to the investigation were subject to disclosure before a grand jury. *Id.* at 510. The Court reasoned that the purpose of the investigation was to discover facts for a report to the Board of the Directors in the regular course of business. *Id.* at 510. The Court reasoned further that "while employees who perform numerous functions in the business world will have occasion to seek competent legal advice, it is true, nonetheless, that management will often try to find the facts on its own, preliminary to a determination of whether to seek legal advice or simply in order to formulate business policy." *Id.* at 511.

Similar to *In Re Grand Jury Subpoena*, in the instant matter, on information and belief, after the losses sustained by HHRG came to light in February 2000, PwC, conducted internal investigations that were factual in nature and bear directly on issues in this litigation. Based on *In Re Grand Jury Subpoena*, the documents produced by any internal investigation conducted by PwC are not protected by attorney client privilege or the work-product rule, and should be produced.

Moreover, the documents should be produced for the additional reason that they were created in the ordinary course of business or would have been created in essentially similar form irrespective of the litigation. *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998). The Court in *Adlman* acknowledged the reasoning of the Seventh Circuit in *Binks Mfg. Co. v. National Presto Industries, Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983), which is instructive:

> If in connection with an accident or an event, a business entity in the ordinary course of business conducts an investigation for its own purposes, the resulting investigative report is producible in civil pre-trial discovery…The fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an "in house" report as work product. . . . A more or less routine investigation of a possibly resistible claim is

7

247378.1

> not sufficient to immunize an investigative report developed in the ordinary course of business.

*Binks Mfg. Co.* at 1119, citing *Janicker v. George Washington University*, 94 F.R.D. 648, 650 (D.D.C. 1982). Thus, even if such documents might also have helped in PwC's preparation for litigation, they still do not qualify for protection, as they were not created "because of" actual or impending litigation. *Adlman*, at 1202.

We also note that a particular document produced by PwC to Underwriters pre-litigation, while the parties were attempting to resolve their differences pursuant to a tolling agreement, cannot be found in PwC's formal document production in the same form. Specifically, the originally produced document contained a significant amount of handwritten notes that bear on issues in this case, while a subsequently produced document that appears similar contains far less of such handwriting. (These documents are attached hereto as Exhibit 9.) Given this apparent discrepancy, we can only imagine that additional documents created pursuant to an internal investigation have also been withheld.

The burden of establishing the privilege is on the party asserting it. *Weber v. Paduano*, 2003 U.S. Dist. Lexis 858, at *12-13; *see also*, PwC's Memorandum, p.7-8. As PwC has made no showing that the documents prepared as a result of an internal investigation were *not* simply prepared in the ordinary course of business, and would *not* have been created in essentially similar form irrespective of the litigation, the documents should be produced.

### 4. Second Request, Nos. 2 and 6, Document Retention Policies

Underwriters request that PwC produce all document retention policies of PwC from 1995 to present. PwC has agreed to produce only the policy for the year 2000, but such policy still has not been produced. This case involves causes of action against PwC for professional malpractice and breach of contract occurring during the course of PwC's engagement as

outside auditor of HHRG between 1996 and 2000. As PwC presumably retained documents during the course of PwC's engagement as outside auditor of HHRG from 1996 to 2000, and up until the present time, the production of PwC's document retention policies from 1995 to present would permit Underwriters to ascertain whether relevant evidence should still exist. PwC's document retention policy is also relevant in the context of the 1999 working paper discussed above and attached at Exhibit 9.

Moreover, PwC's retention policies from 1995 to present are of particular importance in light of recent events indicating spoliation of evidence by PwC. In July 2004, a federal Magistrate Judge in Ohio concluded that a default judgment should be entered against PwC in an accounting fraud lawsuit due to PwC's failure to produce relevant documents. The Magistrate Judge stated that:

> it would be difficult for anyone to argue that PwC's conduct over the course of this litigation, particularly in its repeated assurances to the court and to the parties that it had fully disclosed all relevant information, was not due to willfulness, bad faith or fault. ... Prior to litigation PwC had permitted destruction of documents despite committing to their preservation.

*In Re: Telxon Corp. Securities Litigation*, U.S. District Court for the Northern District of Ohio, Case No. 5:98CV2876, Docket #288 – Report and Recommendation, at p. 67-68. (Attached hereto as Exhibit 10). While Underwriters are not seeking a default judgment at this time, we note the significance of PwC's compliance with discovery, and document retention and production in particular. Thus, all document retention policies of PwC from 1995 to present should be produced.

**C.   Requests to Admit**

    **1.   First Request, Nos. 1-16**

Underwriters request that PwC admit or deny limited, singular, relevant facts in its requests to admit. For example, Underwriters request that PwC admit or deny the following:

247378.1

9

    14.    Admit that during 1999, PwC made no effort to confirm or deny the existence of precious metals in a vault in Peru, which was purportedly held for HHRG's benefit.

        OBJECTION AND RESPONSE:  PwC objects to this request because it improperly assumes that PwC had an obligation to under its engagement with HHRG to "confirm or deny the existence of precious metals in a vault in Peru." As PwC understands this request, it is denied.

    15.    Admit that during 1997, PwC did not examine the credit-worthiness of Panexim.

        OBJECTION AND RESPONSE: PwC objects to this request because it is not limited to singular relevant facts, it covers a broad timeframe, and it is ambiguous as to its terminology. Further, the request improperly assumes that PwC had an obligation under its engagement with HHRG to "examine the creditworthiness of Panexim."

        As PwC understands this request, it is denied...PwC hereby qualifies its denial as follows...

According to Underwriters' review of Panexim and HHRG records, HHRG advanced over $300 million to Panexim between August 1996 and December 1999. At March 1998 and March 1999, HHRG had outstanding receivables or over-advances of $24 million and $14 million, respectively. As a result, the above inquiries (and others) go to fundamental issues in this litigation.

Each request is direct and clearly stated, and PwC is capable of providing an unqualified admission or denial. However, PwC provides qualified denials in response to request nos. 1-12, 15, and 16. Rule 36 provides that a response to a request for admission "shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter." Fed. R. Civ. P. 36(a). A defendant must make a good faith effort to specify what part of the request is true, and deny only the remainder. *Izzarelli v. R.J. Reynolds Tobacco Co.*, 2004 U.S. Dist. LEXIS 6379 (D. Conn. Mar. 12, 2004). A reviewing court should not permit a responding party to undermine the efficacy of the rule by creating disingenuous, hair-splitting distinctions whose unarticulated goal is unfairly to burden an opposing party. *Thalheim*

*v. Eberheim*, 124 F.R.D. 34, 35 (D. Conn. 1988). PwC fails to follow these guidelines. Moreover, though PwC is capable of providing an unqualified admission or denial, PwC makes "disingenuous, hair-splitting distinctions" to undermine Underwriters' attempt to narrow issues and to unfairly burden Underwriters.

In addition, in response to request numbers 1-10, 14, 15, PwC objects to each request on the basis that Underwriters "improperly assume" that PwC had certain obligations. Underwriters do not assume or mischaracterize any obligations PwC may or may not have had. It is PwC's *actions*, rather than its *obligations*, that are at issue in the requests – for example, PwC either *did* or *did not* verify the existence of precious metal in the Peruvian vault.

Finally, a responding party is not permitted to frustrate the rule by initially providing inadequate responses, forcing the requesting party to file a motion and costly memoranda, and only then coming forward with "amended answers" that easily could have been supplied in the first instance. *Thalheim*, at 35. Accordingly, each of Underwriters' requests to admit should be deemed admitted by PwC.

### D.    Privilege Log

#### 1.    Privileges Asserted

PwC asserts one or more of the following privileges for each document listed on its lengthy privilege log – 24 pages and 328 separate documents in all: attorney-client; joint defense; work product; and "prepared in anticipation of litigation", which PwC fails to distinguish from work product.

#### 2.    Document Descriptions

PwC indicates the date, author, and recipient of each document, and provides insufficient, conclusory document descriptions. Examples of document descriptions include the following: notes prepared in anticipation of litigation; communication with counsel regarding litigation;

conference with consultant; details of conversation with Office of General Counsel; correspondence re: audit and possible litigation; communication with counsel re: termination by HHRG; communication with counsel re: possible claim against PwC; handwritten notes prepared by Alex Corl at the direction of counsel in anticipation of litigation; correspondence with counsel re: document collection; and correspondence re: background and potential fraud.

A privilege log must identify each document, the parties to the communication, the relationship among the parties in the log and the litigating parties, the maintenance of confidence and sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. *Long-Term Capital Holdings v. United States*, 2002 U.S. Dist. LEXIS 23224, *30 (D. Conn. 2002). A party's privilege claim will be rejected if the party fails to provide sufficient detail to demonstrate fulfillment of all of the legal requirements for application of the privilege. *Id.*

In this case, similar to *Long-Term Capital*, PwC's skeletal, conclusory descriptions do not fulfill the legal requirements for application of each asserted privilege:

### i. Attorney Client

It is impossible to determine whether the attorney-client privilege applies to the documents PwC asserts are protected by same. The attorney-client privilege protects both the confidential giving of professional advice by an attorney acting in the capacity of a legal advisor to those who can act on it, as well as the giving of information to the lawyer to enable counsel to give sound and informed advice. *Met. Life Ins. Co. v. Aetna*, 249 Conn. 36, 52 (1999). PwC's privilege log does indicate communications between PwC employees and attorneys. However, PwC does not specify the job title of the employee, nor does it indicate that confidential legal advice was given to the employee or that confidential information was given by the employee.

12

In fact, numerous documents that PwC describes as "communications with counsel regarding litigation" are dated one to two years in advance of the instant lawsuit being filed.

In addition, regarding correspondence to and from PwC's general counsel, as a corporation's general counsel often is involved in business matters, in order to demonstrate that the communication in question is privileged, PwC bears the burden of "clearly showing" that general counsel gave advice in his legal capacity, and not in his capacity as a business advisor. *See, Ames v. Black Entertainment TV*, 1998 U.S. Dist. LEXIS 18053, *21 (S.D.N.Y.). PwC fails to make *any* showing of same in the privilege log, let alone a *clear* showing.

Finally, attorneys for PwC are copied on several documents; however, the mere fact that an attorney is copied on an interdepartmental memorandum does not mean that the communication is privileged. *See, United States v Aluminum Co. of America*, 193 F. Supp 251 (N.D.N.Y. 1960). In *Aluminum Co.*, the company president requested business data from a corporate executive, and, subsequently, in a separate request, counsel requested essentially the same information for the purpose of forming an opinion as to the legality of a contemplated action. *Id.* at 252. The corporate executive sent the original memo to counsel and copied the president. *Id.* The Court held that the memo was not privileged and ordered that it be produced. *Id.* at 253. The Court reasoned that the document sent to the president was nothing more than an inter-office memo passing between two business executives. *Id.* The Court reasoned further that the mere fact that the original was sent to counsel under circumstances that preserve the privilege did not attach a privilege to the copy that was sent to an executive as a reply to a separate request for non-privileged business data. *Id.*

PwC's conclusory descriptions make it impossible to determine whether the certain documents withheld pursuant to the attorney-client privilege have been properly withheld. (We

attach hereto as Exhibit 11 a list of such documents.) Thus, PwC's claim of attorney-client privilege must fail as to these documents.

### ii.     Joint Defense

It is impossible to determine whether the joint defense privilege applies to the documents PwC asserts are protected by same. The joint defense privilege is an "extension of the attorney client privilege" and "it serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *Sony Elecs., Inc. v. Soundview Techs., Inc.*, 217 F.R.D. 104, 108 (D. Conn. 2002), citing *Schwimmer v. United States*, 892 F.2d 237, 243 (2d Cir. 1989). PwC has failed to establish that undertook any joint defense efforts with another party. Further, as the joint defense privilege is an extension of the attorney client privilege, which PwC has failed to establish, PwC's claim of joint defense privilege must fail as to the documents identified in Exhibit 12.

### iii.    Work Product

Based on PwC's log, it is impossible to determine whether the work product doctrine, or the "documents prepared in anticipation" privilege, which PwC fails to distinguish, applies to the documents PwC asserts are protected by same. A party invoking the protection of the work product doctrine has the burden of establishing that the documents at issue were prepared in anticipation of litigation. *Helt v. Metropolitan District Commission*, 113 F.R.D. 7, 12 (D. Conn. 1986). A document is "prepared in anticipation of litigation" if "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *Adlman*, 134 F.3d at 1202. It is not enough that a document was created after the threat of litigation became real, but it is also

247378.1

14

necessary that the motivation for creating that document was the litigation. *In re Grand Jury Proceedings*, 2001 U.S. Dist. LEXIS 15646, *51 (S.D.N.Y. Oct. 3, 2001).

PwC fails to provide any facts to demonstrate that the documents identified in Exhibit 13 were *not* prepared in the ordinary course of business, or that the threat of litigation was the motivation behind their creation. Thus, PwC's claim of work product must fail as to these documents.

## CONCLUSION

Based on the foregoing, Underwriters request that: 1) Underwriters' First Request for Admissions, Nos. 1-16, be deemed admitted; 2) PwC be compelled to produce: a) documents in response to Underwriters' First Request Nos. 5, 6, 9, 16, and 36; and b) documents in response to Underwriters' Second Request Nos. 2-6; 3) PwC be compelled to properly answer Underwriters' First Set of Interrogatories, Nos. 2-7; and 4) PwC's privilege claims be rejected.

Respectfully submitted,
ALEC SHARP, ET AL.

By: _____

Daniel J. McMahon
Stefan R. Dandelles
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
120 N. LaSalle Street
Chicago, IL 60602
(312) 704-0550
(312) 704-1522
mcmahond@wemed.com
dandelless@wemed.com

15

247378.1

Edward J. Boyle
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd St.
New York, NY 10017-5639
(212) 490-3000
(212) 490-3038
boylee@wemed.com

Fred Knopf
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY  10604
(914) 323-7000
(914) 323-7001
knopff@wemed.com

## **CERTIFICATION**

  I hereby certify that a copy of the foregoing was sent via email and overnight mail on February 11, 2005 to all counsel of record as follows:

Thomas D. Goldberg, Esq.
David J. Elliott, Esq.
William H. Erickson, Esq.
Day, Berry & Howard
CityPlace I
Hartford, CT 06103

Steven Humphrey, Esq.
Dina Fisher, Esq.
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103-3597

William H. Champlin III, Esq.
Michael T. McCormack, Esq.
Tyler Cooper & Alcorn, LLP
CityPlace, 35th Floor
185 Asylum Street
Hartford, CT  06103

                _____
                Stefan R. Dandelles