UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2005 MAR -1  A 10: 29

U.S. DISTRICT COURT
NEW HAVEN, CT

| | |
|---|---|
| GOLDEN WEST REFINING CORPORATION<br>Plaintiff<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS, LLP and<br>COOPERS & LYBRAND, LLP<br>Defendants | CIVIL ACTION NO.<br>3:02 CV 1379 (MRK) |
| ALEC SHARP, et al.<br>Plaintiffs<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS, LLP d/b/a<br>PRICE WATERHOUSE, LLP<br>Defendant. | CIVIL ACTION NO.<br>3:02 CV 1572 (MRK) |
| HANDY & HARMAN REFINING GROUP, INC.,<br>Plaintiff<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS, LLP,<br>Defendant | CIVIL ACTION NO.<br>3:02 CV 1803 (MRK)<br><br>FEBRUARY 28, 2005 |

## UNDERWRITERS' REPLY TO PRICEWATERHOUSECOOPERS LLP'S OPPOSITION TO UNDERWRITERS' MOTION TO COMPEL

Daniel J. McMahon
Stefan R. Dandelles
**Wilson, Elser, Moskowitz, Edelman & Dicker LLP**
120 N. LaSalle Street
Chicago, IL 60602
(312) 704-0550

Edward J. Boyle
**Wilson, Elser, Moskowitz, Edelman & Dicker LLP**
150 East 42nd St.
New York, NY 10017-5639
(212) 490-3000

Fred Knopf
**Wilson, Elser, Moskowitz, Edelman & Dicker LLP**
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000

249938.1

## INTRODUCTION

The unavailing arguments set forth in PwC's Memorandum of Law in Opposition to Underwriters' Motion to Compel ("PwC Opposition") confirm that PwC has unjustifiably resisted proper discovery in this matter. PwC's continued efforts to delay this action and unfairly burden Underwriters by abusing the discovery process must come to an end.[1]

## ARGUMENT

**A.    Interrogatories, First Set, Nos. 2-7, Description of Work**

PwC contends this dispute is moot because Underwriters have received the requested information "through other, more appropriate forms of discovery," namely, 19 boxes of audit work papers. PwC Opposition, p. 4. This is hardly an adequate defense to PwC's obligations under Fed. R. Civ. P. 33(d), which requires PwC to <u>specify</u> the records from which the answers can be ascertained. See *New Colt Holding Corp. v. RJG Holdings of Fla., Inc.*, 2003 U.S. Dist. LEXIS 18039 (D. Conn., Aug. 11, 2003). Moreover, PwC's continued argument that Underwriters mischaracterize PwC's audit obligations is a red herring. The purpose of Underwriters' discovery is to obtain factual information, not to dispute what legal standards may or may not apply to PwC's audit work. PwC's reference to the "tight discovery schedule" is no justification either, as Underwriters served their First Set of Interrogatories in July 2003.

**B.    Requests for Production**

**1.    First Request, Nos. 6 and 9, Audit and Accounting Manuals**

Relying on *In re ContiCommodity Servs., Inc. Sec. Litig.*, 1988 U.S. Dist. LEXIS 4812, (N.D. Ill. May 25, 1988), PwC contends that its internal audit and accounting manuals constitute

---

[1] The same day PwC submitted its Opposition to this Court advising that the balance of its witnesses would be made available by March 12, 2005, we received correspondence from PwC's counsel indicating that a key witness will not be made available until March 19, 2005.

249460.1

trade secrets and are not relevant because compliance with GAAS, rather than its own internal standards, is at issue here. However, the Northern District of Illinois, in more recent cases, has declined to follow the case upon which PwC relies. *See, e.g., Sabratek Liquidating L.L.C. v. KPMG LLP*, 2002 U.S. Dist. LEXIS 21858, *7 (N.D. Ill. November 12, 2002) (ordering production of KPMG's internal audit policies and guidelines, as relevant and discoverable materials); *In re Mercury Finance Co. of Illinois*, 1999 U.S. Dist. LEXIS 11236, *13-14 (N.D. Ill. July 12, 1999) (both cases attached hereto as Group Exhibit 1).

Further, district courts in the Second Circuit reject PwC's position as well. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 5817 (S.D.N.Y. Apr. 30, 2001); *In re Livent, Inc. Noteholders Sec. Litig.*, 2002 U.S. Dist. LEXIS 26446 (S.D.N.Y. Dec. 31, 2002)(both cases attached hereto as Group Exhibit 1). In *In re Oxford Health Plans*, the Court compelled production of the internal audit manual used by KPMG employees assigned to the Oxford audit, because the manual was a necessary guide to understanding whether AICPA standards were followed, and was vital to conducting meaningful depositions of the accountants who worked on the audit. *In re Oxford Health Plans, at *4-5*. The Court reasoned further that the previously entered confidentiality order would serve to protect any proprietary information. *Id.* at *6. Accordingly, the requested documents are relevant and must be produced. To the extent the manuals constitute trade secrets, the previously entered Protective Order in this matter will protect any proprietary information.

### 2.     First Request, No. 5, Personnel Files

PwC agrees to produce responsive documents related to the performance of each individual on the HHRG engagement, but has without justification sought to limit such production to those individuals Underwriters seek to depose. PwC Opposition, p. 4. Underwriters are entitled to all responsive documents relating to any PwC employee who worked

2

249460.1

on the HHRG audits. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 5817, *8 (S.D.N.Y. Apr. 30, 2001) (compelling production of performance evaluations and reviews of KPMG personnel who performed work on the Oxford audit, as evaluations and reviews would demonstrate whether those employees followed appropriate accounting and auditing procedures); *In re Mercury Finance Co. of Illinois*, 1999 U.S. Dist. LEXIS 11236, *13-14 (N.D. Ill. July 12, 1999) (compelling production of job evaluations of the 15 KPMG employees who performed the Mercury audits, as evaluations would enable Plaintiffs to determine whether they were blind to "red flags" which violated principles mandated by GAAP and GAAS). PwC again relies on the "tight deposition schedule" in asserting that compliance with the Federal Rules of Civil Procedure would be "extremely burdensome". However, Underwriters served their First Request for Production of Documents on PwC in July 2003.

### 3.    First Request, No. 16, Detailed Time Records

This dispute appears to be resolved, but Underwriters reserve their rights on this issue to the extent deposition testimony contradicts representations of PwC's counsel that detailed work descriptions are not maintained as a matter of course.

### 4.    First Request, No. 36, Internal Investigation Materials

PwC states that it has withheld *certain* documents, including documents created by Alex Corl, PwC's engagement partner, at the direction of PwC's Office of General Counsel and outside counsel, in anticipation of litigation. PwC Opposition, pp. 9-10. The participation of counsel does not "automatically cloak the investigation with legal garb." *In Re Grand Jury Subpoena*, 599 F.2d 504, 511 (2d Cir. 1979) (compelling production of memoranda created by corporate management at the direction of general counsel during an internal investigation). Moreover, PwC has failed to establish that the documents would *not* have been created in essentially similar form irrespective of the litigation. *See United States v. Adlman*, 134 F.3d

1194, 1202 (2d Cir. 1998). Finally, as PwC itself has argued in this matter, documents that are factual and investigative in nature are not privileged even when in-house or outside counsel are involved. Discovery must be a two-way street.

### 5. Second Request, Nos. 2 and 6, Document Retention Policies

On February 23, 2005, PwC produced retention policies dated January 1990 and January 1998. The January 1998 policy was in effect until April 2001. PwC Opposition, p. 11. Clearly, PwC's policies regarding retention of the HHRG audit documents after April 2001 are relevant as well. Accordingly, Underwriters request that PwC produce any document retention policies from April 2001 to present.

### C. Requests to Admit, First Request, Nos. 1-16

In Request No. 14, Underwriters ask whether PwC verified the existence of precious metal in a Peruvian vault, and in Request No. 15, Underwriters ask whether PwC examined the credit-worthiness of Panexim. These requests are direct, clearly stated, and "typical" of the other Requests. However, rather than provide *unqualified* admissions or denials, PwC creates disingenuous, hair-splitting distinctions. PwC's argument that Underwriters are able to obtain the information during the course of depositions illustrates PwC's failure to comply with the Federal Rules of Civil Procedure. Requests to admit are intended to narrow the issues requiring discovery. Further, PwC again relies on the "mischaracterization" defense to avoid answering Underwriters' straight-forward inquiries. PwC's continued attempts to delay this litigation and frustrate Underwriters must come to an end. PwC is fully capable of providing unqualified admissions or denials, and each of Underwriters' requests to admit should therefore be deemed admitted. *See Thalheim v. Eberheim*, 124 F.R.D. 34, 35 (D. Conn. 1988).

### D. Privilege Log

PwC has indicated that it is currently conducting a detailed review of the documents

listed in the privilege log, and will soon produce documents that do not communicate "sensitive information" and/or documents that have been mistakenly withheld. PwC Opposition, p. 13. PwC fails to explain what constitutes "sensitive information," and why PwC may withhold such documents in light of the previously entered Protective Order.

Furthermore, PwC maintains that its privilege log is sufficiently detailed. In response to the numerous, well-founded issues raised by Underwriters as a result of PwC's skeletal, conclusory document descriptions, PwC simply asserts that it is not required to provide more detail "because doing so *might* communicate privileged material." PwC Opposition, p. 13 (emphasis added). Nonetheless, similar to the petitioner in *Long-Term Capital Holdings v. United States,* 2002 U.S. Dist. LEXIS 23224, *30 (D. Conn. 2002), PwC attempts to "supplement" its inadequate privilege log by providing additional detail in its Opposition; however, PwC merely forms skeletal, conclusory sentences out of the existing information contained in the privilege log. As a privilege log must provide *sufficient detail* to permit a judgment as to whether the document is protected from disclosure, and PwC fails to sufficiently augment its descriptions, PwC's privilege claims should be rejected, or the documents should be subject to an *in camera* inspection to ascertain the validity of PwC's privilege claims.

## CONCLUSION

Based on the foregoing, Underwriters request that: 1) Underwriters' First Request for Admissions, Nos. 1-16, be deemed admitted; 2) PwC be compelled to produce: a) documents in response to Underwriters' First Request Nos. 5, 6, 9 and 36; and b) documents in response to Underwriters' Second Request Nos. 2 and 6; 3) PwC be compelled to properly answer Underwriters' First Set of Interrogatories, Nos. 2-7; and 4) PwC's privilege claims be rejected, or that the Court perform an in camera inspection of the challenged documents.

5

249460.1

Respectfully submitted,
ALEC SHARP, ET AL.

By: *Stefan Dandelles* (signature)

Daniel J. McMahon
Stefan R. Dandelles
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
120 N. LaSalle Street
Chicago, IL 60602
(312) 704-0550
(312) 704-1522
mcmahond@wemed.com
dandelless@wemed.com

Edward J. Boyle
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd St.
New York, NY 10017-5639
(212) 490-3000
(212) 490-3038
boylee@wemed.com

Fred Knopf
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000
(914) 323-7001
knopff@wemed.com

## **CERTIFICATION**

The undersigned, an attorney, hereby certifies that a copy of the foregoing was sent via email and overnight mail on February 28, 2005 to all counsel of record as follows:

Thomas D. Goldberg, Esq.
David J. Elliott, Esq.
William H. Erickson, Esq.
Day, Berry & Howard
CityPlace I
Hartford, CT 06103

Steven Humphrey, Esq.
Dina Fisher, Esq.
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103-3597

William H. Champlin III, Esq.
Michael T. McCormack, Esq.
Tyler Cooper & Alcorn, LLP
CityPlace, 35th Floor
185 Asylum Street
Hartford, CT 06103

Shawn P. Lee

249460.1

7

SABRATEK LIQUIDATING LLC, Plaintiff, vs. KPMG LLP, Defendant.

01 C 9582

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2002 U.S. Dist. LEXIS 21858

November 12, 2002, Decided
November 13, 2002, Docketed

**SUBSEQUENT HISTORY:** Motion granted by, in part, Motion denied by, in part Sabratek Liquidating LLC v. KPMG LLP, 2003 U.S. Dist. LEXIS 20687 (N.D. Ill., Nov. 18, 2003)

**PRIOR HISTORY:** Sabratek Liquidating LLC v. KMPG LLP, 2002 U.S. Dist. LEXIS 7483 (N.D. Ill., Apr. 25, 2002)

**DISPOSITION:** [*1] Plaintiff's motion to compel granted in part and denied in part.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff limited liability company (LLC) sued defendant accounting firm for negligence, negligent misrepresentation, and breach of contract, alleging that the accounting firm concocted schemes to allow the LLC to improve the appearance of its balance sheet, which resulted in its bankruptcy. The LLC moved to compel the accounting firm to produce certain documents.

**OVERVIEW:** The LLC's motion to compel was limited to four categories of documents. Regarding the request for the accounting firm's audit manuals and guidelines, contrary to the accounting firm's contention the standard of care was not limited to Generally Accepted Auditing Standards and Generally Accepted Accounting Principles; the accounting firm's own practices were relevant. However, the district court limited production to those policies that were maintained during the time when the LLC was the accounting firm's client. Regarding the request for the personnel files of accounting firm employees who performed services for the LLC, these documents were relevant as to the qualifications of the employees who performed the allegedly deficient work. These documents were not protected under the "self evaluation" privilege because there was no self-evaluation privilege under Illinois law. The district court allowed the LLC's request for documents relating to the LLC's accounting practices. Finally, the request for documents concerning lawsuits for professional malpractice against the accounting firm was overly broad, burdensome, and these documents were publicly available.

**OUTCOME:** The district court granted the motion to compel in part. The district court denied the portion of the motion that requested production of documents relating to past similar lawsuits.

**CORE TERMS:** audit, accounting, discovery, overly broad, guidelines, manuals, breach of contract, personnel, auditing, negligent misrepresentation, trade secrets, vague, protective order, self-evaluation, proprietary, privileged, motion to compel, confidential, lawsuit, resumes, trade secret, time period, time frame, disclosure, accountant, mandatory, outweighs, pertain, documents relating, objective standard

**LexisNexis(TM) Headnotes**

*Civil Procedure > Disclosure & Discovery > Mandatory Disclosures*

[HN1]The Federal Rules of Civil Procedure provide a court with broad discretion in resolving discovery disputes. In general, parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1). In ruling on motions to compel discovery, courts have consistently adopted a liberal interpretation of the discovery rules. Parties, however, are not entitled to discovery of privileged information. Fed. R. Civ. P. 26(b)(1). Additionally, the court may limit discovery that is unreasonably cumulative or duplicative, or if the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2).

*Civil Procedure > Disclosure & Discovery > Mandatory Disclosures*

*Evidence > Procedural Considerations > Burdens of Proof*

[HN2]The burden rests upon a party objecting to a discovery request to show why a particular discovery request is improper.

EXHIBIT
Group 1

*Civil Procedure > Disclosure & Discovery > Relevance*

[HN3]In a suit against an accounting firm alleging misrepresentation and fraud, for purposes of discovery, to prove fraud, as well as to conduct probing depositions of accountants who performed an allegedly fraudulent audit thus acquiring information which will have a direct bearing on the outcome of the case, a plaintiff is entitled to learn an accounting firm's procedures.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

*Evidence > Privileges > Self-Critical Analysis Privilege*

[HN4]For purposes of discovery, there is no self-evaluation privilege under Illinois law.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

*Civil Procedure > State & Federal Interrelationships > Application of State Law*

[HN5]Fed. R. Evid. 501 states that in civil actions and proceedings, with respect to an element of a claim or defense as to which state law supplies the rule of decision, the privilege of a witness, person, government, state, or political subdivision thereof shall be determined in accordance with state law.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

*Evidence > Privileges > Self-Critical Analysis Privilege*

[HN6]To be privileged under the self-evaluation privilege, the materials must have been prepared for mandatory government reports.

*Civil Procedure > Disclosure & Discovery > Undue Burden*

[HN7]Fed. R. Civ. P. 26(b)(2)(iii) allows a court to limit discovery if the burden or expense of the proposed discovery outweighs its likely benefit.

**COUNSEL:** For SABRATEK LIQUIDATING, LLC, plaintiff: Michael Joseph Collins, Bickel & Brewer, Dallas, TX.

For SABRATEK LIQUIDATING, LLC, plaintiff: Michael C. Moody, Limo T. Cherian, O'Rourke, McCloskey & Moody, Chicago, IL.

For KPMG LLP, defendant: William F. Lloyd, Frank B. Vanker, Linton Jeffries Childs, Hille von Rosenvinge Sheppard, David Andrew Gordon, Erika Lynn Pfleger, Melanie Elizabeth Walker, Sidley Austin Brown & Wood, Chicago, IL.

For KPMG LLP, counter-claimant: William F. Lloyd, Frank B. Vanker, Linton Jeffries Childs, Hille von Rosenvinge Sheppard, David Andrew Gordon, Erika Lynn Pfleger, Melanie Elizabeth Walker, Sidley Austin Brown & Wood, Chicago, IL.

For SABRATEK LIQUIDATING, LLC, counter-defendant: Michael Joseph Collins, Bickel & Brewer, Dallas, TX.

For SABRATEK LIQUIDATING, LLC, counter-defendant: Michael C. Moody, Limo T. Cherian, O'Rourke, McCloskey & Moody, Chicago, IL.

**JUDGES:** Charles P. Kocoras, Chief Judge, United States District Court.

**OPINIONBY:** Charles P. Kocoras

**OPINION: MEMORANDUM OPINION**

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the [*2] court on Plaintiff Sabratek Liquidating LLC's ("Sabratek LLC") motion to compel production of documents. For the reasons set forth below we grant the motion in part and deny it in part.

**BACKGROUND**

Sabratek LLC is a limited liability corporation formed under Delaware law. It is the successor in interest to Sabratek Corporation ("Sabratek"), an ill-fated corporation that folded in 1999. Sabratek's woes have spawned several suits and opinions prior to this one, which detail the story of Sabratek and its downfall. See *Geinko v. Padda*, 2001 U.S. Dist. LEXIS 15706, 2001 WL 1163728 (N.D. Ill. Sept. 28, 2001); *Chu v. Sabratek*, 100 F. Supp. 2d 815 (N.D. Ill, 2000); *Chu v. Sabratek*, 100 F. Supp. 2d 827 (N.D. Ill. 2000). In the interest of brevity, we reiterate only the facts that pertain to today's motion.

Sabratek was a manufacturer of health care products. Defendant KPMG is an auditing and accounting firm; from 1997 to 1999 it performed various auditing, accounting, and consulting services for Sabratek. According to the complaint, in the course of performing these services, KPMG concocted schemes to allow Sabratek to improve the appearance of its corporate balance [*3] sheet. The claims allege that KPMG advised Sabratek of ways to recast expenditures and assets to hide its true financial status. These "inventory and revenue manipulation schemes," which caused reports of Sabratek's earnings to be

Page 2

deficient by approximately $ 39 million, were eventually revealed, prompting the aforementioned suits by Sabratek investors and the speedy bankrupting of Sabratek.

In December 2001 Sabratek LLC filed the present action against KPMG, alleging negligence, negligent misrepresentation, breach of contract, and fraud on the part of Sabratek's former ally. Pursuant to a KPMG motion, we dismissed the fraud claims. The negligence, negligent misrepresentation, and breach of contract claims remain pending, and Sabratek LLC and KPMG are in the document discovery phase. Sabratek now moves to compel production of documents by KPMG.

**LEGAL STANDARD**

[HN1]The Federal Rules of Civil Procedure provide a court with "broad discretion in resolving discovery disputes." *Bobkoski v. Board of Educ. of Cary Consol. Sch. Dist. 26,* 141 F.R.D. 88, 90 (N.D. Ill.1992). In general, "parties may obtain discovery regarding any matter, not privileged, that is relevant to [*4] the claim or defense of any party . . .." Fed. R. Civ. P. 26(b)(1). "In ruling on motions to compel discovery, 'courts have consistently adopted a liberal interpretation of the discovery rules.'" *Meyer v. Southern Pac. Lines,* 199 F.R.D. 610, 2001 WL 293999 (N.D. Ill. March 26, 2001) (quoting *Wilstein v. San Tropai Condo. Master Ass'n,* 189 F.R.D. 371, 375 (N.D. Ill. 1999)). Parties, however, are not entitled to discovery of privileged information. Fed. R. Civ. P. 26(b)(1). Additionally, we may limit discovery that is "unreasonably cumulative or duplicative," or if "the burden or expense of the proposed discovery outweighs its likely benefit." *Cook, Inc. v. Boston Scientific Corp.,* 2002 U.S. Dist. LEXIS 4334, 2002 WL 406977, *1 (N.D. Ill. 2002) (citing Fed. R. Civ. P. 26(b)(2)). [HN2]The burden rests upon the objecting party to show why a particular discovery request is improper. *E.E.O.C. v. Klockner H & K Machines, Inc.,* 168 F.R.D. 233, 235 (E.D. Wis. 1996).

**DISCUSSION**

Sabratek LLC's motion to compel is limited to four categories of documents: (1) KPMG's audit manuals and guidelines, (2) the personnel files of KPMG employees who performed services for Sabratek, [*5] (3) KPMG documents referring or relating to Sabratek, and (4) documents concerning similar lawsuits against KPMG.

**I. KPMG's Audit Manuals & Guidelines**

Sabratek LLC requests production of KPMG's audit manuals and guidelines. KPMG objects to this request on the grounds that it is vague and overly broad and seeks documents that are not relevant and that contain trade secrets. Sabratek LLC's Document Request 55 states:Any and all audit guides of KPMG LLP, including, but not limited to, audit guides regarding SEC procedures, general audit guides, and accounting and auditing guides for in house services.Sabratek LLC's Document Request 57 states:All documents related to internal policies, including technical policy/guidance with respect to all questioned accounting and auditing areas and independence, engagement/client management policy guidance, forms, programs, procedures manuals, file retention, staff assignment, and quality control.KPMG cites these two document requests in support of its argument that the documents Sabratek LLC seeks are vague and overly broad. Sabratek LLC, however, does not move to compel all of these categories of documents. [*6] Sabratek LLC "clarified that the documents it is seeking" are those "that contain KPMG's audit practices, policies, procedures, and guidelines." Pl. Reply at 2. The current request is not vague or overly broad. *See In re Mercury Fin. Co. of Illinois,* 1999 U.S. Dist. LEXIS 11236, 1999 WL 495903, *2 (N.D. Ill. July 12, 1999) (compelling production of "all accounting and auditing manuals, guides, reference materials and literature that were prepared or generated by KPMG" and maintained during the relevant time period). We will, however, limit the production of KPMG's audit practices, policies, procedures, and guidelines to those that were maintained during some portion of the time frame in which Sabratek was a client of KPMG.

KPMG also asserts that the audit practices, policies, procedures, and guidelines are not relevant because the standard of care in this litigation is an objective standard, based on Generally Accepted Auditing Standards ("GAAS") and Generally Accepted Accounting Principles ("GAAP"). In *In re Mercury,* the court compelled production of similar documents over this same irrelevancy objection, stating:

[HN3]To [(prove fraud)], as well as to conduct probing depositions of [*7] accountants who performed the audit, thus acquiring information which will have a direct bearing on the outcome of this case, plaintiff is entitled to learn the accounting firm's procedures.

*In re Mercury,* 1999 U.S. Dist. LEXIS 11236, 1999 WL 495903 at *5 (quoting *Gohler v. Wood,* 162 F.R.D. 691, 695 (D. Utah 1995) (citing *Rosen v. Dick,* 1975 U.S. Dist. LEXIS 13739, 1975 WL 357 (S.D.N.Y. Feb. 20, 1975))). In that decision, the court dismissed the GAAS and GAAP objective standard argument and declined to follow the very cases ( *Davis v. Cooper & Lybrand,* 1992 U.S. Dist. LEXIS 9237,

Page 3

1992 WL 159504 (N.D. Ill. June 25, 1992) and *In re ContiCommodity Servs., Inc. Sec. Litig.*, 1988 U.S. Dist. LEXIS 4812, 1988 WL 56172 (N.D. Ill. May 25, 1988)) on which KPMG now relies. *In re Mercury*, 1999 U.S. Dist. LEXIS 11236, 1999 WL 495903 at *5. Although *In re Mercury* dealt with a motion to compel in a fraud allegation context, we find it instructive as to instant action grounded in negligence, negligent misrepresentation, and breach of contract.

To the extent that KPMG claims that the audit manuals and guidelines constitute trade secrets and proprietary materials, the protective order already executed by both parties will provide [*8] adequate protection once entered by this court. See *In re Mercury*, 1999 U.S. Dist. LEXIS 11236, 1999 WL 495903, *6 (compelling production of internal audit manuals over a trade secret objection since a protective order prevented disclosure of trade secrets outside the context of the litigation). Moreover, the involvement of trade secret and proprietary information in this action was a specific motivating factor for the protective order in the first place:

WHEREAS, the parties in this action may deem certain non-public documents requested in discovery in this action to be confidential insofar as they embody or reveal confidential commercial information, confidential and sensitive personal information, proprietary information, or trade secrets . . ..

Stipulated Protective Order at 1.

### II. Personnel Files of Relevant KPMG Employees

Sabratek LLC requests production of the personnel records, performance reviews, and resumes of every KPMG employee who provided services to Sabratek. KPMG objects to this request on the grounds that it seeks irrelevant and privileged documents and that it is overly broad.

The documents sought are clearly relevant as they pertain to the qualifications [*9] of the KPMG employees that performed the allegedly deficient work giving rise to the claims for negligence, negligent misrepresentation, and breach of contract. *Cf. In re Mercury*, 1999 U.S. Dist. LEXIS 11236, 1999 WL 495903, *2 (in action for fraud, compelling disclosure of personnel files and performance evaluations for every accountant who performed services for the client during the relevant time frame).

KPMG also claims that these documents are not discoverable under the "'self evaluation' privilege." Def. Resp. at 6-7. This argument fails for two reasons: (1) [HN4]there is no self-evaluation privilege under Illinois law, and (2) even if the privilege did exist, KPMG has not established that these documents would be protected under it.

[HN5]Federal Rule of Evidence 501 states that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." Fed. R. Evid. 501. In this diversity action, Sabratek's claims are governed by Illinois law. *See* Compl. P 2; *see also* April 26, 2002, Order [*10] at 4 (applying Illinois law to Sabratek's breach of contract claim). Accordingly, pursuant to Rule 501, any privileges asserted with respect to this action are also governed by Illinois law. KPMG does not cite, and we cannot locate, any case applying a self-evaluation privilege (or self-critical privilege as it is sometimes called) under Illinois law.

Even assuming the privilege did exist, KPMG has not established that it is entitled to its protection. [HN6]To be privileged under the self-evaluation privilege, "the materials must have been prepared for mandatory government reports." *Resnick v. American Dental Ass'n*, 95 F.R.D. 372, 374 (N.D. Ill. 1982). KPMG has not established, or even argued, that the documents sought were prepared for mandatory government reports.

KPMG also objects to producing the documents on the grounds that the request is overly broad. On the contrary, the request is straight forward and concise. The request asks for the personnel records, performance reviews, and resumes of whatever KPMG employees provided services to Sabratek. The request is not overly broad. See *In re Mercury*, 1999 U.S. Dist. LEXIS 11236, 1999 WL 495903, *2 (compelling production of similar [*11] documents).

### III. Documents Referring or Relating to Sabratek

Sabratek LLC requests "copies of all documents that refer to Sabratek that KPMG has in its possession." Pl. Memo. at 10. KPMG objects to this request as overly broad and pertaining to documents that are not relevant.

Sabratek LLC's request would require the production of every document at KPMG simply because it refers to Sabratek. Clearly, Sabratek LLC has cast its net so wide that it is certain to catch documents not relevant to any claim or defense in the instant litigation. Moreover, Sabratek LLC has offered no case law in support of such a broad request.

Page 4

Apparently as a backup position, Sabratek LLC offers an alternative, less inclusive request for documents. That request solicits "copies of all documents in KPMG's possession relating to Sabratek's accounting practices . . .." Pl. Memo. at 10. This lawsuit is based on Sabratek's allegedly deficient accounting practices resulting from KPMG's services. Thus, documents relating to Sabratek's accounting practices are clearly relevant.

### IV. Documents From Similar Lawsuits

Sabratek LLC requests production of "documents concerning other lawsuits in which [*12] KPMG was a party involving claims for professional malpractice" and "copies of all settlement agreements for such litigation." Pl. Memo. at 10. KPMG objects to this request on the grounds that it is vague and overly broad and that it seeks irrelevant material. Sabratek LLC counters that the documents sought may contain admissions that can be used against KPMG or information useful for impeachment purposes. While we agree that the information sought may contain information useful for gaining admissions and impeaching testimony, we do not believe this justifies such a potentially enormous amount of production on the part of KPMG. *See* [HN7]Fed. R. Civ. P. 26(b)(2)(iii) (allowing court to limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit"). Moreover, most, if not all, of the information sought is publicly available. Accordingly, we will not compel KPMG to produce this information.

### CONCLUSION

Based on the foregoing analysis, we grant the motion to compel in part and deny it in part. KPMG is ordered to produce:

1. KPMG documents containing KPMG's audit practices, policies, procedures, and guidelines that were maintained during any [*13] portion of the time period in which Sabratek was a client of KPMG;

2. KPMG's personnel records, performance reviews, and resumes for every KPMG employee that provided services to Sabratek; and

3. KPMG documents relating to Sabratek's accounting practices.

Charles P. Kocoras

Chief Judge

United States District Court

Dated: NOV 12 2002