IN THE MATTER OF: MERCURY FINANCE COMPANY OF ILLINOIS,

No. 97 C 3035

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1999 U.S. Dist. LEXIS 11236

July 12, 1999, Decided
July 17, 1999, Docketed

**DISPOSITION:** [*1] Plaintiffs' Motion to Compel (Doc. No. 95) granted.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff shareholders moved to compel defendant accounting firm to produce certain documents that they had requested during discovery in their action against defendant, alleging securities fraud in violation of § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C.S. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5, and common law fraud.

**OVERVIEW:** Plaintiff shareholders sued defendant accounting firm for the financial mismanagement of the company in which plaintiffs owned stock. During discovery, defendants refused to produce certain information, asserting the peer review privilege and the self-critical analysis privilege. Plaintiffs filed a motion to compel production of specified documents. The court granted plaintiffs' motion. Because the case involved allegations of widespread fraud, plaintiffs substantial need for the specified documents outweighed defendant's claim of peer review privilege. The court did not need to decide whether the federal common law recognized the self-critical analysis privilege because defendants failed to show that the privilege barred production of the requested documents. Also, the documents requested appeared reasonably calculated to lead to the discovery of admissible evidence, plaintiffs' requests were reasonably specific and were not unduly burdensome, and the court had previously issued a protective order preventing disclosure of defendant's internal audit manuals, which were trade secrets, outside the context of the litigation.

**OUTCOME:** The court granted plaintiffs' motion to compel defendant to produce specified documents in plaintiffs' suit against defendant for securities fraud and common law fraud because plaintiffs' requests were reasonably calculated to lead to discoverable evidence, and the production of the documents requested was not barred by the peer review privilege or the self-critical analysis privilege.

**CORE TERMS:** audit, accounting, federal common law, trade secrets, discovery, discovery of admissible evidence, manuals, auditing, subject matter, confidential, reasonably calculated to lead, pending action, peer review, finance, shareholder, engagement, accountant, billion, critical analysis, self critical, loan loss, self-critical, persuasive, outweighs, proprietary, reflecting, personnel, overbroad, stock, claim of privilege

### LexisNexis(TM) Headnotes

*Civil Procedure > Disclosure & Discovery > Mandatory Disclosures*

[HN1]District courts enjoy extremely broad discretion in controlling discovery.

*Civil Procedure > Disclosure & Discovery > Mandatory Disclosures*

[HN2]Fed. R. Civ. P. 26(b)(1) provides that parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN3]When a case involves a federal question, whether a privilege applies is governed by the principles of the common law by the courts of the United States in the light of reason and experience. Put simply, the federal common law of privileges applies, and federal courts have flexibility to develop rules of privilege on a case-by-case basis. There is a strong presumption against the application of privileges, and therefore privileges must be strictly construed. Federal common law recognizes a privilege only in rare situations.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN4]Federal courts should not easily disregard state statutory privileges.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN5]The self-critical analysis privilege allows individuals or businesses to candidly assess their compliance with regulatory and legal requirements without creating evidence that may be used against them by their opponents in future litigation.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN6]To decide whether the self-critical analysis privilege applies, the court must balance the public interest in protecting candid corporate self-assessments against the private interest of the litigant in obtaining all relevant documents through discovery. The self-critical privilege is based out of concern for the public and is not personal for the one asserting the privilege.

*Civil Procedure > Disclosure & Discovery > Relevance*

[HN7]Relevancy is broadly construed at the discovery stage of the litigation, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action.

*Torts > Malpractice Liability > Professional Services*

[HN8]To prove fraud, even measured against generally accepted accounting practices, a plaintiff must establish by a preponderance of the evidence that the accounting firm's actions did not meet that standard. To accomplish that, as well as to conduct probing depositions of accountants who performed the audit, thus acquiring information which will have a direct bearing on the outcome of the case, plaintiff is entitled to learn the accounting firm's procedures.

*Civil Procedure > Disclosure & Discovery > Mandatory Disclosures*

[HN9]The Federal Rules of Civil Procedure, specifically Fed. R. Civ. P. 26(b)(1), favor full disclosure of facts during discovery.

**COUNSEL:** For REALTECH SOFTWARE EMPLOYEES RETIREMENT PROGRAM, claimant: Clinton A. Krislov, Krislov & Associates, Ltd., Chicago, IL.

For REALTECH SOFTWARE EMPLOYEES RETIREMENT PROGRAM, claimant: William Bogot, Attorney at Law, Chicago, IL.

**JUDGES:** CHARLES RONALD NORGLE, SR., Judge, United States District Court.

**OPINIONBY:** CHARLES RONALD NORGLE, SR.

**OPINION: OPINION and ORDER**

CHARLES R. NORGLE, SR., District Judge:

Before the court is Plaintiffs' Motion to Compel (Doc. No. 95). For the following reasons, Plaintiffs' motion is granted.

I. BACKGROUND

This shareholder litigation spawns from the financial mismanagement of Mercury Finance Company ("Mercury") and the subsequent crash of its stock in early 1997.

Mercury was once a leading lender in the sub-prime auto finance industry with 300 branches throughout 27 states. In January 1997, however, Mercury announced that the company had serious "accounting irregularities," including vast overstatements of profits in prior years. Mercury's stock consequently collapsed, its shares plunging from a high of $ 14.07 to less than 50 cents within days; the grand total was a $ 2.5. billion loss [*2] of market capitalization for thousands of shareholders and the immediate default of $ 1.1 billion in debt.

Upon the collapse of Mercury's stock, several shareholders of the company filed lawsuits against Mercury, its auditor - KPMG Peat Marwick ("KPMG"), and various individual defendants who were executives or directors of the company. The approximately 45 cases filed in the Northern District of Illinois were consolidated before this court in May 1997. On April 17, 1998, the Lead Plaintiff in this case, Minnesota State Board of Investment ("MSBI"), filed an eight-count Amended Class Action Complaint. In July 1998, Mercury filed for bankruptcy reorganization under Chapter 11. In early 1999, a class-wide settlement was reached with all the defendants except for KPMG.

Two claims remain against KPMG: (1) securities fraud, in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5; and (2) common law fraud. Specifically, Plaintiffs allege that KPMG's 1995 audit opinion of Mercury's financial statements violated Generally Accepted Auditing Standards ("GAAS"). According to Plaintiffs, KPMG ignored [*3] substantial warnings during its audit that Mercury's accounting policies during fiscal 1995 violated Generally Accepted Accounting Practices ("GAAP"). The warnings allegedly included: (1) the

Page 2

deterioration of Mercury's loan portfolio; (2) the decline of Mercury's loan loss reserves; (3) the overstatement of Mercury's earnings and receivables; and (4) the incentive for Mercury's former Chief Executive Officer, John Brincat, Sr., to overstate financial results. The complaint also includes allegations that KPMG failed to comply with other specific provisions of GAAS and that KPMG was aware of Mercury's fraudulent accounting practices because it had been auditing Mercury's financial statements since 1989.

During the ongoing discovery of this litigation, Plaintiffs served document requests on KPMG that sought information concerning, among other things, KPMG's conduct as Mercury's auditor. KPMG responded to many of Plaintiffs' requests, but refused to produce certain information it deemed objectionable on several grounds. Plaintiffs now move to compel production of the documents specified in requests 7, 8, 11, and 15. The court excerpts Plaintiffs' requests, and KPMG's relevant objections, [*4] here. n1**
REQUEST No. 7: All workpapers and other documents concerning or reflecting any peer review, either by KPMG or any other auditing firm, of any engagement work performed by KPMG on behalf of Mercury during the Relevant Time Period.

KPMG's RESPONSE: KPMG objects to Request No. 7 on the grounds that it calls for documents that are subject to the peer review privilege established by 225 ILCS 450/30.3 and documents that are subject to the privilege of self-critical evaluation.

** REQUEST No. 8: All accounting and auditing manuals, guides, reference materials and literature that were prepared or generated by KPMG that pertain to finance receivables, loan loss reserves, single interest insurance coverage, static pooling reserve methodology, dealer reserves, allowances for finance credit losses, internal controls, or any other aspect of any audit or review engagement that KPMG performed for Mercury during the Relevant Time Period, and were maintained by KPMG at the time of the following:

(a) the 1994 Audit; (b) the 1995 Audit; (c) the March 1994 Review; (d) the June 1994 Review; (e) the September 1994 Review; (f) the March 1995 Review (g) the June [*5] 1995 Review; or (h) the September 1995 Review.

KPMG's RESPONSE: KPMG objects to Request No. 8 on the ground that the request is overbroad and on the grounds that the request calls for highly confidential, proprietary documents containing trade secrets and for information that is neither relevant to the subject matter of the pending action nor reasonably likely to lead to the discovery of admissible evidence.

** REQUEST No. 11: All documents concerning the job performance of any accountant employed by KPMG who performed work on behalf of Mercury in connection with any audit engagement or review engagement during the Relevant Time Period, including all documents concerning, reflecting personnel files and performance evaluations for [15 KPMG employees].

KPMG's RESPONSE: KPMG objects to Request No. 11 on the grounds that it vague and ambiguous, that it is overly broad, that it calls for highly confidential, proprietary documents containing trade secrets and private, personal information relating to the named individuals, that it seeks information that is neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery [*6] of admissible evidence, and that it calls for documents that are subject to the peer review privilege established by 225 ILCS 450/30.3 and documents subject to the privilege of self-critical evaluation.

** REQUEST No. 15: All documents concerning or reflecting any policy or procedure of KPMG with respect to the retention or destruction of documents.

KPMG's RESPONSE: KPMG objects to Request No. 15 on the grounds that the request calls for highly confidential, proprietary documents containing trade secrets and that the request calls for information that is neither relevant to the subject matter of the pending action nor reasonably likely to lead to the discovery of admissible evidence.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n1 KMPG also asserted "General Objections" and objections to Plaintiffs' use of certain definitions in their production request. Because KPMG's specific objections are comprehensive, the court does not recite its other objections here.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

II. DISCUSSION

At the outset, the court notes that "[HN1]district courts enjoy [*7] extremely broad discretion in controlling discovery." Weeks v. Samsung Heavy Indust. Co., Ltd., 126 F.3d 926, 943 (7th Cir. 1997). [HN2]Federal

Rule of Civil Procedure 26(b)(1) provides, in relevant part:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action .... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

The court first addresses KPMG's assertion of the "Peer Review Privilege," 225 ILCS 450/30.3, and the "Self Critical Analysis Privilege" in response to Request Numbers 7 (workpapers concerning peer review) and 11 (performance evaluations of accountants who worked on the audits). Rule 501 of the Federal Rules of Evidence governs whether information is "privileged" for purposes of Rule 26(b)(1). [HN3]Because this case involves a federal question, whether a privilege applies is "governed by the principles of the common law by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501. Put simply, the [*8] federal common law of privileges applies, and federal courts have "flexibility to develop rules of privilege on a case by case basis." University of Pennsylvania v. EEOC, 493 U.S. 182, 189, 107 L. Ed. 2d 571, 110 S. Ct. 577 (1990). It should be noted, however, that there is a strong presumption against the application of privileges, and therefore privileges must be "strictly construed." See id.; Trammel v. United States, 445 U.S. 40, 51, 63 L. Ed. 2d 186, 100 S. Ct. 906 (1980); Linde, Thomson, Langworthy Kohn & Van Dyke v. RTC, 303 U.S. App. D.C. 316, 5 F.3d 1508, 1514 (D.C. Cir. 1993). Indeed, "federal common law recognizes a privilege only in rare situations." In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 918 (8th Cir. 1997).

Plaintiffs argue that because the federal common law of privilege applies, KMPG cannot rely on the Peer Review Privilege, a creature of Illinois law. KPMG, on the other hand, urges the court to recognize the Peer Review Privilege here on policy grounds, i.e., to promote candid review of audits. KPMG fails to cite, nor has the court's research found, any case in which a federal court [*9] has applied Illinois' Peer Review Privilege. That, however, does not necessarily prevent the court from applying the privilege here. See Memorial Hosp. for McHenry County v. Shadur, 664 F.2d 1058, 1061 (7th Cir. 1981) (stating that [HN4]federal courts should not easily disregard state statutory privileges).

Nonetheless, KPMG's policy argument is not persuasive, for the documents that Plaintiffs seek in Request Numbers 7 and 11 appear "reasonably calculated to lead to the discovery of admissible evidence." KPMG is accused of, at minimum, failing to detect widespread financial fraud that resulted in a $ 2.5. billion loss of market capitalization for thousands of shareholders and the immediate default of $ 1.1 billion in debt. Simply put, Plaintiffs' substantial need for the documents in a case allegedly involving widespread financial fraud outweighs KPMG's claim of privilege and its underlying policy argument. See id. at 1061-62; Ryan v. Commissioner of Internal Revenue, 568 F.2d 531, 542-43 (7th Cir. 1977); Robinson v. Magovern, 83 F.R.D. 79, 89 (W.D. Pa. 1979). Accordingly, the court rejects KPMG's assertion of Illinois' [*10] Peer Review Privilege.

Plaintiffs also attack KPMG's assertion of the "Self Critical Analysis Privilege" on the ground that the federal common law does not recognize the privilege. Alternatively, Plaintiffs argue that even if the privilege is recognized, it does not bar the production of the requested documents.

[HN5]The self critical analysis privilege "allows individuals or businesses to candidly assess their compliance with regulatory and legal requirements without creating evidence that may be used against them by their opponents in future litigation." Reichhold Chem., Inc. v. Textron, Inc., 157 F.R.D. 522, 524 (N.D. Fla. 1994). The Seventh Circuit has yet to address whether a self critical analysis privilege exists under federal common law. See Morgan v. United Pacific Railroad Co., 182 F.R.D. 261, 264 (N.D. Ill. 1998). Some federal courts, however, have recognized the privilege, see, e.g., In re Crazy Eddie Securities Litigation, 792 F. Supp. 197, 205-06 (E.D.N.Y. 1992), while at least one court has flatly declared that the privilege does not exist under the federal common law, see Spencer Savings Bank v. Excell Mortg. Corp., 960 F. Supp. 835, 843-44 (D.N.J. 1997). [*11] n2 Although the reasoning in Spencer Savings is persuasive, this court need not conclusively decide whether the federal common law recognizes the self critical analysis privilege. Even assuming the privilege does exist, KPMG fails to meet its burden to show that the privilege should apply to bar production of the documents requested.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n2 For a review of additional cases addressing the self critical analysis privilege, see Dowling v. American Hawaii Cruises, Inc., 971 F.2d 423, 425-26 (9th Cir. 1992); Hickman v. Whirlpool Corp., 186 F.R.D. 362, 1999 WL 304691, at *1 (N.D. Ohio 1999); Morgan, 182

F.R.D. at 263-67; Andritz Sprout- Bauer, Inc. v. Beazer East, Inc., 174 F.R.D. 609, 634 (M.D. Pa. 1997); Reichhold Chem., 157 F.R.D. at 524-27; Culinary Foods, Inc. v. Raychem Corp., 151 F.R.D. 297, 303-05 (N.D. Ill. 1993); Lasky v. American Broadcasting Companies, 1986 U.S. Dist. LEXIS 21670, 5 Fed. R. Serv. 3d (Callaghan) 1366, 1986 WL 9223 (S.D.N.Y. Aug. 13, 1986); Resnick v. American Dental Assoc., 95 F.R.D. 372, 373 (N.D. Ill. 1982).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*12] [HN6]

To decide whether the self critical analysis privilege applies, the court must "balance the public interest in protecting candid corporate self-assessments against the private interest of the litigant in obtaining all relevant documents through discovery." Morgan, 182 F.R.D. at 264. KPMG argues that applying the privilege here "serves the public interest by encouraging self-improvement, and a failure to recognize the privilege could have a chilling effect on KPMG's ongoing efforts to monitor and improve the quality of its work." (Resp. at 7.) Given the nature of this case, i.e., allegations of widespread financial fraud, KPMG's argument is weak. The self-critical privilege is based "out of concern for the public and is not personal for the one asserting the privilege." Warren v. Legg Mason Wood Walker, Inc., 896 F. Supp. 540, 543 (E.D.N.C. 1995) (rejecting claim that audit reports were protected by self critical analysis privilege). And as already noted, Plaintiffs' substantial need for the documents sought via Requests 7 and 11 outweighs KPMG's claim of privilege.

KPMG also objects to Plaintiffs' production requests on various other grounds. [*13] Specifically, KPMG claims that Plaintiffs' requests are either irrelevant or overbroad or seek confidential information and trade secrets. KPMG's objections are without merit.

First, the court rejects KPMG's objection as to the relevance of the information that Plaintiffs request. "[HN7]Relevancy . . . is broadly construed at the discovery stage of the litigation, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." In re Aircrash Disaster near Roselawn, Indiana, 172 F.R.D. 295, 303 (N.D. Ill. 1997). Again, the court notes that each of Plaintiffs' requests seek information that appears "reasonably calculated to lead to the discovery of admissible evidence."

For instance, Request Number 8 seeks the accounting and auditing manuals and other written materials prepared and generated by KPMG on seven specific accounting procedures at issue in this case (e.g, finance credit losses and loan loss reserves). KPMG objects to the production of its internal audit manuals on the ground that the issue here is whether it complied with GAAS and GAAP, not its own internal [*14] standards. Although other courts have accepted this argument, see, e.g., Davis v. Coopers & Lybrand, 1992 U.S. Dist. LEXIS 9237, 90 C 7173, 1992 WL 159504, at *1 (N.D. Ill. June 25, 1992) and In re ContiCommodity Servs., Inc. Sec. Litig., 1988 U.S. Dist. LEXIS 4812, MDL No. 644, 1988 WL 56172, at *2 (N.D. Ill. May 25, 1988), this court finds the view noted in Gohler v. Wood, 162 F.R.D. 691, 695 (D. Utah 1995) persuasive:

[HN8]
To prove fraud, even measured against generally accepted accounting practices, plaintiff must establish by a preponderance of the evidence that [the accounting firm's] actions did not meet that standard. . . . To accomplish this, as well as to conduct probing depositions of accountants who performed the audit, thus acquiring information which will have a direct bearing on the outcome of this case, plaintiff [is entitled to learn] the accounting firm's procedures.

(quoting Rosen v. Dick, 1975 U.S. Dist. LEXIS 13739, [1974-1975 Transfer Binder] Fed. Sec. L. Rep. (CCH) P 94,989 (S.D.N.Y. 1975)) (internal quotation marks omitted); see also Fields v. Oliver's Stores, Inc., 1990 U.S. Dist. LEXIS 2271, 87 C 0894, 1991 WL 44845, at *1 (S.D.N.Y. March 2, 1990) (stating that defendant [*15] accounting firm's audit manuals "are the single best source of information available to plaintiffs on how [the firm] conducted audits.").

Additionally, Request Number 11, which seeks job evaluations of the 15 KPMG employees who performed the Mercury audits, is relevant. As Plaintiffs point out, Request Numbers 8 and 11 would enable them to obtain information such as: (1) who performed the audits; (2) what they learned during the audits; (3) when they learned the information; (4) whether they were blind to "red flags" which violated principles mandated by GAAP and GAAS; (5) whether they followed accounting and auditing procedures outlined by KPMG; (6) if KPMG knew about the financial misstatements; (7) why KPMG failed to correct these misstatements; and (8) what actions, if any, KPMG took against the accountants who performed the audit. Finally, the court finds that Plaintiffs' Request Number

15, which requests documents concerning KPMG's document retention policy, is straightforward and reasonable. For these reasons, the court finds that Plaintiffs' requests seek relevant information and are discoverable.

The court also rejects KPMG's claim that Plaintiffs' requests are overbroad. [*16] Because Mercury was a nationwide company that handled hundreds of millions of dollars in loans, it follows that KPMG's audits would involve vast amounts of paperwork. That Plaintiffs will be required to sift through a mountain of documents to establish their case against KPMG does not preclude production. Furthermore, Plaintiffs' requests are reasonably specific, as they identify the time period and issues for the responsive documents, and therefore there is no indication that the requests would be unduly burdensome to KPMG.

Finally, the court rejects KPMG's claim that Plaintiffs' Request Numbers 8 and 11 should be denied because its internal audit manuals are trade secrets and its personnel files are confidential. Of particular note is that the court has already approved a protective order which prevents the disclosure of "trade secrets" outside the context of this litigation. See Gohler, 162 F.R.D. at 696-97. Moreover, the court has already found that Plaintiffs' requests seek relevant information that may be necessary to establish their case. Thus, that KPMG's audit manuals are trade secrets and its personnel files confidential, is not a sufficient reason to prevent [*17] production.

III. CONCLUSION

KPMG submits some legitimate arguments in support of its objections to Plaintiffs' discovery requests. However, [HN9]the Federal Rules of Civil Procedure, specifically Rule 26(b)(1), favors full disclosure of facts during discovery. Thus, in the exercise of its discretion, the court finds that given the large-scale nature of this case, Plaintiffs' requests are reasonable, and their need for the requested information in pursuit of their claims outweighs KPMG's objections. Allowing Plaintiffs to obtain the requested documents will expedite the determination whether KPMG is indeed liable. Plaintiffs' motion to compel is hence granted.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, SR., Judge

United States District Court

DATED: 7-12-99

IN RE OXFORD HEALTH PLANS, INC. SECURITIES LITIGATION

MDL Civ. 1222 (CLB)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2001 U.S. Dist. LEXIS 5817

April 30, 2001, Decided

### CASE SUMMARY

**PROCEDURAL POSTURE:** In a securities class action, plaintiffs moved to compel defendant to produce certain audit and personnel documents.

**OVERVIEW:** Plaintiffs brought a securities class action against defendant. Plaintiffs moved to compel defendant to produce certain audit and personnel documents on the grounds that defendant violated various auditing standards. The court determined that in evaluating the manner in which defendant conducted the disputed audit was relevant to the plaintiffs' claims, because the defendant's audit materials described how the defendant conducted audits and would be a necessary guide to understanding whether auditing standards were followed. Therefore, such materials were necessary and relevant to the plaintiff's claims. Furthermore, documents concerning evaluations, reviews, and resumes of defendant's personnel who performed work on the disputed audit would have enabled plaintiffs to obtain information such as whether those employees were properly trained for the audit, and whether they followed appropriate accounting and auditing procedures. Such information was relevant and necessary to plaintiffs in proving their allegations.

**OUTCOME:** Motion to compel defendant to produce certain audit and personnel documents was granted.

**CORE TERMS:** audit, workpapers, auditing, manual, revised, accountants, trade secrets, accounting, self-evaluative, so-called, personnel, discovery, resumes, self-critical, conducting, deposition, auditors, immune, documents requested, proprietary, referenced, conformity, engagements, recklessly, responded, assigned, training, premium

**LexisNexis(TM) Headnotes**

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN1]Fed. R. Civ. P. 26(b)(1), as recently amended, permits discovery of those matters relevant to the claim or defense of any party.

**COUNSEL:** [*1] For Plaintiffs: Jay W. Eisenhofer, Esq., Lead Counsel, Grant & Eisenhofer, P.A., Wilmington, DE.

For Plaintiffs: Patricia M. Hynes, Esq., Steven G. Schulman, Esq., Lead Counsel, Milberg Weiss Bershad Hynes & Lerach, New York, NY.

For Plaintiffs: Martin D. Chitwood, Esq., Christi C. Mobley, Esq., John O'Shea Sullivan, Esq., Lead Counsel, Chitwood & Harley, Atlanta, GA.

For Plaintiffs: Stephen Lowey, Esq., Richard B. Dannenberg, Esq., Liaison Counsel, Lowey Dannenberg Bemporad & Selinger, PC, White Plains, NY.

For Steven Wiggins: Peter J. Beshar, Esq., Gibson, Dunn & Crutcher, LLP, New York, NY.

For Robert Milligan: Kenneth Conboy, Esq., Maureen C. Shay, Esq., Latham & Watkins, New York, NY.

For Oxford, and officer defendants other than Wiggins, Cassidy and Milligan: Robert J. Giuffra, Jr., Esq., Sullivan & Cromwell, New York, NY.

For Andrew Cassidy: Barry H. Berke, Esq., Kramer, Levin, Naftalis & Frankel, New York, NY.

For Peat Marwick: WILLKIE FARR & GALLAGHER, New York, NY.

**JUDGES:** Charles L. Brieant, U.S.D.J.

**OPINIONBY:** Charles L. Brieant

**OPINION:** MEMORANDUM & ORDER

Brieant, J.

By motion filed on March 2, 2001, Plaintiffs in this securities class action move to compel Defendant KPMG Peat Marwick ("KPMG") to produce certain

audit and personnel documents. This matter was heard and fully submitted on April 26, 2001.

The Court assumes familiarity with its prior decisions and proceedings in this matter.

## Background

KPMG audited Oxford's 1996 financial statements (the "Audit") and issued an unqualified audit opinion, dated February 18, 1997, on those financial statements, which was included in Oxford's 1996 10-K and 1996 Annual Report. In the audit opinion, KPMG stated that its audit was conducted in accordance with Generally Accepted Auditing Standards ("GAAS") and that the financial statements fairly presented Oxford's financial position in conformity with Generally Accepted Accounting Principles ("GAAP"). Plaintiffs allege, among other things, however, that Oxford's 1996 financial statements were not presented in conformity with GAAP and that KPMG ignored Oxford's lack of internal controls. Plaintiffs also allege that KPMG either knew or recklessly disregarded [*2] that Oxford could not: (i) accurately assess premium receivables or reserves for uncollectible premiums due to its computer system's inability to bill members in a timely fashion; (ii) process or age claims that had been reported but not paid; or (iii) calculate reserves for medical expenses that had been incurred but not reported, due to the total lack of accurate current or historical information regarding claims experience.

On June 3, 1999, Plaintiffs served their First Set of Requests for Production of Documents ("Plaintiffs' First Documents Requests") on Defendant KPMG. On July 6, 1999, KPMG served its Responses and Objections to Plaintiffs' First Document Requests. On December 20, 1999, Plaintiffs sent a letter to KPMG which revised Request No. 45 to Plaintiffs' First Document Requests. The revised request asked for certain provisions of KPMG's Audit Service Manual, which were in existence during 1995, 1996 or 1997, that KPMG had specifically referenced in its workpapers on the Oxford audit. On January 27, 2000, KPMG responded to Plaintiffs' revised request and stated that it objected to Plaintiffs' revised requests but that it would consider any showing by Plaintiffs that the [*3] documents requested were relevant. On March 3, 2000, Plaintiffs responded that, because certain provisions of the Audit Manual were referenced specifically in KPMG's workpapers, Plaintiffs were entitled to production of those provisions.

On May 24, 2000, Plaintiffs served their Second Set of Requests for Production of Documents on Defendant KPMG ("Plaintiffs' Second Document Requests"). These requests included:

- All audit guides and/or training materials, including, but not limited to, electronic data processing training materials, and statistical sampling policies and procedures utilized by KPMG employees who were assigned to KPMG's audit of Oxford (Request No. 2); and

- All resumes and documents concerning the qualifications of KPMG employees who were assigned to KPMG's audits and consulting engagements performed for Oxford, including, but not limited to, all performance evaluations or personnel reviews associated with such engagements (Request No. 14).

KPMG argues that it should not be required to produce such documents because the first request (Request No. 2) calls for documents that constitute proprietary information and trade secrets and the second request (Request No. [*4] 14) calls for information protected by the so-called "self-evaluative privilege."

## Discussion

[HN1]Rule 26(b)(1) of the Federal Rules of Civil Procedure, as recently amended, permits discovery of those matters "relevant to the claim or defense of any party." Plaintiffs' claims include allegations that, among other things, KPMG violated various auditing standards. It is clear to the Court, therefore, that evaluating the manner in which KPMG conducted the Oxford audit is relevant to Plaintiffs' claims.

## Plaintiffs' Request for Audit Guides/Training Manuals

Defendants' contentions that its audit manual and related materials are immune from discovery and thereby essentially immune from challenge is not persuasive. The workpapers produced by KPMG in this case contain extensive references to the firm's audit manual and materials. In fact, the Audit Program contained in the workpapers cites specific provisions of the Audit Materials in describing the procedures to be performed during the Audit. KPMG's Audit Manual and materials are likely the best source of information available to Plaintiffs regarding how KPMG conducted the Oxford audit. *See Fields v. Oliver's Stores, Inc., 1990 U.S. Dist. LEXIS 2271* [*5] *at *2.* Understanding these materials could be vital to conducting meaningful depositions of the accountants who worked on the Oxford audit and might aid in learning whether KPMG's auditors acted recklessly or with scienter by conducting the audit in an irregular fashion. *See id.; see also Rosen v. Dick, [1974-1975 Transfer Binder] 1975 U.S. Dist. LEXIS 13739, Fed. Sec. L.Rep. (CCH) P 94,989 at 97,433 (S.D.N.Y. Feb. 20, 1975)*(accounting and auditing materials ordered to be produced for "it will be necessary for plaintiff to be

aware of these procedures to conduct a meaningful deposition of the accountants who worked on the audits in question").

KPMG contends that auditors should be judged by the standards of the American Institute of Certified Public Accountants ("AICPA") and not by their audit manuals. The firm's audit materials, however, describe how KPMG conducts audits and will be a necessary guide to understanding whether AICPA standards were followed. *See In re Crazy Eddie Sec. Lit.*, 1988 U.S. Dist. LEXIS 13235 at *2 (E.D.N.Y. November 18, 1988); *Fields v. Oliver's Stores*, at *2. This Court concludes, therefore, that such materials are necessary and relevant to Plaintiff's [*6] claims.

The Court need not reach the issue of whether KPMG's audit materials constitute trade secrets because the Confidentiality Order previously entered in this case will serve to protect any proprietary information contained in KPMG's audit manual and materials. The Confidentiality Order specifically contemplates that trade secrets might be produced and provides the necessary protection for them.

*Plaintiffs' Request for Resumes, Evaluations, etc.*

The question of whether of a self-evaluative privilege ought to be recognized as a matter of federal law has not been settled by the Supreme Court or by our Court of Appeals. *See In re Federation Internationale De Basketball*, 117 F. Supp. 2d 403, 407 (S.D.N.Y. 2000). Several district judges in this District have declined to apply the privilege. *See, e.g., Cruz v. Coach Stores, Inc.*, 196 F.R.D. 228, 232 (S.D.N.Y. 2000)("As to the so-called 'self-critical analysis privilege,' the Court is doubtful it should be recognized at all").

In *Mercury Finance*, 1999 U.S. Dist. LEXIS 11236, (N.D. Ill. July 12, 1999), Plaintiffs alleged that KPMG, in auditing financial statements of Mercury [*7] Finance Corporation ("Mercury"), violated certain provisions of GAAS, and that KPMG ignored substantial warnings during its audits that Mercury's accounting policies during fiscal 1995 violated GAAP. Plaintiffs moved to compel the production of, among other things, KPMG workpapers concerning peer review, as well as performance evaluations of accountants who worked on the audits. In assessing whether the self-critical analysis should be applied, the court "balanced the public interest in protecting candid corporate self-assessments against the private interest of the litigant in obtaining all relevant documents through discovery." The court concluded that Plaintiff's substantial need for the workpapers concerning peer reviews and performance evaluations "outweighed KPMG's claim of privilege." The court also noted that given the allegations of widespread financial fraud, KPMG's argument that failing to recognize the privilege could have a chilling effect on KPMG's ongoing efforts to monitor and improve the quality of its work was without merit.

Here, as in *Mercury Finance*, Plaintiffs' substantial need for the documents requested outweighs KPMG's claims of the so-called self-evaluative [*8] privilege. Documents concerning evaluations, reviews and resumes of KPMG personnel who performed work on the Oxford audit would enable Plaintiffs to obtain information including whether those employees were properly trained for the audit, whether they followed appropriate accounting and auditing procedures. Such information is relevant and necessary to Plaintiffs in proving their allegations in this case.

The Court finds that Plaintiffs' document Request No. 14 is reasonable and is not overbroad. As the court in *Mercury Finance* found with respect to KPMG's like objection in that case, "Plaintiffs' requests are reasonably specific, as they identify the time period and issues for the responsive documents, and ... there is no indication that the requests would be unduly burdensome to KPMG."

*Conclusion*

Based on the foregoing, the Court orders Defendant KPMG to produce those documents necessary to comply with Plaintiffs' Document Request Nos. 2 and 14 within twenty (20) days of the date of this Order.

SO ORDERED.

Dated: White Plains, New York

April 30, 2001

Charles L. Brieant, U.S.D.J.

In re LIVENT, INC. NOTEHOLDERS SECURITIES LITIGATION.

98 Civ. 7161 (VM) (DFE)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2002 U.S. Dist. LEXIS 26446

December 31, 2002, Decided
January 2, 2003, Filed

**SUBSEQUENT HISTORY:** Summary judgment granted by In re Livent, Inc. Noteholders Sec. Litig., 2005 U.S. Dist. LEXIS 1774 (S.D.N.Y., Feb. 4, 2005)

**PRIOR HISTORY:** In re Livent Noteholders Sec. Litig., 210 F.R.D. 512, 2002 U.S. Dist. LEXIS 22233 (S.D.N.Y., 2002)

**DISPOSITION:** Court resolved pretrial discovery issues.

## CASE SUMMARY

**PROCEDURAL POSTURE:** In a securities case, there were five disputed issues of discovery between plaintiffs and defendant cross-claimant accounting firm. The matter was referred to a magistrate judge for resolution.

**OVERVIEW:** In the area of revenue recognition, the accounting firm had withheld documents from two transactions. Since one transaction was relevant on the issue of the accounting firm's liability, the firm had to produce documents relating to the transaction even though it had insisted that the company remove the revenue from the transaction and the company agreed to reverse the recognition of the revenue. Documents relating to the other transaction were relevant to the plaintiffs' ability to build a case against the insider defendants. The firm was ordered to produce audit material even though the firm had argued that they contained proprietary trade secrets. Since the self-evaluation privilege had never been recognized by the United States Supreme Court or any circuit, 13 documents withheld on that ground were ordered produced. The firm was also ordered to produce the most recent known addresses and telephone numbers each of its former employees who participated in the audit of the company. Finally, the firm was ordered to fax to plaintiffs by a date certain a written explanation of all the steps it had taken to find responsive e-mails.

**OUTCOME:** A magistrate judge ordered the accounting firm to comply with the five requests.

**CORE TERMS:** audit, self-evaluative, telephone, e-mail, documents relating, manual, responsive, discovery, fax, unable to reach, trade secrets, proprietary, accounting, confer, written explanation, former employees, accountants, participated, non-party, directing

**LexisNexis(TM) Headnotes**

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN1]The self-evaluative privilege has never been recognized by the United States Supreme Court or any circuit court.

**COUNSEL:** [*1] For Dorian King, Diane King Jtwros, PLAINTIFFS: Stanley M Grossman, Patrick V Dahlstrom, Pomerantz, Haudek, Block, Grossman & Gross LLP, New York, NY USA. Peter A Binkow, Los Angeles, CA USA. Donald R Wager, Los Angeles, CA USA. Lionel Z Glancy, Glancy & Binkow LLP, Los Angeles, CA USA.

For Garth H Drabinsky, DEFENDANT: Ronald A Nimkoff, Harvey B Silikovitz, Schechter & Nimkoff LLP, New York, NY USA. Harvey L Pitt, Fried, Frank, Harris, Shriver & Jacobson, New York, NY USA.

For Myron I Gottlieb, DEFENDANT: Lee S Richards, III, Richards, Spears, Kibbe & Orbe, New York, NY USA. Ronald A Nimkoff, Harvey B Silikovitz, Schechter & Nimkoff LLP, New York, NY USA.

For Deloitte & Touche Chartered Accountants, DEFENDANT - CROSS-CLAIMANT: John T Behrendt, Peter Justus Beshar, Aric Hugo Wu, Lee Gordon Dunst, Gibson, Dunn & Crutcher, LLP, New York, NY USA.

For Joseph L Rotman, Thomas H Lee, James A Pattison, Scott Sperling, DEFENDANTS - CROSS-CLAIMANTS: James S Dittmar, Sanford F Remz, William J Connolly, III, Hutchins, Wheeler & Dittmar, Boston, MA USA.

Page 1

For Gordon Eckstein: CONSOLIDATED DEFENDANT - CROSS-DEFENDANT: D Brian Hufford, Pomerantz Haudek Block Grossman & Gross [*2] LLP, New York, NY USA.

For Robert Topal, CONSOLIDATED DEFENDANT: D Brian Hufford, Pomerantz Haudek Block Grossman & Gross LLP, New York, NY USA. Cynthia A Feigin, Epstein, Becker & Green, PC, New York, NY USA. W Sidney Davis, Stanley N Futterman, New York, NY USA.

For H Garfield Emerson, CONSOLIDATED DEFENDANT - CROSS-CLAIMANT: Greg A Danilow, Stephen Alan Radin, Sofia Giatrakos, Weil, Gotshal & Manges LLP, New York, NY USA. D Brian Hufford, Pomerantz Haudek Block Grossman & Gross LLP, New York, NY USA.

For A Alfred Taubman, CONSOLIDATED DEFENDANT - CROSS-CLAIMANT: Eric M Roth, Watchtell, Lipton, Rosen & Katz, New York, NY USA. D Brian Hufford, Pomerantz Haudek Block Grossman & Gross LLP, New York, NY USA.

For Cibc Oppenheimer, CONSOLIDATED DEFENDANT: D Brian Hufford, Pomerantz Haudek Block Grossman & Gross LLP, New York, NY USA. William H Gussman, Jr, Howard O Godnick, Stacy P Aronowitz, Schulte, Roth & Zabel, New York, NY USA.

For Daniel D Brambilla, DEFENDANT - CROSS-CLAIMANT: Leon P Gold, Leslie J Harris, Proskauer, Rose, LLP, New York, NY USA.

For Martin Goldfarb, DEFENDANT - CROSS-CLAIMANT: Jonathan Rosenberg, O'Melveny & Myers LLP, New York, NY [*3] USA. Bradley Jay Butwin, O'Sullivan, James L Burns, LLP, New York, NY USA.

For Cibc Wood Gundy Securities, Inc, DEFENDANT: William H Gussman, Jr, Howard O Godnick, Stacy P Aronowitz, Schulte, Roth & Zabel, New York, NY USA.

For Garth H Drabinsky, CROSS-DEFENDANT: Harvey L Pitt, Fried, Frank, Harris, Shriver & Jacobson, New York, NY USA.

For Myron I Gottlieb, CROSS-DEFENDANT: Lee S Richards, III, Richards, Spears, Kibbe & Orbe, New York, NY USA.

For Garth H Drabinsky, CROSS-DEFENDANT: Harvey L Pitt, Fried, Frank, Harris, Shriver & Jacobson, New York, NY USA.

For Myron I Gottlieb, CROSS-DEFENDANT: Lee S Richards, III, Richards, Spears, Kibbe & Orbe, New York, NY USA. Harvey B Silikovitz, Schechter & Nimkoff LLP, New York, NY USA.

**JUDGES:** DOUGLAS F. EATON, United States Magistrate Judge.

**OPINIONBY:** DOUGLAS F. EATON

**OPINION:** MEMORANDUM AND ORDER

DOUGLAS F. EATON, United States Magistrate Judge.

Judge Marrero has referred this case to me for general pretrial supervision. He received a December 12 letter from the lead plaintiffs and a December 18 letter from one of the defendants, Deloitte & Touche Chartered Accountants ("Deloitte"), and he forwarded them to me for decision. [*4] I hereby make the following rulings on the five disputed issues. If there be any other disputes about discovery or scheduling, the attorneys should present them to me by following my Standing Order for Discovery Disputes (copy enclosed). I direct plaintiffs' counsel to supply a copy of my Standing Order to all of the parties (and to any non-party who objects to discovery), and to send me a current list of all counsel, including their telephone and fax numbers.

**Issue 1: Documents Pertaining to Revenue Recognition**

Deloitte refuses to produce documents relating to the 1997 Dundee transaction. Deloitte points out that it insisted that Livent remove the revenue from the Dundee transaction "and Livent ultimately agreed to reverse the recognition." *Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F. Supp.2d 371, 427 (S.D.N.Y. 2001). Nevertheless, the Dundee transaction is relevant to the jury's assessment of whether Deloitte (and other defendants) ought to bear Section 11 liability for the November 1997 registration statement for the Livent Notes. For example, in determining whether Deloitte was negligent in overlooking Livent's other accounting practices, the jury [*5] should be able to look at "a relevant backdrop of allegations concerning *[inter alia]* the repeated difficulties [Deloitte] had encountered with the Inside Directors' dubious financial practices manifest in the revenue-generating transactions . . . . " *Id.* at 429. Accordingly, I direct Deloitte to produce the

Page 2

documents relating to the Dundee transaction by January 20, 2003.

Deloitte also refuses to produce documents relating to the 1996 Pace transaction and the 1996 Dewlim transaction. It appears to be undisputed that the side agreements to these two transactions were concealed from Deloitte. "In the absence of the side agreements, the non-refundable fees could properly be recognized under Canadian GAAP . . . ." *Id.* at 427. Deloitte's 12/18/02 letter, at n. 2, says: "Documents relating to the 'secret' side agreements . . . are undoubtedly in the possession of Livent. We understand that plaintiffs recently obtained an order from a Canadian court which allows them access to Livent's documents." But the plaintiffs may need documents from Deloitte to be able to build their Section 11 case against the insider defendants. Plaintiffs should confer [*6] with Deloitte, in person or by telephone, about what documents are needed and why. If the parties are unable to reach a resolution, they should send me a single joint letter pursuant to my Standing Order.

**Issue 2: Deloitte's Audit Manuals**

Deloitte refuses to produce its audit manuals, arguing that they contain proprietary trade secrets. Deloitte relies on precedents that are more than seven years old. (It does cite *General Elec. Capital Corp. v. DirecTV, Inc.*, 184 F.R.D. 32, 36-37 (D.Conn. 1998), but there Magistrate Judge Margolis emphasized that Deloitte was a non-party in that lawsuit.) The more recent authority is contrary to Deloitte's position. In 2001, Judge Brieant ruled:

. . . KPMG's Audit Manual and materials are likely the best source of information available to Plaintiffs regarding how KPMG conducted the Oxford audit. Understanding these materials could be vital to conducting meaningful depositions of the accountants who worked on the Oxford audit . . . .

The Court need not reach the issue of whether KPMG's audit materials constitute trade secrets because the Confidentiality Order . . . will serve to protect any proprietary information contained [*7] in KPMG's audit manual and materials.

*In re Oxford Health Plans, Inc. Sec. Litig.*, 2001 U.S.Dist. LEXIS 5817, *5 (S.D.N.Y. Apr. 30, 2001)(citations omitted). Accordingly, I direct Deloitte to produce its audit manuals by January 20, 2003.

**Issue 3: The Self-Evaluative Privilege**

Deloitte has withheld 13 documents on the ground of the self-evaluative privilege. The privilege log (Exh. C to plaintiffs' Dec. 12 letter) indicates that these documents include performance reviews of several of the Deloitte employees who audited Livent. [HN1]The self-evaluative privilege has never been recognized by the Supreme Court or any circuit court. *In re Nieri*, 2000 U.S. Dist. LEXIS 540, 2000 WL 60214, *2 (S.D.N.Y. Jan. 24, 2000)(Knapp, J.). In the specific context of an auditor's self-evaluation, the more recent authority is contrary to Deloitte's position. Ten years ago, Judge Nickerson affirmed a discovery ruling by then Magistrate Judge Carter in favor of Peat Marwick, but Judge Nickerson noted that he was "somewhat skeptical of a claim of chilling effect." *In re Crazy Eddie Sec. Litig.*, 792 F. Supp. 197, 206 (E.D.N.Y. 1992). More recently, Judge Brieant rejected [*8] the same claim from KPMG Peat Marwick:

. . . Plaintiffs' substantial need for the documents requested outweighs KPMG's claims of the so-called self-evaluative privilege. Documents concerning evaluations, reviews and resumes of KPMG personnel who performed work on the Oxford audit would enable Plaintiffs to obtain information including whether those employees were properly trained for the audit, [and] whether they followed appropriate accounting and auditing procedures.

*In re Oxford Health Plans, Inc. Sec. Litig.*, 2001 U.S.Dist. LEXIS 5817, *6. Accordingly, I direct Deloitte to produce the 13 documents listed on its Self-Evaluative Privilege Log, by January 20, 2003.

**Issue 4: Addresses and Telephone Numbers of Former Deloitte Employees**

Deloitte provided the names of 25 people who participated in the Livent audits, and advised that 11 of them were no longer employed by Deloitte. Deloitte has refused to supply contact information for the 11 former employees, but says it "is prepared to consider a specific request for any particular individual." I direct Deloitte to provide, by January 20, 2003, the most recent known addresses and telephone numbers [*9] for each of its former employees who participated in the Livent audits.

**Issue 5: E-Mails**

Deloitte has produced approximately 25 pages from the e-mail files of Tony Powers, plus at least 14 e-mails involving other Deloitte employees. Plaintiffs suspect this is incomplete, and ask for two orders:

(a) "directing Deloitte to make a thorough search of all its computer systems, servers and other storage devices, back-up tapes, and the individual hard drives of employees who worked on the Livent audits.

(b) directing Deloitte "to produce all responsive materials found with 30 days, along with a written

explanation of all the steps it has taken to find responsive materials."

Instead, I direct Deloitte to fax to plaintiffs, by January 7, 2003, a written explanation of all the steps it has taken to find responsive e-mails. As to any further steps, the attorneys should read Magistrate Judge Francis's opinion in *Rowe Entertainment v. William Morris Agency*, 205 F.R.D. 421, 428-33 (S.D.N.Y. 2002). Then Deloitte and plaintiffs should confer, in person or by telephone, and discuss the eight factors listed in that opinion. If they are unable to reach a resolution, [*10] they should send me a single joint letter pursuant to my Standing Order.

DOUGLAS F. EATON

United States Magistrate Judge

500 Pearl Street, Room 1360

New York, New York 10007

Telephone: (212) 805-6175

Fax: (212) 805-6181

Dated: New York, New York

December 31, 2002