# EXHIBIT NO. 4

FaxID: 49337

FaxID: 49337

Time In　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Time Delivered

# FAX TRANSMISSION

## Day, Berry & Howard LLP

CityPlace I
Hartford, Connecticut 06103-3499
(860) 275-0100
Fax: (860) 275-0343

**From:** William H. Erickson　　　　　　**Phone #:** (860) 275-0688
**Date:** November 04, 2004　　　　　　　**Pages:** _____ page(s), including cover page
**Subject:** PricewaterhouseCoopers – Handy & Harmon Refining Group Litigation

| NAME | COMPANY | FAX NO. | PHONE NO. |
|---|---|---|---|
| Dina S. Fisher Esq. | Robinson & Cole LLP | (860) 275-8299 | (860) 275-8200 |
| William H. Champlin III, Esq. | Tyler, Cooper & Alcorn | (860) 278-3802 | (860) 725-6206 |
| Stefan Dandelles, Esq. | Wilson, Elser, Moskowitz, Edelman & Dicker LLP | (312) 704-1522 | (312) 704-0550 |

If there is any problem during transmission
please call
(860) 275-0344

*This Facsimile contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended only for the use of the addressee(s) named above. If you are not the intended recipient of this facsimile, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone and return the original facsimile to us at the above address via the U.S. Postal Service. Thank you.

Rev. 9/10/01

TimeKeeper No.　1991　　　　　　　　　Client/Matter No.　019833-01420
Fax Dept: Domestic (15) #pgs. ___; Inter. (16) ___; Service (18) ___　　Return To:　William H. Erickson

41449041_1.DOC 019833-01420
November 4, 2004 2:34 PM

# Day, Berry & Howard LLP
COUNSELLORS AT LAW

William H. Erickson
Direct Dial: (860) 275-0688
E-mail: wherickson@dbh.com

November 4, 2004

**VIA FACSIMILE**

Stefan Dandelles, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
120 N. LaSalle Street
Chicago, IL 60602

    Re:    Golden West Refining Corp., Limited v. PricewaterhouseCoopers
            Civil Action No. 3:02CV1379 (MRK)

            Alec Sharp, et al. v. PricewaterhouseCoopers LLP
            Civil Action No. 3:02CV1572 (MRK)

            Handy & Harman Refining Group, Inc. v. PricewaterhouseCoopers LLP
            Civil Action No. 3:02CV1803 (MRK)

Dear Stefan:

       I have reviewed the privilege log you produced to us regarding documents in the possession of Underwriters that you are withholding from production. As discussed below, we believe numerous legal issues are raised through your privilege designations. One issue, however, permeates your designations -- your client's failure to produce documents regarding its analysis of whether there was coverage under its insurance policy for the claims asserted by HHRG. As you know, we believe that documents concerning your client's decision to pay $12.5 million in connection with the claims asserted by HHRG for losses arising from acts, errors, or omissions on the part of former employees/consultants of HHRG must be produced. In our July 13 and August 2, 2004 letters to you, we set forth the applicable case law on this issue, including Weber v. Paduano, 2003 U.S. Dist. LEXIS 858 (S.D.N.Y. Jan. 22, 2003). We also draw your attention to a decision issued by one of the district courts in our Circuit just a few weeks ago, Travelers Casualty & Surety Co. v. J. D. Elliott & Co., P.C., 2004 U.S. Dist. LEXIS 20712 (S.D.N.Y. Oct. 5, 2004), in which the court re-iterated the principles to be considered in determining whether documents created by or on behalf of an insurance company in analyzing whether there is coverage under an insurance policy must be produced. We are quite surprised, given the complexity of the claims and the substantial investigation of those claims already discussed in other documents we have received, and the case law we provided to you on this

## Day, Berry & Howard LLP

Stefan Dandelles, Esq.
November 4, 2004
Page 2

issue, that your client has produced less than 2 red welds of documents concerning this issue, a very minimal number of which were authored by your client.

To better assess the validity of your privilege claims, please provide the following information:

1. Explain when Underwriter made the decision to provide coverage to HHRG under the Underwriters' policy. As you know, this date is significant because it is a factor to be considered in evaluating whether a document concerning an insurer's analysis of whether a claim is covered under an insurance policy is a document prepared in the ordinary course of an insurer's business or whether the document is protected by the attorney-client privilege or work product doctrine. Here, we note that although notice was given of a potential claim on February 22, 2000, it was not until December 31, 2001, that Underwriters and HHRG entered into the settlement agreement (the "Settlement Agreement") through which Underwriters agreed to pay $2.5 million to HHRG to settle such claims.

2. Please indicate the company, law firm, or entity with which each person listed on the log is affiliated so that we can determine if the various listed reasons for not producing particular documents are valid.

3. With respect to each person listed on the log who is an attorney, please indicate the law firm with which such attorney was affiliated and what entity such attorney represented. This information is essential in order for us to determine if your claims of attorney-client privilege are valid. For example, document UL-1704 which you claim is protected by the attorney-client privilege, is an e-mail correspondence between an attorney at Wilson, Elser ("WEMED") and Lisa Wright at AIG. AIG is, of course, an insurance company. Was AIG a Wilson, Elser client at this point in time such that the attorney-client privilege applies?

We also have the following specific questions regarding specific documents listed on your log:

1. UL-01294; UL 01295-96; UL 01296-01301; UL 01302-01308; UL 01309---1310; UL 01311-01331; UL 01332-Ul 01335; UL 01336; UL 01339-01341; UL 01342-01343; UL 01344-01345: Explain the relationship between WEMED, "Kennedys," and P. Spibey and why that relationship leads you to the conclusion that these documents are protected by the attorney-client privilege.

2. UL-01339-01341; UL 01342-01343; UL 01344-01345 : Explain the relationship between WEMED and Ebsworth & Ebsworth (and Patrick Monahan of that entity) and why you believe communications with this person and entity are protected by the attorney-client privilege.

Day, Berry & Howard LLP

Stefan Dandelles, Esq.
November 4, 2004
Page 3

3.  UL- 01339-01341; UL 01342-01343; UL 01344-UL 01345; UL 01399; UL 01402-01403; UL 01404-01405; UL 01408-01410; UL 01426-01436; UL 01437-01450; UL 01454; UL 01455-04156; UL 01457-04159; UIL01460-04162; UL 01463-01464; UL 01467-01469; UL 01470-01471; UL 01472; UL 01473; UL 01475; UL 01482-01483; UL 01484-01486; UL 01487; UL 01489-01492; UL 01508; UL 01520-01521; UL 01522-01523; UL 01524-014525; UL 01526; UL 01529-01530; UL 01531-01533; UL 01534; UL 01535; UL 01536; UL 01537; UL 01540; UL 01541-01548; UL 01551-01553; UL 01554-01559; UL 01560-01562; UL 01560-01562; UL 01563-01564; UL 01565-01567; UL 01568-01572; UL 01573-01576; UL 01577-01589; UL 01590-01600; UL 01601-01616; UL 01617-01631; UL 01632-01643; UL 01645-01670; UL 01683-01687; UL 01690-01703; UL 01782-017192; UL 01825-01884; UL 01885-01922; UL 01923-01943; UL 01944-01967; UL 01984-01998: Explain the relationship between WEMED and R. Cook and why you believe communications with this person are protected by the attorney-client privilege. It appears that R. Cook was affiliated with Alleghany Underwriters (see UL 01273). Even if this entity was a WEMED client, we would have expected to see in your production documents concerning this entity's analysis of whether there was coverage under the Underwriters policy for the claims presented by HHRG. We are especially interested in your justification for withholding UL 01536, UL 01537, UL 01540, UL 01541-48, and UL 01551-553 because these appear to be classic claims coverage documents created at least one year before Underwriters entered into the Settlement Agreement. We believe these documents are not protected by the attorney-client privilege or work product doctrine.

4.  UL 01385-01391: Explain the relationship between WEMED and Aon that leads you to the conclusion that this document is protected by the attorney-client privilege. We note that numerous documents to and from Aon were already produced by Underwriters, and, even if the privilege applied, it has probably been waived.

5.  UL 01404-01405; UL 01719-01745: Explain the relationship between R. Cook and Phil Kalban and Charles Lee that leads you to the conclusion that these documents are protected by the attorney-client privilege. As we understand it, Charles Lee of Paul, Hastings was counsel to Underwriters' assured, HHRG, and Phil Kalban of Fischbein, Badillo was counsel to Underwriters concerning all matters relating to claims against Chubb or Hiscox (see Settlement Agreement, page 11.) Are you claiming that an attorney-client relationship existed between R. Cook and Attorney Kalban? If so, explain how the attorney-client privilege applicable to these documents, if any, was not waived when these documents were transmitted to HHRG's counsel.

6.  UL 01425; UL 01454: Explain why you believe these documents are not classic claims coverage document created before Underwriters entered into the Settlement Agreement.

7.  UL 01455-01456; UL 01457-01459: Explain the relationship between WEMED and Paul Willmott of ERC Group and why you believe these documents are protected by the attorney-client privilege.

## Day, Berry & Howard LLP

Stefan Dandelles, Esq.
November 4, 2004
Page 4

8.　UL 01526; UL 01560-015632: Explain the relationship between WEMED, R. Cook and K. Chaplin which leads you to believe that these documents are protected by the attorney-client privilege. In particular, UL 01526, described as an e-mail correspondence "regarding coverage analysis," appears to be a documents concerning Underwriters' analysis of whether there is insurance coverage for HHRG's claims. We so no basis for your decision not to produce this document.

9.　UL 01529-01530: Provide further information regarding K. Rowley and Lydia Laboy (i.e., the entities for whom they work and the relationship between these persons and such entities.) You have not provided us with enough information to make a determination of whether your decision to withhold this document from production is proper.

10.　UL 01554-01559; UL 01560-01562; UL 01563-01564; UL 01565-01567; UL 01568-01572; UL 01573-01576; UL 01577-01589; UL 01601-01616; UL 01617-01631; UL 01632-01643; UL 01645-01670; UL 01683-01687; UL 01690-01703; UL 01719-01745; UL 01984-01998: As with the documents noted in paragraph 5 above, explain the relationship between, on the one hand, WEMED and the other persons and entities listed as having sent or received these document and, on the other hand, Phil Kalban that leads you to the conclusion that these documents are protected by the attorney-client privilege.

Please contact me as soon as possible to discuss the issues raised in this letter. As you know, we will have a status conference with Judge Kravitz on Monday, November 15, 2004. We would like to be in a position to describe for the judge what issues raised above remain in dispute and which ones have been resolved.

Very truly yours,

William H. Erickson

WHE:gz

cc:　William H. Champlin III, Esq. (via facsimile)
　　　Dina S. Fisher, Esq. (via facsimile)