**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| GOLDEN WEST REFINING CORPORATION LIMITED, | : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 3:02 CV 1379 (MRK) |
| VS. | : : | |
| PRICEWATERHOUSECOOPERS LLP and COOPERS & LYBRAND LLP, | : : | |
| Defendants. | : | |

| | | |
|---|---|---|
| ALEC SHARP, et al., | : | |
| Plaintiff, | : : | CIVIL ACTION NO. 3:02 CV 1572 (MRK) |
| VS. | : : | |
| PRICEWATERHOUSECOOPERS LLP d/b/a PRICE WATERHOUSE LLP, | : : | |
| Defendant. | : | |

| | | |
|---|---|---|
| HANDY & HARMAN REFINING GROUP, INC., | : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 3:02 CV 1803 (MRK) |
| VS. | : : | |
| PRICEWATERHOUSECOOPERS LLP, | : | August 12, 2005 |
| Defendant. | : | |

**PRICEWATERHOUSECOOPERS LLP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE CRAIG T. ELSON AS AN EXPERT**

PricewaterhouseCoopers LLP ("PwC") respectfully submits this memorandum of law in support of its motion in limine to exclude the testimony and report of Craig T. Elson, an expert designated on behalf of the plaintiff, Handy & Harman Refining Group, Inc. ("HHRG" or "plaintiff") in *Handy & Harman Refining Group, Inc. v. PricewaterhouseCoopers LLP,* Civil Action No. 3:02 CV 1803 (MRK).

**PRELIMINARY STATEMENT**

HHRG has designated Craig T. Elson as an expert witness. Mr. Elson seeks to offer only an opinion on the value of HHRG's business as of June 30, 1998, a date nearly two years prior to its filing for bankruptcy protection in March 2000. The gravamen of HHRG's damage theory is that the measure of its damages is simply the difference between Mr. Elson's June 30, 1998 valuation and *zero*, the value that some yet-to-be-disclosed HHRG witness will presumably try to testify HHRG was worth after the bankruptcy filing. PwC also is submitting a motion for summary judgment demonstrating that HHRG has failed to offer the requisite expert testimony or any other evidence that would establish a causal connection between the decline in fair market value of HHRG and the conduct of PwC. Because HHRG has failed as a matter of law causally to connect PwC's conduct with any diminution in the value of HHRG after June 30, 1998, Mr. Elson's opinion on HHRG's alleged valuation is not relevant to any issue in dispute and must be excluded. In other words, the fair market value of HHRG as of June 30, 1998 is immaterial to the case, unless and until there is some admissible evidence that all or a provable portion of the decline in value at all times thereafter was caused by PwC.

**FACTUAL BACKGROUND**[1]

HHRG was in the business of refining precious metals from August 1996 until March 28, 2000 when it filed a voluntary petition for bankruptcy relief under Chapter 11.[2] HHRG has

---

[1] Contemporaneous with this Motion In Limine, PwC has filed Motions for Summary Judgment Against Handy & Harman Refining Group, Inc. and Golden West Refining Corporation Limited ("GWRC"). Pursuant to Local Rule 56(a)(1), PwC has also filed a Consolidated Local Rule 56(a)(1) Statement and Compendium of Exhibits in Support. The exhibits referenced in this Motion have been provided to the Court in PwC's Compendium of Exhibits.

[2] HHRG Compl. ¶¶ 2, 12.

asserted claims against PwC for breach of contract, professional malpractice and negligent misrepresentation, all of which are grounded on the theory that PwC, as HHRG's outside independent auditor, knew or should have known that several of HHRG's officers and employees engaged in a fraudulent scheme with a South American entity named Panexim S.A. ("Panexim") that involved the purchase of gold and the advancement of funds to finance those purchases. HHRG alleges that, as a result of PwC's alleged deficiencies, HHRG was damaged *inter alia* in excess of $30 million for the full lost value of its business.[3]

HHRG has designated several experts in support of its claims, including Mr. Elson.[4] In Mr. Elson's March 18, 2005 report, he purports to opine as to the value of HHRG at a particular point in time well prior to HHRG's bankruptcy filing. Specifically, Mr. Elson concludes that "it is my opinion that the fair market value of HHRG as of June 30, 1998, ranged from $28.9 to $30.7 million."[5] Mr. Elson explained at deposition that fair market value represented the gross going concern value of HHRG's assets, without deducting secured debt of about $8 million.[6] Mr. Elson has also stated that he was asked by HHRG to provide an assessment of the value of HHRG as of June 30, 1998.[7] He was asked to do so "on the basis of a determination that, by that date, HHRG's business was being operated in a manner substantially inconsistent with its policy

---

[3] *Id.* ¶¶ 156, 161, 167.

[4] While PwC contests numerous aspects of the opinions of each of the experts designated by HHRG, it addresses herein only those aspects of Mr. Elson's testimony and report relevant to this motion.

[5] Report of Craig T. Elson, dated Mar. 18, 2005 ("Elson Rep.") at 2 (Ex. 25); Dep. of Craig T. Elson, dated May 26, 2005 ("Elson Dep.") at 4 (Ex. 26).

[6] Elson Dep. at 12, 14, 26.

[7] Elson Rep. at 1.

regarding foreign advances."[8]  Mr. Elson did not and was not asked to opine on causation.[9]  Further, Mr. Elson provides no opinion as to the value of HHRG on the day on which it filed for bankruptcy protection in March 2000, or indeed at any point between June 1998 and March 2000.

Contemporaneously with this motion, PwC has filed a separate motion for summary judgment against HHRG, on the ground that HHRG has failed to discharge its burden of offering competent evidence from which a jury could lawfully infer that PwC proximately caused an injury to HHRG.  PwC shows in its motion for summary judgment that (i) HHRG has failed to offer the necessary expert testimony to demonstrate that the destruction of HHRG's business was proximately caused by PwC and, moreover, (ii) HHRG has failed to come forward with *any* evidence that would permit a jury to find any decline in value proximately caused by PwC, much less that PwC is legally responsible for the *entire* decline in value that plaintiff claims is attributable to PwC.[10]

## ARGUMENT

Under Rule 702 of the Federal Rules of Evidence, an expert may testify as to any scientific, technical, or other specified knowledge that "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  While this creates a liberal standard for the admissibility of expert opinions, it does not relieve the court of its gatekeeping responsibility to ensure that all expert testimony is both relevant and reliable. *E.g., Nimely v.*

---

[8] *Id.* at 1.

[9] *See id.* at 1 n. 1.

[10] GWRC also seeks to rely on Mr. Elson as part of its case.  Mr. Elson's testimony should be excluded in that case for the same reasons that he should be excluded from testifying on behalf of HHRG.

*City of New York*, No. 04-3240-CV, 2005 U.S. App. LEXIS 12712, at *35-39 (2d Cir. June 27, 2005).[11]

## I. THE COURT SHOULD EXCLUDE MR. ELSON'S TESTIMONY AND REPORT BECAUSE HHRG HAS FAILED TO SHOW THAT PWC'S ALLEGED PROFESSIONAL NEGLIGENCE PROXIMATELY CAUSED HHRG'S DEMISE.

### A. Expert Testimony Must Be Relevant.

It is clear that, in order to be admissible, expert testimony must be relevant and not unduly prejudicial.[12] 2005 U.S. App. LEXIS 12712, at *35-39; *United States v. Taylor*, 18 F.3d 55, 59 (2d Cir. 1994). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 591 (1993)(internal citation and quotation omitted). The Second Circuit similarly has recognized that expert testimony should be excluded if it is speculative or conjectural in nature. *Boucher v. United States Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996); *accord BIC Corp. v. Far Eastern Source Corp.*, 23 Fed. Appx. 36, 38 (2d Cir. 2001).

### B. Absent Proof of Causation, Expert Testimony as to Damages is Speculative and Not Relevant, and Therefore Inadmissible.

The Second Circuit recently upheld the exclusion of expert testimony on the value of a failed business where a plaintiff has failed to establish causation. In *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, Fashion Boutique attempted to introduce expert testimony estimating the value of its lost business, which the district court excluded "on the basis that there

---

[11] Attached as Exhibit 5 to PricewaterhouseCoopers LLP's Compendium of Unreported Authority, dated August 12, 2005.

[12] According to Rule 401, relevant evidence is that which "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403.

was insufficient evidence to support a reasonable inference that Fendi's actions caused plaintiff to go out of business." 314 F.3d 48, 55 (2d Cir. 2002). The Second Circuit agreed and affirmed, stating that to allow an expert opinion on the value of plaintiff's business, without any evidence supporting the assumption that Fendi caused those damages, "would invite the jury to award damages based on speculation." *Id.* at 60. Accordingly, the Court agreed that the expert's testimony as to damages was not relevant and not admissible. *See id.* at 59-60.

Similarly, the Fourth Circuit Court of Appeals has held that expert testimony as to damages is inadmissible absent proof of causation. *See Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142-43 (4th Cir. 1994). In that case, Pensacola proffered expert testimony on increased costs it had incurred from delays in completing a construction contract, without having shown that the delays had been caused by Tyger. *See id.* The court stated that an expert's opinion should be excluded when it is based upon assumptions which are speculative and not supported by the record, and that an expert's opinion on damages should be causally related to the alleged harm. *See id.* The court held that it had been an abuse of discretion to admit the expert's calculation of increased costs based on the faulty assumption of a causal connection between those costs and Tyger's conduct, and vacated the corresponding portion of the jury's damages award. *See id.* at 143.

The conclusion reached by the Second and Fourth Circuits, not surprisingly, has also been reached in other courts. For example, in a case involving unfair competition, a plaintiff sought to introduce expert testimony as to damages from lost contracts. *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1072, 1078 (W.D. Ky. 1995). The court found that there was no basis in the case to conclude that CMI's financial results were causally related to defendants' conduct. *See id.* at 1078-79. It held that "[u]nder no circumstances could this Court

allow a jury to consider [expert] opinions that, due to the absence of foundation or reasonable causal connection, amount to no more than sheer speculation." *Id.* at 1079. *See also El Aguila Food Prods. v. Gruma Corp.*, 301 F. Supp. 2d 612, 620, 626 (S.D. Tex. 2003) (expert testimony as to damages inadmissible where expert relied upon flawed and inadmissible testimony on causation), *aff'd*, 131 Fed. Appx. 450 (5th Cir. 2005); *KW Plastics v. United States Can Co.*, 131 F. Supp. 2d 1289, 1294-95 (M.D. Ala. 2001) (expert testimony as to damages inadmissible where expert offered no opinion as to whether defendant's use of trade secrets caused defendant to be unjustly enriched); *First Sav. Bank, F.S.B. v. U.S. Bancorp*, 117 F. Supp. 2d 1078, 1084-85 (D. Kan. 2000) (expert testimony as to lost profits inadmissible where expert assumed causation and improperly attributed all losses to the defendant's acts), *overruled in part and sustained in part on other grounds,* 196 F.R.D. 608 (D. Kan. 2000).

As the courts consistently have held, an expert's testimony as to damages is speculative and inadmissible where there is no proof of causation on which it may be based. Here, Mr. Elson purports to opine about the value of HHRG and specifically that the fair market value of HHRG as of June 30, 1998 was between $28.9 and $30.7 million. Mr. Elson offers no opinion as to causation and no opinion as to value of HHRG at the time of its bankruptcy. As shown in PwC's motion for summary judgment, there is also no other proof in the record of this case that could establish that PwC's conduct was the proximate cause of the destruction of HHRG's business. The evidence does unequivocally show that many other factors, singly or in combination, could have caused HHRG's losses.

Nor is there any proof in the record to support an inference that the decline in value in HHRG's business from June 30, 1998 to March 2000 was caused completely, or even in any identifiable part, by the Panexim losses or PwC's conduct. HHRG's damage theory assumes,

without any expert testimony or other factual basis, that the entire decline in value during that 22 month period was caused by the Panexim losses, which, in turn, were purportedly caused by PwC's conduct. If that theory were correct, then even if HHRG had significantly declined in value from June 1998 through March 28, 2000 for business or marketplace reasons wholly unrelated to Panexim, PwC would still be responsible for the entire decline in value. This is contrary to law and logic. Mr. Elson cannot properly testify as to the June 30, 1998 valuation unless and until there is evidence that lawfully supports a finding that the diminution in value after that date was proximately caused by PwC. Because Mr. Elson's conclusion is speculative and is not relevant to any issue in dispute in the case, his opinion must be excluded.

## CONCLUSION

The Court should grant PwC's motion to exclude Mr. Elson's testimony and report.


DEFENDANT,
PRICEWATERHOUSECOOPERS LLP


By: ____/s/ Thomas D. Goldberg_____
    David J. Elliott (ct 04301)
    Thomas D. Goldberg (ct 04386)
    Day, Berry & Howard LLP
    One Canterbury Green
    Stamford, Connecticut 06901-2047
    Tel: (203) 977-7300
    Fax: (203) 977-7301
    Its Attorneys

## ELECTRONIC CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2005, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

            /s/ Thomas D. Goldberg
            David J. Elliott (ct 04301)
            Thomas D. Goldberg (ct 04386)
            Day, Berry & Howard LLP
            One Canterbury Green
            Stamford, Connecticut 06901-2047
            Tel: (203) 977-7300
            Fax: (203) 977-7301
            Its Attorneys

| | |
|---|---|
| Edward J. Boyle, Esq.<br>Wilson, Elser, Moskowitz, Edelman & Dicker LLP<br>150 East 42nd St.<br>New York, NY 10017-5639 | William H. Champlin, III, Esq.<br>Michael T. McCormack, Esq.<br>William S. Fish, Jr., Esq.<br>Tyler Cooper & Alcorn, LLP<br>CityPlace - 35th Floor<br>185 Asylum Street<br>Hartford, CT 06103 |
| Daniel McMahon, Esq.<br>Stefan Dandelles, Esq.<br>Daniel E. Tranen, Esq.<br>Wilson, Elser, Moskowitz, Edelman & Dicker LLP<br>120 N. LaSalle Street<br>Chicago, IL 60602 | Fred N. Knopf, Esq.<br>Wilson, Elser, Moskowitz, Edelman & Dicker LLP<br>3 Gannett Drive<br>White Plains, NY 10604-3407 |
| Steven R. Humphrey (ct06053)<br>Dina S. Fisher (ct14896)<br>James M. Ruel (ct21222)<br>Robinson & Cole LLP<br>280 Trumbull Street<br>Hartford, CT 06103-3597 | Jed Horwitt, Esq.<br>Zeisler & Zeisler, P.C.<br>558 Clinton Ave.<br>P.O. Box 3186<br>Bridgeport, CT 06605-0186 |