UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GOLDEN WEST REFINING CORPORATION LIMITED,<br>　　　　　　　　Plaintiff,<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS LLP and COOPERS & LYBRAND LLP,<br>　　　　　　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO.<br>3:02 CV 1379 (MRK) |
| ALEC SHARP, et al.,<br>　　　　　　　　Plaintiffs,<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS LLP d/b/a PRICE WATERHOUSE LLP,<br>　　　　　　　　Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO.<br>3:02 CV 1572 (MRK) |
| HANDY & HARMON REFINING GROUP, INC.,<br>　　　　　　　　Plaintiff,<br><br>V.<br><br>PRICEWATERHOUSECOOPERS LLP,<br>　　　　　　　　Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO.<br>3:02 CV 1803(MRK)<br><br><br>SEPTEMBER 2, 2005 |

**GOLDEN WEST REFINING CORPORATION'S OBJECTION
AND MEMORANDUM OF LAW IN OPPOSITION TO
PwC'S MOTION IN LIMINE TO EXCLUDE IAN R. HOBSON AS AN EXPERT**

Golden West Refining Corporation ("GWRC") objects to the *motion in limine* filed on August 12, 2005 by the defendant PricewaterhouseCoopers LLP ("PwC") seeking to exclude Ian R. Hobson as an expert, and respectfully submits this memorandum in opposition to PwC's motion. Distilled, PwC's argument is that Mr. Hobson should be excluded as an expert because (1) GWRC cannot prove liability for lack of expert causation testimony (as urged in its two concurrently filed motions for summary judgment) and therefore (2) without proof of liability,

evidence of damages is irrelevant. These arguments are misguided, wrongly founded and unnecessary. The Hobson *motion in limine* should be denied because it will become moot, as explained below, when the Court decides PwC's pending motions for summary judgment.[1] Additionally, the substantive attack on Mr. Hobson's opinions goes to the weight of his testimony, and does not provide a proper basis for excluding his testimony out of hand.

I.     ARGUMENT

    A.     PwC'S MOTION TO EXCLUDE HOBSON IS PREMATURE, AND WILL BE RENDERED MOOT BY ANY DECISION OF THIS COURT ON THE PENDING MOTIONS FOR SUMMARY JUDGMENT.

PwC argues that Mr. Hobson's opinions are irrelevant "[b]ecause GWRC has failed …causally to connect PwC's conduct with [GWRC's collapse]."[2] This conclusion is the main (indeed, only) thrust of PwC's argument in its motions for summary judgment against plaintiff Handy & Harman Refining Group (HHRG) and in its similar motion against GWRC. (See generally PwC Mot.SJ/HHRG and Mot.SJ/GWRC.) In the instant motion, PwC assumes that argument as a given, and then takes the matter a step further and argues that any valuation opinions by Ian Hobson are therefore irrelevant. (See PwC's "Memorandum in Support of Its *Motion In Limine* to Exclude Ian R. Hobson As An Expert" ("Mot.Lim.Hobson"), on page 3.)

---

[1] On August 12, 2005, along with the instant *motion in limine* and others, PwC filed motions for summary judgment against HHRG and GWRC on the issue of causation. See PwC's Motion for Summary Judgment and Memorandum of Law against Handy & Harman Refining Group ("Mot.SJ/HHRG") and its Motion for Summary Judgment and Memorandum of Law against Golden West Refining Corporation ("Mot.SJ/GWRC") dated August 12, 2005. In brief, both of PwC's motions mistakenly argue that PwC is entitled to summary judgment on all counts because expert opinion on causation is a *sine qua non* in accounting malpractice cases, and both HHRG and GWRC failed to offer expert opinions on the causal link between PwC's violations of GAAS in its HHRG audit and HHRG's subsequent collapse, and GWRC's resulting collapse. Oppositions to these motions are being filed on even date by both HHRG and the undersigned counsel for GWRC. Arguments stated in those briefs will not be repeated herein, but are hereby incorporated by reference.

[2] The cited reference from PwC's brief actually states that GWRC has failed to connect PwC conduct with "any diminution in the value of GWRC." Hobson.Mot.Lim. at 2. This focus on diminution in value is fallacious, however, because, as argued *infra*, the gravamen of GWRC's claim and of Hobson's opinions is that GWRC's damages are measured, *inter alia*, in terms of the complete loss of the GWRC enterprise. The issue is not a measurement of the diminution in value but rather the loss of all value.

2

This motion should be denied because it becomes moot with <u>any</u> decision by this Court on PwC's pending motions for summary judgment. If PwC is granted the summary judgment it seeks as to HHRG, it appears that <u>no</u> claims would be left in the case to be tried (including GWRC's claims, which necessarily depend on the proof of causation asserted by HHRG) – and therefore Mr. Hobson's expert testimony would be unnecessary. If PwC is <u>not</u> granted summary judgment as to HHRG and GWRC, then the Hobson *motion in limine* necessarily fails as well because the predicate for the motion (that his damages opinions are irrelevant without expert opinions on causation) will have been eliminated. Either way, the motion to exclude Hobson is unnecessary and should be denied as moot once the Court disposes of the pending motions for summary judgment.

    **B.    PwC'S MOTION MISSTATES HOBSON'S OPINIONS AND FAILS TO ESTABLISH A BASIS FOR THEIR EXCLUSION.**

PwC's motion in limine to exclude Hobson should be denied not only because it will be rendered moot by the Court's ruling on the pending motions for summary judgment, but also because it fails to provide any substantive basis for precluding Mr. Hobson from offering his opinions in this case. In fact, PwC mischaracterizes Mr. Hobson's opinions and methods, and bases its motion to exclude on its recharacterized and reconstituted version of those opinions.

The very first line of PwC's brief illustrates this error. It states that GWRC's claims against PwC are for "the lost market value of GWRC's publicly traded stock from and after June 20, 1998." (Hobson.Mot.Lim. at p. 2.) PwC goes on to argue that Mr. Hobson's opinions are "irrelevant" because "there is no proof in the record to support an inference that the decline in value on GWRC's business from June 30, 1998 to March 2000 was caused … by PwC's conduct." Hobson.Mot.Lim. at 9. Both statements miss the point. Mr. Hobson has offered his expert opinion that the loss of the entire value of the GWRC enterprise was caused by the

3

collapse of HHRG (which had been caused by PwC's conduct) – and <u>quantified</u> that loss by means of an analysis of business value pegged as of June 30, 1998. The relevant fact – according to Mr. Hobson – was the difference between the value as of June 30, 1998 and its value of zero as of the date of liquidation. He does not opine that PwC caused a decline in GWRC's stock, but rather that – by virtue of the domino effect triggered by PwC malfeasance and its effect on HHRG, HHRG's failure directly caused GWRC's failure.

Ignoring this, PwC argues that Mr. Hobson has not opined on the precise connection between the loss of GWRC's value and specific PwC conduct. *Id.* PwC charges that "many other factors … could have caused GWRC to decline in value." *Id*. These points may be matters to be raised at trial as to the weight of the evidence, but they are not pertinent to the admissibility of Mr. Hobson's opinions. These potshots at Mr. Hobson's opinions ignore the substance and scope of Mr. Hobson's opinions.[3]

On the basis of his years of experience and education in related fields (none of which qualifications was impugned by PwC), Mr. Hobson has offered his expert opinion on the causes and scope of the loss suffered by GWRC. (See Expert Report of Ian R. Hobson (Hobson Rept.), dated 24 March 2005, attached as Exhibit A to Affidavit of Ian Hobson ("Hobson Aff."). His opinion centers on a quantification of GWRC's losses caused by HHRG's failure. In his opinion, the proper measure of GWRC's loss is the difference between its financial standing currently and its financial state prior to the collapse of HHRG. *Id*. at page 2. He goes on to state that the proper method, in his opinion, under the circumstances of this case, by which to evaluate the value of GWRC prior to HHRG's collapse is a market capitalization approach to valuation,

---

[3] There is certainly no legal basis for PwC's suggestion that the existence of other "possible factors" in a decline of stock renders as invalid Mr. Hobson's opinions as to the actual and legal cause of the company's ultimate collapse. PwC cites no controlling precedent for the notion that an accounting or business valuation expert must conduct a differential diagnosis a la medical diagnostician in opining as to the cause of a business's failure.

set as of June 30, 1998.  He explains in his expert report why he has selected that date.  (*See id*. at §§ 8.3 and 16.1; see also Hobson Aff. at ¶ 6.)  Any quarrel that PwC might have with the basis of that decision or any other substantive aspect of his opinion necessarily goes to the weight of his testimony, not to its "relevance," which is the focus of PwC's motion.

Far from "speculative," Mr. Hobson's opinions are based on a precisely stated methodology, accepted in the relevant fields of accounting and business valuation.  (For example, one of PwC's experts, Anil Shivdasani, testified that he had no quarrel generally speaking with the notion of using market capitalization as a means of valuing a business entity.  *See* Deposition of Anil Shivdasani, dated August 9, 2005, at page 205, attached as **Tab F** to GWRC Appendix of Exhibits in Opposition to Summary Judgment ("GWRC Appendix").)  Indeed, PwC appears to concede that its dispute is not with the methodology employed by Mr. Hobson, but rather to its "relevance" in light of a purported lack of causation evidence.  (Hobson.Mot.Lim. at p. 7.)

In this case, as more fully discussed in GWRC's opposition to PwC's motion for summary judgment, GWRC's claims relevant to this issue are necessarily derivative of HHRG's; that is, GWRC has asserted that it has suffered particular losses caused by HHRG's collapse which was itself caused by PwC's negligence.  The first domino that fell was HHRG; it in turn caused the GWRC domino to fall, as it were.  Thus, while GWRC's burden of proof is necessarily linked to that of HHRG, GWRC need not prove independently of HHRG that its losses were caused by PwC.  It can rely on the proof offered by HHRG as to the causal link between PwC's conduct and the collapse of HHRG.  Expert testimony is not required to find as a fact that HHRG's collapse caused GWRC's collapse.

Mr. Hobson, in turn, can base his damages opinions on certain givens – one, that PwC caused the collapse of HHRG. His opinion then turns on the question of the effect of the HHRG collapse. His opinions on this subject, his damages analysis, are fully relevant to GWRC's claims in this case. There is no dispute as to Mr. Hobson's qualifications. PwC has not mounted any *Daubert*-like attack on his credentials or methodology. The sole issue in PwC's *motion in limine* is whether his opinions are relevant enough to be deemed admissible. Hobson.Mot.Lim at 7. The claimed lack of "proof" as to the connection between GWRC's value on June 30, 1998 and its value on March 2000 is not the proper basis for excluding his testimony out of hand. It is a matter that goes to the weight of the testimony, for the jury to decide at the appropriate time.

This, GWRC submits, is not the time for such a determination.

## II.  CONCLUSION

For the foregoing reasons, including those stated in both Oppositions to PwC's Motion for Summary Judgment filed by Golden West Refining Corporation and by Handy & Harman Refining Group, Golden West respectfully submits that this Court should deny PwC's *Motion in Limine* seeking to exclude the testimony of Ian R. Hobson as an expert in this case.

**PLAINTIFF**
**GOLDEN WEST REFINING**
**CORPORATION LIMITED**

By  /S/ Steven R. Humphrey
   Steven R. Humphrey (ct06053)
   shumphrey@rc.com
   Dina S. Fisher (ct14896)
   dfisher@rc.com
   Robinson & Cole LLP
   280 Trumbull Street
   Hartford, CT  06103-3597
   Tel. No.:  (860) 275-8200
   Fax No.:  (860) 275-8299

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2005, a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept filing]. Parties may access this filing through the Court's system.

David J. Elliott, Esq.
William H. Erickson, Esq.
Steven D. Goldberg, Esq.
Steven M. Greenspan, Esq.
Day, Berry & Howard LLP
CityPlace
185 Asylum Street
Hartford, CT  06103-3499

Edward J. Boyle, Esq.
Wilson, Elser, Moskowitz, Edelman &
  Dicker LLPs
150 East 42nd St.
New York, NY 10017-5639

Daniel McMahon, Esq.
Stefan Dandelles, Esq.
Daniel E. Tranen, Esq.
Wilson, Elser, Moskowitz, Edelman &
  Dicker LLP
120 N. LaSalle Street
Chicago, IL 60602

Kathleen DiGennaro Warner, Esq.
Thomas D. Goldberg, Esq.
Day, Berry & Howard
One Canterbury Green
Stamford, CT  06901-2047

William H. Champlin, III, Esq.
Michael T. McCormack, Esq.
William S. Fish, Jr., Esq.
Tyler Cooper & Alcorn, LLP
William S. Fish, Jr., Esq.
CityPlace - 35th Floor
185 Asylum Street
Hartford, CT 06103

Fred N. Knopf, Esq.
Wilson, Elser, Moskowitz, Edelman &
  Dicker LLP
3 Gannett Drive
White Plains, NY 10604-3407

Jed Horwitt, Esq.
Zeisler & Zeisler, P.C.
558 Clinton Ave.
P.O. Box 3186
Bridgeport, CT  06605-0186

Kevin J. O'Connor, Esq.
U.S. Attorney's Office-NH
157 Church Street, 23rd Floor
P.O. Box 1824
New Haven, CT  06510

　　　／S StevenR. Humphrey
　　　Steven R. Humphrey