**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| GOLDEN WEST REFINING CORPORATION LIMITED, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:02 CV 1379 (MRK) |
| VS. | : | |
| | : | |
| PRICEWATERHOUSECOOPERS LLP and COOPERS & LYBRAND LLP, | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| ALEC SHARP, et al., | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION NO. |
| VS. | : | 3:02 CV 1572 (MRK) |
| | : | |
| PRICEWATERHOUSECOOPERS LLP d/b/a PRICE WATERHOUSE LLP, | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| HANDY & HARMON REFINING GROUP, INC., | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| V. | : | 3:02 CV 1803(MRK) |
| | : | |
| PRICEWATERHOUSECOOPERS LLP, | : | |
| Defendant. | : | SEPTEMBER 2, 2005 |

**GWRC'S MEMORANDUM OF LAW IN OPPOSITION TO**
**PwC'S MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Golden West Refining Corporation Limited ("GWRC"), submits this

memorandum of law, and accompanying affidavits of Richard Gordon Hayes and Ian Hobson, in

support of its opposition to defendant PricewaterhouseCoopers LLP ("PwC's) motion for

summary judgment, dated August 12, 2005.

## I.     PRELIMINARY STATEMENT

GWRC hereby incorporates the legal arguments, statements of facts in dispute, affidavits and exhibits submitted this date by co-plaintiff Handy & Harman Refining Group ("HHRG") in support of HHRG's Memorandum of Law in Opposition to Motion for Summary Judgment, dated September 2, 2005 ("HHRG's Memorandum"). For the purposes of this Preliminary Statement, GWRC specifically adopts the Preliminary Statement, Factual Background, and recitation of applicable law, as set forth in HHRG's Memorandum.

## II.    ARGUMENT

### A.     GWRC HAS COMPETENT EVIDENCE AND TESTIMONY SUFFICIENT TO PROVE PROXIMATE CAUSE.

Expert testimony is not required to show proximate cause in this case because a lay person can easily comprehend the facts establishing causation without an opinion from an expert witness. HHRG and GWRC have competent evidence, including testimony from members of the boards of directors of HHRG and GWRC, the members of the Audit Committee of GWRC (which also served as the audit committee for HHRG), and the creditors of HHRG, to show that PwC's conduct proximately caused the destruction of HHRG's business as a going concern. Moreover, GWRC has competent evidence and testimony proving that the collapse of GWRC was caused by the destruction of HHRG's business, which represented approximately ninety percent (90%) of GWRC's assets and its only income producing asset. There is no controlling authority requiring expert testimony to be provided in addition to such evidence. Further, as a matter of common sense, it is obvious that there was no other event, except HHRG's collapse, that caused GWRC's demise.

Furthermore, combined with this direct evidence of the link between PwC's conduct and HHRG's ensuing collapse, and the subsequent collapse that event caused to GWRC's business,

GWRC will rely on the expert testimony of Ian Hobson to establish that HHRG's collapse caused the complete demise of GWRC and its ensuing losses. PwC's motion for summary judgment against GWRC on all counts of its complaint should therefore be denied.

1.     **Expert Testimony Is Not Required To Prove The Cause Of The Destruction Of HHRG's Business As A Going Concern.**

Expert testimony is not required to prove that PwC's conduct was the proximate cause of HHRG's collapse because, as argued in HHRG's Memorandum, the facts supporting the issue of causation in this accounting malpractice case are within the purview of lay persons. Specialized knowledge is not required to understand the evidence offered by HHRG and GWRC. HHRG and GWRC have disclosed competent evidence – direct evidence and testimony from experts as well as lay witnesses who were personally involved in the case – which establishes that PwC's negligence proximately caused the destruction of HHRG's business as a going concern. As argued in HHRG's Memorandum In Opposition to Summary Judgment, and the affidavits and exhibits submitted in support thereof, which arguments are incorporated by reference herein, PwC is not entitled to summary judgment as to HHRG.

2.     **Expert Testimony Is Not Required To Show The Proximate Cause Of The Destruction Of GWRC's Business As A Going Concern.**

Just as PwC is not entitled to summary judgment against HHRG on the basis of a purported lack of expert testimony on causation, *a fortiori* summary judgment is not appropriate against GWRC on the same basis. It is all the more obvious that no expert witness testimony is required to show the cause of the next domino to fall, i.e., that HHRG's insolvency subsequently and proximately caused the destruction of GWRC's business as a going concern. GWRC will offer direct evidence of this causal link. For example, at trial, the jury will hear the testimony of Sean Russo, a GWRC board member at all times relevant to this litigation, who will testify that

3

the destruction of HHRG's business had an inevitable domino effect upon its parent, GWRC, which caused GWRC's demise.  (*See* Affidavit of Sean Russo, September 2, 2005 ("Russo Aff."), at ¶ 79).  (*See also* Affidavit of Ian Hobson, September 2, 2005 ("Hobson Aff."), at ¶ 5-12). HHRG represented approximately ninety percent (90%) of GWRC's assets and its only income producing asset.  (Russo Aff., at ¶ 79)  HHRG's business was therefore crucial to the continued viability of GWRC.  (*Id*. at ¶79).  When HHRG ceased operating as a going concern and was unable to fund GWRC, GWRC collapsed because it was then neither able to meet its loan obligations nor to pay the guarantee creditor claims of HHRG's debtors.  (Hobson Aff., at ¶ 6). This forced GWRC into liquidation and the complete destruction of the going concern value of GWRC.  (Hobson Aff., at ¶ 7).

Similar testimony will be offered by Michael Ryan, the Managing Director and CEO of GWRC at all relevant times, and who also served on the GWRC Audit Committee.  Mr. Ryan will testify (as in the affidavit filed in support hereof) that the collapse of HHRG was caused by PwC's malfeasance, *and* that HHRG's failure led directly to the complete destruction of GWRC. (*See* Affidavit of Michael Ryan, September 2, 2005, ("Ryan Aff."), at ¶ 79-81.)

The triers of fact will not require specialized knowledge or be required to comprehend complex principles, financial or scientific or otherwise, to be able to understand that GWRC could not continue as a going concern following the destruction of HHRG's business.  *See* FRE 701, 702.  Such an understanding can easily be gleaned from the facts and falls well within the common knowledge of a lay person.  Expert testimony would not assist the trier of fact to understand the evidence or to determine a fact in issue.  (See id.).  PwC has cited no controlling authority for the proposition that this accounting malpractice case is necessarily governed by the rules applying to medical malpractice cases or complex product liability cases (upon which it

relies), or that the exceptions that courts have held to apply in certain such cases do *not* apply in this case. [1]

> **3.      GWRC Has In Fact Offered Expert Opinion Testimony Supporting Its Claim That HHRG's Collapse Was The Proximate Cause of Its Destruction As A Going Concern.**

As GWRC's damages expert Ian R. Hobson has opined, GWRC failed as the direct result of HHRG's collapse.  (*See* Hobson Aff., at ¶ 6.)  PwC admits that he has so opined.[2]  Section 9 of Mr. Hobson's expert report specifically describes the components of GWRC's loss that, Hobson opines, arose from the insolvency of HHRG.  (Hobson Report, attached as Exhibit A to Hobson Affidavit, at § 9).  Sections 10 through 15 of Hobson's report then detail and calculate each of these components for the purpose of providing a comparison of loss calculation methodologies between the component methodology and the market capitalization methodology. (*Id.*, at §§ 10-15).[3]

PwC irrelevantly disputes Hobson's conclusions, and misstates his opinion in order to impugn it.  Leaving aside for the moment the immaterial nature of such arguments, PwC's

---

[1] *See, e.g., Puro v. Henry*, 188 Conn. 301, 305 (1982) (holding that jury could logically infer based upon circumstantial evidence without expert testimony that needle left in plaintiff's body caused pain and necessitated further surgery); *State v. Orsini*, 155 Conn. 367, 372 (1967) (witness permitted to testify to the fact that she was pregnant without expert testimony); *Gannon v. Kresege Co.*, 114 Conn. 36, 38 (1931); *Slimak v. Foster*, 106 Conn. 366, 370 (1927) (holding that jury could properly conclude that plaintiff's ingestion of glass caused miscarriage six months later without testimony of expert witness); *Parker v. Supermarkets General Corp.*, 36 Conn. App. 647, 652 (1995) (jury could infer that defendant's negligence caused plaintiff a permanent injury without expert testimony based on plaintiff's testimony, nature and duration of injury, likelihood of continuance in the future, and lack of total recovery); *Aspiazu v. Ortega*, 205 Conn. 623, 631 (1987) ("expert testimony is not always mandatory if the medical condition is obvious or common in everyday life"); *Doe v. Advisors Healthcare, Inc.*, 2005 WL 1089176, (Conn.Super. 2005) (denying motion for summary judgment in negligence action against nursing home because jury, using common knowledge, could conclude that sexual assault caused plaintiff harm).
[2] See PwC Mot.SJ/GWRC at page 14 ("Construed most favorably to the plaintiff, the Hobson Report opines only that HHRG's failure caused the subsequent failure of GWRC.").
[3] In fact, even PwC's expert, Anil Shivdasani, testified at his deposition that the failure of HHRG was a substantial factor that caused the failure of GWRC.  (*See* Deposition Transcript of Anil Shivdasani, August 9, 2005 (**Tab A**, attached to GWRC Appendix of Exhibits in Opposition to Summary Judgment ("GWRC Appendix"), at p. 217).

assertions are simply wrong. Hobson's report does address the decline in GWRC's stock price

preceding the disclosure of the Panexim loss in Section 7 of his expert report. (*Id*. at §§ 7.1 –

7.4). In Sections 7.1 through 7.4 of his report, Hobson acknowledges the decline of GWRC's

share price from A$0.70 to A$0.36 between July 1, 1999 and February 23, 2000, the day before

trading on the shares of GWRC was halted. He then states:

> We have considered GWRC's ASX announcements in the period leading up to the shares being suspended to assess if negative announcements occurred during this time, contributing to the share price decline. GWRC issued two profit warnings on 10 December 1999 and 3 February 2000 notifying the market firstly that HHRG had incurred a loss in the six months to 30 September 1999 and later stating further HHRG losses would result in an overall loss for the year ended 31 March 2000.

> Given these announcements may not be indicative of historical earnings or projections and the resultant material range of market capitalization values, we consider it appropriate to calculate a weighted average market capitalization over a three month period prior to suspension of the shares.

(*Id.* at §§ 7.3 – 7.4).

Thus, Hobson's damages calculations do take into account the decrease in GWRC's share

price in the period preceding the disclosure of the Panexim loss. That being the case, PwC's

argument that Hobson's expert testimony as to the value of GWRC's claimed damages is

"insufficient" has no basis, and the Court should disregard it. If anything, that argument as well

as the argument by PwC that Hobson's calculations are flawed due to his handling of that share

price decrease, goes to the weight of his testimony, rather than its admissibility or "sufficiency."

Such factual disputes should be adjudicated by the trier of fact, and are not properly the subject

of summary judgment.[4]

For all of these reasons, PwC's motion for summary judgment against GWRC on the

issue of causation should be denied.

---

[4] Moreover, GWRC alleges a total destruction of its value as a going concern, so the factors cited by PwC are not relevant to the issue of value.

**B.     GWRC HAS PROFFERED EVIDENCE SUFFICIENT TO PROVE A FIDUCIARY DUTY OWED BY PwC TO GWRC.**

The evidence GWRC will proffer at trial will show that PwC did have a fiduciary duty to GWRC, given the particular characteristics of its relationship, and that it breached its duty to protect the interests of GWRC in assuring that the financial statements of HHRG for fiscal years ("FY") 1997, 1998 and 1999 properly met the reporting standards of GAAP and GAAS.  To the extent that PwC disputes the facts offered by GWRC in establishing the existence of this fiduciary duty, and the breach thereof, summary judgment is entirely inappropriate and PwC's motion should be denied.[5]

While the Connecticut Supreme Court has held that "not all business relationships implicate the duty of a fiduciary," it has also emphasized that it would "refrain[ ] from defining a fiduciary relationship in precise detail and in such a manner as to exclude new situations."  *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.,* 255 Conn. 20, 27 (2000).   "A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other."  *Id*.   As discussed in detail below, the relationship between GWRC and PwC was such a fiduciary relationship.

**1.     GWRC Placed A Unique Degree Of Trust And Confidence In PwC, Which Undertook A Duty To Protect The Interests Of GWRC With Respect To The Auditing Of HHRG's Financial Statements.**

In agreeing to undertake the audit of HHRG under the terms and circumstances of its engagement, PwC undertook a duty to GWRC to protect GWRC's interests, in part by ensuring the veracity and completeness of HHRG's financial statements for FY 1997, 1998 and 1999.

---

[5] *See, e.g., Garrison Contractors, Inc.* v. *Liberty Mutual Ins. Co.*, 927 S.W.2d 296, 301 (Tex. App. 1996), cited with approval *in Hi-Ho Tower*, 255 Conn. at 33: "If the issue is one of no evidence, whether the fiduciary relationship exists is a question of law."  In this case, there is evidence supporting the existence of a fiduciary relationship, and therefore it becomes a question of fact for the jury to decide.

The reason GWRC required HHRG to issue audited financial statements, despite the fact that HHRG was not a public company, was so that it could rely on audited financials and incorporate them into the semiannual audited financial statements that GWRC, a publicly traded company, which was required by Australian corporate law to issue financials to the public.  (Supplemental Affidavit of Richard G. Hayes, To Be Supplied, ("Supp. Hayes Aff."), at ¶ 7).  PwC understood the nature and extent of GWRC's reliance upon its audits of HHRG's financial statements, and – the facts will show – agreed to the terms of the engagement and the reliance which GWRC would have on its work.  This is evidenced, *inter alia*, by the fact that PwC repeatedly, and willingly, reported its HHRG audit opinions to PwC (Australia) for the purpose of incorporating those findings into the financial reports of GWRC.  (See Deposition Transcript of Alex Corl ("Corl Dep."), March 14, 2005 (**Tab B**, attached to GWRC Appendix), at 17-18, 179-80, 209-15; Deposition Transcript of George Ingram ("Ingram Dep."), February 18, 2005 (**Tab C**, attached to GWRC Appendix), at 204-05; Deposition Transcript of Joseph Tiroletto ("Tiroletto Dep."), March 19, 2005 (**Tab D**, attached to GWRC Appendix), at 48).

As the jury will hear, GWRC's Audit Committee served as the audit committee for HHRG.  The members of the Audit Committee consulted with PwC (US) with regard to the timetable and conduct of the HHRG audits.  (*See* Tiroletto Dep., **Tab D** of GWRC Appendix, at 48).  GWRC imposed time deadlines upon PwC (US) by which PwC (US) was required to submit its auditing opinions regarding HHRG's financial statements to GWRC's auditor, PwC (Australia), which was affiliated with PwC (US).  (See Ingram Dep., **Tab C** of GWRC Appendix, at 204-05)  For example, on or about March 25, 1997, the PwC (US) manager on the HHRG account, Joseph Tiroletto, met via teleconference with certain HHRG employees and with members of GWRC's Audit Committee to discuss the timetable and procedure for the FY

8

1997 HHRG audit.  According to Tiroletto, "[t]he primary content of the conversation centered around [PwC (US)] meeting the timing that [GWRC] laid out in [Deposition Exhibit No. 164]."[6] (See Tiroletto Dep., **Tab D** of GWRC Appendix, at 48).  These facts demonstrate not only PwC's superior knowledge with respect to HHRG's financials that GWRC relied on, but also the degree of trust that GWRC placed on PwC in this engagement.

As further evidence of GWRC's reliance upon PwC (US), in August or September 1998, the CFO of GWRC requested that the PwC (US) "Engagement Partner" on the HHRG audit be replaced due to the fact that the HHRG audits for FY 1997 and FY 1998 had not been submitted by PwC (US) to PwC (Australia) within the time deadline prescribed by GWRC.  (See Supp. Hayes Aff., at ¶ 7).  In response, PwC (US) removed George Ingram as its Engagement Partner in charge of the HHRG account, and replaced him with Alex Corl.  (Hayes Aff., at ¶ 8).  Within weeks after Corl was appointed Engagement Partner for the HHRG account, he personally met with the CFO of GWRC in New York City and assured him that HHRG's Fiscal 1999 audit work would be completed within the time prescribed by GWRC so that it could be incorporated into the GWRC public financial reports for FY 1999.  ( Supp. Hayes Aff., at ¶ 9; Corl Dep., **Tab B** of GWRC Appendix, at 209-15).  Therefore, there is no question that PwC (US) performed its audits of HHRG's financial statements with the full knowledge and expectation that they would be used by GWRC to satisfy its reporting obligations as a publicly traded company.  (*See* Corl Dep., **Tab G** of GWRC Appendix**,** at 17-18, 179-80; 209-15; Ingram Dep., **Tab H** of GWRC Appendix, at 204-05; Tiroletto Dep., **Tab I** of GWRC Appendix, at 48; Supp. Hayes Aff., Tab F, at ¶¶ 7-9).

---

[6] A copy of Deposition Exhibit No. 164 is attached hereto as **Tab E.**  At Bates No. PWC Z 02302, Exhibit No. 164 contains a facsimile, dated March 19, 1997, from GWRC to HHRG in which GWRC sets forth the timetable by which it would require each of its subsidiaries to complete certain tasks for the purpose of ensuring that GWRC timely issued its semiannual audited financial reports for FY 1997.

2.    **PwC (US) Had Superior Knowledge And Held A Dominant Position Relative To GWRC From Which To Protect The Interests Of GWRC In Ensuring The Veracity And Completeness Of HHRG's Financial Statements.**

Further evidence of the existence of a fiduciary relationship between GWRC and PwC is the fact that PwC held a dominant position with superior knowledge that led GWRC to justifiably rely upon its audits of HHRG's financial statements. PwC acquired superior knowledge regarding HHRG's financial statements by performing its due diligence and extended auditing work concerning them. GWRC's ability to obtain an assessment, independent of HHRG management, depended upon PwC's dominant position. The location of GWRC's offices in Australia, along with the complexity and high volume of HHRG's financial information, necessitated GWRC's reliance upon PwC's independent and extensive audit work to ensure that the financial statements produced by HHRG management were truthful and complete.

Furthermore, the evidence proves that PwC's dominant position in this regard did, in fact, cause GWRC and its CFO to rely upon PwC to provide a complete audit of HHRG's financial statements. (Supp. Hayes Aff., **Tab F**, at ¶¶ 5-6). The fact that PwC understood the nature and extent of GWRC's reliance upon its work is evidenced by the fact that PwC repeatedly, and willingly, reported its HHRG audit opinions to PwC (Australia) for the purpose of incorporating those findings into the financial reports of GWRC. Furthermore, as described in further detail above, PwC shared its HHRG audit work with PwC (Australia) and GWRC pursuant to conditions, timetables and deadlines imposed by GWRC.

3.    **The Cases Cited By PwC Are Inapposite.**

PwC inappropriately relies on *Hi-Ho Tower*, 255 Conn. at 20, in spite of a number of distinctions between the facts of that case and this one. In *Hi-Ho*, the Court ruled that there was no fiduciary duty between plaintiff and defendant on a very fact-specific basis, which facts do

not correlate to this case.  The *Hi-Ho* plaintiff sought to establish that a fiduciary relationship

existed between it, a communications tower provider, and the defendant radio equipment

company that leased space on a tower, by virtue of the limited technical services that the

defendant provided to the plaintiff in partial exchange for rent. *See id*., at 23-25.  The underlying

facts of the present case are completely different.  Here, GWRC was the intended third-party

beneficiary of a contract between PwC and HHRG, in circumstances in which GWRC relied on

the superior knowledge and guidance of PwC.  Unlike the defendants in *Hi-Ho Tower* that

managed only limited aspects of the plaintiff's facilities, here PwC took full control of the

auditing work on HHRG's financial statements and exercised independent discretion in its audit

work, by means of superior knowledge and with the trust of the GWRC Audit Committee.

Additionally, as stated above, both GWRC and its Audit Committee members were

resident in Australia during the HHRG audits.  This necessitated GWRC's reliance upon PwC

(US) to employ its expertise, superior knowledge, greater proximity to HHRG's business

operations, and judgment to provide an accurate and complete assessment of the HHRG financial

statements, independent of that provided to GWRC by HHRG management.  That is why GWRC

expressly and repeatedly emphasized the importance of PwC (US) finishing its auditing work in

sufficient time to allow its opinions and findings to be incorporated into the financial reports of

GWRC.  The relationship between GWRC and PwC (US) was in no way analogous to that of the

parties in *Hi-Ho Tower*.

PwC also misplaces its reliance on *Konover Dev. Corp. v. Zeller*, 228 Conn. 206 (1994).

In *Konover*, the Court decided that an accountant-client relationship is not a fiduciary

relationship in circumstances in which the accountant is not under a duty to represent the

interests of the client.  *See Konover,* 228 Conn., at 219.  *Konover* is thus entirely inapposite to

this case; while its holding may apply to the relationship between PwC and its client, HHRG, it is inapplicable to the relationship between PwC and the intended beneficiary of its auditing work, GWRC.[7]

As GWRC will show at trial, the PwC/GWRC relationship encompassed all of the elements of a fiduciary relationship. "A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." *Hi-Ho Tower*, 255 Conn., at 27. Here, PwC had superior knowledge, as discussed above. Furthermore, it was exactly PwC's independence from HHRG management (in addition to PwC's superior knowledge and expertise) that caused GWRC to have unique trust and confidence in PwC to protect GWRC's interests in ensuring the veracity and completeness of HHRG's financial statements. Unlike the situation between accountant-defendant and the client-plaintiff in *Konover*, GWRC was not PwC's direct client, and the "independence" between PwC and HHRG has no bearing on PwC's relationship with GWRC. To the contrary, GWRC entrusted PwC to protect its interests in this case by supplying GWRC with accurate and complete audit information regarding HHRG's financial statements, and PwC agreed to provide GWRC with that audit information.

As discussed above, GWRC demanded that PwC (US) timely supply its HHRG audit opinions and findings to PwC (Australia) so that they could be incorporated into the financial statements of GWRC. PwC repeatedly and willing performed this task at the behest of GWRC, and pursuant to the timetables and conditions GWRC imposed. Unlike the defendant in *Konover*, it was not necessary for PwC to maintain its independence from GWRC in order to

---

[7] In Footnotes 46 and 47 of PwC's brief, it cites several other cases the same type of accountant-client relationship that the Court discussed in <u>Konover</u>. These cases are inapposite for the same reasons that <u>Konover</u> is inapposite

perform its auditing work on HHRG's financial statements.  Thus, the characteristics of the

relationship between PwC and GWRC were different from that of an account-client relationship

described in *Konover*, and were instead akin to what Connecticut courts have held to be fiduciary

relationships.  Accordingly, summary judgment against GWRC on its fiduciary duty claim is

inappropriate.  At the very least, there are facts in dispute as to the nature of the relationship

between PwC and GWRC, and whether it rose to the level of a fiduciary relationship.  Therefore,

the issue is for a jury to decide.

**III.    CONCLUSION**

For the above stated reasons, as well as those stated in the Memorandum of Opposition to

Summary Judgment filed by HHRG, GWRC respectfully requests that PwC's motion for

summary judgment be denied in its entirety.


**PLAINTIFF**
**GOLDEN WEST REFINING**
**CORPORATION LIMITED**


**By**___/S/ Steven R. Humphrey_____
   Steven R. Humphrey (ct06053)
   shumphrey@rc.com
   Dina S. Fisher (ct14896)
   dfisher@rc.com
   Robinson & Cole LLP
   280 Trumbull Street
   Hartford, CT  06103-3597
   Tel. No.:  (860) 275-8200
   Fax No.:  (860) 275-8299

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2005, a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing].  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept filing].  Parties may access this filing through the Court's system.

David J. Elliott, Esq.
William H. Erickson, Esq.
Steven D. Goldberg, Esq.
Steven M. Greenspan, Esq.
Day, Berry & Howard LLP
CityPlace
185 Asylum Street
Hartford, CT  06103-3499

William H. Champlin, III, Esq.
Michael T. McCormack, Esq.
William S. Fish, Jr., Esq.
Tyler Cooper & Alcorn, LLP
William S. Fish, Jr., Esq.
CityPlace - 35th Floor
185 Asylum Street
Hartford, CT 06103

Edward J. Boyle, Esq.
Wilson, Elser, Moskowitz, Edelman &
   Dicker LLPs
150 East 42nd St.
New York, NY 10017-5639

Fred N. Knopf, Esq.
Wilson, Elser, Moskowitz, Edelman &
   Dicker LLP
3 Gannett Drive
White Plains, NY 10604-3407

Daniel McMahon, Esq.
Stefan Dandelles, Esq.
Daniel E. Tranen, Esq.
Wilson, Elser, Moskowitz, Edelman &
   Dicker LLP
120 N. LaSalle Street
Chicago, IL 60602

Jed Horwitt, Esq.
Zeisler & Zeisler, P.C.
558 Clinton Ave.
P.O. Box 3186
Bridgeport, CT  06605-0186

Kathleen DiGennaro Warner, Esq.
Thomas D. Goldberg, Esq.
Day, Berry & Howard
One Canterbury Green
Stamford, CT  06901-2047

Kevin J. O'Connor, Esq.
U.S. Attorney's Office-NH
157 Church Street, 23rd Floor
P.O. Box 1824
New Haven, CT  06510

      /S StevenR. Humphrey
      Steven R. Humphrey

14