UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GOLDEN WEST REFINING CORPORATION LIMITED, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:02 CV 1379 (MRK) |
| VS. | : | |
| | : | |
| PRICEWATERHOUSECOOPERS LLP and COOPERS & LYBRAND LLP, | : | |
| Defendants. | : | |
| ALEC SHARP, et al., | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION NO. |
| VS. | : | 3:02 CV 1572 (MRK) |
| | : | |
| PRICEWATERHOUSECOOPERS LLP d/b/a PRICE WATERHOUSE LLP, | : | |
| Defendant. | : | |
| HANDY & HARMON REFINING GROUP, INC., | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| V. | : | 3:02 CV 1803(MRK) |
| | : | |
| PRICEWATERHOUSECOOPERS LLP, | : | |
| Defendant. | : | September 2, 2005 |

## AFFIDAVIT OF IAN HOBSON

HART1-1278305-1
09/01/05 9:44 AM

| | | |
|---|---|---|
| STATE OF WESTERN AUSTRALIA | ) | |
| | ) | ss: _____ |
| PERTH, AUSTRALIA | ) | |

IAN HOBSON, being duly sworn, hereby deposes and says:

1.    I am over the age of 18, and I understand the obligations of an oath.

2.    I submit this affidavit in support of plaintiff Golden West Refining Corporation Limited's ("GWRC's") Memorandum of Law in Opposition to defendant PriceWaterhouseCoopers LLP's ("PwC (US)") motion for summary judgment against GWRC. I am familiar with and have knowledge of the statements contained herein which statements are based on my own personal knowledge and my review of GWRC's business records.

3.    I am a chartered accountant and registered liquidator with 20 years experience, 17 years of which has been gained in the areas of restructuring and corporate recovery. I am employed as a director of Ferrier Hodgson. Garry Trevor, a partner at Ferrier Hodgson was appointed as the Administrator of GWRC on August 17, 2001, Deed Administrator pursuant to the terms of a Deed of Company Arrangement, dated November 29, 2001 and subsequently liquidator of GWRC on November 24, 2003.

4.    Attached hereto as Exhibit A, is a copy of the expert report I supplied on behalf of GWRC with regard to the captioned litigation, dated March 24, 2005.

2

5.      As stated in paragraph 4.1 of my report, HHRG's filing of Chapter 11 Bankruptcy on March 28, 2000 left GWRC in a position where its only income producing asset was the 50% investment by its subsidiary, Golden West Australasia Pty. Ltd. ("GWA"), in a joint venture between GWA and the Western Australian Mint.  The joint venture was known as the AGR Joint Venture.

6.      As related in Sections 9 through 15 of my report, following the bankruptcy of HHRG, the above-mentioned 50% interest in the AGR Joint Venture generated insufficient profits and cashflow for GWRC's to meet its continuing obligations.  As a result, GWRC, like HHRG, was caused to collapse in that it was unable to meet its loan obligations to NM Rothschild & Sons (Australia) Ltd. ("NMRA"), nor was it able to pay the guarantee creditor claims of HHRG's debtors, Credit Suisse First Boston International ("CSFB") and Pension Benefit Guaranty Corporation.

7.      When CSFB notified GWRC in August 2001 of the quantum of the guarantor claim against GWRC, this necessitated action by GWRC's directors, which action was the appointment of an Administrator.  The appointment of an Administrator resulted in the collapse of GWRC all of which was caused by HHRG's collapse.

8.      The inability of GWRC to meet its continuing obligations to its secured creditor NMRA, the guarantor claims and the costs associated with maintaining a public company

3

required GWRC to sell its 50% interest (through GWA) in the AGR Joint Venture to repay NMRA's secured debt.

9.      In Section 7 of my report, I calculated the monetary loss suffered by GWRC caused by the collapse of HHRG, using the "market capitalization" methodology.  The methodology is explained in the text of Section 7, and the calculations are provided in Annexure C to the report.  I made reference to reasonableness cross-check at paragraphs 8.5, 13.1, 13.2 and 13.3 of my report using the multiple of future maintainable earnings method.  This methodology is also a generally accepted valuation methodology for valuing shares in a public company and confirmed the results of the market capitalization methodology adopted by me.

10.      It has been brought to my attention that in challenging the calculations that appear in Annexure C to my report, an expert on behalf of PwC has alleged that the market prices employed in such calculations, for shares of GWRC, might not provide an adequate basis upon which the loss to GWRC may be calculated.  In so arguing, however, PwC's expert admits that he did not have any knowledge of or evidence to support a position that the Australian Stock Exchange was inefficient so that its pricing could not be relied upon.

11.      The Australian Stock Exchange has listed securities for over 100 years, and is generally recognized by shareholders and traders of Australian securities in the same way as the New York Stock Exchange is recognized.  I am aware of no evidence or reason why a reasonable

4

investor would not treat the market for stocks traded through the Australian Stock Exchange,
including the shares of GWRC, as anything other than efficient. Following the acquisition of
HHRG in August 1996, GWRC's shares traded freely, efficiently and in an open market until
suspended in February 2000. As stated above, the multiple of future maintainable earnings
confirmed the market capitalization method.

12.    There are, of course, other methods of valuing a company but, in my opinion,
under the circumstances of this case, the market capitalization methodology is the most
appropriate.

Ian Hobson

Subscribed and sworn to
before me this 1ˢᵗ day of September, 2005.

Notary Public

IAN KEITH WARNER
140    NOTARY PUBLIC
81 ST GEORGE'S TERRACE
PERTH, WESTERN AUSTRALIA



5

*Exhibit A*

24 March 2005

**GOLDEN WEST REFINING CORPORATION LTD ACN 002 771 066**
**(In Liquidation) ("GWRC")**

**Analysis of GWRC's Loss Calculation**

### 1    INTRODUCTION

1.1    We have been requested to submit a report on the loss incurred by GWRC as a result of the insolvency of Handy & Harman Refining Inc. ("HHRG").

### 2    SCOPE

2.1    This report is based on our analysis of the records of GWRC as well as our knowledge of GWRC and our education, experience and expertise in the relevant fields.

2.2    This report addresses our opinion on the quantification of GWRC's loss. A history of the matter and details of GWRC's claim is set out in the Second Amended Complaint in the matter of GWRC v PricewaterhouseCoopers ("PwC") dated 12 November 2004 ("the Complaint").

2.3    This report incorporates by reference the report by Craig T. Elson of LECG, LLC dated 18 March 2005 concerning his valuation of HHRG. We understand that discovery is ongoing and respectfully reserve the right to supplement or amend this report, our observations and/or quantifications on the basis of information which may be identified subsequent to the submission of this report.

### 3    EXPERIENCE AND QUALIFICATIONS

3.1    The authors of this report are Ian Hobson, a director of Ferrier Hodgson and Garry Trevor the Senior Partner of the Perth practice of Ferrier Hodgson. Ian is a chartered accountant and registered liquidator with 20 years experience, 17 years of which has been gained in the areas of restructuring and corporate recovery. Garry has over 25 years of restructuring and corporate recovery experience in numerous significant matters acting for debtors and lenders.

3.2    Ian and Garry's experience has involved them acting in various appointment / manager roles as Administrator, Receiver and Manager and Liquidator of many large publicly listed corporate insolvencies and reconstructions as well as in numerous significant workout situations assisting troubled companies and lenders in complex debt restructuring and recovery assignments.

3.3    Garry's experience also includes being an expert accounting witness in prosecutions on behalf of prosecutors and defendants; being an expert accounting witness particularly on matters of solvency and in the preparation of reports on business solvency and values. Ian has prepared expert accounting reports on behalf of prosecutors and defendants on matters of general accounting issues, insolvency and fraud identification.

3.4    Further details of our experience and qualifications are included as Annexure A.

## 4    BACKGROUND

4.1    By way of background, we set out the facts as they are relevant to this report:

(a)    GWRC was a public company listed on the Australian Stock Exchange ("ASX");

(b)    Golden West Australasia Pty Ltd (in Liquidation) ("GWA"), a wholly owned subsidiary of GWRC, held a 50% interest in the AGR Joint Venture ("AGR"). AGR was a joint venture between GWA and the Western Australian Mint;

(c)    GWRC held 100% of an American subsidiary, HHRG, which in turn has a further wholly owned subsidiary, ARC. The American subsidiaries provided refining services for precious metals and scrap materials;

(d)    NM Rothschild & Sons (Australia) Limited ("Rothschild") held a fixed and floating charge over all the assets of GWRC to secure a A$10.5 million facility;

(e)    RAIL Ltd is an unsecured creditor in the sum of US$700,000;

(f)    HHRG was the subject of significant accounting irregularities including a bullion inventory fraud and as a result, HHRG found it difficult to meet secured and unsecured creditors' claims and, accordingly, filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court on 28 March 2000;

(g)    GWRC was left in a position where its only income producing asset was its investment in AGR which generated insufficient profits and cashflow to meet GWRC's continuing costsand obligations. AGR was sold in August 2001 and the proceeds used to repay Rothschild's secured debt, with the balance reflected in cash at bank;

(h)    The collapse of HHRG resulted in guarantee claims arising against GWRC;

(i)     the HHRG Group had banking facilities with Credit Suisse First Boston International ("CSFBI"). GWRC guaranteed the liabilities owing from HHRG's subsidiary ARC to CSFBI. The amount claimed under the guarantee is US$3.4 million;

(j)     GWRC has a liability to the Pension Benefit Guaranty Corporation ("PBGC") in the United States in relation to the shortfall on the HHRG Pension Plan. PBGC has claimed US$1.1 million; and

(k)     GWRC issued the Complaint against PwC claiming negligence, negligent misrepresentation, breach of third party beneficiary contract and breach of fiduciary duty.

## 5     LOSS CALCULATION METHODOLOGY

5.1     We are of the opinion that the appropriate measure of GWRC's loss is the difference between the financial standing of GWRC now compared to its financial position prior to the collapse of HHRG.

5.2     We consider that two appropriate dates should be considered being February 2000 being the date GWRC's shares were suspended from the ASX and 30 June 1998, as this was prior to the substantial change and increase in unsecured advances by HHRG to South American companies. We understand that subsequent to 30 June 1998, HHRG's business was being operated in a manner inconsistent with its policy regarding foreign advances. HHRG's results were therefore infected with transactions that were not in accordance with corporate policy.

5.3     By way of comparison, we have also considered the components of GWRC's losses arising as a consequence of HHRG's insolvency.

### 6     CURRENT POSITION

6.1     GWRC's asset and liability position as at 15 March 2005 is dependant on the outcome of various issues, which cannot be fully determined at this time. A 'best estimate' based on our assessment of the likely outcome of matters at this time is summarised as follows:

|  | Amount | Notes |
|---|---|---|
|  | A$'000 |  |
| Assets |  |  |
| Cash at Bank | 1,320.7 |  |
| Surplus from GWA | 425.0 | 1 |
|  | $1,745.7 |  |
| HHRG Receivable | Unknown | 2 |
| Contingent – PBG Claim in HHRG | 150.0 | 6 |
| Provision for Costs | (200.0) |  |
| Funds Available to Unsecured Creditors | A$1,695.7 |  |
|  |  |  |
| Liabilities |  |  |
| Trade Creditors & Directors Fees | 138.0 | 3 |
| CSFB | 6,538.8 | 4 |
| RAIL Ltd loan | 1,334.9 | 5 |
| HHRG Pension Benefit Guaranty | 2,178.9 | 6 |
| Total Liabilities | A$10,190.6 |  |
| Estimated Return to Creditors Before Costs | 17% |  |
|  |  |  |
| NMRA Debt | A$500,000 | 7 |

**Notes**

1.  GWA's cash balance of A$425,000 is to be distributed to GWRC.

2.  HHRG is indebted to GWRC for US$631,931. To date HHRG has paid out dividend to creditors of 70% leaving a balance due of US$189,579. The amount of any further recoveries will depend on the outcome of the PwC litigation.

3.  Sundry unsecured creditors comprise:

| Creditor | Amount |
|---|---|
| | A$ |
| ANZ Asset Finance | 11,994.82 |
| ASX Operations Pty Ltd | 294.86 |
| Australian Taxation Office | 18,017.00 |
| Cabcharge Australia Pty Ltd | 295.85 |
| Canon Australia Pty Ltd | 68.48 |
| Christopher Wiggins | 19,349.00 |
| Computershare | 2,619.56 |
| QBE Mercantile Mutual Limited | 4,405.20 |
| Corpserv Pty Ltd | 7,041.00 |
| Deacons | 2,220.90 |
| Fleet Systems | 354.84 |
| Genesys Conferencing Pty Ltd | 922.07 |
| KPMG | 27,500.00 |
| Mallesons Stephen Jaques | 1,463.00 |
| PricewaterhouseCoopers | 16,709.00 |
| Recall Total Information Management | 259.77 |
| Rodney Warren | 17,312.00 |
| Terrace Print & Copy Centre | 1,139.00 |
| Warren Corporate Services | 6,080.25 |
| **Total** | **A$138,046.60** |

4.  CSFBI amended their initial claim from US$2.1 million to US$3,428,966 being HHRG's debt guaranteed by GWRC. The amount will be subject to adjudication. The appropriate exchange rate is the rate at the date of appointment of the Administrators, being 17 August 2001 of 0.5244.

5.  A claim has been received from the US Pension Benefit Guaranty Corporation ("PBGC") for US$1,142,604 representing the shortfall of HHRG's pension plan, guaranteed by GWRC. We understand settlement discussions between HHRG and PBGC has commenced and therefore the amount payable will be subject to the outcome of those discussions and adjudication of the debt.

6.     Legal advice received states that A$500,000 of NMRA's debt is subject to subordination provisions, as provided in loan documentation.

6.2    The current estimated deficiency of A$10.7 million can then be compared to GWRC's financial position just prior to HHRG's collapse in March 2000 and as at 30 June 1998 in order to assess the quantum of the loss to GWRC. We consider it appropriate to utilise GWRC's market capitalisation at those points in time as a starting point in assessing GWRC's financial position.

## 7    MARKET CAPITALISATION

7.1    A trading halt was placed on the shares of GWRC on 24 February 2000 and the shares were officially suspended from trading on the ASX on 28 February 2000. Set out in Annexure B are details of GWRC's share prices and volumes traded during the eight month period up to and including 23 February 2000.

7.2    During that period the shares had been trading in the range of A$0.70, gradually declining to A$0.36, which, when multiplied by the shares on issue of 57,162,898 results in a market capitalisation in the range of A$40.0 to A$20.6 million.

7.3    We have considered GWRC's ASX announcements in the period leading up to the shares being suspended to assess if negative announcements occurred during this time, contributing to the share price decline. GWRC issued two profit warnings on 10 December 1999 and 3 February 2000 notifying the market firstly that HHRG had incurred a loss in the six months to 30 September 1999 and later stating further HHRG losses would result in an overall loss for the year ended 31 March 2000.

7.4    Given these announcements may not be indicative of historical earnings or projections and the resultant material range of market capitalisation values, we consider it appropriate to calculate a weighted average market capitalisation over a three month period prior to suspension of the shares.

7.5    That calculation is set out in Annexure C and shows that the three month weighted average market capitalisation to be A$30.1 million. It would also be appropriate to consider a control premium in addition to the market capitalisation. There is supportable evidence referrable to valuation principles to suggest a premium of 25% is reasonable. On this basis the value of GWRC would be A$37.6 million.

7.6    By way of comparison to GWRC's market capitalisation, we have considered GWRC's net asset position based on the latest available audited consolidated balance sheet to the date of HHRG's collapse.

## 8    BALANCE SHEET POSITION

8.1    The closest available consolidated balance for GWRC is as at 30 September 1999. That balance sheet is set out below with comparatives to the only available prior and subsequent audited balance sheets.

| GWRC Consolidated Balance Sheet | 31-Mar-00 | 30-Sep-99 | 31-Mar-99 |
|---|---|---|---|
| | A$'000 | A$'000 | A$'000 |
| **Current Assets** | | | |
| Cash | 1,006 | 7,626 | 6,088 |
| Receivables | 1,097 | 32,656 | 24,515 |
| Inventories | - | 8,315 | 12,576 |
| Prepayments | - | 2,772 | 2,213 |
| **Total Current Assets** | 2,103 | 51,369 | 45,392 |
| | | | |
| **Non Current Assets** | | | |
| Investment in AGR | 15,009 | 14,946 | 14,045 |
| Intangibles | 23 | 2,148 | 2,988 |
| Plant and Equipment | 164 | 16,223 | 17,665 |
| Future Income Tax benefit | 1,074 | 1,343 | 1,130 |
| **Total Non-Current Assets** | 16,270 | 34,660 | 35,808 |
| **Total Assets** | 18,373 | 86,029 | 81,200 |
| | | | |
| **Current Liabilities** | | | |
| Accounts Payable | 1,396 | 25,152 | 24,643 |
| Borrowings | 1,072 | 7,561 | 5,147 |
| Provisions | 997 | 5,365 | 1,761 |
| **Total Current Liabilities** | 3,465 | 38,078 | 31,551 |
| | | | |
| **Non-Current Liabilities** | | | |
| Borrowings | 8,085 | 15,304 | 17,130 |
| Provisions | 84 | 2,956 | 1,751 |
| **Total Non-Current Liabilities** | 8,169 | 18,260 | 18,881 |
| **Total Liabilities** | 11,634 | 56,338 | 50,432 |
| **Net Assets** | 6,739 | 29,691 | 30,768 |
| | | | |
| **Shareholders Equity** | | | |
| Share Capital | 22,996 | 22,966 | 22,349 |
| Reserves | - | 1,922 | 2,764 |
| Retained Profits | - 16,227 | 4,803 | 5,654 |
| **Total Shareholders Equity** | 6,769 | 29,691 | 30,767 |

8.2    GWRC's consolidated net assets as at 30 September 1999 were stated to be A$29.7 million which had not changed significantly from 31 March 1999. The position at 31 March 2000 took into account the write-off of the HHRG assets.

8.3   As stated in Section 5, we have also considered GWRC's position as at 30 June 1998 on the basis that GWRC's results after that date would include fraudulent transactions referred to in Paragraph 4.1(f).

8.4   The ASX quoted price for GWRC shares at 30 June 1998 was A$.66 per share, which when multiplied by shares on issue of 56,100,931 results in a market capitalization of A$37.0 million. A 25% control premium would result in a value of GWRC of A$46.3 million.

8.5   A reasonableness 'cross-check' can be approached by reference to a multiple of future maintainable earnings. That approach is set out in section 13.

## 9   COMPONENTS OF GWRC'S LOSS

9.1   By way of comparison, the components of GWRC's loss arising from the insolvency of HHRG can be summarised as follows:

(a)   GWRC's default on its loan obligations to NM Rothschild & Sons (Australia) Ltd ("NMRS"); the loss of equity in those loans; the payment of penalties on account of GWRC's default on those loans;

(b)   GWRC's loss of its investment in HHRG;

(c)   GWRC's losses due to the forced sale of its partnership interest in the AGR Joint Venture, amounting to approximately US$4.5 million;

(d)   The loss of net future profits that GWRC would have earned had it continued as a going concern;

(e)   The guarantee creditor claims by CSFB and PBGC pursuant to GWRC's guarantee obligations and the cocst of the liquidation.

9.2   A discussion on each component is set out below.

## 10   LOAN OBLIGATIONS TO NMRS

10.1  Following the collapse of HHRG, GWRC was left in a position in where its only income producing asset was the investment in the AGR Joint Venture which produced a profit share of A$1.75 million in the year ended 31 March 2000. In contrast, the company had significant ongoing overheads and other commitments associated with:

(a)   the normal management cost of a public company;

(b)   the orderly rationalisation of HHRG's affairs;

(c)    interest on Rothschild's facilities estimated at approximately A$600,0000 per annum; and

(d)    principal reduction on Rothschild's facilities of:

    (i)    A$1 million at 31 December 2000;

    (ii)    A$1 million on 30 June 2001; and

    (iii)    A$7.5 million at 31 December 2001.

10.2    GWRC's secured obligations to Rothschild were renegotiated such that the principal repayment (of A$1 million due on 31 December 2000) was deferred until 30 June 2001. The currency hedge loss, which crystallised on 28 August 2000 at A$1.47 million, was also deferred until 30 June 2001. These negotiations, whilst assisting GWRC to rationalise its affairs in an orderly manner, resulted in significant financial penalties to GWRC.

10.3    We reserve the right to supplement this report to include default interest paid prior to or at the sale of AGR upon further review.

10.4    On 24 April 2003, the final balance of NMRS' loan of A$3,452,759.20 was paid, calculated as follows:

|  | Amount |
|---|---|
|  | A$ |
| Principal | 2,933,488.49 |
| Less: Deferred Amount | (500,000.00) |
| Net Principal | 2,433,488.49 |
|  |  |
| Accrued Interest | 728,050.85 |
| Accrued Penalty Interest on Loans | 103,073.28 |
| Outstanding Commitment Fees | 1,186.30 |
| Outstanding Legal & Professional Fees | 61,141.49 |
| Penalty Interest on Outstanding Fees and Interest | 97,278.06 |
| Expenses Reimbursable | 28,540.73 |
| **Total Amount Repaid** | **A$3,452,759.20** |

10.5    Earlier payment of the final balance was not possible due to the funds being held in provision pending settlement of a preference dispute between HHRG's Liquidating Custodian the Liquidator of GWA.

## 11   INVESTMENT IN HHRG

11.1    GWRC's cost of investment in HHRG in August 1996 was US$8.5m (A$11m per GWRC's financial statements). We areadvised that there was no subsequent formal valuations of HHRG subsequent to the acquisition other than a valuation undertaken by KPMG indicating a value of US$35m.

11.2    We have reviewed the report by Craig Elson dated 18 March 2005 regarding his independent assessment of the fair market value of HHRG as of 30 June

1998. We concur with the valuation methodology set out in that report which concludes a fair market value of HHRG in the range of US$28.9 to US$30.7 million. We have adopted this value for the purpose of this report.

## 12    AGR JOINT VENTURE

12.1    As stated earlier in this report the collapse of HHRG left GWRC in a position where its only income producing asset, AGR, generated insufficient profit and cashflow to meet interest and principal reduction commitments. GWRC retained Arthur Andersen Corporate Finance ("AACF") to advise on alternatives available to GWRC including sourcing potential purchasers.

12.2    The alternatives to the sale of AGR by the board and its advisers were:

    (a)    a merger of AGR with other refining operations; and

    (b)    raising of capital through a rights issue or some other hybrid equity solution.

12.3    The major benefit of a merger would have arisen from the added value to be obtained from the AGR business through synergistic and rationalisation benefits. For the added value to greatly benefit GWRC it would need to hold onto significant equity or, in the alternative, have the acquirer of its interest pass some of the future added value on the transfer of GWRC's interest. In the final analysis, a merger was unlikely to provide sufficient free cash to resolve GWRC's secured debt obligation.

12.4    The capacity of GWRC to raise further capital was hampered by the continuing uncertainty surrounding the unresolved contingent obligations in relation to HHRG and the timeframes required to meet GWRC's obligations. Whether a capital raising would improve the outcome over and above a sale is largely a question of valuation.

12.3    As the AGR Joint Venture asset did not generate sufficient cashflow to service and retire existing debt, and it was unlikely that sufficient funds could have been raised through a merge or capital raising, there did not appear to be an alternative to the sale of the asset.

12.4    The sale of AGR had been pursued for a period of ten months. If a sale did not conclude, GWRC risked:

    (a)    further damage to AGR's business arising from the poor financial condition of one of the joint venture partners; or

    (b)    the possibility of a forced sale by the secured creditor which is likely to further damage values.

12.5   The sale to Australian Gold Alliance Pty Ltd ("AGA") was for A$14.1 million. Until the collapse of HHRG, the board of GWRC advised that they had no intention of selling AGR, rather capitalising on merger discussions with other industry participants at a later point in time to leverage further value. The timeframe created by HHRG's collapse prevented the board of GWRC further exploring that option. The board of GWRC considered the value of AGR to be A$20 million. AGA was a major customer of AGR and forced the sale through at A$14.1 million on the basis that otherwise they would move their refining business elsewhere. GWRC therefore considers it has incurred consequential losses of A$6 million resulting from the forced sale of AGR.

## 13   FUTURE PROFITS

13.1   Prior to the collapse of HHRG, GWRC had been generating annual profits, as shown below:

|  | 2000 | 1999 | 1998 | 1997 | 1996 |
|---|---|---|---|---|---|
|  | A$'000 | A$'000 | A$'000 | A$'000 | A$'000 |
| Operating profit Before Abnormal Items and Income Tax | (3,952) | 6,424 | 6,671 | 3,129 | 643 |
| Abnormal Items Before Income Tax | (17,167) | (494) | 0 | (1,166) | 0 |
| Operating Profit / (Loss) Before Income Tax | (21,119) | 5,930 | 6,671 | 1,963 | 643 |
| Income Tax Expense / (Benefit) Attributable to Operating Profit | (23) | 2,536 | 2,655 | 1,135 | (146) |
| **Operating Profit After Tax** | **(A$21,096)** | **A$3,394** | **A$4,016** | **A$828** | **A$789** |

13.2   For the purposes of the assessment we have based the future maintainable earnings on the 1998 results as they were achieved prior to the HHRG's business being operated in a manner substantially inconsistent with its policy regarding foreign advances. HHRG's later results may therefore have been infected with transactions that were fraudulent.

13.3   As set out in section 8, the ASX quoted price for GWRC shares at 30 June 1998 was A$.66 per share, which when multiplied by shares on issue of 56,100,931 results in a market capitalization of A$37.0 million. This reflects an earnings multiple of 9.25 ($37.0m divided by profit after tax of $4.0m) which is conservative compared to earnings multiples of other comparable Australian entities listed on the ASX and supports the market capitalisation approach adopted.

**14      GUARANTEE CREDITOR CLAIMS & LIQUIDATION COSTS**

14.1    As stated earlier, guarantee claims of US$3,428,966 to CSFBI and PBGC of US$1.1 million being HHRG's debts guaranteed by GWRC. These amounts are subject to adjudication by the liquidator. The appropriate US$ / $A exchange rate is the rate at the date of appointment of the Administrators, being 17 August 2001 of 0.5244.

14.2    In addition, GWRC has incurred significant legal, accounting, Administration and Liquidation costs as a result of its insolvency. Attached as Annexure D is a schedule of receipts and payments during the period 17 August 2001 to 28 February 2005. Of the A$5.135 million payments made, A$1.278 million relates to costs resulting from the Administration/Liquidation of GWRC.

**15      SUMMARY OF LOSS COMPONENTS**

15.1    In summary, quantification of the components of the loss can be summarised as follows:

| Description | A$'000 |
|---|---|
| NMRS Penalty Interest pre August 2001 | Unknown |
| NMRS Hedge Loss | 1,470.0 |
| NMRS Interest post August 2001 | 1,019.3 |
| Loss of Investment in HHRG (exchange rate 0.62 used) US$30.7m | 49,516.1* |
| AGR Joint Venture Loss | 6,000.0* |
| Loss of Future Profits | * |
| CSFBI / PBGC Claims | 8,717.7 |
| Legal / Administration / Liquidation costs | 1,278.7 |
| **Total** | **A$66,256.1** |

*The value of HHRG and the AGR Joint Venture Loss reflect the lost future profits and therefore no additional amount is included.*

**16      CONCLUSION**

16.1    In our opinion, the market capitalisation of GWRC as at 30 June 1998, adjusted for control premium would amount to A$46.3 million  30 June 1998 would be the appropriate date to use as it is the date prior to the impact on HHRG of material foreign advances that were not in accordance with corporate policy.

16.2    GWRC's current asset deficiency of A$10.7 million is subject to determination of creditor claims. However, in the absence of further adjudication of claims it is the best estimate available.

16.3    In our opinion we consider that the loss suffered by GWRC resulting from the collapse of HHRG to be the creditor deficiency of A$10.7 million plus the market capitalisation value of A$46.3 million being A$57.0 million (US$35.3 m adopting the 30 June 1998 exchange rate of 0.62). This can be compared to the quantification of the components of the loss set out above totalling A$66.3 million (US$41.1 million).

FERRIER HODGSON

GARRY JOHN TREVOR
Partner

24 March 2005

**ANNEXURE A**

**Curriculum Vitae – Garry Trevor**



**Partner**

Ferrier Hodgson (WA)

Level 26, 108 St George's Terrace

PERTH WA 6000

Tel: (08) 9214 1444

Fax: (08) 9214 1400

Email: gtrevor@p erth.fh.com.au

Garry has in excess of 30 years professional experience and 25 years of restructuring and corporate recovery experience in numerous significant matters acting for debtors and lenders.

Garry began his career at Coopers & Lybrand, in 1973, and has worked in the Perth, London and Papua New Guinea offices. In 1978 Garry joined Pannel Kerr Forster, specialist Insolvency Division and was admitted into partnership in 1981. In 1989 Garry was the joint founding partner of Ferrier Hodgson, Perth.

Garry has gained a wide degree of experience working on some of the largest corporate assignments in Australia and internationally, across a broad range of differing industries in the areas of:

- Financial Due Diligence
- Investigation Accountant
- Litigation Support
- Reconstruction and turnaround
- Corporate Recovery
- Insolvency Management

In doing so, Garry has acted in various appointment roles as Administrator, Receiver and Manager and Liquidator, as well as in numerous significant workout situations assisting troubled companies and lenders in complex debt restructuring and recovery assignments.

Garry has had significant assignment experience in:

- mining
- large scale agribusiness
- Construction and property

Some of Garry's relevant professional experience includes:

**Audit Assurance:**

Five years supervising in audit work of listed public companies.

**ANNEXURE A (Continued)**

**Insolvency Administration:**

Twenty five years experience in all facets of financial services including hundreds of insolvency administrations ranging from the largest corporate failures to personal bankruptcy.

Garry has been actively involved in many large listed corporate insolvencies and reconstructions, including Bond Corporation Holdings Limited, Pennant Holdings Limited, Western Equity Ltd, Western Continental Corporation Ltd, Sumich Group Limited, Annaconda Nickel Limited, General Gold NL, Beaconsfield Gold NL, Pasminco Ltd, Selwyn Mines NL, Arimco Mining NL, Q-Vis Limited, Western Metals Ltd and Sons of Gwalia Limited.

In addition to the above assignments Garry has advised financiers and bondholders in relation to a major nickel laterite project in Western Australia over a period of 2 years.

**Due Diligence and Investigating Accountant:**

Extensive experience in pre lending reviews for most Australian trading banks and in conducting financial investigations on behalf of individual Banks and syndicates of Banks and in preparation of reports for financial institutions in relation to security values.

Extensive experience in conduct of statutory investigations into the affairs of corporate entities and preparation of reports to statutory bodies regarding contraventions of the Corporations Act, and other offences.

**Litigation Support:**

Experience as an expert accounting witness in prosecutions on behalf of prosecutors and defendants.

Experience as an expert accounting witness particularly on matters of solvency.

Experience in preparation of reports on business solvency and values.

**Presentations:**

Garry has presented numerous papers at seminars on behalf of the Institute of Chartered Accountants, the Australian Society of Certified Practising Accountants, the Insolvency Practitioners' Association of Australia and the Australian Institute of Credit Management on topics related to insolvency, financial and credit management.

Garry was also a guest lecturer and tutor on personal and corporate insolvency related topics in the Commerce Faculty at the University of Western Australia.

Garry's significant wealth of experience enables him to offer clients a practical, commercial and pragmatic approach to situations involving financial assessment and distress.

**ANNEXURE A (Continued)**

**Qualifications:**

University of Western Australia Bachelor of Commerce

Fellow of the Institute of Chartered Accountants in Australia

Associate of the Australian Society of Certified Practising Accountants

Associate of the Insolvency Practitioners' Association of Australia

Registered Company Liquidator

Official Liquidator of the Supreme Court of Western Australia

Registered Trustee in Bankruptcy in the Federal Court of Australia

Registered Company Auditor

Registered Tax Agent

**ANNEXURE A (Continued)**

**Curriculum Vitae – Ian Hobsonr**



**Director**

Ferrier Hodgson (WA)

Level 26, 108 St George's Terrace

PERTH WA 6000

Tel: (08) 9214 1444

Fax: (08) 9214 1400

Email: ihobson@perth.fh.com.au

Ian is a Director in the Perth practice of Ferrier Hodgson and has 17 years experience in corporate insolvency.

Ian's experience includes a large number of complex insolvency assignments in the following areas:

- Reconstruction and re-listing public companies
- Corporate Recovery
- Investigating Accountant
- Insolvency Management
- Litigation Support, Loss Quantification and Forensic Investigation
- Due diligence
- Valuation

Ian has worked in London and Toronto and his industry experience includes:

- Technology
- Property
- Hospitality
- Engineering
- Manufacturing, wholesale and retail
- Financial services
- Mining
- Mining Services
- Agriculture
- Motor vehicle dealerships

**Re-construction and re-listing:**    Involved in the reconstruction and re-listing of a number of public companies that worked through receivership / administration to a position of solvency.

**Insolvency Management:** Managed many large corporate insolvencies involving the sale of the business or assets, investigation into insolvent transactions and directors actions, assessing causes of action available to creditors and settlement of complex litigation.

**ANNEXURE A (Continued)**

**Investigating Accountant:** Undertaken numerous investigations on behalf of Banks and syndicates and prepared reports in relation to complex trading issues, security values, review of forecasts and turnaround strategies. Worked with a number of financial institutions to monitor and report on impaired assets and to recommend courses of action.

**Litigation Support:** Experience as an expert accounting witness in the determination of loss quantification, experience as an expert accounting witness particularly on matters of solvency and experience in preparation of reports on business solvency and values.

**Due Diligence & Valuations** Experience in valuation and due diligence assignments whilst at PricewaterhouseCoopers including serving on a due diligence committee for 12 months to assist a financier with the sale of a major property development.

Valued and sold many of businesses both on going concern and break up basis.

**Presentations:** Presented professional papers at seminars and client functions, conducted tutorials for the past eight years for the Institute of Company Directors, presented papers for the Australian Society of CPA's and for the Securities Institute.

**Examples of Ian's relevant experience**

- Ian managed the Liquidation of Golden West Refining Corporation Ltd. Ian was responsible for the management of the administration which involved working with legal counsel to assess the potential causes of action available to creditors to pursue in an attempt to recover. The review of the causes of action encompassed a detailed review of complex issues and making a recommendation to creditors.

- Ian undertook a review and performed an ongoing monitoring role of an Australian public listed mining services provider (services in Australia and overseas involving 11 operating subsidiaries) – reporting to the debtor's primary financier concerning the workout of loan and hedge exposures. The review included the initial reasonableness assessment of the profit forecasts of the company and, subsequently, an ongoing monitoring role of performance.

- In 2002 Ian conducted a detailed review of a privately held entity who is a major wholesaler of fruit and vegetables – reporting as Investigating Accountant to the Group's key financiers, which required the reasonableness assessment of the groups solvency position, profit and cashflow forecasts. The outcome led to equity participation by a 3rd party and repayment of 100% of all creditors.

- Ian served on a due diligence committee for 12 months assisting the secured lender of Mindarie Quays (a major Perth residential development and marina) with the disposal of the development to a consortium of investors.

- In 2003, Ian managed the Voluntary Administration of Q-Vis Ltd which resulted in a successful capital restructure and re-listing of the company to the ASX.

**ANNEXURE A (Continued)**

- Ian managed the divestiture and restructure of a substantial private corporate entity involving complex taxation issues and the voluntary winding up of subsidiary companies.

- In Canada, Ian managed the Receivership of a major home products distribution company that resulted in a sale of the business and repayment of the secured lenders debt in full. In Canada, Ian also undertook the due diligence and sale process of a major Calgary office tower.

**ANNEXURE B**

**Listing of the Daily Share Price for the Period 1 July 1999 to 23 February 2000**

| Date | Close | Date | Close | Date | Close | Date | Close |
|------|-------|------|-------|------|-------|------|-------|
| 01-Jul-99 | 0.70 | 10-Sep-99 | 0.60 | 16-Nov-99 | 0.64 | 06-Jan-00 | 0.61 |
| 02-Jul-99 | 0.70 | 13-Sep-99 | 0.60 | 17-Nov-99 | 0.64 | 07-Jan-00 | 0.61 |
| 05-Jul-99 | 0.70 | 14-Sep-99 | 0.60 | 18-Nov-99 | 0.64 | 08-Jan-00 | 0.61 |
| 06-Jul-99 | 0.70 | 15-Sep-99 | 0.60 | 19-Nov-99 | 0.60 | 09-Jan-00 | 0.61 |
| 07-Jul-99 | 0.70 | 16-Sep-99 | 0.60 | 20-Nov-99 | 0.60 | 10-Jan-00 | 0.61 |
| 08-Jul-99 | 0.70 | 17-Sep-99 | 0.60 | 21-Nov-99 | 0.60 | 11-Jan-00 | 0.61 |
| 09-Jul-99 | 0.65 | 20-Sep-99 | 0.60 | 22-Nov-99 | 0.60 | 12-Jan-00 | 0.61 |
| 12-Jul-99 | 0.65 | 21-Sep-99 | 0.60 | 23-Nov-99 | 0.60 | 13-Jan-00 | 0.61 |
| 13-Jul-99 | 0.65 | 22-Sep-99 | 0.60 | 24-Nov-99 | 0.60 | 14-Jan-00 | 0.61 |
| 14-Jul-99 | 0.65 | 23-Sep-99 | 0.60 | 25-Nov-99 | 0.60 | 15-Jan-00 | 0.61 |
| 15-Jul-99 | 0.65 | 24-Sep-99 | 0.60 | 26-Nov-99 | 0.60 | 16-Jan-00 | 0.61 |
| 16-Jul-99 | 0.65 | 27-Sep-99 | 0.62 | 27-Nov-99 | 0.60 | 17-Jan-00 | 0.61 |
| 19-Jul-99 | 0.65 | 28-Sep-99 | 0.62 | 28-Nov-99 | 0.60 | 18-Jan-00 | 0.61 |
| 20-Jul-99 | 0.65 | 29-Sep-99 | 0.66 | 29-Nov-99 | 0.62 | 19-Jan-00 | 0.61 |
| 21-Jul-99 | 0.65 | 30-Sep-99 | 0.66 | 30-Nov-99 | 0.62 | 20-Jan-00 | 0.61 |
| 22-Jul-99 | 0.65 | 01-Oct-99 | 0.60 | 01-Dec-99 | 0.62 | 21-Jan-00 | 0.55 |
| 23-Jul-99 | 0.65 | 04-Oct-99 | 0.60 | 02-Dec-99 | 0.62 | 22-Jan-00 | 0.55 |
| 26-Jul-99 | 0.65 | 05-Oct-99 | 0.60 | 03-Dec-99 | 0.62 | 23-Jan-00 | 0.47 |
| 27-Jul-99 | 0.60 | 06-Oct-99 | 0.60 | 04-Dec-99 | 0.62 | 24-Jan-00 | 0.47 |
| 28-Jul-99 | 0.60 | 07-Oct-99 | 0.60 | 05-Dec-99 | 0.62 | 25-Jan-00 | 0.47 |
| 29-Jul-99 | 0.60 | 08-Oct-99 | 0.60 | 06-Dec-99 | 0.62 | 26-Jan-00 | 0.47 |
| 30-Jul-99 | 0.60 | 11-Oct-99 | 0.60 | 07-Dec-99 | 0.62 | 27-Jan-00 | 0.47 |
| 02-Aug-99 | 0.60 | 12-Oct-99 | 0.60 | 08-Dec-99 | 0.60 | 28-Jan-00 | 0.47 |
| 03-Aug-99 | 0.60 | 13-Oct-99 | 0.60 | 09-Dec-99 | 0.60 | 29-Jan-00 | 0.47 |
| 04-Aug-99 | 0.60 | 14-Oct-99 | 0.60 | 10-Dec-99 | 0.60 | 30-Jan-00 | 0.47 |
| 05-Aug-99 | 0.60 | 15-Oct-99 | 0.60 | 11-Dec-99 | 0.60 | 31-Jan-00 | 0.47 |
| 06-Aug-99 | 0.60 | 18-Oct-99 | 0.60 | 12-Dec-99 | 0.60 | 01-Feb-00 | 0.47 |
| 09-Aug-99 | 0.60 | 19-Oct-99 | 0.60 | 13-Dec-99 | 0.60 | 02-Feb-00 | 0.47 |
| 10-Aug-99 | 0.60 | 20-Oct-99 | 0.60 | 14-Dec-99 | 0.60 | 03-Feb-00 | 0.47 |
| 11-Aug-99 | 0.60 | 21-Oct-99 | 0.60 | 15-Dec-99 | 0.60 | 04-Feb-00 | 0.47 |
| 12-Aug-99 | 0.60 | 22-Oct-99 | 0.60 | 16-Dec-99 | 0.60 | 05-Feb-00 | 0.47 |
| 13-Aug-99 | 0.60 | 25-Oct-99 | 0.60 | 17-Dec-99 | 0.61 | 06-Feb-00 | 0.47 |
| 16-Aug-99 | 0.60 | 26-Oct-99 | 0.61 | 18-Dec-99 | 0.61 | 07-Feb-00 | 0.47 |
| 17-Aug-99 | 0.60 | 27-Oct-99 | 0.61 | 19-Dec-99 | 0.61 | 08-Feb-00 | 0.47 |
| 18-Aug-99 | 0.60 | 28-Oct-99 | 0.60 | 20-Dec-99 | 0.61 | 09-Feb-00 | 0.40 |
| 19-Aug-99 | 0.60 | 29-Oct-99 | 0.60 | 21-Dec-99 | 0.61 | 10-Feb-00 | 0.40 |
| 20-Aug-99 | 0.60 | 01-Nov-99 | 0.61 | 22-Dec-99 | 0.61 | 11-Feb-00 | 0.48 |
| 23-Aug-99 | 0.60 | 02-Nov-99 | 0.61 | 23-Dec-99 | 0.61 | 12-Feb-00 | 0.48 |
| 24-Aug-99 | 0.60 | 03-Nov-99 | 0.60 | 24-Dec-99 | 0.61 | 13-Feb-00 | 0.48 |
| 25-Aug-99 | 0.62 | 04-Nov-99 | 0.60 | 25-Dec-99 | 0.61 | 14-Feb-00 | 0.48 |
| 26-Aug-99 | 0.60 | 05-Nov-99 | 0.60 | 26-Dec-99 | 0.61 | 15-Feb-00 | 0.48 |
| 27-Aug-99 | 0.60 | 06-Nov-99 | 0.60 | 27-Dec-99 | 0.61 | 16-Feb-00 | 0.48 |
| 30-Aug-99 | 0.60 | 07-Nov-99 | 0.60 | 28-Dec-99 | 0.61 | 17-Feb-00 | 0.48 |
| 31-Aug-99 | 0.60 | 08-Nov-99 | 0.60 | 29-Dec-99 | 0.61 | 18-Feb-00 | 0.48 |
| 01-Sep-99 | 0.60 | 09-Nov-99 | 0.60 | 30-Dec-99 | 0.61 | 19-Feb-00 | 0.48 |
| 02-Sep-99 | 0.60 | 10-Nov-99 | 0.60 | 31-Dec-99 | 0.61 | 20-Feb-00 | 0.48 |
| 03-Sep-99 | 0.60 | 11-Nov-99 | 0.60 | 01-Jan-00 | 0.61 | 21-Feb-00 | 0.48 |
| 06-Sep-99 | 0.60 | 12-Nov-99 | 0.60 | 02-Jan-00 | 0.61 | 22-Feb-00 | 0.48 |
| 07-Sep-99 | 0.60 | 13-Nov-99 | 0.60 | 03-Jan-00 | 0.61 | 23-Feb-00 | 0.36 |
| 08-Sep-99 | 0.60 | 14-Nov-99 | 0.60 | 04-Jan-00 | 0.61 | | |
| 09-Sep-99 | 0.60 | 15-Nov-99 | 0.60 | 05-Jan-00 | 0.61 | | |

**ANNEXURE B (Continued)**



**ANNEXURE C**

**Market Capitalisation**

Determination of the Market Capitalisation using the weighted average of the share price for the months of December 1999 through February 2000 based on the share sales for that period.

| Date | Close | Volume | Sale | Shares on Issue | Market Capitalisation |
|---|---|---|---|---|---|
| | A$ | | A$ | | A$ |
| 07-Dec-99 0.6 | 2 | 50,000 | 31,000 | | |
| 08-Dec-99 0.6 | 0 | 13,482 | 8,089 | | |
| 17-Dec-99 0.6 | 1 | 2,000 | 1,220 | | |
| Total | | 65,482 | 40,309 | | |
| December 1999 Weighted Average | | | 0.62 | 57,162,898 | $35,188,154 |

| Date | Close | Volume | Sale | Shares on Issue | Market Capitalisation |
|---|---|---|---|---|---|
| | A$ | | A$ | | A$ |
| 21-Jan-00 | 0.55 | 9,000 | 4,950 | | |
| 23-Jan-00 | 0.47 | 5,000 | 2,350 | | |
| Total | | 14,000 | 7,300 | | |
| January 2000 Weighted Average | | | 0.52 | 57,162,898 | $29,806,368 |

| Date | Close | Volume | Sale | Shares on Issue | Market Capitalisation |
|---|---|---|---|---|---|
| | A$ | | A$ | | A$ |
| 01-Feb-00 | 0.47 | 30,000 | 14,100 | | |
| 09-Feb-00 | 0.40 | 10,000 | 4,000 | | |
| 10-Feb-00 | 0.40 | 10,000 | 4,000 | | |
| 11-Feb-00 | 0.48 | 576 | 276 | | |
| 23-Feb-00 | 0.36 | 9,300 | 3,348 | | |
| Total | | 59,876 | 25,724 | | |
| February 2000 Weighted Average | | | 0.43 | 57,162,898 | $24,558,852 |

| 3 Month Weighted Average | | | 0.53 | 57,162,898 | $30,080,553 |
|---|---|---|---|---|---|

**ANNEXURE D**

**Summary of Receipts and Payments**

Schedule of receipts and payments for the period 17 August 2001 to 28 February 2005:

| | Total | Administration / Liquidation Costs |
|---|---|---|
| | A$'000 | A$'000 |
| **Receipts** | | |
| Bank Interest | 74.6 | 74.6 |
| Cash at Bank | 48.6 | 48.6 |
| HHRG Dividend | 394.8 | 394.8 |
| In Specie Distribution - GWA | 5,036.1 | 5,036.1 |
| Loan from GWA | 810.0 | 810.0 |
| Miscellaneous Income | 13.5 | 13.5 |
| Plant & Equipment | 13.3 | 13.3 |
| Refunds | 70.4 | 70.4 |
| GST Clearing Account | 12.2 | 12.2 |
| **Total Receipts** | 6,456.1 | 6,456.1 |
| **Payments** | | |
| Administrators Disbursements | 8.0 | 8.0 |
| Administrators Fees | 113.6 | 113.6 |
| Deed Administrators Disbursements | 4.1 | 4.1 |
| Deed Administrators Fees | 324.9 | 324.9 |
| Liquidators Remuneration | 27.8 | 27.8 |
| Bank Charges | 1.9 | 1.9 |
| Circular Expenses | 1.6 | 1.6 |
| Employee Entitlements | 326.6 | - |
| Filing Fee | 1.1 | 1.1 |
| GST Clearing Account | 12.6 | - |
| Insurance | 18.6 | 18.6 |
| Legal Fees | 396.1 | 396.1 |
| PAYG Withholding | 83.3 | 83.3 |
| Payment to Secured Creditor | 3,517.5 | - |
| Payroll Tax | 27.3 | 27.3 |
| Petty Cash | 0.3 | 0.3 |
| Photocopying | 3.3 | 3.3 |
| Professional Fees | 131.8 | 131.8 |
| Redirection of Mail | 0.8 | 0.8 |
| Reimbursement of Expenses | 9.7 | 9.7 |
| Relocation Costs | 4.9 | 4.9 |
| Rental Expenses | 14.4 | 14.4 |
| Stamp Duty | 0.9 | 0.9 |
| Stationery | 0.5 | 0.5 |
| Statutory Costs | 2.6 | 2.6 |
| Storage Costs | 13.2 | 13.2 |
| Sundry Expenses | 2.1 | 2.1 |
| Superannuation | 0.4 | 0.4 |
| Transport / Courier | 36.5 | 36.5 |
| Wages & Salaries | 49.0 | 49.0 |
| **Total Payments** | 5,135.4 | 1,278.70 |
| **Cash at Bank as at 28 February 2005** | 1,320.7 | 5,177.40 |