## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GOLDEN WEST REFINING CORPORATION LIMITED, | : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 3:02 CV 1379 (MRK) |
| VS. | : : | |
| PRICEWATERHOUSECOOPERS LLP and COOPERS & LYBRAND LLP, | : : | |
| Defendants. | : | |
| ALEC SHARP, et al., | : | |
| Plaintiff, | : : | CIVIL ACTION NO. 3:02 CV 1572 (MRK) |
| VS. | : : | |
| PRICEWATERHOUSECOOPERS LLP d/b/a PRICE WATERHOUSE LLP, | : : | |
| Defendant. | : | |
| HANDY & HARMAN REFINING GROUP, INC., | : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 3:02 CV 1803 (MRK) |
| VS. | : : | |
| PRICEWATERHOUSECOOPERS LLP, | : | September 2, 2005 |
| Defendant. | : | |

**PRICEWATERHOUSECOOPERS LLP'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO PRECLUDE THE EXPERT TESTIMONY OF R. GENE BROWN**

Defendant PricewaterhouseCoopers LLP ("PwC") respectfully submits this memorandum of law in opposition to Plaintiffs' Motion to Preclude Expert Testimony of R. Gene Brown.

**PRELIMINARY STATEMENT**

PwC seeks to offer the expert testimony of Dr. Brown, a superbly qualified and seasoned business executive and educator, and a current and former director of numerous public and privately-held companies. He will opine that the HHRG and GWRC Boards of Directors failed to act in a way in which reasonably prudent boards should have acted, and that such negligence was a substantial factor in the losses incurred by the two companies. This testimony meets the applicable criteria under Federal Rules of Evidence 702 and 703. Exclusion of Dr. Brown's expert testimony would constrain PwC's ability to demonstrate at trial that the negligence of the Boards of Directors was a substantial factor in causing the losses allegedly sustained by the companies they served. Even if the jury were to conclude that PwC negligently performed its audit work, and even if the jury concluded that such negligence proximately caused provable damages to plaintiffs, the comparative negligence of each of the plaintiffs will then become the focal point of the trial and, presumably, of jury deliberations.

Plaintiffs, the bankrupt Handy & Harman Refining Group ("HHRG"), its subrogees Alec Sharp et al. ("Underwriters") and its corporate parent Golden West Refining Corporation ("GWRC"), allege that PwC failed to detect and report to the boards of HHRG and GWRC certain conditions that the plaintiffs claim led to demise of HHRG and, in turn, GWRC. Among its many defenses, PwC's asserts that HHRG and GWRC, acting in part through their boards of directors, were contributorily negligent in failing to oversee HHRG and implement procedures that would have prevented its losses, which substantially contributed to the demise of HHRG and GWRC. Dr. Brown will testify that based on his expertise in the field of corporate governance, the boards of directors of HHRG and GWRC neglected their most fundamental obligation to

oversee HHRG's operation, substantially contributing to the losses flowing from HHRG's transactions with Panexim.

Plaintiffs move to exclude Dr. Brown's testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) as unreliable, lacking necessary qualifications, and unhelpful to the trier of fact. Contrary to plaintiffs' argument, Dr. Brown's testimony satisfies the reliability criterion, because his testimony relies on his in-depth experience relating to corporate governance and oversight, and on customs and practices commonly employed by boards of directors. By virtue of his credentials, experiences and education, Dr. Brown is qualified to testify to the factual issues underpinning PwC's comparative negligence defense.

Plaintiffs' attack on Dr. Brown's testimony as "unhelpful" also must fail. To muddy the waters, Plaintiffs contend that Dr. Brown intends to testify to a legal standard of director liability, rather than any factual issue regarding what a board of directors, acting prudently, should have done to prevent losses. This argument purposefully twists the nature of the comparative negligence defense employed by PwC. To be sure, individual directors must act "with the care an ordinarily prudent person in a like position would exercise under similar circumstances," but directors cannot be held personally "liable" even for failure to act prudently if such actions were performed in "good faith" and in a manner the director "reasonably believes to be in the best interests of the corporation." Conn. Gen. Stat. §§ 33-756(a) (2005). But PwC does not offer Dr. Brown to testify to the applicable legal standard of care an individual director. Rather, Dr. Brown's testimony embraces the statutory definition, and will address exactly what an ordinarily prudent director serving HHRG and GWRC should have done under the circumstances to oversee the operations and management of HHRG, in order to prevent the Panexim related losses.

Dr. Brown's testimony will assist the jurors in assessing PwC's comparative negligence defense, by explaining what defines prudent behavior for boards of directors and the manners in which the boards of HHRG and GWRC fell short of performing their duties under the circumstances here. Dr. Brown does not, and need not, testify that any particular board member acted negligently, but rather only that the two boards, each acting as a whole, failed to act in a reasonably prudent matter. This is exactly the type of issue that demands expert testimony in order to inform the jury as to what a "reasonably prudent board" would have done under the circumstances. Otherwise, the jury has no basis to guide its evaluation of the boards' conduct when considering PwC's comparative negligence defense. A jury cannot, from its own collective experience, evaluate what a board of directors, acting prudently, is expected to do.

Plaintiffs imply that because Conn. Gen. Stat. § 33-756(e) insulates directors from liability when they make decisions in "good faith" and in the "best interests" of the corporation, no comparative negligence can be allocated to HHRG and GWRC based on the failure of their respective boards to act prudently. This argument is nonsense. While Conn. Gen. Stat. § 33-756(d) insulates directors from personal liability for decisions they make in good faith and in the best interests of the company, a decision of a board member could satisfy the "good faith" and "best interests" standards to absolve them of personal liability, while their negligence can nonetheless be imputed to GWRC and HHRG to serve as basis for a finding of comparative negligence. Any alternative legal principle would absolve GWRC and HHRG of any responsibility for negligence of their boards of directors that contributed to the losses they sustained. And neither PwC, nor apparently plaintiffs, have found any case law so holding.

**FACTUAL BACKGROUND**

HHRG was in the business of refining precious metals from August 1996 until March 28, 2000, when it filed a voluntary petition for bankruptcy relief under Chapter 11.[1] Plaintiffs have asserted claims against PwC for breach of contract, malpractice-negligence and negligent misrepresentation, each of which is grounded on the theory that PwC, as HHRG's outside auditor, knew or should have known that several of HHRG's officers and employees engaged in a fraudulent scheme with a South American entity named Panexim S.A. that involved the purchase of gold and the advancement of funds to finance those purchases. Based on PwC's alleged conduct, Underwriters claim that they are entitled to damages of about $15.8 million; and HHRG seeks damages of about US $31 million representing the alleged value of its business as of June 30, 1998. GWRC also claims damages for an additional amount of $6.6 million representing the alleged creditor deficiency in its Australian insolvency proceeding.

One of PwC's defenses is that HHRG's management and the boards of directors of GWRC and HHRG, acting on those companies' behalf, were negligent in fulfilling their responsibilities to oversee HHRG's operations, and that such negligence was a proximate cause of the alleged losses claimed by each plaintiff. To support this comparative negligence defense, PwC designated Dr. Brown as an expert witness. In his report dated July 7, 2005, Dr. Brown opined that the management of HHRG and the boards of directors of GWRC and HHRG were negligent in the performance of their responsibilities.[2] An experienced educator and long-time board member of numerous companies, Dr. Brown holds a PhD in Business Management.[3]

---

[1] (HHRG Compl. ¶¶ 2, 12.)

[2] (Expert Report of R. Gene Brown, dated July 7, 2005 (hereafter, the "Brown Report").)

[3] (Brown Report, App. A.)

During his distinguished career, Dr. Brown taught as an associate professor at Stanford Business School and as an assistant professor at Harvard Business School. He has served on the boards of directors of thirteen corporations. These include Advanced Micro Devices, a large New York Stock Exchange-listed company, where Dr. Brown served as chair of the compensation committee, chair of the audit committee, and member of the executive committee. They also include a French corporation, Societe Francaise de Recherche Technologique. He has testified as an expert witness numerous times on issues of corporate governance and on matters related to the adequacy of the performance of a director or a board of directors.[4]

Dr. Brown expects to testify here as to the general responsibilities of board members and the ways in which the boards of GWRC and HHRG fell short of fulfilling those responsibilities. Specifically, Dr. Brown sets forth a non-exhaustive list of commonly understood, non-controversial responsibilities of a board of directors that include setting goals and objectives for a corporation, providing broad strategic directions as to how those goals and objections should be achieved, assuring that the necessary human and financial resources are provided, setting policies and procedures to govern management performance, communicating all of this to management, measuring and rewarding performance, exercising due care in overseeing the business management and operations of a company.[5] Dr. Brown will testify that in performing these tasks, directors must use their business judgments in considering the alternative choices, must do their homework and perform due diligence, and must inform

---

[4] (*Id.*)

[5] (Brown Report at 3-4.)

themselves of the facts surrounding their decisions to communicate the results of their deliberations to make sure that their guidance is properly followed.[6]

Dr. Brown's Report (and anticipated testimony) highlights what in his judgment are monumental failures on part of HHRG management and on the part of the boards of both GWRC and HHRG in overseeing HHRG. In particular, Dr. Brown notes that the GWRC board (i) remained in the dark regarding HHRG's operations and business risks in Peru and neglected to place restrictions, limits and controls on the company's activities there;[7] (ii) failed to recognize that Panexim became HHRG's biggest customer, and neither requested nor reviewed materials sufficient to know and understand the nature of HHRG's relationship with Panexim;[8] (iii) failed to implement a formal reporting system with satisfactory internal controls that would have precluded confusion and contradictions arising from oral presentations to the Board;[9] and (iv) failed to establish a corporate governance policy.[10] Among other glaring failures, Dr. Brown points out that GWRC representatives on the HHRG Board did not regularly attend HHRG Board meetings, that there was no reliable channel of communication from HHRG management to its Board or from HHRG to GWRC,[11] and the failure to monitor and enforce compliance by GWRC board members who sat on the HHRG board.

With respect to the HHRG's Board's negligence, Dr. Brown points out that the HHRG board (i) did not insist that the management of the company design, implement and

---

[6] (*Id.* at 4.)

[7] (*Id.* at 5.)

[8] (*Id.* at 7.)

[9] (*Id.* at 9.)

[10] (*Id.* at 11-12.)

[11] (*Id.* at 13-14.)

monitor a rigorous internal control system essential to ensure that a company's assets are properly used and safeguarded,[12] (ii) remained ignorant as to the business relationship with Panexim despite recognizing the obvious risks of doing business in South America,[13] (iii) failed to insist on a timely hiring of a Chief Financial Officer, which impeded its ability to understand HHRG's business operations and to exercise reasonable care,[14] (iv) did not timely implement a profit center reporting system,[15] and (v) failed to diligently attend meetings in person.[16]  For the reasons that follow, Dr. Brown should be allowed to offer his opinions to the jury.

## ARGUMENT

**I.     STANDARD FOR ADMISSION OF EXPERT TESTIMONY**

Under Rule 702 of the Federal Rules of Evidence, an expert may testify as to any scientific, technical, or other specified knowledge that "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  Rule 702 embodies a standard of admissibility of expert opinions that is liberal, representing a departure from the previously widely followed more restrictive standard of *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923).  *See, e.g., Nimely v. City of New York,* No. 04-3240-CV, 2005 U.S. Dist. LEXIS 12712, at *11-12 (2nd Cir. June 27, 2005)(attached as Ex. 1)(citing *Daubert,* 509 U.S. at 588).

---

[12] (*Id.* at 17-19.)

[13] (*Id.* at 22.)

[14] (*Id.* at 23.)

[15] (*Id.* at 24.)

[16] (*Id.* at 25.)

Under *Daubert* and its progeny, the court's function is to ensure that Dr. Brown's expert testimony will be helpful to the jury, that it will be reliable, and that Dr. Brown possesses necessary qualifications. *Nimely*, 2005 U.S. Dist. LEXIS 12712 at *11-12. Testimony that meets the standards of Rule 702 is still subject to the rigors of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof, [which provide] the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. 579, 596 (1993); *Amorgianos v. Nat'l R.R. Passenger Corp.,* 303 F.3d 256, 267 (2d Cir. 2002); *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir.1995) ("[Defendant's] quibble with [plaintiff's expert's] academic training … and his other alleged shortcomings … were properly explored on cross-examination and went to his testimony's weight….").

Dr. Brown's proposed testimony satisfies the requirements of all three *Daubert* components. The testimony meets the reliability test because Dr. Brown proposes to offer testimony based on his business experience. Dr. Brown's wealth of practical and academic experience exceeds the competency requirements of *Daubert*. In addition, Dr. Brown's testimony will assist the jury in presenting the normative duties of corporate directors and should therefore be admitted. Courts have commonly admitted expert testimony regarding performance of boards of directors because the nature and scope of such activities is not within the common experience of ordinary jurors. *Pereira v. Cogan,* 281 B.R. 194, 199-200 (S.D.N.Y. 2002); *see also Cary Oil Co. v. MG Ref. & Mktg., Inc.,* 2003 U.S. Dist. LEXIS 6150, at *14 (S.D.N.Y. April 11, 2003)(attached as Ex. 2)(admitting testimony of expert on corporate governance, finding it "crucial if the laymen jury is to understand the complex issues in this matter"). Experts may testify to matters that "'would help to clarify an issue calling for professional or technical

-9-

knowledge, possessed by the expert and beyond the ken of the typical juror.'" *Eze v. Senkowski*, 321 F.3d 110, 131 (2d Cir. 2003); *LinkCo, Inc. v. Fujitsu Ltd.,* No. 00 CIV 7242 (SAS), 2002 WL 1585551, at *5 (S.D.N.Y. July 16, 2002)(attached as Ex. 3)("Expert witness should be used to help the jury with issues that go beyond common understanding.")

In general, district courts have broad discretion in determining how to ascertain whether proffered expert testimony is admissible. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). Fed.R.Evid. 104(a) authorizes district courts to conduct pretrial evidentiary hearings in order to ascertain the admissibility of expert testimony. Fed.R.Evid. 104(a). While such hearings are not mandatory, the Second Circuit has characterized Rule 104(a) pretrial evidentiary hearings as 'highly desirable' because they allow parties to present expert evidence and conduct cross-examination of the proposed expert." *Colon ex rel. Molina v. Bic USA, Inc.*, 199 F.Supp.2d 53, 69 (S.D.N.Y. 2001) (quoting *Borawick v. Shay*, 68 F.3d 597, 608 (2d Cir. 1995)). Thus, to the extent the Court has any concerns about the admissibility of Dr. Brown's testimony, an evidentiary hearing would be appropriate.

## II.   DR. BROWN'S TESTIMONY IS RELIABLE

Dr. Brown's experience as an educator and board member provides ample basis to establish that his testimony is reliable. PwC does not seek to offer Dr. Brown's testimony on a scientific or technical subject. Instead, Dr. Brown will testify to the customs and practices of corporate directors in the business world and whether the boards of HHRG and GWRC failed to take action normally expected of corporate directors that would have prevented Panexim losses. In the context of testimony regarding a board's duties and standards of corporate governance, an expert's testimony based on personal experience meets the *Daubert* test. *Pereira,* 281 B.R. at 199-200; *see also McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1043 (2d Cir. 1995) (testimony

based on extensive practical experience passes *Daubert*); *Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.*, No. 98 Civ. 6907, 2001 U.S. Dist. LEXIS 10803, at *7 n.1 (S.D.N.Y. 2001) (attached as Ex. 4)("experience alone may provide a sufficient foundation for expert testimony."); Fed. R. Evid. 702 Advisory Committee Notes to 2000 Amendments ("The text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.")

      Plaintiffs' first challenge to the reliability of Dr. Brown's testimony asserts that his testimony is subjective and personal and lacks grounding in any "reliable legal, statutory or court-established standard of director conduct."[17] The *Pereira* case is particularly helpful in debunking this argument and delineating the permissible scope of expert testimony on the standards of practice of corporate directors. In *Pereira*, the trustee of a debtor, Trace, sued the company's former directors for breach of fiduciary duty. 281 B.R. at 195. The trustee proffered the testimony of an experienced executive about the standards of corporate governance. *Id.* Based on his experience and relying on established principles of corporate governance, the expert was asked to testify that the company's board failed to discharge its fundamental oversight responsibilities and duty of care in managing Trace's business and affairs. *Id.* at 197. Defendants there, as if supplying the script for Plaintiffs here, argued that the expert's reliance on custom and his own personal experience fell short of meeting the *Daubert* test. *Id.* at 200. The court rejected that argument, holding that although the expert could not testify as to the ultimate issue in the case, the exhaustive list of good corporate practices would be useful to the finder of fact, and that the expert's thirty years experience in the corporate field provides a

---

[17] (Pls.' Mem. at 9.)

reliance foundation for his opinions on good corporate governance. *Id.* For the same reasons, Plaintiffs' challenge to the admission of Dr. Brown's testimony has no merit.

Plaintiffs also argue that Dr. Brown's testimony must be excluded because, they assert, it is not subject to peer review, untestable and not based on facts that can be analyzed, tested and cross-examined. That is not the issue in this case, where testimony relies on general expertise in the field of corporate governance. The Supreme Court explained in *Kumho Tire* that the *Daubert* list of factors bearing on reliability is non-exclusive and that each factor need not be applied in every case. *Kumho Tire Co.*, 526 U.S. at 152. Instead, it is clear that when an expert bases his testimony on professional experience, the judge's function is simply to ensure that he employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Id.* A trial court should only consider the specific factors identified in Daubert where they are reasonable measures of the reliability of expert testimony. *Id.* Therefore, Plaintiffs' reliance on these specific *Daubert* factors is misplaced.

Plaintiffs also assail Dr. Brown's opinion for its lack of recitation of specific authorities or treatises. There is no requirement that expert opinion rely on studies or cite to any authority. *Amorgianos,* 303 F.3d at 267 (requiring that expert testimony be based on published studies would be at odds with the liberal admissibility standards of the federal rules). As a general rule, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Like Plaintiffs' other challenges to admissibility, this challenge is baseless.

Lastly, Plaintiffs mischaracterize Dr. Brown's testimony as lacking support in any common industry standard.[18] In fact, Dr. Brown testified in his deposition that, in his experience, good management practices, including board duties and responsibilities, are derived from generally accepted business practices, some of which are rooted in corporate law.[19] Dr. Brown also testified that that the duties and responsibilities of a board are not driven by any state or federal law in the United States or any other country and are not dependent on a particular company's industry.[20] This is a matter of common sense. Board members are not selected based upon knowledge of the law of the state in which the corporation happens to be incorporated, but rather on the business, financial or industry acumen that they bring to bear. This is why Dr. Brown can serve (as he now does) on the board of a Delaware corporation (Advanced Micro Devices, Inc), a California corporation (Medepass, Inc.), and a French corporation (Societe Francaise de Recherche Technologique). Accordingly, this criticism of Dr. Brown's testimony is also misplaced.

### III. DR. BROWN QUALIFIES AS AN EXPERT ON CORPORATE GOVERNANCE BY VIRTUE OF HIS EDUCATION AND PRACTICAL EXPERIENCE

Dr. Brown is qualified to testify on corporate governance issues in this case, as he has in many other cases. As Dr. Brown describes in his Report, he has a PhD in Business Management and has taught a variety of management courses such as Business Policy, Small Business Management and Entrepreneurship at the Graduate Schools of Business of Harvard and

---

[18] (Pls.' Mem. at 10.)

[19] (Brown Dep. at 115:2-21.)

[20] (Brown Dep. at 143:18-144:4.)

Stanford Universities.[21]  He has served as a business executive in public and private corporations and on boards of numerous companies and has provided consulting and expert testimony in numerous cases involving corporate governance issues.[22]

Somewhat confusingly, Plaintiffs attempt to undermine Dr. Brown's expert qualifications by emphasizing his lack of knowledge "of Connecticut or Australian law relating to the role or duties of a director."[23]  This objection contradicts Plaintiffs' own recitation of multiple authorities, only three pages later in the brief that explicitly forbid expert testimony on legal issues.  Clearly, because Dr. Brown cannot testify as to legal issues in this case, his lack of knowledge as to the requirements of Connecticut or Australian law cannot disqualify him from offering testimony regarding the actions expected of reasonably prudent boards of directors.

The complaint about Dr. Brown's lack of experience in the precious metal refining business likewise misses the mark.  There is no requirement that an expert possess industry-specific knowledge.  While it is true that Dr. Brown lacks specific industry experience, that lack of experience is immaterial here.  Dr. Brown does not seek to testify regarding any specific process or procedure that is unique to the precious metals refining industry.  Rather, he plans to opine as to good governance practice in any business, and that the expectations, duties and responsibilities of boards of directors do not vary by industry.  If plaintiffs want to seek to undermine Dr. Brown's testimony about good corporate governance by pointing out that he has no precious metals industry experience, they can do so on cross-examination, and it will be for the jury to consider whether that is relevant.

---

[21] (Brown Report at 2. )

[22] (*Id.*)

[23] (Pls.' Mem. at 15, 16)

Moreover, many courts have refused to require specific industry experience as pre-requisite for admission of expert testimony. *In re Voluntary Purchasing Groups, Inc. Litig.*, Nos. 3:94-CV-2477-H, etc., 2000 U.S. Dist. LEXIS 18561 (N.D. Tex. Dec. 14, 2000)(attached as Ex. 5)(expert's testimony on standard of care admitted despite lack of narrow industry experience); *Voilas v. GMC*, 73 F. Supp. 2d 452, 454 (D.N.J. 1999) (expert's lack of "specific experience in the automotive industry or in creating or evaluating business plans does not impact upon his qualifications to review such plans and to summarize in a concise, easy to understand fashion GM's own analyses of the business options available to it"); *accord Beverly Hills Concepts v. Schatz & Schatz*, 247 Conn. 48, 717 A.2d 724 (1998) (refusing to impose a bright line rule that experts must possess prior industry-specific experience since industries may be segmented infinitesimally and professionals often transfer between industries). Accordingly, Dr. Brown's lack of experience in the precious metals industry or lack of knowledge about Australian or Connecticut law do not bear on his ability to testify as an expert in this case.

## IV. DR. BROWN'S TESTIMONY WILL ASSIST THE JURY IN EVALUATING WHETHER HHRG MANAGEMENT AND THE HHRG AND GWRC BOARDS WERE CONTRIBUTORILY NEGLIGENT

Plaintiffs lastly argue that Dr. Brown's testimony should be excluded because it "will not assist the trier of fact to understand the evidence or to determine a fact at issue."[24] In particular, plaintiffs advance two arguments: (1) Dr. Brown cannot testify concerning legal standards; and (2) the legal standard that Dr. Brown employs is itself incorrect. Plaintiffs' arguments are incorrect. Dr. Brown does not intend to testify as to issues of law, but rather only to the actions that an ordinarily prudent board of directors should have taken under the

---

[24] (*Id.* at 2.)

circumstances. While it is true that no alleged failure prudently to act could be the basis of individual liability of any board member (at least under Connecticut law), that is irrelevant in the context of assesing the contributory negligence of the boards of directors of HHRG and GWRC for purposes of apportioning any damages recovered in this case, or even to eliminate damages altogether if the jury finds that plaintiffs' contributory negligence exceeded 50%. *See* Conn. Gen. Stat. § 52-572h(b) (2005); *Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 584 657 A.2d 21 (1995) (comparative negligence doctrine applies to commercial losses as a matter of common law).

In his report and expected testimony, Dr. Brown opines as to the generally accepted practices of reasonably prudent corporate directors and the failure of HHRG and GWRC directors to engage in those practices. It is then for the jury to determine whether these boards were, based on that expert opinion, negligent and whether that negligence was a substantial factor in causing damage. Plaintiffs seemingly argue that Dr. Brown's failure to reference and apply Conn. Gen. Stat. § 33-756(a) and (c) dooms his testimony. This is simply wrong – and illogical. While individual directors might have complied with the minimum standard of care imposed on them by law to insulate them from personal liability, that does not mean that the corporation is absolved of any contributory negligence attributed to it by its board of directors' action or lack of action. To hold otherwise would elevate the <u>minimum standard</u> of conduct needed to protect against personal liability, to a <u>guideline</u> for reasonable care and prudent behavior as directors. This cannot be the case.

Here, defendant is not seeking to establish any director of HHRG and GWRC is personally liable for damages caused by his negligence. Instead, the issue is whether HHRG and GWRC were contributorily negligent in causing the Panexim losses. It is well-established that

negligent actions of agents are imputed to their principals, which would include actions (or inactions) of directors being attributed to the company for the purposes of contributory negligence. *See Goodspeed v. The East Haddam Bank,* 22 Conn. 530, 540 (1853); *Reider v. Arthur Andersen, LLP*, 47 Conn. Supp. 202, 210 (Conn. Super. 2001); *Comeau v. Grant Thornton*, 762 F. Supp. 1434, 1441-42 (D. Kan. 1991).

Plaintiffs' contention that Dr. Brown seeks to testify about a legal standard, rather than a factual issue, finds roots in their misunderstanding of the nature of the context of these issues. PwC does not assert claims for breach of duties on behalf of shareholders seeking to recover money damages from individual directors based on the actions or failure to act; such claims could be advanced, if at all, only by the HHRG bankruptcy trustee or the administrator of GWRC. Rather, PwC is entitled to establish that Plaintiffs, acting through management and/or their Boards of Directors, failed to exercise the reasonable care that was required in order to avoid the losses for which they seek to hold PwC solely responsible. Even if the jury concludes that PwC acted negligently, the contributory negligence of Plaintiffs may be dispositive of the claims if the jury concludes that the Plaintiffs were more than 50% responsible for their losses.

Dr. Brown's testimony will assist the jury in assessing this defense. Dr. Brown will testify regarding the general expectations of management and Board members, and specifically what a reasonably prudent manager or director should have done under the circumstances of this case to prevent Panexim losses. It is, indeed, for jury to decide whether the boards were negligent, and whether that negligence was a substantial factor on causing the losses. But a jury of lay persons has no more common knowledge about complex corporate governance issues than it does about what conduct was reasonably prudent for physicians, lawyers, or for that matter, auditors. This type of information is not within the common experience of a typical juror. *Cary*

*Oil Co*, 2003 WL 1878246, at *5; *Pereira v. Cogan,* 281 B.R. at 200 (permitting testimony with respect to whether conduct of boards of directors was reasonably prudent.).

Plaintiffs' citation to the old case of *Lippett v. Ashley,* 89 Conn. 451 (1915) illustrates the illogic of their argument. There, the Court accepted as given that the degree of care required of a director is the degree of care required of a reasonably prudent director. It then examined industry practice to glean what is the scope of that duty and what is actually required of corporate directors. The court held, in part, that "the reasonable care which the law requires of savings-bank directors is that degree of care which might be expected of reasonably prudent directors, having regard to the reasonable usages of the business." *Id*. at 475.

This is exactly the type of information that Dr. Brown seeks to provide to the jury here.[25] To the extent plaintiffs suggest that *Lippett* would require Dr. Brown to have served on the Board of a precious metals refining company, that is an absurdly narrow reading of the decision that would disqualify experienced directors like Dr. Brown in favor of far less qualified persons who happen to have served on a board in the same industry – in this case, a very small industry with few publicly traded companies. The reading also conflicts with the numerous state and federal court decisions (including *Beverly Hills Concepts v. Schatz & Schatz*) that have rejected a bright-line test requiring particular industry experience.

---

[25] Plaintiffs reliance on Judge Pollack's decision in *GST Telecommunications, Inc. v. Irwin*, 192 F.R.D. 109 (S.D.N.Y. 2000), also is misplaced. There, the court found that proffered expert witness testimony on the issue of attorney malpractice was not necessary based on the circumstances of the case, because the court could instruct the jury on matters of even foreign law and the jury could then evaluate the attorneys' conduct based on that instruction. The Court, therefore, held that no expert testimony was needed on the issues of law in the case. This is very different from the situation here. Without Brown's testimony regarding effective and prudent board behavior and corporate governance, the jury will not be equipped to evaluate whether the conduct of the HHRG and GWRC boards was prudent under the circumstances. In other, more

## V.    CONCLUSION

The Court should find that Dr. Brown's testimony satisfies the *Daubert* test, deny the Plaintiff's motion, and allow Dr. Brown to testify at trial.  Alternatively, the Court should conduct an evidentiary hearing at which PwC would be able to establish that Dr. Brown's fully complies with *Daubert*.

>                          DEFENDANT,
>                          PRICEWATERHOUSECOOPERS LLP
>
>
>                          By    /s/    Thomas D. Goldberg
>                                 David J. Elliott (ct 04301)
>                                 E-mail:  djelliott@dbh.com
>                                 Thomas D. Goldberg (ct 04386)
>                                 E-mail:  tdgoldberg@dbh.com
>                                 Day, Berry & Howard LLP
>                                 One Canterbury Green
>                                 Stamford, Connecticut 06901
>                                 Tel:  (203) 977-7300
>                                 Fax:  (203) 977-7301
>                                 Its Attorneys

---

simple, words, Brown's testimony is needed for the jury to assess whether the boards were contributory negligent.

## **CERTIFICATION OF SERVICE**

      I hereby certify that on September 2, 2005, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

      DEFENDANT,
PRICEWATERHOUSECOOPERS LLP

By    /s/ Thomas D. Goldberg
    David J. Elliott (ct 04301)
    Thomas D. Goldberg (ct 04386)
    Day, Berry & Howard LLP
    One Canterbury Green
    Stamford, Connecticut 06901
    Tel: (203) 977-7300
    Fax: (203) 977-7301
    Its Attorneys

| | |
|---|---|
| Edward J. Boyle, Esq.<br>Wilson, Elser, Moskowitz, Edelman & Dicker LLP<br>150 East 42nd St.<br>New York, NY 10017-5639 | William H. Champlin, III, Esq.<br>Michael T. McCormack, Esq.<br>William S. Fish, Jr., Esq.<br>Tyler Cooper & Alcorn, LLP<br>CityPlace - 35th Floor<br>185 Asylum Street<br>Hartford, CT 06103 |
| Daniel McMahon, Esq.<br>Stefan Dandelles, Esq.<br>Daniel E. Tranen, Esq.<br>Wilson, Elser, Moskowitz, Edelman & Dicker LLP<br>120 N. LaSalle Street<br>Chicago, IL 60602 | Fred N. Knopf, Esq.<br>Wilson, Elser, Moskowitz, Edelman & Dicker LLP<br>3 Gannett Drive<br>White Plains, NY 10604-3407 |
| Steven R. Humphrey (ct06053)<br>Dina S. Fisher (ct14896)<br>James M. Ruel (ct21222)<br>Robinson & Cole LLP<br>280 Trumbull Street<br>Hartford, CT 06103-3597 | Jed Horwitt, Esq.<br>Zeisler & Zeisler, P.C.<br>558 Clinton Ave.<br>P.O. Box 3186<br>Bridgeport, CT 06605-0186 |