UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GOLDEN WEST REFINING CORPORATION<br>Plaintiff<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS, LLP and<br>COOPERS & LYBRAND, LLP<br>Defendants | CIVIL ACTION NO.<br>3:02 CV 1379 (MRK) |
| ALEC SHARP, et al.<br>Plaintiffs<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS, LLP d/b/a<br>PRICE WATERHOUSE, LLP<br>Defendant. | CIVIL ACTION NO.<br>3:02 CV 1572 (MRK) |
| HANDY & HARMAN REFINING GROUP, INC.,<br>Plaintiff<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS, LLP,<br>Defendant | CIVIL ACTION NO.<br>3:02 CV 1803 (MRK) |

## AFFIDAVIT OF CRAIG ELSON

1. I am over the age of eighteen and believe in the meaning of the oath.

2. I have personal knowledge of the statements set forth herein, and they are true to the best of my knowledge and belief.

3. I am the Executive Vice President of LECG, LLC ("LECG") and the Managing Director of LECG's Chicago office. Attached as Exhibit A is my curriculum vitae and attached as Exhibit B is a current list of cases in which I have testified as an expert witness at deposition and/or trial.

4. I have previously submitted a valuation report that estimated the going concern value of Handy & Harman Refining Group, Inc. ("HHRG") as of June 30, 1998. In my report, I opined on the going concern value of HHRG based, in part, on projected profits for the fiscal years 1999 through 2003 and a corresponding terminal value. In developing the cash flows and terminal value upon which my opinion is based, I assumed that HHRG would have continued to operate as a going concern during this period and that it would have done so in compliance with its policy prohibiting unsecured advances to customers such as Panexim.

5. The cash flows upon which my opinion is based thus represent the profits that I believe HHRG would have been expected to earn based upon, among other things, continued adherence to HHRG's policies regarding unsecured advances after June 30, 1998.

6. As a result of the aforementioned analysis, and as more fully described in my previous report, I concluded that the June 30, 1998 going concern value of HHRG based in part upon the capitalized value of the profits the business would have been expected to earn was between $(US)28.9 million and $(US)30.7 million.

7. I have reviewed the affidavits of Sean Russo, Richard Hayes, and Didier Siffer, among other materials.

8. Based upon those materials, it is my understanding that HHRG contends that it was forced to liquidate and discontinue all operations as a going concern as a result of certain unsecured advances that were made by HHRG to Panexim.

9. I have been requested by counsel for HHRG to comment on the appropriate basis for the quantification of HHRG's economic damages resulting from

PricewaterhouseCooper's ("Defendant's") alleged wrongful conduct relating thereto.

10. The objective of a damages analysis is to make the Plaintiff economically whole, that is, to put the Plaintiff in the same economic position it would have enjoyed but-for, or absent, the alleged improper conduct. The Plaintiff may be made economically whole with respect to Defendant's alleged improper conduct by restoring to the Plaintiff, via a damages award, the lost economic value or the economic harm experienced by the Plaintiff. If, as has been alleged, HHRG was precluded from continuing to operate as a going concern as a direct result of the Defendant's alleged wrongful conduct and the company lost all of its value as a going concern, damages would be measured as the going concern value that was lost.

11. In determining the extent to which Plaintiff was economically harmed it is appropriate to consider the value of income producing assets that remain with the Plaintiff despite Defendant's alleged improper behavior. Therefore to quantify a damages amount ensuring that Plaintiff HHRG is made economically whole, damages may be measured as the difference between HHRG's determined going concern value *less* the liquidation value of the income-producing assets remaining with Plaintiff at liquidation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed _September 2_, 2005.

_Craig Elson_

H:\FISH\HANDY & HARMAN CLIENT\Pricewaterhouse\Elson Affidavit FINAL.doc

**Exhibit A**

## CRAIG T. ELSON

Craig T. Elson is the Executive Vice President and the Managing Director of LECG, LLC's Chicago office. Prior to joining LECG, Mr. Elson was a Senior Managing Director in the Chicago office of Peterson Consulting (a unit of Navigant Consulting, Inc.) where he had oversight responsibilities relative to the Financial and Claims Group's Complex Commercial Claims practice area.

Mr. Elson has had engagement management responsibility in connection with bankruptcy, valuation, loan workout, lender liability, breach of contract, intellectual property, construction, regulated industry, and other matters, assisting clients in many diverse industries throughout the United States. Mr. Elson has substantial experience in damage assessments including voidable transfer damage quantification in bankruptcy matters, as well as lost profits and excessive cost determinations in commercial disputes. Mr. Elson is experienced in cost determination and cost allocation matters in both commercial claims as well as regulatory proceedings.

In connection with his damages analysis experience, Mr. Elson has advised both plaintiffs and defendants with respect to proper analytical damage analysis methodologies, and has supervised the development of numerous damage claims for presentation at deposition and trial. This work has been performed in connection with contract disputes, intellectual property matters, business merger and acquisition transactions, and professional negligence claims, among other matters.

Mr. Elson is versed in proper damage analysis techniques, and is familiar with lost profits damages models including revenue and price studies (including market share studies), incremental cost reviews, fixed versus variable cost studies, capacity reviews, royalty rate evaluation, cost of capital and discount rate determinations, and more.

In connection with his valuation experience, Mr. Elson has supervised work as related to valuing shares of both publicly-traded and closely-held businesses, evaluated minority shareholder interests, studied marketability discounts and assisted in evaluating stock disposition and exchange alternatives (sale, public offerings, and exchange offerings). He is experienced in various cost-based and earnings-based valuation techniques and has performed work as related to estate tax considerations. Mr. Elson has studied loan portfolios and performed valuation studies as related to various assets of both businesses and financial institutions. Mr. Elson's experience in consulting on matters of non-performing loans and troubled debt is significant. He has evaluated restructuring alternatives in connection with debt offerings, has evaluated OREO investments of financial institutions as related to their fair values, has evaluated thrift disposition alternatives including earnings trend analyses, sales to book studies, key financial performance indicators, yield and cost studies, capital composition analyses, interest and non-interest bearing asset studies and more. He has evaluated business enterprises as to their going concern and liquidation values in connection with lender-liability disputes, bankruptcy and commercial claims.

# Exhibit A

Mr. Elson is experienced in transaction modeling and analysis, and has reviewed interim debt issuances, initial public offerings as well as private placements. Mr. Elson has reviewed capitalization programs for actual and constructive fraud considerations and is well versed in interpreting the implications of modified capitalization on expected financial and operating performance.

In connection with his bankruptcy and restructuring experience, Mr. Elson has supervised work in analyzing pre-petition financial transactions of various businesses, including reviews of related-party dealings, performance of preference analyses and reviews for fraudulent conveyance considerations. He has addressed these issues in association with the bankruptcies of several entities, which had recently been involved in highly leveraged acquisition transactions. In particular, with regard to his experience in matters involving fraudulent conveyance issues, Mr. Elson has performed analyses bearing on the determination of reasonably equivalent value. Mr. Elson has substantial experience performing analyses to ascertain debtor balance sheet solvency as well as debtor equitable solvency including ability to pay maturing debts and adequacy of capital considerations. And, he has made determinations of debtor value using liquidation standards of valuation as well as under assumptions of continuing operations.

Mr. Elson has advised clients in diverse industries, including oil and gas, retail, banking, manufacturing, health care, franchising, transportation, communications, financial services and lodging, among numerous others.

Mr. Elson has provided expert and fact-related testimony at deposition and trial in both State and Federal Courts, and has also testified in both United States Bankruptcy Courts and before the American Arbitration Association. He has presented to the American Bar Association, the American Bankers Association and others on bankruptcy as well as commercial damage claim considerations.

Mr. Elson received a Bachelor's degree in Business Administration and Finance from Indiana University in 1979 and received a Masters of Business Administration degree from Indiana in Finance and Organizational Development in 1982.

**Exhibit B**

## Summary of Craig Elson's Deposition and Trial Testimony

1. David W. Allard, Trustee v. Commerica Bank f/k/a/ Manufacturer's National Bank of Detroit, NBD Bank f/k/a NBD Bank, N.A., Lirio Angelosante, Jeffrey D. Palmer, Kelvin J. Pennington, and Fletcher E. Allen (In Re: T.A.S. Graphic Communications, Inc. Debtor)
2. Louis Pauly v. Richard O'Heir, et al.
3. Econolodges of America, Inc. v. Worthen Bank, N.A.
4. Landis & Gyr v. Powers, U.K.
5. Wieboldts Department Stores, Inc. v. Jerome Schottenstein, et al. (In Re: Wieboldts Department Stores, Inc.)
6. Washington Industries, Inc. v. Citibank, N.A., et al.
7. Washington Industries, Inc. v. 224 Foundation, et al.
8. Central States Health & Welfare Fund, et al. v. Sherwin Williams Corporation
9. Carter Controls, Inc. v. ATR Coil Inc.
10. Whirlpool Financial Corp. v. Mercantile Bank, N.A.
11. In Re: IRE Services, Inc., et al. Debtors
12. Pay 'N Pak Stores, Inc. v. Citibank, N.A., et al.
13. Pay 'N Pak Stores, Inc. v. Monarch Mirror, et al.
14. Kenneco v. National Bank of Palatine, et al. (In Re: Kenneco, Inc., Debtor)
15. In Re: Sharon Steel Corporation, Debtor
16. Class of Security Holders v. Eagle Hardware and Garden
17. In Re: Kasson Cheese, Inc.
18. Food Barn Stores, Inc. v. Safeway Stores, Inc. (In Re: Food Barn Stores, Inc., Debtor)
19. Rollins Investment Fund v. Valentine & Pace, et al.
20. Telesphere Communications, Inc., et al. v. Ronald J. Haan, et al.
21. Richard M. Fogel, Trustee for the Estate of Madison Management Group, Inc. v. Samuel Zell, The Estate of Robert Lurie, Great American Management and Investment, Inc., and Great American Financial Group, Inc.
22. In the Matter of the Protest of Central California International v. Navistar International Transportation Corp.
23. TheraTx, Inc. v. James W. Duncan, Jr. et al.
24. Childrens Broadcasting Corporation v. The Walt Disney Company a/k/a Disney Networks, Inc. and ABC Radio Networks, Inc.
25. JMP Newcor, Inc. v. James C. Mills
26. Galileo International LLC v. United Airlines
27. LID Associates v. Charles F. Dolan and Cablevision SystemsServices Corporation
28. Lifecor, Inc. v. Cadent Medical Corp., et al.
29. Metamor Worldwide and NDC Group, Inc. v. P. Noce, et al.
30. Roadmaster Corp. v. General Electric Company
31. United Airlines v. Mesa Airlines, Inc. and Westair Commute Airlines, Inc.
32. Pamela J. Alper and Michael N. Alper v. Altheimer & Gray, Myron Lieberman and Robert L. Schlossberg
33. Skeena Cellulose, Inc. v. Consolidated Papers, Inc.
34. Linkco, Inc. v. Fujitsu, Ltd.
35. Bandag, Inc. v. Michelin Retread Technologies, Inc. and Michelin North America, Inc.
36. Richard A. Lippe, et al. v. Bairnco Corporation, et al.
37. J. Bronner & R. Gilhooly (SOS) v. SFX Sports Group, Inc. and SFX Entertainment, Inc.
38. EMC Group, Inc. v. Ryerson Tull, Inc. f/k/a Inland Steel Industries, Inc.
39. Telesphere Liquidating Trust v. Francesco Galesi
40. Dr. Ben S. Branch, as Trustee of Bank of New England Corporation v. Ernst & Young U.S., et al.

**Exhibit B**

41. Zenith Electronics Corporation v. WHTV Broadcasting Corporation
42. Electrical Design and Control Company v. Eric Monson, et al.
43. Interway Produtos Alimenticios, et al. v. Doctors Associates, Inc. Subway Partners, C.V., et al.
44. Klesch & Company Limited v. Liberty Media Corporation, John C. Malone and Robert R. Bennett
45. Gerald K. Smith, as Plan Trustee for and on Behalf of the Estates of Boston Chicken, Inc., et al. v. Arthur Andersen LLP, et al.
46. Aircraft Gear Corporation v. Clayton Marsh and Ropes & Gray, a partnership
47. VSI Holdings, Inc., et al. v. SPX Corporation
48. Final Analysis Communication Services, Inc. v. General Dynamics Corp., et al.
49. US Unwired, Inc., et al. v. Sprint Corporation, et al.
50. Patrick D. Cavanaugh, as the Estate Representative of the Chapter 11 Estate of Linc Capital, Inc. v. LFC Capital, Inc., formerly known as LINC Finance Corporation, and LFC Holdings, Inc.
51. RRK Holding Company v. Sears, Roebuck and Company
52. Golden West Refining Corporation Ltd. v. PricewaterhouseCoopers, LLP and Coopers & Lybrand LLP