UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GOLDEN WEST REFINING CORPORATION<br>Plaintiffs<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS, LLP and<br>COOPERS & LYBRAND, LLP<br>Defendant | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION NO.<br>3:02 CV 1379(MRK) |
| ALEC SHARP, et al.<br>Plaintiffs<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS, LLP d/b/a<br>PRICE WATERHOUSE, LLP<br>Defendant | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION NO.<br>3:02 CV 1572 (MRK) |
| HANDY & HARMAN REFINING GROUP, INC.,<br>Plaintiff<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS, LLP,<br>Defendant | : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION NO.<br>3:02 CV 1803 (MRK) |

## AFFIDAVIT OF JED HORWITT

I, Jed Horwitt, being duly sworn hereby state as follows:

1. I am over the age of eighteen and believe in the obligations of the oath.

2. I have personal knowledge of the facts set forth herein, and the statements made herein are true to the best of my knowledge and belief.

3. I am a citizen of the United States.

2

4. I am an attorney licensed to practice in the State of Connecticut. I am a partner with the firm of Zeisler & Zeisler, P.C.

5. I have extensive experience with respect to bankruptcy matters and regularly represent debtors and creditors in complex commercial bankruptcy cases in Connecticut and other states.

6. In early 2000, I was appointed to represent the Official Committee of Unsecured Creditors (the "Committee") in the Chapter 11 bankruptcy case of Handy & Harman Refining Group, Inc. ("HHRG").

7. As part of my representation of the Committee, I became familiar with the financing facilities that HHRG had with Fleet Precious Metals and Credit Suisse. I also became familiar with the facts related to HHRG and its business.

8. At that time, HHRG was confronting serious financial difficulties caused by a situation involving a customer in Peru called Panexim.

9. As counsel to the Committee, I learned that in late February 2000, HHRG had advised its lenders that an HHRG receivable from Panexim in the amount of approximately $12.5 million that had previously been reported to be secured was, in fact, largely unsecured and uncollectible.

10. As counsel to the Committee, I further learned that in early March, 2000, HHRG's lenders terminated the financing facilities and this caused HHRG to shut down its refining operations.

11. At the time of HHRG's bankruptcy filing in March, 2000, many of HHRG's largest refining customers, some of whom were members of the Committee, were interested

only in recovering the precious metal that they believed HHRG was holding for them and were not interested in continuing to do business with HHRG.

12. In consultation with HHRG, its counsel Eric Henzy, and various major customers of HHRG and their counsel, I and the Committee determined that HHRG was not able to reorganize as a going concern and that it had no alternative but to liquidate its assets. The plan of reorganization that HHRG proposed and that the Bankruptcy Court confirmed in July, 2001 was a liquidating plan that provided for the liquidation of all of HHRG's remaining assets.

13. Pursuant to the bankruptcy, HHRG undertook the liquidation of all of its assets. A limited liability company of which I am the sole member was appointed as Liquidating Custodian to continue this process under the liquidating plan confirmed by the Bankruptcy Court. The Liquidating Custodian is responsible for all aspects of the liquidation of HHRG's assets.

14. As of this date, the Liquidating Custodian has liquidated all of the remaining income producing assets of HHRG including the refining plants that HHRG owned in South Windsor, Connecticut and Attleboro, Massachusetts, both of which had significant environmental issues. All of these liquidating sales, both before and after the confirmation of HHRG's plan, were undertaken in accordance with the provisions of the United States Bankruptcy Code and under the supervision and approval of the United States Bankruptcy Court.

15. Given the inability to obtain unrefined precious metal, and therefore the inability to operate, in consultation with HHRG and its counsel, I and the Committee determined

3

that HHRG would not be able to reorganize as a going concern and generate profits. It therefore had no alternative but to liquidate its assets.

16. The going concern value of HHRG was zero because HHRG was not capable of operating and producing profits. The liquidation value of HHRG's income producing assets realized through the bankruptcy was less than the costs associated with holding and selling those assets.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 1, 2005.

_____
Jed Horwitt