UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GOLDEN WEST REFINING CORPORATION<br>Plaintiffs<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS, LLP and<br>COOPERS & LYBRAND, LLP<br>Defendant | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION NO.<br>3:02 CV 1379(MRK) |
| ALEC SHARP, et al.<br>Plaintiffs<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS, LLP d/b/a<br>PRICE WATERHOUSE, LLP<br>Defendant | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION NO.<br>3:02 CV 1572 (MRK) |
| HANDY & HARMAN REFINING GROUP, INC.,<br>Plaintiff<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS, LLP,<br>Defendant | : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION NO.<br>3:02 CV 1803 (MRK)<br><br>SEPTEMBER 2, 2005 |

## AFFIDAVIT OF DIDIER SIFFER

1. I am Didier Siffer, a Director of Credit Suisse. Credit Suisse is an affiliate of Credit Suisse First Boston International (formerly Credit Suisse Financial Products, "*CSFBi*"), 11 Madison Avenue, New York, New York 10010.

2. I am over the age of 18, I believe in the obligations of an oath, and I have first-hand knowledge of the facts to which I hereby attest.

3. On or about August 29, 1996, Credit Suisse, acting through its New York branch, entered into an Amendment and Restatement of Master Precious Metals Purchase and Refining Agreement (the "*Purchase Agreement*") with Attleboro Refining Company, Inc. ("*ARC*"), a wholly owned subsidiary of Handy & Harman Refining Group, Inc. ("*HHRG*"). The obligations of ARC under the Purchase Agreement were guaranteed by HHRG (the "*HHRG Guaranty*"). Under the terms of the HHRG Guaranty, HHRG covenanted to maintain a certain cash flow coverage ratio and tangible net worth amount (the "*HHRG Financial Covenants*").

4. Effective September 8, 1999, all precious metals theretofore purchased by Credit Suisse, New York branch under the Purchase Agreement were purchased by CSFBi, and CSFBi assumed the rights and obligations of Credit Suisse, New York branch as purchaser under the Purchase Agreement. Pursuant to certain participation agreements among CSFBi and several other banks (the "*Participants*" and, together with CSFBi, the "*Bank Syndicate*"), the Participants purchased participations in the precious metals purchased by CSFBi under the Purchase Agreement.

5. Subject to and in accordance with the provisions of the Purchase Agreement, CSFBi agreed to purchase (the "*Purchase and Sale Commitment*"), and ARC agreed to sell and refine for CSFB, certain precious metals. ARC used the funding obtained by it under the Purchase Agreement to purchase from HHRG precious metals (or material containing precious metals) that HHRG had acquired from its refining customers. Thus, the funding from the Bank Syndicate through purchases under the Purchase Agreement was a principal source of liquidity for the business operations of ARC and HHRG.

6. Pursuant to the terms of the Purchase Agreement, CSFBi had the right to terminate the Purchase and Sale Commitment upon the occurrence of certain "*Early Termination Events*" described in the Purchase Agreement. The delivery to CSFBi of false financial statements for HHRG and the breach of the terms of the Guaranty, including the HHRG Financial Covenants, would constitute Early Termination Events.

7. In late February 2000, CSFBi was advised by certain Directors of HHRG's parent corporation, Golden West Refining Corporation, that an HHRG receivable (the "*Panexim Receivable*") from a Peruvian company, Panexim, in the amount of approximately $12.5 million that had previously been reported to be secured was, in fact, largely unsecured and uncollectible.

8. In early March 2000, the Bank Syndicate determined that Early Termination Events had occurred under the Purchase Agreement as a result of (a) the delivery to the Bank Syndicate of financial information that falsely reported the Panexim Receivable, and (b) breaches of the HHRG Financial Covenants, including the failure to

comply with the tangible net worth covenant as a result of the loss arising from the Panexim Receivable.

9. Based on the foregoing Early Termination Events and motivated largely by the concern that the loss to HHRG arising from the Panexim Receivable would result in a severe disruption to HHRG's business as refining customers and unsecured metal creditors sought immediately to recover their metals and/or discontinue doing business with HHRG, CSFBi (with authorization from the Bank Syndicate) exercised its contractual right under the Purchase Agreement to terminate the Purchase and Sale Commitment on or about March 7, 2000. In connection therewith, CSFBi instructed HHRG to complete the refining of all CSFBi-owned precious metals in ARC's refining circuits, to deliver the same to CSFBi in accordance with the terms of the Purchase Agreement, and not to introduce any other precious metals into the ARC refining circuits until completion of refining of and delivery of all CSFBi-owned material.

10. On March 28, 2000, HHRG and ARC filed for protection under Chapter 11 of the U.S. Bankruptcy Code (the "*HHRG/ARC Bankruptcy*"). HHRG's and ARC's businesses never recovered and they were wound down in the HHRG/Bankruptcy.

11. Pursuant to an order entered by the Bankruptcy Court in the HHRG/ARC Bankruptcy, CSFBi was authorized to (a) take possession of the refined metal held by ARC, (b) fund the completion of refining by ARC of the precious metal CSFBi had purchased under the Purchase Agreement, (c) take possession of such metal upon completion of refining and (d) sell the refined metal to satisfy the obligations owing to CSFBi and the Bank Syndicate under the Purchase Agreement. Such order expressly preserved the alleged rights of certain persons asserting adverse title claims to such metal.

3

Dated at New York, New York, this 31 day of August, 2005.

_____
Didier Siffer

Sworn to and subscribed before me this 31 day of August, 2005.

_____
Notary Public

ANNE K. MAY
Notary Public, State of New York
No. 02MA6059860
Qualified in Nassau County
Commission Expires: Jan. 4, 2007

4