## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GOLDEN WEST REFINING CORPORATION LIMITED, | : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 3:02 CV 1379 (MRK) |
| VS. | : : | |
| PRICEWATERHOUSECOOPERS LLP and COOPERS & LYBRAND LLP, | : : | |
| Defendants. | : | |
| ALEC SHARP, et al., | : | |
| Plaintiff, | : : | CIVIL ACTION NO. 3:02 CV 1572 (MRK) |
| VS. | : : | |
| PRICEWATERHOUSECOOPERS LLP d/b/a PRICE WATERHOUSE LLP, | : : | |
| Defendant. | : | |
| HANDY & HARMAN REFINING GROUP, INC., | : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 3:02 CV 1803 (MRK) |
| VS. | : : | |
| PRICEWATERHOUSECOOPERS LLP, | : | September 19, 2005 |
| Defendant. | : | |

**PRICEWATERHOUSECOOPERS LLP'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST HANDY & HARMAN REFINING GROUP, INC.**

David J. Elliott<br>
Thomas D. Goldberg<br>
Day, Berry & Howard LLP<br>
One Canterbury Green<br>
Stamford, CT 06901<br>
Tel: (203) 977-7300<br>
Fax: (203) 977-7301

PricewaterhouseCoopers LLP ("PwC") respectfully submits this reply memorandum of law in support of its motion for summary judgment on all claims asserted by Handy & Harman Refining Group, Inc. ("HHRG" or "plaintiff"), in *Handy & Harman Refining Group, Inc. v. PricewaterhouseCoopers LLP,* Civil Action No. 3:02 CV 1803 (MRK).[1]

## PRELIMINARY STATEMENT

Plaintiff contends that PwC's alleged conduct proximately caused the loss of HHRG's entire going concern value after June 30, 1998, which plaintiff claims was more than $30 million. As shown in PwC's opening memorandum, HHRG has failed to disclose expert witness testimony or other competent evidence from which a lay jury could determine, as a matter of law, what if any part of HHRG's loss in value in the nearly two-year period from June 30, 1998 to the discovery of the Panexim losses, was proximately caused by PwC.

Plaintiff's opposition misses this critical point. Rather than addressing this legal deficiency, plaintiff has unleashed an avalanche of affidavits and exhibits that respond to points that PwC would contest vigorously at trial, but already *assumed* as true for purposes of this motion. Those points include that PwC failed properly to perform its professional services with respect to Panexim, that if PwC had performed its services properly, HHRG's board would have taken action to prevent the advances to Panexim, and that the losses to Panexim would have been avoided. But neither these nor plaintiff's other assertions can establish, in light of the other factors impacting HHRG described in the unequivocal and contemporaneous words of HHRG's directors and executives, that PwC proximately caused the total loss of HHRG's value of June 30, 1998. Plaintiff's effort to remedy this legal deficiency by designating its fact witnesses as

---

[1] HHRG's opposition was submitted as a joint memorandum on behalf of both HHRG and GWRC. Issues relating solely to PwC's motion for summary judgment against GWRC are addressed in a separate memorandum being filed herewith.

experts not only is untimely, but is insufficient. The affidavits are addressed to these same points, and fail to provide an appropriate foundation for a jury to find that PwC proximately caused the decline in value of HHRG after June 30, 1998.

Plaintiff's distinction between the "destruction" and "deterioration" of HHRG's going concern value betrays the same fundamental misapprehension. The alleged lost going concern value at issue here cannot be measured (as plaintiff would have it) from the business that existed at June 30, 1998, that later degraded due to industry, operating and other circumstances that had nothing to do with Panexim or PwC. Instead, it must come from the business that existed immediately before discovery of the Panexim losses in February 2000. That was the business that plaintiff contends was destroyed when lenders and customers were notified of the Panexim losses. Plaintiff, however, has failed to disclose any expert opinion on any going concern value that HHRG had at that essential point. As a result, PwC is entitled to summary judgment.

## ARGUMENT

### A.  HHRG Is Required To Produce Expert Testimony To Establish Proximate Causation, But Has Failed To Do So.

In response to the numerous Connecticut cases that reiterate the well-founded requirement of expert testimony to establish proximate causation in a professional services case such as this (*see* PwC Mem. at 23-27), plaintiff makes two arguments, neither of which is availing.

First, plaintiff argues that the requirement of expert testimony to prove proximate causation should not apply in an accounting malpractice case, which, it argues, is distinguishable from some of the medical malpractice cases cited in PwC's opening brief. By so doing, plaintiff conspicuously ignores that the Connecticut courts have **not** limited the expert testimony requirement to medical malpractice cases and, in other contexts, have **not** distinguished

2

accountant malpractice from other professional malpractice.[2] And further, there is no principled basis to argue that the interplay of issues presented here is any more within the common experience of a lay jury than in the medical malpractice context. In this case, for example, a qualified expert would have to consider plaintiff's performance after June 1998, especially with respect to a business whose financial reporting caused HHRG and GWRC's own board members to decry that there was "no quantitative explanation" for its results, that loss-making activities would be "camouflage[d]" and that "[e]ither a large part of [the] business is losing money" or its Panexim business was misrepresented.[3] A qualified expert would have to consider the industry, operating and other factors that impacted HHRG's performance and prospects in the period after June 1998, such as the effect of undisputed trends in metal lease rates and HHRG's financing costs and the acquisition and consolidation of other poorly-performing operations.[4] And, in light of all of these considerations, a qualified expert would have to opine whether and the extent to which PwC's alleged professional breaches did or did not proximately cause a loss in HHRG's alleged going concern value.

Second, HHRG relies upon two inapposite cases from other jurisdictions. In *Seafirst Corp. v. Jenkins*, 644 F. Supp. 1152, 1155 (W.D. Wash. 1986), a trial court decision from Washington, the court did not address the issue of whether expert testimony was required to

---

[2] (*See generally* PwC Mem. at 23-27, including the discussion of *Vona v. Lerner*, 72 Conn. App. 179 (2002) (requiring expert testimony on proximate causation in legal malpractice case); PwC Mem. at 24 n.58 (citing cases analogizing accountants to other professionals).)

[3] (*See* PwC Mem. at 10-12, 30-31.)

[4] (*See* PwC Mem. at 6-12, 30-33.) Although plaintiff attempts to take issue around the edges of PwC's recitation of these independent factors and circumstances, HHRG generally either admits them or confirms the unmistakable wording of the HHRG and GWRC documents from which they are derived. (*See* Consolidated Local Rule 56(a)(2) Statement of Handy & Harman Refining Group, Inc. and Golden West Refining Corporation Limited, dated September 2, 2005 ("Pls.' 56 St."), at 2-7, 9-10.)

3

establish proximate causation, under local state law or otherwise.  Similarly, in *Board of Trustees of Community College District No. 508 v. Coopers & Lybrand, L.L.P.*, 775 N.E.2d 55, 61-63 (2002), *aff'd on other grounds*, 803 N.E.2d 460 (2003), no argument was made to the court as to whether expert testimony was required to establish proximate causation.  Rather, defendant sought to obtain a judgment notwithstanding a jury's verdict on the basis that the testimony of certain **board members** had been speculative.  *See id.* at 61 (defendant "[s]pecifically . . . cite[d] the testimony of three members of the board of directors.")  The defendant also sought judgment notwithstanding the verdict on the basis of a lack of evidence of loss causation, to which the court responded that "[i]n our review of the record, we find that there was sufficient evidence" to establish loss causation.  *Id.* at 63.  As the subsequent appellate opinion makes clear, that record included "***expert testimony regarding the financial losses caused***" by the investment practices at issue, including the losses attributable to defendant's failures.[5]  *Bd. of Trs. of Cmty. Coll. Dist. No. 508 v. Coopers & Lybrand, L.L.P.*, 803 N.E.2d at 464 (emphasis added).

### B. Plaintiff's Affidavits Do Not Remedy This Deficiency.

In an effort to address what it mischaracterizes as a technical deficiency in its proof, plaintiff asserts that former officers and directors of HHRG, who are likely fact witnesses in this case but have never been disclosed as experts, may supply the appropriate evidence.  Indeed, plaintiff asserts *ipse dixit* that it has "demonstrated the expertise and relevant experience of

---

[5] Plaintiff also points to a handful of cases, some of which uncontroversially suggest that witnesses may testify about their own obvious medical conditions, such as their pregnancy.  (*See* Pls.' Mem. at 26-27.)  Even so, only one of these cases (a medical malpractice case) actually analyzes a claim of malpractice, which, in the words of plaintiff's own case law, is "[o]ne area where expert medical testimony is regarded as essential . . . ."  *Aspiazu v. Orgera*, 205 Conn. 623, 631 (1987).  In the one case analyzing professional malpractice, the court found that sufficient evidence of proximate cause existed *where an expert witness, several physicians and a pathologist* had testified on causation.  *See Shegog v. Zabrecky*, 36 Conn. App. 737, 748-50 (1995).

Messrs. Russo and Ryan as described in their affidavits" and discloses both "as experts on all of the matters set forth in their affidavits."[6] Relatedly, plaintiff submits a 19-page affidavit on behalf of Mr. Ryan, an 18-page affidavit on behalf of Mr. Russo, and an over 10-page summary of their "[e]xperience, [b]ackground, and [k]nowledge" alone.[7] This is too little, too late, particularly given the tight pre-trial schedule on which plaintiffs insisted. Since the deadline for designation of expert witnesses passed some five months ago, PwC has not had the opportunity to take discovery with respect to these alleged expert qualifications, to respond with its own expert opinions or otherwise to prepare its defenses. With trial imminent, re-opening of expert disclosures would be enormously prejudicial to PwC.

But more importantly, plaintiff's supposed new expert testimony simply does not address the fundamental deficiencies in HHRG's damages theory. Messrs. Ryan and Russo do not purport to examine or evaluate the insufficiencies in HHRG's financial reporting systems, its performance and the industry, operating and other factors present after June 1998 in relation to the discounted cash flows analysis, comparable companies analysis or enterprise value concept upon which plaintiff's damages theory is based.[8] They have not provided any discounted cash

---

[6] (Pls.' Mem. at 18, 29 n.8.) Plaintiff goes so far as to suggest that the testimony of its fact witnesses is more reliable than expert testimony, because experts are paid fees for their time. (*See, e.g.*, Pls.' Mem. at 4, 18.) This is utter nonsense, at the very least because the losses claimed here all occurred on the watch of Mr. Ryan, Mr. Russo and the other affiants, who have a self-interest in defending their actions and inaction which contributed to the losses.

[7] (*See* Aff. of Michael Ryan, dated September 2, 2005; Aff. of Sean Russo, dated September 2, 2005; Pls.' 56 St. at 46-56.) Mr. Ryan indicates, for instance, that he has developed certain specialty "manufacturing processes". (Pls.' 56 St. at 53-54.) Mr. Russo indicates that he has engaged in "physical bullion and trading operations" and "hedging strategies". (Pls.' 56 St. at 47-48.) It is not clear that either ever has been qualified to offer expert testimony on any topic or that their activities relate to the topics here at issue.

[8] Instead, Messrs. Ryan and Russo flatly assert, for example, that the independent factors at work after mid-1998 did not "materially" affect the financial condition, long-term prospects or

flows, comparable companies or other analysis of HHRG's valuation prior to the discovery of the Panexim losses in February 2000. They have not given any basis for the proposition that the legally proper measurement date for the value of the business was June 30, 1998. And as a result, they have not provided any basis to opine that PwC's alleged professional breaches proximately caused a loss in HHRG's alleged going concern value from its alleged June 30, 1998 value to zero.

### C. Plaintiff's Submission Addresses Matters Not In Dispute For Purposes Of This Motion, But Fails To Establish That PwC Proximately Caused The Claimed Losses Or Address The Case Law So Requiring.

In PwC's opening memorandum, we established HHRG's failure to produce evidence that its claimed loss – the entire alleged going concern value of HHRG as of June 30, 1998 – was proximately caused by PwC, including in light of the independent factors present after mid-1998.[9] PwC further established that numerous cases, in this Circuit and beyond, make clear in analogous contexts that a plaintiff must demonstrate, taking into account independent factors, that it was the ***defendant's conduct*** that caused the particular loss it claims.[10]

Plaintiff has failed utterly to rebut these showings. HHRG has not proffered evidence remedying the fundamental gap in its proof and has not distinguished or even addressed this case law. Instead, it embarks upon a lengthy summary of its evidentiary submissions that recite points that PwC already has assumed for purposes of this motion.[11] For example, HHRG writes:

---

"valuation" of HHRG. (*See* Pls.' 56 St. at 62-65.) Notably, the supplemental affidavit submitted by plaintiff's valuation expert, Mr. Elson, does not address these issues.

[9] (*See* PwC Mem. at 6-12, 29-33.)

[10] (*See* PwC Mem. at 33-36, including the discussion of *Dura Pharm., Inc. v. Broudo*, ____ U.S. ____, 125 S. Ct. 1627, 1632-34 (2005) (rejecting the notion that the purchase of securities at a high price and subsequent sale at a low price can establish proximate causation).)

[11] (*See* PwC Mem. at 3 & n.4.)

> These affidavits establish the sequence of events that took place after PwC failed to disclose the existence of unsecured advances in June 1998. These affidavits also demonstrate that the board members of HHRG and GWRC would have taken decisive action had PwC disclosed what it knew in 1998. These actions by the board members would have prevented the dramatic increase in unsecured advances after June 1998 that destroyed HHRG.[12]

Plaintiff later repeats:

> As set forth above, HHRG proffers affidavits of various members of the boards of directors of HHRG and GWRC that show that had PwC notified the HHRG or GWRC boards, or the audit committee, in June 1998 that PwC knew that an employee of HHRG was making unsecured advances of millions of dollars to companies in South America, they would have taken swift action to prevent this blatant violation of HHRG policy from occurring in the future.[13]

Plaintiff goes on to assert, again on a position that is not disputed for this motion, that it has offered sufficient evidence because: "Put most starkly, within weeks after it became known by the HHRG and the GWRC boards that unsecured advances to Panexim in excess of $10 million existed, HHRG was forced to shutter its refinery and file for bankruptcy."[14]

All of these facts, if proved, would establish actual causation, that is, that the sequence of events which culminated in HHRG's bankruptcy filing would not have occurred (at least as precipitously) but for PwC's alleged professional breaches. What they do not provide is a sufficient basis for a lay jury to determine, in light of the circumstances separate and apart from the Panexim advances and any conduct of PwC, that PwC proximately caused the loss of HHRG's entire value of June 30, 1998.

---

[12] (*See* Pls.' Mem. at 18; *see also id.* at 7-14, 21-26; Pls.' 56 St. at 16-39, 44-46, 52-53, 57-62 and the affidavits cited therein.)

[13] (Pls.' Mem. at 21-22.)

[14] (Pls.' Mem. at 25-26. *See also generally* Pls.' Mem. at 13-14; Pls.' 56 St. at 39-43 and the affidavits cited therein.)

7

### D. Plaintiff's Reliance Upon *West Haven Sound* and *Mattingly* In Support Of An Argument Regarding The Destruction Of HHRG's Value Is Unsupported In Law Or Logic.

Lastly, plaintiff argues that its methodology of arriving at its damages is tenable because it concerns the complete "destruction" of HHRG's going concern value, rather than its "deterioration." Putting aside these semantics, the more elemental problem for plaintiff is that HHRG claims that its business was destroyed when the company's banks and customers learned of the Panexim losses in February 2000. But, for that critical point in time, the record is devoid of any expert opinion as to the value of plaintiff's business. Accordingly, it is not surprising that the cases upon which HHRG relies in no way support the proposition that a jury lawfully can find that the measure of plaintiff's damages is its going concern value on June 30, 1998.

Plaintiff primarily relies on *West Haven Sound Development Corp. v. West Haven*, 201 Conn. 305 (1986). It plainly misconstrues the case. In *West Haven Sound*, a restaurant operator purchased land from the town which was to be used in accordance with a commercial redevelopment plan. *See id.* at 307. In reliance on the plan, plaintiff opened a restaurant facility. *See id.* In 1974, however, the development plan was modified in favor of turning the area into a public park, and by 1997, the restaurant closed. *See id.* at 307-08. Plaintiff claimed that its business had failed as a result of the changed plan, and was awarded damages based upon expert testimony as to the valuation of plaintiff's restaurant at the time of the town's breach in 1974. *See id.* at 308, 316-17. On appeal, the Connecticut Supreme Court held that the trial court had not erred in allowing plaintiff's expert to testify as to the restaurant's projected value as it appeared before the breach. *See id.* at 317-18.

Plaintiff now argues that its expert valuation as of June 1998, before PwC's alleged professional breaches, is also appropriate. While HHRG's argument may have visceral appeal, it does not withstand closer inspection. In *West Haven Sound*, the expert evidence reflected,

8

unsurprisingly, that the town's failure to carry out the redevelopment plan negatively affected the restaurant's financial performance between 1974, when the breach occurred, and 1977, when the restaurant went out of business. Here, however, there is no expert or other evidence that PwC's alleged breach negatively impacted HHRG's earnings between June 1998 and February 2000. Rather, plaintiff alleges that HHRG's business was destroyed when its creditors and customers became aware of the Panexim losses in February 2000.

Indeed, the second case on which plaintiff primarily relies, *Mattingly, Inc. v. Beatrice Foods Co.*, 835 F.2d 1547 (10th Cir. 1987), *vacated*, 852 F.2d 516 (10th Cir. 1988), underscores that the alleged lost value of HHRG is *incorrectly* measured as of June 1998.[15] In that case, a swimming pool construction and maintenance company purchased coating materials from the defendant that repeatedly stained and peeled and thus disrupted plaintiff's business from 1974 through 1977. *See id.* at 1550-51. By the end of 1977, plaintiff was forced out of business. *See id.* The Tenth Circuit reversed the trial court's calculation of the value of plaintiff's business as of the end of 1977, because by then, plaintiff "had suffered the deleterious effects caused by [defendant's] products for more than three years." *Id.* at 1560. Here, HHRG has submitted no expert or other evidence that PwC's alleged breach caused any such gradual and ongoing effect, but rather that HHRG was allegedly forced into bankruptcy upon discovery of the Panexim losses in February 2000. As a result, plaintiff's insistence that PwC should be liable for the entire going concern value of HHRG in June 1998 is devoid of support in the evidence or the law, including the law on which it relies.

---

[15] Although plaintiff relies primarily on *West Haven Sound* and *Mattingly*, none of the damages cases plaintiff cites stands for the incongruous proposition that a business allegedly destroyed within days of the discovery of a missing asset is properly valued, by an owner or otherwise, some two years earlier.

9

## CONCLUSION

For the foregoing reasons and those set forth in PwC's opening memorandum, the Court should grant summary judgment for PwC on all counts of HHRG's complaint, and dismiss the complaint with prejudice.

DEFENDANT,
PRICEWATERHOUSECOOPERS LLP


By: ____/s/ Thomas D. Goldberg_____
     David J. Elliott (ct 04301)
     Thomas D. Goldberg (ct 04386)
     Day, Berry & Howard LLP
     One Canterbury Green
     Stamford, Connecticut 06901-2047
     Tel: (203) 977-7300
     Fax: (203) 977-7301
     Its Attorneys

## ELECTRONIC CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2005, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

        /s/ Thomas D. Goldberg
David J. Elliott (ct 04301)
Thomas D. Goldberg (ct 04386)
Day, Berry & Howard LLP
One Canterbury Green
Stamford, Connecticut 06901-2047
Tel: (203) 977-7300
Fax: (203) 977-7301
Its Attorneys

Edward J. Boyle, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd St.
New York, NY 10017-5639

William H. Champlin, III, Esq.
Michael T. McCormack, Esq.
William S. Fish, Jr., Esq.
Tyler Cooper & Alcorn, LLP
CityPlace - 35th Floor
185 Asylum Street
Hartford, CT 06103

Daniel McMahon, Esq.
Stefan Dandelles, Esq.
Daniel E. Tranen, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
120 N. LaSalle Street
Chicago, IL 60602

Fred N. Knopf, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604-3407

Steven R. Humphrey (ct06053)
Dina S. Fisher (ct14896)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597

Jed Horwitt, Esq.
Zeisler & Zeisler, P.C.
558 Clinton Ave.
P.O. Box 3186
Bridgeport, CT 06605-0186

11