UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GOLDEN WEST REFINING CORPORATION<br>Plaintiff<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS, LLP and<br>COOPERS & LYBRAND, LLP<br>Defendants | : : : : : : : : | CIVIL ACTION NO.<br>3:02 CV 1379 (MRK) |
| ALEC SHARP, et al.<br>Plaintiffs<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS, LLP d/b/a<br>PRICE WATERHOUSE, LLP<br>Defendant. | : : : : : : : : : | CIVIL ACTION NO.<br>3:02 CV 1572 (MRK) |
| HANDY & HARMAN REFINING GROUP, INC.,<br>Plaintiff<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS, LLP,<br>Defendant | : : : : : : : : | CIVIL ACTION NO.<br>3:02 CV 1803 (MRK)<br><br>SEPTEMBER 19, 2005 |

**REPLY TO PRICEWATERHOUSECOOPERS' LLP MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO PRECLUDE THE TESTIMONY OF R. GENE BROWN**

**INTRODUCTION**

The Plaintiffs, Handy & Harman Refining Group ("HHRG") and Golden West Refining Corporation ("GWRC") have moved to preclude the testimony of R. Gene Brown ("Brown"). Brown's opinions are inadmissible because they lack the minimum threshold of reliability necessary for admission under Federal Rule of Evidence 702 and because Brown is not qualified under Rule 702 to deliver his opinions to the jury. His proposed testimony will not "assist the trier of fact to understand the evidence or to determine a fact at issue." Fed. R. Evid. Rule 702. Since each of these requirements is

a prerequisite to admissibility under Rule 702 of Federal Rules of Evidence, the testimony of Brown must be excluded.

**ARGUMENT**

    A.    **PwC's Reliance on the Argument That Brown Has General Experience as a Member of Boards of Directors and as a "Educator" is Insufficient to Meet the Qualifications Standard Necessary to Offer Expert Testimony.**

In Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152, 143 L.Ed.2d, 238, 119 S.Ct. 1167 (1999), the Court clarified that whether the witness' area of expertise was technical, scientific, or more generally "experienced based," Rule 702 required the District Court to fulfill the "gatekeeping" function of "making certain that an expert whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Nimely v. City of New York, et al, No. 04-3240-CV, 2005 U.S. Dist. Lexis 12712, at *12. Further, nothing in the Federal Rules of Evidence requires a District Court to admit opinion evidence which is connected to existing data only by the **ipse dixit** of the expert. General Electric Co. v. Joiner, 522 U.S. 136, 146, 139 L.Ed.2d. 508, 118 S.Ct. 512 (1997).

PwC struggles in its Memorandum of Law ("PwC Memo") to find sufficient qualifications for Brown as a witness. At page 2 of the PwC Memo, PwC identifies Brown as an educator; at page 5, an experienced educator. PwC refers to Brown's teaching at Harvard and Stanford on page 6, and touts his academic experience at page 9. Finally, PwC again refers to Brown as an educator at pages 10 and 13. PwC makes no connection, however, between Mr. Brown's purported role as an "educator" and any of the opinions he proposes to offer. As Brown's resume reveals, his last teaching assignment was in 1968, over 37 years ago. There is nothing in his teaching experience which qualifies Brown as an expert on corporate governance. Similarly, references to

his doctorate provide no basis for his opinion in this case. He obtained his doctorate in 1961, over 44 years ago and his concentration at the time was in a specific accounting subject. This background of study and teaching, 44 and 37 years ago is of no relevance to the opinions offered on the issues faced by the jury in this case and, therefore, provides no support for Brown's opinion.

PwC's memorandum recognizes that Brown lacks experience in the precious metals industry. (PwC Memo, page 14.) Nevertheless, PwC argues that Brown will testify as to good corporate governance practice "in any business, and that the expectations, duties, and responsibility of boards of directors do not vary by industry." (PwC Memo, page 14.) It is this generality and lack of specificity that undermines Brown's qualifications as an expert. Essentially, Brown proposes to testify that the Plaintiffs' boards violated a standard of reasonable care that applies to all businesses and all boards of directors. PwC identifies this testimony as relying "on general expertise in the field of corporate governance." (PwC Memo, page 11.) However, Brown's testimony and opinion is not grounded in a specific expertise or even application of his general expertise to the facts of this case. When questioned about the source of his opinion, Brown explained in an answer both candid and remarkable as follows:

> Let me tell you that the description of the roles and duties of boards of directors and management <u>came right off the top of my head</u> based on almost 50 years of studying, teaching and serving on the boards of private and public corporations and <u>its as intuitive</u> to me as a pediatrician taking the temperature of a sick child. I mean, <u>it's just intuitive</u>. (Brown Tr. 115, Lines 1-9.)

In response to this shocking lack of analysis, PwC argues that the Court's function is simply to ensure that the witness "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field" and that cross examination is available to attack shaky but admissible evidence. (PwC Memo, page 12.) It's hard to imagine a less rigorous intellectual exercise than basing an

opinion on <u>intuition, "right off the top of my head."</u> (<u>Id</u>.) Describing the testimony of Brown as "shaky" is an understatement.

The law with respect to the duties and responsibilities of a board of directors is subject to state and federal law in the United States. Brown testified, however, that state and federal law do not govern and that the duties and responsibilities of a board are not driven by any state or federal law and are not dependent on a particular company's industry. (Brown Tr. page 143:18-144:4.) PwC argues "[t]his is a matter of common sense." (PwC Memo, page 13.)

In fact, the lack of knowledge of Connecticut law exhibited by Brown accentuates the problematic nature of his testimony. Brown criticizes board members who "failed to attend meetings <u>in person.</u>" (PwC Memo, page 8.) On this simple issue, Brown's view conflicts directly with Connecticut law. The corporate statutes of Connecticut permit telephonic attendance at board meetings and treat such telephonic attendance as <u>attendance in person</u>. Section 33-748 of the Connecticut General Statutes authorizes directors to attend board meetings by telephone and treats such attendance as "<u>present in person</u>". Moreover, under Section 33-748(b), a director is deemed to be present in person at board meetings through any means of communication by which all directors participating may simultaneously hear each other during the meeting. Mr. Brown's glaring lack of knowledge of this basic principle of Connecticut corporate law is not surprising given his total failure to acquaint himself with the laws of this state which would be applicable to the performance of the board of directors of this Connecticut corporation. (Brown Tr. 144:25-145:11.)

**B.   <u>An Expert May Not Testify as to Conclusions Reserved for the Jury</u>.**

PwC relies on the case of <u>Pereira v. Cogan</u>, 281 B.R. 194, 199-200 (S.D.N.Y. 2002) referring to the case as "particularly helpful". (PwC Memo, page 11.) The Plaintiffs agree that this case is helpful in considering the factors to be applied in a

4

decision to exclude expert testimony. The Court in <u>Pereira</u> held that the statements of an expert's report should be excluded where the opinions ultimately lead to conclusions reserved for the jury. For example, the Court rejected testimony that directors "failed to discharge their fundamental oversight responsibilities". <u>Id</u>. at 199-200. That excluded testimony is striking similarity to Brown's proposed testimony that "the management of HHRG and the boards of GWRC and HHRG were negligent in the performance of their responsibilities." (PwC Memo, page 5.) The expert's conclusions rejected in the <u>Pereira</u> case and the proposed testimony of Brown are strikingly similar and, therefore, Brown's opinion similarly should be rejected.

Moreover, the <u>Pereira</u> court excluded opinions that the directors in that case did not exhibit "any prudent independent behavior" and "ignored their duties". In similar vain, Brown proposes to testify that "on a broad basis the board of HHRG and GWRC failed to exercise reasonable care." (Brown Tr. page 119, line 23 - 120, line 16.) This Court simply cannot open the witness gate to allow a proposed expert to offer testimony in the form of a conclusion on the ultimate issue in the case. For the same reasons that the court in <u>Pereira</u> rejected similar testimony, the opinions of Brown must be excluded.

PwC argues that the Brown testimony will set forth a "non exclusive list of commonly understood non-controversial responsibilities of a board member. . . ." (PwC Memo, page 6.) This is not testimony which an expert alone can provide. Commonly understood non-controversial responsibilities of board members to the extent "commonly understood" do not require expert testimony but rather are within the province of the court in its jury instructions. In the instance of commonly understood responsibilities of board members, the <u>Pereira</u> opinion is again helpful. The Court there permitted testimony on <u>industry custom</u> but the expert witness testifying had dramatically greater and more current industry experience than the general experience on which Brown bases his opinion. The <u>Pereira</u> court noted that the proposed expert was an attorney

5

with experience in the Department of Justice, who had worked as a general counsel for several large companies. The expert had 30 years experience in corporate governance. The expert taught the subject of corporate lawyering at NYU and the University of Pennsylvania law school over the ten years immediately preceding his testimony. In addition, the expert had direct industry experience in the financial industry involved in the litigation. Finally, the expert had co-authored a book on corporate law with a section on corporate governance.

In contrast, Brown describes his experience of personal attendance at board and committee meetings in several corporations. (Brown Tr. 115:1-9.) He testified that he had listened to presentations by corporate counsel for AMD on Delaware law. Brown's resume discloses no formal education in corporate governance and apparently none of his teaching or educational experience from decades ago relate to that subject matter. (Brown Expert Report July 7, 2005; Plf. Memo Tab 1.) Finally, Brown testified that he relied on no treatise or professional writings in forming his opinions which were "intuitive". (Brown Tr. 115:1-9.) The contrast between the experience of the Pereira witness with knowledge of industry custom and the lack of such experience by Brown is striking. Brown simply has no relevant industry experience. (Brown Tr. 134:4-135:7 and 137:8-22.)

The admissibility of an opinion based on personal experience or general experience alone requires a further consideration. As the Court held in Page Mill Asset Mgmnt v. Credit Suisse First Boston Corp., No. 98 Civ. 6907 201 U.S. Lexis 10803 at 3 (S.D.N.Y. July 30, 2001) "although it is permissible for (the expert) to base his opinion on his own experience . . . he must do more than aver conclusively that his experience lead to his opinion" citing Roniger v. McCall, No. 97 Civ. 8009, 2000 WL 1191078 at *4 (S.D.N.Y., August 22, 2000). The Brown opinions suffer from the lack of depth and

reliability noted in the <u>Page Mill</u> case. His conclusion is no more than a statement that his experience provides the basis for an off the top of his head, intuitive opinion.

Finally, the <u>Pereira</u> court focused on the experts' testimony on good corporate practices suggesting its acceptance as "<u>custom of the industry at issue</u>". (Emphasis added). PwC's concedes that the proposed Brown testimony is not based on the custom of the "industry at issue". In the <u>In re Voluntary Purchasing Groups Inc.</u> case, relied on by PwC at page 15 of its brief for the proposition that industry specific experiences is not required for the admission of testimony, the court specifically noted that the expert's testimony on the industry standard was admissible based on his professional experience in other industries and "<u>his study of the [specific manufacturing plant in the case].</u>" <u>In re Voluntary Purchasing Groups, Inc.</u>, No. 3194-Civ.- 2477-H, 2000 U.S. Dist. Lexis 18561 at *14 (N.D. Tex. Dec. 14, 2001). It is precisely this latter point, the study of the specific plant or industry that rendered the testimony admissible in <u>In re Voluntary Purchasing Groups, Inc.</u> <u>Id.</u> Brown made no attempt to understand or study the precious metals refining industry and had no experience in the procedures or customs of the industry and his report lacks any reference to the custom or procedures of this industry. For example, Brown proposes to testify that the boards failed to implement a financial reporting system with <u>satisfactory internal controls</u>. (PwC Memo, page 7.) Without grounding this conclusion in any precious metals refining business experience, Brown's testimony is hopelessly adrift and nearly incomprehensible. A "satisfactory" internal controls system must relate to the specific industry involved because lack of such grounding leaves the phrase "satisfactory internal controls" without definition. Faced with this meaningless standard, the right to cross examination is not a substitute for the court's exercise of the gate keeping function to exclude evidence.

### C. The Proposed Testimony of Brown Regarding Contributory Negligence is Speculative and Must Be Excluded

On the specific issue of contributory negligence, on whether PwC argues the testimony of Brown is relevant, there is no logical link between the offered testimony and the special defense set forth in PwC's Answer.

PwC asserts in its fourteenth affirmative defense to HHRG's Complaint and in its ninth affirmative defense to GWRC's Second Amended Complaint that the Plaintiffs' losses were caused by the Plaintiff's negligence in that HHRG/GWRC "and/or its agents, [and] representatives failed to review, to obtain, or properly to analyze or construe, information available to plaintiff[s] concerning the advances made to such entities as a Orion, Darwill, Ladison and Panexim." See PwC's Answer and Affirmative Defenses dated May 24, 2004. This is a specific special defense of negligence relating to a failure to obtain, review, analyze or construe information available to the Plaintiffs concerning advances to Panexim. Brown's testimony describing to the jury what a reasonably prudent director would have done with respect to board attendance, the receipt of written reports rather than oral explanations by management and such matters as long range planning and profit center reporting procedures is irrelevant to the special defense as raised. He does not opine that directors have a duty to focus their attention on matters as detailed in a corporation as advances by a low level manager to a company in a foreign company. The Directors met their obligations by setting a policy against unsecured advances and relying on management and the auditors to "assure" the policy was followed. In this they met their duty of care under Connecticut law Section 33-756(a) and (b).

When asked specifically whether he could testify that the boards' failure to set long range goals for HHRG caused a loss, Brown testified "no." (Brown Tr. page 119:23, - 120:16.) In a similar way, Brown testified that he could not conclude HHRG's

8

lack of "profit center reporting" caused the losses to Panexim. (Brown Tr. 189:16-190:13.)

In conclusion, this Court can find excellent guidance in an opinion of Judge Milton Pollack expressing his disapproval of proffered expert testimony.

> The standards of conduct espoused by the experts are not specialized knowledge; rather, in effect, the "experts" are called to express their legal conclusions on ethics and business oriented transactions. In highly volatile industry with novel and unpredictable challenges, competitive conduct and timing factors such as those in the instant litigation, it would be inappropriate to consider the experts' personal assessments of the credibility of the situations involved, the sufficiency of the measures utilized in considering the business plans being pursued, the limits of unacceptable business risks, the evaluation of the means to deal with business choices presented to corporate officers and advisors, and the impact of self-interested conduct and the significance thereof.
>
> In short, the court should not shift to such witnesses the responsibility to give conclusory opinions and characterizations of the business conduct portrayed and to essentially decide the case.

GST Telecommunications, Inc. v. Irwin, 192 F.R.D. 109, 110-11 (S.D.N.Y 2000). As in Irwin, there is simply nothing that Brown offers that the jury cannot decide on its own given the presentation of evidence from fact witnesses and the charge from the Court on the law.

**CONCLUSION**

For the reasons stated above, the proposed opinions and testimony of defendant's corporate governance expert, R. Gene Brown, should be excluded.

HANDY & HARMAN REFINING
GROUP, INC.

By: _____
William H. Champlin III
(ct04202), Champlin@tylercooper.com
Michael T. McCormack
(ct13799), mmcormack@tylercooper.com
TYLER COOPER & ALCORN, LLP
CityPlace, 35th Floor
185 Asylum Street
Hartford, CT 06103
Tel: (860) 725-6200
Fax: (860) 278-3802


By: _____
Steven Humphrey
(ct06053), shumphrey@rc.com
Dina Fisher
(ct14896), dfisher@rc.com
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103
Tel: (860) 275-8221
Fax: (860) 275-8299

**CERTIFICATION**

I hereby certify that on September 19, 2005, a copy of the foregoing HHRG Reply Brief in Support of Their Motion to Preclude the Testimony of R. Gene Brown was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept filing]. Parties may access this filing through the Court's system.

Thomas D. Goldberg, Esq.
David Elliott, Esq.
William H. Erickson, Esq.
Day, Berry & Howard
CityPlace I
Hartford, CT 06103

Steven Humphrey, Esq.
Dina Fisher, Esq.
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103

Edward J. Boyle, Esq.
Wilson, Elser, Moskowitz, Edelman
 & Dicker LLP
150 East 42nd St.
New York, NY 10017-5639

Stefan Dandelles, Esq.
Wilson, Elson, Moskowitz Edelman
 & Dicker LLP
120 North LaSalle Street
Suite 2600
Chicago, IL  60602

_____
William H. Champlin III

11