UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GOLDEN WEST REFINING CORPORATION, LTD., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| vs. | ) ) ) | 3:02 CV 1379 (MRK) |
| PRICEWATERHOUSECOOPERS, LLP and COOPERS & LYBRAND, LLP, | ) ) ) ) | |
| Defendants. | ) ) | |
| ALEC SHARP, et al., | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. |
| vs. | ) ) ) | 3:02 CV 1572 (MRK) |
| PRICEWATERHOUSECOOPERS, LLP d/b/a PRICE WATERHOUSE, LLP, | ) ) ) ) | |
| Defendant. | ) ) ) | |
| HANDY & HARMAN REFINING GROUP, INC., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| vs. | ) ) ) | 3:02 CV 1803 (MRK) |
| PRICEWATERHOUSECOOPERS, LLP, | ) ) ) | |
| Defendant. | ) | |

**AFFIDAVIT OF VINCENT J. LOVE**

Vincent J. Love, being duly sworn, states:

1.   I am a founding partner with the accounting firm of Kramer Love & Cutler, LLP. My business address is 675 Third Avenue, New York, NY 10017.

- 1 -
283362.1

2.     I was retained by Plaintiffs Alec Sharp, et al. ("Underwriters") in December, 2003 to calculate the economic damages incurred by Handy & Harman Refining Group, Inc. ("HHRG"). It is my understanding that Underwriters have the right to pursue third parties in an effort to recover losses incurred by HHRG that were the subject of a claim made under an insurance policy issued by Underwriters (the "Policy").

3.     I was not retained to conduct and did not conduct an analysis of coverage under the Policy with respect to the losses incurred by HHRG.

4.     During the course of my engagement, among the voluminous documents and other materials I reviewed were the materials that formed the basis of the conclusions set forth by W. Marcus Johnson of HSNO and John Dempsey of Dempsey, Myers & Co. I and those working under my direction also reviewed their respective conclusions and supporting schedules.

5.     I ultimately determined that the losses incurred by HHRG arising from the unsecured advance of funds to Panexim was $12,076,000. In reaching this figure, I included those amounts that properly constitute economic losses to HHRG that, assuming liability, would be recoverable in a breach of contract or tort cause of action against PricewaterhouseCoopers, LLP ("PWC"), arising from its engagement to provide services to HHRG from 1996 through 1999.

6.     I never expressly rejected the analysis, calculations or conclusions of either Mr. Johnson or Mr. Dempsey. I understand Mr. Johnson's analysis, on behalf of Underwriters, was limited to a determination of what losses incurred by HHRG were covered under the Policy.

7.     Two elements of HHRG's claimed losses that Mr. Johnson determined were not subject to coverage were those amounts relating to retainage and transportation charges. These

elements account for over $3.3 million of the $12 million loss incurred by HHRG relating to the unsecured advances to Panexim.

8. I have no reason or basis to reject or dispute Mr. Johnson's conclusion that this amount relating to retainage and transportation charges may not have been covered under the Policy.

9. The premise of my analysis is different from that of Mr. Johnson in that I did not seek to determine how much of HHRG's loss was covered under the Policy, but rather how much economic loss HHRG incurred in relation to the circumstances giving rise to HHRG's claim for insurance under the Policy.

FURTHER AFFIANT SAYETH NOT!

I declare under penalties of perjury that the foregoing is true and correct.

Executed on this __19__ day of __September__, 2005.

_____
Vincent J. Love