UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GOLDEN WEST REFINING CORPORATION<br>Plaintiff<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS, LLP and<br>COOPERS & LYBRAND, LLP<br>Defendants | CIVIL ACTION NO.<br>3:02 CV 1379 (MRK) |
| ALEC SHARP, et al.<br>Plaintiffs<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS, LLP d/b/a<br>PRICE WATERHOUSE, LLP<br>Defendant. | CIVIL ACTION NO.<br>3:02 CV 1572 (MRK) |
| HANDY & HARMAN REFINING GROUP, INC.,<br>Plaintiff<br><br>VS.<br><br>PRICEWATERHOUSECOOPERS, LLP,<br>Defendant | CIVIL ACTION NO.<br>3:02 CV 1803 (MRK)<br><br>SEPTEMBER 19, 2005 |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO PRECLUDE THE TESTIMONY OF WILLIAM PINNEY**

**INTRODUCTION**

Plaintiffs HHRG and GWRC ("Plaintiffs") moved to preclude the testimony of William Pinney ("Pinney") on the grounds that his proffered expert testimony failed to meet the fundamental requirements of reliability under Federal Rule of Evidence 702.[1] Pinney's proffered opinion consists of (1) the identification of two temporary market conditions allegedly impacting in general the precious metals refining industry world wide in 1999, and (2) the unsupported conclusion that these conditions negatively impacted

---

[1] Plaintiffs' August 12, 2005 Memorandum of Law in support of its Motion is referred to as "Plaintiffs Brief," while PwC's September 2, 2005 Memorandum of Law in Opposition to Plaintiffs' Motion is referred to as the "PwC Brief."

HHRG's value. Plaintiffs established in the deposition of Pinney that he did not analyze whether and to what extent these conditions, in fact, impacted HHRG's financial performance. He merely concluded, without detailed analysis or data, that HHRG, as a precious metals refiner and market participant, would have been impacted. He concluded, again without any analysis or data, that this assumed impact would have reduced HHRG's fair market value by an undetermined amount.

## ARGUMENT

### The Opinions of William Pinney Lack the Foundation and Reliability Necessary to Support Expert Testimony.

PwC clearly and succinctly states the substance of Pinney's opinion. The PwC formulation demonstrates Pinney's opinion is defective:

> Pinney will testify . . . that two specific adverse market conditions (diminished supply of scrap precious metal and increased metal leasing rates) decreased the fair market value of HHRG during the relevant time period irrespective of the Panexim transactions. While it is true that Pinney cannot quantify any specific decline in monetary value, he need not do so because it is plaintiffs' burden to prove, rather than defendant's burden to disprove, that any PwC negligence in this case proximately caused the entire loss of [HHRG's] value. . . .

PwC Br., p.2. (Emphasis added.) Reduced to its simplest terms, Pinney proposes to testify that two market conditions of unknown direct effect on HHRG decreased HHRG's value by an unknown amount. As made clear in Plaintiffs' August 12 memorandum in support of the motion to exclude Pinney's testimony, Pinney did not conduct any analysis of either the impact of market conditions on HHRG's actual results or the effect of metal leasing rates on HHRG's overall financial performance. Furthermore, he made no attempt to demonstrate a foundation for or the reliability of his methodology or testimony. He undertook no analysis to evaluate the impact, if any amount, on HHRG's business results or value as a going concern caused by general industry conditions or metal lease rates.

The Court's consideration of a motion to exclude expert testimony under Rule 702 must address the reliability of the proposed expert's methodology. Plaintiffs established in their brief through specific citation to Pinney's Report and deposition testimony[2] that Pinney neither analyzed how a reduction in global and regional scrap metal supply affected HHRG; (Plaintiffs Br. pp.10-11, 13-15)[3]; nor did he analyze whether and to what extent general market increases in financing costs on metal leases impacted HHRG's overall financing costs. Plaintiffs Br. pp.16-17. In fact, Pinney did not even determine what HHRG's financing costs actually were for the period in which he claims these costs increased. He readily admitted during his deposition that he did not perform any valuation analysis. Plaintiffs Br. pp. 19-20.

In its Opposition Brief, PwC did not attempt to contest any of these points. PwC apparently recognized that it was impossible for Pinney to state, based on any grounds other than conjecture, that general global or regional market conditions had a specific or measurable impact on HHRG's business or fair market value. This is a clear case of "too great an analytical gap between the data and opinion proffered." Nimely v. City of New York, -- F.3d --, No. 04-3240-CV, 2005 WL 1620481 *12 (2d Cir. 2005); see also In re Voluntary Purchasing Groups, Inc., No. 3194-Civ.-2477-H, 2000 U.S. Dist. Lexis 18561 (N.D. Tex. Dec. 14, 2001) (precluding expert testimony regarding arsenic emissions where expert failed to connect methodology for measuring emissions to the specific facility at issue).[4] There is simply no data on HHRG financial results offered in support of the conclusions reached by the Pinney report.

---

[2] Pinney's Report is attached to Plaintiffs Brief as Exh. A, and relevant deposition excerpts are attached as Exh. B.
[3] In his Report, Pinney stated that a reduction in scrap precious metals would cause lower demand for HHRG's primary services in 1999, Report §III.6(c); and that the reduction in supply resulted in an increase in refining capacity that would depressed refining fees, and thus, refining profits. Report §III.6(d).
[4] Nimely is attached to Plaintiff's motion as Exh. C. In re Voluntary Purchasing Groups is attached to PwC's Opp. Brief as Exh. 4.

3

PwC does not contest Plaintiffs' contentions that Pinney's report lacks data or analytical rigor. It admits that Pinney has not quantified <u>any</u> impact of business conditions on HHRG's value. In its Opposition Brief, PwC chooses its words carefully, admitting only that Pinney "cannot quantify any specific decline in monetary value." PwC Br., p. 2. However, PwC's failure to contest the deposition testimony exposing Pinney's failure to conduct even the most rudimentary analysis of HHRG's actual financial performance is a clear admission that Pinney cannot support his conclusion that market conditions, in fact, resulted in a decline in HHRG's fair market value. PwC's admission that Pinney failed to quantify any specific decline in HHRG's monetary value establishes his opinion is unreliable.

Ultimately, Pinney is offered to give an opinion about HHRG's value, "namely, [that it was] the deteriorating market conditions, having nothing to do with Panexim, that caused loss in value." PwC Br., p.10. This opinion is not admissible because it lacks foundation and analytical support. Contradicting its clear statement as to the substance and purpose of Pinney's testimony (PWC Br., p.2, <u>syre</u>.), PwC states that "Pinney is not offered as a valuation expert. . . ." PwC Br., p. 10. It reasons that Pinney will only testify that the value of HHRG decreased and will not testify to any specific measure of a decline in HHRG's value or to the fair market value. PwC Br., p. 10. This is a distinction without a difference. Whether Pinney testifies to a specific valuation or whether as proposed by PwC, he testifies, to only an un-quantified decrease in HHRG's value, he must still perform <u>some analysis</u> to determine whether the market conditions actually impacted HHRG's financial performance, and, if so, whether they, alone or in combination with any other relevant factors and conditions, actually impacted HHRG's fair market value. As Pinney admitted, he performed no such analysis or valuation.

PwC makes the remarkable claim that such an analysis by Pinney is not necessary because it is HHRG's burden to prove, rather than PwC's burden to disprove,

4

that PwC's negligence and breach of contract destroyed HHRG's value. PwC Br., p. 2. According to PwC's logic, the demands of Rule 702 on a defendant's expert are excused, allowing the expert to speculate on any issue for which the plaintiff bears the burden of proof. It is not surprising that PwC does not cite to a single decision in support of this theory. There is nothing in either Rule 702, or in the significant volume of case law discussing Rule 702 which supports this notion. The suggestion by PwC that unsupported defense opinion triggers an obligation on the part of HHRG to present evidence to disprove the baseless opinion is a novel approach to evidence "gatekeeping" and would if adopted allow defendants to offer the type of evidence the Supreme Court has warned District Courts to avoid.

In an attempt to buttress Pinney's opinion, PwC points to documents indicating that increasing metal lease rates impacted HHRG's bottom line. Putting aside the fact that PwC does not have evidence to establish that fluctuations in HHRG's actual lease rates impacted HHRG's overall performance, this evidence is not relevant to the issue of whether Pinney's opinion passes muster under Rule 702. While the individual exhibits may be admissible, Pinney cannot base his conclusions on these exhibits without professional analysis. The unmistakable conclusion is that Pinney did not conduct any analysis or calculation applying accepted principles and methods concerning HHRG's financial performance or business valuation to the facts of this case. See Fed. R. Evid. 702 (3). If PwC sought an opinion of whether and to what extent any specific event impacted HHRG's value, a professional study should have been conducted. That analysis could then have been tested for reliability and credibility. Since Pinney did not even know what HHRG's metal lease rates were at any time during 1997, 1998 or 1999, his conclusion that higher lease rates affected adversely HHRG's value is unsupported and speculative. See Abrams v. Van Kampen Funds, Inc., No. 01-C-7538, 2005 WL 88973 *1 (N.D. Ill. January 13, 2005) (expert's conclusion that general market conditions

5

impacted stock price excluded where expert failed to connect change in conditions to change in stock value).[5] This is a clear case in which there is "too great an analytical gap between the data and opinion proffered." Amorgimos v. National R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002); see also Nimely, 2005 WL 1620481 at *12; In re Voluntary Purchasing, 2000 U.S. Dist. Lexis 18561 (precluding expert testimony regarding arsenic emissions where expert failed to connect methodology for measuring emissions to the specific facility at issue).

In Viterbo v. Dow Chemical Co., 826 F.2d 420, 422 (5th Cir. 1987), the Court noted "[i]f an opinion is fundamentally unsupported, then it offers no expert assistance to the jury. Furthermore, its lack of reliable support may render it more prejudicial than probative, making it inadmissible under Fed.R.Evid. 403." (Emphasis added.) Id. Pinney's opinions will confuse the jury and offer no reliable assistance to the jury. Reduced to its simplest terms, Pinney testimony is that two market conditions in 1999 negatively impacted HHRG's overall value. Plaintiffs Br., p 2. But when asked how these market conditions actually affected HHRG, he stated candidly: "I did not quantify that." Plaintiffs Br., pp. 10-11. Although the point of his proffered testimony seemingly is to give the jury an "expert" opinion about HHRG's value, he has testified unequivocally that he did not conduct any valuation analysis of HHRG. Plaintiffs' Br., p. 19. Without any analysis of the impact of these market conditions on HHRG, or any knowledge of HHRG's value, Pinney has no basis for concluding that the market conditions decreased HHRG's value.

---

[5]   Abrams was cited in Plaintiff's motion and is attached hereto as Exh. 1.

## CONCLUSION

For the reasons set forth in Plaintiffs' August 12, 2005 Memorandum of Law and in this Reply, Plaintiffs' Motion addressed to the testimony of William Pinney should be granted.

HANDY & HARMAN REFINING
GROUP, INC.

By: _____
William H. Champlin III
(ct04202), Champlin@tylercooper.com
Michael T. McCormack
(ct13799), mmcormack@tylercooper.com
TYLER COOPER & ALCORN, LLP
CityPlace, 35th Floor
185 Asylum Street
Hartford, CT 06103
Tel: (860) 725-6200
Fax: (860) 278-3802

By: _____
Steven Humphrey
(ct06053), shumphrey@rc.com
Dina Fisher
(ct14896), dfisher@rc.com
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103
Tel: (860) 275-8221
Fax: (860) 275-8299

## **CERTIFICATION**

I hereby certify that on September 19, 2005, a copy of the foregoing HHRG Reply Brief in Support of Their Motion to Preclude the Testimony of William Pinney was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept filing]. Parties may access this filing through the Court's system.

Thomas D. Goldberg, Esq.
David Elliott, Esq.
William H. Erickson, Esq.
Day, Berry & Howard
CityPlace I
Hartford, CT 06103

Steven Humphrey, Esq.
Dina Fisher, Esq.
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103

Edward J. Boyle, Esq.
Wilson, Elser, Moskowitz, Edelman
 & Dicker LLP
150 East 42nd St.
New York, NY 10017-5639

Stefan Dandelles, Esq.
Wilson, Elson, Moskowitz Edelman
 & Dicker LLP
120 North LaSalle Street
Suite 2600
Chicago, IL 60602

_____
William H. Champlin III