Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 88973 (N.D.Ill.)
**(Cite as: 2005 WL 88973 (N.D.Ill.))**

Page 10

Therefore, for purposes of ruling on this motion in limine, it is assumed that dividends represented interest earned on the loans and were separate from the loan asset itself that represented the value of the Fund's shares. Therefore, as a matter of law, the payment of dividends would not be part of the calculation of damages based on a decline in share value (NAV).

*13 Even if that should not taken as true, defendants have not shown that they have admissible evidence that the distribution of dividends negatively affected NAV. All they can point to is conclusory statements by their damages experts. Such unsupported, conclusory statements are not admissible evidence. See _Huey v. United Parcel Service, Inc.,_ 165 F.3d 1084, 1087 (7th Cir.1999); _Mid-State Fertilizer,_ 877 F.2d at 1339-40; _Ab v. Sekendur,_ 2004 WL 2434220 *6 (N.D.Ill. Oct.28, 2004); _Comer v. American Electric Power,_ 63 F.Supp.2d 927, 936-37 (N.D.Ind.1999). Alternatively, since the evidence related to the effect of distributing dividends is inadmissible in form, defendants will not be permitted to present it.

Defendants also argue that evidence as to dividends is admissible so that the jury will have a complete picture. They contend that the jury should know that class members received dividends as well as any proceeds from the redemption of their shares. Defendants contend the jury may make a decision based on sympathy for the plaintiffs if the jury believes the plaintiffs had a net loss. The jury will be instructed that they are not to decide the case based on sympathy for a party. Since, as discussed above, dividends are not relevant to calculating damages, there is no reason for the jury to know the amount of dividends received by class members. Defendants will not be permitted to present evidence regarding the amount of dividends distributed by the Fund. As part of the basic background for this case, including evidence as to how the Fund functioned, the parties are not precluded from presenting evidence that the loans held by the Fund earned interest and that the interest was distributed in the form of a dividend. The parties are only prohibited from presenting evidence as to the amount of the dividend and any effect the distribution of dividends may have had on the Fund's NAV.

For the foregoing reasons, this motion in limine will be granted. The parties will not be permitted to present evidence as to the amount of dividends that the Fund paid nor will they be permitted to argue that any distribution of dividends affected the Fund's NAV or the amount of damages to be awarded in this case. This includes that Fischel or Ross will not be permitted to testify as to the aspect of Opinion 2 that is based on the distribution of dividends affecting NAV and damages.

_C. DEFENDANTS' MOTIONS IN LIMINE_
_1. To Exclude the Testimony and Report of Linda Allen [137-1]_

Plaintiffs' valuation expert, Linda Allen, has a Ph.D. in Economics and Finance from New York University and is currently a Professor of Finance at Baruch College of the City University of New York and an Adjunct Professor of Finance at New York University. She is the author or coauthor of three books and numerous articles, primarily in the field of loan valuation and credit risk analysis. Her books include _Understanding Market, Credit and Operational Risk; The Value at Risk Approach_ and _Credit Risk Measurement; New Approaches to Value at Risk and Other Paradigms._

*14 Allen opines that, during the class period, the LPC database was a reliable benchmark of market prices for a majority of the loans held by the Fund. She bases this opinion on "(a) the number, sophistication and financial resources of dealers providing market quotations to LPC, (b) the number of quotes provided for each loan, (c) the quality controls put in place by LPC in response to the demand for quality by its customers, (d) the general acceptability of the database in the market, (e) the general acceptability of the database for the purposes of academic research, and (f) the internal studies conducted by LPC comparing LPC quotations to actual trade prices." Additionally, Allen opines that, during the class period, there was a secondary loan market for syndicated bank loans and readily available market quotations for a majority of the loans in the Fund's portfolio. The latter conclusion was based in part on data regarding the average number of bid quotes and ask quotes available for loans held by the Fund. Further, taking available LPC pricing data as accurate, Allen recalculated NAV for each day of the class period and determined how much NAV was overvalued on each day of the class period. She also compared LPC pricing data to the Fund's valuation of its loans, resulting in statistically significant evidence that the Fund generally overvalued loans.

Defendants do not dispute that Allen is qualified as an expert on finance. They contend, however, that she lacks expertise to opine on the senior loan

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 88973 (N.D.Ill.)
**(Cite as: 2005 WL 88973 (N.D.Ill.))**

Page 11

secondary market because she has never traded in that market, she has never worked for a senior loan fund, and she has never been associated with LPC or LSTA. Defendants contend that being a generalist on loan markets is not good enough, that she must be a specialist as to the senior loan market in order to be able to provide useful testimony for the jury. This objection is without merit. Allen's educational background and the research background shown by her publications show that she is well versed on loans, factors and conditions that affect loan markets, and other aspects of the pertinent financial markets. Her report also exhibits an understanding of the senior loan market and how it functions. One need not have been a participant in a particular market in order to qualify as an academic expert who can provide useful testimony. Compare Crowley v. Chait, 322 F.Supp.2d 530, 554-55 (D.N.J.2004) (Fischel's academic and consulting expertise in economics qualified him to provide useful testimony related to insurance accounting, loss reserve, and management issues).

Defendants also contend that Allen's statistical evidence comparing LPC pricing to the Fund's valuation of loans would not be useful to the jury because it assumes LPC pricing is accurate. This objection is without merit for two reasons. First, Allen also provides competent and admissible evidence supporting that LPC pricing was reliable and readily available. Second, even if she did not personally provide such support, the reliability of LPC pricing is a disputed issue of fact in this case. The jury will decide the extent to which LPC/LSTA pricing information qualifies as reliable and readily available market quotations. In light of that finding, the jury will accordingly consider and apply Allen's testimony comparing the LPC pricing to the Fund's valuations.

*15 This motion in limine will be denied in its entirety.

*2. To Exclude the Eaton Vance Documents [143-1]*

Eaton Vance is a senior loan fund unrelated to the Fund. A lawsuit is pending against Eaton Vance regarding their valuations of senior loans. Some of the same attorneys represent the plaintiffs in both this case and the Eaton Vance case. When deposed in the Van Kampen case, Taylor testified that monthly LSTA pricing information was not available to buy-side institutions like Van Kampen and Eaton Vance until September 1999. After fact discovery closed in the Van Kampen case, Taylor was deposed in the Eaton Vance case. At that time, Taylor corrected her testimony and stated that the reports were available to buy-side "founding" or "full" members as of July 1998. Van Kampen did not become a full member of LSTA until 2000, but could have become a full member in 1998. Eaton Vance was a full member in 1998 and therefore received the reports beginning in 1998. Those reports were disclosed in discovery in the Eaton Vance case. In the Eaton Vance case, reliability studies were also disclosed in which Eaton Vance had compared LPC market prices to actual prices Eaton Vance had paid for senior loans. Both the reports and reliability study are included as plaintiffs exhibits in the Van Kampen case. The reliability study was considered by Allen in rendering her opinions. Defendants object to use of these documents on the ground that they were not properly disclosed in discovery in the Van Kampen case and on grounds of relevance.

While defendants had some notice of the existence of these documents prior to the time the pretrial order was prepared, plaintiffs do not dispute that they should have provided fuller notice and also do not dispute that the actual documents were not provided to defendants until defendants filed the present motion in limine. Plaintiffs indicate that the failure to provide the documents was an oversight, but also note that defendants were informed of the documents during the time the final pretrial order was being prepared and did not take the opportunity to request copies at that time. Defendants were also offered the opportunity to further depose Allen regarding these documents, but decided not to do so. Defendants do not dispute that they now have the documents and do not point to any manner in which the delayed disclosure has prejudiced their preparation for trial. The documents will not be barred based on failure to timely and adequately disclose them if the deficiencies were harmless. See Fed.R.Civ.P. 37(c)(1). Here, there is no indication that defendants were prejudiced in any manner by the delays. No sanction will be imposed.

Defendants' other objection is relevance. Since the reports were available to entities like the Fund, the reports are relevant to the issue of whether there were readily available market quotations. The reports will not be stricken as exhibits. The reliability study represents a method for testing the accuracy of LPC pricing information and was relied upon one of plaintiffs' experts. The studies are also relevant evidence.

*16 For the foregoing reasons, this motion in limine

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 12
Not Reported in F.Supp.2d, 2005 WL 88973 (N.D.Ill.)
**(Cite as: 2005 WL 88973 (N.D.Ill.))**

will be denied.

*3. To Exclude the Testimony of Thomas Hudson [144-1]*

Thomas Hudson has been a senior loan trader at Goldman Sachs and was on the Distressed Loan Committee of LSTA. Plaintiffs represent that they decided to use him as a witness after defendants proposed Meenan and DeLuca as witnesses. Plaintiffs intend to use Hudson to rebut all or some of the testimony of Meenan and DeLuca. Plaintiffs do not dispute that Hudson was not previously disclosed in response to interrogatories. However, neither had defendants expressly disclosed Meenan and DeLuca in response to interrogatories. *See* § B(2), *supra.* Unlike Hudson, though, Meenan and DeLuca had been mentioned during deposition testimony. In any event, defendants have not been prejudiced by the delayed disclosure. Hudson will not be barred as a witness, but, if they desire, defendants may depose Hudson within the next 45 days.

*4. To Exclude Evidence Of, or Reference To, the SEC Letters [145-1]*

In November 1999, the Midwest Regional Office of the SEC conducted an on-site inspection of Van Kampen. The inspection was not limited to the Fund, but it did include an examination of valuation procedures used by the Fund. Related to this inspection, there was correspondence between Van Kampen officials and SEC officials. Defendants move to exclude from evidence three letters from the SEC to Van Kampen, dated October 20, 1999, March 28, 2000, and June 28, 2000. [FN11] Plaintiffs contend all three letters are admissible under Fed.R.Evid. 803(8).

> FN11. There are also four letters from Van Kampen to the SEC. Plaintiffs point out that the motion does not raise any objection to those letters. In the final pretrial order, however, defendants object to those letters as well. *See* Pl. Exh. 3, 6, 8, 10. Any issues that exist regarding the admissibility of the letters written by Van Kampen officials would be distinct from the Rule 803(8) issues raised regarding the letters from the SEC that are the subject of the present motion.

In a letter dated September 1, 1999, Van Kampen's General Counsel, A. Thomas Smith, wrote to the SEC's Chicago Branch Chief of Investment Company Examinations. This letter included a lengthy explanation of Van Kampen's methods for valuing loans. [FN12] In a letter dated October 20, 1999, which is one of the letters that is a subject of this motion in limine, the SEC's Midwest Regional Office Assistant Director wrote to Smith confirming an October 18 conversation. The letter referred to the SEC's upcoming inspection regarding three SEC senior loan funds, including the Fund, which would begin November 1, and requested certain additional documents.

> FN12. Neither side's brief attaches a copy of this letter. The remainder of its content is not disclosed in the briefs and neither side makes any representation as to what caused the General Counsel to write this letter. Presumably, it was a response to a prior inquiry from the SEC.

According to Smith's deposition testimony, the inspection lasted approximately one week. The inspection team interviewed Smith, the Fund's President and Portfolio Manager, and the Fund's Assistant Portfolio Manager. Records were also examined.

In January 2000, the Fund adopted the 3 x 3 by 100 screen and requested a meeting with the SEC to discuss it. This meeting took place on January 25, 2000 in Washington, D.C. With a letter dated February 1, 2000, Van Kampen sent additional documents to the SEC.

In a letter dated March 28, 2000, which is one of the letters that is a subject of this motion in limine, the SEC's Assistant Regional Director wrote to the Fund's President. The letter sets forth findings made during the November inspection. The SEC sets forth a number of deficiencies that were found with the pricing guidelines that were in effect as of November 1999 (the "Old Guidelines"). The inspection found a failure to adequately consider secondary market indications, including market quotations received directly from market makers or indirectly through LPC. A failure to consider fluctuations in spreads over the base rate of interest for pricing purposes was also found. In the letter, the Assistant Regional Director also commented on the new 3 x 3 x 100 pricing procedure (the "Proposed Guidelines") and found deficiencies. It was found that the Proposed Guidelines too readily permitted the Adviser to override prices otherwise indicated by the 3 x 3 x 100 procedure. Where 3 x 3 x 100 data was not available for pricing a loan, the Proposed Guidelines still failed

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 88973 (N.D.Ill.)
**(Cite as: 2005 WL 88973 (N.D.Ill.))**

Page 13

to adequately consider spread when fair valuing a loan. The letter also criticizes Van Kampen for finding that no Fund Board Member was on the Adviser's Pricing Committee that made fair value determinations. The Board was also criticized for having made no attempt to compare fair valuation determinations with actual recoveries on distressed loans.

*17 In a response letter dated April 27, 2000, Smith responded to the SEC's findings as to the Proposed Guidelines and the criticisms of the Board. Smith noted new procedures that limited overrides of market indicators to one day, required daily approval by the Pricing Committee, and quarterly review by the Board. He disagreed with the criticism regarding not adequately considering spreads on the ground that it required too complex an application to be feasibly implemented. As to the Board criticisms, Smith noted that the Board would not be reviewing certain information on a quarterly basis and that it would be provided reports comparing distressed loan recoveries with their valuations.

The last letter to which defendants object is the SEC's Regional Director's June 28, 2000 letter to Smith, which was a response to Smith's April 27, 2000 letter. The June letter notes that the valuation techniques used by the three funds had been discussed with the Division of Investment Management's Office of Chief Counsel and that that office concurred with the views expressed in the June letter.

First, the June letter reemphasized that, when available, the law requires that market quotations be used to price financial instruments and that the funds had to look to other possible sources for quotations when LPC supplied quotes could not be used.
> It is our understanding that the Funds do not seek other sources of market quotations whenever LPC-supplied quotes were deemed unreliable. We were not shown any evidence that explained precisely why the LPC-supplied quotes did not reflect current market values other than the fact the quotes fell outside the predetermined parameters. We also did not see any documentation evidencing that the Funds made a determination in these circumstances that reliable market quotations were not readily available.

June 28, 2000 SEC Letter at 2.

The letter again criticized the three funds' applications of fair value methodology.
> In a majority of situations in which the Funds used fair value to price their portfolio instruments, the fair value methodology used resulted in such instruments being valued higher than the LPC-supplied quotes. We also noted that in most circumstances when valuations are not based on LPC-supplied quotes, loans were fair valued at approximately par value.
> The Funds have not provided us with any analysis and documentation that supported the use of such higher values.... The only support presented for valuation at par was that this reflected the amount the Funds would receive if instruments were held to maturity or the loan prepaid. As discussed in the Division of Investment Management's December 8, 1999 letter to the ICI, the Staff has consistently rejected a policy of equating fair value with par value absent evidence that an instrument could be sold currently at approximately par.

Id.

The letter agreed that certain factors suggested by Van Kampen could appropriately be considered when it was appropriate to apply fair value methodology, but emphasized that these were not the only factors to consider. "All relevant factors" were to be considered.
> *18 ... The following issues suggest that all relevant factors are not being considered in using fair values to price certain of the Funds' portfolio instruments:
> • The substantial difference that often exists between quotations provided by LPC and fair values used by the Funds in situations where Van Kampen's price discovery mechanism does not produce alternative market quotations that Van Kampen deems reliable.
> • The absence of any demonstrated analysis on an instrument-by-instrument basis supporting a valuation at approximately par value.

Id. at 3.

Rule 803(8) provides:
> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 88973 (N.D.Ill.)
**(Cite as: 2005 WL 88973 (N.D.Ill.))**

Page 14

Fed.R.Evid. 803(8).

Plaintiffs contend that the October 29, 1999 letter is admissible under Rule 803(8)(A) and that the other two letters are admissible under Rule 803(8)(C). The October letter is a request for information that occurred prior to the November inspection; it does not include any factual findings that would bring it within the purview of subsection (C). The trustworthiness clause of Rule 803(8) still applies to subsection (A). See Nachtsheim v. Beech Aircraft Corp., 847 F.2d 1261, 1273 (7th Cir.1988); United States v. Koontz, 143 F.3d 408, 412 (8th Cir.1998); Chapman v. San Francisco Newspaper Agency, 2002 WL 31119944 *2 (N.D.Cal. Sept.20, 2002); United States v. May, 18 M.J. 839, 842-43 (1984). The October 29 letter, however, certainly is trustworthy as to what it is, a simple statement confirming that additional documents had been requested. The October 29 letter is nonhearsay in accordance with Rule 803(8)(A). Whether other grounds for excluding it exist will be discussed below.

The other two letters contain findings based on the November inspection. To be nonhearsay, they must satisfy the criteria of Rule 803(8)(C), including that they do not have indicia of lacking trustworthiness. If the threshold requirements of being factual findings resulting from an investigation made pursuant to authority granted by law are satisfied, trustworthiness is presumed and the burden is on the party opposing admission to show a lack of trustworthiness. Amtrust Inc. v. Larson, 388 F.3d 594, 599 (8th Cir.2004); Bridgeway Corp. v. Citibank, 201 F.3d 134, 143 (2d Cir.2000); Huff v. State of Illinois, 2003 WL 168630 *5 (N.D.Ill. Jan.23, 2003); Klein v. Vanek, 86 F.Supp.2d 812, 820 (N.D.Ill.2000). Here, the letters contain factual findings [FN13] that were made following an SEC inspection performed pursuant to authority of law. Therefore, the findings are presumed to be trustworthy.

> FN13. Conclusions and opinions that are factual in nature may fall within the Rule 803(8)(C) exception. Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 162, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988); United States v. Romo, 914 F.2d 889, 896 (7th Cir.1990), cert. denied, 498 U.S. 1122, 111 S.Ct. 1078, 112 L.Ed.2d 1183 (1991); United States v. Peitz, 2002 WL 31101681 *5 (N.D.Ill. Sept.20, 2002). However, legal conclusions of an agency will not be admitted under the Rule 803(8)(C) exception. Hines v. Brandon Steel Decks, Inc., 886 F.2d 299, 302-03 (11th Cir.1989), cert. denied, 503 U.S. 971, 112 S.Ct. 1587, 118 L.Ed.2d 305 (1992); Miranda-Ortiz v. Deming, 1998 WL 765161 *1 (S.D.N.Y. Oct.29, 1998). To the extent any of the SEC letters contain legal conclusions; any admissible portions would be limited to those findings that are factual in nature. Cf. Peitz, 2002 WL 31101681 at *5.

*19 In evaluating trustworthiness, four nonexclusive factors set forth in the Advisory Committee Notes to Rule 803(8) are generally considered. See Coleman v. Home Depot, Inc., 306 F.3d 1333, 1342 (3d Cir.2002); Klein, 86 F.Supp.2d at 820. They are the timeliness of the investigation; the special skill or expertise of the official; whether a hearing was held; and possible motivational problems with the investigator. Additional factors that have been considered include the finality of the findings; the extent to which the findings are based on materials that would not be admissible in evidence; the degree to which any hearing complied with due process; the extent to which there is an ascertainable record; the extent to which the findings represent an implementation of a policy in contrast to findings of fact; whether the findings incorporate findings of another agency that may not have been trustworthy; and, if expert opinions were involved, the extent to which the usual criteria for such opinions was present. Coleman, 306 F.3d at 1342 n. 4 (quoting Zenith Radio Corp. v. Matsushita Electrical Industries Co., 505 F.Supp. 1125, 1147 (E.D.Pa.1980), aff'd in part, rev'd in part on other grounds, In re Japanese Electronic Products Antitrust Litigation, 723 F.2d 238 (3d Cir.1983), rev'd, Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

Here, no questions are raised regarding the SEC's motivation. The subject of the investigation was well within the expertise of the SEC. The inspection was conducted in November and the first letter was issued within a few months. Timeliness is also satisfactory. Defendants contend there are indicia of a lack of trustworthiness because no formal hearing was held and the findings were made by the Midwest Regional Office without ever being adopted by the Commission itself.

It is true that findings following a formal hearing with full due process procedures are more likely to be found to be trustworthy. However, findings based on other investigative procedures may still be

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

admissible. *Bank of Lexington & Trust Co. v. Vining-Sparks Securities, Inc.,* 959 F.2d 606, 617 (6th Cir.1992); Michael H. Graham, *Federal Practice & Procedure* § 7049 at 498 n.24 (2d Interim Ed.1997). *See, e.g., Coleman,* 306 F.3d at 1341-43 (determination letter based on EEOC investigation); *Bank of Lexington,* 959 F.2d at 616-17 (letters of caution from National Association of Securities Dealers); *United States v. Peitz,* 2002 WL 31101681 *5 (N.D.Ill. Sept.20, 2002) (SEC action memorandum). Here, there is nothing presented by defendants to indicate that the SEC's inspection was not thorough or adequate. Although no hearing was held, the correspondence shows the SEC provided Van Kampen with a number of opportunities to provide additional documentation or evidence as well as opportunities to argue that the three funds' valuation procedures were adequate. Defendants contend the inspection was not intended to fully examine the Fund's valuation procedures because one of the letters refers to the inspection as being pursuant to § 31 of the 1940 Act, 15 U.S.C. § 80a-30, which defendants contend is an inspection to ensure that proper records are kept. Although § 31(a) (15 U.S.C. § 80a-30(a)) requires that certain records be maintained, the examination provided for in § 31(b) (15 U.S.C. § 80a-30(b)) is not limited to an examination to determine compliance with the recordkeeping requirement of § 31(a). "All records required to be maintained and preserved in accordance with subsection (a) of this section shall be subject at any time and from time to time to such reasonable periodic, special, and other examinations by the Commission, or any member or representative thereof, as the Commission may prescribe." 15 U.S.C. § 80a-30(b). The correspondence makes clear that the inspection was not intended merely to confirm that certain records were maintained. Defendants do not show that the SEC employed inspection procedures that raise questions as to the findings' trustworthiness.

*20 Defendants also contend that the letters are untrustworthy because they were never adopted by the Commission itself. Where recommendations are being made to the Commission, findings made by SEC officials may be found to be untrustworthy if not adopted by the Commission. *See Peitz,* 2002 WL 31101681 at *5. That, however, is not the present situation. The Regional Office had not made any recommendation to the Commission. The investigative procedures that were employed had not reached a stage that required Commission approval. As the last letter indicated, the Regional Office did get the concurrence of the Chief Counsel's Office. The findings in the letters will not be found untrustworthy simply because they were not approved by the Commission.

There is nothing to support that the Regional Office's findings based on its inspection were untrustworthy. The presumption of trustworthiness remains intact. Therefore, in accordance with Rule 803(8), the factual findings contained in the three letters are not hearsay. However, legal conclusions contained in the letters would not be admissible to prove the truth of the matters contained therein. Statements that the funds failed to use market quotations that were readily available would itself be an admissible factual statement. The additional statements that such conduct violated statutes or regulations would not be admissible.

Although factual findings in the letters are not excluded as hearsay, it still must be considered whether the findings should be excluded on other grounds. Statements that fall within a Rule 803 exception may still be excluded as unduly prejudicial under Rule 403 or as irrelevant. *See Cooper v. Carl A. Nelson & Co.,* 211 F.3d 1008, 1018 (7th Cir.2000); *Klein,* 86 F.Supp.2d at 820.

Defendants argue that the present case involves misstatements of fact that violated § 11 whereas the letters address violations of § 2 of the 1940 Act which is not the issue in this case. As previously held, however, the legal conclusions regarding compliance with the 1940 Act are not parts of the letters that are nonhearsay under Rule 803(8)(C). Facts supporting possible violations of the 1940 Act, though, are the same facts that support misstatements or omissions in the prospectuses. Basically, some of the alleged misstatements in the prospectuses were that the Fund was following valuation procedures, ones that complied with statutory requirements, but in actuality it was not. These facts will be before the jury. The jury would not be confused by being told that the SEC found facts that are consistent with plaintiffs' allegations regarding the Fund's actual valuation practices. They will not be told that the SEC found or indicated such practices violated the 1940 Act.

Defendants' other contention is that it would be unfairly prejudicial to provide evidence showing that the SEC reached conclusions that go to core issues that plaintiffs must prove to the jury. *See Klein,* 86 F.Supp.2d at 820-21. Defendants argue the jury will have before it the same evidence that was before the SEC plus more and that, without knowing the

conclusions reached by the SEC, the jury can conclude for itself whether there were readily available market quotations that the Fund did not adequately take into account when valuing its holdings. There is case law supporting that it is within the trial court's discretion to exclude Rule 803(8)(C) evidence on this ground. *See* Tulloss v. Near North Montessori School, Inc., 776 F.2d 150, 153-54 (7th Cir.1985); Klein, 86 F.Supp.2d at 820-21. *See also* Young v. James Green Management, Inc., 327 F.3d 616, 624-25 (7th Cir.2003). Defendants do not cite any case holding that it is necessarily an abuse of discretion to admit such evidence. The Supreme Court has held that, as with expert and lay opinions (*see* Fed.R.Evid. 704(a)), Rule 803(8)(C) evidence that goes to ultimate issues may be admitted. *See* Beech Aircraft, 488 U.S. at 169-70.

*21 Here, the jury will not simply be presented with evidence of the pricing information available to the Fund and then decide whether, contrary to representations in the prospectuses, there were readily available market quotations that were not used by the Fund in valuing loans or pertinent pricing information that was not considered when using fair value methods. Each side will also present experts who will opine as to whether such quotations or pricing information was available. In other words, even without the SEC letters, there will be experts opining as to some of the factual issues that must be decided by the jury. The SEC letters are analogous to having another expert's testimony regarding such ultimate issues, but an expert who is not biased by being connected to a particular party. Unlike the actual experts, the SEC letters will not be subject to cross examination. However, the parties will still be able to challenge the SEC's conclusions through the testimony of their own experts as well as in closing arguments.

The SEC letters apparently would also be relevant and admissible for another reason. Defendants will raise a business judgment defense based on their believing alleged misstatements in the prospectuses are actually true. The criticisms contained in the letters from the SEC, to the extent known by particular defendants and only as to prospectuses issued after such knowledge, would go to the question of those defendants' good faith beliefs regardless of whether the letters are admitted for the truth of the matters contained therein.

It is found that admission of the SEC letters would not be unfairly prejudicial to defendants. Therefore, in redacted form as discussed above, none of the letters will be excluded from evidence.

For the foregoing reasons, this motion in limine will be granted in part and denied in part. The letters will not be excluded from evidence except that legal conclusions must be redacted from the letters. The parties are to meet in an attempt to agree upon redacted versions of the letters.

### D. CONCLUSION

The parties previously attempted to settle this case with the aid of a mediator, but could not reach an accord. Perhaps, in light of today's ruling, the parties will now be able to settle the case. Within one week, the parties shall contact each other to discuss the possibility of settlement. As a possible aid in the process, this case will be referred to the assigned magistrate judge to conduct settlement proceedings. The parties shall promptly contact the minute clerk of the assigned magistrate judge to arrange for a date to appear before the magistrate judge.

At the next status hearing, the parties shall report on the possibility of settlement.

IT IS THEREFORE ORDERED that:

(1) Plaintiffs' Motion In Limine To Bar Evidence that Traders Issued False Loan Pricing Data [138-1] is denied, but without prejudice to objecting to Taylor's testimony at trial.

(2) Plaintiffs' Motion In Limine To Exclude the Testimony of Kevin Meenan and Anthony DeLuca [139-1] is granted in part and denied in part. Within 45 days, plaintiffs may depose Meenan and DeLuca.

*22 (3) Plaintiffs' Motion In Limine To Exclude the Testimony and Report of Michael P. McAdams [140-1] is granted in part and denied in part. McAdams will not be permitted to testify as to (a) whether any actual valuation practice of the Fund is consistent with a description of the practice contained in a prospectus nor (b) whether any defendant acted in good faith or with some other type of intent.

(4) Plaintiffs' Motion In Limine To Exclude Testimony of Expert Witnesses Daniel R. Fischel and David J. Ross [141-1] is granted in part and denied in part. Fischel and Ross will be barred from testifying as to Opinion 1 (the effect of adverse market conditions on the Fund NAV) and defendants will be limited to using one expert to testify as to the remaining opinions contained in the Fischel/Ross

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                     Page 17
Not Reported in F.Supp.2d, 2005 WL 88973 (N.D.Ill.)
**(Cite as: 2005 WL 88973 (N.D.Ill.))**

Report.

(5) Plaintiffs' Motion In Limine To Preclude Evidence and Argument Concerning Dividends Paid by the Van Kampen Prime Rate Income Trust to Shareholders [142-1] is granted. The parties will not be permitted to present evidence as to the amount of dividends that the Fund paid nor will they be permitted to argue that any distribution of dividends affected the Fund's NAV or the amount of damages to be awarded in this case.

(6) Defendants' Motion In Limine To Exclude the Testimony and Report of Linda Allen [137-1] is denied.

(7) Defendants' Motion In Limine To Exclude the Eaton Vance Documents [143-1] is denied.

(8) Defendants' Motion In Limine To Exclude the Testimony of Thomas Hudson [144-1] is granted in part and denied in part. Within 45 days, defendants may depose Hudson.

(9) Defendants' Motion In Limine To Exclude Evidence Of, or Reference To, the SEC Letters [145-1] is granted in part and denied in part. Legal conclusions must be redacted from the SEC letters.

(10) This case will be referred to the assigned magistrate judge to supervise settlement discussions.

(11) A status hearing before Judge Hart will be held on March 16, 2005 at 11:30 a.m.

Not Reported in F.Supp.2d, 2005 WL 88973 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 1173328 (Trial Motion, Memorandum and Affidavit) Joint Motion to Dissolve Stay of Ruling on Cross Motions for Summary Judgment (Mar. 15, 2004)

• 2004 WL 1173325 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum of Law in Support of Their Motion for Summary Judgment (Jan. 21, 2004)

• 2004 WL 1173326 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Jan. 21, 2004)

• 2004 WL 2257154 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum of Law in Support of Their Motion for Summary Judgment (Jan. 21, 2004)

• 2004 WL 2257155 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Jan. 21, 2004)

• 2004 WL 1173320 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment (Jan. 07, 2004)

• 2004 WL 1173321 (Trial Motion, Memorandum and Affidavit) Lead Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment (Jan. 07, 2004)

• 2004 WL 2257150 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment (Jan. 07, 2004)

• 2004 WL 2257151 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Statement of Uncontested Facts (Jan. 07, 2004)

• 2004 WL 2257152 (Trial Motion, Memorandum and Affidavit) Lead Plaintiffs' Response in Opposition to Defendants' Local Rule 56.1(a)(3) Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment (Jan. 07, 2004)

• 2004 WL 2257153 (Trial Motion, Memorandum and Affidavit) Lead Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment (Jan. 07, 2004)

• 2003 WL 23524445 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Dec. 08, 2003)

• 2003 WL 23818993 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment (Dec. 08, 2003)

• 2003 WL 23524455 (Trial Motion, Memorandum and Affidavit) Lead Plaintiffs' Motion to Exclude Testimony of Expert Witnesses Daniel R. Fischel and David J. Ross and Memorandum of Law in Support

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.


Not Reported in F.Supp.2d                                                        Page 18
Not Reported in F.Supp.2d, 2005 WL 88973 (N.D.Ill.)
**(Cite as: 2005 WL 88973 (N.D.Ill.))**

Thereof (Dec. 05, 2003)

• 2003 WL 23524437 (Trial Motion, Memorandum and Affidavit) Agreed Motion to Expand Page Limits for Briefs on Motions for Summary Judgment (Dec. 2003)

• 2003 WL 23524441 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment (Dec. 2003)

• 2003 WL 23524448 (Trial Motion, Memorandum and Affidavit) Lead Plaintiffs' Motion for Summary Judgment (Dec. 2003)

• 2003 WL 23524451 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Strike the Testimony of Michael P. McAdams (Dec. 2003)

• 2003 WL 23524425 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Renewed Motion for Leave to Submit a Rebuttal Expert Report on Damages (Sep. 08, 2003)

• 2003 WL 23524429 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for Non-Monetary Sanctions and Memorandum of Law in Support Thereof (Sep. 08, 2003)

• 2003 WL 23524409 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum in Support of Their Motion for Leave to Take Limited Discovery Regarding the PwC Report (May. 19, 2003)

• 2003 WL 23524415 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Briefly Postpone Expert Discovery Deadline Because of Defendants' Failure to Timely Comply with Expert Discovery and Scheduling Problems (May. 19, 2003)

• 2003 WL 23818992 (Trial Motion, Memorandum and Affidavit) Class Plaintiffs' Supplemental Memorandum in Support of Their Motion to Compel Production of the PricewaterhouseCoopers' Report (Apr. 16, 2003)

• 2003 WL 23524401 (Trial Motion, Memorandum and Affidavit) Defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion to Compel (Apr. 09, 2003)

• 2003 WL 23818991 (Trial Motion, Memorandum and Affidavit) Defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion to Compel (Apr. 09, 2003)

• 2003 WL 23524404 (Trial Motion, Memorandum and Affidavit) Class Plaintiffs' Supplemental Memorandum in Support of Their Motion to Compel Production of the Pricewaterhousecoopers' Report (Apr. 2003)

• 2003 WL 23524396 (Trial Motion, Memorandum and Affidavit) Lead Plaintiffs' Reply Memorandum of Law in Further Support of Lead Plaintiffs' Motion to Compel (Mar. 31, 2003)

• 2003 WL 23818990 (Trial Motion, Memorandum and Affidavit) Lead Plaintiffs' Reply Memorandum of Law in Further Support of Lead Plaintiffs' Motion to Compel (Mar. 31, 2003)

• 2003 WL 23524392 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion to Compel (Mar. 17, 2003)

• 2002 WL 32509708 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for a Limited Extension of the Fact Discovery Deadline to Accommodate Scheduling Conflicts and Late-Produced Documents and for Leave to Take One Additional Non-Party Deposition (Dec. 16, 2002)

• 2002 WL 32509702 (Trial Motion, Memorandum and Affidavit) Lead Plaintiffs' Motion to Compel Production of Certain Documents from Defendants (Oct. 28, 2002)

• 2002 WL 32509696 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for a Limited Extension of the Written Discovery Deadline (Oct. 25, 2002)

• 2002 WL 32509688 (Trial Motion, Memorandum and Affidavit) Lead Plaintiffs' Motion to Enlarge Closure Date for Written Discovery (Aug. 21, 2002)

• 2002 WL 32509673 (Trial Motion, Memorandum and Affidavit) Agreed Motion for Protective Order (Jul. 31, 2002)

• 2002 WL 32510817 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion for Reconsideration, or, In the Alternative, Certification (Jul. 22, 2002)

• 2002 WL 32679357 (Trial Motion, Memorandum and Affidavit) Defendants' Motion for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 88973 (N.D.Ill.)
**(Cite as: 2005 WL 88973 (N.D.Ill.))**

Page 19

Reconsideration or, in the Alternative, Certification (Jul. 22, 2002)

• 2002 WL 32510814 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum in Support of Motion for Class Certification (Jul. 17, 2002)

• 2002 WL 32679351 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum in Support of Motion for Class Certification (Jul. 17, 2002)

• 2002 WL 32510750 (Trial Pleading) Defendants' Amended Answer and Affirmative Defenses (Jul. 01, 2002)

• 2002 WL 32679348 (Trial Pleading) Defendants' Amended Answer and Affirmative Defenses (Jul. 01, 2002)

• 2002 WL 32510747 (Trial Pleading) Defendants' Answer and Affirmative Defenses (Jun. 12, 2002)

• 2002 WL 32679343 (Trial Pleading) Defendants' Answer and Affirmative Defenses (Jun. 12, 2002)

• 2002 WL 32510805 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for Reconsideration (May. 23, 2002)

• 2002 WL 32510802 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum in Support of Motion to Dismiss (Mar. 04, 2002)

• 2002 WL 32679341 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum in Support of Motion to Dismiss (Mar. 04, 2002)

• 2002 WL 32510795 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Motion to Dismiss (Feb. 19, 2002)

• 2002 WL 32679337 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Motion to Dismiss (Feb. 19, 2002)

• 2002 WL 32510788 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Stay Petition for Class Certification (Jan. 29, 2002)

• 2002 WL 32510776 (Trial Motion, Memorandum and Affidavit) Lead Plaintiffs' Motion for Class Certification (Jan. 28, 2002)

• 2002 WL 32510780 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Support of Motion to Dismiss (Jan. 28, 2002)

• 2002 WL 32679331 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Support of Motion to Dismiss (Jan. 28, 2002)

• 2002 WL 32510773 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Dismiss Pursuant to Federal Rule 12(b)(6) (Jan. 22, 2002)

• 2002 WL 32510770 (Trial Motion, Memorandum and Affidavit) Defendants' Agreed Motion to Extend the Page Limit and Time for Filing a Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint (Jan. 14, 2002)

• 2002 WL 32510742 (Trial Pleading) Consolidated Amended Complaint (Jan. 07, 2002)

• 2002 WL 32679327 (Trial Pleading) Consolidated Amended Complaint (Jan. 07, 2002)

• 2001 WL 34667911 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiff's Motion for Consolidation, Appointment of Lead Plaintiffs and Approval of Counsel (Dec. 12, 2001)

• 2001 WL 34554350 (Trial Pleading) Complaint (Sep. 28, 2001)

• 2001 WL 34667908 (Trial Pleading) Complaint (Sep. 28, 2001)

• 1:01cv07538 (Docket) (Sep. 28, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.