UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GOLDEN WEST REFINING CORPORATION, LTD., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 3:02 CV 1379 (MRK) |
| vs. | ) ) | |
| PRICEWATERHOUSECOOPERS, LLP and COOPERS & LYBRAND, LLP, | ) ) ) | |
| Defendants. | ) ) | |
| ALEC SHARP, et al., | ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | CIVIL ACTION NO. 3:02 CV 1572 (MRK) |
| PRICEWATERHOUSECOOPERS, LLP d/b/a PRICE WATERHOUSE, LLP, | ) ) ) | |
| Defendant. | ) ) ) | |
| HANDY & HARMAN REFINING GROUP, INC., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 3:02 CV 1803 (MRK) |
| vs. | ) ) | |
| PRICEWATERHOUSECOOPERS, LLP, | ) ) | |
| Defendant. | ) | |

**UNDERWRITERS' RESPONSE TO PWC'S LOCAL RULE 56(a)2 STATEMENT OF DISPUTED ISSUES OF MATERIAL FACT**

COMES NOW Plaintiff Alec Sharp et. al. ("Underwriters") and respectfully submits their

statement in response to the Statement of Disputed Issues of Material Fact filed by

283487.1

PricewaterhouseCoopers LLP ("PwC") in support of its opposition to Underwriters' Motion for Partial Summary Judgment, as follows:

1. PwC performed an audit of the financial statements of HHRG as of and for the period ended March 31, 1997 in accordance with generally accepted auditing standards, as agreed in the April 10, 1997 engagement letter. (Def. Ex. 19 (1997 Engagement Letter); Def. Ex. 15 (Temkin Report, at 12.)

**RESPONSE:** Underwriters object to this assertion in that it does not reflect an issue of material fact to Underwriters' motion for partial summary judgment for breach of contract. *See* Local Rule 56(a)2; *see also* Underwriters' Reply Brief. Underwriters further object that the issue of material fact set forth in this paragraph is actually a conclusion of PWC's expert and therefore does not represent a "fact" dispute between the parties. *See* Underwriters' Reply Brief.

2. "Critical Matter #5" (Pl. Ex. 2) which provides, "As several of the accounts receivable at 3/31/97 represent balances owed from advances to third world countries in South America, C&L will ensure that there are no collectibility issues with regard to such accounts," is a PwC internal work paper and was not provided to HHRG at anytime during the performance by PwC of audit work for HHRG (Def. Ex. 1 (Corl Aff.) at ¶ 3.)

**RESPONSE:** Underwriters object to this assertion because it does not comply with Local Rule 56(a)2 in that the provision of Critical Matter # 5 to HHRG is not is not a material fact to Underwriters' motion for partial summary judgment on the breach of contract claim.

3. PwC performed an audit of the financial statements for HHRG as of and for the period ending March 31, 1998 in accordance with generally accepted auditing standards, as agreed in the March 30, 1998 engagement letter. (Def. Ex. 15 (Temkin Report) at 12; Pl. Ex. 4 (the 1998 Engagement Letter).)

283487.1

**RESPONSE:** Underwriters object to this assertion in that it does not reflect an issue of <u>material</u> fact to Underwriters' motion for partial summary judgment for breach of contract. *See* Local Rule 56(a)2; *see also* Underwriters' Reply Brief. Underwriters further object that the issue of material fact set forth in this paragraph is actually a conclusion of PWC's expert and therefore does not represent a "fact" dispute between the parties. *See* Underwriters' Reply Brief.

4. The parties did not intend that the 1998 Service Plan (Pl. Ex. 3) would be incorporated by reference into the 1998 engagement letter such that each statement in the service plan would constitute a specific contractual obligation to HHRG. (Pl. Ex. 4 (1998 Engagement Letter); Pl. Ex. 9 (February Dansinghani Tr.) at 288-290.)

**RESPONSE:** Underwriters object to this assertion because it does not comply with Local Rule 56(a)3 in that the cited evidence does not support the conclusion asserted by PwC. In particular, it is not disputed that the engagement letter itself is unambiguous. As such, the intentions of the parties as expressed in the engagement letter is a question of law for this Court to decide and not material issue of disputed <u>fact</u>. *See* Underwriters' Reply brief. Further, the citation to the Dansinghani transcript is misplaced. Dansinghani was not a "party" to the contract at issue.

5. PwC performed all steps contemplated by the 1998 Service Plan with respect to evaluating the existence and collectibility of foreign accounts receivable including the Panexim receivable. (Pl. Ex. 9 (February Dansinghani Tr.) at 129; PwC work papers regarding various audit procedures performed by PwC addressing the existence and collectibility of accounts receivable and foreign accounts receivable – PwC 98 WP 01030, 01041, 01044, and PwC 98 EW 0361-0362 submitted as Def. Exs. 20, 21, 22, and 23 respectively.)

**RESPONSE:** Underwriters objects to the implication that "evaluating the existence and collectibility of foreign accounts receivable" constitutes "all steps contemplated by the 1998

Service Plan." Such an implication is not supported by the materials cited and therefore is not in compliance with Local Rule 56(a)3. Underwriters object to the remainder of this assertion in that it is not <u>material</u> to whether PwC complied with its obligation to assure that advances would not be made unless materials were in the possession of HHRG. As such, this paragraph is not a issue of disputed <u>material</u> fact pursuant to Local Rule 56(a)2.

6. HHRG did not have a binding corporate policy that precluded, under any circumstances, advances to its customers where the amount of the advance exceeded the value of metals in HHRG's possession or in transit to HHRG associated with such advance. (December 14, 1998 memorandum showing unsecured advances to, among others, Panexim and Orion marked as Ex. 31 at the deposition of John King and submitted as Def. Ex. 24; September 3, 1996 HHRG memo showing unsecured advances to MDO Chile marked as Ex. 100 at the deposition of Martin Boehm and submitted as Def. Ex. 25; draft report dated July 20, 1999 marked as Ryan Ex. 21 submitted herewith as Def. Ex. 26, HHRG-PWC153691.)

**RESPONSE:** Underwriters object to this assertion because it does not comply with Local Rule 56(a)3 in that the cited evidence does not support the assertions made in this paragraph. In particular, PwC offers no evidence that HHRG's policy prohibiting unsecured advances was not intended to be binding or was not binding on HHRG management. The materials merely show that under certain circumstances HHRG management breached the policy or suggested breaching the policy. Underwriters further object to this assertion in that it fails to comply with Local Rule 56(a)2 because whether or not the policy is "binding" is immaterial to Underwriters' motion for partial summary judgment on the breach of contract claim.

7. HHRG's board of directors did not "rely upon the oversight of HHRG's auditors" to make sure that HHRG management was complying with HHRG corporate policy. (Pl. Ex. 11 (Ryan Tr.) at 37-38, 58.)

**RESPONSE:** Underwriters object to this assertion in that it is immaterial to Underwriters' motion for partial summary judgment for breach of contract. *See* Local Rule 56(a)2; *see also* Underwriters' Reply Brief. PwC offers no legal authority that "reliance" is an element of Underwriters' breach of contract claim. Its own opposition brief sets forth the elements of a breach of contract claim, which does not include an element of reliance. Opposition brief, p. 9.

8. HHRG's managers knowingly withheld material information from PwC related to HHRG's transactions with Panexim. (Def. Ex. 16 (Ollett Tr.) at 97-106.)

**RESPONSE:** Underwriters object to this assertion in that it fails to comply with Local Rule 56(a)3 because the cited evidence fails to support the assertion set forth in this paragraph. Specifically, Ollett did not testify that HHRG's managers knowingly withheld any information that was requested by PwC.

9. HHRG did not take reasonable actions to mitigate its damages. (Def. Ex. 16 (Ollett Tr.) at 94-106; Pl. Ex. 17 (PwC's responses to GWRC's interrogatories), at pp. 7-8; Def. Exs. 8-14 (Russo Exs. 12-17-, 17, 19-21); July 7, 2005 expert report of R. Gene Brown submitted as Def. Ex. 27, at 16-27.)

**RESPONSE:** Underwriters object to this paragraph on the grounds that it is a broad legal conclusion and does not state a material issue of disputed fact as required in Local Rule 56(a)2. Underwriters further object to this assertion in that it fails to comply with Local Rule 56(a)3 because the cited evidence fails to support the assertion set forth in this paragraph. For example, Ollett's cited testimony does not refer to any further unsecured advances made to Panexim or

any other unreasonable actions by the HHRG board that would evidence a failure to mitigate. PwC's citation to its own answers to discovery (prepared by its lawyers) is hardly evidence that HHRG failed to take appropriate action to mitigate its loss. The further documentary evidence and the "expert" testimony of Gene Brown refer only to post-loss activities when there was nothing further the board could do to retrieve the funds. Contrary to PwC's requirements under Local Rule 56(a)(3), it does not point to any specific evidence that the board acted unreasonably during this time period.

10. Even assuming that PwC was obligated pursuant to the 1997 engagement letter or related documents to assure the collectibility of all foreign accounts receivable, and that PwC breached such obligation (which are disputed), HHRG did not suffer any loss resulting from such breach, given that Panexim receivables outstanding as of March 31, 1997 were fully collected. (Def. Ex. 6 (1999 accounts receivable aged detail showing all outstanding receivables as of that date with the oldest receivable dated January 22, 1999 (PwC 99 WP 01193-94).)

**RESPONSE:** Underwriters object to this assertion because it does not comply with Local Rule 56(a)2 in that whether or not the Panexim receivable outstanding as of March 31, 1997 was collected is not <u>material</u> to Underwriters' motion for summary judgment on its breach of contract claim. The losses asserted took place after this audit period.

11. Even assuming the PwC was obligated pursuant to the 1998 engagement letter or service plan related documents to assure the collectibility of all foreign accounts receivable, and that PwC breached such obligation (which are disputed), HHRG did not suffer any loss resulting from such breach, given that receivables outstanding as of March 31, 1998 were fully collected. (Def. Ex. 6 (1999 accounts receivable aged detail showing all outstanding receivables as of that date with the oldest receivable dated January 22, 1999 (PwC 99 WP 01193-94).)

6

283487.1

**RESPONSE:** Underwriters object to this assertion because it does not comply with Local Rule 56(a)2 in that whether or not the Panexim receivable outstanding as of March 31, 1998 was collected is not <u>material</u> to Underwriters' motion for summary judgment on its breach of contract claim. The losses asserted took place after this audit period.

12. HHRG's management made knowing misrepresentations to PwC during the course of the 1997 and 1998 audits. (Def. Ex. 15 (Temkin Report) at 31-32.)

**RESPONSE:** Underwriters object to this assertion in that it is a conclusion of PWC's expert and does not constitute a material fact. *See* Underwriters' Reply Brief. Underwriters' further object to this paragraph on the grounds that the cited materials do not support the claim that HHRG's management made misrepresentations during the course of the 1998 audit. The only alleged misrepresentation referred to by Temkin is a representation documented in PwC's own work papers regarding HHRG's corporate policy against unsecured advances.

13. Underwriters' expert witness did not properly calculate the losses ultimately incurred by HHRG resulting from advances to Panexim. (Def. Ex. 17 (Johnson Tr.), at 29-34; Def. Ex. 18 (June 8, 2001 letter from HSNO to John Dempsey (HSNO Ex. 6), at DMC 046883.

**RESPONSE:** Underwriters object to this assertion in that it is not supported by any admissible evidence or relevant facts, and therefore, is not in compliance with Local Rule 56(a)3. *See* Underwriters' Reply Brief; *see also* affidavits of Love and Johnson filed contemporaneously herewith.

283487.1

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP,


By: /s/ Fred Knopf
    Fred Knopf, Esq. (ct 09427)
    E-mail: knopff@wemed.com
    Edward Boyle, Esq.
    E-mail: boylee@wemed.com
    WILSON, ELSER, MOSKOWITZ,
    EDELMAN & DICKER LLP
    150 E. 42nd Street
    New York, NY 10017
    Phone: 212-490-3000
    Fax: 212-490-3038


    Daniel J. McMahon, Esq. (Ill. Bar 0162590)
    E-mail: mcmahond@wemed.com
    Stefan R. Dandelles, Esq. (Ill. Bar 6244438)
    E-mail: dandelless@wemed.com
    WILSON, ELSER, MOSKOWITZ,
    EDELMAN & DICKER LLP
    120 N. LaSalle Street
    Chicago, IL 60602
    Phone: 312-704-0550
    Fax: 312-704-1522

## CERTIFICATE OF SERVICE

       THIS IS TO CERTIFY that on September 19, 2005, a copy of the foregoing was filed electronically (and served by mail on anyone unable to accept electronic filing) on each of the following counsel of record in each of the consolidated cases. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system (or by mail to anyone unable to accept electronic filing). Parties may access this filing through the Court's system.

Thomas D. Goldberg, Esq.
Steven Greenspan, Esq.
David J. Elliott, Esq.
William H. Erickson, Esq.
Day, Berry & Howard
City Place I
Hartford, CT 06103

Steven Humphrey, Esq.
Dina Fisher, Esq.
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103-3597

William H. Champlin III, Esq.
Michael T. McCormack, Esq.
Tyler Cooper & Alcorn, LLP
City Place, 35th Floor
185 Asylum Street
Hartford, CT 06103

                                                /s/ Fred Knopf
                                                Fred Knopf

283487.1