UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GOLDEN WEST REFINING CORPORATION<br>Plaintiff | : | |
| | : | CIVIL ACTION NO. |
| VS. | : | 3:02 CV 1379 (MRK) |
| | : | |
| PRICEWATERHOUSECOOPERS, LLP and<br>COOPERS & LYBRAND, LLP<br>Defendants | :<br>:<br>: | |
| ALEC SHARP, et al.<br>Plaintiffs | :<br>: | |
| | : | CIVIL ACTION NO. |
| VS. | : | 3:02 CV 1572 (MRK) |
| | : | |
| PRICEWATERHOUSECOOPERS, LLP d/b/a<br>PRICE WATERHOUSE, LLP<br>Defendant. | :<br>:<br>: | |
| HANDY & HARMAN REFINING GROUP, INC.,<br>Plaintiff | :<br>: | |
| | : | CIVIL ACTION NO. |
| VS. | : | 3:02 CV 1803 (MRK) |
| | : | |
| PRICEWATERHOUSECOOPERS, LLP,<br>Defendant | :<br>: | SEPTEMBER 26, 2005 |

**HANDY AND HARMAN REFINING GROUP, INC. AND GOLDEN WEST REFINING CORPORATION'S SUR-REPLY MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Handy and Harman Refining Group, Inc. ("HHRG") and Golden West Refining Corporation ("GWRC") respectfully submit this sur-reply memorandum in response to the reply memorandum submitted by PricewaterhouseCoopers, LLP ("PwC"). As set forth in the Motion for Permission to File Sur-Reply Memorandum filed herewith, the plaintiffs request

permission to file this sur-reply because PWC raised new arguments in support of its motion for summary judgment in its reply memorandum. Consequently, the plaintiffs have not had an opportunity to respond to these arguments.

A. **Abandoning Its Prior Proximate Cause Arguments, PwC Incorrectly Argues That The Plaintiffs' Experts Valued HHRG On The Wrong Date**

PwC's Motion for Summary Judgment is predicated entirely on the plaintiffs' alleged failure to "offer expert testimony . . . that PwC's conduct was the proximate cause of the losses that HHRG seeks to recover . . ." and that "HHRG has failed to offer sufficient evidence from which the jury reasonably could find that HHRG [sic] proximately caused the claimed losses." PwC's Motion for Summary Judgment at 2. Now, faced with the overwhelming factual evidence of proximate causation proffered by the plaintiffs, PwC makes an entirely new argument in its reply memorandum.[1] Specifically, PwC now states:

> The alleged lost going concern value at issue here cannot be measured (as plaintiff would have it) from the business that existed at June 30, 1998, that later degraded due to industry, operating and other circumstances that had nothing to do with Panexim or PwC. Instead, it must come from the business that existed immediately before discovery of the Panexim losses in February 2000. That was the business that plaintiff contends was destroyed when lenders and customers were notified of the Panexim losses. Plaintiff, however, has failed to disclose any expert opinion on any going concern value that HHRG had at that essential point. As a result, PwC is entitled to summary judgment.

PwC Reply Memorandum at 2. PwC makes this new "wrong valuation date" argument notwithstanding its failure to include it in its moving papers and its clear statement to the contrary in its initial brief:

---

[1] PwC failed to comply with Loc. R. Civ. P. 7(d) in its reply memorandum in that it failed to reference the pages of the plaintiffs' memorandum to which it responded. In this sur-reply, the plaintiffs only respond to the arguments raised by PwC on pages 1-2 and 8-9 of its reply brief.

2

> Proper expert testimony, among other things, would analyze HHRG's performance after June 30, 1998, distinguish industry and other factors from those related to PwC's conduct, set forth an analysis of HHRG's enterprise value after the bankruptcy *to determine the difference from the June 30, 1998 value*, and opine that PwC's conduct proximately caused a loss in value.

PwC Memorandum in support of Summary Judgment at 4 (emphasis added).

Putting aside this dramatic change in approach, PwC cites no case for its new proposition, and this new argument clearly fails in light of <u>West Haven Sound Development Corp. v. West Haven</u>, 201 Conn. 305 (1986). There is no plausible basis to require HHRG to have expert evidence of the value of its business on the date it learned of the Panexim losses, a date by which PwC's wrongful conduct had totally destroyed HHRG's going concern value.[2] Indeed, the overwhelming evidence contained in the prior affidavits of Jed Horwitt, Michael Ryan, and Sean Russo demonstrates that the going concern value of HHRG at the time of the bankruptcy was zero. Quite simply, if the proper starting place to measure damages for the destruction of HHRG's business were the value of HHRG's business <u>after</u> PwC's wrongful conduct took its toll and caused the harm, all of which necessarily took place <u>before</u> HHRG learned the true situation with Panexim, then PwC would be insulated from almost all of the harm that it caused in this case.[3] This is not the law as <u>West Haven</u> makes clear. The expert in <u>West Haven</u> did not start his analysis with the value of the

---

[2] PwC asserts that HHRG claims that its business was destroyed when the losses to Panexim were discovered in February, 2000. PwC Reply Memorandum at 8. This is incorrect. Although the effect of PwC's wrongful conduct certainly became <u>known</u> on that date, and this caused the bankruptcy, the reality and the claim is that PwC's wrongful conduct damaged HHRG much earlier.

[3] The substantial increase in unsecured advances to Panexim started in June 1998 and ended in early 1999. These improper advances had thus permanently affected HHRG's financial condition long before they became known and long before the bankruptcy filing.

3

business on the date that it ceased operations; rather he started on the date of the breach. West Haven, 201 Conn. at 318. PwC's new argument is no basis for summary judgment.

**B.     PwC's Attempt To Distinguish West Haven Is Legally And Factually Incorrect**

PwC asserts in its reply brief that the "expert evidence" in West Haven "reflected" that the defendant's wrongful conduct negatively affected the defendant's financial performance between the date of the breach and the date that the defendant went out of business (hereinafter "interim business decline"). PwC Reply Memorandum at 8-9. PwC contends that this fact distinguishes West Haven from the present case. This is wrong legally and factually.

First, the holding as to proper damage calculation methodology in West Haven was not predicated at all on the "fact" of an interim business decline that PwC declares to be so important. Based on West Haven, a plaintiff seeking to recover damages for the destruction of a business as a going concern must first prove the value of its business as if the defendant's breach had not occurred. West Haven, 201 Conn. at 320-24 and n.5.[4] In establishing the starting point for the damage analysis in such a case, the Supreme Court never stated that this only applies to cases where the plaintiff also can prove some "negative impact" or interim business decline on its earnings. Indeed, any such pronouncement would have been logically inconsistent with the holding and its supporting analysis. West Haven simply requires that a plaintiff prove the value of the business before and after the breach, where the starting place is "the value of the business based on the capitalized value of the

---

[4] West Haven does not mandate only one approach to proving damages; rather it sets forth one acceptable methodology for proving damages.

4

profits the business would have earned if not for the breach." West Haven, 201 Conn. 325, n.5.[5]

Second, the distinguishing "fact" that PwC exclusively relies upon to distinguish West Haven is not even part of the expert's opinion in West Haven.[6] The expert in West Haven instead valued the business on the date of the breach assuming that the breach had not occurred. The expert never testified to valuing any negative impact on the business's earnings after the breach. Id. at 318 and 325. Not only did the Supreme Court affirmatively approve of this starting point for measuring damages, it also expressly stated that the expert's failure to consider actual losses after the breach was not a basis to disallow his opinion as to the starting point value:

> The fact that the restaurant actually operated at a loss after the breach is certainly not fatal to [the expert's] prediction of what might have occurred had the contract been performed. We can agree with the defendant that the actual profit data was a relevant consideration against which [the expert] might have checked the accuracy of his projections. This was a proper subject of cross examination, and the defendant in fact questioned [the expert] in detail as to whether he had evaluated the actual data.

Id. at 318 (citations omitted). Clearly, PwC also may cross examine the plaintiffs' experts on this point.[7]

---

[5] As stated above, PwC recognized this principle in its initial memorandum. See supra at 2-3.
[6] In citing West Haven for this "distinguishing" proposition, PwC neglects to cite to any page of the opinion, thus requiring the parties and the court to guess what portion of the opinion is relied upon by PwC for its argument. See PwC Reply Memorandum at 8-9. This is particularly true given PwC's ambiguous characterization that the "expert evidence reflected" the key fact that it relies upon.
[7] Although there is absolutely no reason that HHRG has to establish this fact to prove its damages in accordance with West Haven, HHRG submits herewith the Supplemental Affidavits of Michael Ryan and Sean Russo, which affirm that PwC's alleged breach in June 1998 negatively impacted HHRG's earnings between June 1998 and February 2000. Thus, to the extent that this Court determines that this fact is relevant, which the plaintiffs deny, it is a disputed fact that precludes summary judgment from entering.

5

### C.  Conclusion

In <u>West Haven</u>, the Supreme Court provided a virtual "how to" manual with respect to proving damages for the destruction of a business. From the date this action was commenced, the plaintiffs have relied upon this case and its instructions, including footnote 5. PwC's belated attempt to inject a new basis for summary judgment and distinguish <u>West Haven</u> is ill-conceived and wrong. Summary judgment should be denied.

HANDY & HARMAN REFINING GROUP, INC.

By _/s/ William S. Fish_

William H. Champlin III
CT040202
champlin@tylercooper.com
William S. Fish, Jr.
CT05349
fish@tylercooper.com
Michael T. McCormack
CT13799
mmccormack@tylercooper.com
TYLER COOPER & ALCORN, LLP
CityPlace - 35th Floor
Hartford, CT 06103-3488
Telephone: (860) 725-6200
Fax: (860) 278-3802

GOLDEN WEST REFINING CORPORATION

By _Steven R. Humphrey /WSF_

Steven R. Humphrey (ct06053)
shumphrey@rc.com
ROBINSON & COLE
280 Trumbull St.
Hartford, CT 06103
Telephone: (860) 275-8221
Fax: (860) 275-8299

6

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed and emailed on September 26, 2005 to:

David Elliott, Esq. (djelliott@dbh.com)
Day, Berry & Howard
CityPlace I
Hartford, CT 06103

Thomas Goldberg (tdgoldberg@dbh.com)
Day, Berry & Howard
One Canterbury Green
Stamford, CT 06901-2047

and I further certify that a copy of the foregoing was mailed on September 26, 2005 postage prepaid to all counsel of record as follows:

Edward J. Boyle, Esq.
Wilson, Elser, Moskowitz, Edelman
 & Dicker LLP
150 East 42nd St.
New York, NY 10017-5639

Stefan Dandelles, Esq.
Wilson, Elson, Moskowitz Edelman
 & Dicker LLP
120 North LaSalle Street
Suite 2600
Chicago, IL 60602

_____
William S. Fish, Jr.