## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

---

GOLDEN WEST REFINING CORPORATION,
LIMITED,

                Plaintiff,

     vs.                                No.  3:02CV1379 (MRK)

PRICEWATERHOUSECOOPERS, LLP,
and COOPERS & LYBRAND, LLP,

                Defendants.

---

ALEC SHARP, et al.,

                Plaintiffs,

     vs.                                No.  3:02CV1572 (MRK)

PRICEWATERHOUSECOOPERS, LLP,
d/b/a PRICEWATERHOUSE, LLP,

                Defendant.

---

HANDY & HARMAN REFINING GROUP, INC.,

                Plaintiff,

     vs.                                No.  3:02CV1803 (MRK)

PRICEWATERHOUSECOOPERS, LLP,

                Defendant.            OCTOBER 7, 2005

---

## JOINT TRIAL MEMORANDUM

      Counsel for each of the parties in this action submit this Joint Trial Memorandum in accordance with the Judge's previous Order.

1.    <u>TRIAL COUNSEL:</u>

The following attorneys will be trial counsel for the parties in this action:

Counsel for the plaintiff, Handy & Harman Refining Group, Inc. ("HHRG"):

>William H. Champlin
>Email:  champlin@tylercooper.com
>William S. Fish, Jr.
>Email: fish@tylercooper.com
>Michael T. McCormack
>Email: mmccormack@tylercooper.com
>Tyler, Cooper & Alcorn LLP
>CityPlace - 35th Floor
>185 Asylum Street
>Hartford, CT  06103
>Tel:  (860) 725-6206
>Fax: (860) 278-3802

Counsel for the plaintiff, Golden West Refining Corporation ("GWRC"):

>Steven R. Humphrey
>Email: shumphrey@rc.com
>Dina S. Fisher
>Email: dfisher@rc.com
>Robinson & Cole LLP
>280 Trumbull Street
>Hartford, CT  06103-3597
>Tel:  (860) 275-8237
>Fax:  (860) 275-8299

Counsel for the plaintiff, Underwriters:

>Edward J. Boyle
>Email: BoyleE@wemed.com
>Daniel J. McMahon
>Email: Mcmahond@wemed.com
>Stefan Dandelles
>Email: dandelless@wemed.com
>Wilson, Elser, Moskowitz, Edelman & Dicker LLP
>150 East 42nd Street
>New York, NY  10017-5639
>Business:  (212) 490-3000
>Fax:  (212) 490-3038

Counsel for the defendant, PricewaterhouseCoopers LLP ("PwC"):

David J. Elliott
E-mail:  djelliott@dbh.com
Thomas D. Goldberg
E-mail:  tdgoldberg@dbh.com
Steven M. Greenspan
E-mail:  smgreenspan@dbh.com
Day, Berry & Howard LLP
CityPlace I
Hartford, Connecticut 06103
Telephone:  (860) 275-0100
Fax:  (860) 275-0343

2.    JURISDICTION:

The Court has jurisdiction over these matters pursuant to 28 U.S.. § 1334(b) as

they are civil proceedings arising in or related to a case under Title 11.

3.    JURY/NON-JURY:

These consolidated cases will be tried to a jury.

4.    LENGTH OF TRIAL:

Counsel for all parties believe that the trial will last 20 days.

5.    FURTHER PROCEEDINGS:

Further proceedings will be required concerning various motions in limine the

parties will file and *Daubert* motions concerning a number of the parties' disclosed

experts.

6.    NATURE OF THE CASE:

**Plaintiffs' Statement Regarding the Nature of the Case:**

This litigation involves three separate actions that have been consolidated for trial.  The

plaintiffs are HHRG, GWRC, and Alec Sharp.  HHRG, at all times relevant to this action, was a

Connecticut corporation and a wholly-owned subsidiary of GWRC, an Australian company.

The sole defendant in these actions is PwC.  HHRG hired PwC to perform certain audit and business services for HHRG for the periods ended March 31, 1997, 1998, and 1999, and to perform agreed-upon procedures concerning HHRG physical inventories and semi-annual reviews at September 30, 1997, 1998, and 1999.  Plaintiffs allege that PwC breached the terms of a contract with HHRG and was negligent in performing services for HHRG in connection with the 1997, 1998, and 1999 Audits.  Plaintiffs further allege PwC's breaches and negligence caused significant losses to HHRG and the destruction of HHRG and GWRC's businesses. HHRG filed for bankruptcy protection in March 2000.

HHRG and Alec Sharp assert claims for breach of contract (Count 1); malpractice-negligence (count 2); and negligent misrepresentation (Count 3), but have separate damage claims against PwC.  GWRC asserts claims for negligence (count 1); negligent misrepresentation (count 2); breach of third-party beneficiary contract (count 3); and breach of fiduciary duty (count 4).  HHRG and GWRC seek damages for the destruction of their respective businesses. Alec Sharp seeks damages (by assignment) for certain economic losses incurred by HHRG as a result of PwC's breaches and negligence.  PwC denies each of these claims and has asserted the following affirmative defenses: *in pari delicto*; unclean hands; comparative fault; failure to mitigate damages; contractual indemnification; and recoupment and setoff.  Plaintiffs deny these affirmative defenses.

**PwC's Statement Regarding the Nature of the Case:**

This litigation involves three separate actions that have been consolidated for trial.  The plaintiffs are HHRG,  GWRC, and Underwriters, a group of insurance companies subscribing to an insurance policy that insured HHRG.  HHRG, at all times relevant to this action, was a wholly-owned subsidiary of GWRC.

The sole defendant in these actions is PwC, a Delaware limited liability partnership. HHRG hired PwC to performed certain audit services for HHRG for the periods ended March 31, 1997, 1998, and 1999 (the "1997 Audit", the "1998 Audit", and the "1999 Audit" respectively).  HHRG also hired PwC to perform agreed-upon procedures concerning HHRG physical inventories and semi-annual reviews at September 30, 1997, 1998, and 1999.  PwC performed all of these services.

Each plaintiff alleges that PwC was negligent in performing its audit services for HHRG in connection with the 1997, 1998, and 1999 Audits.  PwC also performed certain services at the request of Rothschild Australia Ltd. in connection with the proposed acquisition by GWRC of the precious metals refining division of Handy & Harman, Inc.  None of the plaintiffs is advancing a claim at trial that PwC was negligent in its performance of such due diligence services.

In March 2000, HHRG filed for bankruptcy protection.  HHRG made a claim under the Underwriters' insurance policy and Underwriters paid such claim and became HHRG's subrogee.

HHRG asserts claims for breach of contract (Count 1); malpractice-negligence (count 2); and negligent misrepresentation (Count 3).  GWRC asserts claims for negligence (count 1); negligent misrepresentation (count 2); breach of third-party beneficiary contract (count 3); and breach of fiduciary duty (count 4).   Underwriters asserts claims for breach of contract (count 1); malpractice – negligence (count 2); and negligent misrepresentation (count 3).  PwC denies each of these claims and has asserted the following affirmative defenses: *in pari delicto*; unclean hands; comparative fault;  failure to mitigate damages; contractual indemnification; and recoupment and setoff.

PwC asserts that the cause of the losses for which Plaintiffs' seek recover was not any professional shortcomings of PwC but rather the fraud and dishonesty of senior HHRG management and others in collusion with them.

7.      TRIAL BY MAGISTRATE JUDGE:

The parties do not agree to a trial by a Magistrate Judge.

8.      EVIDENCE:

(a)      Witnesses:

**Plaintiffs will likely call the following witnesses at trial:**

1.      **Barrett Brown:**        125 High Street, Boston, MA 02110.  Mr. Brown, a current PwC employee, will testify regarding the work he and others on the PwC team performed for HHRG.  He will testify about documents received by PwC during its audits and semi-annual reviews and the PwC work papers relating to the HHRG audits and semi-annual reviews.  He will testify about the relationship of the HHRG audits and semi-annual reviews to GWRC and its financial statements.  Mr. Brown will testify about the PwC engagement and the PwC Service Plan that was provided to HHRG in 1998 and 1999.  He will testify about the critical matters identified in each audit and about HHRG's policy relating to advances to customers.  Mr. Brown will also testify about PwC's knowledge of HHRG advancing money to Panexim and other South American companies.  He will further testify as to the matters set forth in his deposition. Expected duration of testimony: 2 hours.

2.      **John Bullock**        195 Church Street, New Haven, CT  06510.  Mr. Bullock, the former general counsel of HHRG, will testify generally about the precious metals industry, HHRG's business, and his experience.  He will testify about his role and responsibilities as general counsel of HHRG from 1996 to 1999.  He will testify about the business operations and records of HHRG and its relationship with GWRC.  Mr. Bullock will testify about his role as a member of the board of directors of HHRG and a member of the finance committee of HHRG and he will testify about the board meetings, communications among board members, persons present at board meetings, and actions taken at the board meetings.  Mr. Bullock will further testify about HHRG's policy of not making advances of money unless metal sufficient to fully secure such advance is in the possession of HHRG and the risks associated with violating such a policy.  He will testify that such a policy is a well known policy in the precious metals industry.  Mr. Bullock will testify to a lack of knowledge that an employee of HHRG was making advances to Panexim and other companies in South America in violation of HHRG's policy.  Mr. Bullock will further testify about his communications and interactions with PwC for the HHRG audits and semi-annual reviews.  He will further testify concerning what he would have expected of PwC and its audit team and what actions he and others would have taken if PwC had disclosed in June, 1998 the improper advances to companies in South America and the likely effect of

those actions on HHRG and its business. He will further testify on the actions of Barry Wayne and other HHRG employees during his tenure. He will further testify as to the matters set forth in his affidavit. Expected duration of testimony: 2 hours.

        3.    **Elizabeth Christensen**      85 North Main Street, Unit IB, East Hampton, CT. Ms. Christensen, a current PwC employee, will testify regarding the work she and others on the PwC team performed for HHRG. She will testify about documents received by PwC during its audits and semi-annual reviews and the PwC work papers relating to the HHRG audits and semi-annual reviews. She will testify about the relationship of the HHRG audits and semi-annual reviews to GWRC and its financial statements. She will testify about the PwC engagement and the PwC Service Plan that was provided to HHRG in 1998 and 1999. She will testify about the critical matters identified in each audit and about her knowledge of HHRG's policy relating to advances to customers. Ms. Christiansen will also testify about PwC's knowledge of HHRG advancing money to Panexim and other South American companies. Ms. Christensen will testify about PwC's efforts to confirm amounts due HHRG from Panexim during each of the years that PwC performed an audit for HHRG. She will further testify as to the matters set forth in her deposition. Expected duration of testimony: 2 hours.

        4.    **Alex M. Corl**      27 Winthrop Road, Hebron, CT. Mr. Corl, a current PwC partner, will testify regarding the work he and others on the PwC team performed for HHRG. He will testify about documents received by PwC during its audits and semi-annual reviews and the PwC work papers relating to the HHRG audits and semi-annual reviews. He will testify about the relationship of the HHRG audits and semi-annual reviews to GWRC and its financial statements. Mr. Corl will testify about his placement on the HHRG audit team and the PwC engagement and the PwC Service Plan that was provided to HHRG in 1998 and 1999. He will testify about the critical matters identified in each audit and about his knowledge of HHRG's policy relating to advances to customers. Mr. Corl will also testify about PwC's knowledge of HHRG advancing money to Panexim and other South American companies. Mr. Corl will testify about communications with the Audit Committee and Board of GWRC concerning the HHRG audits in 1999. He will further testify about his communications with board members, HHRG management and with PwC Australia. He will further testify as to the matters set forth in his deposition. Expected duration of testimony: 4 hours.

        5.    **Raj Dansinghani**      11-4 Countryside Lane, Middletown, CT. Mr. Dansinghani, a current PwC employee, will testify regarding the work that he and others on the PwC team performed for HHRG. He will testify about documents received by PwC during its audits and semi-annual reviews and the PwC work papers relating to the HHRG audits and semi-annual reviews. He will testify about the relationship of the HHRG audits and semi-annual reviews to GWRC and GWRC's financial statements. Mr. Dansinghani will testify about his placement on the HHRG audit team and the PwC Service Plan that was provided to HHRG in 1998 and 1999. He will testify about the critical matters identified in each audit and about HHRG's policy relating to advances to customers. Mr. Dansinghani will testify about his conversations with William Myles and Luis Posada in 1998 concerning advances to Panexim and other companies. Mr. Dansinghani will further testify that he learned in connection with his work on the 1998 HHRG audit that HHRG was advancing money to Panexim and others that was being used to pay VAT obligations. Mr. Dansinghani will further testify that he never

advised anyone at HHRG, the HHRG or GWRC Boards of Directors, or the Audit Committee of such fact.  Mr. Dansinghani will testify about the communications that he had with other PwC representatives about the HHRG audits, including advances to Panexim.  He will further testify as to the matters set forth in his deposition.  Expected duration of testimony: 4 hours.

6.    **John D. Dempsey, CPA, CFE**    82 Deforest Road, Wilton, CT.  Mr. Dempsey, a forensic accountant, will provide expert testimony about his investigation of HHRG's business relationship with Panexim, including advances made by HHRG to Panexim and other South American companies relating to the purchase of gold and silver, and the losses that HHRG sustained as a result of its business relationship with Panexim.  Mr. Dempsey will testify about Panexim's obligations to pay VAT and how HHRG financed Panexim's VAT obligations.  Mr. Dempsey will testify about the total dollar value of unsecured advances HHRG made to Panexim related to the purchase of gold and silver, transportation charges and refining fees, the total value of metals HHRG received from Panexim, and the amounts that Panexim paid to SUNAT as VAT payments that were financed by HHRG.  Mr. Dempsey will also testify regarding the payments HHRG made to a series of South American consultants, bonus payments made to former HHRG employees, and the costs incurred in investigating HHRG's losses.  He will further testify to the matters set forth in his reports and his deposition.  Expected duration of testimony: 2 hours.

PwC objects to any compilations Mr. Dempsey intends to offer regarding HHRG's trading activities or the source documents for which are records of businesses or entities other than HHRG.  PwC's objections will include hearsay, lack of authentication, and foundation.

7.    **Craig T. Elson**    LECG, 1725 Eye Street NW, Suite 800, Washington, DC.  Mr. Elson, an expert witness disclosed by HHRG, will provide testimony about the expected net profits that HHRG would have earned if the improper advances to Panexim and others had stopped in June 1998.  He will further testify about the value of HHRG as a going concern in June 1998.  Mr. Elson will testify that it is his opinion that the enterprise value of HHRG using the discounted cash flow methodology as of June 30, 1998 was between $28,900,000 and $30,700,000.  Mr. Elson will testify that it is his opinion that the discounted cash flow method of valuing HHRG's enterprise value is an appropriate means of determining HHRG's value as of June 30, 1998.  He will further testify as to the proper methodology for calculating damages assuming HHRG was unable to continue as a going concern.  Mr. Elson's opinions are more fully set forth in his report dated March 18, 2005 and his affidavit.  He will further testify as to the matters set forth in his report, his affidavits, and his deposition.  Expected duration of testimony: 3 hours.

PwC objections to Mr. Elson's testimony as set forth in its pending motion in limine.  If that motion is denied, PwC reserves the right to object to specific portions of Mr. Elson's testimony.

8.    **John Salomon**    LECG 1725 Eye Street NW, Suite 800, Washington, DC.  Mr. Salomon, HHRG's liability expert, will testify about the audit and other services that PwC provided to HHRG during and related to the fiscal years ending March 31, 1997, March 31, 1998, and March 31, 1999; the duties and obligations of PwC in connection with such audits and reviews; and PwC's breach of its duties and obligations.  Mr. Salomon will

testify about his review of PwC's work papers relating to its audits of HHRG for the fiscal years ending March 31, 1997, March 31, 1998, and March 31, 1999. Mr. Salomon will testify that PwC's audits of HHRG for the periods ended March 31, 1997, 1998, and 1999 were not performed in conformity with Generally Accepted Auditing Standards ("GAAS") because PwC: (1) PwC failed to communicate to HHRG's Board of Directors, the Audit Committee, or GWRC that a material amount of unsecured advances had been made in violation of HHRG's policy of not making advances unless an equivalent amount of metal to secure such advances was in the possession of HHRG, and that were not detected by HHRG's internal control system, a reportable condition under GAAS; (2) failed to exercise due professional care and apply professional skepticism in planning and performing its audits, and preparing its reports; (3) failed to adequately plan its audit work and supervise accordingly; (4) failed to obtain sufficient competent evidential matter to support its opinion; (5) failed to identify in its audit report or otherwise require HHRG to adjust its financial statements for the misstatements it knew about and for the disclosures that it knew should have been included therein in accordance with GAAP. Mr. Salomon will further testify that had PwC disclosed the fact that a material amount of unsecured advances had been made in violation of HHRG's policy against unsecured advances to the HHRG Board of Directors, the Audit Committee or GWRC, it would have allowed representatives to have acted in order to prevent unsecured advances from occurring in the future. He will further testify as to the matters set forth in his report and in his deposition. Expected duration of testimony: 3 hours.

9.      **Richard G. Hayes**      Gold Corporation, 2 Mill Street, Perth WA 6000 Australia. Mr. Hayes, Chief Financial Officer of Gold Corporation and the former chief financial officer of GWRC, will testify generally about the precious metals industry, his experience in the industry, and about the business and operations of GWRC and HHRG, including financing and hedging and their policies. Among other things, Mr. Hayes will testify about his role and responsibilities with respect to GWRC and HHRG. He will testify about board meetings, persons present at board meetings, communications with board members, and actions taken at GWRC and HHRG board and committee meetings. He will also testify about his experience with the HHRG board of directors and his attendance at HHRG board meetings and persons present at such meetings. Mr. Hayes will also testify about the GWRC Finance Committee and his membership on that committee, including actions taken by the finance committee. He will also testify concerning the actions of Barry Wayne and other senior management at HHRG. He will testify about the financial management and condition of HHRG, including the reporting and other financial systems at HHRG. Hayes will further testify about GWRC and HHRG's policy against unsecured advances to customers of HHRG and GWRC and the importance of such a policy to HHRG, GWRC and in the industry generally. He will also testify to his job responsibilities and duties as CFO and as to the policies that he compiled. Mr. Hayes will testify about his communications and interactions with PwC and audit team members during PwC's audits and reviews of HHRG and GWRC. He will testify about the actions he and others would have taken and what he would have expected to happen to the business of HHRG had PwC informed him and others in June 1998 that HHRG employees were making unsecured advances to Panexim and other customers in South America. He will also testify as to market conditions in 1998 and 1999 relevant to HHRG. He will also testify concerning the value of HHRG in 1998 and 1999 and the effects of market events in 1998 and 1999 on HHRG. He will

also testify to the matters set forth in the affidavits filed in opposition to PwC's motion for summary judgment and in his deposition. Expected duration of testimony: 5 hours.

        10.   **Eric Henzy**   Reid & Riege, One State Street, Hartford, CT, 06103. Mr. Henzy, counsel for HHRG, will testify about the proceedings in the United States Bankruptcy Court relating to the bankruptcy of HHRG. He will testify about facts and circumstances leading up to HHRG's filing for bankruptcy, including HHRG's refining business and operations and HHRG's financing facilities with Fleet Precious Metals and Credit Suisse. Mr. Henzy will further testify about the disclosure of the Panexim situation to HHRG's financing facilities and its customers, and the effect that disclosure of the Panexim situation had on HHRG and its relationship with its financiers and customers in March 2000. Mr. Henzy will further testify about the facts and circumstances that made it impossible for HHRG to reorganize or continue as a going concern and to generate profits and the reasons why HHRG was forced to liquidate its assets. He will also testify as to the matters set forth in his affidavit. Expected duration of testimony: 2 hours.

        11.   **Ian Hobson**   Ferrier Hodgson, Level 26, Bank West Tower, 108 St. George Terrace, Perth WA 6000 Australia. Mr. Hobson, who is a chartered accountant and registered liquidator and employed as a director in the Australian firm of Ferrier Hodgson, which firm has offices in Perth and is the Deed Administrator and liquidator of GWRC in Australia, will testify as to the matters set forth in his report, his affidavits, and his deposition. He will testify about the reasons for and the cause of GWRC going into liquidation and the expenses and financial obligations that have been incurred as a result of the liquidation. He will also testify as to how a liquidation proceeds under Australian law and as to the duties and responsibilities of a liquidator. He will testify as to the matters set forth in his reports, his affidavits, and his deposition. Expected duration of testimony: 3 hours.

PwC objections to Mr. Hobson's testimony as set forth in its pending motion in limine. If that motion is denied, PwC reserves the right to object to specific portions of Mr. Elson's testimony.

        12.   **Jed Horwitt, Esq.**   Zeisler & Zeisler, PC, 558 Clinton Avenue, Bridgeport, CT 06605. Mr. Horwitt will testify about the proceedings in the United States Bankruptcy Court relating to the bankruptcy of HHRG. He will testify about his role as counsel to the creditors committee and his role as liquidating custodian of HHRG, including the liquidation of all of the assets of HHRG, the payment of claims of creditors through distributions arising from the liquidation of HHRG's assets and the current status of the HHRG estate. Mr. Horwitt will also testify about the costs and fees incurred in connection with HHRG's bankruptcy proceedings. Mr. Horwitt will testify about facts and circumstances leading up to HHRG's filing for bankruptcy. Mr. Horwitt will testify about the effect that disclosure of the Panexim situation had on HHRG and its relationship with its financiers and customers in March 2000 and after the bankruptcy filing. Mr. Horwitt will testify that the amount of relevant costs incurred by HHRG exceeded the amount of recoveries from the liquidation of HHRG's income producing assets. Mr. Horwitt will testify to the claims assigned to Alec Sharp and the costs incurred by HHRG in investigating its losses. He will further testify as to the matters set forth in his affidavit and deposition. Expected duration of testimony: 2 hours.

13.     **George A. Ingram**    20 Stafford Road, Simsbury, CT 06070. Mr. Ingram, a former PwC partner, will testify regarding the work he and others on the PwC team performed for HHRG. He will testify about documents received by PwC during its audits and semi-annual reviews and the PwC work papers relating to the HHRG audits and semi-annual reviews. He will testify about the relationship of the HHRG audits and semi-annual reviews to GWRC and its financial statements. Mr. Ingram will testify about his role on the HHRG audit team, the PwC engagement letters, and the PwC Service Plan that was provided to HHRG in 1998 and 1999. He will testify about the critical matters identified in each audit and about his knowledge of HHRG's policy relating to advances to customers. He will further testify about being removed from the PwC audit team for HHRG. Mr. Ingram will testify about PwC's knowledge of HHRG advancing money to Panexim and other South American companies. Mr. Ingram will testify about communications with the Audit Committee and Boards of GWRC and HHRG concerning the HHRG audits in 1997 and 1998. He will further testify about his communications with board members, HHRG management and with PwC Australia. He will further testify as to the matters set forth in his deposition. Expected duration of testimony: 4 hours.

14.     **John H. King**        89 Pinecrest Drive, North Kingstown, RI 02852-5908. Mr. King, the former treasurer of HHRG, will testify about his role as treasurer and about HHRG's business, its operations and its records. Mr. King will also testify about the terms of HHRG's financing arrangements with Fleet Precious Metals, Inc. and Credit Suisse First Boston, as well as HHRG's relationships with such institutions and its hedging policies. Mr. King will testify about HHRG's policy against making unsecured advances. He will also testify about his lack of knowledge prior to 1999 that an employee of HHRG was making unsecured advances to Panexim and other companies in South America. Mr. King will testify concerning the actions of Barry Wayne and other HHRG employees. He will further testify as to what he and others would have done if they knew of improper advances in June 1998 and the effect this would have had on HHRG. Mr. King will testify about his communications with the Audit Committee and boards of HHRG and GWRC in 1999 concerning the size of the receivable due from Panexim and his role on the HHRG Finance Committee, including the investigation in 1999 concerning Panexim. He will further testify as to the matters set forth in his deposition. Expected duration of testimony: 2 hours.

15.     **Vincent J. Love**        675 Third Avenue, New York, New York 10017. Mr. Love, Alec Sharp's expert on liability and damages, will testify about the audit services that PwC provided to HHRG for the fiscal years ending March 31, 1997, March 31, 1998, and March 31, 1999; the duties and obligations of PWC in connection with such audits; and PWC's breach of its duties and obligations. Mr. Love will testify about his review of PwC's work papers relating to its audits of HHRG for the period ending March 31, 1997, and the fiscal years ending March 31, 1998, and March 31, 1999. Mr. Love will testify that PwC's audits of HHRG for the periods ended March 31, 1997, 1998, and 1999 were not performed in conformity with Generally Accepted Auditing Standards ("GAAS") because PwC: (1) PwC failed to communicate to HHRG's Board of Directors, the Audit Committee, or GWRC that a material amount of unsecured advances had been made in violation of HHRG's policy of not making advances unless an equivalent amount of metal to secure such advances was in the possession of HHRG, and that were not detected by HHRG's internal control system, a reportable condition under

GAAS; (2) failed to exercise due professional care and apply professional skepticism in planning and performing its audits, and preparing its reports; (3) failed to adequately plan its audit work and supervise accordingly; (4) failed to obtain sufficient competent evidential matter to support its opinion; (5) failed to identify in its audit report or otherwise require HHRG to adjust its financial statements for the misstatements it knew about and for the disclosures that it knew should have been included therein in accordance with GAAP; and (6) failed to identify and examine related-party transactions.  Mr. Love will further testify that had PwC disclosed the fact that a material amount of unsecured advances had been made in violation of HHRG's policy against unsecured advances to the HHRG Board of Directors, the Audit Committee or GWRC, it would have allowed representatives to have acted in order to prevent unsecured advances from occurring in the future.  Mr. Love will also testify regarding the losses incurred by HHRG as a result of PwC's breaches that have been assigned to Mr. Sharp.  Mr. Love will testify that total damages exceed $15.8 million and will further testify to the components of this damage figure.  Mr. Love will further testify to matters set forth in his expert report, his depositions, and his affidavits filed in this matter. Expected duration of testimony: 3 hours.

16.  **William L. Myles**     28 Markwood Road, Manchester, CT 06040-7045.  Mr. Myles, the former controller of HHRG, will testify about his role as controller and about HHRG's business including the specifics related to  purchasing and selling precious metals.  Mr. Myles will also testify about HHRG's financing arrangements with Fleet Precious Metals, Inc. and Credit Suisse First Boston, as well as HHRG's relationships with such institutions and its hedging policies.  Mr. Myles will testify about HHRG's policy against making unsecured advances.  He will also testify about HHRG's business and financial records, and his lack of knowledge that an employee of HHRG was making unsecured advances to Panexim and other companies in South America.  Mr. Myles will testify about his communications with the PwC auditors for HHRG, including the lack of any communications relating to the fact that an employee of HHRG was making unsecured advances to Panexim and other companies in South America.  He will further testify as to the matters set forth in his deposition.  Expected duration of testimony: 2 hours.

17.  **Helen O'Brien**     HHRG, P. O. Box 1390, Attleboro, MA 02703.  Ms. O'Brien, the sole remaining employee of HHRG, will testify about the business and history of HHRG.  She will testify about her employment at HHRG and the employment of others at HHRG.  Ms. O'Brien will testify about her communications and interactions with members of the PwC team.  She will further testify about the demise of HHRG and the impact of that.  She will testify concerning matters that have occurred at HHRG since the bankruptcy including financial events and reporting during that period.  She will further testify as to the matters set forth in her deposition.  Expected duration of testimony: 2 hours.

18.  **Roberto Passaro**     1178 Post Road, Scarsdale, NY 10583.  Mr. Passaro will testify about the business and operations of Panexim, including Panexim's business records, and its relationship with HHRG.  Mr. Passaro will testify about the sale and exporting of gold and silver to HHRG between 1996 and 1999.  He will testify about unsecured advances made by HHRG to Panexim.  He will testify about the government export incentive program in Peru.  He will explain Panexim's obligations to pay VAT on gold and silver.  Mr. Passaro will further testify about financing that HHRG provided to Panexim in order for Panexim to meet its VAT and other

obligations.  Mr. Passaro will testify about the financing arrangements and the payment of VAT to SUNAT.  He will also testify about the Peruvian government's abolition of the export incentive program and its termination of the refunding of VAT payments and the effect such changes had on Panexim's ability to repay money received from HHRG.  He will also testify as to the amount of VAT advanced to Panexim from HHRG during 1998 and 1999 that were not repaid by Panexim to HHRG and his communications with Barry Wayne and others at HHRG and GWRC.  Expected duration of testimony: 2 hours.

PwC objects to any aspects of Mr. Passaro's testimony that relies upon hearsay evidence, non-authenticated documents, or lacks a foundation.

19.    **Sean G. Russo**        20A Uppercliff Rd., Northwood NSW 2060 Australia.  Mr. Russo will testify about his experience with HHRG, GWRC, and Rothschild in the precious metals refining industry.  He will testify about the business of GWRC and HHRG, the acquisition of the PMRD, the projections of net income and the valuation of HHRG at the time of the acquisition, the expectations for the acquisition and how it related to the business of GWRC and Rothschild, and the work performed by PwC for GWRC in connection with due diligence proceedings related to the acquisition of the PMRD.  Mr. Russo will testify about the business operations of GWRC and HHRG after the acquisition.  He will further testify about HHRG's financing arrangements with Fleet Precious Metals, Inc. and Credit Suisse First Boston, and GWRC's relationship with HHRG's financing institutions, including GWRC's guaranty of certain HHRG obligations to the financing institutions.  He will testify how the financing and hedging of precious metals affected HHRG's business and the acquisition.  Mr. Russo will testify about his role as a member of the boards of directors of GWRC and HHRG, including his attendance at board meetings, other persons present at board meetings, communications with board members and actions taken and communications at such board meetings.  Mr. Russo will testify about the GWRC Finance Committee and his membership on that committee.  He will testify about GWRC and HHRG's policy of not making unsecured advances to customers and the importance of such a policy as it relates to the precious metals industry.  Mr. Russo will testify about communications and interactions with PwC relating to the acquisition of the PMRD and during PwC's audits of HHRG and GWRC.  Mr. Russo will testify about not having any knowledge in June 1998 and thereafter prior to May 1999 that an HHRG employee was making unsecured advances to Panexim and other companies in South America.  He will testify about the actions he would have taken had PwC informed him in June 1998 that HHRG employees were making unsecured advances to Panexim and other customers, and the actions that he and other members of the board of directors of GWRC and HHRG and the finance committee took upon learning in 1999 of unsecured advances of approximately $1 million made to Panexim.  Russo will testify about the immediate and long term financial impact that the Panexim situation had on the business and financial situation of HHRG and GWRC.  He will further testify as to what changes would have occurred at HHRG, and the net profits that it would have been able to generate, had PwC informed the HHRG and GWRC boards of the improper advances in June, 1998.  He will further testify as to the market conditions in the precious metals industry with respect to precious metal prices and metal lease rates and how those would have positively affected HHRG had it continued as a going concern.  He will testify as to how these factors affected the volumes and the business of HHRG, including the metal recoveries on precious metal refining operations.  He will further testify that the matters identified by Messrs Shivdasani

and Pinney did not negatively and materially affect HHRG's value as stated by those witnesses, including with respect to the effect of refining margins, the status of the electronic scrap refining business, the effect of metal lease rates, and refining volumes. He will further testify concerning the long term positive developments in the precious metals industry relevant to HHRG and GWRC. He will further testify as to the costs, savings and reductions that would have occurred at HHRG had PwC informed GWRC of the advances to Panexim and others in June 1998, including the savings on financing the improper advances and the savings from eliminating the consultants in South America and improvident investment in Enviromet. He will testify concerning Barry Wayne's conduct as president of HHRG during his tenure including his actions re Panexim. He will testify concerning his investigation into the Panexim situation including his trip to Peru as part of that investigation. He will testify concerning how HHRG funded the advances to Panexim and the costs and negative effect that had on the business of HHRG. He will further testify to the value of HHRG, based upon his knowledge of and experience with the business of HHRG, GWRC, Rothschild and the precious metals industry. He will testify as to the expected profits of HHRG, during the period July, 1998 through February, 2000, as compared to the reported profits of HHRG through fiscal year end 1998, and reported profits from July, 1998 through February, 2000. He will testify based on his knowledge of and experience with HHRG that the value of HHRG exceeded $30,000,000 as of June 30, 1998 and thereafter through February 2000 assuming the Panexim unsecured advances had been stopped before July 1, 1998. Mr. Russo will also testify about the disclosure of the Panexim situation to HHRG's financial institutions and customers and the effect that had on HHRG's business operations and the destruction of HHRG as a going concern. He will testify that HHRG at the time of its destruction had no value as a going concern. He will testify that the destruction of HHRG caused the destruction of GWRC to a value of $0 as a going concern. He will further testify as to the matters set forth in his deposition and the statements set forth in his affidavits. Expected duration of testimony: 8 hours.

PwC objects to the testimony of this witness to the extent that he intends to testify regarding GWRC's valuation or related issues on the basis that he is not qualified to give such testimony.

20.     **Michael Ryan,** 15 Coleshill Drive, Alligator Creek QLD 4740 Mr. Ryan, former chief executive officer of GWRC, will testify about his knowledge of and experience with HHRG and GWRC in the precious metals industry. He will testify about the business of GWRC and HHRG, the acquisition of the PMRD, the projections of net income and the valuation of HHRG at the time of the acquisition, the expectations for the acquisition and how it related to the business of GWRC and Rothschild, and the work performed by PwC for GWRC in connection with due diligence proceedings related to the acquisition of the PMRD. Mr. Ryan will testify about the business operations of GWRC and HHRG after the acquisition. He will further testify about HHRG's financing arrangements with Fleet Precious Metals, Inc. and Credit Suisse First Boston, and GWRC's relationship with HHRG's financing institutions, including GWRC's guaranty of certain HHRG obligations to the financing institutions. He will testify how the financing and hedging of precious metals affected HHRG's business and the acquisition. Mr. Ryan will testify about his role as a member of the boards of directors of GWRC and HHRG, including his attendance at board meetings, other persons present at board meetings, communications with board members and actions taken and communications at such

board meetings. Mr. Ryan will testify about the GWRC Finance Committee and his membership on that committee. He will testify about GWRC and HHRG's policy of not making unsecured advances to customers and the importance of such a policy as it relates to the precious metals industry. Mr. Ryan will testify about communications and interactions with PwC relating to the acquisition of the PMRD and during PwC's audits of HHRG and GWRC. Mr. Ryan will testify about not having any knowledge in June 1998 and thereafter prior to May 1999 that an HHRG employee was making unsecured advances to Panexim and other companies in South America. He will testify about the actions he would have taken had PwC informed him in June 1998 that HHRG employees were making unsecured advances to Panexim and other customers, and the actions that he and other members of the board of directors of GWRC and HHRG and the finance committee took upon learning in 1999 of unsecured advances of approximately $1 million made to Panexim. Ryan will testify about the immediate and long term financial impact that the Panexim situation had on the business and financial situation of HHRG and GWRC. He will further testify as to what changes would have occurred at HHRG, and the net profits that it would have been able to generate, had PwC informed the HHRG and GWRC boards of the improper advances in June, 1998. He will further testify as to the market conditions in the precious metals industry with respect to precious metal prices and metal lease rates and how those would have positively affected HHRG had it continued as a going concern. He will testify as to how these factors affected the volumes and the business of HHRG, including the metal recoveries on precious metal refining operations. He will further testify that the matters identified by Messrs Shivdasani and Pinney did not negatively and materially affect HHRG's value as stated by those witnesses, including with respect to the effect of refining margins, the status of the electronic scrap refining business, the effect of metal lease rates, and refining volumes. He will further testify concerning the long term positive developments in the precious metals industry relevant to HHRG and GWRC. He will further testify as to the costs, savings and reductions that would have occurred at HHRG had PwC informed GWRC of the advances to Panexim and others in June 1998, including the savings on financing the improper advances and the savings from eliminating the consultants in South America and improvident investment in Enviromet. He will testify concerning Barry Wayne's conduct as president of HHRG during his tenure including his actions re Panexim. He will testify concerning his investigation into the Panexim situation. He will testify concerning how HHRG funded the advances to Panexim and the costs and negative effect that had on the business of HHRG. He will further testify to the value of HHRG, based upon his knowledge of and experience with the business of HHRG, GWRC, Rothschild and the precious metals industry. He will testify as to the expected profits of HHRG, during the period July 1998 through February 2000, as compared to the reported profits of HHRG through fiscal year end 1998, and reported profits from July, 1998 through February, 2000. He will testify, based on his knowledge and experience, that the value of HHRG exceeded $30,000,000 as of June 30, 1998 and thereafter through February, 2000 assuming the Panexim unsecured advances had been stopped before July 1, 1998. Mr. Ryan will also testify about the disclosure of the Panexim situation to HHRG's financial institutions and customers and the effect that had on HHRG's business operations and the destruction of HHRG as a going concern. He will testify that HHRG at the time of its destruction had no value as a going concern. He will testify that the destruction of HHRG caused the destruction of GWRC to a value of $0 as a going concern. He will further testify as to the matters set forth in his deposition and the statements set forth in his affidavits. Expected duration of testimony: 8 hours.

PwC objects to the testimony of this witness to the extent that he intends to testify regarding GWRC's valuation or related issues on the basis that he is not qualified to give such testimony.

      21.    **Didier Siffer**  Credit Suisse, 11 Madison Avenue, New York, NY 10010. Mr. Siffer, an employee of Credit Suisse, will testify concerning the financing arrangements with HHRG. He will further testify concerning the conditions under which that financing could be and would be terminated. He will further testify concerning the Panexim situation. He will further testify concerning the events leading up to the HHRG bankruptcy. He will further testify concerning the matter set forth in his affidavit. Expected duration of testimony: 2 hours.

      22.    **Joseph J. Tiroletto**  8 Crestview Circle, Enfield, CT 06082. Mr. Tiroletto, a former PwC partner, will testify regarding the work he and others on the PwC team performed for HHRG. He will testify about documents received by PwC during its audits and semi-annual reviews and the PwC work papers relating to the HHRG audits and semi-annual reviews. He will testify about the relationship of the HHRG audits and semi-annual reviews to GWRC and its financial statements. Mr. Tiroletto will testify about his role on the HHRG audit team, the PwC engagement letters, and the PwC Service Plan that was provided to HHRG in 1998 and 1999. He will testify about the critical matters identified in each audit and about HHRG's policy relating to advances to customers. Mr. Tiroletto will testify about his review of PwC work papers that were created at the time PwC was performing audit and business services for HHRG. He will testify about PwC's knowledge of HHRG advancing money to Panexim and other South American companies. Mr. Tiroletto will testify about communications with the Audit Committee and Boards of GWRC and HHRG concerning the HHRG audits in 1998 and 1999. He will further testify about his communications with board members, HHRG management and with PwC Australia. He will further testify as to the matters set forth in his deposition. Expected duration of testimony: 4 hours.

      23.    **Rod Warren**  Level 24, Exchange Plaza, 2 The Esplarde, Perth 6000, Western Australia. Mr. Warren, former member of the Audit Committee of GWRC and of the GWRC Board of Directors, will testify generally about the precious metals industry and the business operations of GWRC and HHRG. He will testify about his role on the GWRC Board of Directors, board meetings, board communications, and actions taken at board meetings. He will testify about the acquisition of the PMRD and about his communications and interactions with PwC in connection with the audits and reviews of HHRG and GWRC. Mr. Warren will testify that PwC never informed him that it was aware that an employee of HHRG was making unsecured advances to Panexim and other companies in South America. He will further testify about the actions he and others would have taken had PwC informed him that HHRG employees were making unsecured advances to Panexim and other customers, and the actions that he and other members of the board of directors of GWRC and HHRG and the audit committee took upon learning in 1999 of the unsecured advances reported to be approximately $1 million to Panexim. Mr. Warren will testify about becoming aware of the Panexim situation and the actions that were taken to investigate the situation, including communications and interactions with PwC representatives. He will testify as to the conduct of Barry Wayne during his tenure. He will further testify as to the matters set forth in his deposition and the statements set forth in his affidavit. Expected duration of testimony: 5 hours.

**Plaintiffs will only call the following witnesses if the need arises**:

1.      **Chad Albano**          91 Reservoir Avenue, Broad Brook, CT 06106.  Mr. Albano, a former PwC employee, will testify regarding the work he and others on the PwC team performed for HHRG.  He will testify about documents received by PwC during its audit and the PwC work papers relating to the HHRG audit.  He will testify about the relationship of the HHRG audit to GWRC and its financial statements.  Albano will testify about the PwC engagement and the PwC Service Plan that was provided to HHRG in 1998 and 1999.  He will testify about the critical matters identified in each audit and about his knowledge of HHRG's policy relating to advances to customers.  Mr. Albano will also testify about PwC's knowledge of HHRG advancing money to Panexim and other South American companies.  Mr. Albano's trial testimony is expected to be consistent with his testimony at his deposition.   Expected duration of testimony: 2 hours.

2.      **Martin Boehm**          59 Garnet Lane, South Windsor, CT 06074-1573.  Mr. Boehm, former Commercial Account Manager at HHRG will testify about HHRG's business operations and records, including the business of purchasing and selling precious metals.  Mr. Boehm will also testify about HHRG's financing arrangements with Fleet Precious Metals, Inc. and Credit Suisse First Boston, as well as HHRG's relationships with such institutions.  Mr. Boehm will testify about HHRG's policy against making unsecured advances.  He will also testify about his lack of knowledge that an employee of HHRG was making unsecured advances to Panexim and other companies in South America.  Expected duration of testimony: 2 hours.

3.      **Kenneth Wightman**          Mr. Wightman, President of Geib Refining Corp. ("Geib"), 399 Kilvert Street, Warwick, Rhode Island 02886, will testify about his experience in the precious metals refining business and Geib's business operations.  Mr. Wightman will testify about the business relationship of Geib and HHRG and the importance of a strong relationship between HHRG and its customers.  Mr. Wightman will testify about the precious metals that Geib and other customers of HHRG left on deposit with HHRG in accounts known as pool accounts.  He will further testify about his knowledge of facts and circumstances relating to HHRG relationship with its customers in February and March 2000, and HHRG's inability to continue its refining business in 2000.  Mr. Wightman will further testify about HHRG's filing for bankruptcy protection, the proceedings arising from such bankruptcy filing, and Geib's status as an unsecured creditor of HHRG.  Expected duration of testimony: 2 hours.

        PwC objects to the testimony of this witness on the grounds that he was not disclosed in Plaintiffs' initial disclosures and is being identified for the first time in this Joint Trial Memorandum.

4.      **Chris Wiggins**          Level 24, Exchange Plaza, 2 The Esplanade Plaza, Perth 6000, Western, Australia.  Mr. Wiggins, former member of the Audit Committee of GWRC and of the GWRC Board of Directors, will testify generally about the precious metals industry and the business operations of GWRC and HHRG.  He will testify about his role on the GWRC Board of Directors, board meetings, and actions taken at board meetings.  He will testify about the acquisition of the PMRD and about his communications and interactions with PwC in

connection with the audits of HHRG and GWRC. Mr. Wiggins will testify that PwC never informed him that it was aware that an employee of HHRG was making unsecured advances to Panexim and other companies in South America. He will further testify about the actions he would have taken had PwC informed him that HHRG employees were making unsecured advances to Panexim and other customers, and the actions that he and other members of the board of directors of GWRC and HHRG and the finance committee took upon learning in 1999 of the unsecured advances made to Panexim. Mr. Wiggins will testify about becoming aware of the Panexim situation and the actions that were taken to investigate the situation, including communications and interactions with PwC representatives. Expected duration of testimony: 5 hours.

    5. **Jaime Rodriguez**  Lima, Peru. Mr. Rodriguez will testify regarding the VAT payments made by Panexim to SUNAT that remain unreimbursed. Expected duration of testimony: 2 hours.

  PwC objects to the testimony of this witness on the grounds that he was not disclosed in Plaintiffs' initial disclosures and is being identified for the first time in this Joint Trial Memorandum.

    6. **Angel Rebatta**  Lima, Peru. Mr. Rebatta will testify about the business and operations of Panexim, including Panexim's business records, its purchase and sale of precious gold and silver and its relationship with HHRG. Mr. Rebatta will testify about the purchase of gold from the Peruvian mines, the sale and exporting of gold and silver to HHRG between 1996 and 1999. He will testify about unsecured advances made by HHRG to Panexim. He will testify about the government export incentive program in Peru. He will explain Panexim's obligations to pay VAT on gold and silver. Mr. Rebatta will testify about the financing arrangements and the payment of VAT to SUNAT. He will also testify about the Peruvian government's abolition of the export incentive program and its termination of the refunding of VAT payments and the effect such changes had on Panexim's ability to repay money received from HHRG. He will also testify as to the amount of VAT advanced to Panexim from HHRG during 1998 and 1999 that were not repaid by Panexim to HHRG and his communications with Barry Wayne and others at HHRG and GWRC. Expected duration of testimony: 2 hours.

  PwC objects to the testimony of this witness on the grounds that he was not disclosed in Plaintiffs' initial disclosures and is being identified for the first time in this Joint Trial Memorandum.

    7. **Frederick B. Ollett** 305 North Shore Lane, Culver, Indiana. Mr. Ollett will testify to HHRG's operations and finances, and HHRG's investigation of Panexim.

  **PwC will likely call the following witnesses:**

Joseph Tiroletto:  8 Crestview Circle, Enfield, CT 06082  Mr. Tiroletto, a former PwC employee, will testify regarding the work he and the  PwC audit team performed fro HHRG including the work performed in connection with the 1997, 1998, and 1999 audits, the 1997, 1998, and 1999 semi-annual reviews, and the various physical inventory observations.  Expected duration of testimony: three-quarters of a day.

Raj Dansinghani:  11-4 Countryside Lane, Middletown, CT  06457.  Mr. Dansinghani, a former PwC employee, will testify regarding the due diligence work performed by PwC at the request of Rothschild; and the work he and the PwC audit team performed for HHRG including the work performed in connection with the 1997, 1998, and 1999 audits, the 1997, 1998, and 1999 semi-annual reviews, and the various physical inventory observations.  Expected duration of testimony: three-quarters of a day.

George Ingram:  20 Stafford Road, Simsbury, CT  06070.  Mr. Ingram, a former PwC employee, will testify regarding the work he and the PwC audit team performed for HHRG including the work performed in connection with the 1997, 1998, and 1999 audits, the 1997, 1998, and 1999 semi-annual reviews, and the various physical inventory observations.  Expected duration of testimony: three-quarters of a day.

Alex Corl:  100 Pearl Street, Hartford, CT 06103.  Mr. Corl, a current PwC employee, will testify regarding the work he and the PwC audit team performed for HHRG including the work performed in connection with the 1999 audit, the 1998 and 1999 semi-annual reviews, and the various physical inventory observations.  Expected duration of testimony: one-half day.

Barrett Brown:  125 High Street, Boston, MA 02110.  Mr. Brown, a current PwC employee, will testify regarding the work he and the PwC audit team performed for HHRG

including the work performed in connection with the 1998 audit. Expected duration of testimony: one-half day.

Chad Albano: 91 Reservoir Avenue, Broad Brook, CT 06016. Mr. Albano, a former PwC employee, regarding the work he and the PwC audit team performed for HHRG including the work performed in connection with the 1997, 1998, and 1999 audits. Expected duration of testimony: one-quarter of a day.

Elizabeth Christensen: 100 Pearl Street, Hartford, CT 06103. Ms. Christensen, a current PwC employee, will testify regarding the work she and the PwC audit team performed for HHRG including the work performed in connection with the1999 audit. Expected duration of testimony: one-quarter of a day.

William Myles: 28 Markwood Road, Manchester CT 06040-7045. Mr. Myles, the former controller for HHRG, will testify regarding the general business operation of HHRG. Expected duration of testimony: one-half day.

John King: 89 Pinecrest Drive, North Kingstown, RI 02852-5908. Mr. King, the former treasurer of HHRG and a former member of HHRG's board of directors, will testify regarding the general business operation of HHRG and information that was known by or available to the HHRG board of directors at various times from 1996 through 1999. Expected duration of testimony: one-half day.

Martin Boehm: 59 Garnet Lane, South Windsor, CT 06074-1573. Mr. Boehm, the former commercial manager for HHRG and a former member of HHRG's board off directors, will testify regarding the general business operation of HHRG and information that was known

by or available to the HHRG board of directors at various times from 1996 through 1999. Expected duration of testimony: one-quarter of a day.

John Dempsey:  Talbott House, 426 Danbury Road, Wilton, CT 06897  Mr. Dempsey, a forensic accountant hired by HHRG in 2000 and one of HHRG's disclosed experts, will testify regarding his investigation conducted in 2000 and 2001 regarding the losses that resulted to HHRG due to a scheme of certain of its employees and consultant to defraud HHRG.  Mr. Dempsey also will testify regarding Underwriters' representatives' statements regarding the amount of the alleged loss.  Expected duration of testimony: one day.

W. Marcus Johnson:  300 Lanidex Plaza, 2nd Floor, Parsippany, NJ  07054.  Mr. Johnson, a forensic accountant with Heigen, Streiff, Newton & Oshiro hired by Underwriters in 2000, will testify regarding the forensic review he conducted into the losses associated with the scheme of certain of  HHRG's employees and consultant to defraud HHRG, the information Underwriters' disclosed expert, Mr. Vincent Love, relied upon, and the positions taken by and on behalf of Underwriters in responding to HHRG's insurance claim.  Expected duration of testimony: two hours.

Plaintiffs object to the admissibility of the testimony of this witness because, *inter alia*, his testimony is irrelevant to the matters at issue in this case.  Further, to the extent PWC seeks to enter as evidence any opinions expressed by Mr. Johnson, Plaintiffs object in that PwC failed to disclose Mr. Johnson as an expert.  See Plaintiffs' Motion in Limine regarding Exclusion of Testimony by or Evidence regarding Marcus Johnson; see also Plaintiffs' Motion in Limine regarding Exclusion of References to Insurance.

<u>Mark S. Johnson</u>: Talbot Underwriting Ltd., 55 Gracechurch Street, London, EC3V. Mark S. Johnson was designated by Underwriters as their corporate representative pursuant to a Rule 30(b)(6) notice of deposition to provide testimony regarding several topics relevant to Underwriters' claims.  In particular, Mr. Johnson testified regarding the insurance claim made by HHRG arising out of the Panexim receivable and the Underwriters' consideration of and decision to settle the claim with HHRG.  The terms of and circumstances around the settlement of the insurance claim are evidence inter alia of the appropriate measures of damages claimed in this case.  Mr. Johnson also testified as to Underwriters' determination of coverage under the underlying insurance policy, including with respect to a determination regarding dishonest, fraudulent or malicious conduct engaged in by HHRG management.  He further testified, on behalf of Underwriters, with respect to the basis for the claims that Underwriters have asserted as to HHRG management and with respect to PwC.  He finally testified regarding Underwriters' engagement of and conclusions reached by forensic professionals, such as HSNO, in connection with the insurance claim and settlement.  Mr. Johnson is the sole representative of Underwriters who has testified as to any of these matters.  Expected duration of testimony: one hour.

Plaintiffs object to the admissibility of the testimony of this witness because, *inter alia*, his testimony is irrelevant to the matters at issue in this case.  See Plaintiffs' Motion in Limine regarding Exclusion of References to Insurance; see also Plaintiffs' Motion in Limine regarding Exclusion of Recoveries or Recovery Efforts.

<u>Robert H. Temkin</u>:  1611 Commonwealth Ave., Newton, MA  02465.  Mr. Temkin, PwC's disclosed audit expert, will testify regarding his opinions that PwC performed GAAS audits, as more fully set forth in his expert report submitted with this memorandum.  Expected duration of testimony: one day. A copy of Mr. Temkin's curriculum vitae and his expert report,

as well as a list of the materials on which he will rely, are being provided with this Joint Trial Memorandum.

    <u>Anil Shivdasani</u>:  Kenan-Flager Business School, University of North Carolina at Chapel Hill, Campus Box 3490, McColl Building, Chapel, NC 27599-3490.  Mr. Shivdasani, PwC's disclosed damages expert, will testify regarding his opinions concerning plaintiffs' damages, as more fully set forth in his expert report submitted with this memorandum.  Expected duration of testimony: one day.  A copy of Mr. Shivdasani's curriculum vitae and his expert report, as well as a list of the materials on which he will rely, are being provided with this Joint Trial Memorandum.

    <u>R. Gene Brown</u>:  55665 Pebble Beach, LaQuinta, CA 92253.  Mr. Pinney, PwC's disclosed corporate governance expert, will testify regarding his opinions concerning the actions and inactions of the HHRG and GWRC management and boards of directors, as more fully set forth in his expert report submitted with this memorandum.  Expected duration of testimony: 1 day.  A copy of Mr. Brown's curriculum vitae and his expert report, as well as a list of the materials on which he will rely, are being provided with this Joint Trial Memorandum.

    Plaintiffs have moved for the exclusion of the expert testimony of this witness.  Upon resolution of the Daubert motions, Plaintiffs reserve the right to object to portions of the proffered testimony in the event the motions are not granted.

    <u>William F. Pinney</u>:  333 S. Hope Street, 16th Floor, Los Angeles, CA 90071-1406.  Mr. Pinney, PwC's disclosed refining industry expert, will testify regarding his opinions that various factors contributed to the downfall in the precious metals industry, as more fully set forth in his expert report submitted with this memorandum.  Expected duration of testimony: three hours.  A

copy of Mr. Pinney's curriculum vitae and his expert report, as well as a list of the materials on which he will rely, are being provided with this Joint Trial Memorandum.

Plaintiffs have moved for the exclusion of the expert testimony of this witness. Upon resolution of the Daubert motions, Plaintiffs reserve the right to object to portions of the proffered testimony in the event the motions are not granted.

**PwC will call the following witnesses only if the need arises:**

Dan McMahon:  120 N. LaSalle Street, Chicago, IL  60602.  Mr. McMahon, an attorney with Wilson, Elser, Edelman & Dicker,  will testify regarding Underwriters' positions taken regarding the value of HHRG's losses associated with the scheme of certain of  its employees and consultant to defraud HHRG.  Expected duration of testimony: one hour.

Plaintiffs object to the admissibility of the testimony of this witness on the following grounds: relevance, hearsay, attorney-client privilege.  See also, Plaintiffs' Motion in Limine regarding Reference to Insurance, and Plaintiffs' Motion in Limine regarding Recoveries and Recovery Efforts.

Fredrick Reinhardt: 26 Fenwick Road, Riverside, RI 02915.  Mr. Reinhardt is a former vice president with Fleet Bank, one of HHRG's lenders, and will testify concerning the lending relationship between HHRG and Fleet and the reasons why Fleet decided not to continue providing financing for HHRG in March 2000.  Expected duration of testimony: one hour.

(b)     Exhibits:

The parties attach hereto **Exhibit A**, a list of Plaintiffs' proposed exhibits, and **Exhibit B**, a list of PwC's proposed exhibits. The parties also attach **Exhibit C**, a list of the Plaintiffs' proposed exhibits to which PwC objects and **Exhibit D**, a list of the PwC's proposed exhibits to which Plaintiffs object.[1] The parties continue to review the objections asserted to certain proposed exhibits and the proponents of such exhibits will set forth, in advance of the October 14, 2005 Pre-Trial Conference, a brief statement regarding admissibility with respect to each such exhibit.

(c)    <u>Deposition Testimony:</u>

**Plaintiffs expect the following witnesses to testify by deposition at trial:**

Other than Frederick Ollett identified by PwC as a witness expected to testify by deposition at trial, Plaintiffs do not expect any witnesses to testify by deposition at trial. Further, Plaintiffs object to PwC's designation of Hayes, Hobson, Russo, Ryan and Warren because these witnesses are expected to testify live at trial. Plaintiffs have agreed that should one or more of these witnesses not be available at trial as expected, PwC can designate these transcripts at that time. Plaintiffs also reserve the right to designate from the transcripts of these witnesses should this situation arise. Finally, Plaintiffs specifically object to the designation of testimony of Marcus Johnson and Mark Johnson on the bases set forth above and in various Motions in Limine.

**PwC expect the following witnesses to testify by deposition at trial:**

---

[1] The parties continue to exchange potential exhibits and will work in good faith to determine if objections exist to such additional exhibits. The parties agree that no party will be

| **Deponent** | **Date of Deposition** | **Page References** |
|---|---|---|
| Richard Hayes | 6/28/05 | 6:17 - 7:21<br>11:21 – 16:8<br>17:25 – 21:18<br>26:14 – 27:22<br>29:9 – 30:25<br>31:21 – 33:15<br>33:18 – 35:12<br>36:5 – 36:19<br>42:10 – 44:16<br>45:16 – 46:11<br>47:4 – 47:14<br>49:24 – 51:16<br>51:25 – 55:6<br>56:25 – 62:24<br>63:2 – 63:14<br>64:21 – 65:16<br>66:10 – 66:25<br>67:15 – 74:5<br>75:21 – 81:10<br>83:14 – 84:8<br>87:20 – 90:7<br>90:24 – 92:7<br>95:21 – 96:12<br>98:24 – 99:7<br>101:4 – 103:8<br>103:14 – 104:2<br>111:12 – 111:18<br>112:12 – 113:1<br>113:15 – 114:21<br>114:24 – 115:6<br>115:17 – 116:11 |
| Ian Hobson | 3/25/05 | 28:20 – 29:6<br>33:22 – 34:8<br>38:1 – 38:3 |
| Sean Russo | 6/24/05 | 7:7 – 7:9<br>8:14 – 9:24 |

precluded from asserting additional objections to each of the proposed exhibits prior to the October 14, 2005 Pre-Trial Conference.

| Deponent | Date of Deposition | Page References |
|---|---|---|
| | | 10:10 – 11:3 |
| | | 11:12 – 12:14 |
| | | 13:1 – 13:11 |
| | | 14:3 – 15:2 |
| | | 18:10 – 18:19 |
| | | 20:12 – 21:15 |
| | | 22:11 – 22:13 |
| | | 24:11 – 24:19 |
| | | 25:1 – 25:19 |
| | | 25:22 – 26:6 |
| | | 26:11 – 27:19 |
| | | [27:24 – 29:11] |
| | | [30:4 – 31:1] |
| | | 36:12 – 37:19 |
| | | 37:24 – 41:1 |
| | | 43:9 – 45:16 |
| | | 47:22 – 48:10 |
| | | 48:16 – 49:7 |
| | | 50:7 – 50:15 |
| | | 50:20 – 51:13 |
| | | 51:25 – 53:16 |
| | | 53:19 – 55:2 |
| | | 61:1 – 62:1 |
| | | 63:21 – 66:8 |
| | | 71:17 – 89:16 |
| | | 91:15 – 92:8 |
| | | 92:18 – 95:13 |
| | | 97:2 – 99:3 |
| | | 99:7 – 99:21 |
| | | 100:23 – 102:13 |
| | | 104:23 – 108:7 |
| | | 108:12 – 112:8 |
| | | 114:12 – 116:2 |
| | | 116:19 – 118:16 |
| | | 119:11 – 122:2 |
| | | 123:20 – 126:2 |
| | | 127:16 - 129:1 |
| | | 131:12 – 132:22 |
| | | 133:12 – 134:15 |
| | | 136:2 – 136:13 |
| | | 139:5 – 141:9 |
| | | 142:4 – 146:10 |
| | | 148:18 – 148:22 |

| **Deponent** | **Date of Deposition** | **Page References** |
|---|---|---|
| | | 149:8 – 149:13<br>149:16 – 150:19<br>153:6 – 154:14<br>154:24 – 155:13<br>159:16 – 164:21<br>166:11 – 166:17<br>166:25 – 167:18<br>169:5 – 169:12<br>170:18 – 171:21<br>172:5 – 174:12<br>176:14 – 177:14<br>177:17 – 179:19<br>179:22 – 181:21<br>181:24 – 183:8<br>183:14 – 185:4<br>185:14 – 186:8<br>186:18 – 187:4<br>188:13 – 189:19<br>189:22 – 193:4<br>194:8 – 194:22<br>194:25 – 195:13<br>196:12 – 197:13<br>199:6 – 199:10<br>199:24 – 202:24 |
| Michael Ryan | 3/24/05 | 6:17 – 6:19<br>7:1 – 9:7<br>15:8 – 15:11<br>16:15 – 18:11<br>19:24 – 20:18<br>24:2 – 24:14<br>24:20 – 25:15<br>26:6 – 27:15<br>27:23 – 28:1<br>28:4 – 30:15<br>33:14 – 34:2<br>34:23 – 36:6<br>38:5 – 38:19<br>39:25 – 40:10<br>40:21 – 41:15<br>41:20 – 42:15<br>42:24 – 44:24<br>48:15 – 48:22 (from "If Handy |

| Deponent | Date of Deposition | Page References |
|---|---|---|
| | | . . .") |
| | | 49:2 – 49:12 |
| | | 50:11 – 50:22 |
| | | 58:19 – 60:3 |
| | | 60:22 – 62:11 |
| | | 63:7 – 63:20 |
| | | 65:2 – 65:7 |
| | | 66:17 – 68:18 |
| | | 70:10 – 72:6 |
| | | 73:20 – 73:25 |
| | | 79:4 – 79:15 |
| | | 79:22 – 80:1 |
| | | 80:19 – 80:23 (from "Are the concerns . . .") |
| | | 81:24 – 82:8 |
| | | 87:14 – 87:17 |
| | | 88:7 – 90:21 |
| | | 94:18 – 94:25 |
| | | 96:15 – 97:3 |
| | | 102:5 – 103:5 |
| | | 111:8 – 114:13 |
| | | 119:12 – 120:12 |
| | | 127:22 – 130:8 |
| | | 137:5 – 137:18 |
| | | 138:14 – 138:24 |
| | | 139:22 – 139:25 |
| | | 151:21 – 152:23 |
| | | 154:7 – 160:4 |
| | | 161:3 – 163:14 |
| | | 164:10 – 166:4 |
| | | 166:20 – 167:19 |
| | | 168:10 – 168:23 |
| | | 170:23 – 171:17 |
| | | 174:21 – 175:9 |
| | | 177:4 – 178:9 |
| | | 180:8 – 180:25 |
| | | 181:17 – 181:22 |
| | | 182:25 – 183:14 |
| | | 186:9 – 187:13 |
| | | 188:22 – 189:4 |
| | | 192:2 – 192:4 |
| | | 192:17 – 194:10 |
| | | 195:19 – 197:15 |

| Deponent | Date of Deposition | Page References |
|---|---|---|
|  |  | 208:21 – 215:16<br>217:20 – 218:6<br>222:1 – 222:24<br>224:14 – 225:17<br>236:10 – 236:12<br>237:3 – 238:13<br>238:20 – 241:24<br>245:10 – 245:16<br>246:1 – 247:8<br>248:16 – 253:5<br>254:8 – 254:15<br>265:21 – 266:15 |
| Rodney Warren | 3/25/05 | 6:11 – 6:12<br>8:1 – 8:9<br>9:22 – 10:17<br>11:16 – 12:6<br>17:7 – 18:15<br>21:12 – 21:23<br>24:12 – 26:5<br>26:17 – 27:13<br>28:15 – 30:3<br>30:11 – 32:9<br>34:22 – 38:7<br>38:14 – 38:19<br>39:12 – 41:1<br>43:16 – 44:2<br>51:12 – 55:9<br>56:23 – 58:6<br>59:24 – 60:24<br>71:6 – 71:7<br>71:17 – 71:21<br>73:7 – 74:11<br>83:24 – 84:16<br>85:4 – 85:14<br>86:2 – 87:19<br>92:6 – 95:2<br>97:5 – 97:11<br>97:22 – 98:20<br>108:23 – 108:25<br>109:7 – 109:17<br>110:4 – 111:12<br>111:15 – 112:3 |

| **Deponent** | **Date of Deposition** | **Page References** |
|---|---|---|
| Mark S. Johnson | 2/24/05 | 7:24 – 8:4<br>10:21 – 10:24<br>12:17 – 13:23<br>27:22 – 28:15<br>84:17 – 85:1<br>85:24 – 86:24<br>94:11 – 96:9<br>104:18 – 106:3<br>106:24 – 109:3<br>112:11 – 112:25<br>113:6 – 115:9<br>137:1 – 137:9<br>138:19 – 139:9<br>140:5 – 140:8<br>149:7 – 151:17<br>151:20 – 152:17<br>153:2 – 153:7<br>158:1 – 158:24<br>162:18 – 163:9<br>163:17 – 163:25<br>164:8 – 167:8 |
| W. Marcus Johnson | 6/10/05 | 5:6 – 5:9<br>5:23 – 7:17<br>8:12 – 8:20<br>8:25 – 9:4<br>13:14 – 15:16<br>16:4 – 16:21<br>18:13 – 19:19<br>21:14 – 23:24<br>24:14 – 25:8<br>27:4 – 28:24<br>29:6 – 29:18<br>29:24 – 30:25<br>31:14 – 36:11<br>36:23 – 37:23<br>38:12 – 38:25<br>39:11 – 41:4<br>41:10 – 41:25<br>45:19 – 46:24 |
| Frederick Ollett | 6/29/05 | pages to be designated by Tuesday, October 11, 2005 |

9.    STIPULATIONS AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW:

(a)    Stipulation of Uncontroverted Facts and Agreed Statement of Contested Issues of Fact and Law:

1.    Stipulation of Uncontroverted Facts

Counsel for all parties submit the following stipulation of uncontroverted facts and a statement of the contested issues of fact and law.[2]

1.    HHRG was a Connecticut corporation in the business of refining precious metals. From August 20, 1996 to March 28, 2000, HHRG was headquartered in South Windsor, Connecticut.

2.    Golden West Refining Corporation Limited ("GWRC") was an Australian metals refining company, traded on the Australian Stock Exchange until 2001 and majority owned by N.M. Rothschild & Sons (Australia) Pty. Ltd.

3.    GWRC formed HHRG to acquire the assets of the Precious Metals Refining Division of Handy & Harman, Inc. (the "PMRD").  Between August, 1996 and March, 2000, Golden West owned 100% of HHRG.

4.    In August, 1996, HHRG acquired the business and related assets of PMRD. Handy & Harman, Inc. operated the Division prior to August, 1996.

5.    On March 28, 2000 (the "Petition Date"), HHRG filed a voluntary petition for bankruptcy relief under Chapter 11 of the Bankruptcy Code.

---

[2] All counsel are continuing to meet and confer to determine if all parties are able to stipulate to additional uncontroverted facts.  The parties will provide such additional stipulation to the Court prior to the October 14, 2005 Pre-Trail Conference.

6.    In accordance with Bankruptcy Code §§ 1107 and 1108, HHRG was authorized to continue in possession of its property and operate and manage its business as debtor in possession.

7.    On August 20, 2001, the bankruptcy court entered an Order Confirming Modified Second Amended Plan Of Reorganization (the "Plan").

8.    The Plan became effective on August 30, 2001 (the "Effective Date").

9.    Under the Plan, as of the Effective Date, the Liquidating Custodian, as defined in the Plan, was authorized and empowered to exercise all of the powers of the Debtor HHRG in place and to the exclusion of HHRG's board of directors and officers.

10.    PwC is a limited liability partnership organized under Delaware law.

11.    Effective July 1, 1998, the accounting firms of Coopers & Lybrand L.L.P. and Price Waterhouse LLP merged their practices to form PwC.

12.    PwC, and its predecessor in interest Coopers & Lybrand LLP, provided professional accounting and auditing services for HHRG from 1996-1999.  Those services included audits of HHRG's financial statements for the fiscal year ended March 31, 1997; the fiscal year ended March 31, 1998; and the fiscal year ended March 31, 1999.

2.    <u>Agreed Statement of Contested Issues of Fact and Law:</u>

The parties will continue to meet and confer to finalize such agreed statement.  The parties will endeavor to provide such statement to the Court prior to the October 14, 2005 Pre-Trial Conference.

(b)    <u>Proposed Voir Dire Questions:</u>

The parties are continuing to meet and confer to complete an agreed to set of voir dire which they will submit in advance of the October 14, 2005 Pre-Trial conference.

(c)    <u>Proposed Jury Instructions:</u>

The parties are continuing to meet and confer to complete an agreed to set of proposed jury instructions which they will submit in advance of the October 14, 2005 Pre-Trial conference.

(d)     Proposed Verdict Form:

The parties are continuing to meet and confer to complete an agreed to proposed jury verdict form which they will discuss and seek the Court's guidance at the October 14, 2005 Pre-Trial Conference.

(e)     Brief Description of Case and Parties:

The parties will agree prior to jury selection on a brief statement of the case to be read to proposed jurors.

10.     ANTICIPATED EVIDENTIARY PROBLEMS:

The parties anticipate disputes regarding some of the proposed exhibits as identified in Exhibits C and D to this Memorandum.  In addition, certain other evidentiary issues are addressed in the parties' motions in limine.[3]

---

[3] The parties will submit such motions in limine on Tuesday, October 11, 2005.

DEFENDANT,
PRICEWATERHOUSECOOPERS LLP


By_____/s/ William H. Erickson\_\_\_\_\_
       David J. Elliott (ct04301)
       E-mail: djelliott@dbh.com
       Thomas D. Goldberg  (ct 04386)
       E-mail:  tdgoldberg@dbh.com
       Stephen M. Greenspan
       E-mail:  smgreenspan@dbh.com
       William H. Erickson (ct18117)
       E-mail:  wherickson@dbh.com
       Day, Berry & Howard LLP
       CityPlace I
       Hartford, Connecticut 06103
       Telephone:  (860) 275-0100
       Fax:  (860) 275-0343
       Its Attorneys

PLAINTIFF, GOLDEN WEST REFINING
CORPORATION, LIMITED


By_____
        Steven R. Humphrey
        Dina S. Fisher
        Robinson & Cole LLP
        280 Trumbull Street
        Hartford, CT  06103-3597
        Tel:  (860) 275-8237
        Fax:  (860) 275-8299
        Email: dfisher@rc.com

PLAINTIFF, ALEC SHARP, BOTH
INDIVIDUALLY AND AS REPRESENTATIVE
OF THE UNDERWRITERS


By_____
      Edward J. Boyle
      Wilson, Elser, Moskowitz, Edelman &
      Dicker LLP
      150 East 42nd Street
      New York, NY  10017-5639
      Business:  (212) 490-3000
      Fax:  (212) 490-3038
      Email: BoyleE@wemed.com

PLAINTIFF, HANDY & HARMAN REFINING
GROUP, INC.


By_____
       William H. Champlin
       Michael T. McCormick
       William S. Fish, Jr.
       Tyler, Cooper & Alcorn LLP
       CityPlace - 35th Floor
       185 Asylum Street
       Hartford, CT  06103
       Tel:  (860) 725-6206
       Fax: (860) 278-3802
       Email:  champlin@tylercooper.com

**ELECTRONIC CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2005, a copy of the foregoing Joint Trial Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

| | |
|---|---|
| Edward J. Boyle, Esq. | William H. Champlin, III, Esq. |
| Wilson, Elser, Moskowitz, Edelman & Dicker LLP | Michael T. McCormack, Esq. |
| | William S. Fish, Jr., Esq. |
| 150 East 42nd St. | Tyler Cooper & Alcorn, LLP |
| New York, NY  10017-5639 | CityPlace - 35th Floor |
| | 185 Asylum Street |
| | Hartford, CT 06103 |
| | |
| Daniel McMahon, Esq. | Fred N. Knopf, Esq. |
| Stefan Dandelles, Esq. | Wilson, Elser, Moskowitz, Edelman & Dicker LLP |
| Daniel E. Tranen, Esq. | 3 Gannett Drive |
| Wilson, Elser, Moskowitz, Edelman & Dicker LLP | White Plains, NY 10604-3407 |
| 120 N. LaSalle Street | |
| Chicago, IL  60602 | |
| | |
| Steven R. Humphrey | Jed Horwitt, Esq. |
| Dina S. Fisher | Zeisler & Zeisler, P.C. |
| Robinson & Cole LLP | 558 Clinton Ave. |
| 280 Trumbull Street | P.O. Box 3186 |
| Hartford, CT 06103-3597 | Bridgeport, CT 06605-0186 |

_____/s/ William H. Erickson_____