UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GOLDEN WEST REFINING, ET AL. | : | |
| | : | |
| Plaintiffs, | : | NO. 3:02CV1379 (MRK) |
| | : | |
| PRICEWATERHOUSE, ET AL. | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF DECISION**

In this consolidated case, Plaintiffs Golden West Refining Corporation, Ltd. ("GWRC"), Alec Sharp et al. ("Underwriters"), and Handy & Harman Refining Group, Inc. ("HHRG") assert a variety of claims against Defendants PricewaterhouseCoopers LLP d/b/a Price Waterhouse LLP and Coopers & Lybrand LLP (collectively, "PwC") arising from PwC's allegedly improper performance during several audits of HHRG.  Presently before the Court are Underwriters' Motion for Partial Summary Judgment [doc. #161][1] [hereinafter "Underwriters' Mot."], PwC's Motion for Summary Judgment against HHRG [doc. #147] [hereinafter "PwC's Mot. as to HHRG"], and PwC's Motion for Summary Judgment against GWRC [doc. #162][2] [hereinafter "PwC's Mot. as to GWRC"].  For the reasons stated below, Underwriters' Motion [doc. # 161] is DENIED, PwC's Motion against HHRG [doc. # 147] is DENIED, and PwC's Motion against GWRC [doc. # 162] is GRANTED in part and DENIED in part.

A thorough recounting of the facts is unnecessary, because the Court is largely denying the parties' motions for summary judgment and a trial of this matter is scheduled for November.  For

---

[1] This motion was initially filed as [doc. #156] but later corrected.

[2] This motion was initially filed as [doc. #150] but later corrected.

present purposes, it suffices to say that HHRG was a Connecticut-based precious metals refiner and wholly owned subsidiary of GWRC, an Australian metals-refining company. PwC and its predecessors provided professional accounting and auditing services for HHRG from 1996-1999. HHRG and GWRC claim that they had a corporate policy (of which PwC was aware) against advancing funds to customers in developing countries unless HHRG was in possession of metal of value equivalent to such advances. Plaintiffs allege that during audits PwC conducted in 1997 and 1998, PwC became aware that, contrary to HHRG's corporate policy, the company had advanced funds to customers in developing countries that were not secured by precious metal of equivalent value. According to Plaintiffs, contrary to its duties as an auditor and its representations and contractual commitments, PwC did not assure HHRG's compliance with the policy against unsecured advances and also did not inform management or the Boards of Directors of HHRG or GWRC about this serious breach of corporate policy.

Plaintiffs further allege that as a consequence of PwC's failure to assure compliance with the corporate policy against unsecured advances and PwC's further failure to inform the management or Boards of HHRG or GWRC of the breach of corporate policy, the amount of unsecured advances that HHRG made to customers in developing countries grew dramatically in 1998 and early 1999. Indeed, Plaintiffs claim that the amount of unsecured advances grew to such an extent that when they were discovered, and it became clear that they were uncollectible, HHRG's credit facilities were abruptly terminated, forcing HHRG to shut down operations within days and to file a Chapter 11 bankruptcy petition. HHRG was ultimately liquidated, and GWRC asserts that HHRG's failure, in turn, caused the financial collapse of GWRC. HHRG and GWRC therefore allege that both companies were rendered worthless as a direct result of PwC's conduct. *See* Consolidated Local Rule

56(a)(2) Statement of HHRG and GWRC [doc. #181]; Supplemental Local Rule 56(a)(2) Statement of GWRC [doc. #170].

Underwriters are insurers who are the assignees and subrogees of HHRG with respect to its losses and claims against PwC arising from uncollectible and unsecured advances made to one of HHRG's developing-world customers, a Peruvian entity called Panexim. Notice of Removal [doc. #1] Exhibit B, at ¶ 5, in *Sharp, et al. v. PricewaterhouseCoopers LLP*, No. 2-CV-1572 (consolidated with the present action) [hereinafter "Underwriters' Compl."]. Underwriters paid HHRG $12,076,000 on those losses and now sues PwC to recover on the amounts paid to HHRG.

All Plaintiffs claim that PwC was negligent in the performance of its auditing and accounting duties, that PwC breached its auditing and accounting contract, and that PwC made negligent misrepresentations. Transmittal Form of Documents to District Court, in *Handy & Harman Group, et al. v. Pricewaterhouse*, No. 2-CV-1803 (consolidated with the present action); Underwriters' Compl.; First Amended Complaint [doc. #39] (by GWRC). In addition, GWRC sues PwC for breach of fiduciary duty. First Am. Compl. [doc. #39] at 16-17. PwC denies Plaintiffs' claims and asserts a number of affirmative defenses, including unclean hands. *See* Answer to First Amended Complaint of GWRC [doc. #40]; Answer [doc. #59] (responding to HHRG's complaint); Answer [doc. #60] (responding to Underwriters' complaint).

Summary judgment is appropriate only where a lack of dispute as to genuine issues of material fact entitles the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party must demonstrate that no such genuine material dispute exists. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000). Moreover, "in determining whether a genuine issue has been raised, the inferences to be

drawn from the underlying facts revealed in the affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Tomka v. Seiler*, 66 F.3d 1295, 1304 (2d Cir. 1995). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment. Any weighing of the evidence is the prerogative of the finder of fact, not an exercise for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) (internal citations omitted).

## I. Underwriters' Motion

Underwriters seek partial summary judgment on their claim that PwC breached its contract with HHRG by failing to remedy or report the unsecured advances to customers in developing countries that PwC discovered during its 1997 and 1998 audits. Underwriters argue that they have satisfied all three elements of a breach-of-contract claim – namely, the existence of a contract, breach, and causation of damages – but in the event that the Court disagrees, Underwriters ask for partial summary judgment on any element that the Court finds has been established. *See* Memorandum of Law in Support of Plaintiffs Underwriters' Motion for Partial Summary Judgment [doc. #158] at 5-6 [hereinafter "Underwriters' Summ. J. Mem."].

As to the existence of a contract, Underwriters assert that the "engagement letters" for the 1997 and 1998 audits – which PwC concedes are the contracts between it and HHRG for the years in question – explicitly incorporated by reference a "service plan" and that as a result, the service plan also became part of the parties' contract. *See id.* at 6-8. PwC's 1997 service plan provided that "[PwC] will ensure that there are no collectability issues"; PwC's 1998 service plan was even more

explicit, providing that "We will assure advances to third world countries are not made unless material is in the possession of Handy & Harman." *See* Notice of Manual Filing [doc. #179] Exhibit 2; *id.* at Exhibit 3. Underwriters argue that PwC breached its contractual commitment to HHRG by failing to "assure" that advances to developing countries were not made unless secured by material in HHRG's possession, and that had PwC not breached its contract, the substantial losses HHRG sustained as a result of the unsecured advances to Panexim would never have occurred. Underwriters' Summ. J. Mem. at 13. In support of its claim, Underwriters rely on some especially damaging testimony from George Ingram, PwC's audit partner for the HHRG audit, who gave deposition testimony that: (1) he was aware that HHRG' had a policy prohibiting unsecured advances to developing countries; (2) he knew that HHRG was violating that policy; (3) the amount of unsecured advances was increasing between 1997 and 1998; (4) assuring that such advances were not made was a "critical matter and part of the audit plan" for HHRG; and (5) nevertheless, he never told anyone on the Board of HHRG that its policy against unsecured advances was being violated. *Id.* at 9-10.

PwC responds that the 1997 service plan was merely an "internal work paper" and that neither party intended the 1998 service plan to be incorporated into the engagement letter or to establish contractual obligations. Defendant PricewaterhouseCoopers LLP's Local Rule 56(a)2 Statement [doc. #175] at 22-23. PwC maintains that its only obligation under its contract with HHRG was to conduct its audits according to "Generally Accepted Accounting Standards" and that it did so. *Id.* at 23. PwC also denies that the unsecured advances it became aware of violated any HHRG corporate policy and that it complied with its audit plan by assuring the collectability of HHRG's receivables. Finally, PwC denies that any losses HHRG sustained were proximately caused

5

by any failure on its part to alert HHRG management or its Board to the unsecured advances. *Id.* at 24.

While Underwriters have certainly presented what appears to be a strong case on some elements of its breach of contract claim, the Court nonetheless concludes that there are material issues of fact on each element that preclude summary judgment. "Generally, contract interpretation involves issues of the parties' intent and thus presents a question of fact." *Orange Improvements Partnership v. Cardo, Inc.*, 984 F. Supp. 85, 90 (D. Conn. 1997) (citing *Bead Chain Manufacturing Co. v. Saxton Prods., Inc.*, 183 Conn. 266, 274-75 (1981)). Summary judgment is appropriate only where "definitive contract language" sheds light on the parties' intentions. *Id.* Here, there is a dispute about whether the parties intended to incorporate the 1997 and 1998 service plans into the engagement letters as contractual obligations. At this stage, the Court is not prepared to say that as a matter of law the service plans were incorporated into the parties' contract. However, even if the service plans were incorporated, precisely what those plans required of PwC is not entirely clear. There is language in the documents that lends support for PwC's assertion that the service plan requirements were aspirational only, or that collectability was the central requirement of the plan and that PwC was not required to assure that all advances were secured 100% by metal in HHRG's possession. Even if PwC's contractual commitment was as clear as Underwriters claim, summary judgment would still not be appropriate, because despite Mr. Ingram's damaging testimony, there are material factual disputes regarding PwC's breach. *See United States ex rel. N. Maltese & Sons, Inc. v. Juno Constr. Corp.*, 759 F.2d 253, 255 (2d Cir.1985) ("It is hardly necessary to cite authority for the proposition that whether there has been a breach of contract is a question of fact."). Furthermore, there are material issues of fact regarding causation, which appears to be the weakest aspect of

Underwriters' contract claim. As but one example, evidence exists from which a jury might reasonably conclude that CEO Barry Wayne would have continued to deceive the Board about his activities with Panexim regardless of any alerts PwC may have provided the Board. *See, e.g.*, Notice of Manual Filing [doc. #174] Exhibits 8-14. Finally, substantial questions remain as to the amount of damages, if any, attributable to PwC's conduct. This non-exhaustive list of genuine issues in dispute suffices at this stage to make summary judgment or even partial summary judgment inappropriate. *See Golden Pacific Bancorp v. FDIC*, 273 F.3d 509, 514 (2d Cir. 2001) (noting that summary judgment should not be granted where factual disputes remain).

## II. PwC's Motion against HHRG

PwC moves for summary judgment against HHRG based on the claim that HHRG has failed to prove proximate causation. PwC's argument is two-fold. First, PwC asserts that in a professional negligence case such as this, the plaintiff is required to establish causation through the testimony of an expert, and HHRG has not disclosed such an expert. Second, PwC asserts that even if an expert witness were not necessary, HHRG has not proffered sufficient evidence from which a jury could reasonably conclude that PwC caused the damages HHRG seeks. In particular, PwC argues that the testimony of HHRG's valuation expert – who opines as to the value of the company on June 30, 1998, and as of HHRG's bankruptcy – cannot satisfy Plaintiff's causation burden, because the expert never establishes a causal link between PwC's conduct and the total disappearance of HHRG's value between June 30, 1998, and the time of HHRG's bankruptcy. *See* PwC's Reply Memorandum of Law in Support of Its Mot. for Summ. J. against HHRG [doc. #202]. PwC points to numerous conditions occurring in the marketplace and within HHRG that affected its financial condition and value, none of which HHRG's valuation expert takes into account or even attempts to explain. *See id.* at 6;

PwC's Memorandum of Law in Support of Its Motion for Summary Judgment against HHRG [doc. #148] at 33-37.

HHRG responds that PwC was responsible for the entire loss of HHRG's "going concern" value.  HHRG produces testimony from Board members asserting that they would have steered the company away from its ultimate financial ruin had PwC informed them that HHRG was violating company policy and providing unsecured advances to customers in developing countries.  *See* Plaintiff HHRG and GWRC's Joint Memorandum of Law in Opposition to Motion for Summary Judgment [doc. #180] at 24-25 (citing the testimony of HHRG Board members).  Moreover, HHRG argues that its expert accurately appraised the value of the company as of June 30, 1998, taking into account the capitalized value of future profits, and that the alleged financial constraints and market conditions of which PwC complains are properly fodder for cross-examination, not judgment in PwC's favor.  *See, e.g.*, *id.* at 31 (citing the report of Craig Elson).

In all candor, the Court must say that the damage theories asserted by HHRG are breathtaking in scope, and therefore, the Court has a fair degree of skepticism that HHRG will ultimately be able to attribute its *entire* loss in value between 1998 and its insolvency to PwC's conduct regarding the unsecured advances.  Nor is it readily apparent to the Court from the evidence so far submitted that June 30, 1998, is an appropriate date to pick as a pre-loss valuation point.  However, the Court believes that resolution of its concerns is best left until witnesses testify and evidence is produced at trial. Viewing the dispute in the light most favorable to HHRG, as it must at this stage, the Court cannot conclude that there are no material issues of fact and that PwC is entitled to judgment as a matter of law on the basis of causation, which is, after all, a paradigmatically factual issue.  *See Seneca Meadows, Inc. v. ECI Liquidating, Inc.*, 121 F. Supp. 2d 248, 257 (W.D.N.Y. 2000)

("Questions of causation . . . involve quintessential issues of fact.") (quoting *Acushnet Co. v. Mohasco Corp.*, 191 F.3d 69, 79 (1st Cir.1999)).  Furthermore, while expert testimony is often required in professional negligence claims, it is not invariably required, and once again, the Court believes it is best to await trial before making any final determination about the adequacy of HHRG's proof.  Therefore, PwC's motion for summary judgment as to HHRG is denied.[3]

### III. PwC's Motion against GWRC

PwC moves for summary judgment against GWRC based essentially on the same causation and damages arguments addressed above, and the Court rejects those arguments for the reasons already stated.  However, PwC also argues that it is entitled to summary judgment on GWRC's claim that PwC breached a fiduciary duty to GWRC.  The Court agrees with PwC.

Under Connecticut law, a fiduciary duty exists where "the fiduciary was either in a dominant position, thereby creating a relationship of dependancy, or was under a specific duty to act for the benefit of another."  *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 38 (2000).  A fiduciary duty is absent as a matter of law where "the parties . . . either deal[] at arm's length, thereby lacking

---

[3] In response to PwC's argument in favor of summary judgment, Plaintiffs HHRG and GWRC have asked to designate Sean Russo and Michael Ryan as expert witnesses.  Pl. HHRG and GWRC's Joint Mem. of Law in Opp'n to Mot. for Summ. J. [doc. #180] at 29 n.8.  The Court will not permit this last-minute expert designation, as it comes far too late in the case (well after the scheduling order called for designation of experts), there is no good cause for Plaintiffs' delay in designating its experts, and such a late designation – coming about a month before trial – would invariably prejudice PwC.  *See Wolack v. Spucci*, 217 F.3d 157, 161 (2d Cir. 2000) (listing "disruption of trial efficiency," "the prejudice suffered by the opposing party," and "the party's explanation for the failure to comply with the discovery order," among factors bearing on whether a court should permit the late designation of an expert witness) (internal quotation marks omitted).  Plaintiffs also assert that their fact witnesses can give lay opinion testimony regarding valuation of HHRG and GWRC.  *Id.* at 4-6, 22-26.  While the Court has some doubts about this proposition, the Court will await trial before resolving it.

a relationship of dominance and dependence, or the parties [do] not engage[] in a relationship of special trust and confidence." *Id.* at 39. Here, there are no facts to suggest that PwC exerted dominance over GWRC, a large and sophisticated company. The mere fact that an accountant has been hired to audit a company has generally been held insufficient to establish a "relationship of special trust and confidence" giving rise to fiduciary obligations. *See Greenblatt v. Richard Potasky Jewelers*, No. 93 Civ. 3652, 1994 WL 9754 (S.D.N.Y. Jan. 13, 1994) ("Courts do not generally regard the accountant-client relationship as a fiduciary one.") (internal quotation marks omitted). But even if the accountant-client relationship were a fiduciary one, GWRC would fare no better, as PwC was *HHRG's* auditor, not GWRC's. *See Facchini v. Miller*, No. CV 990587686S, 2000 WL 175580, at *4 (Conn. Super. Ct. Jan. 31, 2000) (granting plaintiff's motion to strike fiduciary duty claim where plaintiff had not alleged that defendant was his accountant, but instead had claimed that he had relied on defendant to appraise a company of which he owned half).

Nevertheless, GWRC asserts that a fiduciary duty flowed from its reliance on PwC's superior skill and knowledge. According to GWRC, "[t]he location of GWRC's offices in Australia [far from HHRG], along with the complexity and high volume of HHRG's financial information, necessitated GWRC's reliance upon PwC's independent and extensive audit work." GWRC'S Mem. of Law in Opp'n to PwC's Mot. for Summ. J. [doc. #169] at 10. "Superior skill and knowledge alone do not create a fiduciary duty among persons involved in a business transaction," *Hi-Ho Tower*, 255 Conn. at 42, nor does mere misplaced reliance, *see Tricon International, Ltd. v. United Construction, Inc.*, No. X03CV980518862S, 2005 WL 1097103, at *21 (Conn. Super. Ct. Apr. 1, 2005) ("The fact that one business person trusts another and relies on the person to perform its obligations does not rise to the level of a confidential relationship for purposes of establishing a fiduciary duty.") (internal

10

quotation marks omitted). GWRC has alleged no facts suggesting a relationship of special trust or dependence beyond the run-of-the-mill commercial reliance of one company on the services of another. Accordingly, the Court grants PwC's motion for summary judgment with respect to GWRC's fiduciary duty claims.

### IV. Conclusion

As explained above, the Court DENIES Underwriters' Mot. [doc. #161], DENIES PwC's Mot. as to HHRG [doc. #147], and GRANTS in part and DENIES in part PwC's Mot. as to GWRC [doc. #162]. All claims remain in the case except for GWRC's fiduciary duty claims against PwC. The parties will participate in final pretrial conference on **October 14, 2005** at **1:30 p.m.**

IT IS SO ORDERED.

/s/      Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: **October 11, 2005.**