## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GOLDEN WEST REFINING CORPORATION LIMITED, | : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 3:02 CV 1379 (MRK) |
| VS. | : : | |
| PRICEWATERHOUSECOOPERS LLP and COOPERS & LYBRAND LLP, | : : : | |
| Defendants. | : | |
| ALEC SHARP, et al., | : | |
| Plaintiff, | : : | CIVIL ACTION NO. 3:02 CV 1572 (MRK) |
| VS. | : : | |
| PRICEWATERHOUSECOOPERS LLP d/b/a PRICE WATERHOUSE LLP, | : : | |
| Defendant. | : | |
| HANDY & HARMAN REFINING GROUP, INC., | : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 3:02 CV 1803 (MRK) |
| VS. | : : | |
| PRICEWATERHOUSECOOPERS LLP, | : | October 11, 2005 |
| Defendant. | : | |

**PRICEWATERHOUSECOOPERS LLP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE TO PRECLUDE UNDERWRITERS FROM SUBMITTING EVIDENCE ON DAMAGES IN EXCESS OF THE $12.5 MILLION LOSS THEY PAID ON THE CLAIM**

Defendant PricewaterhouseCoopers LLP ("PwC") respectfully submits this memorandum of law in support of its motion in limine to preclude plaintiffs Alec Sharp et al. ("Underwriters") from seeking to introduce into evidence testimony or documents that suggest that Underwriters' damages claim exceeds $12.5 million, which is the amount that Underwriters paid its insured,

Handy & Harman Refining Group, Inc. ("HHRG"), and is the maximum that Underwriters is entitled to recover as a matter of law.

## PRELIMINARY STATEMENT

Underwriters asserts a subrogation claim arising from losses incurred by HHRG and insured by Underwriters. As alleged in the Complaint, between 1996 and 2000 various officers and employees of HHRG participated in a fraudulent scheme pursuant to which HHRG made unsecured advances to various companies located in South America. On February 22, 2000, HHRG filed a claim under its policy with Underwriters (the "Policy"). Underwriters subsequently acknowledged that a covered loss existed under the fidelity provision of the Policy.

HHRG and Underwriters disputed the amount of the covered loss. HHRG filed a proof of loss claiming losses of at least $18,330,423. Underwriters engaged their own professionals, who concluded that the proved losses were less than $8 million. By Settlement Agreement dated December 31, 2001, Underwriters agreed to pay the total sum of $12,500,000 in full settlement of HHRG's claim under the Policy.[1] Upon payment of that amount, Underwriters became subrogated as a matter of law to HHRG's claims against third parties including PwC related to the losses that they paid under the Policy. Those rights were explicitly acknowledged in the Settlement Agreement and in an "Acknowledgement of Assignment and Subrogation" annexed to the Settlement Agreement and identified as Exhibit A to the Complaint in this action.[2]

---

[1] A copy of the Settlement Agreement (UL-00302-313) is attached hereto as Exhibit A. The Settlement Agreement with all attachments was submitted as Exhibit 24 in support of PwC's motions for summary judgment.

[2] A copy of the Acknowledgement of Assignment and Subrogation (UL-00393) is attached hereto as Exhibit B.

Having paid only $12,500,000 under the Policy, Underwriters now seeks to recover damages of $15,810,000, which Underwriters' expert, Vincent Love, opines is the amount of losses that HHRG incurred under the policy.[3]  As a matter of law, however, Underwriters' subrogation claim for damages is limited to the amount that Underwriters paid under the Policy. Accordingly, evidence of losses that exceed $12,500,000 is irrelevant, prejudicial and likely to confuse the jury, and should be excluded.[4]

## ARGUMENT

### A.   Underwriters' Subrogation Rights Are Limited To Recovering Only Amounts That Underwriters Paid Under The Policy.

An insurer who pays a claim to an insured is subrogated to the position of the insured, and may enforce any rights that the insured could have asserted against a third party. *See generally* 44 Am. Jur. 2d *Insurance* § 1795; 11 John Alan Appleman & Jean Appleman, *Insurance Law & Practice* § 6505 (1981).  Black's Law Dictionary defines subrogation to include "[t]he right of one who has paid an obligation which another should have paid to be indemnified by the other." *Black's Law Dictionary* 1427 (6th ed. 1990).  The purpose of subrogation, in other words, is to allow an insurer to be <u>reimbursed</u> for amounts paid under a policy for losses that are attributable to a third party, not to permit a subrogee to profit from the

---

[3] A copy of Love's report was submitted as Exhibit 5 in support of Underwriters' motion for partial summary judgment.

[4] Underwriters already has recovered at least $2.5 million of the amount it paid to HHRG through settlements with another insurer and with a former officer of HHRG.  PwC does not seek to exclude Underwriters from introducing evidence of the full $12.5 million in claimed losses, but submits that Underwriters' recovery from other parties must be deducted from any judgment that enters in Underwriters' favor. *See Alfano v. Ins. Ctr. of Torrington*, 203 Conn. 607, 610 (1987); *Peck v. Jacquemin*, 196 Conn. 53, 81 (1985).

misfortune that befell its insured. The Supreme Court explained this concept in *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132 (1962), which involved the analogous rights of a surety:

> "Traditionally sureties compelled to pay debts for their principal have been deemed entitled to <u>reimbursement</u>, even without a contractual promise . . . . And probably there are few doctrines better established than that the surety who pays the debt of another is entitled to all of the rights of the person he paid to enforce <u>his right to be reimbursed</u>. This rule [is] widely applied in this country and generally known as the right of subrogation. . . ."

*Id.* at 136-37 (emphasis added). The Court pointed out that the right of subrogation "is a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relations between the parties." *Id.* at 137 n.12 (quoting *Memphis & Little Rock R.R. Co. v. Dow*, 120 U.S. 287, 301-02 (1887)).

Applying these principles, a subrogee insurer is entitled to recover from a third party only to the extent it actually paid to discharge the obligation. 73 Am. Jur. 2d *Subrogation* § 114 (1974); *Memphis & L.R.R. Co.,* 120 U.S. at 302; *Colo. Farm Bureau Mut. Ins. Co. v. CAT Cont'l, Inc.*, 649 F. Supp. 49, 52 (D. Colo. 1986) ("The general rule is that an insurer, on paying a loss, is subrogated <u>in a corresponding amount</u> to the insured's right of action against any other person responsible for the loss. . . ." (quoting *Mohl v. NTC of Am., Inc.*, 564 F. Supp. 401, 403 (D. Colo. 1982)); *see also Chemical Bank v. Meltzer*, 93 N.Y.2d 296, 304 (1999) ("[T]he purpose of the subrogation doctrine is to afford a person who pays a debt that is owed primarily by someone else every opportunity to be reimbursed in full.").

These principles are followed under Connecticut law. In *Utica Mutual Ins. Co. v. Denwat Corp.*, 778 F. Supp. 592 (D. Conn. 1991) (Clarie, *J.*), the insurer, Utica, satisfied a claim by its insured resulting from a fire allegedly caused by a product manufactured and distributed by the defendants. Utica sought not only reimbursement of amounts that it had paid, but punitive damages. The defendants moved to dismiss, arguing that "a subrogee is only entitled to

indemnity to the extent of the amounts paid to discharge its obligation to its insured." *Id.* at 593. The Court granted the motion. It acknowledged that "this particular issue has never been addressed by a Connecticut court," but concluded that the result was required because "under Connecticut law it is axiomatic that a subrogee's rights can arise no higher than those of a subrogor" and because many courts in other jurisdictions had held that this rule precludes a subrogee from recovering punitive damages. *Id.* (citing *Colo. Farm Bureau*, 649 F. Supp. at 52); *Colonial Penn. Ins. Co. v. Ford*, 172 N.J. Super. 242, 411 A.2d 736, 737 (1979); *Maryland Cas. Co. v. Brown*, 321 F. Supp. 309, 312 (N.D. Ga. 1971); *Bituminous Fire & Marine Ins. Co. v. Culligan Fyrprotexion, Inc.*, 437 N.E.2d 1360, 1371 (Ind. Ct. App. 1982). The Court went on to explain that "[t]he rule espoused by the courts that have addressed the issue is based on the accepted prem[ise] that because a subrogee's status is derivative, the subrogee is not entitled to achieve any greater rights than those which the subrogor would have been entitled. As such, the subrogee 'is entitled to indemnity only to the extent of the money actually paid to discharge the obligation.'" *Utica Mutual*, 778 F. Supp. at 594 (emphasis added) (quoting *Colo. Farm Bureau*, 649 F. Supp. at 52).

Underwriters here are seeking not only reimbursement of amounts they paid out under the Policy, but additional amounts that they did not actually pay the insured. Such claims are improper because they violate the fundamental premise of subrogation – that an insured has a right of reimbursement – and contravene the equitable purpose of the doctrine.

### B.   Underwriters' Claimed Losses Are The Same Losses That Were Covered Under The Policy.

In their motion for partial summary judgment, Underwriters argued that their damages claims are broader than the losses covered under the Policy. They attempted to distinguish the forensic review of HHRG's insurance claim, which considered "what losses incurred by HHRG

-5-

were covered under an insurance policy," from Love's analysis, which Underwriters asserts represents all "losses incurred by HHRG resulting from PwC's negligence and breach of contract that relate to the circumstances giving rise to the insurance claim."[5]  We are not sure what distinction Underwriters intend.  To the extent they purport to claim damages <u>other than</u> losses incurred under the Policy, they lack standing to assert such claims either as subrogees or under the terms of the Settlement Agreement.

But in fact, the expert opinion offered by Underwriters on damages is limited – as it must be – to losses covered under the Policy.  Although Love's report does not make this clear, Love made this explicit in his deposition testimony:

> "Q.    You were also asked to determine if and in what amount HHRG was damaged as a result of any failure by PwC to perform its services in accordance with the relevant professional standards, is that right?
>
> "A.    Okay, the damages are narrower than that.  All right?  <u>The damages that I am opining on are the damages that were suffered by the Underwriters</u>, not by HHRG in total, but the damages that were suffered by the Underwriters.  And that <u>HHRG suffered those losses but they were covered by the insurance payout from the Underwriters</u> in that particular area.  So it's that one area and not the total damages suffered by HHRG.
>
> "Q.    Can you show me where in your report it explains that?
>
> "A.    I don't see where it explains it in detail, and I apologize for that.  But it is a narrow area of damages.  <u>Since I am the expert for the Underwriters, it only focuses on the damages that the Underwriters have subrogation access to or rights to.</u>  I thought I said that in here somewhere about the subrogation as one of the qualifying factors.  But again, I apologize for not making that clearer.
>
> "Q    Well, is it fair to say that your opinion with respect to the HHRG losses that were suffered that were covered by the insurance are the ones that are summarized in the second bullet point on page 7?
>
> "A.    Yes.

---

[5] Corrected Reply in Support of Underwriters' Motion For Partial Summary Judgment (Docket No. 210), filed 9/19/05, at 7.

"Q.    And so in your opinion, <u>the covered losses under the insurance policy were $15,800,000</u>, is that right?

"A.    <u>Yes</u>."

Love Transcript 44-45 (emphasis added).[6]

### C.    Underwriters Cannot Increase Their Rights By Characterizing Themselves As "Assignees."

In the Settlement Agreement and the Acknowledgement of Assignment and Subrogation, HHRG not only acknowledged Underwriters' rights as subrogee, but also "assigned" to Underwriters its rights in any claims which HHRG had with respect to the losses asserted under the Policy. The fact that the parties characterized Underwriters' rights as including assigned rights, however, does not alter the fundamental nature of Underwriters' claim as subrogee. Regardless of the form of the documents, Underwriters' claim is premised on its payment of a claim under the Policy, which by operation of law entitles Underwriters to subrogation rights.

Once Underwriters admitted coverage under the Policy, the only issue in dispute with its insured was the amount of the covered loss. HHRG argued for a higher number (over $18 million); Underwriters argued for a lower number (under $8 million); and the parties settled upon an intermediate sum, $12,500,000. By law, and absent further consideration, HHRG could only assign to Underwriters its right to assert third party claims to recover these same amounts. Remarkably, Underwriters now argue that the covered losses <u>that it was contractually obligated to pay its insured</u> under the Policy were more than $3 million more than the amount it actually paid, and that it may recover that additional amount from PwC. Neither common sense nor equity permits such a result. Indeed, a rule that permitted Underwriters to recover more than the amount it paid under the Policy rule would simply encourage insurers to deal in bad faith with

---

[6] A copy of this portion of the transcript is attached hereto as Exhibit C.

their policyholders, and to seek to profit (rather than simply be reimbursed) from their payment of claims.

## CONCLUSION

Underwriters' damages claim at trial must be limited to the $12,500,000 that it paid under the Policy. The Court should exclude all evidence introduced by Underwriters that seeks to support damages in a greater amount.

                DEFENDANT,
                PRICEWATERHOUSECOOPERS LLP


                By: _____/s/ Thomas D. Goldberg_____
                     David J. Elliott (ct 04301)
                     Thomas D. Goldberg (ct 04386)
                     Day, Berry & Howard LLP
                     One Canterbury Green
                     Stamford, Connecticut 06901-2047
                     Tel: (203) 977-7300
                     Fax: (203) 977-7301
                     Its Attorneys

**ELECTRONIC CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2005, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

        /s/ Thomas D. Goldberg
David J. Elliott (ct 04301)
Thomas D. Goldberg (ct 04386)
Day, Berry & Howard LLP
One Canterbury Green
Stamford, Connecticut 06901-2047
Tel: (203) 977-7300
Fax: (203) 977-7301
Its Attorneys

Edward J. Boyle, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd St.
New York, NY 10017-5639

William H. Champlin, III, Esq.
Michael T. McCormack, Esq.
William S. Fish, Jr., Esq.
Tyler Cooper & Alcorn, LLP
CityPlace - 35th Floor
185 Asylum Street
Hartford, CT 06103

Daniel McMahon, Esq.
Stefan Dandelles, Esq.
Daniel E. Tranen, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
120 N. LaSalle Street
Chicago, IL 60602

Fred N. Knopf, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604-3407

Steven R. Humphrey (ct06053)
Dina S. Fisher (ct14896)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597

Jed Horwitt, Esq.
Zeisler & Zeisler, P.C.
558 Clinton Ave.
P.O. Box 3186
Bridgeport, CT 06605-0186