UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GOLDEN WEST REFINING CORPORATION, LTD., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 3:02 CV 1379 (MRK) |
| vs. | ) ) | |
| PRICEWATERHOUSECOOPERS, LLP and COOPERS & LYBRAND, LLP, | ) ) ) | |
| Defendants. | ) ) ) | |
| ALEC SHARP, et al., | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 3:02 CV 1572 (MRK) |
| vs. | ) ) | |
| PRICEWATERHOUSECOOPERS, LLP d/b/a PRICE WATERHOUSE, LLP, | ) ) ) | |
| Defendant. | ) ) ) | |
| HANDY & HARMAN REFINING GROUP, INC., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 3:02 CV 1803 (MRK) |
| vs. | ) ) | |
| PRICEWATERHOUSECOOPERS, LLP, | ) ) ) | |
| Defendant. | ) | |

**ALEC SHARP'S MOTION IN LIMINE NO. 1: EXCLUSION OF
ANY REFERENCE TO INSURANCE**

COME NOW Plaintiffs Alec Sharp, et al. ("Sharp" or "Alec Sharp"), in support of their motion *in limine* to exclude any evidence, testimony, facts, argument, theories or claims relating to or referencing insurance, insurance claims, or insurance coverage, and state as follows:

286799.1

## INTRODUCTION

Handy & Harman Refining Group, Inc. ("HHRG"), Golden West Refining Corporation, Ltd. ("GWRC") and Alec Sharp (collectively "Plaintiffs") originally filed separate lawsuits against PricewaterhouseCoopers LLP ("PwC"), which were ultimately consolidated by this Court. Plaintiffs seek to recover from PwC damages arising from PwC's provision of professional services to HHRG, which resulted in HHRG suffering damages including but not limited to an uncollectible and unsecured debt of approximately $12 million, as well as the ultimate destruction of HHRG and GWRC as going concerns. The case is subject to the substantive law of Connecticut.

It is expected that PwC will seek to offer documents, testimony, or argument, or otherwise reference in front of the jury, an underlying insurance claim, Sharp's business as an insurer, and investigations, negotiations, settlement agreement, and ultimate payment pursuant to settlement of an insurance claim. PwC and all of the witnesses should be barred from doing so, since such matters are not relevant on any issue, involve settlement negotiations, and are prejudicial to Sharp in a manner that far outweighs any probative value.

## BACKGROUND

Prior to the inception of this litigation, HHRG submitted a claim to Alec Sharp under a Fidelity Bond issued by Alec Sharp, seeking indemnity for $18.3 million in losses HHRG incurred consisting of (1) unauthorized funds paid to a South American company, Panexim, which were uncollectible; (2) unauthorized payments to consultants in South America; (3) excess remuneration paid to various officers of HHRG; and (4) loss investigation expenses (the "Bond Claim"). After investigation, HHRG and Alec Sharp negotiated and settled the Bond Claim, and entered into a Settlement Agreement, which provided *inter alia* that in consideration for the

2

286799.1

payment by Alec Sharp of $12.5 million, HHRG assigned to Alec Sharp any claims against any parties for recovery of those damages that were the subject of the Bond Claim. *See* Appendix of Exhibits in Support of Alec Sharp's Motions in Limine ("App."), at Exhibit A, pp. 2, 10.

In this case, Alec Sharp seeks damages against PwC relating only to those claims which Alec Sharp received by assignment from HHRG and/or by virtue of subrogation rights from HHRG. HHRG and GWRC seek damages against PwC related to the destruction of these businesses -- claims that HHRG did not assign to Alec Sharp, and which would not otherwise be subject to any subrogation rights.

## ARGUMENT

Any reference to insurance coverage in this case should be barred. Insurance is not relevant to any issue. The insurance matters involve settlement negotiations. Finally, and in any event, any probative value of insurance is outweighed by the prejudice to Plaintiffs.

**I.    INSURANCE IS NOT RELEVANT, AND REFERENCE TO IT IS BARRED UNDER FRE 402**

The existence of insurance coverage is irrelevant because it does not prove or disprove PwC's liability, any damages asserted by the Plaintiffs in the case, or any other issues before this Court. *See Fahey v. Safeco Ins. Co. of Am.*, 49 Conn. App. 306, 308 (Conn. App. Ct. 1998) (App. at R-1) (granting defendant insurer's motion *in limine* excluding evidence of insurance policy and its limits); *Bennett v. Auto. Ins. Co.*, 230 Conn. 795, 800 (Conn. 1994) (R-2) (holding that a jury's only task was to assign the appropriate level of damages arising from tort and because the fact of insurance does not prove or disprove the plaintiffs' damages, it is irrelevant). *See also* FRE 411 ("Evidence that a person was or was not insured against liability is not admissible upon the issue of whether the person acted negligently or otherwise wrongfully.")

In addition, there is no dispute as to the standing of HHRG and GWRC on their own behalf, and Alec Sharp as assignee and subrogee of HHRG, to pursue against PwC the claims that each has asserted, respectively, in this case. *See* App. at Ex. B, para. 82; *see also,* App. at Ex. C at p. 17-8 (in which Sharp moved for summary judgment on PwC's affirmative defense based on standing, which PwC conceded was a defense it abandoned); App. at Ex. D (PwC's opposition brief)

Thus, the Bond Claim, or reference to insurance at all, have no relevance to any disputed issue in the case.

PwC may seek to introduce evidence with respect to the Bond Claim arguing that because Alec Sharp provided coverage under a fidelity bond for the alleged dishonest acts of certain former HHRG employees, that is somehow an admission by HHRG and Sharp regarding the amount of the recoverable losses alleged against PwC. Such an argument would be a red herring.

The payment received by HHRG in settlement of the Bond Claim is from a collateral source (Alec Sharp) wholly unrelated to PwC and which applied to losses unrelated to those sought by HHRG in this case. The Bond claim payment is therefore irrelevant on the issue of damages for this reason alone. *See Curtis Packaging Corp. v. KPMG, LLP*, 2002 WL 31015828, *6, 2002 Conn.Super. LEXIS 2663, *16 (Conn.Super. 2002) (App. at R-3) (in an auditor malpractice case, the Connecticut court "finds no reason to abdicate the traditional collateral source rule") *citing, Bay State Moving Systems, Inc. v. Bowman*, 24 Conn.App. 531, 534, 590 A.2d 462, *cert. denied*, 220 Conn. 904, 593 A.2d 969 (1991); *Acampora v. Ledewitz*, 159 Conn. 377, 384, 269 A.2d 288 (1970) (R-4). *See also* Alec Sharp's Plaintiffs' Joint Motion *in Limine* No. 2: Exclusion of Collateral Source Payments and Other Recoveries, pp. 4-5.

Moreover, any issues of damages or causation involved in the Bond Claim are distinct and unrelated to the issues in this case.

To prevail on damages, Plaintiffs must only establish that the negligence of PwC is a substantial factor in the harm suffered by HHRG or that PwC could foresee such harm as a probable consequence of its breach of its engagement with HHRG.  *See Suarez v. Sordo*, 43 Conn.App. 756 (1996) (R-5) (proximate cause is an actual cause that is a substantial factor in the resulting harm); *see also Mattegat v. Klopfenstein*, 50 Conn. App. 97, 104 (Conn. App. Ct. 1998) (R-6) (In actions for negligent performance of a contract by professional service providers, a plaintiff is entitled to recover all damages proximately caused by the defendant's negligent performance of the contract); 3 Restatement (Second), Contracts 351 (1979) (damages in breach of contract are those the defendant had reason to foresee as a probable result of the breach at the time the contract was executed)

In contrast, to recover under the Bond Claim, HHRG was required to present sufficient evidence that its employees committed dishonest or fraudulent acts that ***directly caused*** HHRG's loss.  Pursuant to the fidelity portion of the bond, Sharp agreed to indemnify HHRG for:

> Loss <u>resulting directly from</u> dishonest, fraudulent or malicious acts by Employees of the Assured, wherever committed and whether committed alone or in collusion with others, including loss of Property through any such acts by Employees.

App. at Ex. E, Bankers Insurance Policy, p. 4 (emphasis added).

The requirements of proximate cause and forseeability in negligence and breach of contract actions, in establishing recoverable damages, are far less strict limitations than the requirement of direct or actual cause which triggers fidelity coverage and limits what is covered. <u>Compare</u> Connecticut Judicial Branch Civil Jury Instructions (App. at Ex. F) <u>with</u> Bankers Insurance Policy language quoted <u>supra</u> and *Finkel v. St. Paul Fire & Marine*, 2002 U.S. Dist.

5

Lexis 11581, *14 (D.C. Conn.. June 6, 2002) (J. Jevas)(App. at R-7) ("By expressly referring to loss resulting from employee dishonesty the [fidelity insurance policy] does not insure against consequential or remote damages that might arise out of the employee's conduct.")  As a result, opinions or calculations regarding the limitations of coverage under the bond regarding certain damages have absolutely nothing to do with whether those damages are recoverable in an action for breach of contract or negligence in a court of law.

Similarly, the Bond Claim has no relevance on the issue of causation in this case.  *See Mahoney v. Beatman*, 110 Conn. 184, 197 (1929) (R-8); *Svege v. Mercedes Benz Credit Corp.*, 329 F.Supp.2d. 285 (D. Conn. 2004); *see also* Alec Sharp's Motion in Limine No. 2, pp. 5-6.

The facts relating to the Bond Claim have no relevance to the issues to be tried in this case.  The fact that Sharp is an insurer is irrelevant, and reference to that fact could only be offered in an attempt to unfairly prejudice the jury.  See § III, *infra*.  Any reference to the Bond Claim, or to insurance at all, is inadmissible under FRE 402.

## II.  THE BOND CLAIM IS ALSO INADMISSIBLE UNDER FRE 408

Sharp's investigation and negotiations with HHRG, and Sharp's decision to pay HHRG in exchange for an assignment of certain claims, was a compromise of a dispute and therefore is inadmissible. Federal Rule of Evidence 408 provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or in validity of the claim or its amount.  Evidence of conduct or statements made in compromise negotiations is likewise not admissible.  This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromised negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a

>     witness, negating a contention of undue delay, or proving an
>     effort to obstruct a criminal investigation or prosecution.

The investigation of the contested insurance claim, the communications between HHRG and Alec Sharp during that claim investigation and negotiation of the claim, and the communications in the negotiation, compromise and settlement of that claim, as well as the settlement agreement itself, are otherwise inadmissible pursuant to FRE 408. *See, e.g., Van Wart v. Allstate Ins. Co.*, 1997 Conn.Super. LEXIS 312 (1997) (App. at R-9); *McInnis v. A.M.F., Inc.*, 765 F.2d 240, 247 (1st Cir. 1985).

### III. THE BOND CLAIM IS INADMISSIBLE UNDER FRE 403

Even if relevant for any issue, the potential unfair prejudice from the injection of insurance into this case substantially outweighs the probative value of the evidence. For example, upon learning that HHRG was compensated by Alec Sharp for a portion of its losses, the jury could improperly conclude that HHRG either suffered no harm, or otherwise has been made whole. The introduction of evidence of insurance coverage and settlements over insurance coverage disputes could result in the jury improperly rendering a decision or award based upon the existence of insurance coverage rather than upon the merits of the case. As such, all evidence, testimony, or facts relating to insurance coverage (either HHRG's or that of the former officers/directors) must be excluded pursuant to Federal Rule of Evidence 403.

Unquestionably, if HHRG and Alec Sharp were proceeding with their lawsuits separately, any reference to insurance in either case would be barred. Recovery by HHRG of the insurance payment made by Alec Sharp is a collateral source payment, which cannot be used as an offset to HHRG's damages claims and therefore any reference to the insurance Alec Sharp provided to HHRG would be barred in any trial brought separately by HHRG against PWC. *See supra*, discussion on collateral source payments; *see also* Sharp's Motion *in Limine* No. 2, p. 4.

Similarly, if the claims of Alec Sharp against PwC were tried separately from the claims of HHRG, any reference to insurance would also be barred.  Under Connecticut law, Alec Sharp at its choice, could sue in its own name, or in the name of its assignor and subrogor HHRG.  *See, e.g., Communications Systems, Inc., et al. v. Farmington Four Partners, et al.,* 1998 Conn.Super. LEXIS 794, *7 (Conn.Super. May 16, 1998) (R-10); *Interior Technology v. Town of Wallingford*, 1996 Conn.Super. LEXIS 1754, *3 (Conn.Super. July 10, 1996) (R-11); *Hartford A&I Co. v. Barney*, 1991 Conn.Super. LEXIS 760, *6 (Conn.Super. April 8, 1991) (R-12).  Alec Sharp, which initiated its litigation against PwC in Connecticut state court, would have been able to proceed with that lawsuit to trial in its own name or choose to substitute and sue in the name of HHRG at the time of trial.  *See, e.g., Gilligan v. Atlantic Coast Cable*, 1998 Conn.Super. LEXIS 343, *8-*13 (Conn.Super. February 5, 1998) (R-13); *Dime Savings Bank of Wallingford v. Arpaia*, 55 Conn.App. 180, 738 A.2d 715, n.2 (Conn.App. 1999) (R-14).  Had Alec Sharp proceeded with its claim in state court in the name of HHRG, the jury at the trial of that case would never have heard the word "insurance."  *See Fahey*, *Bennett*, *cited supra*; *see also* Appleman on Insurance Law & Practice § 12841 (1st Ed.) (2005) (where a suit is brought by an insurer in the name of an individual to recover for a loss, evidence of that fact is inadmissible when the proceeding is by way of subrogation).  The fact that these cases are now proceeding on a consolidated basis in the interest of judicial economy, and to the benefit of PwC which is defending one trial instead of separate trials, should not lead to any different result on the issue of whether a reference can be made to insurance for either HHRG's or Sharp's claims.

Any confusion on the part of the jury as to which claims are being advanced by which Plaintiffs can be cured by this Court instructing the jury that HHRG is pursuing claims on its own behalf other than those it assigned to Alec Sharp, and Alec Sharp is pursuing only those

286799.1

claims that were assigned to it.  This situation is not in dispute.  Indeed, Plaintiffs anticipate the jury instructions and verdict forms will make this distinction quite clear.  There is no reason for the jury to hear any reference at all to insurance.

    WHEREFORE, Alec Sharp respectfully requests that this Court enter an Order excluding any evidence, testimony, facts, argument, theories, claims or references relating to insurance.

        Respectfully submitted,

        WILSON, ELSER, MOSKOWITZ,
        EDELMAN & DICKER LLP,

By: /s/ Fred Knopf
    Fred Knopf, Esq. (ct 09427)
    E-mail: knopff@wemed.com
    Edward Boyle, Esq.
    E-mail: boylee@wemed.com
    WILSON, ELSER, MOSKOWITZ,
    EDELMAN & DICKER LLP
    150 E. 42nd Street
    New York, NY 10017
    Phone: 212-490-3000
    Fax: 212-490-3038

    Daniel J. McMahon, Esq. (Ill. Bar 0162590)
    E-mail: mcmahond@wemed.com
    Stefan R. Dandelles, Esq. (Ill. Bar 6244438)
    E-mail: dandelless@wemed.com
    WILSON, ELSER, MOSKOWITZ,
    EDELMAN & DICKER LLP
    120 N. LaSalle Street
    Chicago, IL 60602
    Phone: 312-704-0550
    Fax: 312-704-1522

## CERTIFICATE OF SERVICE

      THIS IS TO CERTIFY that on October 11, 2005, a copy of the foregoing was filed electronically (and served by mail on anyone unable to accept electronic filing) on each of the following counsel of record in each of the consolidated cases. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system (or by mail to anyone unable to accept electronic filing). Parties may access this filing through the Court's system.

Thomas D. Goldberg, Esq.
Steven Greenspan, Esq.
David J. Elliott, Esq.
William H. Erickson, Esq.
Day, Berry & Howard
City Place I
Hartford, CT 06103

Steven Humphrey, Esq.
Dina Fisher, Esq.
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103-3597

William H. Champlin III, Esq.
Michael T. McCormack, Esq.
Tyler Cooper & Alcorn, LLP
City Place, 35th Floor
185 Asylum Street
Hartford, CT 06103

                                          /s/ Fred Knopf
                                          Fred Knopf

286799.1