UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GOLDEN WEST REFINING CORPORATION, LTD., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 3:02 CV 1379 (MRK) |
| vs. | ) ) | |
| PRICEWATERHOUSECOOPERS, LLP and COOPERS & LYBRAND, LLP, | ) ) ) | |
| Defendants. | ) ) ) | |
| ALEC SHARP, et al., | ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 3:02 CV 1572 (MRK) |
| vs. | ) ) | |
| PRICEWATERHOUSECOOPERS, LLP d/b/a PRICE WATERHOUSE, LLP, | ) ) ) | |
| Defendant. | ) ) ) | |
| HANDY & HARMAN REFINING GROUP, INC., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 3:02 CV 1803 (MRK) |
| vs. | ) ) | |
| PRICEWATERHOUSECOOPERS, LLP, | ) ) | |
| Defendant. | ) | |

**ALEC SHARP'S MEMORANDUM REGARDING SUBJECT MATTER JURISDCTION**

289794.1

COMES NOW Plaintiffs Alec Sharp, et al. ("Sharp"), by their counsel, and submit the following memorandum, which sets forth the basis for subject matter jurisdiction[1]:

## INTRODUCTION

### A. Bankruptcy Proceeding

On March 28, 2000, Handy & Harman Refining Group, Inc., ("HHRG") filed a petition seeking to reorganize under Chapter 11 of the Bankruptcy Code. *See In re: Handy & Harman Refining Group, Inc.,* Case No. 00-20845 (Bankr. Conn.). On August 20, 2001, the Bankruptcy Court confirmed the Debtor's Modified Second Amended Plan of Reorganization ("Plan"), which appointed a Liquidating Custodian. Pursuant to the Plan, the Liquidating Custodian is "authorized and empowered to exercise all of the powers of the Debtor in the place and to the exclusion of the Debtor's board of directors and officers." *See* Exhibit A; Plan, Article V, Section A, Paragraph 1.

### B. Settlement Agreement Between HHRG and Sharp

On December 31, 2001, Sharp and the Liquidating Custodian on behalf of HHRG entered into a Settlement Agreement resolving HHRG's clam for coverage for certain losses under the fidelity section of a Banker's Insurance Policy. Pursuant to the Settlement Agreement, in consideration for the $12,500,000 settlement payment, HHRG acknowledged Sharp's rights as subrogee, and assigned to Sharp "all rights, title and interest in any and all claims which [HHRG] has, had, or may ever have as to all losses asserted by [HHRG] in the Claim, plus interest, costs, and punitive damages arising from such losses..." *See* Exhibit B, Settlement Agreement, ¶ 10. In addition, HHRG agreed to cooperate with Sharp in any subsequent related actions brought by

---

[1] Counsel for PricewaterhouseCoopers LLP ("PwC") has authorized Sharp to state that PwC joins in Part A of the Argument. PwC takes no position on Part B of the Argument.

2

289794.1

Sharp pursuant to subrogation and the assignment of claims in the Settlement Agreement, and to pay up to $250,000 in costs in compliance with its duty to cooperate. *See* Exhibit B, Settlement Agreement, ¶ 4. The Bankruptcy Court approved the settlement reached between Sharp and HHRG. *See* Exhibit B; Settlement Agreement, ¶ 13; Exhibit C, Order Granting Motion to Compromise and Settle Insurance Loss Claim Under Handy & Harman Refining Group, Inc.'s Bankers Insurance Policy.

**C.     Subject Matter Jurisdiction Issue Upon Removal of Sharp Action to Federal Court**

Sharp originally filed its action against PwC in the Superior Court for the Judicial District of Hartford at Hartford, and PwC removed the Sharp case to this Court. On October 4, 2002, PwC moved the Court to consolidate the Sharp case with two other cases pending in this Court: *Golden West Refining Corporation Limited v. PricewaterhouseCoopers, LLP and Coopers & Lybrand, LLP* and *Handy & Harman Refining Group, Inc. v. PricewaterhouseCoopers, LLP*. On February 28, 2003, the Court entered an Order to Show Cause, requesting that PwC explain how the Court had subject matter jurisdiction over the Sharp case. On March 21, 2003, PwC filed its Response to the Order to Show Cause, stating that the Court had subject matter jurisdiction because the Sharp case was "related to" the bankruptcy case pursuant to 28 U.S.C. § 1334(b) because it asserted "a portion of the estate's alleged claim against PwC" and was "closely intertwined with that claim." On April 8, 2003, the Court held that it had subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b), and consolidated the three cases.

On June 4, 2004, PwC again submitted a memorandum regarding subject matter jurisdiction over the three cases pursuant to the Court's May 11, 2004 Case Management Order. Regarding Sharp, PwC stated:

> The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1334(b), in that the action is related to the HHRG bankruptcy case. *See*

3

Ruling and Order dated April 8, 2004 (Docket No. 25)(CFD)(finding jurisdiction in this action under § 1334(b)).

The parties submit that the Court has not lost 1334(b) jurisdiction by virtue of the HHRG/GWRC settlement.

**D.   Competing Actions Against Predecessor Company Handy & Harman**

On August 14, 2002, HHRG filed an adversary proceeding against Handy & Harman, Inc. ("H&H"), seeking to recover $8,500,000 pursuant to the indemnification provisions in an Asset Purchase Agreement ("APA") between the HHRG's parent company, GWRC, and H&H, which was executed in 1996. This action has been transferred to this Court and remains pending. On June 17, 2004, Sharp filed a Complaint against H&H in the Supreme Court of the State of New York, County of Westchester, as assignee and subrogee of HHRG, also seeking to recover $8,500,000 pursuant to the indemnification provision in the APA. This action also remains pending. The APA provides that should the buyer or its assignees incur "Buyer Damages," as defined in the APA, H&H will provide indemnity up to $8,500,000 million. This is a capped sum, recoverable only once, such that Sharp and HHRG are vying for the same source of recovery from H&H. Both HHRG and Sharp have defeated H&H's attempts to dismiss the two cases, and both HHRG and Sharp have valid competing claims for indemnity against H&H for the same losses both HHRG and Sharp have asserted damages claims against PwC.

**ARGUMENT**

**A.   The Court may and should exercise its discretion to retain jurisdiction over the Sharp action.**

The decision to retain "related to" jurisdiction should be left to the sound discretion of the District Court. *See Porges v. Gruntal & Co.*, 44 F.3d 159 (2nd Cir. 1995). In *Porges*, the Second Circuit held that dismissal of an underlying bankruptcy case did not automatically strip a federal court of "related to" jurisdiction over an adversary proceeding. *Id.* at 162. Similarly, a District

4

289794.1

Court's exercise of supplemental jurisdiction over pendent state claims is not automatically stripped when the federal claims are dismissed. *See In re Morris*, 950 F.2d 1531 (11th Cir. 1992). In determining whether to continue to exercise jurisdiction over cases where the original basis for jurisdiction may have eroded (*e.g.*, "related to" or supplemental jurisdiction), courts consider judicial economy, convenience to the parties, fairness, and comity. *Id.*, at 1534; *see also, Porges,* at 163. In this case, even if the original basis for "related to" jurisdiction has fallen away (which it has not; *see* discussion *infra*), the four considerations noted above warrant this Court's continued exercise of jurisdiction over this case.

In determining whether to retain supplemental jurisdiction, District Courts consider whether the parties have expended considerable time, effort and money in federal court to litigate the claims. *See Enercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536, 546 (2d Cir. 1989)(supplemental jurisdiction appropriate because case had involved over eleven months of pretrial litigation, dispositive motions were recently filed, case was well-known to presiding judge, and it would be unfair to plaintiffs to transfer a case scheduled for trial in federal court within days to a state tribunal where it would have been delayed significantly before being heard); *Ametex Fabrics, Inc., v. Just In Materials, Inc.,* 140 F.3d 101, 105 (2d Cir. 1998)(supplemental jurisdiction appropriate because by the time the federal claim had settled, the parties had already engaged in discovery under an expedited discovery schedule and held a settlement conference before a magistrate judge); *Philan Ins. Ltd. v. Frank B. Hall & Co.*, 786 F. Supp. 345, 347-48 (S.D.N.Y. 1992)(supplemental jurisdiction appropriate where federal claims dismissed before trial because substantial resources have already been expended in the action).

In this case, the parties have expended considerable time, effort, and money litigating their claims in this Court. This case has been actively litigated for over three years, and discovery is complete, dispositive motions have been resolved, and the parties are on the eve of

5

trial with jury selection less than two weeks from the filing of this Memorandum. Overseas witnesses having made travel arrangements to appear in this Court. The parties have engaged in a mediation before Magistrate Judge Garfinkel.

Moreover, it would be waste of judicial resources to require a state court to invest the time and effort necessary to familiarize itself with a case well-known to this Court.

Finally, it would be unfair to force the parties to re-litigate this matter in state court when the case is already set for trial in this Court.

Thus, this Court should exercise its discretion to retain jurisdiction over the Sharp action.

**B.    The dismissal of the GWRC and HHRG actions does not impact the Court's "related to" jurisdiction over the Sharp action.**

Notwithstanding the foregoing basis for this Court's continued exercise of jurisdiction over this matter, Sharp believes that "related to" jurisdiction still exists in this matter. Related to jurisdiction exists when the matter has a "significant connection" to a bankruptcy proceeding. *Liberty Mut. Ins. v. Lone Star Indus.*, 313 B.R. 9, 19, 30 (D. Conn. 2004), citing *In re Turner*, 724 F.2d 338, 341 (2nd. Cir. 1983). The "test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any 'conceivable effect' on the bankrupt estate." *Liberty* at 30, citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992). A proceeding between non-debtors has a "conceivable effect" on the bankruptcy estate where the dispute would "affect how much property is available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors, or if the outcome could alter the debtor's rights and liabilities." *In re Manshul Construction Corp.*, 225 B.R. 41, 45 (Bankr. S.D.N.Y. 1998). The apparent breadth of related to jurisdiction has been attributed to Congress' intention "to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters

6

289794.1

connected with the bankruptcy estate" and that it must be read to reach "more than simply proceedings involving the property of the debtor or the estate." *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 (1995).

An independent basis for "related to" jurisdiction also exists in the Sharp action even upon the dismissal or severance of the GWRC and HHRG actions because its outcome has a "conceivable effect" on the HHRG estate.

Pursuant to the Settlement Agreement, the bankruptcy estate, through its Liquidating Custodian, has an ongoing duty to cooperate with Sharp in this action. *See* Exhibit A, Settlement Agreement, ¶ 4. This additional connection between the instant case and the pending bankruptcy is significant because the estate's resources will be utilized and potentially diminished in fulfilling its duties under the Settlement Agreement, thus impacting "how much property is available for distribution to creditors." Accordingly, notwithstanding the HHRG and GWRC settlements, the Court continues to have "related to" jurisdiction over the Sharp action because it has (at least) a "conceivable effect" on the HHRG estate.

Moreover, if Sharp is made whole against PwC in this action, Sharp may have no remaining claim in its separate lawsuit against H&H, and the bankruptcy estate can pursue the $8,500,000 H&H indemnity without a competing claim. Thus, the Sharp action directly impacts HHRG's rights and potential recoveries against H&H.[2]

---

[2] Sharp does note however that the H&H matter is pending and is a fluid situation, and could change at any time including during the course of trial in this matter. Should this Court determine that original "related to" jurisdiction exists because of the H&H claim, Sharp will advise the Court of any change in circumstance in that case which arguably impacts jurisdiction.

7

## CONCLUSION

For the foregoing reasons, Sharp requests that this Court find it has subject matter jurisdiction over the claims asserted by Sharp.

                                      Respectfully submitted,

                                      WILSON, ELSER, MOSKOWITZ,
                                      EDELMAN & DICKER LLP,

By: /s/ Fred Knopf
       Fred Knopf, Esq. (ct 09427)
       E-mail: knopff@wemed.com
       Edward Boyle, Esq.
       E-mail: boylee@wemed.com
       WILSON, ELSER, MOSKOWITZ,
       EDELMAN & DICKER LLP
       150 E. 42nd Street
       New York, NY 10017
       Phone: 212-490-3000
       Fax: 212-490-3038

       Daniel J. McMahon, Esq. (Ill. Bar 0162590)
       E-mail: mcmahond@wemed.com
       Stefan R. Dandelles, Esq. (Ill. Bar 6244438)
       E-mail: dandelless@wemed.com
       WILSON, ELSER, MOSKOWITZ,
       EDELMAN & DICKER LLP
       120 N. LaSalle Street
       Chicago, IL 60602
       Phone: 312-704-0550
       Fax: 312-704-1522

289794.1

## CERTIFICATE OF SERVICE

  THIS IS TO CERTIFY that on October 21, 2005, a copy of the foregoing was filed electronically (and served by mail on anyone unable to accept electronic filing) on each of the following counsel of record in each of the consolidated cases. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system (or by mail to anyone unable to accept electronic filing). Parties may access this filing through the Court's system.

Thomas D. Goldberg, Esq.
Steven Greenspan, Esq.
David J. Elliott, Esq.
William H. Erickson, Esq.
Day, Berry & Howard
City Place I
Hartford, CT 06103

Steven Humphrey, Esq.
Dina Fisher, Esq.
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103-3597

William H. Champlin III, Esq.
Michael T. McCormack, Esq.
Tyler Cooper & Alcorn, LLP
City Place, 35th Floor
185 Asylum Street
Hartford, CT 06103

            /s/  Fred Knopf
               Fred Knopf

289794.1