CLERK OF THE
BANKRUPTCY COURT
DISTRICT OF CT

01 AUG -6 PM 1:06

HARTFORD DIVISION

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| HANDY & HARMAN REFINING GROUP, INC., | : | Case No. 00-20845 |
| | : | |
| Debtor. | : | |

**MODIFIED SECOND AMENDED PLAN OF REORGANIZATION**

Reid and Riege, P.C.
One State Street
Hartford, CT  06103
Attorneys for the Debtor

July 27, 2001



EXHIBIT
A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| HANDY & HARMAN REFINING GROUP, INC., | : | Case No. 00-20845 |
| | : | |
| Debtor. | : | |

## MODIFIED SECOND AMENDED PLAN OF REORGANIZATION

Handy & Harman Refining Group, Inc., proposes the following liquidating plan of reorganization pursuant to Bankruptcy Code section 1121.

### ARTICLE I
### DEFINITIONS

A. As used in this Plan, the following terms (which appear in this Plan as capitalized terms) shall have the meanings specified below:

1. **"Administrative Claim"** means any Claim for an administrative expense of the kind described in Bankruptcy Code section 503(b), including, without limitation, any actual and necessary costs and expenses of preserving the Debtor's estate incurred after the commencement of the Case and prior to confirmation of the Plan, any actual and necessary costs of operating the Debtor's business after the commencement of the Case and prior to confirmation of the Plan, any

249398.5\19130.000

indebtedness or obligations incurred by the Debtor in connection with the operation of its business or for the acquisition or lease of property or the rendition of services after the commencement of the Case and prior to confirmation of the Plan, any fees and expenses allowed under Bankruptcy Code sections 330 and 331, and any fees due to the Office of the United States Trustee under 28 U.S.C. § 1930(a)(6).

2. **"Adverse Title Claim"** means a claim against Fleet or CSFB by an Entity (a) to ownership of precious metal or the proceeds thereof that was in the possession of the Debtor and that was transferred by the Debtor directly or through ARC to CSFB or Fleet and (b) who timely asserted claims against Fleet or CSFB pursuant to either (1) Order (i) Authorizing Debtor to Use Cash and Other Collateral; (ii) Granting Security Interest and Priority; and (iii) Providing Adequate Protection Dated May 15, 2000 (the **"Fleet Order"**), or (2) Order Granting Relief from the Automatic Stay and Providing Other Relief Pursuant to Bankruptcy Code §§ 362-365 and Bankruptcy Rules 4001 and 9014 Dated May 12, 2000 (the **"CSFB Order"**). The term Adverse Title Claim specifically excludes any claim other than an ownership claim. The term Adverse Title Claim specifically excludes, without limitation, claims for fraud, breach of fiduciary duty, or other tort claims.

3. **"Allowed Claim"** means any Claim to the extent it has not been withdrawn, paid in full or otherwise deemed satisfied in full and proof of which has been filed on or before the date

249398.5\19130. 000

designated by the Bankruptcy Court for filing proofs of claim (or, if not filed by such date, filed by such other date as the Bankruptcy Court orders), or, if no proof of claim is filed, any Claim that has been or hereafter is listed by the Debtor on its Schedules as liquidated in amount, not disputed and not contingent and, in all cases, a Claim as to which no objection has been filed, or as to which an objection has been filed and such Claim has been allowed in whole or in part by a Final Order, to the extent allowed by such Final Order. Unless otherwise specified in the Plan or in a Final Order allowing such Claim, "Allowed Claim" shall not include interest on the amount of such Claim maturing or accruing from and after the Filing Date.

4. **"Allowed Priority Claim"** means any Claim entitled to priority under Bankruptcy Code section 507(a)(3), (4), (5), (6), (7) or (9) to the extent it is an Allowed Claim.

5. **"Allowed Secured Claim"** means that portion of a Claim that is secured by a valid perfected lien on property of the Debtor, to the extent of the value of the interest of the holder of such Claim in such property of the Debtor, as determined by agreement between the Debtor and the holder of such Claim or by the Bankruptcy Court by a Final Order under Bankruptcy Code section 506, to the extent that it is an Allowed Claim.

6. **"Allowed Tax Claim"** means a Claim for any Tax entitled to priority under Bankruptcy Code section 507(a)(8) to the extent it is an Allowed Claim.

249398.5\19130.000

7. **"Allowed Unsecured Claim"** means a Claim that is not an Allowed Secured Claim, an Administrative Claim, a Tax Claim, a Title Property Claim, or a Priority Claim, including, without limitation, any Claim arising from the rejection of executory contracts and unexpired leases, to the extent it is an Allowed Claim.

8. **"Applicable Interest"** means interest (a) at the Legal Rate or (b) where a contract between the Debtor and a Creditor specifies an interest rate, at such contract rate, from the Petition Date through the date of payment to a Creditor in full.

9. **"ARC"** means Attleboro Refining Company.

10. **"Bankruptcy Code"** means title 11 of the United States Code, as now in effect or hereafter amended.

11. **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Connecticut, Hartford Division.

12. **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as amended, the Local Rules of Civil Procedure of the United States District Court for the District of Connecticut, as amended, the Local Rules of Bankruptcy Procedure for the United States Bankruptcy Court for the District of Connecticut, as amended, and any standing orders of the Bankruptcy Court.

249398.5\19130. 000

13. **"Business Day"** means any day other than a Saturday, a Sunday or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

14. **"Case"** means the chapter 11 Case commenced by the Debtor on the Petition Date and pending before the Bankruptcy Court.

15. **"Cash"** means currency of the United States of America, cash equivalents, and other readily marketable securities or instruments.

16. **"Claim"** means (a) any right to payment or return of property from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

17. **"Class"** means each class of Allowed Claims or Interests established pursuant to Article III of the Plan.

18. **"Committee"** means the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee in this Case. The members of the Committee as of the date of this Plan are Echo Bay Management Corporation; Residual Materials, Inc.; Geib Refining Corporation; and Glines & Rhodes.

19. **"Confirmation Date"** means the date upon which the Confirmation Order is entered by the Bankruptcy Court.

20. **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

21. **"Creditor"** means an entity that has a Claim against (a) the Debtor that arose at the time of or before the Petition Date or (b) the Debtor's estate of a kind specified in Bankruptcy Code section 502(g), (h) or (i).

22. **"CSFB"** means Credit Suisse First Boston International.

23. **"Debtor"** means Handy & Harman Refining Group, Inc., as debtor and debtor-in-possession under the Bankruptcy Code.

24. **"Disclosure Statement"** means the Disclosure Statement For Second Amended Plan of Reorganization, submitted by the Debtor in connection with this Plan pursuant to Bankruptcy Code section 1125, as amended, modified or supplemented from time to time.

25. **"Disputed Claim"** means a Claim against the Debtor that (a) was listed by the Debtor in its Schedules as disputed, contingent, or unliquidated, and for which no proof of Claim was filed or (b) the Debtor, the Committee or any other party in interest has filed an objection to (where such objection has not been overruled by a Final Order). To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the

extent of the objection. Prior to the time that an objection has been or may be timely filed, for the purposes of this Plan a Claim shall be considered a Disputed Claim to the extent that the amount of the Claim specified in the proof of Claim exceeds the amount of the Claim scheduled by the Debtor as other than disputed, contingent or unliquidated.

26. **"Distributable Funds"** means, with respect to any date on which a distribution is to be made pursuant to Article IV of the Plan, the Property that has been liquidated to Cash, less amounts necessary to pay (a) Allowed Administrative Claims, (b) Allowed Tax Claims, (c) Allowed Secured Claims, (d) Allowed Priority Claims, (e) holders of Title Property Claims who elect to receive Cash distributions in settlement of their Title Property Claims, (f) amounts to be held in reserve pursuant to the provisions of the Plan, and (g) all funds reasonably estimated by the Liquidating Custodian to be necessary to pay ongoing expenses of the Debtor.

27. **"Distribution Date"** means any date on which a distribution is to be made to Class 4 Creditors pursuant to Article IV of the Plan.

28. **"Effective Date"** means (a) the first Business Day after ten days have elapsed following the Confirmation Date or (b) if the Confirmation Order has been stayed by a court of competent jurisdiction, the first Business Day following the date on which such stay is lifted or dissolved by a court of competent jurisdiction.

249398.5\19130.000

29. **"Entity"** means a person (as defined in Bankruptcy Code section 101(41)), estate, trust, governmental unit (as defined in Bankruptcy Code section 101(27)), and the United States trustee.

30. **"Final Order"** means an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended and as to which the time to appeal or to seek certiorari or review has expired and as to which no appeal or petition for certiorari or review is pending or as to which any right to appeal or to seek certiorari or review has been waived.

31. **"Fleet"** (unless otherwise specified) means Fleet National Bank and Fleet Precious Metals, Inc.

32. **"Golden West"** means Golden West Refining Corporation Limited, the owner of the Debtor.

33. **"Interest"** means any equity security of the Debtor within the meaning of Bankruptcy Code section 101(16).

34. **"Legal Rate"** means the rate specified in 28 U.S.C. § 1961, effective as of the Confirmation Date.

35. **"Liquidating Custodian"** means Jed Horwitt, Esq., of Zeisler & Zeisler, P.C., or his designee, and any successor appointed pursuant to the Plan.

36. **"Oversight Committee"** means the committee appointed pursuant to Article V of the Plan.

37. **"Petition Date"** means March 28, 2000.

38. **"Plan"** means this Second Amended Plan of Reorganization and any exhibits or duly authorized amendments hereto.

39. **"Property"** means all of the property of the Debtor.

40. **"Schedules"** means the schedules of assets and liabilities and the statement of financial affairs, as amended and as may be further amended, filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Code section 521 and Bankruptcy Rule 1007.

41. **"Tax"** means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest or additions attributable to, imposed on or with respect to such assessments.

42. **"Title Property"** means precious metal or the proceeds thereof, in the possession or held for the benefit of the Debtor as of the Effective Date and segregated pursuant to an order entered by the Bankruptcy Court.

249398.5\19130. 000

43.  **"Title Property Claims"** means a Claim by an Entity (a) to ownership of Title Property and (b) who timely asserted or preserved claims against the Debtor pursuant to either (i) the Fleet Order, (ii) the CSFB Order or (iii) another order of the Bankruptcy Court.

44.  **"Unclaimed Property"** means any Cash (together with any interest earned thereon) that is unclaimed within six months after such Cash is distributed, and shall include: (a) checks (and the funds represented thereby) that have been returned as undeliverable; (b) funds for checks that have not been paid or negotiated; and (c) checks (and the funds represented thereby) that were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same.

B. Terms not defined herein which are defined in the Disclosure Statement shall have the meaning assigned to such term in the Disclosure Statement. A term used in the Plan that is not defined in the Plan or Disclosure Statement but that is defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

### ARTICLE II
### ADMINISTRATIVE CLAIMS AND ALLOWED TAX CLAIMS

A. **Administrative Claims.** Administrative Claims are not classified under the Plan and have no right to accept or reject the Plan. Each Entity holding an Administrative Claim shall be

paid (1) in full in Cash on the later of (a) the Effective Date and (b) the date of the entry of a Final Order allowing and determining such Administrative Claim, or (2) on such other less favorable terms as may be agreed to by such Entity; provided, however, that Administrative Claims representing liabilities incurred by the Debtor in the ordinary course of its business during the Case shall be paid by the Debtor in accordance with the terms and provisions of the particular transactions and agreements relating thereto. If the principal amount of Allowed Tax Claims, Allowed Priority Claims, Allowed Unsecured Claims, Title Property Claims receiving Cash distributions, any subordinated guarantee Claim of CSFB, and any penalty Claim of the United States Mint has been paid in full, holders of Administrative Claims shall be paid Applicable Interest.

B. **Allowed Tax Claims.** Allowed Tax Claims are not classified under the Plan and have no right to accept or reject the Plan. Each Entity holding an Allowed Tax Claim shall be paid (1) in full in Cash on the later of (a) the Effective Date of the Plan and (b) the date of entry of a Final Order allowing and determining such Tax Claim, or (2) on such other less favorable terms as may be agreed to by such Entity. If the principal amount of Allowed Priority Claims, Allowed Unsecured Claims, Title Property Claims receiving Cash distributions, any subordinated guarantee Claim of CSFB, and any penalty Claim of the United States Mint has been paid in full

and holders of Administrative Claims have been paid Applicable Interest, holders of Allowed Tax Claims shall be paid Applicable Interest.

### ARTICLE III
### DESIGNATION OF CLASSES OF CLAIMS AND CLASSES OF INTERESTS AND SPECIFICATION OF CLASSES OF CLAIMS OR CLASSES OF INTERESTS IMPAIRED UNDER THE PLAN

All Allowed Claims against the Debtor, of whatever nature, including any Allowed Claims arising from the rejection of executory contracts, are hereby classified as follows:

A. **Class 1 - Allowed Priority Claims under Bankruptcy Code section 507(a)(3).** Class 1 consists of any unpaid Allowed Priority Claims under Bankruptcy Code section 507(a)(3). This class is not impaired under and is not entitled vote on the Plan.

B. **Class 2 - Allowed Priority Claims under Bankruptcy Code section 507(a)(4).** Class 2 consists of any unpaid Allowed Priority Claims under Bankruptcy Code section 507(a)(4). This class is not impaired under and is not entitled vote on the Plan.

C. **Class 3 - Allowed Secured Claim of Fleet.** Class 3 consists of the Allowed Secured Claim of Fleet. The Debtor believes that Fleet's Allowed Secured Claim has been paid in full, and that any remaining Fleet Claim is contingent. Fleet's contingent Claim is based on the remote possibility that an Entity holding an Adverse Title Claim might bring a successful action against Fleet asserting that Fleet received precious metal that belonged to such Entity. However, because

249398.5\19130.000

(a) the Debtor believes that there are no valid Adverse Title Claims against Fleet, and (b) in any event Fleet was not repaid with any precious metal or proceeds of precious metal traceable to precious metal as to which an Adverse Title Claim has been made, the Debtor believes that the amount of Fleet's contingent Claim should be estimated at zero. This class is not impaired under and is not entitled to vote on the Plan.

D.  **Class 4 – Allowed Unsecured Claims.**  Class 4 consists of all Allowed Unsecured Claims. This class is impaired under and is entitled to vote on the Plan.

E.  **Class 5 – Title Property Claim of Deluxe Toronto.**  Class 5 consists of the Title Property Claim of Deluxe Toronto. This class is impaired under and is entitled to vote on the Plan.

F.  **Class 6 – Title Property Claim of Du Art Film.**  Class 6 consists of the Title Property Claim of Du Art Film. This class is impaired under and is entitled to vote on the Plan.

G.  **Class 7 – Title Property Claim of Gerald Metals Co.**  Class 7 consists of the Title Property Claim of Gerald Metals Co. This class is impaired under and is entitled to vote on the Plan.

H.  **Class 8 – Title Property Claim of Hercules, Inc.**  Class 8 consists of the Title Property Claim of Hercules, Inc. This class is impaired under and is entitled to vote on the Plan.

I.  **Class 9 - Title Property Claim of Kelley Metals.**  Class 9 consists of the Title Property Claim of Kelly Metals. This class is impaired under and is entitled to vote on the Plan.

J.  **Class 10 - Title Property Claim of Michael Anthony Jewelers.**  Class 10 consists of the Title Property Claim of Michael Anthony Jewelers. This class is impaired under and is entitled to vote on the Plan.

K.  **Class 11 - Title Property Claim of Handy & Harman Products.**  Class 11 consists of the Title Property Claim of Handy & Harman Products. This class is impaired under and is entitled to vote on the Plan.

L.  **Class 12 - Title Property Claim of Safety Kleen Corporation.**  Class 12 consists of the Title Property Claim of Safety Kleen Corporation. This class is impaired under and is entitled to vote on the Plan.

M.  **Class 13 - Title Property Claim of City Industries Inc.**  Class 13 consists of the Title Property Claim of City Industries Inc. This class is impaired under and is entitled to vote on the Plan.

N.  **Class 14 - Title Property Claim of Glines Rhodes Inc.**  Class 14 consists of the Title Property Claim of Glines & Rhodes Inc. This class is impaired under and is entitled to vote on the Plan.

O. **Class 15 - Title Property Claim of Celanese Ltd.** Class 15 consists of the Title Property Claim of Celanese Ltd. This class is impaired under and is entitled to vote on the Plan.

P. **Class 16 - Title Property Claim of Astro Color Labs, Inc.** Class 16 consists of the Title Property Claim of Astro Color Labs, Inc. This class is impaired under and is entitled to vote on the Plan.

Q. **Class 17 - Title Property Claim of Checon Corporation.** Class 17 consists of the Title Property Claim of Checon Corporation. This class is impaired under and is entitled to vote on the Plan.

R. **Class 18 - Title Property Claim of AngloGold Joint Ventures.** Class 18 consists of the Title Property Claim of AngloGold Joint Ventures. This class is impaired under and is entitled to vote on the Plan.

S. **Class 19 - Subordinated guarantee Claim of CSFB.** Class 19 consists of any allowed subordinated guarantee Claim of CSFB. This class is impaired under and is entitled to vote on the Plan.

T. **Class 20 - Allowed Claim for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages of the United States Mint.** Class 20 consists of any Allowed Claim of the United States Mint for any fine, penalty, or forfeiture, or for multiple, exemplary,

249398.5\19130.000

or punitive damages.  The Debtor believes that no such Claim will be allowed.  This class is impaired under and is entitled to vote on the Plan.

U.  **Class 21  - Interest of Golden West.**  Class 21 consists of the Interest of Golden West.  This class is impaired under and is entitled to vote on the Plan.

**ARTICLE IV**
**TREATMENT OF CLASSES OF CLAIMS AND**
**CLASSES OF INTERESTS UNDER THE PLAN**

All Allowed Claims shall be paid in accordance with the priorities set forth in Bankruptcy Code section 726(a) (unless the holder of an Allowed Claim has agreed to different treatment) as follows:

A.  **Class 1 - Allowed Priority Claims under Bankruptcy Code section 507(a)(3).** Each Entity holding an Allowed Priority Claim under Bankruptcy Code section 507(a)(3) shall be paid (1) in full in Cash on the later of Effective Date and the date such Claim becomes an Allowed Claim or (2) on such other less favorable terms as may be agreed to by such Entity.  If the principal amount of Allowed Priority Claims under Bankruptcy Code section 507(a)(4), Allowed Unsecured Claims, Title Property Claims receiving Cash distributions, any subordinated guarantee Claim of CSFB, and any penalty Claim of the United States Mint has been paid in full and holders of Administrative Claims and Allowed Tax Claims have been paid Applicable

249398.5\19130. 000

Interest, holders of Allowed Priority Claims under Bankruptcy Code section 507(a)(3) shall be paid Applicable Interest.

B. **Class 2 - Allowed Priority Claims under Bankruptcy Code section 507(a)(4).** Each Entity holding an Allowed Priority Claim under Bankruptcy Code section 507(a)(4) shall be paid (1) in full in Cash on the later of Effective Date and the date such Claim becomes an Allowed Claim or (2) on such other less favorable terms as may be agreed to by such Entity. If the principal amount of Allowed Unsecured Claims, Title Property Claims receiving Cash distributions, any subordinated guarantee Claim of CSFB, and any penalty Claim of the United States Mint has been paid in full and holders of Administrative Claims, Allowed Tax Claims and Allowed Priority Claims under Bankruptcy Code section 507(a)(3) have been paid Applicable Interest, holders of Allowed Priority Claims under Bankruptcy Code section 507(a)(4) shall be paid Applicable Interest.

C. **Class 3 - Allowed Secured Claim of Fleet.** Fleet shall be paid in full in Cash on the later of the Effective Date and the date such Claim becomes an Allowed Claim.

D. **Class 4 - Allowed Unsecured Claims.** Except as provided in Article V, ¶ A4 of this Plan, each Entity holding a Class 4 Allowed Unsecured Claim shall receive, in full satisfaction of such Claim, a pro rata share of the Distributable Funds on each Distribution Date, commencing not later than the sixtieth day following the Effective Date or as soon as practicable thereafter if

there are insufficient funds to make a meaningful distribution on such date. The aggregate distribution to any holder of a Class 4 Allowed Unsecured Claim shall not exceed the allowed amount of such Claim plus Applicable Interest. If the principal amount of any subordinated guarantee Claim of CSFB and any penalty Claim of the United States Mint has been paid in full and holders of Administrative Claims, Allowed Tax Claims and Allowed Priority Claims have been paid Applicable Interest, holders of Allowed Unsecured Claims shall be paid Applicable Interest pro rata with holders of Title Property Claims receiving Cash distributions.

E.  **Class 5 - Title Property Claim of Deluxe Toronto.** Deluxe Toronto shall receive either (1) the Title Property to which it claims title upon entry of a Final Order determining that Deluxe Toronto holds title to such Title Property or (2) in settlement of such Title Property Claim, Cash distributions equal to the total percentage dividend paid to holders of Class 4 Allowed Unsecured Claims plus five percent multiplied by the value of the Title Property (based on the prices established by the pre-petition agreement between the Debtor and Deluxe), provided, however, that such distributions shall not exceed 100% of the value of the Title Property determined as set forth above plus Applicable Interest. If the principal amount of any subordinated guarantee Claim of CSFB and any penalty Claim of the United States Mint has been paid in full and holders of Administrative Claims, Allowed Tax Claims and Allowed Priority Claims have been paid Applicable Interest, holders of Title Property Claims receiving Cash

distributions shall be paid Applicable Interest pro rata with holders of Allowed Unsecured Claims. The method of electing this latter treatment is described in Article V, ¶ J of the Plan. If Deluxe Toronto elects the latter treatment, it will receive distributions at the same time and in the same manner as Creditors in Class 4. If Deluxe Toronto elects not to waive its Title Property Claim, the Debtor will retain possession of the Title Property to which Deluxe Toronto claims title until the entry of a Final Order. If the court determines that Deluxe Toronto does not hold title to such Title Property, Deluxe Toronto will be treated as a general unsecured Creditor under Class 4 of the Plan and the Title Property will be available to make distributions to Class 4 general unsecured Creditors.

F. **Class 6 - Title Property Claim of Du Art Film.** Du Art Film shall receive either (1) the Title Property to which it claims title upon entry of a Final Order determining that Du Art Film holds title to such Title Property or (2) in settlement of such Title Property Claim, Cash distributions equal to the total percentage dividend paid to holders of Class 4 Allowed Unsecured Claims plus five percent multiplied by the value of the Title Property (based on the prices established pursuant to an order entered by the Bankruptcy Court on August 31, 2000), provided, however, that such distributions shall not exceed 100% of the value of the Title Property plus Applicable Interest. If the principal amount of any subordinated guarantee Claim of CSFB and any penalty Claim of the United States Mint has been paid in full and holders of Administrative

249398.5\19130. 000

-19-

Claims, Allowed Tax Claims and Allowed Priority Claims have been paid Applicable Interest, holders of Title Property Claims receiving Cash distributions shall be paid Applicable Interest pro rata with holders of Allowed Unsecured Claims. The method of electing this latter treatment is described in Article V, ¶ J of the Plan. If Du Art Film elects the latter treatment, it will receive distributions at the same time and in the same manner as Creditors in Class 4. If Du Art Film elects not to waive its Title Property Claim, the Debtor will retain possession of the Title Property to which Du Art Film claims title until the entry of a Final Order. If the court determines that Du Art Film does not hold title to such Title Property, Du Art Film will be treated as a general unsecured Creditor under Class 4 of the Plan and the Title Property will be available to make distributions to Class 4 general unsecured Creditors.

G. **Class 7 - Title Property Claim of Gerald Metals Co.** Gerald Metals Co. shall receive either (1) the Title Property to which it claims title upon entry of a Final Order determining that Gerald Metals Co. holds title to such Title Property or (2) in settlement of such Title Property Claim, Cash distributions equal to the total percentage dividend paid to holders of Class 4 Allowed Unsecured Claims plus five percent multiplied by the value of the Title Property (based on the prices established pursuant to an order entered by the Bankruptcy Court on August 31, 2000), provided, however, that such distributions shall not exceed 100% of the value of the Title Property plus Applicable Interest. If the principal amount of any subordinated guarantee

Claim of CSFB and any penalty Claim of the United States Mint has been paid in full and holders of Administrative Claims, Allowed Tax Claims and Allowed Priority Claims have been paid Applicable Interest, holders of Title Property Claims receiving Cash distributions shall be paid Applicable Interest pro rata with holders of Allowed Unsecured Claims. The method of electing this latter treatment is described in Article V, ¶ J of the Plan. If Gerald Metals Co. elects the latter treatment, it will receive distributions at the same time and in the same manner as Creditors in Class 4. If Gerald Metals Co. elects not to waive its Title Property Claim, the Debtor will retain possession of the Title Property to which Gerald Metals Co. claims title until the entry of a Final Order. If the court determines that Gerald Metals Co. does not hold title to such Title Property, Gerald Metals Co. will be treated as a general unsecured Creditor under Class 4 of the Plan and the Title Property will be available to make distributions to Class 4 general unsecured Creditors.

H. **Class 8 – Title Property Claim of Hercules, Inc.** Hercules, Inc. shall receive either (1) the Title Property to which it claims title upon entry of a Final Order determining that Hercules, Inc. holds title to such Title Property or (2) in settlement of such Title Property Claim, Cash distributions equal to the percentage total dividend paid to holders of Class 4 Allowed Unsecured Claims plus five percent multiplied by the value of the Title Property (based on the prices established pursuant to an order entered by the Bankruptcy Court on August 31, 2000),

provided, however, that such distributions shall not exceed 100% of the value of the Title Property plus Applicable Interest. If the principal amount of any subordinated guarantee Claim of CSFB and any penalty Claim of the United States Mint has been paid in full and holders of Administrative Claims, Allowed Tax Claims and Allowed Priority Claims have been paid Applicable Interest, holders of Title Property Claims receiving Cash distributions shall be paid Applicable Interest pro rata with holders of Allowed Unsecured Claims. The method of electing this latter treatment is described in Article V, ¶ J of the Plan. If Hercules, Inc. elects the latter treatment, it will receive distributions at the same time and in the same manner as Creditors in Class 4. If Hercules, Inc. elects not to waive its Title Property Claim, the Debtor will retain possession of the Title Property to which Hercules, Inc. claims title until the entry of a Final Order. If the court determines that Hercules, Inc. does not hold title to such Title Property, Hercules, Inc. will be treated as a general unsecured Creditor under Class 4 of the Plan and the Title Property will be available to make distributions to Class 4 general unsecured Creditors.

I. **Class 9 - Title Property Claim of Kelley Metals.** Kelley Metals shall receive either (1) the Title Property to which it claims title upon entry of a Final Order determining that Kelley Metals holds title to such Title Property or (2) in settlement of such Title Property Claim, Cash distributions equal to the total percentage dividend paid to holders of Class 4 Allowed Unsecured Claims plus five percent multiplied by the value of the Title Property (based on the prices

249398.5\19130.000

-22-

established pursuant to an order entered by the Bankruptcy Court on August 31, 2000), provided, however, that such distributions shall not exceed 100% of the value of the Title Property plus Applicable Interest. If the principal amount of any subordinated guarantee Claim of CSFB and any penalty Claim of the United States Mint has been paid in full and holders of Administrative Claims, Allowed Tax Claims and Allowed Priority Claims have been paid Applicable Interest, holders of Title Property Claims receiving Cash distributions shall be paid Applicable Interest pro rata with holders of Allowed Unsecured Claims. The method of electing this latter treatment is described in Article V, ¶ J of the Plan. If Kelley Metals elects the latter treatment, it will receive distributions at the same time and in the same manner as Creditors in Class 4. If Kelley Metals elects not to waive its Title Property Claim, the Debtor will retain possession of the Title Property to which Kelley Metals claims title until the entry of a Final Order. If the court determines that Kelley Metals does not hold title to such Title Property, Kelley Metals will be treated as a general unsecured Creditor under Class 4 of the Plan and the Title Property will be available to make distributions to Class 4 general unsecured Creditors.

J. **Class 10 - Title Property Claim of Michael Anthony Jewelers.** Michael Anthony Jewelers shall receive either (1) the Title Property to which it claims title upon entry of a Final Order determining that  Michael Anthony Jewelers holds title to such Title Property or (2) in settlement of such Title Property Claim, Cash distributions equal to the total percentage dividend

249398.5\19130.000

-23-

paid to holders of Class 4 Allowed Unsecured Claims plus five percent multiplied by the value of the Title Property (based on the prices established pursuant to an order entered by the Bankruptcy Court on August 31, 2000), provided, however, that such distributions shall not exceed 100% of the value of the Title Property plus Applicable Interest. If the principal amount of any subordinated guarantee Claim of CSFB and any penalty Claim of the United States Mint has been paid in full and holders of Administrative Claims, Allowed Tax Claims and Allowed Priority Claims have been paid Applicable Interest, holders of Title Property Claims receiving Cash distributions shall be paid Applicable Interest pro rata with holders of Allowed Unsecured Claims. The method of electing this latter treatment is described in Article V, ¶ J of the Plan. If Michael Anthony Jewelers elects the latter treatment, it will receive distributions at the same time and in the same manner as Creditors in Class 4. If Michael Anthony Jewelers elects not to waive its Title Property Claim, the Debtor will retain possession of the Title Property to which Michael Anthony Jewelers claims title until the entry of a Final Order. If the court determines that Michael Anthony Jewelers does not hold title to such Title Property, Michael Anthony Jewelers will be treated as a general unsecured Creditor under Class 4 of the Plan and the Title Property will be available to make distributions to Class 4 general unsecured Creditors.

K. **Class 11 - Title Property Claim of Handy & Harman Products.** Handy & Harman Products shall receive either (1) the Title Property to which it claims title upon entry of a Final

249398.5\19130. 000

-24-

Order determining that Handy & Harman Products holds title to such Title Property or (2) in settlement of such Title Property Claim, Cash distributions equal to the total percentage dividend paid to holders of Class 4 Allowed Unsecured Claims plus five percent multiplied by the value of the Title Property (based on the prices established pursuant to an order entered by the Bankruptcy Court on August 31, 2000), provided, however, that such distributions shall not exceed 100% of the value of the Title Property plus Applicable Interest. If the principal amount of any subordinated guarantee Claim of CSFB and any penalty Claim of the United States Mint has been paid in full and holders of Administrative Claims, Allowed Tax Claims and Allowed Priority Claims have been paid Applicable Interest, holders of Title Property Claims receiving Cash distributions shall be paid Applicable Interest pro rata with holders of Allowed Unsecured Claims. The method of electing this latter treatment is described in Article V, ¶ J of the Plan. If Handy & Harman Products elects the latter treatment, it will receive distributions at the same time and in the same manner as Creditors in Class 4. If Handy & Harman Products elects not to waive its Title Property Claim, the Debtor will retain possession of the Title Property to which Handy & Harman Products claims title until the entry of a Final Order. If the court determines that Handy & Harman Products does not hold title to such Title Property, Handy & Harman Products will be treated as a general unsecured Creditor under Class 4 of the Plan and the Title Property will be available to make distributions to Class 4 general unsecured Creditors.

249398.5\19130.000

-25-

L.  **Class 12 – Title Property Claim of Safety Kleen Corporation.**  Safety Kleen Corporation shall receive either (1) the Title Property to which it claims title upon entry of a Final Order determining that Safety Kleen Corporation holds title to such Title Property or (2) in settlement of such Title Property Claim, Cash distributions equal to the total percentage dividend paid to holders of Class 4 Allowed Unsecured Claims plus five percent multiplied by the value of the Title Property (based on the prices established pursuant to an order entered by the Bankruptcy Court on August 31, 2000), provided, however, that such distributions shall not exceed 100% of the value of the Title Property plus Applicable Interest. If the principal amount of any subordinated guarantee Claim of CSFB and any penalty Claim of the United States Mint has been paid in full and holders of Administrative Claims, Allowed Tax Claims and Allowed Priority Claims have been paid Applicable Interest, holders of Title Property Claims receiving Cash distributions shall be paid Applicable Interest pro rata with holders of Allowed Unsecured Claims. The method of electing this latter treatment is described in Article V, ¶ J of the Plan. If Safety Kleen Corporation elects the latter treatment, it will receive distributions at the same time and in the same manner as Creditors in Class 4. If Safety Kleen Corporation elects not to waive its Title Property Claim, the Debtor will retain possession of the Title Property to which Safety Kleen Corporation claims title until the entry of a Final Order. If the court determines that Safety Kleen Corporation does not hold title to such Title Property, Safety Kleen Corporation will

be treated as a general unsecured Creditor under Class 4 of the Plan and the Title Property will be available to make distributions to Class 4 general unsecured Creditors.

M. **Class 13 – Title Property Claim of City Industries Inc.**  City Industries, Inc. shall receive either (1) the Title Property to which it claims title upon entry of a Final Order determining that City Industries, Inc. holds title to such Title Property or (2) in settlement of such Title Property Claim, Cash distributions equal to the total percentage dividend paid to holders of Class 4 Allowed Unsecured Claims plus five percent multiplied by the value of the Title Property (based on the prices established pursuant to an order entered by the Bankruptcy Court on August 31, 2000), provided, however, that such distributions shall not exceed 100% of the value of the Title Property plus Applicable Interest.  If the principal amount of any subordinated guarantee Claim of CSFB and any penalty Claim of the United States Mint has been paid in full and holders of Administrative Claims, Allowed Tax Claims and Allowed Priority Claims have been paid Applicable Interest, holders of Title Property Claims receiving Cash distributions shall be paid Applicable Interest pro rata with holders of Allowed Unsecured Claims.  The method of electing this latter treatment is described in Article V, ¶ J of the Plan.  If City Industries, Inc. elects the latter treatment, it will receive distributions at the same time and in the same manner as Creditors in Class 4.  If City Industries, Inc. elects not to waive its Title Property Claim, the Debtor will retain possession of the Title Property to which City Industries, Inc. claims title until the entry of

249398.5\19130. 000

a Final Order.  If the court determines that City Industries, Inc. does not hold title to such Title Property, City Industries, Inc. will be treated as a general unsecured Creditor under Class 4 of the Plan and the Title Property will be available to make distributions to Class 4 general unsecured Creditors.

N.  **Class 14 - Title Property Claim of Glines & Rhodes Inc.**  Glines & Rhodes Inc. shall receive either (1) the Title Property to which it claims title upon entry of a Final Order determining that Glines & Rhodes Inc. holds title to such Title Property or (2) in settlement of such Title Property Claim, Cash distributions equal to the total percentage dividend paid to holders of Class 4 Allowed Unsecured Claims plus five percent multiplied by the value of the Title Property (based on the prices established pursuant to an order entered by the Bankruptcy Court on August 31, 2000), provided, however, that such distributions shall not exceed 100% of the value of the Title Property plus Applicable Interest.  If the principal amount of any subordinated guarantee Claim of CSFB and any penalty Claim of the United States Mint has been paid in full and holders of Administrative Claims, Allowed Tax Claims and Allowed Priority Claims have been paid Applicable Interest, holders of Title Property Claims receiving Cash distributions shall be paid Applicable Interest pro rata with holders of Allowed Unsecured Claims.  The method of electing this latter treatment is described in Article V, ¶ J of the Plan. If Glines & Rhodes Inc. elects the latter treatment, it will receive distributions at the same time

and in the same manner as Creditors in Class 4. If Glines & Rhodes Inc. elects not to waive its Title Property Claim, the Debtor will retain possession of the Title Property to which Glines & Rhodes Inc. claims title until the entry of a Final Order. If the court determines that Glines & Rhodes Inc. does not hold title to such Title Property, Glines & Rhodes Inc. will be treated as a general unsecured Creditor under Class 4 of the Plan and the Title Property will be available to make distributions to Class 4 general unsecured Creditors.

O. **Class 15 - Title Property Claim of Celanese Ltd.**  Celanese Ltd. shall receive either (1) the Title Property to which it claims title upon entry of a Final Order determining that Celanese Ltd. holds title to such Title Property or (2) in settlement of such Title Property Claim, Cash distributions equal to the total percentage dividend paid to holders of Class 4 Allowed Unsecured Claims plus five percent multiplied by the value of the Title Property (based on the prices established pursuant to an order entered by the Bankruptcy Court on August 31, 2000), provided, however, that such distributions shall not exceed 100% of the value of the Title Property plus Applicable Interest. If the principal amount of any subordinated guarantee Claim of CSFB and any penalty Claim of the United States Mint has been paid in full and holders of Administrative Claims, Allowed Tax Claims and Allowed Priority Claims have been paid Applicable Interest, holders of Title Property Claims receiving Cash distributions shall be paid Applicable Interest pro rata with holders of Allowed Unsecured Claims. The method of electing

this latter treatment is described in Article V, ¶ J of the Plan. If Celanese Ltd. elects the latter treatment, it will receive distributions at the same time and in the same manner as Creditors in Class 4. If Celanese Ltd. elects not to waive its Title Property Claim, the Debtor will retain possession of the Title Property to which Celanese Ltd. claims title until the entry of a Final Order. If the court determines that Celanese Ltd. does not hold title to such Title Property, Celanese Ltd. will be treated as a general unsecured Creditor under Class 4 of the Plan and the Title Property will be available to make distributions to Class 4 general unsecured Creditors.

P. **Class 16 - Title Property Claim of Astro Color Labs, Inc.** Astro Color Labs, Inc. shall receive either (1) the Title Property to which it claims title upon entry of a Final Order determining that Astro Color Labs, Inc. holds title to such Title Property or (2) in settlement of such Title Property Claim, Cash distributions equal to the total percentage dividend paid to holders of Class 4 Allowed Unsecured Claims plus five percent multiplied by the value of the Title Property (based on the prices established pursuant to an order entered by the Bankruptcy Court on August 31, 2000), provided, however, that such distributions shall not exceed 100% of the value of the Title Property plus Applicable Interest. If the principal amount of any subordinated guarantee Claim of CSFB and any penalty Claim of the United States Mint has been paid in full and holders of Administrative Claims, Allowed Tax Claims and Allowed Priority Claims have been paid Applicable Interest, holders of Title Property Claims receiving Cash

249398.5\19130.000