distributions shall be paid Applicable Interest pro rata with holders of Allowed Unsecured Claims. The method of electing this latter treatment is described in Article V, ¶ J of the Plan. If Astro Color Labs, Inc. elects the latter treatment, it will receive distributions at the same time and in the same manner as Creditors in Class 4. If Astro Color Labs, Inc. elects not to waive its Title Property Claim, the Debtor will retain possession of the Title Property to Astro Color Labs, Inc. claims title until the entry of a Final Order. If the court determines that Astro Color Labs, Inc. does not hold title to such Title Property, Astro Color Labs, Inc. will be treated as a general unsecured Creditor under Class 4 of the Plan and the Title Property will be available to make distributions to Class 4 general unsecured Creditors.

Q. **Class 17 - Title Property Claim of Checon Corporation.** Checon Corporation shall receive either (1) the Title Property to which it claims title upon entry of a Final Order determining that Checon Corporation holds title to such Title Property or (2) in settlement of such Title Property Claim, Cash distributions equal to the total percentage dividend paid to holders of Class 4 Allowed Unsecured Claims plus five percent multiplied by the value of the Title Property (based on the prices established pursuant to an order entered by the Bankruptcy Court on August 31, 2000), provided, however, that such distributions shall not exceed 100% of the value of the Title Property plus Applicable Interest. If the principal amount of any subordinated guarantee Claim of CSFB and any penalty Claim of the United States Mint has been paid in full and holders

of Administrative Claims, Allowed Tax Claims and Allowed Priority Claims have been paid Applicable Interest, holders of Title Property Claims receiving Cash distributions shall be paid Applicable Interest pro rata with holders of Allowed Unsecured Claims. The method of electing this latter treatment is described in Article V, ¶ J of the Plan. If Checon Corporation elects the latter treatment, it will receive distributions at the same time and in the same manner as Creditors in Class 4. If Checon Corporation elects not to waive its Title Property Claim, the Debtor will retain possession of the Title Property to which Checon Corporation claims title until the entry of a Final Order. If the court determines that Checon Corporation does not hold title to such Title Property, Checon Corporation will be treated as a general unsecured Creditor under Class 4 of the Plan and the Title Property will be available to make distributions to Class 4 general unsecured Creditors.

R. **Class 18 - Title Property Claim of AngloGold Joint Ventures.** AngloGold Joint Ventures shall receive either (1) the Title Property to which it claims title upon entry of a Final Order determining that AngloGold Joint Ventures holds title to such Title Property or (2) in settlement of such Title Property Claim, Cash distributions equal to the total percentage dividend paid to holders of Class 4 Allowed Unsecured Claims plus five percent multiplied by the value of the Title Property (based on the prices established pursuant to an order entered by the Bankruptcy Court on August 31, 2000), provided, however, that such distributions shall not

exceed 100% of the value of the Title Property plus Applicable Interest. If the principal amount of any subordinated guarantee Claim of CSFB and any penalty Claim of the United States Mint has been paid in full and holders of Administrative Claims, Allowed Tax Claims and Allowed Priority Claims have been paid Applicable Interest, holders of Title Property Claims receiving Cash distributions shall be paid Applicable Interest pro rata with holders of Allowed Unsecured Claims. The method of electing this latter treatment is described in Article V, ¶ J of the Plan. If AngloGold Joint Ventures elects the latter treatment, it will receive distributions at the same time and in the same manner as Creditors in Class 4. If AngloGold Joint Ventures elects not to waive its Title Property Claim, the Debtor will retain possession of the Title Property to which AngloGold Joint Ventures claims title until the entry of a Final Order. If the court determines that AngloGold Joint Ventures does not hold title to such Title Property, AngloGold Joint Ventures will be treated as a general unsecured Creditor under Class 4 of the Plan and the Title Property will be available to make distributions to Class 4 general unsecured Creditors.

S. **Class 19 - Subordinated guarantee Claim of CSFB.** If the principal amount of Administrative Claims, Allowed Tax Claims, Allowed Priority Claims, Title Property Claims receiving Cash distributions and Allowed Unsecured Claims has been paid in full, CSFB shall receive any remaining Property up to the allowed principal amount of CSFB's Class 19 Claim. If the principal amount of any penalty Claim of the United States Mint has been paid in full and

249398.5\19130. 000

-33-

holders of Administrative Claims, Allowed Tax Claims, Allowed Priority Claims, Title Property Claims receiving Cash distributions and Allowed Unsecured Claims have been paid Applicable Interest, CSFB shall be paid Applicable Interest on account of its Class 19 Claim.

T. **Class 20 – Allowed Claim for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages of the United States Mint.** If the principal amount of Administrative Claims, Allowed Tax Claims, Allowed Priority Claims, Title Property Claims receiving Cash distributions, Allowed Unsecured Claims and any Class 19 subordinated guarantee claim of CSFB has been paid in full, the United States Mint shall receive any remaining Property up to the allowed principal amount of any Allowed Claim for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages. If holders of Administrative Claims, Allowed Tax Claims, Allowed Priority Claims, Title Property Claims receiving Cash distributions, Allowed Unsecured Claims and CSFB (on its Class 19 Claim) have been paid Applicable Interest, the United States Mint shall be paid Applicable Interest on account of its Class 20 Claim, if any.

U. **Class 21 – Interest of Golden West.** Golden West will receive no distribution on account of its Interest unless all allowed Claims are paid in full. If at the time final distributions are made under the Plan all Creditors have not been paid in full, Golden West's Interest will be

canceled. As provided in Article V of this Plan, Golden West shall have no ability to affect the management of the Debtor after confirmation of the Plan.

## ARTICLE V
## MEANS FOR EXECUTION OF THE PLAN

A. **Post-Confirmation Debtor.** On the Confirmation Date, title to all property of the Debtor's bankruptcy estate shall vest in the Debtor and the Liquidating Custodian shall be appointed.

1.      The Liquidating Custodian shall be authorized and empowered to exercise all of the powers of the Debtor in the place and to the exclusion of the Debtor's board of directors and officers. The Liquidating Custodian, through the Debtor, shall be authorized and empowered to preserve, protect and maximize the value of the Property, sell or otherwise liquidate the Property as promptly and efficiently as is reasonably possible, and distribute all income and proceeds from the Property in accordance with the terms of the Plan. The Liquidating Custodian is empowered to manage, operate, improve, and protect the Property, to release, convey, or assign any right, title, or interest in or about the Property, and to perform other similar actions necessary to implement the terms of the Plan. The Liquidating Custodian shall have all of the rights and powers and shall perform all of the functions and duties set forth in the Plan. Such rights, powers, functions and duties shall include, without limitation, the following: (a) the right to incur and pay

out of the Property on behalf of the Debtor such expenses as may be reasonable and appropriate in carrying out the Debtor's duties and responsibilities under the Plan; (b) the power and the duty to withdraw and make distributions from the Debtor in accordance with the provisions of the Plan; (c) such other rights, powers, functions and duties as may be set forth in the Plan, which rights, powers, functions and duties shall include (i) the maintenance and administration of bank and other investment accounts, (ii) the calculation and implementation of distributions from the Debtor in accordance with the Plan, and (iii) the investment of Cash on deposit in the Debtor in accordance with the restrictions placed on such investments by the Plan or the Bankruptcy Code; and (d) such other rights, powers, functions and duties as may be necessary and appropriate for the Liquidating Custodian to accomplish the purposes for which it was appointed hereunder or such other responsibilities and obligations as may be vested in the Debtor or the Liquidating Custodian, as they may assume pursuant to Bankruptcy Court order or that are vested in the Debtor and the Liquidating Custodian pursuant to the Plan.

      2.     The Liquidating Custodian, on behalf of the Debtor, may engage such attorneys, accountants and other professionals as are reasonably required to effectively and efficiently perform its responsibilities under the Plan. The Liquidating Custodian shall seek Bankruptcy Court approval for the retention of any such professional who was not retained previously by the Debtor or the Committee pursuant to an order of the Bankruptcy Court. Subject to the

249398.5\19130.000

Bankruptcy Court's approval, the Debtor shall pay the reasonable fees, charges and expenses of such attorneys, accountants and other professionals who provide services after the Confirmation Date as an expense of the Debtor. The Liquidating Custodian may retain professionals who were retained by the Debtor or the Committee during the Case.

      3.     The Liquidating Custodian, through the Debtor, shall have the right and duty to (a) examine all rights of action, including, without limitation, avoidance actions that constitute Property and file, litigate to final judgment, settle, or withdraw such rights of action and (b) examine Claims and file, litigate to final judgment, settle, or withdraw objections to Claims, subject to Bankruptcy Court approval.

      4.     On the later of the Effective Date and the date any such Claim is allowed, the Debtor shall pay Allowed Administrative Claims, Allowed Tax Claims and Allowed Priority Claims in accordance with the Plan. The Liquidating Custodian shall prior to making distributions on a Class of Allowed Claims either (a) cause the Debtor to reserve funds in an amount equal to the amount specified in a proof of Claim or, if no proof of Claim has been filed, the amount specified in the Debtor's Schedules of any Disputed Claim multiplied by the percentage distribution then being made to members of the Class in which such Disputed Claim exists or (b) obtain an order from the Bankruptcy Court estimating such Disputed Claim for distribution purposes prior to making such distribution to such Class. Subsequent to making or

reserving for the foregoing payments to holders of Allowed Administrative Claims, Allowed Tax Claims and Allowed Priority Claims and retaining sufficient property to pay all other obligations of the Debtor, the Debtor shall make distributions from the Property to holders of Class 4 through 18 Claims in accordance with Article IV of the Plan and thereafter to holders of Class 19 and 20 Claims and Class 21 Interests in accordance with Article IV of the Plan. Such distributions shall commence not later than the sixtieth day following the Effective Date or as soon as practicable thereafter if there are insufficient funds to make a meaningful distribution on such date. After such initial distribution, the Debtor shall make further distributions as often as in the Liquidating Custodian's discretion and judgment there is an amount of Distributable Funds in the Debtor sufficient to make a meaningful distribution to holders of Class 4 through 18 Allowed Claims. A distribution to Class 4 through 18 Claims shall not be considered meaningful unless the amount of the distribution would be 10% or more of the allowed amount of such Claims, unless the Liquidating Custodian deems a lesser distribution to be appropriate in its sole discretion. In making such determinations, the Liquidating Custodian shall exclude from Distributable Funds amounts of cash necessary to meet other obligations of the Debtor, held for withholding taxes or other charges, or otherwise needed to pay the present or future expenses, debts, charges, liabilities and obligations of the Debtor in accordance with the terms of the Plan.

5.    All costs, expenses and obligations incurred by the Debtor shall be a charge against the Property.  Prior to any distribution from Distributable Funds, the Liquidating Custodian shall ensure that an adequate reserve from the Property has been established for the purpose of satisfying ongoing obligations of the Debtor.

6.    The Liquidating Custodian or its agent shall maintain books and records containing an accounting of receipts and disbursements in accordance with generally accepted accounting principles, and shall prepare and file any required tax returns on behalf of the Debtor. The Liquidating Custodian shall periodically, but not less than once every sixty days, inform the Oversight Committee of any developments that it considers significant during the administration of the Debtor.  The Liquidating Custodian also shall submit quarterly to each member of the Oversight Committee a statement in reasonable detail showing cumulatively and for the preceding calendar quarter, all proceeds and revenues received, and all distributions of and expenditures from the Debtor for such quarter and all prior quarters.  At the request of the Oversight Committee, the Liquidating Custodian shall provide the Oversight Committee with a written report on the status of all active matters affecting the Debtor.

In addition, the Liquidating Custodian shall:

a.    Be accountable for all property received; if a purpose would be served, examine proofs of Claims and object to the allowance of any Claim that is improper; unless the

249398.5\19130.000

-39-

Bankruptcy Court orders otherwise, furnish such information concerning the Debtor's estate and the Debtor's estate's administration as is requested by a party in interest; and make a final report and file a final account of the administration of the Debtor's estate with the Bankruptcy Court and with the United States Trustee.

      b.     Investigate the acts, conduct, assets, liabilities, and financial condition of the Debtor, the operation of the Debtor's business, and any other matter relevant to the Debtor's case.

      c.     As soon as practicable after confirmation of the Plan, (i) file a statement of any investigation conducted under paragraph b, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the Debtor, or to a cause of action available to the Debtor's estate and (ii) transmit a copy or a summary of any such statement to the Committee, such other entity as the Bankruptcy Court designates and any other party who requests such copy or summary.

      d.     For any year for which the Debtor has not filed a tax return required by law, furnish, without personal liability, such information as may be required by the governmental unit with which such tax return was to be filed, in light of the condition of the Debtor's books and records and the availability of such information.

      e.     After confirmation of the Plan, file such reports as are necessary or as the Bankruptcy Court orders.

249398.5\19130. 000

7.    The Liquidating Custodian shall receive compensation for its administrative services of $5,000.00 per month payable on the first of every month commencing with the first day of the first full month after its appointment.

8.    The Liquidating Custodian may resign by giving written notice of his resignation to the Oversight Committee, the twenty largest unsecured Creditors, and all parties who requested notice in this Case. Unless the Bankruptcy Court orders otherwise, (a) such resignation shall become effective on the date on which the Bankruptcy Court appoints a successor Liquidating Custodian and (b) the Liquidating Custodian shall be entitled to compensation up to the date on which the Liquidating Custodian's resignation becomes effective. Unless the Bankruptcy Court orders otherwise, within forty-five days of such resignation becoming effective, the Liquidating Custodian shall serve a final accounting on the Oversight Committee and thereupon be discharged from the performance of any further duties. The Oversight Committee may move the Bankruptcy Court, upon not less than ten days written notice to all parties listed above, for an order removing the Liquidating Custodian for cause. If the Liquidating Custodian at any time resigns or is removed, or dies or becomes incapable of action, or is a debtor under the Bankruptcy Code or is adjudged to be insolvent, a vacancy shall be deemed to exist and a successor Liquidating Custodian shall be appointed pursuant to an order of the Bankruptcy Court as soon as practicable

249398.5\19130.000

-41-

upon motion of the Oversight Committee on not less than ten days written notice to all parties listed above.

9.      If any claim, cause of action, objection, settlement or other act of, or on behalf of, the Debtor gives rise to a conflict on behalf of the Liquidating Custodian, the Liquidating Custodian shall inform the Oversight Committee of the conflict not later than two (2) Business Days from discovery of the conflict by the Liquidating Custodian. Immediately upon discovery of the conflict by the Liquidating Custodian, the Liquidating Custodian shall withdraw from any and all involvement concerning the matter or issue giving rise to the conflict. Within thirty days of being informed of the conflict, the Oversight Committee shall seek the entry of an order from the Bankruptcy Court, upon not less than ten days written notice, approving the appointment of a supplemental Liquidating Custodian only to the extent necessary to avoid such a conflict. Any supplemental Liquidating Custodian so appointed shall have the rights, powers, privileges and duties of the Liquidating Custodian hereunder solely in connection with the matters on which it has been appointed and shall be subject to the conditions and limitations of the Plan. Such supplemental Liquidating Custodian shall be answerable to the Liquidating Custodian for all monies, assets and other property which may be received by it in connection with the administration of the Debtor. The Bankruptcy Court may remove such supplemental Liquidating Custodian for cause, upon the motion of the Oversight Committee on not less than ten days

249398.5\19130.000

written notice to all parties, and such supplemental Liquidating Custodian shall resign upon completion of its duties in connection with the matter on which it was appointed.

10.     The Liquidating Custodian and any supplemental Liquidating Custodian and their members, agents, representatives, employees and professionals shall not be liable to the Debtor, the Debtor's Creditors or any other Entity or party in interest for any error of judgment made in good faith, but only for gross negligence, willful misconduct, or fraud.   The Liquidating Custodian shall not be liable for any action taken or omitted in good faith and reasonably believed by it to be authorized within the discretion or rights or powers conferred upon it by the Plan.   The Liquidating Custodian makes no representation as to the value or condition of the Debtor's assets or any part thereof, or as to the security afforded by the Plan, or as to the validity, execution (except its own execution), enforceability, legality or sufficiency of the Plan, and the Liquidating Custodian shall incur no liability or responsibility with respect to such matters.   In performing its duties under the Plan, the Liquidating Custodian may retain and consult with counsel selected by it, at the expense of the  Debtor, and shall have no liability for any reasonable action taken upon the advice of such counsel.   None of the provisions of the Plan shall require or be construed as requiring the Liquidating Custodian to expend or risk its own funds or otherwise incur or expose it to personal financial liability in the performance of any of its duties under the Plan or in the exercise of any of its rights and powers.   The Liquidating Custodian may rely without inquiry

249398.5\19130. 000

-43-

upon any writing delivered to it pursuant to the Plan which it believes in good faith to be genuine and to have been given by a proper person. The Liquidating Custodian shall be indemnified and receive reimbursement from the Debtor against and from any and all loss, liability or damage, including payment of attorneys' fees and other costs of defending itself, which it may incur or sustain, other than as a result of willful misconduct, gross negligence or fraud in the exercise and performance of its duties hereunder and under the Plan. The Liquidating Custodian shall purchase with assets of the Debtor such insurance as it reasonably believes, in the exercise of its discretion, adequately insures that it shall be indemnified against any such loss, liability or damage, not to exceed $100 million of coverage and in the minimum amount of $50 million. The Liquidating Custodian shall purchase as soon as practicable after its appointment with the assets of the Debtor a fidelity bond in the amount of $50 million, subject to adjustment based on consultation with the Office of the United States Trustee.

11.    The Debtor shall retain and may enforce any and all claims, causes of action and rights of the Debtor, the Committee and the Debtor's estates, including, without limitation, avoidance actions and the right to seek the subordination of Claims under Bankruptcy Code section 510. On the Effective Date, the Debtor shall become responsible for examining Claims and for prosecuting or otherwise resolving objections to any Claims.

249398.5\19130.000

-44-

12.     All Cash held by the Debtor shall be invested and reinvested by the Liquidating Custodian in interest-bearing accounts or certificate of deposits of banks and trust companies having an aggregate capital and surplus in excess of $50 million or such other investments as shall be prudent and appropriate under the circumstances, in such amounts and upon such terms as a reasonable and prudent fiduciary would select and with a view towards sufficient liquidity to make the distributions contemplated by the Plan. All interest earned on such investments shall be retained and distributed in accordance with the terms of the Plan. All Cash and all other property held by the Debtor and interest and earnings on such property shall be distributed pro rata to Creditors as provided in the Plan. In the event that the Liquidating Custodian shall at any time in good faith question the amount or propriety of any distribution to be made hereunder, then in that event the Liquidating Custodian shall make a distribution of so much of the funds then available as to which no dispute or controversy exists and shall be protected in holding the amounts as to which a dispute or controversy exists pending a determination by the Bankruptcy Court as to the amount in dispute.

13.     After all Property has been fully administered and distributed pursuant to the terms of the Plan, the Debtor shall be dissolved and the Liquidating Custodian and the Oversight Committee shall be discharged of their duties.

B. **The Oversight Committee.** Upon the Effective Date, (1) two members of the Committee selected by the Committee and (2) one holder of a Class 5 through 18 Title Property Claim who has elected to receive Cash distributions in settlement of its Title Property Claim pursuant to Article IV of this Plan shall become the Oversight Committee. The Title Property Claim member of the Oversight Committee shall be selected by the Committee on or before the Effective Date. The Oversight Committee shall be representative of all holders of Class 4 Allowed Unsecured Claims and any Class 5 through 18 Title Property Claims who have elected to receive Cash distributions in settlement of their Title Property Claim, and shall oversee the post-Effective Date activities of the Debtor and the Liquidating Custodian in accordance with the Plan.

      1.    The powers and duties of the Oversight Committee shall be limited to the following: (a) monitoring the activities of the Debtor and the Liquidating Custodian in accordance with the terms of the Plan; (b) monitoring the Liquidating Custodian's distribution of Property in accordance with the Plan; (c) petitioning the Bankruptcy Court for an order compelling the Liquidating Custodian to distribute funds in the event that the Oversight Committee believes that the Liquidating Custodian is unreasonably withholding Property from distribution; and (iv) participating in the removal of the Liquidating Custodian for cause and the appointment of any successor Liquidating Custodian.

249398.5\19130. 000

-46-

2.     The Oversight Committee may retain counsel to represent the Oversight Committee with respect to any claim or action asserted against the Oversight Committee and to advise the Oversight Committee on matters concerning the Debtor, the Liquidating Custodian and the Oversight Committee's fiduciary duties. The reasonable and necessary expenses of the Oversight Committee, including attorneys' fees and expenses, that may be incurred in the performance of the Oversight Committee's fiduciary duties, shall be paid as a priority expense of the Debtor on a *pari passu* basis with the compensation of the Liquidating Custodian. The individual members of the Oversight Committee each shall receive $12,000.00 per annum, paid quarterly, in compensation for their services and shall be reimbursed quarterly out of the Property for all reasonable and necessary out of pocket expenses and disbursements incurred in the performance of their fiduciary duties as members of the Oversight Committee.

3.     An Oversight Committee member shall be recused from any discussions or deliberations of the Oversight Committee or the Liquidating Custodian concerning any claim which directly or indirectly relates to any claim or cause of action which may be considered or brought by the Debtor against such Oversight Committee member. Those Oversight Committee members that are required to be recused shall not have access to any non-publicly available information that may be the subject of litigation concerning any such claim.

249398.5\19130.000

4.    Members of the Oversight Committee shall be indemnified by and receive reimbursement from the Debtor against and from any and all loss, liability, or damage, including payment of attorneys' fees and other costs of defending themselves, which they may incur or sustain while acting in their fiduciary capacity, other than as a result of willful misconduct in the exercise and performance of their duties hereunder.  Expenses (including attorneys' fees) and other costs of any Oversight Committee member's defense shall be paid by the Debtor in advance of the final disposition of any claims against the Oversight Committee member upon receipt of an undertaking by or on behalf of the Oversight Committee member to repay such amounts if it shall ultimately be determined that it is not entitled to be indemnified by the Debtor as authorized herein.  The Debtor shall purchase such insurance as the Liquidating Custodian reasonably believes, in the exercise of its discretion, adequately insures that Oversight Committee members shall be indemnified against any loss, liability or damage.  The terms of this paragraph shall continue to apply to any former Oversight Committee member.

5.    The Oversight Committee will terminate upon the earlier of (1) payment in full of all Class 4 through 18 Creditors and (2) distribution of all of the Property.

6.    The Oversight Committee may adopt rules of procedure or by-laws.

C. **Title Property Claims.**  Title Property shall remain in the possession of the Debtor. The Debtor shall litigate or otherwise resolve any Title Property Claim with the Entity claiming

title to such Title Property. If a Final Order is entered finding that an Entity other than the Debtor holds title to Title Property, the Liquidating Custodian shall transfer possession of such Title Property to such Entity. If a Final Order is entered finding that the Debtor holds title to such Title Property, such Title Property will remain part of the Property and will be available to make payments to Creditors pursuant to the terms of the Plan. Any Entity which has made a Title Property Claim and has not elected to waive such claim on the ballot submitted in voting on the Plan may elect at any time after Confirmation to waive their Title Property Claim and receive Cash distributions as provided in Article IV of the Plan retroactive to the Effective Date, less litigation and administrative fees and expenses incurred by the Debtor in defense of such Title Property Claim. In such event, the Title Property to which such Entity made a claim will be available to make payments to Creditors pursuant to the terms of the Plan. No distribution will be made to an Entity pursuing a Title Property Claim on such Claim until resolution of the Title Property Claim by court order or agreement. The Debtor believes that there are no valid Title Property Claims.

D. **Distributions.** The Debtor shall make all distributions required by the Plan. All costs and expenses in connection with such distributions shall be borne by the Debtor. At the option of the Liquidating Custodian, distributions may be made in cash, by wire transfer or by a check drawn on a domestic bank. Whenever payment of a fraction of a cent would otherwise be called

for, the actual payment shall reflect a rounding of such fraction down to the nearest whole cent. The Liquidating Custodian may, but is not required to, set off against any Claim and the distribution to be made pursuant to the Plan in respect of such Claim any claims of any nature which the Debtor may have against the holder of such Claim. Neither the failure by the Liquidating Custodian to effect such set off nor the allowance of any Claim shall constitute a waiver or a release of any claim which the Debtor may have against the holder of a Claim.

Except as otherwise provided herein, in the event and at such time as any distribution under this Plan becomes Unclaimed Property, the Entity to which such distribution was to have been made shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim in respect of which such distribution was to have been made shall be treated as disallowed.

E. **Avoidance Actions.** To the extent that the Liquidating Custodian determines that any transfer made by the Debtor may be avoided under Bankruptcy Code section 544, 547, 548 or 549, the Debtor may seek to avoid such transfers. Any recovery on such a claim shall become Property.

F. **Objections to Claims.** The Debtor shall be responsible for pursuing any objections to any Claim. Objections to Claims, if any, with the exception of any Claim to which an objection may be filed under Bankruptcy Code section 502(d) (as to which Claims an objection need not be filed within the time period set forth hereinafter), shall be filed with the Bankruptcy

Court and served upon each holder of a Disputed Claim on or before the 60th day after the Effective Date. The Liquidating Custodian shall have the right to petition the Bankruptcy Court for an extension of such date if a complete review of all Claims cannot be completed by such date.

Except as otherwise set forth herein, objections to Claims which are not filed on or before the 180th day after the Effective Date are barred, precluded and may not be raised. With respect to any Claim for which no objection is filed within such time, such Claim shall be deemed an Allowed Claim for the amount specified in a timely filed proof of Claim with respect to such Claim, or, if no timely filed proof of Claim exists, in the amount specified in the Schedules, unless the Claim was specified in the Schedules as being disputed, contingent or unliquidated.

If no timely filed proof of Claim exists, and the Claim was specified in the Schedules as being disputed, contingent or unliquidated, the Claim shall be barred and no distribution made thereon pursuant to Bankruptcy Code section 1111(a) and Bankruptcy Rule 3003(c)(2). With respect to any Claim with respect to which a timely objection (which shall expressly be deemed to include any application, motion or complaint seeking subordination of a Claim) is filed (i.e., a Disputed Claim), no distribution shall be made to the holder of any such Disputed Claim until the entry of a Final Order or judgment determining the allowed amount of such Disputed Claim. Except as otherwise provided in the Plan, pending the time of such Final Order or judgment, to

249398.5\19130. 000

the extent that any sum otherwise becomes payable to the holders of Claims of the class to which the Disputed Claim belongs, there shall be deposited by the Debtor an amount equivalent to that amount which would be payable to the holder of the Disputed Claim in the event that such Disputed Claim were allowed in the full amount asserted.  Upon final determination of the allowed amount of the Disputed Claim, payment will be made to the holder of the Disputed Claim to the extent necessary to pay the allowed amount of such Claim.

G. **Debtor's Actions.**  On the Effective Date, all actions contemplated by the Plan shall be authorized and approved in all respects, including the execution and delivery of, and performance under, all documents and agreements contemplated by the Plan.  On the Effective Date, the Liquidating Custodian shall be authorized and directed to execute and to deliver all documents and agreements contemplated by the Plan in the name and on behalf of the Debtor. The Debtor shall comply with applicable federal tax laws in connection with the implementation of the Plan and shall timely file all required corporate and withholding tax returns with the Internal Revenue Service and timely pay any tax due related to such returns.

H. **Reserves Relating to Adverse Title Claims Against Fleet.**  The Debtor shall reserve funds to make any payments to Fleet on account of any Adverse Title Claim as provided in agreement among Fleet, the Debtor and the Committee annexed to the Confirmation Order.

249398.5\19130. 000

I. **Reserves Relating to Adverse Title Claims Against CSFB.** If a claimant on an Adverse Title Claim obtains a judgment against CSFB, the amount paid to such claimant under this Plan or any amount set off on account of an avoidance claim of the Debtor against such claimant against amounts due to such claimant under this Plan on its claim in respect of the particular precious metal underlying such Adverse Title Claims shall constitute a credit against the amount that CSFB is required to pay such claimant. Accordingly, the Debtor shall not reserve funds to make any payments to CSFB on account of Adverse Title Claims or the Debtor's guarantee of CSFB's claims against ARC, except as provided in the agreement among CSFB, the Debtor and the Committee annexed to the Confirmation Order. This section shall not be construed as modifying paragraph 11 of the CSFB Order.

J. **Election by Class 5 through 18 Title Property Claims.** Holders of Claims in Classes 5 through 18 will receive a ballot which provides for an election to either retain and pursue their Title Property Claim or waive such Claims and receive Cash distributions as provided in Article IV of the Plan. If a Title Property Claim holder elects to receive Cash distributions under the Plan, such election will constitute a full release of such holder's Title Property Claim.

K. **Pension Plan Matters.** The Debtor sponsors and administers two pension plans covered by Title IV of the Employee Retirement Income Security Act: the Handy & Harman Refining Group Pension Plan (the "Non-Union Plan") and the Handy & Harman Refining Group

249398.5\19130. 000

-53-

Pension Plan for Union Employees (the "Union Plan"; together with the Non-Union Plan, the "Pension Plans"). Post-confirmation, the Debtor either shall exercise its authority and fulfill its obligations as administrator of the Pension Plans or shall appoint a qualified and responsible third party to become the Pension Plans' administrator. In addition, the Debtor shall continue to pay to the Pension Plans any minimum funding contributions required under 26 U.S.C. section 412(c)(11) and 29 U.S.C. section 1082(c)(11).

By the Effective Date, every fiduciary of the Pension Plans and every person who handles funds or other property of either of the Pension Plans shall be bonded in accordance with 29 U.S.C. section 1112. Subject to Article V, ¶ A10 of the Plan, nothing in the Plan releases or shall be construed to release any party or entity, including the Debtor's estate, from any liabilities with respect to the Pension Plans, including fiduciary liabilities.

Within 30 days of the Effective Date, the Debtor shall initiate a standard termination of the Union Plan and promptly take all actions necessary and appropriate to effectuate the standard termination in accordance with applicable law.

Upon the Effective Date, the Debtor shall promptly take all actions necessary and appropriate to complete the standard termination of the Non-Union Plan in accordance with applicable law.

249398.5\19130.000

Upon the Effective Date, the Debtor shall reserve $150,000 in an interest-bearing account for payment pursuant to this paragraph. Upon the earlier of (i) Golden West failing to fully fund the Union Plan's standard termination within the time for distributing benefits under applicable law or (ii) such time as the Debtor elects to fully fund the standard termination of the Union Plan, the Debtor shall pay as an administrative expense to the Union Plan the lesser of the $150,000 or the amount necessary to pay all liabilities under the Union Plan; **provided, however,** that the Debtor is not obligated to make such contribution if an amount greater than that reserved is necessary to complete the standard termination. The Debtor may, in its discretion, elect to pay more than the amount reserved if such additional amount is necessary to complete the Union Plan's standard termination (and thus avoid all PBGC claims pertaining to that plan) and if the Debtor believes making that payment is a reasonable exercise of its business judgment. If the Union Plan terminates in a standard termination, any amount remaining in the interest-bearing account shall revert to the Debtor's estate upon notification by PBGC that the Union Plan's standard termination was not selected for audit or upon compliance with any final PBGC audit findings.

In the event that Golden West does not fully fund the standard termination of either of the Pension Plans within the time for distributing the benefits under applicable law, PBGC staff shall present this matter in accordance with the agency's administrative process and shall recommend

249398.5\19130. 000

that PBGC initiate termination of that plan. However, this Plan neither precludes PBGC staff from making an earlier termination recommendation nor requires PBGC to act to terminate either of the Pension Plans. If PBGC initiates termination proceedings with respect to either of the Pension Plans, that Pension Plan's administrator shall cooperate with such termination proceedings, including by signing a termination and trusteeship agreement.

PBGC shall withdraw, with prejudice, its administrative expense application and its assertion of priority claims with respect to the Pension Plans. In addition, upon a Pension Plan's successful standard termination, PBGC shall withdraw all claims it filed against the Debtor with respect to that Pension Plan.

In the event that a Pension Plan's standard termination is not completed, PBGC shall have with respect to that Pension Plan whatever claims it has under applicable statutory provisions (including 29 U.S.C. section 1362); **provided, however,** that any such claims shall be considered unsecured nonpriority claims under Class 4 of the Plan. Claims against the Debtor for statutory pension liabilities are not and shall not be considered reduced, eliminated, subordinated, disallowed, or otherwise adversely affected in any manner by Golden West's contractual commitment to fund both Pension Plans' standard terminations. For purposes of calculating and making reserves for PBGC Claims pursuant to Article V, ¶ A4 of the Plan, the Liquidating Custodian shall use the total amount asserted in PBGC's then-pending amended proofs of claim.

## ARTICLE VI
## TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

The Debtor will seek Bankruptcy Court approval to assume or reject any executory contracts or leases of nonresidential real property that have not been assumed or rejected as of the Confirmation Date. The Debtor will seek to assume any contracts or leases that have value or add value to other property of the Debtor. The Debtor will seek to reject any contracts or leases that are of no value to the Debtor and its estate.

## ARTICLE VII
## CONDITIONS TO EFFECTIVENESS

The following are conditions precedent to the occurrence of the Effective Date:

(a) the entry of the Confirmation Order; and

(b) the availability of funds sufficient to pay the amounts required to be paid on the Effective Date.

## ARTICLE VIII
## DEBTORS' REQUEST PURSUANT TO
## BANKRUPTCY CODE SECTION 1129(b)

If all of the applicable requirements of Bankruptcy Code section 1129(a), other than section 1129(a)(8) thereof, are met with respect to the Plan, the Debtor requests that the Bankruptcy Court, pursuant to section 1129(b), confirm the Plan notwithstanding the

requirements of section 1129(a)(8) if the Plan does not discriminate unfairly and is fair and equitable with respect to each class.

## ARTICLE IX
## RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from, or relating to, the Case pursuant to Bankruptcy Code section 1142 and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purposes and intent of the Plan are carried out. Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes: (a) to hear and determine any and all objections to the allowance, or requests for estimation, of Claims; (b) to consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtor and the Debtor's estate; (c) to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance, assumption or assignment of executory contracts and the allowance of any Claim resulting therefrom; (d) to enter such orders as may be necessary or appropriate in connection with the recovery of the Debtor's assets or Property wherever located; (e) to hear and determine any and all applications for allowance of compensation and reimbursement of

expenses; (f) to hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation or enforcement of the Plan and any of the documents intended to implement the provisions of the Plan; (g) to hear and determine any and all applications, adversary proceedings, contested matters and other litigated matters pending on the Effective Date or that may be commenced thereafter as provided in the Plan, including any proceedings contemplated to be heard and determined by the Bankruptcy Court in accordance with the CSFB Order; (h) to hear and determine any applications to modify any provision of the Plan to the full extent permitted by the Bankruptcy Code; (i) to correct any defect, cure any omissions or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan; (j) to effectuate distributions under and performance of the provisions of the Plan; (k) to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor relating to the administration of the Case, including, without limitation, matters involving federal, state and local taxes in accordance with Bankruptcy Code sections 346, 505 and 1146; (l) to determine such other matters and for such other purposes as may be provided in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law; (m) to enforce all orders, judgments, injunctions, releases and rulings issued or

entered in connection with the Case or the Plan; (n) to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated; (o) to determine any other matter not inconsistent with the Bankruptcy Code; and (p) to enter an order closing the Case.

## ARTICLE X
## MODIFICATION OR WITHDRAWAL OF THE PLAN

A. **Modification of the Plan.** The Debtor may, with the approval of the Bankruptcy Court and without notice to Creditors, insofar as it does not materially and adversely affect the interests of Creditors, correct any defect, omission or inconsistency in the Plan in such manner and to such extent as may be necessary to expedite the execution of the Plan. The Plan may be altered or amended before or after confirmation, as provided in Bankruptcy Code section 1127 if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of Creditors. The Plan may be altered or amended before or after confirmation in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects Creditors, after a further hearing and acceptance of the Plan as so altered or modified as provided in Bankruptcy Code section 1127.

249398.5\19130.000

B. **Withdrawal of the Plan.**  The Debtor reserves the right to revoke and withdraw the Plan at any time before the Confirmation Date or, if the conditions set forth in Article VIII hereof cannot be satisfied for any reason after the Confirmation Date, at any time up to the Effective Date.  If the Debtor revokes or withdraws the Plan, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other Entity or to prejudice in any manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor.

## ARTICLE XI
## MISCELLANEOUS

A. **Governing Law.**  Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Connecticut.

B. **Headings.**  The headings of the articles, paragraphs, and sections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

C. **Severability.**  Should any provision in the Plan be determined to be invalid, void or unenforceable, such determination shall in no way limit, affect, impair or invalidate the enforceability and operative effect of any or all other provisions of the Plan.

249398.5\19130.000

D. **Computations.** Any calculation of days shall exclude the first date and include the last date of the relevant period.

E. **Miscellaneous Rules of Construction.** (1) The words "herein," "hereof," and other words of similar import refer to this Plan as a whole, not to any particular section, subsection or clause, unless the context requires otherwise; (2) whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, or neuter; (3) accounting terms not otherwise defined in this Plan shall have the meanings assigned to them under generally accepted accounting principles currently in effect; and (4) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply, unless superseded herein or in the Confirmation Order.

F. **Confirmation Order and Plan Control.** To the extent the Confirmation Order and/or the Plan is inconsistent with the Disclosure Statement, the Plan controls the Disclosure Statement, and the Confirmation Order (and any other orders of the Bankruptcy Court) controls the Plan. In the event the terms or provisions of the Plan are inconsistent with the terms and provisions of the exhibits to the Plan or documents executed in connection with the Plan, the terms of the Plan shall control.

249398.5\19130.000

G. **Successors and Assigns.** The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor, or assign of such Person or Entity.

H. **Effectuating Documents and Further Transactions.** The Debtor is authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan.

I. **Exhibits.** All exhibits to the Plan are incorporated into and are part of the Plan as if set forth in full herein.

J. **Postconfirmation Date Fees and Expenses.** From and after the Confirmation Date, the Liquidating Custodian shall cause the Debtor pay the reasonable fees and expenses of professional persons retained by the Debtor or the Oversight Committee related to the implementation and consummation of the Plan, after application for and allowance of such fees and expenses by the Bankruptcy Court.

K. **No Waiver.** The failure of the Debtor to object to a Claim for purposes of voting on the Plan shall not be deemed a waiver of the Debtor's or the Liquidating Custodian's right to object to or examine such Claim, in whole or in part.

249398.5\19130. 000

L. **Notices.**  All notices and requests in connection with the Plan shall be in writing and

shall be hand delivered or sent by mail to:

> Handy & Harman Refining Group, Inc.
> c/o Reid and Riege, P.C.
> One State Street
> Hartford, CT 06103
> Attention: Eric Henzy, Esq.

> Official Committee of Unsecured Creditors
>        of Handy & Harman Refining Group, Inc.
> c/o Zeisler & Zeisler, P.C.
> 558 Clinton Avenue
> Bridgeport, CT 06605
> Attn: Jed I. Horwitt, Esq.
>        James Berman, Esq.

M. **Dissolution.**  After all of the Property has been liquidated and distributed and all

payments required to under the Plan have been made, the Liquidating Custodian shall take such

249398.5\19130.000

steps as may be necessary to dissolve the Debtor under applicable state law.

Dated at South Windsor and Hartford, Connecticut this 27th day of July, 2001.

HANDY & HARMAN REFINING GROUP, INC.

By_____
     Michael Ryan
     Its President

REID AND RIEGE, P.C.

By_____
     Eric Henzy
     Federal Bar No. ct12849
     One State Street
     Hartford, CT  06103
     (860) 278-1150
     Attorneys for Handy & Harman
     Refining Group, Inc.