UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GOLDEN WEST REFINING CORPORATION LIMITED, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:02 CV 1379 (MRK) |
| VS. | : | |
| | : | |
| PRICEWATERHOUSECOOPERS LLP and COOPERS & LYBRAND LLP, | : | |
| Defendants. | : | |
| | : | |
| ALEC SHARP, et al., | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:02 CV 1572 (MRK) |
| VS. | : | |
| | : | |
| PRICEWATERHOUSECOOPERS LLP d/b/a PRICE WATERHOUSE LLP, | : | |
| Defendant. | : | |
| | : | |
| HANDY & HARMAN REFINING GROUP, INC., | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:02 CV 1803 (MRK) |
| VS. | : | |
| | : | |
| PRICEWATERHOUSECOOPERS LLP, | : | |
| Defendant. | : | October 21, 2005 |

**PRICEWATERHOUSECOOPERS LLP'S MEMORANDUM OF LAW
IN OPPOSITION TO UNDERWRITERS' MOTION IN LIMINE NO. 4
<u>TO EXCLUDE EVIDENCE OF COMPARATIVE NEGLIGENCE</u>**

PricewaterhouseCoopers LLP ("PwC") respectfully submits this memorandum of law in opposition to Alec Sharp's Motion In Limine No. 4: Exclusion of Argument, Testimony and Evidence of Contributory or Comparative Negligence.

## PRELIMINARY STATEMENT

PwC intends to offer substantial evidence at trial that HHRG's negligence proximately caused most or all of Underwriters' alleged damages. This Court should deny Underwriters' motion to preclude PwC from offering such evidence because the doctrine of comparative negligence applies in this case. Underwriters' reliance on the single Superior Court case of *Curtis Packaging Corp. v. KPMG, LLP* is misplaced, because that decision does not bind this Court, does not analyze when a comparative negligence defense may be asserted by an accountant and does not account for the strong policy considerations and case law which reject the audit interference approach that Underwriters advance here. Instead, *Curtis Packaging* simply cites the outmoded reasoning in the sixty-year old New York case of *National Surety Corp. v. Lybrand* which has since been bypassed in more recent decisions even in that state.

In light of the comparative negligence scheme that now governs in Connecticut and many states, Underwriters' reliance on the audit interference approach is both misplaced and myopic. At one time, during an era in which many states applied draconian contributory negligence principles, the New York courts permitted accountants to interpose such a defense in cases where any small negligence on the part of a client would bar its recovery. The *National Surety* case responded to the perceived harshness of this result by relying on the audit interference doctrine, which required an accountant to show not only the client's negligence, but also that his actions actively interfered with the conduct of an audit. Over time, however, as states have abandoned strict contributory negligence rules in favor of the more equitable principles of comparative negligence, the overwhelming majority of state and federal courts to address the issue have held that the audit interference approach has been superseded and allow accountants to assert the

defense of comparative negligence without any notion that such negligence need relate to audit interference.

In considering how the Connecticut Supreme Court would rule on the viability of the old audit interference approach in light of the state's broad-based adoption of comparative negligence, this Court should consider the expansive view of comparative negligence in Connecticut, the widespread acceptance of the comparative negligence defense in accounting malpractice cases across the country and the policy interests of consistency with other professional malpractice contexts and the goals of fairness and efficiency. For all of these reasons, the Court should permit PwC to offer evidence regarding the comparative negligence of HHRG as an important element of its defense of this case without the artificial limitation of audit interference. The negligence of HHRG allowed the Panexim losses to occur, and the jury must be allowed to consider that negligence in determining fault in this case.

## ARGUMENT

In the absence of controlling authority from the state's appellate courts, a federal court applying state law in a diversity case must seek to predict how the state's highest court would rule on an issue. *See, e.g., Standard Structural Steel Co. v. Bethlehem Steel Corp.*, 597 F. Supp. 164, 190 (D. Conn. 1984). In so doing, the federal court must consider "all relevant sources of that state's law in order to isolate those factors that would inform [the high court's] decision." *E.g., McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 662 (3rd Cir. 1979); *see also West v. AT&T,* 311 U.S. 223, 237 (1940) ("[I]t is the duty of the [deciding court] to ascertain from all the available data what the state law is and apply it . . . ."); *In re Eastern & Southern Dist. Asbestos Litig.*, 772 F. Supp. 1380, 1390 (E. & S.D.N.Y. 1991) (Weinstein, *J.*), *aff'd in part, rev'd in part sub. nom. In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 (2nd Cir. 1992). In particular,

the Court may consider "relevant state precedents, analogous decisions, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *McKenna,* 622 F.2d at 663.

Here, the only reported state decision which nominally addresses the viability of the comparative negligence defense to an accountant is *Curtis Packaging Corp v. KPMG, LLP,* No. X06CV990156558S 2002 Conn. Super. LEXIS 2663 (Conn. Super. Ct. July 31, 2002).[1] As a lower court decision, *Curtis Packaging* lacks the power of binding precedent. Further, in any event, the decision simply accepts the audit interference approach without reasoning or analysis. Relying primarily on *National Surety Corp. v. Lybrand,* 256 A.D. 226, 9 N.Y.S.2d 554 (N.Y. App. Div. 1939), whose reasoning has since been rejected by other New York courts, it summarily adopts the audit interference rule. It also fails to analyze the effect of the comparative negligence scheme adopted in Connecticut and the substantial policy considerations and body of law which strongly militate in favor of rejecting the audit interference doctrine.

To ascertain how the Connecticut Supreme Court would rule on this issue, the Court should look to the general policies regarding comparative negligence in Connecticut, the persuasive authorities of sister courts and the weighty policy considerations that support the assertion of a comparative negligence defense in this case.[2]

---

[1] All unreported cases cited herein, unless already attached to the Underwriters' Appendix of Exhibits, are attached to the Appendix that PwC is manually filing today.

[2] In arguing the inapplicability of the audit interference approach and its entitlement to the comparative negligence defense, PwC does not concede that HHRG did not interfere with its audits and reserves the right to introduce evidence on this issue. *See, e.g.,* Expert Report of Robert Temkin, dated July 6, 2005, at 30-31, attached as Ex. 15 to PwC's Local Rule 56(a)(2)

I.     **Connecticut's Acceptance of a Broad View of Comparative Negligence**

In 1972, the Connecticut General Assembly first adopted a comparative negligence statute affording parties the defense against personal injury and certain other claims and abandoning the antiquated concept that any amount of contributory negligence barred recovery as a matter of law. *See* Conn. Gen. Stat. § 52-572h (2004). Contrary to Underwriters' suggestion that the defense of comparative negligence does not apply in this case, the Connecticut Supreme Court has clearly extended the defense to claims for commercial losses based on Connecticut common law. *See Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 586, 657 A.2d 212 (1995) ("the policy of the comparative negligence statute, Conn. Gen. Stat. § 52-572h, applies to negligence actions where only commercial losses are sustained.") In expanding the comparative negligence doctrine to economic damages, the Connecticut Supreme Court opined that the "'purpose of comparative negligence is to ameliorate the harshness of the complete bar to liability resulting from the common law defense of contributory negligence.'" *Id.* (citing W. Prosser, Torts (4th Ed. 1971), at 67). Indeed, as the Supreme Court recognized:

> "The purpose of the comparative negligence statute was to replace the former rule, under which contributory negligence acted as a complete defense, with a rule under which contributory negligence would operate merely to diminish recovery of damages based upon the degree of the plaintiff's own negligence."

*Id.* at 585-86 (citing *Gomeau v. Forrest*, 176 Conn. 523, 525, 409 A.2d 1006 (1979); *Giles v. New Haven*, 228 Conn. 441, 454-55, 636 A.2d 1335 (1994).

In considering the impact of the comparative negligence regime here, the Connecticut Supreme Court similarly would take a broad view of comparative negligence principles in Connecticut and would rely on their replacement of the prior contributory negligence rule. As a

---

Statement, dated September 2, 2005. At the most, this is a factual issue not appropriately determined on a motion in limine.

result, it would find that the state's adoption of comparative negligence principles have superseded the outdated *National Surety* approach.

II. **Most Modern Courts Have Analyzed and Rejected the Audit Interference Doctrine in Light of the Emergence of Comparative Negligence.**

The movement from contributory to the more relaxed comparative negligence rule has caused widespread reconsideration of the audit interference approach. Overwhelmingly, courts have rejected that approach in favor of the more modern and more equitable rule of comparative negligence.

In a case similar to the one at bar in Minnesota, for example, a corporation brought a professional negligence action against its accounting firm on the basis that the firm's audit had allegedly failed to reveal embezzlement by a corporate employee. *See Halla Nursery, Inc. v. Baumann-Furrie & Co.*, 454 N.W.2d 905 (Minn. 1990). The accounting firm raised the defense of comparative negligence and plaintiff asserted the audit interference doctrine of *National Surety*. *See id.*, at 909. Applying an expansive view of comparative fault similar to that in Connecticut, the Minnesota Supreme Court rejected the *National Surety* approach, allowed the accountants to assert a comparative negligence defense and affirmed the jury's apportionment of damages between the accountants and the client based upon respective fault. As the court explained:

> "Because we have broadly construed the comparative fault act and applied it to other professional malpractice actions, we reverse the court of appeals and hold that the trial court did not err in applying the principles of comparative fault in this action by a client against an accountant for negligent failure to discover embezzlements in the client's business."

*Id.*
Similarly, a few years later, the Ohio Supreme Court came to the same conclusion in *Scioto Memorial Hospital Association v. Price Waterhouse*, 74 Ohio St. 3d 474, 659 N.E.2d 1268 (1996). In that case, the Hospital Association brought suit against its then-accounting firm,

Price Waterhouse, alleging that the firm prepared a negligent financial feasibility study for the Association's investment in a residential retirement center. Price Waterhouse pleaded comparative negligence as an affirmative defense, but the trial court excluded the defense under the *National Surety* approach. *See id.* at 475. The Ohio Supreme Court reversed and expressly rejected that approach:

> "The audit interference rule was made to soften what was then the 'harsh rule' of negligence law which barred recovery of damages if there was any contributory negligence on the part of the plaintiff.
>
> However, in light of Ohio's comparative negligence statute enacted in 1980, there is no need for a special rule and, thus, we reject the application of the audit interference rule in Ohio. Hence, any negligence by a client, whether or not it directly interferes with the accountant's performance of its duties, can reduce the client's recovery. In so holding, *we note that virtually all courts that have expressly considered the applicability of the audit interference rule to their comparative negligence states have agreed and rejected the rule.*"

*Id.* at 477 (citations omitted) (emphasis added).

The same result upholding the applicability of comparative negligence and rejecting the *National Surety* approach has been reached in numerous courts since the nationwide rejection of the contributory negligence doctrine. *See ESCA Corp. v. KPMG Peat Marwick*, 86 Wash. App. 628, 636, 934 P.2d 1228 (1997), *aff'd*, 135 Wash. 2d 820, 949 P.2d 651 (1998) (holding that the comparative negligence statute in Washington governed cases of negligent misrepresentation and affirming an allocation of the damages accordingly); *Ward v. Vizzini*, 695 So. 2d 1012, 1017 (La. Ct. App. 1997) (applying the defense of comparative negligence to accounting malpractice under Louisiana law); *Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 42, 945 P.2d 317 (Ariz. Ct. App. 1996) (holding that the *National Surety* doctrine does not apply in Arizona and does not impede the jury's allocation of fault); *Capital Mortgage Corp. v. Coopers & Lybrand*, 142 Mich. App. 531, 537, 369 N.W.2d 922 (1985) (applying comparative negligence under

Michigan law and noting that it creates incentives for both parties to use due care); *Devco Premium Fin. Co. v. N. River Ins. Co.*, 450 So. 2d 1216, 1220 (Fla. Dist. Ct. App. 1984) (declining to adopt the audit interference rule in Florida because it was based on principles of contributory negligence which had been repudiated in that state). *See also Resolution Trust Corp. v. Deloitte & Touche*, 818 F. Supp. 1406, 1408 (D. Colo. 1993) (interpreting Colorado law to permit comparative negligence in an accounting malpractice case); *FDIC v. Deloitte & Touche*, 834 F. Supp. 1129, 1146 (E.D. Ark. 1992) (interpreting Arkansas law and noting that the *National Surety* exception to the broadly applicable principle of comparative fault was not necessary or desirable); *Nat'l Credit Union Admin. Bd. v. Aho, Hensue & Hall*, No. 90-4443, 1991 WL 174671, at *3-5 (E.D. La. 1991) (rejecting *National Surety* and applying comparative negligence in the accounting malpractice context).

Notably, the trend toward adopting comparative negligence in accounting malpractice cases has even convinced courts in New York -- the original home of the *National Surety* approach -- to bypass that reasoning in favor of modern comparative negligence principles. As a Southern District court has explained:

> "[S]ince *National Surety*, New York has abandoned contributory negligence as an absolute defense, and adopted a comparative fault regime. . . . That fact of itself calls into question the continued vitality of *National Surety* even in those cases when the parties do stand in an employer-employee relationship to each other. Under a comparative fault regime, there does not appear to be any sound policy reason to apply *National Surety*."

*Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, No. 93 Civ. 5298 (LMM), 1996 WL 728356, at *1 (S.D.N.Y. Dec. 18, 1996) (citations omitted). Similarly, a New York appellate court has applied comparative fault principles in an accounting malpractice case. *See Hall & Co. v. Steiner & Mondore,* 147 A.D.2d 225, 543 N.Y.S.2d 190 (N.Y. App. Div. 1989). In light of the

national trend and the thoughtful analysis of the comparative negligence doctrine underpinning it, the Connecticut Supreme Court would apply comparative negligence principles in this case.[3]

**III.   Public Policy Also Favors the Adoption of the Comparative Negligence Approach**

Allowing PwC to present a comparative negligence defense would encourage consistency in Connecticut law by placing accountants on equal footing with other professionals, such as lawyers and doctors, who already benefit from the defense. Connecticut law permits lawyers and doctors to defend their actions by arguing to the jury their clients' comparative negligence. *See, e.g., Somma v. Gracey*, 15 Conn. App. 371, 378, 544 A.2d 668 (1988) (comparative negligence defense available to lawyers in situations where the claim of malpractice sounds in negligence); *Santillo v. Conn. Orthopaedic Specialists*, No. CV000440817, 2003 Conn. Super. LEXIS 3443, at *8 (Conn. Super. Ct. Nov. 4, 2003) (applying comparative negligence defense to doctors); *Poulin v. Yasner*, No. CV940141928, 1997 Conn. Super. LEXIS 447, at *6-7 (Conn. Super. Ct. Feb. 26, 1997) (applying comparative negligence defense to doctors). In predicting whether the Connecticut Supreme Court would apply comparative negligence in the accounting context, this Court should be mindful of the interests of consistency and affording accountants the rights that

---

[3] A handful of jurisdictions continues to rely on the *National Surety* approach in circumstances which are readily distinguishable. For example, the Illinois Supreme Court, while following *National Surety,* nonetheless allowed the accountant to offset its damages by the percentage of fault the jury had assigned to the client. *See Bd. of Trs. v. Coopers & Lybrand*, 208 Ill. 2d 259, 803 N.E.2d 460 (2003). Further, two courts have relied on the widely-criticized reasoning of a fifteen-year old Tenth Circuit opinion to accept the audit interference approach. *See Stroud v. Arthur Andersen & Co.*, 2001 OK 76, 37 P.3d 783 (2001); *Garnac Grain Co., Inc. v. Blackley*, 932 F.2d 1563 (8th Cir. 1991). The Tenth Circuit, in *Fullmer v. Wohlfeiler & Beck*, 905 F.2d 1394, 1398 (10th Cir. 1990), upheld the audit interference approach based on the flawed premise that *National Surety* had been decided under comparative negligence principles. Finally, a bankruptcy court has held that Pennsylvania comparative negligence law does not apply to actions for negligence involving economic losses. *See Waslow v. Grant Thornton LLP (In re Jack Greenberg, Inc.)*, 240 B.R. 486, 518-19 & n.48 (Bankr. E.D. Pa. 1999). However, the Connecticut Supreme Court has held that comparative negligence does apply in actions involving economic loss. *See Williams Ford,* 232 Conn. at 586. As a result, these few cases are both unpersuasive and inapposite here.

other professionals possess. *See Halla Nursery, Inc.*, 454 N.W.2d at 909; *see generally Advest Group, Inc. v. Arthur Andersen, LLP*, No. CV 970571417, 1998 Conn. Super. LEXIS 2137, at *20 (Conn. Super. Ct. July 20, 1998) (applying CUTPA professional negligence exemption to accountants since accounting, "like law and medicine, is a learned profession that is not interchangeable with other commercial endeavors."); *accord Vanczak v. Romani*, No. 990080053, 2002 Conn. Super. LEXIS 3397 (Conn. Super. Ct. Oct. 18, 2002).

Finally, permitting PwC to assert a comparative negligence defense would serve the interests of both fairness and efficiency. PwC contends that HHRG was negligent because, for example: (i) the HHRG Board failed to insist that management design, implement and monitor a rigorous internal control system; (ii) HHRG management failed to implement a rigorous internal control system; (iii) the non-management members of HHRG's Board failed to familiarize themselves with HHRG's business; (iv) the HHRG Board failed to assure that Barry Wayne implemented its instructions; and (v) HHRG Board members representing GWRC were not diligent about attending HHRG Board meetings in person.[4] If the jury were to accept PwC's contentions in this regard, it would be fair, in the absolute sense, for the plaintiff to bear the burden of harm caused by HHRG's negligence to the extent of its negligence. Similarly, it would be unfair under those circumstances for PwC to be punished while plaintiff was subject to no consequence from HHRG's negligence. *See* Robert A. Prentice, *Can the Contributory Negligence Defense Contribute to a Defusing of Accountants' Liability Crisis?*, 13 Wis. Int'l L. J. 359, 384 (1995).

---

[4] (*See generally* Expert Report of R. Gene Brown, dated July 7, 2005, attached as Ex.A to PwC's Memo of Law in Opposition to Plaintiffs' Motion to Preclude the Expert Testimony of R. Gene Brown, dated September 2, 2005.)

Moreover, the application of the comparative fault defense would also serve the interests of efficiency, because it would encourage clients to act with due care to avoid injury to themselves or others, rather than sit idly waiting for auditors to uncover fraud by dishonest employees that might only be buried deeply in a company's books. *See id.,* at 387; *see also FDIC v. Deloite & Touche*, 834 F. Supp. 1129, 1146 (E.D. Ark. 1992); *Capital Mortgage Corp. v. Coopers & Lybrand,* 142 Mich. App. 531, 537, 369 N.W.2d 922 (1985).

## CONCLUSION

For the foregoing reasons, this Court should deny Underwriters' motion to exclude evidence of comparative negligence and permit PwC to introduce its comparative negligence defense for the consideration of the jury.

DEFENDANT,
PRICEWATERHOUSECOOPERS LLP


By: ____/s/ Thomas D. Goldberg_____
     David J. Elliott (ct 04301)
     Thomas D. Goldberg (ct 04386)
     Day, Berry & Howard LLP
     One Canterbury Green
     Stamford, Connecticut 06901-2047
     Tel: (203) 977-7300
     Fax: (203) 977-7301
     Its Attorneys

## ELECTRONIC CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2005, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Thomas D. Goldberg
David J. Elliott (ct 04301)
Thomas D. Goldberg (ct 04386)
Day, Berry & Howard LLP
One Canterbury Green
Stamford, Connecticut 06901-2047
Tel: (203) 977-7300
Fax: (203) 977-7301
Its Attorneys

Edward J. Boyle, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd St.
New York, NY 10017-5639

William H. Champlin, III, Esq.
Michael T. McCormack, Esq.
William S. Fish, Jr., Esq.
Tyler Cooper & Alcorn, LLP
CityPlace - 35th Floor
185 Asylum Street
Hartford, CT 06103

Daniel McMahon, Esq.
Stefan Dandelles, Esq.
Daniel E. Tranen, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
120 N. LaSalle Street
Chicago, IL 60602

Fred N. Knopf, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604-3407

Steven R. Humphrey (ct06053)
Dina S. Fisher (ct14896)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597

Jed Horwitt, Esq.
Zeisler & Zeisler, P.C.
558 Clinton Ave.
P.O. Box 3186
Bridgeport, CT 06605-0186