**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| GOLDEN WEST REFINING CORPORATION, LTD., | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) CIVIL ACTION NO. <br> ) 3:02 CV 1379 (MRK) |
| vs. | ) <br> ) |
| PRICEWATERHOUSECOOPERS, LLP and COOPERS & LYBRAND, LLP, | ) <br> ) <br> ) |
| Defendants. | ) <br> ) |
| ALEC SHARP, et al., | ) <br> ) |
| Plaintiffs, | ) <br> ) <br> ) CIVIL ACTION NO. |
| vs. | ) 3:02 CV 1572 (MRK) <br> ) |
| PRICEWATERHOUSECOOPERS, LLP d/b/a PRICE WATERHOUSE, LLP, | ) <br> ) <br> ) |
| Defendant. | ) <br> ) |
| HANDY & HARMAN REFINING GROUP, INC., | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) CIVIL ACTION NO. |
| vs. | ) 3:02 CV 1803 (MRK) <br> ) |
| PRICEWATERHOUSECOOPERS, LLP, | ) <br> ) |
| Defendant. | ) <br> ) |

**REPLY MEMORANDUM IN SUPPORT OF ALEC SHARP'S MOTION IN LIMINE NO. 4: EXCLUSION OF ARGUMENT, TESTIMONY AND EVIDENCE OF CONTRIBUTORY OR COMPARATIVE NEGLIGENCE**

Plaintiffs Alec Sharp, et al. ("Sharp") respectfully submit this reply memorandum in support of their motion *in limine* to exclude any argument, evidence, testimony, facts, theories or claims relating to the alleged contributory or comparative negligence of Handy & Harman

289988.1

Refining Group, Inc. ("HHRG") or Golden West Refining Corporation, Ltd. ("GWRC"), or Sharp in PwC's theory of Imputation and in support state as follows:

## I. ARGUMENT

**A. The Current Trend is to Enforce the Audit Interference Rule in the Comparative Negligence Context**

Plaintiff argued in its motion *in limine* that, pursuant to Connecticut law, PwC has no contributory[1] or comparative negligence defense, and thus such argument and evidence cannot be presented at trial. According to the "auditor interference rule," contributory and comparative negligence is only a defense if, and to the extent that, the client's negligence "prevented" the accountant from performing his duties. *Curtis Packaging Corp. v. KPMG, LLP*, No. X06CV990156558S, 2002 Conn.Super. LEXIS 2663, *14-15.

Defendant PricewaterhouseCoopers, LLP ("PwC," or simply "Defendant") responds[2] that the auditor interference rule should not be applied in Connecticut (despite *Curtis*), because courts outside Connecticut purportedly have "[o]verwhelmingly … rejected" the rule. Response, p.6. PwC later asks this Court to reject the audit interference rule "[i]n light of the national trend." *Id.*, p.8-9.

PwC's position is misplaced. Courts outside Connecticut have *not* rejected the audit interference rule "overwhelmingly." Furthermore, the clear trend outside Connecticut is to *enforce* the rule in the comparative negligence context. While PwC cites cases decided between 1984 and 1996 in support of its position, the clear trend of cases in the nine (9) years *after* that period indicate that the audit interference rule is consistent with the doctrine of comparative negligence and should be enforced in comparative negligence states such as Connecticut.

---

[1] PwC concedes that it has no contributory negligence defense in this case.

289988.1

2

In 1998, the Tenth Circuit rejected various cases on which PwC relies and ruled that in comparative negligence states, the audit interference rule should be enforced. In *Steiner Corp. v. Johnson & Higgins of Cal.*, 135 F.3d 684 (10th Cir. 1998), the plaintiff-client had argued that the defendant-accountant is "a professional holding himself out to serve clients or patients," and that the professional:

> is liable for his negligent performance of duties undertaken and may not be relieved of such liability by this clients' or patients' actions in causing or getting involved in the very conditions which the professional was employed and undertook to treat or remedy. *Otherwise the professional would not be held responsible for performing the very duties he assumed. We* [the Tenth Circuit] *agree with plaintiff* [the client] *on this principle. ... The principle applies logically to professionals performing accounting services … .*

*Id*. at 688. (Emphasis added.)

The Tenth Circuit went on to reject the argument of cases cited by PwC in its response brief:

> One of defendants' primary arguments against application of the principle of *National Surety* and its progeny, including *Fullmer* [*v. Wohlfeiler & Beck*, 905 F.2d 1394 (10th Cir. 1990)[3]], is that these cases have been rejected by a number of courts.[4] We find these cases unpersuasive. For the most part, their analysis is essentially premised on noting that *National Surety* was decided under, and sought to avoid, the harsh rule of contributory negligence, concluding that under modern comparative negligence statutes, the holding of *National Surety* is unnecessary to permit a plaintiff to recover when its negligence has been relatively slight. We rejected this rationale in *Fullmer*, 905 F.2d at 1398-99. Our analysis above is not based on the differences between comparative and

---

( . . . continued)
[2] PwC also concedes that it has no comparative negligence defense with regard to Plaintiffs' breach of contract cause of action

[3] PwC argues that the *Fullmer* court "upheld the audit interference approach based on the flawed premise that *National Surety* had been decided under comparative negligence principles." As set forth in *Steiner Corp.*, however, the Tenth Circuit's conclusion in *Fullmer* was correct, as the audit interference rule is entirely consistent with the comparative negligence doctrine.

[4] The Tenth Circuit references two of the cases cited by PwC, the *Halla* case and the *Scioto* case.

289988.1                                     3

> contributory negligence but focuses on the specific injury alleged by the plaintiff and the specific duties undertaken by the defendants. We are convinced that under either a comparative or contributory negligence regime, the acts of the client in getting into circumstances, which he employs the professional to remedy, may not be asserted to avoid liability for the professional's own subsequent negligence. Therefore, the cases rejecting *National Surety* are unpersuasive.

*Id*. at 690. *See also Collins v. Esserman & Pelter*, 256 A.D.2d 754, 758 (N.Y.App. 1998)(citing *National Surety* and concluding the comparative negligence doctrine is not a defense for the accountant unless the client-plaintiff "impeded defendants' ability to complete the review that they had been hired to perform").[5]

In 2001, the Supreme Court of New Jersey supported the audit interference rule in the context of the comparative negligence doctrine in *Aden v. Fortsh*, 776 A.2d 792 (N.J. 2001), given the standard of care for professionals:

> [P]rofessionals may not diminish their liability under the Comparative Negligence Act when the alleged negligence of the client relates to the task for which the professional was hired. That rule is premised on the heightened responsibilities of professionals in this state. … As one commentator has accurately summarized our law, "in general, the comparative fault defense will not apply in a plaintiff's suit alleging a professional's malpractice, at least in those cases in which the defendant argues that the plaintiff was at fault in failing to understand or to perform the task for which the professional was hired."

*Id*. at 800.

Later in 2001, the Supreme Court of Oklahoma agreed. In *Stroud v. Arthur Anderson & Co*., 37 P.2d 783 (Okla. 2001), the court stated that "[a] certified public accountant [CPA] owes a different duty of care to his/her client when rendering professional services than the duty of ordinary care which members of society owe to each other." *Id*. at 789. The Supreme Court of

Oklahoma stated that "[t]he scope of [an accountant's] duty of care owed as a provider of professional accounting services is established not only by the formalized standards adopted by the American Institute of Certified Public Accounts – i.e., GAAS and GAAP – but also by the Oklahoma statutory and regulatory provisions which govern the field." *Id*.  As such, a jury can "only consider that negligence of the plaintiff which interfered with the defendant's provision of professional services." *Id*.  The Supreme Court of Oklahoma furthermore agreed with the Tenth Circuit, and concluded that "to hold otherwise would render illusory the notion that an accounting firm is negligent when its performance breaches the duty of care it owes as a professional to the public and causes injury." *Id*. at 790.[6]

In 2003, the audit interference rule was enforced in the comparative negligence context by the Supreme Court of Illinois – *against PwC's predecessor* (Coopers & Lybrand).  In *Board of Trustees of Community College District No. 508 v. Coopers & Lybrand*, 803 N.E.2d 460 (Ill. 2003), the court rejected older cases PwC now cites (*Halla* and *Scioto*), and ruled in support of subsequent decisions which recognize the standard of care for accountants, including *Stroud*, *Steiner* and *Collins*. *Id*. at 467-68.  The Supreme Court of Illinois found that the holdings which do not enforce the audit interference rule in the comparative negligence context "are not compatible with the application of general tort principles." *Id*. at 468.  Those principles include the Restatement (Third) of Torts, which states that "[i]n a case involving negligent rendition of a service, … a factfinder does not consider any plaintiff's conduct that created the condition the

---

( . . . continued)
 [5] The doctrine of *National Surety* is thus alive and well in New York, despite PwC's allegations to the contrary.
 [6] PwC criticizes *Stroud* because the decision relied on the "reasoning of a fifteen-year old Tenth Circuit opinion to accept the audit interference approach."  This is an interesting argument by PwC, inasmuch as it relies on cases older than 20 years, which conflict with the current trend.

289988.1                                      5

service was employed to remedy." *Id.*, Apportionment of Liability § 7, Comment m. at 70 (2000).

The court also noted that "accountants are held to the same standard as surgeons or any other professional service providers," and that the audit interference doctrine in the comparative negligence context serves public policy:

> Coopers and its *amicus* further argue that the application of the audit interference doctrine does not serve public policy because relieving the client from responsibility for negligence not directly affecting the audit itself minimizes the client's duty of care and encourages clients to take unjustified risks despite their superior knowledge of those risks. They also contend that if the fact finder were allowed to allocate responsibility for all negligent conduct contributing to the ultimate loss, negligent behavior would be deterred, and responsible and forthright cooperation with auditors would be rewarded, thus providing auditors with incentives to follow proper audit procedures. These arguments ignore, however, other incentives more immediate and powerful to management than audits, such as reputation, income, and other similar benefits resulting from competent performance. There are also deterrents such as internal inquiry, shareholder disapproval, civil lawsuits, state and federal regulations, and investigations by independent agencies. Moreover, the audit interference doctrine gives the auditor incentive to exercise more skepticism of the client's statements, resulting in greater care by the client. *We are not persuaded that public policy considerations weigh against the invocation in accounting malpractice action of the general rule pertaining to apportionment of fault.* For the foregoing reasons, we hold that the appellate court correctly affirmed the trial court's application of the audit interference doctrine.

*Id.* at 469. (Emphasis added).

PwC claims the *District 508* holding does not support Plaintiffs, since the Supreme Court of Illinois, even though it agreed with *National Surety*, "nonetheless allowed the accountant to offset its damages by the percentage of fault the jury had assigned to the client." Response, p.9, n.3. PwC misread *District 508.* The Supreme Court of Illinois allowed an offset "because of

conduct occurring ***after*** the expiration of the audit period." *District 508*, at 467. (Emphasis added.) Concerning conduct during the audit period, though, no off-set was allowed. *Id*.

The conduct occurring after the audit period in *District 508* was a management representation letter, containing false representations that PwC relied upon in that case in believing that there was no violation of corporate policy. *Id.* at 469. The Court held the jury properly apportioned fault to Plaintiff under the comparative negligence statute to Plaintiff since PwC relied upon this letter and, therefore, the letter interfered with PwC's audit. *Id.* at 470.

In this case, although PwC did receive a management representation letter from HHRG for the critical audit of the HHRG fiscal year ending March 31, 1998, it is undisputed that PwC had *actual knowledge* that unsecured advances of funds were made to South America by HHRG in violation of HHRG's policy. *See* App. at Exhibit B at paragraphs 3, 15-20, 33-35, 38, 40-62, 65-67. *See also*, *id.* at Exhibit C at pp. 9-10 (excerpt of testimony PwC's engagement partner George Ingram admitting HHRG's corporate policy, and that PwC knew it was being violated as the result of unsecured advances to Panexim and others). Accordingly, there is no evidence PwC relied on the representation letter such that the letter interfered with PwC's audit.

Further, PwC's own expert noted that the line in the 1998 representation letter for Barry Wayne's signature is blank. *See* App. at Exhibit P, at p. 30 (n. 121). In addition, there is no evidence that the officers who did sign the letter (John King, John Bullock and William Myles) knew of the violation of corporate policy.

Based on these undisputed facts, PwC can never prove that management's representations interfered with its audit, and any reliance on the representation letter would be unreasonable given PwC actually knew company policy was being violated.

**B.     The Supreme Court of Connecticut Would Agree with the Current Trend, Given Connecticut Tort Law**

Enforcing the audit interference rule in the comparative negligence context is consistent with Connecticut law. PwC asserts in its response brief that the standard of care for accountants in Connecticut are "on equal footing with other professionals, such as lawyers and doctors." Plaintiff agrees. In Connecticut, like in the states which follow the audit interference trend, accountants are held to a professional standard of care, and subject to additional regulation:

> Accounting, like law and medicine, is a learned profession that is not interchangeable with other commercial endeavors. Deviations from the standard of care applicable to accountants are not the type of actions the consumer protection provisions of CUTPA were designed to prevent. Case law concerning accounting malpractice, the regulations of the State Board of Accountancy, and the rules of the American Institute of Certified Public Accountants more appropriately address such deviations.
>
> Like attorneys and health care providers, accountants are extensively regulated by a state agency other than the Department of Consumer Protection. See Connecticut General Statutes §§ 20-279b et seq. The state Board of Accountancy (the "Board") regulates the conduct of public accountants in this state pursuant to the authority granted to it by § 20-280 of the Connecticut General Statutes. Specifically, the Board has the authority to conduct investigations into complaints about the conduct of accountants, § 20-280c, and to impose sanctions on accountants, including fines: revocation or suspensions of licenses: censures; or imposition of probation, for committing dishonesty, fraud or negligence in the practice of public accountancy and for other enumerated misconduct. § 20-281a.

*Vanczak v. Romani*, No. 990080053, 2002 Conn.Super. LEXIS 3397, *4-5.[7]

Furthermore, the Supreme Court of Connecticut looks to the Restatement of Torts concerning issues of negligence and apportionment of fault. *See Conn. Building Wrecking Co., Inc. v. Carothers*, 218 Conn. 580 (1991). As stated in the *District 508* case, cited *supra*, per the

Restatement (Third) of Torts, "[i]n a case involving negligent rendition of a service, … a factfinder does not consider any plaintiff's conduct that created the condition the service was employed to remedy." *Id*., Apportionment of Liability § 7, Comment m. at 70 (2000).

Rejecting the audit interference rule would therefore conflict with Connecticut's tort law principles – and again, the only case in Connecticut on the issue, the *Curtis* case, ruled in favor of enforcing the rule. The Supreme Court of Connecticut would enforce the rule as well.

C.      **The Cases Cited by PwC Are Inapplicable**

The cases cited by PwC do not apply here.

First, *all* of the cases cited by PwC were decided in or before 1996 – prior to the current trend.

Second, three of the cases cited by PwC (*ESCA Corp.*, *Ward* and *Capital Mortgage*) either are not accountant negligence cases, and/or do not concern the audit interference rule or the *National Surety* case.

Third, most of the remaining cases (*Halla*, *Scioto*, *Devco*, *Resolution Trust*, *FDIC v. Deloitte*, and *Aho*) either fail to acknowledge the professional standard of care for accountants, and/or the principles of tort stating that "[i]n a case involving negligent rendition of a service, … a factfinder does not consider any plaintiff's conduct that created the condition the service was employed to remedy." *Id*., Apportionment of Liability § 7, Comment m. at 70 (2000).

Fourth, concerning the New York cases PwC cites (*Bank Brussels* and *Hall & Co*.) for the proposition that *National Surety* is no longer followed, such is just simply not true. *See Collins v. Esserman & Pelter*, 256 A.D.2d 754, 758 (N.Y.App. 1998).

---

( . . . continued)
   [7] PwC cites the *Vanczak* case with approval.

289988.1                                            9

## II. CONCLUSION

PwC argues that if accountants in Connecticut have a comparative negligence defense, the audit interference rule does not apply. Such a conclusion, however, is not supported by the only case in Connecticut on the issue, or the current national trend. See *Curtis Packaging Corp. v. KPMG, LLP*, No. X06CV990156558S, 2002 Conn.Super. LEXIS 2663, *14-15. *See also, e.g.*, *Board of Trustees of Community College District No. 508 v. Coopers & Lybrand*, 803 N.E.2d 460 (Ill. 2003). Such a conclusion also conflicts with the standard of care in Connecticut for accountants and other professionals (*see Vanczak v. Romani*, No. 990080053, 2002 Conn.Super. LEXIS 3397, *4-5), and with tort law in general (*see* Restatement (Third) Torts, Apportionment of Liability § 7, Comment m. at 70 (2000)).

Sharp's motion *in limine* should be granted.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: /s/ Fred Knopf
    Fred Knopf, Esq. (ct 09427)
    E-mail: knopff@wemed.com
    Edward Boyle, Esq.
    E-mail: boylee@wemed.com
    WILSON, ELSER, MOSKOWITZ,
    EDELMAN & DICKER LLP
    150 E. 42nd Street
    New York, NY 10017
    Phone: 212-490-3000
    Fax: 212-490-3038

    Daniel J. McMahon, Esq. (Ill. Bar 0162590)
    E-mail: mcmahond@wemed.com
    Stefan R. Dandelles, Esq. (Ill. Bar 6244438)
    E-mail: dandelless@wemed.com
    WILSON, ELSER, MOSKOWITZ,
    EDELMAN & DICKER LLP
    120 N. LaSalle Street

                                    Chicago, IL 60602
                                    Phone: 312-704-0550
                                    Fax: 312-704-1522

## **CERTIFICATE OF SERVICE**

THIS IS TO CERTIFY that on October 26, 2005, a copy of the foregoing was filed electronically (and served by mail on anyone unable to accept electronic filing) on each of the following counsel of record in each of the consolidated cases. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system (or by mail to anyone unable to accept electronic filing). Parties may access this filing through the Court's system.

Thomas D. Goldberg, Esq.
Steven Greenspan, Esq.
David J. Elliott, Esq.
Day, Berry & Howard
City Place I
Hartford, CT 06103

Steven Humphrey, Esq.
Dina Fisher, Esq.
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103-3597

William H. Champlin III, Esq.
Michael T. McCormack, Esq.
Tyler Cooper & Alcorn, LLP
City Place, 35th Floor
185 Asylum Street
Hartford, CT  06103

                                                /s/ Fred Knopf
                                                Fred Knopf