## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ALEC SHARP, et al.,

                Plaintiffs,

vs.                                      No.  3:02CV1572 (MRK)

PRICEWATERHOUSECOOPERS, LLP,
d/b/a PRICEWATERHOUSE, LLP,

                Defendant.

OCTOBER 28, 2005

## JOINT TRIAL MEMORANDUM

Counsel for the parties in this action submit this Joint Trial Memorandum in accordance with the Court's Trial Management Order.

1.     <u>TRIAL COUNSEL:</u>

The following attorneys will be trial counsel for the parties in this action:

Counsel for the plaintiff, Underwriters:

> Edward J. Boyle
> Email: <u>BoyleE@wemed.com</u>
> Daniel J. McMahon
> Email: <u>Mcmahond@wemed.com</u>
> Stefan Dandelles
> Email: dandelless@wemed.com
> Wilson, Elser, Moskowitz, Edelman & Dicker LLP
> 150 East 42nd Street
> New York, NY  10017-5639
> Business:  (212) 490-3000
> Fax:  (212) 490-3038

Counsel for the defendant, PricewaterhouseCoopers LLP ("PwC"):

David J. Elliott
E-mail: djelliott@dbh.com
Thomas D. Goldberg
E-mail: tdgoldberg@dbh.com
Steven M. Greenspan
E-mail: smgreenspan@dbh.com
Day, Berry & Howard LLP
CityPlace I
Hartford, Connecticut 06103
Telephone: (860) 275-0100
Fax: (860) 275-0343

2.    <u>JURISDICTION:</u>

The Court has jurisdiction over these matters pursuant to 28 U.S. § 1334(b) as

they are civil proceedings arising in or related to a case under Title 11.

3.    <u>JURY/NON-JURY:</u>

This case will be tried to a jury.

4.    <u>LENGTH OF TRIAL:</u>

Counsel for the parties believe that the trial will last 15 days.

5.    <u>FURTHER PROCEEDINGS:</u>

Further proceedings will be required concerning various motions in limine the

parties have filed and *Daubert* motions concerning one of the parties' disclosed experts.

6.    <u>NATURE OF THE CASE:</u>

**<u>Plaintiffs' Statement Regarding the Nature of the Case:</u>**

The plaintiff in this action is Alec Sharp ("Plaintiff"). Plaintiff brings this action by

assignment from Handy & Harman Refining Group, Inc. ("HHRG") seeking damages against

defendant PricewaterhouseCoopers ("PwC").

HHRG hired PwC to perform certain audit and business services for HHRG for the periods ended March 31, 1997, 1998, and 1999, and to perform agreed-upon procedures concerning HHRG physical inventories and semi-annual reviews at September 30, 1997, 1998, and 1999. Plaintiff alleges that PwC breached the terms of a contract with HHRG and was negligent in performing services for HHRG in connection with the 1997, 1998, and 1999 Audits. Plaintiff assert claims for breach of contract (Count 1); malpractice-negligence (count 2); and negligent misrepresentation (Count 3). Plaintiff seeks damages for certain economic losses incurred by HHRG as a result of PwC's breaches and negligence. PwC denies each of these claims and has asserted the following affirmative defenses: *in pari delicto*; unclean hands; comparative fault; failure to mitigate damages; contractual indemnification; and recoupment and setoff. Plaintiff denies these affirmative defenses.

## PwC's Statement Regarding the Nature of the Case:

The plaintiff in this action is Underwriters, a group of insurance companies subscribing to an insurance policy that insured HHRG.

The sole defendant in these actions is PwC, a Delaware limited liability partnership. HHRG hired PwC to performed certain audit services for HHRG for the periods ended March 31, 1997, 1998, and 1999 (the "1997 Audit", the "1998 Audit", and the "1999 Audit" respectively). HHRG also hired PwC to perform agreed-upon procedures concerning HHRG physical inventories and semi-annual reviews at September 30, 1997, 1998, and 1999. PwC performed all of these services.

The plaintiff alleges that PwC was negligent in performing its audit services for HHRG in connection with the 1997, 1998, and 1999 Audits.

-3-

In March 2000, HHRG filed for bankruptcy protection. HHRG made a claim under the employee dishonesty or fidelity coverage provisions of the Underwriters' insurance policy and Underwriters paid such claim and became HHRG's subrogee and assignee.

Underwriters asserts claims for breach of contract (count 1); malpractice – negligence (count 2); and negligent misrepresentation (count 3). PwC denies each of these claims and has asserted the following affirmative defenses: *in pari delicto*; unclean hands; comparative fault; failure to mitigate damages; contractual indemnification; and recoupment and setoff.

PwC asserts that the cause of the losses for which Plaintiffs' seek recover was not any professional shortcomings of PwC but rather the fraud and dishonesty of senior HHRG management and others in collusion with them.

7.    TRIAL BY MAGISTRATE JUDGE:

The parties do not agree to a trial by a Magistrate Judge.

8.    EVIDENCE:

(a)    Witnesses:

**Plaintiffs will likely call the following witnesses at trial:**

1.    **Chad Albano**          91 Reservoir Avenue, Broad Brook, CT 06106.

Mr. Albano, a former PwC employee, will testify regarding the work he and others on the PwC team performed for HHRG. He will testify about documents received by PwC during its audit and the PwC work papers relating to the HHRG audit. He will testify about the relationship of the HHRG audit to GWRC and its financial statements. Albano will testify about the PwC engagement and the PwC Service Plan that was provided to HHRG in 1998 and 1999. He will testify about the critical matters identified in each audit and about his knowledge of HHRG's policy relating to advances to customers. Mr. Albano will also testify about PwC's

knowledge of HHRG advancing money to Panexim and other South American companies.  Mr. Albano will also testify as to matters covered at his deposition.  Expected duration of testimony: 2 hours.

    2.    **Barrett Brown**       125 High Street, Boston, MA 02110.

Mr. Brown, a current PwC employee, will testify regarding the work he and others on the PwC team performed for HHRG.  He will testify about documents received by PwC during its audits and semi-annual reviews and the PwC work papers relating to the HHRG audits and semi-annual reviews.  He will testify about the relationship of the HHRG audits and semi-annual reviews to GWRC and its financial statements.  Mr. Brown will testify about the PwC engagement and the PwC Service Plan that was provided to HHRG in 1998 and 1999.  He will testify about the critical matters identified in each audit and about HHRG's policy relating to advances to customers.  Mr. Brown will also testify about PwC's knowledge of HHRG advancing money to Panexim and other South American companies.  He will further testify as to the matters set forth in his deposition.    Expected duration of testimony: 2 hours.

    3.    **Martin Boehm**       59 Garnet Lane, South Windsor, CT 06074

Mr. Boehm, former Commercial Account Manager at HHRG, will testify about HHRG's business operations and records, including the business of purchasing and selling precious metals.  Mr. Boehm will also testify about HHRG's financing arrangements with Fleet Precious Metals, Inc. and Credit Suisse First Boston, as well as HHRG's relationships with such institutions.  Mr. Boehm will testify about HHRG's policy against making unsecured advances. He will testify regarding his interaction with PwC employees during the course of year end audits.  He will also testify about his lack of knowledge that an employee of HHRG was making

unsecured advances to Panexim and other companies in South America.  Expected duration of testimony: 2 hours.

      4.    **John Bullock**      195 Church Street, New Haven, CT  06510.

Mr. Bullock, the former general counsel and member of the board of directors of HHRG, will testify generally about the precious metals industry, HHRG's business, and his role and responsibilities as general counsel of HHRG from 1996 to 1999 and as a member of the board of directors and finance committee of HHRG.  He will testify about the board meetings, communications among board members, persons present at board meetings, and actions taken at the board meetings.  Mr. Bullock will further testify about HHRG's policy of not making advances of money unless metal sufficient to fully secure such advance is in the possession of HHRG and the risks associated with violating such a policy.  He will testify that such a policy is a well known policy in the precious metals industry.  Mr. Bullock will testify to a lack of knowledge that an employee of HHRG was making advances to Panexim and other companies in South America in violation of HHRG's policy.  Mr. Bullock will further testify about his communications and interactions with PwC for the HHRG audits and semi-annual reviews.  He will further testify as to the matters set forth in his affidavit.  Expected duration of testimony: 4 hours.

PwC objects to portions of the proposed testimony on grounds of lack of foundation, hearsay, relevance, speculation, failing to timely disclose expert testimony and lack of expert qualifications.

      5.    **Elizabeth Christensen**      85 North Main Street, Unit IB,
      East Hampton, CT.

Ms. Christensen, a current PwC employee, will testify regarding the work she and others on the PwC team performed for HHRG. She will testify about documents received by PwC during its audits and semi-annual reviews and the PwC work papers relating to the HHRG audits and semi-annual reviews. She will testify about the relationship of the HHRG audits and semi-annual reviews to GWRC and its financial statements. She will testify about the PwC engagement and the PwC Service Plan that was provided to HHRG in 1998 and 1999. She will testify about the critical matters identified in each audit and about her knowledge of HHRG's policy relating to advances to customers. Ms. Christiansen will also testify about PwC's knowledge of HHRG advancing money to Panexim and other South American companies. Ms. Christensen will testify about PwC's efforts to confirm amounts due HHRG from Panexim during each of the years that PwC performed an audit for HHRG. She will further testify as to the matters set forth in her deposition. Expected duration of testimony: 2 hours.

      6.    **Alex M. Corl**      27 Winthrop Road, Hebron, CT.

Mr. Corl, a current PwC partner, will testify regarding the work he and others on the PwC team performed for HHRG. He will testify about documents received by PwC during its audits and semi-annual reviews and the PwC work papers relating to the HHRG audits and semi-annual reviews. He will testify about the relationship of the HHRG audits and semi-annual reviews to GWRC and its financial statements. Mr. Corl will testify about his placement on the HHRG audit team and the PwC engagement and the PwC Service Plan that was provided to HHRG in 1998 and 1999. He will testify about the critical matters identified in each audit and about his knowledge of HHRG's policy relating to advances to customers. Mr. Corl will also testify about PwC's knowledge of HHRG advancing money to Panexim and other South American

companies.  He will testify as to all unsecured advances.  Mr. Corl will testify about communications with the Audit Committee and Board of GWRC concerning the HHRG audits in 1999.  He will further testify about his communications with board members, HHRG management and with PwC Australia.  He will further testify as to the matters set forth in his deposition.  Expected duration of testimony: 4 hours.

       7.     **Raj Dansinghani**     11-4 Countryside Lane, Middletown, CT.

Mr. Dansinghani, a current PwC employee, will testify regarding the work that he and others on the PwC team performed for HHRG.  He will testify about documents received by PwC during its audits and semi-annual reviews and the PwC work papers relating to the HHRG audits and semi-annual reviews.  He will testify about the relationship of the HHRG audits and semi-annual reviews to GWRC and GWRC's financial statements.  Mr. Dansinghani will testify about his placement on the HHRG audit team and the PwC Service Plan that was provided to HHRG in 1998 and 1999.  He will testify about the critical matters identified in each audit and about HHRG's policy relating to advances to customers.  Mr. Dansinghani will testify about his conversations with William Myles and Luis Posada in 1998 concerning advances to Panexim and other companies.  Mr. Dansinghani will further testify that he learned in connection with his work on the 1998 HHRG audit that HHRG was advancing money to Panexim and others that was being used to pay VAT obligations.  Mr. Dansinghani will further testify that he never advised anyone at HHRG, the HHRG or GWRC Boards of Directors, or the Audit Committee of such fact.  Mr. Dansinghani will testify about the communications that he had with other PwC representatives about the HHRG audits, including advances to Panexim.  He will further testify as to the matters set forth in his deposition.  Expected duration of testimony: 4 hours.

8.    **John D. Dempsey, CPA, CFE**   82 Deforest Road, Wilton, CT.

Mr. Dempsey, a forensic accountant, will testify about his investigation of HHRG's business relationship with Panexim, including advances made by HHRG to Panexim and other South American companies relating to the purchase of gold and silver, and the losses that HHRG sustained as a result of its business relationship with Panexim.  Mr. Dempsey will testify about Panexim's obligations to pay VAT and the fact that HHRG financed Panexim's VAT obligations.  Mr. Dempsey will also testify regarding the payments HHRG made to a series of South American consultants, bonus payments made to former HHRG employees, and the costs incurred in investigating HHRG's losses.  He will further testify to the matters set forth in his reports, summary documents and his deposition.  Expected duration of testimony: 2 hours.

PwC objects to any compilations Mr. Dempsey intends to offer regarding HHRG's trading activities or the source documents for which are records of businesses or entities other than HHRG.  PwC's objections will include hearsay, lack of authentication, and foundation.

9.    **Richard G. Hayes**    Gold Corporation, 2 Mill Street,
                              Perth WA 6000 Australia.

Mr. Hayes, Chief Financial Officer of Gold Corporation and the former Chief Financial Officer of GWRC, will testify generally about the precious metals industry, his experience in the industry, and about the business and operations of GWRC and HHRG.  Among other things, Mr. Hayes will testify about his role and responsibilities with respect to GWRC and HHRG.  He will testify about board meetings, persons present at board meetings, communications with board members, and actions taken at GWRC and HHRG board and committee meetings.  He will also testify about his experience with the HHRG board of directors and his attendance at HHRG board meetings and persons present at such meetings.  Mr. Hayes will also testify about the

GWRC Finance Committee and his membership on that committee, including actions taken by the finance committee. He will testify about the financial management and condition of HHRG, including the reporting and other financial systems at HHRG. Hayes will further testify about GWRC and HHRG's policy against unsecured advances to customers of HHRG and GWRC and the importance of such a policy to HHRG, GWRC and in the industry generally. He will also testify to his job responsibilities and duties as CFO and as to the policies that he compiled. Mr. Hayes will testify about his communications and interactions with PwC and audit team members during PwC's audits and reviews of HHRG and GWRC. He will testify about the actions he and others would have taken and what he would have expected to happen to the business of HHRG had PwC informed him and others in June 1998 that HHRG employees were making unsecured advances to Panexim and other customers in South America. He will also testify to the matters set forth in the affidavits filed in opposition to PwC's motion for summary judgment and in his deposition. Expected duration of testimony: 5 hours.

PwC objects to portions of the proposed testimony on grounds of lack of foundation, hearsay, relevance, speculation, failing to timely disclose expert testimony and lack of expert qualifications.

10.    **George A. Ingram**    20 Stafford Road, Simsbury, CT 06070.

Mr. Ingram, a retired PwC partner, will testify regarding the work he and others on the PwC team performed for HHRG. He will describe generally the work performed, the members of the team, their roles and responsibilities. He will testify about documents received by PwC during its audits and semi-annual reviews and the PwC work papers relating to the HHRG audits and semi-annual reviews. He will testify as to the due diligence work performed by PwC in

1996.  He will testify about the relationship of the HHRG audits and semi-annual reviews to

GWRC and its financial statements.  Mr. Ingram will testify about his role on the HHRG audit

team, the PwC engagement letters, the PwC audit plan, its scope and limitations, and the PwC

Service Plan that was provided to HHRG in 1998.  He will testify about the critical matters

identified in each audit and his knowledge of HHRG's policy relating to advances to customers.

He will testify as to the unsecured advances, loan covenants, offsets and the confirmation

process.  He will further testify about being removed from the PwC audit team for HHRG.  Mr.

Ingram will testify about PwC's knowledge of HHRG advancing money to Panexim and other

South American companies.  Mr. Ingram will testify about communications with the Audit

Committee and Boards of GWRC and HHRG concerning the HHRG audits in 1997 and 1998.

He will further testify about his communications with board members, HHRG management and

with PwC Australia.  He will further testify as to the matters set forth in his deposition.  Expected

duration of testimony: 5 hours.

|   |   |   |
|---|---|---|
| 11. | **Vincent J. Love** | Kramer, Love & Cutler, 675 Third Avenue,<br>New York, New York 10017. |

Mr. Love, Plaintiff's disclosed expert on liability and damages, will testify regarding his

opinions that PwC failed to perform GAAS audits.  Mr. Love will further testify that had PwC

disclosed the fact that a material amount of unsecured advances had been made in violation of

HHRG's policy against unsecured advances to the HHRG Board of Directors, the Audit

Committee or GWRC, it would have allowed representatives to have acted in order to prevent

unsecured advances from occurring in the future.  Mr. Love will also testify regarding the

quantum of certain losses incurred by HHRG as a result of PwC's breaches.  Mr. Love will

further testify to matters set forth in his expert report, his depositions, and his affidavits filed in

this matter.  A copy of Mr. Love's curriculum vitae and his expert report, as well as a list of the

materials on which he will rely, are being provided with this Joint Trial Memorandum.  Expected duration of testimony:  6 hours.

PwC objects to Mr. Love's testimony to the extent that such testimony goes beyond the scope of matters included in his expert report.

12.     **Roberto Passaro**        1178 Post Road, Scarsdale, NY 10583.

Mr. Passaro will testify about the business and operations of Panexim, including Panexim's business records, and its relationship with HHRG.  Mr. Passaro will testify about the sale and exporting of gold and silver to HHRG between 1996 and 1999.  He will testify about unsecured advances made by HHRG to Panexim.  He will testify about the government export incentive program in Peru.  He will explain Panexim's obligations to pay VAT on gold and silver.  Mr. Passaro will further testify about financing that HHRG provided to Panexim in order for Panexim to meet its VAT and other obligations.  Mr. Passaro will testify about the financing arrangements and the payment of VAT to SUNAT.  He will also testify about the Peruvian government's abolition of the export incentive program and its termination of the refunding of VAT payments and the effect such changes had on Panexim's ability to repay money received from HHRG.  He will also testify as to the amount of VAT paid to SUNAT with HHRG funds during 1998 and 1999 that were not repaid by SUNAT to Panexim, and that such amount was ultimately owed to HHRG.  He will also testify to his communications with Barry Wayne and others at or on behalf of HHRG.  Expected duration of testimony: 4 hours.

PwC objects to any aspects of Mr. Passaro's testimony that relies upon hearsay evidence, non-authenticated documents, or lacks a foundation.

13.    **Sean G. Russo**        20A Uppercliff Rd., Northwood NSW 2060
                                 Australia.

Mr. Russo will testify about his experience with HHRG, GWRC, and Rothschild in the precious metals refining industry.  He will testify about the business of GWRC and HHRG, the acquisition of the PMRD, the projections of net income and the valuation of HHRG at the time of the acquisition, the expectations for the acquisition and how it related to the business of GWRC and Rothschild, and the work performed by PwC for GWRC in connection with due diligence proceedings related to the acquisition of the PMRD.  Mr. Russo will testify about the business operations of GWRC and HHRG after the acquisition.  He will further testify about HHRG's financing arrangements with Fleet Precious Metals, Inc. and Credit Suisse First Boston, and GWRC's relationship with HHRG's financing institutions.  Mr. Russo will testify about his role as a member of the boards of directors of GWRC and HHRG, including his attendance at board meetings, other persons present at board meetings, communications with board members and actions taken and communications at such board meetings.  Mr. Russo will testify about the GWRC Finance Committee and his membership on that committee.  He will testify about GWRC and HHRG's policy of not making unsecured advances to customers and the importance of such a policy as it relates to the precious metals industry.  Mr. Russo will testify about communications and interactions with PwC relating to the acquisition of the PMRD and during PwC's audits of HHRG and GWRC.  Mr. Russo will testify about not having any knowledge prior to May 1999 that an HHRG employee was making unsecured advances to Panexim and other companies in South America.  He will testify about the actions he would have taken had PwC informed him in June 1998 that HHRG employees were making unsecured advances to Panexim and other customers, and the actions that he and other members of the board of directors of GWRC and HHRG and the finance committee took upon learning in 1999 of

-13-

unsecured advances of approximately $1 million made to Panexim.  He will testify regarding the costs incurred by HHRG as a result of the advances to Panexim.  He will testify concerning Barry Wayne's conduct as president of HHRG during his tenure including his actions regarding Panexim.  He will testify concerning his investigation into the Panexim situation including his trip to Peru as part of that investigation.  He will testify concerning how HHRG funded the advances to Panexim and the costs to HHRG in providing such financing to Panexim.  He will further testify to the bonuses paid to certain former employees that would not have been made if he and other members of the Board had been advised that company policy was being violated. He will further testify as to the matters set forth in his deposition and the statements set forth in his affidavits.  Expected duration of testimony: 8 hours.

PwC objects to portions of the proposed testimony on grounds of lack of foundation, hearsay, relevance, speculation, failing to timely disclose expert testimony and lack of expert qualifications.

14.    **Joseph J. Tiroletto**    8 Crestview Circle, Enfield, CT 06082.

Mr. Tiroletto, a former PwC director, will testify regarding the work he and others on the PwC team performed for HHRG.  He will testify about documents received by PwC during its audits and semi-annual reviews and the PwC work papers relating to the HHRG audits and semi-annual reviews.  He will testify about the relationship of the HHRG audits and semi-annual reviews to GWRC and its financial statements.  Mr. Tiroletto will testify about his role on the HHRG audit team, the PwC engagement letters, and the PwC Service Plan that was provided to HHRG in 1998 and 1999.  He will testify about the critical matters identified in each audit and about HHRG's policy relating to advances to customers.  Mr. Tiroletto will testify as to the audit confirmation process.  Mr. Tiroletto will testify about his review of PwC work papers that were

created at the time PwC was performing audit and business services for HHRG.  He will testify

about PwC's knowledge of HHRG advancing money to Panexim and other South American

companies and the steps if any in the audit plan to comply with the Foreign Corrupt Practices

Act.  Mr. Tiroletto will testify about communications with the Audit Committee and Boards of

GWRC and HHRG concerning the HHRG audits in 1998 and 1999.  He will further testify about

his communications with board members, HHRG management and with PwC Australia.  He will

further testify as to the matters set forth in his deposition.   Expected duration of testimony: 4

hours.

**Plaintiffs will only call the following witnesses if the need arises**:

1.     **Jed Horwitt, Esq**.     Zeisler & Zeisler, PC, 558 Clinton Avenue
                                   Bridgeport, CT 06605

If necessary, Mr. Horwitt will testify to the claims assigned to Alec Sharp pursuant to a

settlement agreement between Sharp and the Liquidating Custodian of HHRG.  Mr. Horwitt will

testify that the settlement agreement was negotiated in good faith and was in the best interests of

the HHRG estate.  Mr. Horwitt will testify to his duties, obligations and powers as assigned him

by the Bankruptcy Court as Liquidating Custodian of HHRG.  He will further testify that

assigning claims in exchange for valuable consideration was within the scope of his rights and

duties as Liquidating Custodian.    Mr. Horwitt will testify to the claims assigned to Alec Sharp

and the costs incurred by HHRG in investigating its losses.  He will further testify as to certain

matters set forth in his affidavit and deposition.  Expected duration of testimony: 1 hour.

PwC objects to portions of the proposed testimony on grounds of lack of foundation,

hearsay, relevance, speculation, failing to timely disclose expert testimony and lack of expert

qualifications.

2.     **John H. King**          89 Pinecrest Drive, North Kingstown, RI 02852.

Mr. King, the former treasurer of HHRG, will testify about his role as treasurer and about HHRG's business, its operations and its records.  Mr. King will also testify about the terms of HHRG's financing arrangements with Fleet Precious Metals, Inc. and Credit Suisse First Boston, as well as HHRG's relationships with such institutions and its hedging policies.  Mr. King will testify about HHRG's policy against making unsecured advances.  He will also testify about his lack of knowledge prior to 1999 that an employee of HHRG was making unsecured advances to Panexim and other companies in South America.  Mr. King will testify concerning the actions of Barry Wayne and other HHRG employees.  He will further testify as to what he and others would have done if they knew of improper advances in June 1998 and the effect this would have had on HHRG.  Mr. King will testify about his communications with the Audit Committee and boards of HHRG and GWRC in 1999 concerning the size of the receivable due from Panexim and his role on the HHRG Finance Committee, including the  investigation in 1999 concerning Panexim.  He will further testify as to the matters set forth in his deposition.   Expected duration of testimony: 2 hours.

PwC objects to portions of the proposed testimony on grounds of lack of foundation, hearsay, relevance, speculation, failing to timely disclose expert testimony and lack of expert qualifications.

3.    **William L. Myles**     28 Markwood Road, Manchester, CT 06040.

Mr. Myles, the former controller of HHRG, will testify about his role as controller and about HHRG's business including the specifics related to  purchasing and selling precious metals.  Mr. Myles will also testify about HHRG's financing arrangements with Fleet Precious Metals, Inc. and Credit Suisse First Boston, as well as HHRG's relationships with such institutions and its hedging policies.  Mr. Myles will testify about HHRG's policy against

making unsecured advances. He will also testify about HHRG's business and financial records, and his lack of knowledge that an employee of HHRG was making unsecured advances to Panexim and other companies in South America. Mr. Myles will testify about his communications with the PwC auditors for HHRG, including the lack of any communications relating to the fact that an employee of HHRG was making unsecured advances to Panexim and other companies in South America. He will further testify as to the matters set forth in his deposition. Expected duration of testimony: 2 hours.

4.    **Jaime Rodriguez**    Lima, Peru.

Mr. Rodriguez will testify regarding the VAT payments made by Panexim to SUNAT that remain unreimbursed. Expected duration of testimony: 2 hours.

PwC objects to the testimony of this witness on the grounds that he was not disclosed in Plaintiffs' initial disclosures and is being identified for the first time in this Joint Trial Memorandum.

5.    **Angel Rebatta**    Lima, Peru.

Mr. Rebatta will testify about the business and operations of Panexim, including Panexim's business records, its purchase and sale of precious gold and silver and its relationship with HHRG. Mr. Rebatta will testify about the purchase of gold from the Peruvian mines, the sale and exporting of gold and silver to HHRG between 1996 and 1999. He will testify about unsecured advances made by HHRG to Panexim. He will testify about the government export incentive program in Peru. He will explain Panexim's obligations to pay VAT on gold and silver. Mr. Rebatta will testify about the financing arrangements and the payment of VAT to SUNAT. He will also testify about the Peruvian government's abolition of the export incentive program and its termination of the refunding of VAT payments and the effect such changes had

on Panexim's ability to repay money received from HHRG. He will also testify as to the amount of VAT advanced to Panexim from HHRG during 1998 and 1999 that were not repaid by Panexim to HHRG and his communications with Barry Wayne and others at HHRG and GWRC. Expected duration of testimony: 2 hours.

PwC objects to the testimony of this witness on the grounds that he was not disclosed in Plaintiffs' initial disclosures and is being identified for the first time in this Joint Trial Memorandum.

6.    **Helen O'Brien**

Ms. O'Brien, the sole remaining employee of HHRG, will testify about the business and history of HHRG. She will testify about her employment at HHRG and the employment of others at HHRG. She will testify regarding documents kept in the ordinary course of HHRG's business.

PwC objects to portions of the proposed testimony on grounds of lack of foundation, hearsay, relevance, speculation, failing to timely disclose expert testimony and lack of expert qualifications

7.    **W. Marcus Johnson**          HSNO

Mr. Johnson will testify regarding his investigation of HHRG's relationship with Panexim and the extent to which HHRG advanced funds to Panexim in return for metals received by Panexim. He will testify that his analysis was limited to determining those losses incurred HHRG that were covered by the insurance policy under which such losses were submitted for coverage. Mr. Johnson will also testify that he does not dispute that HHRG incurred economic losses in excess of $15.8 million.

8.    **Michel Verleysen**

Mr. Verleysen will testify generally regarding HHRG's relationship with Panexim.  He will testify to the fact that HHRG was advancing funds to Panexim for precious metals prior to such metals being in the possession of HHRG.  He will also testify that HHRG advanced funds to Panexim on an unsecured basis for Panexim to pay its VAT liability to the Peruvian government.  He will further testify to an undisclosed financial interest he and others had in the HHRG-Panexim relationship.  He will also testify to payments made to South American consultants for purported services to HHRG.

9.    **Luis Posada**            466 Wheeler Rd. Monroe, CT 06468

Mr. Posada, the former Smelter Administrator of HHRG, will testify regarding HHRG's business transactions in South America.  He will testify specifically regarding the nature of the transactions with Panexim and his interactions with Panexim from 1996-2000.  He will further testify to his role in the transactions.  Mr. Posada will testify about a discussion he had with PwC during the 1998 audit wherein he advised PwC that HHRG advances to Panexim amounts in excess of the value of precious metals to be purchased to cover Panexim's VAT liability to the Peruvian government.

**PwC will likely call the following witnesses:**

<u>**Chad Albano**</u>**:** 91 Reservoir Avenue, Broad Brook, CT  06016.

Mr. Albano, a former PwC employee, regarding the work he and the  PwC audit team performed for HHRG including the work performed in connection with the 1997, 1998, and 1999 audits.  Expected duration of testimony: one-quarter of a day.

<u>**Martin Boehm**</u>**:** 59 Garnet Lane, South Windsor, CT 06074-1573.

Mr. Boehm, the former commercial manager for HHRG and a former member of HHRG's board off directors, will testify regarding the general business operation of HHRG and information that was known by or available to the HHRG board of directors at various times from 1996 through 1999. Expected duration of testimony: one-quarter of a day.

**Barrett Brown**: 125 High Street, Boston, MA 02110.

Mr. Brown, a current PwC employee, will testify regarding the work he and the PwC audit team performed for HHRG including the work performed in connection with the 1998 audit. Expected duration of testimony: one-half day.

**R. Gene Brown:** 55665 Pebble Beach, LaQuinta, CA 92253.

Mr. Brown, PwC's disclosed corporate governance expert, will testify regarding his opinions concerning the actions and inactions of the HHRG management and boards of directors, as more fully set forth in his expert report submitted with this memorandum. Expected duration of testimony: 1 day. A copy of Mr. Brown's curriculum vitae and his expert report, as well as a list of the materials on which he will rely, are being provided with this Joint Trial Memorandum.

Plaintiffs have moved for the exclusion of the expert testimony of this witness. Upon resolution of the Daubert motions, Plaintiffs reserve the right to object to portions of the proffered testimony in the event the motions are not granted.

**Elizabeth Christensen:** 100 Pearl Street, Hartford, CT 06103.

Ms. Christensen, a current PwC employee, will testify regarding the work she and the PwC audit team performed for HHRG including the work performed in connection with the1999 audit.  Expected duration of testimony: one-quarter of a day.

**Alex Corl:**  100 Pearl Street, Hartford, CT 06103.

Mr. Corl, a current PwC employee, will testify regarding the work he and the PwC audit team performed for HHRG including the work performed in connection with the 1999 audit, the 1998 and 1999 semi-annual reviews, and the various physical inventory observations.  Expected duration of testimony: one-half day.

**Raj Dansinghani:**  11-4 Countryside Lane, Middletown, CT  06457.

Mr. Dansinghani, a former PwC employee, will testify regarding the due diligence work performed by PwC at the request of Rothschild; and the work he and the PwC audit team performed for HHRG including the work performed in connection with the 1997, 1998, and 1999 audits, the 1997, 1998, and 1999 semi-annual reviews, and the various physical inventory observations.  Expected duration of testimony: three-quarters of a day.

**John Dempsey:**  Talbott House, 426 Danbury Road, Wilton, CT 06897.

Mr. Dempsey, a forensic accountant hired by HHRG in 2000 and one of HHRG's disclosed experts, will testify regarding his investigation conducted in 2000 and 2001 regarding the losses that resulted to HHRG due to a scheme of certain of its employees and consultant to defraud HHRG.  Mr. Dempsey also will testify regarding Underwriters' representatives' statements regarding the amount of the alleged loss.  Expected duration of testimony: one day.

**George Ingram**:  20 Stafford Road, Simsbury, CT  06070.

Mr. Ingram, a former PwC employee, will testify regarding the work he and the PwC audit team performed for HHRG including the work performed in connection with the 1997, 1998, and 1999 audits, the 1997, 1998, and 1999 semi-annual reviews, and the various physical inventory observations.  Expected duration of testimony: three-quarters of a day.

**Mark S. Johnson:** Talbot Underwriting Ltd., 55 Gracechurch Street, London, EC3V.

Mark S. Johnson was designated by Underwriters as their corporate representative pursuant to a Rule 30(b)(6) notice of deposition to provide testimony regarding several topics relevant to Underwriters' claims.  In particular, Mr. Johnson testified regarding the insurance claim made by HHRG arising out of the Panexim receivable and the Underwriters' consideration of and decision to settle the claim with HHRG.  The terms of and circumstances around the settlement of the insurance claim are evidence inter alia of the appropriate measures of damages claimed in this case.  Mr. Johnson also testified as to Underwriters' determination of coverage under the underlying insurance policy, including with respect to a determination regarding dishonest, fraudulent or malicious conduct engaged in by HHRG management.  He further testified, on behalf of Underwriters, with respect to the basis for the claims that Underwriters have asserted as to HHRG management and with respect to PwC.  He finally testified regarding Underwriters' engagement of and conclusions reached by forensic professionals, such as HSNO, in connection with the insurance claim and settlement.  Mr. Johnson is the sole representative of Underwriters who has testified as to any of these matters.  Expected duration of testimony: one hour.

Plaintiffs object to the admissibility of the testimony of this witness because, *inter alia*, his testimony is irrelevant to the matters at issue in this case. See Plaintiffs' Motion in Limine regarding Exclusion of References to Insurance; see also Plaintiffs' Motion in Limine regarding Exclusion of Recoveries or Recovery Efforts.

PwC contends that Mr. Johnson's testimony is relevant for reasons that will be set forth in PwC's Opposition to Plaintiffs' Motion in Limine.

**W. Marcus Johnson:** 300 Lanidex Plaza, 2nd Floor, Parsippany, NJ 07054.

Mr. Johnson, a forensic accountant with Heigen, Streiff, Newton & Oshiro hired by Underwriters in 2000, will testify regarding the forensic review he conducted into the losses associated with the scheme of certain of HHRG's employees and consultant to defraud HHRG, the information Underwriters' disclosed expert, Mr. Vincent Love, relied upon, and the positions taken by and on behalf of Underwriters in responding to HHRG's insurance claim. Expected duration of testimony: two hours.

Plaintiffs object to the admissibility of the testimony of this witness because, *inter alia*, his testimony is irrelevant to the matters at issue in this case. Further, to the extent PWC seeks to enter as evidence any opinions expressed by Mr. Johnson, Plaintiffs object in that PwC failed to disclose Mr. Johnson as an expert. See Plaintiffs' Motion in Limine regarding Exclusion of Testimony by or Evidence regarding Marcus Johnson; see also Plaintiffs' Motion in Limine regarding Exclusion of References to Insurance.

PwC contends that Mr. Johnson's testimony is relevant for reasons that will be set forth in PwC's Opposition to Plaintiffs' Motion in Limine.

**John King:**  89 Pinecrest Drive, North Kingstown, RI 02852-5908.

Mr. King, the former treasurer of HHRG and a former member of HHRG's board of directors, will testify regarding the general business operation of HHRG and information that was known by or available to the HHRG board of directors at various times from 1996 through 1999.  Expected duration of testimony: one-half day.

**William Myles:**  28 Markwood Road, Manchester CT 06040-7045.

Mr. Myles, the former controller for HHRG, will testify regarding the general business operation of HHRG.  Expected duration of testimony: one-half day.

**Robert H. Temkin:**  1611 Commonwealth Ave., Newton, MA  02465.

Mr. Temkin, PwC's disclosed audit expert, will testify regarding his opinions that PwC performed GAAS audits, as more fully set forth in his expert report submitted with this memorandum.  Expected duration of testimony: one day. A copy of Mr. Temkin's curriculum vitae and his expert report, as well as a list of the materials on which he will rely, are being provided with this Joint Trial Memorandum.

**Joseph Tiroletto:**  8 Crestview Circle, Enfield, CT 06082.

 Mr. Tiroletto, a former PwC employee, will testify regarding the work he and the  PwC audit team performed fro HHRG including the work performed in connection with the 1997, 1998, and 1999 audits, the 1997, 1998, and 1999 semi-annual reviews, and the various physical inventory observations.  Expected duration of testimony: three-quarters of a day.

**PwC will call the following witnesses only if the need arises:**

<u>**Dan McMahon:**</u>  120 N. LaSalle Street, Chicago, IL  60602.

Mr. McMahon, an attorney with Wilson Elser will testify regarding Underwriters' positions taken regarding the value of HHRG's losses associated with the scheme of certain of its employees and consultant to defraud HHRG.  Expected duration of testimony: one hour.

Plaintiffs object to the admissibility of the testimony of this witness on the following grounds: relevance, hearsay, attorney-client privilege.  See also, Plaintiffs' Motion in Limine regarding Reference to Insurance, and Plaintiffs' Motion in Limine regarding Recoveries and Recovery Efforts.

<u>**Fredrick Reinhardt**</u>: 26 Fenwick Road, Riverside, RI 02915.

Mr. Reinhardt is a former vice president with Fleet Bank, one of HHRG's lenders, and will testify concerning the lending relationship between HHRG and Fleet and the reasons why Fleet decided not to continue providing financing for HHRG in March 2000.  Expected duration of testimony: one hour.

(b)     <u>Exhibits:</u>

The parties attach hereto **Exhibit A**, a list of Plaintiff's proposed exhibits with PwC's objections, and **Exhibit B**, a list of PwC's proposed exhibits with Plaintiff's objections.  The parties continue to review the objections asserted to certain proposed exhibits and the proponents of such exhibits will set forth, in good faith, a brief statement regarding admissibility with respect to each such exhibit.

The parties reserve the right to call rebuttal witnesses.

(c)     <u>Deposition Testimony:</u>

**Plaintiff expects the following witnesses to testify by deposition at trial:**

Other than Frederick Ollett identified by PwC as a witness expected to testify by deposition at trial, Plaintiff does not expect any witnesses to testify by deposition at trial. Further, Plaintiff objects to PwC's designation of Hayes, Hobson, Russo, Ryan and Warren because these witnesses are expected to testify live at trial. Plaintiff has agreed that should one or more of these witnesses not be available at trial as expected, PwC can designate these transcripts at that time. Plaintiff also reserves the right to designate from the transcripts of these witnesses should this situation arise. Finally, Plaintiff specifically objects to the designation of testimony of Marcus Johnson and Mark Johnson on the bases set forth above and in various Motions in Limine.

**PwC expect the following witnesses to testify by deposition at trial:**

| Deponent | Date of Deposition | Page References |
|---|---|---|
| Mark S. Johnson | 2/24/05 | 7:24 – 8:4<br>10:21 – 10:24<br>12:17 – 13:23<br>27:22 – 28:15<br>84:17 – 85:1<br>85:24 – 86:24<br>94:11 – 96:9<br>104:18 – 106:3<br>106:24 – 109:3<br>112:11 – 112:25<br>113:6 – 115:9<br>137:1 – 137:9<br>138:19 – 139:9<br>140:5 – 140:8<br>149:7 – 151:17<br>151:20 – 152:17<br>153:2 – 153:7<br>158:1 – 158:24<br>162:18 – 163:9<br>163:17 – 163:25<br>164:8 – 167:8 |
| W. Marcus Johnson | 6/10/05 | 5:6 – 5:9<br>5:23 – 7:17<br>8:12 – 8:20<br>8:25 – 9:4<br>13:14 – 15:16<br>16:4 – 16:21<br>18:13 – 19:19<br>21:14 – 23:24<br>24:14 – 25:8<br>27:4 – 28:24<br>29:6 – 29:18<br>29:24 – 30:25<br>31:14 – 36:11<br>36:23 – 37:23<br>38:12 – 38:25<br>39:11 – 41:4<br>41:10 – 41:25<br>45:19 – 46:24 |

| Deponent | Date of Deposition | Page References |
|---|---|---|
| Michael Ryan | 3/24/05 | 6:17 – 6:19<br>7:1 – 9:7<br>15:8 – 15:11<br>16:15 – 18:11<br>19:24 – 20:18<br>24:2 – 24:14<br>24:20 – 25:15<br>26:6 – 27:15<br>27:23 – 28:1<br>28:4 – 30:15<br>33:14 – 34:2<br>34:23 – 36:6<br>38:5 – 38:19<br>39:25 – 40:10<br>40:21 – 41:15<br>41:20 – 42:15<br>42:24 – 44:24<br>48:15 – 48:22 (from "If Handy . . .")<br>49:2 – 49:12<br>50:11 – 50:22<br>58:19 – 60:3<br>60:22 – 62:11<br>63:7 – 63:20<br>65:2 – 65:7<br>66:17 – 68:18<br>70:10 – 72:6<br>73:20 – 73:25<br>79:4 – 79:15<br>79:22 – 80:1<br>80:19 – 80:23 (from "Are the concerns . . .")<br>81:24 – 82:8<br>87:14 – 87:17<br>88:7 – 90:21<br>94:18 – 94:25<br>96:15 – 97:3<br>102:5 – 103:5<br>111:8 – 114:13<br>119:12 – 120:12<br>127:22 – 130:8<br>137:5 – 137:18<br>138:14 – 138:24 |

| Deponent | Date of Deposition | Page References |
|---|---|---|
| | | 139:22 – 139:25<br>151:21 – 152:23<br>154:7 – 160:4<br>161:15 – 162:12<br>162:17 – 163:14<br>165:18 – 166:4<br>166:20 – 167:19<br>170:23 – 171:17<br>175:2 – 175:9<br>177:4 – 178:9<br>180:8 – 180:25<br>181:17 – 181:22<br>182:25 – 183:14<br>186:9 – 187:13<br>188:22 – 189:4<br>192:2 – 192:4<br>192:17 – 194:10<br>195:19 – 197:15<br>199:18 – 199:25<br>208:21 – 215:16<br>217:20 – 218:6<br>222:1 – 222:24<br>224:14 – 225:17 |
| Frederick Ollett | 6/29/05 | 6:13 – 10:13<br>11:1 – 15:22<br>15:25 – 16:17<br>16:23 – 23:18<br>25:4 – 27:19<br>33:1 – 46:25<br>48:16 – 59:21<br>60:7 – 62:9<br>62:22 – 96:21<br>100:20 – 107:19<br>108:8 – 111:5<br>111:6 – 111:24<br>113:2 – 113:7<br>113:23 – 114:23<br>124:11 – 131:4<br>133:22 – 144:10<br>144:14 – 150:5<br>150:9 – 153:25<br>176:15 – 185:13 |

| **Deponent** | **Date of Deposition** | **Page References** |
|---|---|---|
| | | 187:17 – 188:19 |
| Rodney Warren | 3/25/05 | 6:11 – 6:12<br>8:1 – 8:9<br>9:22 – 10:17<br>11:16 – 12:6<br>17:7 – 18:15<br>21:12 – 21:23<br>24:12 – 26:5<br>26:17 – 27:13<br>28:15 – 30:3<br>30:11 – 32:9<br>34:22 – 38:7<br>38:14 – 38:19<br>39:12 – 41:1<br>43:16 – 44:2<br>51:12 – 55:9<br>56:23 – 58:6<br>59:24 – 60:24<br>71:6 – 71:7<br>71:17 – 71:21<br>73:7 – 74:11<br>83:24 – 84:16<br>85:4 – 85:14<br>86:2 – 87:19<br>92:6 – 95:2<br>97:5 – 97:11<br>97:22 – 98:20<br>108:23 – 108:25<br>109:7 – 109:17<br>110:4 – 111:12<br>111:15 – 112:3 |

9.    STIPULATIONS AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF
LAW:

(a)    Stipulation of Uncontroverted Facts and Agreed Statement of Contested Issues of
Fact and Law:

1.    Stipulation of Uncontroverted Facts

Counsel for the parties submit the following stipulation of uncontroverted facts and a statement of the contested issues of fact and law.

1.      HHRG was a Connecticut corporation in the business of refining precious metals. From August 20, 1996 to March 28, 2000, HHRG was headquartered in South Windsor, Connecticut.

2.      In August, 1996, HHRG acquired the business and related assets of PMRD. Handy & Harman, Inc. operated the Division prior to August, 1996.

3.      On March 28, 2000 (the "Petition Date"), HHRG filed a voluntary petition for bankruptcy relief under Chapter 11 of the Bankruptcy Code.

4.      In accordance with Bankruptcy Code §§ 1107 and 1108, HHRG was authorized to continue in possession of its property and operate and manage its business as debtor in possession.

5.      PwC is a limited liability partnership organized under Delaware law.

6.      Effective July 1, 1998, the accounting firms of Coopers & Lybrand L.L.P. and Price Waterhouse LLP merged their practices to form PwC.

7.      PwC, and its predecessor in interest Coopers & Lybrand LLP, provided professional accounting and auditing services for HHRG from 1996-1999.  Those services included audits of HHRG's financial statements for the fiscal year ended March 31, 1997; the fiscal year ended March 31, 1998; and the fiscal year ended March 31, 1999.

2.      Joint Statement of Contested Issues of Fact and Law:

1.      Whether PwC complied with Generally Accepted Auditing Standards ("GAAS") in performing each of three audits for its former client, Handy & Harman Refining Group, Inc. ("HHRG").

2.      Whether PwC breached a valid contract it entered into with HHRG for the performance of professional audit and business services.

3.      Whether the representations made in a "Client Service Plan" prepared by PwC and delivered to HHRG constitute contractual obligations PwC owed to HHRG.

4.      Whether PwC satisfied its contractual obligations, if any, set forth in the "Client Service Plan."

5.      Whether and to what extent HHRG incurred damages resulting from PwC's breach of contract and/or failure to comply with GAAS.

6.      Whether HHRG withheld material information regarding transactions with Panexim from PwC and made misrepresentations regarding those transactions, which caused or contributed to the losses Plaintiff seeks to recover?


(b)      Proposed Voir Dire Questions:

The parties attached hereto **Exhibit C**, Plaintiff's proposed voir dire questions and **Exhibit D**, PwC's proposed voir dire questions.  The parties are continuing to meet and confer to complete an agreed to set of voir dire questions.

(c)      Proposed Jury Instructions:

The parties attached hereto **Exhibit E**, Plaintiff's proposed jury instructions and **Exhibit F**, PwC's proposed jury instructions.  The parties are continuing to meet and confer to complete an agreed to set of proposed jury instructions.

(d)      Proposed Verdict Form:

The parties are continuing to meet and confer to complete an agreed to proposed jury verdict form which they will discuss and seek the Court's guidance at the October 14, 2005 Pre-Trial Conference.

      (e)     <u>Brief Description of Case and Parties</u>:

The name of this case is <u>Alex Sharp et al. v. PricewaterhouseCoopers, LLP</u>.

Alec Sharp is the Plaintiff in this action by way of assignment from Handy & Harman Refining Group, Inc. ("HHRG"), and therefore Plaintiff stands in the shoes of HHRG for purposes of this action. HHRG, at all times relevant to this action, was a Connecticut corporation located in South Windsor, Connecticut. HHRG is now bankrupt and has been liquidated.

The sole defendant in this action is PricewaterhouseCoopers, LLP ("PwC"). PwC is a limited liability partnership registered in Delaware that performed auditing and business services for HHRG during the years 1997 through 1999. Plaintiff alleges that PwC breached the terms of a contract with HHRG and that PwC was negligent in performing services for HHRG in connection with its audits of HHRG's financial statements for the fiscal years ending March 31, 1997, March 31, 1998 and March 31, 1999.

Plaintiff seeks damages for certain economic losses HHRG sustained that it alleges were caused by PwC. PwC denies each of Plaintiff's claims, denies that it caused the losses Plaintiff seeks to recover, and has asserted certain affirmative defenses. Plaintiff denies the affirmative defenses alleged by PwC.

10.     <u>ANTICIPATED EVIDENTIARY PROBLEMS</u>:

The parties anticipate disputes regarding some of the proposed exhibits as identified in Exhibits C and D to this Memorandum.  In addition, certain other evidentiary issues are addressed in the parties' motions in limine.

DEFENDANT,
PRICEWATERHOUSECOOPERS LLP


By_____/s/ David J. Elliott_____
          David J. Elliott (ct04301)
          E-mail:  djelliott@dbh.com
          Thomas D. Goldberg  (ct 04386)
          E-mail:  tdgoldberg@dbh.com
          Day, Berry & Howard LLP
          CityPlace I
          Hartford, Connecticut 06103
          Telephone:  (860) 275-0100
          Fax:  (860) 275-0343
          Its Attorneys

PLAINTIFF, ALEC SHARP, BOTH
INDIVIDUALLY AND AS REPRESENTATIVE
OF THE UNDERWRITERS


By_____
       Edward J. Boyle
       Wilson, Elser, Moskowitz, Edelman &
       Dicker LLP
       150 East 42nd Street
       New York, NY  10017-5639
       Business:  (212) 490-3000
       Fax:  (212) 490-3038
       Email: BoyleE@wemed.com

**ELECTRONIC CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2005, a copy of the foregoing Joint Trial Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Edward J. Boyle, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd St.
New York, NY  10017-5639

Daniel McMahon, Esq.
Stefan Dandelles, Esq.
Daniel E. Tranen, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
120 N. LaSalle Street
Chicago, IL  60602

Fred N. Knopf, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604-3407


_____/s/_____David J. Elliott_____

-36-