**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ALEC SHARP, et al., | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:02 CV 1572 (MRK) |
| | : | |
| VS. | : | |
| | : | |
| PRICEWATERHOUSECOOPERS LLP d/b/a | : | |
| PRICE WATERHOUSE LLP, | : | |
| Defendant. | : | OCTOBER 28, 2005 |

## PRICEWATERHOUSECOOPERS LLP'S PRELIMINARY PROPOSED
## JURY INSTRUCTIONS

Pursuant to Federal Rule of Civil Procedure 51, defendant PricewaterhouseCoopers LLP ("PwC") requests that the Court submit the following instructions to the jury. By agreement of the parties, these are preliminary proposed instructions. PwC reserves the right to modify these proposed requests or to submit additional requests for jury instructions depending on the evidence admitted at trial and/or following evidentiary rulings by the Court.[1]

---

[1] Pursuant to the Court's Joint Trial Memorandum – Instructions, PwC has not submitted herewith proposed general jury instructions. PwC, however, requests and reserves the right to review and, as appropriate, submit proposed revisions and/or additions to the general jury instructions.

## TABLE OF CONTENTS

**Page**

I.  LEGAL PRINCIPLES GENERALLY APPLICABLE IN CASE ................................. 1

SUBROGATION ................................................................................................ 1

PwC AS SUCCESSOR TO COOPERS & LYBRAND LLP ........................................ 2

II.  CLAIMS IN THIS CASE ................................................................................. 3

OVERVIEW OF THE CASE ................................................................................. 3

MALPRACTICE/PROFESSIONAL NEGLIGENCE .................................................. 5

    a.    DUTY OF CARE ....................................................................................... 5

    b.    STANDARD OF CARE AND ALLEGED BREACH OF CARE ..................... 5

    c.    OTHER SERVICES NOT AT ISSUE ............................................................ 6

    d.    CAUSATION AND DAMAGES ................................................................. 7

NEGLIGENT MISREPRESENTATION ................................................................... 8

CAUSATION ................................................................................................... 11

    a.    ACTUAL CAUSE .................................................................................... 11

    b.    PROXIMATE CAUSE .............................................................................. 11

BREACH OF CONTRACT .................................................................................. 13

    a.    ELEMENTS OF BREACH OF CONTRACT ................................................ 14

    b.    DETERMINING THE CONTRACT ............................................................ 14

    c.    DETERMINING THE PARTIES' INTENT .................................................. 15

    d.    CAUSATION AND DAMAGES ............................................................... 16

IV.  DAMAGES ................................................................................................... 17

    a.    DAMAGES GENERALLY ........................................................................ 17

V.  DEFENSES ................................................................................................... 19

COMPARATIVE NEGLIGENCE .......................................................................... 19

MITIGATION OF DAMAGES ............................................................................. 21

RECOUPMENT AND SET-OFF BASED ON INDEMNIFICATION .......................... 22

IN PARI DELICTO/UNCLEAN HANDS ............................................................... 24

# I.    LEGAL PRINCIPLES GENERALLY APPLICABLE IN CASE

## SUBROGATION

Subrogation is a legal principle which entitles an insurance company to exercise the rights of an insured party whom the insurance company has compensated for a loss.  Essentially, this principle permits the insurance company to stand in the shoes of the insured, meaning that the insurance company may exercise the insured's legal rights, but remains subject to all defenses that may be properly raised against the insured.

In this case, you have heard that HHRG submitted an insurance claim to the Underwriters arising out of alleged losses incurred as a result of HHRG's relationship with Panexim and other related alleged losses.  You have also heard that HHRG and the Underwriters entered into an insurance settlement agreement pursuant to which Underwriters agreed to pay HHRG $12.5 million in resolution of HHRG's insurance claim.  By virtue of this insurance settlement agreement, HHRG assigned and subrogated to Underwriters any legal claims that HHRG may have had for the losses that HHRG had asserted in its insurance claim.  It is not disputed by the parties that this assignment and subrogation included HHRG's entire insurance claim, including the alleged Panexim and other related losses.  As a result, Underwriters may exercise the legal rights that HHRG would otherwise possess with respect to legal claims regarding such losses.  Similarly, Underwriters remains subject to any defenses properly raised against HHRG.

## AUTHORITY/SOURCES

Ronald Anderson, *Couch on Insurance 2d* § 61:18;
*Orselet v. DeMatteo*, 206 Conn. 542, 546-47 (1988).

<u>PwC AS SUCCESSOR TO COOPERS & LYBRAND LLP</u>

The defendant in this case, PwC, is the successor entity to Coopers & Lybrand LLP, which had provided various professional services for HHRG. Effective on July 1, 1998, Coopers & Lybrand LLP merged with Price Waterhouse LLP to form a new entity, PwC. Accordingly, you may consider any actions taken and statements made by Coopers & Lybrand prior to this merger to comprise a part of the actions and statements of the defendant PwC.

## II.    <u>CLAIMS IN THIS CASE</u>

<u>OVERVIEW OF THE CASE</u>

So far, I have instructed you on your basic duties and certain general legal principles.  I will now offer you a brief description of the claims asserted in this case.  These remarks will help you understand the issues that you will have to determine at this stage of the trial.

This is an auditing malpractice case against PwC arising from professional services that PwC provided in 1997, 1998 and 1999 to Handy & Harman, a precious metals refining company. As I said previously, this case involves insurance companies, referred to as Underwriters, who resolved an insurance claim made by HHRG and was subrogated any legal claims that HHRG may have had for the losses asserted in that insurance claim. Underwriters have brought suit against PwC, as the subrogees of HHRG in order to recover the insurance monies that Underwriters paid to HHRG in settlement of HHRG's insurance claim and certain additional alleged losses.

In general, Underwriters claim that Barry Wayne and certain other members of the management of HHRG advanced funds for the purchase of gold and other precious metals from a Peruvian company, Panexim, and other South American companies, in a manner that violated an alleged credit policy of HHRG.  Underwriters further contend that PwC did not properly perform its audits of HHRG's 1997, 1998 and 1999 financial statements, because PwC's audits should have detected the conduct of HHRG management regarding the advances to South American companies and because PwC should have informed the HHRG Board of Directors about the conduct of management.  PwC denies each of these contentions.  PwC disputes that Underwriters have proven that PwC failed properly to perform its audits or that PwC breached any duty because it did not bring the conduct of HHRG management to the attention of the HHRG Board.

In addition, PwC contends that the damages claimed by Underwriters were not caused by any conduct of PwC.

## MALPRACTICE/PROFESSIONAL NEGLIGENCE

Underwriters claim that PwC should be liable as a result of the professional services that PwC provided to HHRG under a theory called malpractice or professional negligence.

Underwriters allege that PwC engaged in negligent conduct in the course of performing audits of HHRG's 1997, 1998 and 1999 financial statements.  To prevail in this professional malpractice action, Underwriters must prove by a preponderance of the evidence:

> (1) that PwC owed a duty of care to HHRG and the standard of care which applied in this case;

> (2) that PwC's conduct deviated from that standard of care; and

> (3) that PwC's deviation from that standard of care proximately caused Underwriters' alleged damages.

### AUTHORITY/SOURCES

Douglas B. Wright et al., *Conn. Jury Instructions (Civil)* § 120(f)(g) (4th ed. 1992 & Supp. 2004);
*Boone v. William W. Backus Hosp.*, 272 Conn. 551, 567 (2005).

a.    DUTH OF CARE

In this case, PwC does not dispute that it owed a duty of care to HHRG, the client for whom it performed auditing services.

b.    STANDARD OF CARE AND ALLEGED BREACH OF CARE

The standard of care for the accounting profession is defined by generally accepted auditing standards, or GAAS, which are a product of the U.S. Auditing Standards Board and American Institute of Certified Public Accountants.  In order to prove that PwC acted negligently in rendering audit services to HHRG, Underwriters must establish by a preponderance of the evidence the GAAS standards which apply in this case, and that PwC failed to meet these GAAS standards when rendering auditing services to HHRG.  Underwriters must prove these points to you through expert testimony, that is, they must offer testimony by an expert with specialized

knowledge which establishes the applicable GAAS standards and that PwC's conduct fell below that standard of care, skill and diligence which auditors ordinarily possess and exercise in like cases.

If you determine that Underwriters have not proven, through expert testimony and by a preponderance of the evidence, that PwC failed to perform its audits of HHRG's 1997, 1998 and 1999 financial statements in accordance with the applicable provisions of GAAS, you must determine that PwC was not negligent in rendering audit services to HHRG.

AUTHORITY/SOURCES

> Douglas B. Wright et al., *Conn.t Jury Instructions (Civil)* § 120(f)(4th ed. 1992 & Supp. 2004);
> *Law v. Camp*, 116 F. Supp. 2d 295, 305 (D. Conn. 2000);
> *Boone v. William W. Backus Hosp.*, 272 Conn. 551, 567, 573-75 (2005);
> *Ahern v. Fuss & O'Neill,* 78 Conn. App. 202, 208 (2003);
> *Vona v. Lerner,* 72 Conn. App. 179, 180 (2002);
> *Solomon v. Levett,* 30 Conn. App. 125, 128 (1993);
> *Campbell v. Pommier*, 5 Conn. App. 29, 32 (1985);
> *Faulise v. Eisenstein*, No. CV980490341S, 2000 Conn. Super. LEXIS 3017 (Conn. Super. Ct. Oct. 30, 2000).

c.    <u>OTHER SERVICES NOT AT ISSUE</u>

As I stated above, Underwriters claim that PwC breached the professional standard of care it owed to HHRG in that PwC allegedly did not properly perform audits of HHRG's financial statements in 1997, 1998 and 1999. You have heard evidence that PwC performed additional services related to HHRG including with respect to a due diligence report in 1996 and other services such as six-month reviews in later years. However, Underwriters does not contend that PwC breached a duty of care with respect to any of those other services and I instruct you not to consider whether PwC breached a duty of care with respect to them.

d.    <u>CAUSATION AND DAMAGES</u>

If you find that Underwriters have established that PwC was negligent in rendering auditing services to HHRG, you must then determine whether Underwriters have established that PwC's negligence caused the damages that Underwriters seeks to recover.  Because Underwriters are required to establish causation and damages under each theory of liability that they have asserted, I will instruct you with respect to the requirements of causation and damages in a few moments.

<u>NEGLIGENT MISREPRESENTATION</u>

Underwriters also claim that PwC should be liable as a result of the professional services that PwC provided to HHRG under a theory called negligent misrepresentation. Underwriters have alleged that PwC negligently misrepresented that: its audits were performed in accordance with industry standards; HHRG's financial statements fairly presented the company's financial condition in accordance with GAAP in all material respects; and advances were not made to companies in third world countries without metal in HHRG's possession. The basis for the first two alleged misrepresentations is PwC's issuance of "clean" audit opinions on HHRG's financial statements and the basis for the third is PwC's statement regarding the collectibility of foreign receivables in its 1998 Service Plan.[2]  PwC contends that the information in its "clean" audit opinions and in the 1998 Service Plan was accurate.

To prevail on a claim for negligent misrepresentation, Underwriters must establish each of the following elements, by a preponderance of the evidence:

(1)    that PwC, acting in the course of business, or in any other transaction in which it has a financial or monetary interest, supplied false information;

(2)    that information was supplied for the guidance of others in their business transactions;

(3)    that HHRG justifiably relied upon the false information in its business transactions;

(4)    that PwC was negligent in providing the false information; and

(5)    that HHRG suffered a pecuniary loss proximately caused by its reliance on the false information.

---

[2]  *See* Underwriters' Complaint, at ¶ 141. PwC reserves the right to revise this instruction in light of the evidence submitted at trial and additional definition of these claims by Underwriters.

Here, Underwriters contend that PwC supplied false information by issuing "clean" audit opinions and by making statements regarding the collectibility of foreign receivables in its 1998 Service Plan, that HHRG justifiably relied upon such information and that PwC acted negligently in providing it. PwC denies each of these contentions. PwC asserts that the information at issue in its audit opinions and the 1998 Service Plan was not false. With respect to the 1998 Service Plan, PwC asserts that its notations regarding the collectibility of foreign receivables was not intended to reflect the provision of any services beyond a standard GAAS audit. PwC also asserts that HHRG did not justifiably rely upon the "clean" audit opinions or the notations in the 1998 Service Plan and that PwC did not act negligently in supplying that information.

You have heard me refer to the requirement of justifiable reliance. The requirement of justifiable reliance bears further explanation. To establish such reliance, the plaintiffs must prove that HHRG knew of PwC's alleged misrepresentations and actually relied on them. Thus, if HHRG was not aware of the information supplied by PwC that is now claimed to be false, or if the representation did not play a role in HHRG's transaction of its business, there is no justifiable reliance. In determining whether HHRG justifiably relied on PwC's alleged misrepresentations, you must consider the information that HHRG knew or had available at the time it received the audit opinions and 1998 Service Plan.

Now, if you find that Underwriters have established by a preponderance of the evidence the first four elements I have set forth for you, you must then determine whether Underwriters have proven that PwC's negligence proximately caused the damages that Underwriters seeks to recover. I will instruct you with respect to the requirements of causation and damages next.

AUTHORITY/SOURCES

Restatement (Second) of Torts § 552 (1977);
*Glazer v. Dress Barn, Inc.*, 274 Conn. 33 (2005);
*Updike, Kelly & Spellacy, P.C. v. Beckett*, 269 Conn. 613, 643 (2004);
*Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 579-80 (1995).

<u>CAUSATION</u>

As I stated with respect to each theory of liability I have discussed, Underwriters are

required to prove by a preponderance of the evidence a causal connection between PwC's

performance of its professional services to HHRG and the damages that Underwriters claim.

The concept of causation consists of two elements, actual cause and proximate cause.

     a.    <u>ACTUAL CAUSE</u>

In your determination of the damages to be awarded to Underwriters, if any, you must

first determine that there is a causal connection between PwC's conduct and the actual loss

claimed and proved.  In other words, you must determine that the losses that Underwriters seeks

to recover would not have occurred, but for PwC's negligent conduct.  Therefore, if you find that

anything other than the conduct of PwC caused some or all of the alleged loss claimed by

Underwriters, then you must conclude that Underwriters have failed to satisfy their burden of

proof with respect to that loss.

AUTHORITY/SOURCES

*Purzycki v. Town of Fairfield*, 244 Conn. 101, 113 (1998);
*Stewart v. Federated Dep't Stores*, 234 Conn. 597, 605 (1995);
*Conaway v. Prestia*, 191 Conn. 484 (1983);
*Gigliotti v. United Illuminating Co.,* 151 Conn. 114 (1963).

     b.    <u>PROXIMATE CAUSE</u>

Further, you must first determine that PwC's conduct proximately caused the losses

claimed by Underwriters.  Proximate cause is defined as an actual cause that is a substantial

factor in bringing about the alleged injury to HHRG which is the basis of Underwriters' claims.

When determining whether PwC's alleged conduct proximately caused the losses that

Underwriters seek to recover, you must determine whether the harm which occurred to HHRG,

- 11 -

and thus to Underwriters by subrogation, was of the same general nature as the foreseeable risk

created by the PwC's alleged conduct.  The test of proximate cause is whether PwC's conduct

was a substantial factor in bringing about the alleged injury to HHRG on which Underwriters'

claims are based, determined by looking from the injury to the acts complained of for the

necessary causal connection.

## AUTHORITY/SOURCES

3 Kevin O'Malley et al., *Fed. Jury Practice & Instructions* § 120.60 (5th ed. 2001 & Supp. 2005);

Douglas B. Wright et al., *Conn. Jury Instructions (Civil)*, § 110 (4th ed. 1992 & Supp. 2004);

*Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank, Inc.*, 392 F.3d 520, 525 (2d Cir. 2004);

*Revak v. SEC Realty Corp.,* 18 F.3d 81, 90 (2d Cir. 1994);

*Johnson v. Chesebrough-Pond's USA Co.,* 918 F. Supp. 543, 548 (D. Conn. 1996);

*Purzycki v. Fairfield*, 244 Conn. 101 (1998);

*Grayson v. Wofsey, Rosen, Kweskin & Kuriansky*, 231 Conn. 168 (1994);

*Calig v. Schrank*, 179 Conn. 283, 286 (1979);

*Vona v. Lerner*, 72 Conn. App. 179 (2002);

*Southington Manor Condo. Ass'n. v. Trugreen-Chemlawn*, No. HHBCV950470639, 2000 Conn. Super. LEXIS 3358 (Conn. Super. Ct. Nov. 30, 2000).

## BREACH OF CONTRACT

Underwriters also claim that PwC should be liable as a result of the professional services that PwC provided to HHRG under a theory called breach of contract.

Breach of contract claims based on deficient professional services can only be sustained if the professional undertook a contractual obligation beyond performing competent professional services.  In other words, a contract claim can only be advanced if PwC agreed by contract with HHRG to perform services other than a GAAS audit.  What I mean is this:  many times in relationships between a professional like an auditing firm and its client, the client and professional will enter into a contract that reflects the professional services to be rendered to the client.  Inherent in this type of contract is that the professional will provide those services competently.  In the event that the professional does not provide competent services, the professional may have committed professional malpractice, for which the client can bring suit. Thus, the law does not permit a separate breach of contract claim based on deficient professional services, unless the professional has undertaken some obligation above and beyond rendering competent professional services.  Accordingly, in order for Underwriters to establish a breach of contract, they must show, by a preponderance of the evidence, that PwC undertook a contractual obligation beyond performing an audit of HHRG's financial statements in accordance with GAAS.

## AUTHORITY/SOURCES

*Common Fund for Non-Profit Orgs v. KPMG Peat Marwick LLP*, No. 96 Civ. 0255 (MGC), 2000 U.S. Dist. LEXIS 785 (S.D.N.Y. Jan. 27, 2000);
*Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 545 F. Supp. 1314, 1364 (S.D.N.Y. 1982);
*Camposano v. Claiborn*, 2 Conn. Cir. Ct. 135, 137 (1963);
*Jacoby v. Brinckerhoff*, No. 326260, 1997 Conn. Super. LEXIS 2272 (Conn. Super. Ct. Aug. 22, 1997);

*Berry v. Shearin*, No. 321443 1996 Conn. Super. LEXIS 2565 (Conn. Super. Ct. Aug. 21, 1996);

*Malone v. Caldwell*, 6 Conn. L. Rptr. 323, 324 (1992);

*Adler & Topal, P.C. v. Exclusive Envelope Corp.*, 446 N.Y.S.2d 337, 338-39 (1982);

*Carr v. Lipshie*, 187 N.Y.S.2d 564, 566-67 (1959), *aff'd*, 218 N.Y.S.2d 62 (1961);

a.    <u>ELEMENTS OF BREACH OF CONTRACT</u>

A contract is an agreement by which a person undertakes to do or not to do a particular thing or things. Accordingly, in order to find PwC liable for breach of contract under the facts of this case, you must find that Underwriters have proved by a preponderance of the evidence that:

(1) a contractual obligation existed between HHRG and PwC with respect to PwC's consideration of foreign accounts receivable as set forth in the 1998 Client Service Plan;

(2) HHRG performed its obligations under the contract;

(3) PwC breached the contract — that is, it failed to do what it promised to do in the contract; and

(4) PwC's breach proximately caused harm to HHRG.

AUTHORITY/SOURCES

Douglas B. Wright et al., *Conn, Jury Instructions (Civil)* § 150(a) (4th ed. 1992 & Supp. 2004);

*Rosato v. Mascardo*, 82 Conn. App. 396 (2004);

*Lunn v. Hussey*, No. CV010085525, 2003 Conn. Super. LEXIS 401 (Conn. Super. Ct. Feb. 11, 2003);

*Talbot v. Kirkup*, No. 551986, 2000 Conn. Super. LEXIS 2506 (Conn. Super. Ct. Sept. 20, 2000).

b.    <u>DETERMINING THE CONTRACT</u>

In order to determine whether or not a breach of contract has occurred, you must first determine what writings are actually binding contracts between the parties. Underwriters claim that the 1998 Client Service Plan was incorporated by reference into the 1998 Engagement Letter and was intended to create binding contractual obligations. They further contend that PwC breached the terms of the 1998 Client Service Plan with respect to issues regarding collectibility

of foreign receivables.  PwC contends that pursuant to the 1998 Engagement Letter the parties

agreed that PwC would perform an audit in accordance with GAAS, but that the parties did not

intend the 1998 Client Service Plan to create additional contractual obligations between the

parties.  Further, PwC contends that it complied with the matters set forth in the 1998 Client

Service Plan.

Incorporation by reference is a basic principle of contract law that permits parties to a

contract to incorporate into their agreement the terms and conditions of another document, so

that the two documents together produce a single contract.  In order to incorporate another

document by reference, the parties must refer to the document to be incorporated clearly and

unequivocally, and in a way that establishes that the parties intended to make the terms and

conditions that document a part of their basic contract.  In addition, the contracting parties must

know of and must agree to the additional provisions incorporated by reference.

### AUTHORITY/SOURCES

1 Robert E. Kehoe, Jr., *Jury Instructions for Contract Cases*, § 2.02 (1995);
Douglas B. Wright et al., *Conn. Jury Instructions (Civil)* § 150(k) (4th ed. 1992 &
Supp. 2004);
Restatement (Second) of Contracts §§ 24, 50, 71, 73 (1981);
*Randolph Constr. Co. v. Kings East Corp.*, 165 Conn. 269 (1973);
*Local 391, Council 4, AFSCME v. Dep't of Corr.*, 76 Conn. App. 15 (2003);
*Lussier v. Spinnato,* 69 Conn. App. 136 (2002);
*Housing Auth. v. McKenzie*, 36 Conn. Supp. 515 (1979);
*Espinal v. Child & Family Agency of Southeastern Conn.*, 2005 Conn.
Super. LEXIS 651 (Conn. Super. Ct. Mar. 14, 2005);
*Halling v. Jetseal, Inc.*, 2001 Conn. Super. LEXIS 1602 (Conn. Super. Ct. June 5, 2001);
*Sherman v. Scott*, 1995 Conn. Super. LEXIS 1382 (Conn. Super. Ct. Apr. 28, 1995).

c.    <u>DETERMINING THE PARTIES' INTENT</u>

Now, I have just said that Underwriters seek to enforce a term in the 1998 Client Service

Plan.  The parties do not agree as to whether the 1998 Client Service Plan was intended to create

additional contractual obligations between HHRG and PwC, and if so, what those additional

contractual obligations were.  In determining the parties' intent, you may consider any and all

evidence regarding the circumstances relating to the contract, including the documents, any

statements between HHRG and PwC, and whether and the extent to which HHRG had

knowledge of the contents of the Client Service Plan.  Of course, your consideration of extrinsic

evidence is not limited to the areas I just mentioned.

## AUTHORITY/SOURCES

1 Robert E. Kehoe, Jr., *Jury Instructions for Contract Cases* § 5.06 (1995);
*Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir. 1983);
*Pokorne v. Gary*, 281 F. Supp. 2d 416, 420 (D. Conn. 2003);
*Royal Ins. Co. of Am. v. Zygo Corp.*, 2003 U.S. Dist. LEXIS 14172, at *1-2 (D. Conn. Aug. 15, 2003);
*Orange Improvements P'ship v. Cardo*, 984 F. Supp. 85, 89-90 (D. Conn. 1997);
*Hare v. McClellan*, 234 Conn. 581, 597 (1995);
*Bead Chain Mfg. Co. v. Saxton Prods., Inc.*, 183 Conn. 266, 274-75 (1981).

d.    <u>CAUSATION AND DAMAGES</u>

If you find that PwC breached a contractual obligation to HHRG with respect to the 1998

Client Service Plan, you must then determine whether Underwriters have established, by a

preponderance of the evidence, that PwC's breach caused the damages that Underwriters seek to

recover.  I have instructed you with respect to the requirement of causation already.  I will also

speak further about the requirement of proving damages next.

IV.     **DAMAGES**

      a.     <u>DAMAGES GENERALLY</u>

Now, unless you come to the conclusion that Underwriters have met each and every one of the elements of one or more of their claims in this case, you have no occasion whatsoever to consider the question of damages.  I speak of damages only because there is law in connection therewith which I must give you in the event that you get that far in your considerations.  If you should come to the conclusion that Underwriters have met their burden with respect to one or more of its alleged claims, only then you must turn to the question of damages.

As I stated when I first outlined the issues involved in this case, Underwriters claim that PwC's performance of its audits of HHRG's financial statements caused damages to Underwriters related to the conduct described in HHRG's insurance claim.  PwC denies this contention.

The rule that places the burden of proof on Underwriters to prove all the elements of its claims, also applies to its claim for damages.  In that regard, just as with every other disputed matter before you, you may award Underwriters damages only as are justified by the proof.  I charge you that, as to any item of damage for which Underwriters claims to be entitled to recover, you must find Underwriters have proved such damage by a fair preponderance of the evidence.  If the evidence is evenly balanced or is in equipoise, then Underwriters have not sustained the burden of proof as to such claim or element of damage.  In such case, I instruct you that your decision must be for PwC.

The burden of proving damages rests with Underwriters.  You are not compelled to accept as true Underwriters' evidence nor the testimony of its expert.  This is solely within your

province. Remember that it is not the burden of PwC to disprove the damages Underwriters claim.

Further, I instruct you that you are not to speculate or to guess as to the extent of the alleged damages claimed by Underwriters. The measure of damages claimed by Underwriters must be proven with reasonable certainty. You may not award Underwriters any money for any alleged damage which may only possibly have resulted from the PwC's actions. In other words, damages may only be awarded when they have been proven by a fair preponderance of the evidence, based on a reasonable probability that they resulted from the PwC's conduct, and in an amount proven with reasonable certainty.

If you determine under the rules that I have given you that Underwriters are entitled to recover damages, and only if you so determine, then Underwriters are entitled to recover only fair, just and reasonable damages. It is not proper for a jury to attempt to be generous, rather than fair and reasonable. You may not place Underwriters in a better position than they would have been in the absence of PwC's conduct. The purpose of compensatory damages is not in any way to punish or penalize the defendant but rather, to fairly compensate the plaintiffs.

## AUTHORITY/SOURCES

3 Kevin O'Malley et al., *Fed. Jury Practice & Instructions* § 106.02 (5th ed. 2001 & Supp. 2005);
Douglas B. Wright et al., *Conn. Jury Instructions (Civil)* § 222(d) (4th Ed. 1992 & Supp. 2004);
*Cheryl Terry Enters. v. City of Hartford*, 270 Conn. 619, 639 (2004);
*Beverly Hills Concepts, Inc. v. Schatz, Schatz, Ribikoff & Kotkin*, 247 Conn. 48, 69 (1998);
*Hally v. Hosp. of St. Raphael*, 162 Conn. 352 (1972);
*Rosa v. American Oil Co.*, 129 Conn. 585 (1943);
*Braithwaite v. Lee*, 125 Conn. 10 (1938).

V.    **DEFENSES**

COMPARATIVE NEGLIGENCE

If you find that PwC was not negligent in any of the respects claimed, then you must find

for PwC on the claims asserted by Underwriters which sound in negligence.  If you find the PwC

was negligent, you must also consider whether PwC has proved the defense that HHRG was also

negligent.  It is possible for you to determine that both PwC and HHRG were negligent, and in

combination caused the losses that Underwriters seeks to recover.  This defense is commonly

referred to as comparative negligence.  As I have said before, because Underwriters stand in the

shoes of HHRG, the negligence of HHRG is attributed to Underwriters so that any recovery to

Underwriters could be reduced or eliminated by HHRG's comparative negligence.

The defense of comparative negligence applies to all claims that sound in negligence

resulting in commercial losses.  Accordingly, in this case, the defense of comparative negligence

applies to all of the theories of liability claimed by Underwriters because each claim is based on

the allegation that PwC negligently performed professional services for HHRG.

HHRG is a corporation.  Corporations act through their officers, directors and employees.

Accordingly, the conduct of HHRG management and directors is imputed to HHRG for purposes

of determining whether HHRG was comparatively negligent.

In this case, PwC contends that HHRG management and directors were negligent in the

oversight of HHRG.  In particular, PwC claims that: (1) the HHRG Board of Directors failed to

insist that HHRG management design, implement and monitor a rigorous internal control

system; (2) HHRG management failed to implement a rigorous internal control system; (3) the

non-management members of HHRG's Board of Directors failed to familiarize themselves with

HHRG's business; (4) the HHRG Board of Directors failed to assure that Barry Wayne

implemented its instructions; and (5) HHRG Board members that represented its parent

company, GWRC, were not diligent about attending HHRG Board meetings in person.

In sum, I am instructing you that, if you find that PwC was negligent in any of the

respects claimed in this case, then you must go on to determine whether HHRG also was

negligent and helped cause the losses that Underwriters seek to recover. If you find that HHRG

was negligent in this way, you must further determine the respective proportions or percentages

of the total negligence which are attributable to each party.

### AUTHORITY/SOURCES

*Boone v. William W. Backus Hosp.*, 272 Conn. 551, 562-66 (2005);
*Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 586 (1995);
*Sevigny v. Dibble Hollow Condo. Ass'n*, 76 Conn. App. 306, 318 (2003);
*Vona v. Lerner*, 72 Conn. App. 179, 185-88 (2002);
*Somma v. Gracey*, 15 Conn. App. 371, 378 (1988);
*Cusano v. Grudberg*, No. CV010276769, 2003 Conn. Super. LEXIS 2057 (Conn. Super. Ct. July 21, 2003).

## MITIGATION OF DAMAGES

As a further defense in this case, PwC has asserted that HHRG failed to mitigate its alleged damages. When a plaintiff claims damages suffered as a result of a breach of contract, or due to some other alleged improper conduct, the plaintiff is under an affirmative obligation to exercise reasonable conduct to minimize the damages it claims. As I have said before, because Underwriters stand in the shoes of HHRG, the failure of HHRG to minimize its damages is attributed to Underwriters so that any recovery to Underwriters could be reduced or eliminated by HHRG's failure.

In the context of this case, HHRG had an affirmative duty to use reasonable efforts to minimize the damages it suffered due to the outstanding Panexim receivable. On this special defense, PwC has the burden of proving that HHRG failed to take reasonable action to minimize its alleged damages. PwC must establish: (1) that HHRG failed to take reasonable action to lessen the damages; (2) that the damages were enhanced by HHRG's failure to take reasonable action to lessen the damages; and (3) that the damages which could have been avoided can be measured with reasonable certainty.

If you find that HHRG failed in any way to mitigate its damages, you must reduce any award by the amount HHRG reasonably could have expected to recover through mitigation.

### AUTHORITY/SOURCES

*Cary Oil Co. v. MG Ref. & Mktg.*, 90 F. Supp. 2d 401 (S.D.N.Y. 2000);
*Preston v. Keith*, 217 Conn. 12, 22 (1991);
*West Haven Sound Dev. Corp. v. City of West Haven*, 201 Conn. 305, 332 (1986).

<u>RECOUPMENT AND SET-OFF BASED ON INDEMNIFICATION</u>

In this case, PwC also asserts a defense against Underwriters based on express language contained in each Engagement Letter, whereby HHRG specifically agreed to indemnify and hold harmless PwC for certain conduct.  Again, because Underwriters stand in the shoes of HHRG, the obligations of HHRG to indemnify PwC are attributed to Underwriters.

Indemnification obliges one person to reimburse or compensate another person for losses and expenses that the other person has incurred.  The right to indemnification can arise several ways, including by an express agreement.

In the 1997 and 1998 Engagement Letters, HHRG agreed as follows:

> "[HHRG] hereby indemnifies [PwC], and its partners, principals and employees, and holds them harmless from all claims, liabilities, losses, and costs arising in circumstances where there has been a knowing misrepresentation by a member of [HHRG]'s management, regardless of whether such person was acting in [HHRG]'s interest.  This indemnification will survive termination of this letter of arrangement."

In the 1999 Engagement Letter, HHRG agreed as follows:

> <u>"Release and Indemnification</u>
>
> Because of the importance of oral and written management representations to an effective audit, the Company releases and indemnifies PricewaterhouseCoopers LLP and its personnel from any and all claims, liabilities, costs and expenses attributable to any knowing misrepresentation by management."

In this case, with respect to the indemnities expressly provided by HHRG in 1997, 1998 and 1999, PwC asserts that one or more members of HHRG's management made knowing misrepresentations to PwC, including representations relating to Panexim, advances to companies in foreign countries, methods of accounting, and foreign accounts receivable.  PwC further contends that the claims now asserted against PwC by Underwriters in this action arise

out of circumstances where there has been a knowing misrepresentation by one or more members of HHRG management to PwC, triggering HHRG's obligation to indemnify PwC and entitling PwC to a recovery from HHRG.  Applying the legal principles known as recoupment and set-off, PwC claims that any damage amount awarded to Underwriters must be reduced by the amount that HHRG owes to PwC for indemnification.

As a result, if you find that any of Underwriters' claims in this case arises out of circumstances where HHRG management made knowing misrepresentations to PwC, then you must reduce the amount of any damages you choose to award to Underwriters by an amount equal to the amount of such claim.

AUTHORITY/SOURCES

*Black's Law Dictionary* (5th ed. 1979);
*Loricco v. Pantani*, 67 Conn. App. 681, 686 (2002);
*Genovese v. J. N. Clapp Co.*, 4 Conn. App. 443, 445-46 (1985).

<u>IN PARI DELICTO/UNCLEAN HANDS</u>

PwC further asserts additional defenses rooted in the notion that a plaintiff's recovery may be barred by the plaintiff's own wrongful conduct. In particular, PwC contends that the willful conduct of Barry Wayne and other members of HHRG management should prevent plaintiffs' efforts to recover in this case. These defenses are sometimes referred to as the *in pari delicto* and unclean hands doctrines.

The doctrine of *in pari delicto* applies where the willful conduct of the plaintiff equals that of the party against whom it seeks to recover. In such circumstances, the court will leave both parties in the position they were when they came to the court. The doctrine provides a defense when the losses claimed by plaintiff are substantially caused by plaintiff's own wrongdoing. The *in pari delicto* doctrine is grounded upon the notion that denying judicial relief to a wrongdoer will deter illegality.

Similarly, the unclean hands doctrine means that a plaintiff who comes to court to seek recovery against another party, must himself come with clean hands. The doctrine thus provides an affirmative defense that precludes a plaintiff from recovering in equity when the claim for relief is connected to plaintiff's own prior wrongdoing.

These doctrines that provide that the plaintiff's own wrongdoing should bar his recovery are in accordance with the principle that the misconduct of a company's employees within the scope of their employment will be imputed to the company in the normal course. This usual presumption is set aside only where the company's employees acted entirely in their own interests and adversely to the interests of the corporation. This adverse interest exception, however, is a narrow exception and applies only when the employees have totally abandoned the company's interests. The fact that Wayne or others may have sought to inflate HHRG's revenue

and earnings, or to conceal this conduct from members of the HHRG board, is not sufficient in itself to satisfy this exception. Rather, you must find that Wayne and others sought to benefit personally at the expense of the corporation.

Here, PwC asserts that the willful conduct of Barry Wayne and other members of HHRG management was substantially related to the losses that HHRG is alleged to have suffered. PwC further contends that HHRG management withheld information from PwC related to its business dealings with Panexim and that HHRG management entered into transactions with Panexim in the ordinary course of HHRG's business. Underwriters deny that these defenses are applicable because they contend that the adverse interest exception applies.

As with the other defenses I have described, I am instructing you that, to the extent that you may find the defense of unclean hands or *in pari delicto* applicable against HHRG, that the defense applies to the claims asserted by the Underwriters. This is because Underwriters are asserting a subrogation claim, and any defense that PwC may properly assert against HHRG is also good as against the Underwriters.

If you determine that PwC has established the defense of *in pari delicto* or unclean hands, you must find that Underwriters are barred from recovering from PwC.

## AUTHORITY/ SOURCES

*Bank of China v. NBM LLC*, 359 F.3d 171 (2d Cir. 2004);
*Couldock & Bohan, Inc. v. Societe Generale Sec. Corp*., 93 F. Supp. 2d 220 (D. Conn. 2000);
*Palmer v. Thomson & McKinnon Auchincloss, Inc*., 474 F. Supp. 286 (D. Conn. 1979);
*Baena v. KPMG LLP*, Civ. No. 04-12606-PBS (D. Mass. Sep. 27, 2005);
*Thompson v. Orcutt*, 257 Conn. 301 (2001);
*Eldridge v. Eldridge*, 244 Conn. 523 (1998);
*Bauer v. Waste Mgmt.*, 239 Conn. 515 (1996);
*La Croix v. La Croix*, 189 Conn. 685 (1983);
*Pappas v. Pappas*, 164 Conn. 242 (1973).